Joseph J. Tabacco, Jr. (SBN 75484)
Email: jtabacco@bermantabacco.com
Nicole Lavallee (SBN 165755)
Email: nlavallee@bermantabacco.com
Jeffrey V. Rocha (SBN 304852)
Email: jrocha@bermantabacco.com
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382

*Counsel for Movant Green Dot
Institutional Investor Group and
Proposed Co-Lead Counsel for the Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN KOFFSMON, on behalf themselves and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GREEN DOT CORPORATION, STEVEN W. STREIT and MARK SHIFKE,<br><br>    Defendants. | No. 2:19-cv-10701-DDP-E<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL**<br><br>Date:  March 23, 2020<br>Time: 10:00 a.m.<br>Courtroom:  9C, 9th Floor<br>Judge:  Hon. Dean D. Pregerson |

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

# **TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

II. STATEMENT OF FACTS.................................................................... 3

III. ARGUMENT ................................................................................... 5

    A. The Court Should Appoint The Green Dot Institutional Investor Group As Lead Plaintiff Because It Suffered The Largest Loss And Is The Most Capable Of Adequately Representing The Class ................................................................................... 5

        1. The Green Dot Institutional Investor Group Has Filed A Timely Motion ................................................................. 7

        2. The Green Dot Institutional Investor Group Is The Presumptive Lead Plaintiff Because It Has The Largest Financial Interest In The Relief Sought By The Class ............. 7

        3. The Green Dot Institutional Investor Group Satisfies The Requirements Of Rule 23 ....................................................... 8

            a. The Green Dot Institutional Investor Group's Claims Are Typical Of The Claims Of The Class .......... 8

            b. The Green Dot Institutional Investor Group Will Fairly And Adequately Represent The Interests Of The Class ................................................................. 10

        4. The Green Dot Institutional Investor Group is Precisely the Type of Lead Plaintiff Congress Envisioned in Enacting the PSLRA................................................................. 11

    B. The Court Should Approve the Green Dot Institutional Investor Group's Choice Of Lead Counsel...................................................... 14

IV. CONCLUSION ................................................................................. 16

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Adams v. Biolase, Inc.*,
No. 8:13-CV-1300-JLS-FFMx,  2013  WL 12128806 (C.D. Cal. Dec. 10, 2013) ......................................................................................................................... 9

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001),
*abrogated on other grounds by*
*Johnson v. California*, 543 U.S. 499 (2005) ............................................................ 9

*Ferrari v. Gisch*,
225 F.R.D. 599 (C.D. Cal. 2004) ................................................................... 8, 9

*Feyko v. Yuhe Int'l Inc.*,
No. CV 11-05511 DDP (PJWx), 2012 WL 682882 (C.D. Cal. Mar. 2, 2012) ................................................................................................................ 8, 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998),
*overruled on other grounds by*
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................... 9, 10

*In re Aqua Metals Sec. Litig.*,
No. 17- cv-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018) ............. 12

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................... 6, 8, 14

*In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.*,
209 F.R.D. 447 (C.D. Cal. 2002) ................................................................... 12

*In re Snap Inc. Sec. Litig.*,
No. 217CV03679SVWAGR, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ....... 13

*In re Versata, Inc., Sec. Litig.*,
No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ............. 11, 13

*Lloyd v. CVB Fin. Corp.*,
No. CV 10-06256 MMM (PJWx), 2011 WL 13128303 (C.D. Cal. Jan. 21, 2011) ........................................................................................................... 11

*McCracken v. Edwards Lifesciences Corp.*,
No. 813CV1463JLSRNBX, 2014 WL 12694135 (C.D. Cal. Jan. 8, 2014) .. 12, 13

*Roberti v. OSI Sys., Inc.*,
No. CV-13-09174-MWF (VKBx), 2014 WL 12845727 (C.D. Cal. Mar. 17, 2014) ............................................................................................................. 8

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

ii

*Rubke v. Capitol Bancorp, Ltd.*,
  No. C 05-4800 PJH, 2006 WL 734390 (N.D. Cal. Mar. 21, 2006)....................10

*Tanne v. Autobytel, Inc.*,
  226 F.R.D. 659 (C.D. Cal. 2005) ...............................................................7, 8, 9

**Statutes**

15 U.S.C. § 78u-4(a)(1) ...................................................................................5

15 U.S.C. § 78u-4(a)(3)(A)(i)..........................................................................6

15 U.S.C. § 78u-4(a)(3)(B)..........................................................................1, 6

15 U.S.C. § 78u-4(a)(3)(B)(i) .........................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii) .......................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)....................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ..................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ..........................................................14

15 U.S.C. § 78u-4(a)(3)(B)(v) .......................................................................14

17 C.F.R. § 240.10b-5 .....................................................................................1

Fed. R. Civ. P. 23...................................................................................passim

Fed. R. Civ. P. 23(a)(4) .................................................................................10

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730
  (1995) .........................................................................................................11

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 (1995) ............11

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

iii

## I.     <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Movants Plymouth County Retirement Association ("Plymouth County"), Greater Pennsylvania Carpenters' Pension Fund ("GPCPF"), and Iron Workers District Council of New England Pension Fund ("New England Iron Workers") (referred to herein collectively as the "Green Dot Institutional Investor Group") respectfully submit this Memorandum in support of their motion: (1) to appoint the Green Dot Institutional Investor Group as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (2) for approval of its selection of Labaton Sucharow LLP and Berman Tabacco as Co-Lead Counsel for the class ("Class") described herein.

This putative class action is brought on behalf of all investors who purchased or otherwise acquired Green Dot Corporation ("Green Dot" or the "Company") securities between May 9, 2018 and November 7, 2019 (the "Class Period"). The case asserts claims for violations of Sections 10(b) and 20(a) of the Exchange Act, and U.S. Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, against Defendants Green Dot; the Company's former Chief Executive Officer and Chairman of the Board of Directors, Steven W. Streit ("Streit"); and the Company's former Chief Financial Officer, Mark Shifke ("Shifke") (collectively "Defendants").

Green Dot's investors, including the Green Dot Institutional Investor Group, incurred significant losses after revelations that the Company had made certain misrepresentations and omissions regarding the purported strength and growth in sales of the Company's legacy financial products, and Defendants' "long-term corporate strategies," which served to cannibalize demand for these established lines of business.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the class in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The Green Dot Institutional Investor Group respectfully submits that it is the "most adequate plaintiff" and should be appointed Lead Plaintiff. The Green Dot Institutional Investor Group suffered losses of approximately $1,071,665.53 on its Class Period investments in the Green Dot securities at issue in this litigation, *see* Declaration of Nicole Lavallee In Support of The Green Dot Institutional Investor Group's Motion For Appointment As Lead Plaintiff and For Approval of Its Selection of Lead Counsel ("Lavallee Decl.") ¶¶ 3-6 & Exs. B-E, and it otherwise satisfies the requirements of Fed. R. Civ. P. 23 in that its claims are typical of the claims of the putative Class and that it will fairly and adequately represent the interests of the Class.

In addition, the Green Dot Institutional Investor Group has already demonstrated its commitment to zealously and efficiently prosecuting this litigation as a cohesive group of sophisticated institutional investors through the submission of the Joint Declaration of David Sullivan, James R. Klein, and Veronica Dyer in Support of the Green Dot Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel ("Joint Declaration"). *See* Lavallee Decl. Ex. F.

Finally, the Court should approve the Green Dot Institutional Investor Group's selection of Labaton Sucharow LLP and Berman Tabacco as Co-Lead Counsel on behalf of the Class. Labaton Sucharow LLP and Berman Tabacco are nationally recognized securities class action firms that have achieved substantial

recoveries for the benefit of injured investor classes and have the expertise and resources necessary to provide high-quality legal representation and effectively protect the interests of the Class.

Accordingly, for these reasons and all those discussed below, the Green Dot Institutional Investor Group respectfully requests that the Court appoint it to serve as Lead Plaintiff and approve its selection of Labaton Sucharow LLP and Berman Tabacco as Co-Lead Counsel.

## II.   STATEMENT OF FACTS[1]

Green Dot identifies itself as a financial technology leader and bank holding company with a mission to "reinvent banking for the masses." ¶14.  Green Dot's products and services include, *inter alia*, deposit account programs, branded reloadable prepaid debit cards, consumer checking accounts, small business checking accounts, branded gift cards, secured credit cards and a platform referred to as "Banking as a Service" or "BaaS," which provides financial service products to consumers under brand names such as Green Dot, GoBank and RapidPay. ¶¶14-15.

The Complaint alleges that, during the Class Period, the Company made affirmative misrepresentations touting (a) "ongoing financial momentum" in its established prepaid debit card product line; (b) "disciplined execution" of the Company's business model aimed at boosting its BaaS platform and attracting direct deposit customers; and (c) "impressive organic results" attributable to its "longer term corporate strategies."  ¶¶16-19.  The Company further boasted "double-digit top and bottom line growth" associated with its "products and

---

[1]  All references to the "Complaint" are to the *Koffsmon* complaint, filed on December 18, 2019 (ECF No. 1), which is cited herein as "¶__."

platform strategy" as well as increasing success in penetrating its total addressable market, or "TAM." ¶¶20-22.

As to loss causation and damages, the Complaint alleges that, on February 20, 2019, the true state of Green Dot's business started to be revealed when, during the fiscal year 2018 conference call, Defendant Streit relayed how Green Dot's strategy to attract "high-value," direct deposit customers was "self-sabotaging" as it led to the cannibalization of "one and done" customer accounts, which represented a significant source of Green Dot's revenue in its legacy segment. ¶23.  Streit stated:

> So how can our direct deposit and purchase volume metrics be so strong and yet actives be up only 1%.  The reason is that we are somewhat a victim of our own success in converting more and more of our quarterly active accounts to direct deposit active accounts.

¶24.  On this news, shares of Green Dot common stock fell $7.47 per share, or approximately 10% from its previous closing price, to close at $67.20 per share on February 21, 2019.  ¶25.

The Complaint further alleges that, after market close on May 8, 2019, the Company announced its financial and operating results for the first fiscal quarter ended March 31, 2019 ("Q1 2019") and disclosed a large "investment in growth for the purpose of aggressively marketing new products."  ¶26.  During the Q1 2019 conference call held on the same day, Defendant Streit further disclosed the self-inflicted wounds caused by the Company's strategy to "attract high-value long-term customers sometimes at the expense of low value or what we call one and done customers," which "still generate revenue for us at a better than average contribution margin."  ¶27.  On this news, shares of Green Dot common stock fell $16.71 per share, or approximately 26.41% from its previous closing price, to close at $46.56 per share on May 9, 2019.  ¶28.

Then again, on August 7, 2019, the Company issued a press release in connection with its financial and operating results for the second fiscal quarter and six month period ended June 30, 2019 ("Q2 2019"), wherein the Company reduced its fiscal year outlook and noted "accelerated loss of unit sales in [its] prepaid product lines, resulting in lower active accounts from both non-reloading customers and cash reloading customers." ¶29. During the conference call to discuss the Company's Q2 2019 results, Defendant Streit explained that declines in its legacy, non-direct deposit active accounts "continued and accelerated in Q2, resulting in lower than anticipated prepaid unit sales that has caused a material reduction in active prepaid accounts." ¶30. On this news, shares of Green Dot fell $19.84 per share, or approximately 41.98% from its previous closing price, to close at $27.42 per share on August 8, 2019. ¶31.

Finally, following the market close on November 7, 2019, Green Dot announced a year-over-year decline in its active consumer business of approximately 620,000, which were mostly "one-time use accounts." ¶32. On this news, shares of Green Dot fell $5.41 per share, or approximately 18.06% from its previous closing price, to close at $24.54 per share on November 8, 2019. ¶33.

As a result of Defendants' alleged misrepresentations and omissions, and together with the precipitous decline in the market value of the Company's securities, the Green Dot Institutional Investor Group has suffered significant losses and damages in the amount of $1,071,665.53.

## III.    ARGUMENT

### A.    The Court Should Appoint The Green Dot Institutional Investor Group As Lead Plaintiff Because It Suffered The Largest Loss And Is The Most Capable Of Adequately Representing The Class

The PSLRA sets forth a procedure for the appointment of a lead plaintiff in class actions brought under the Exchange Act. 15 U.S.C. §§ 78u-4(a)(1) &

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

5

(a)(3)(B); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). First, within twenty days of filing a class action, the filing plaintiff must publish a notice advising members of the purported class of the pendency of the action, the claims asserted, the purported class period, and their right to move the court for appointment as lead plaintiff of the purported class. 15 U.S.C. § 78u-4(a)(3)(A)(i); *Cavanaugh*, 306 F.3d at 729.

Second, upon considering all motions for appointment as lead plaintiff filed in response to the notice, the court must appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff. The "presumptively most adequate plaintiff" is the person or group of persons who: (1) has either filed the complaint or made a motion to serve as lead plaintiff within 60 days after publication of the required notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 730.

As the Ninth Circuit stated in *Cavanaugh*:

> In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy."

306 F.3d at 730 (footnote omitted).

Third, the court must then "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730. Only proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff

incapable of adequately representing the class" can rebut the presumption in favor of appointing the presumptively most adequate plaintiff as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 668-69 (C.D. Cal. 2005).

### 1. The Green Dot Institutional Investor Group Has Filed A Timely Motion

Plaintiff in this Action caused notice to be published through ACCESSWIRE on December 19, 2020, the day after that the initial complaint was filed.  That notice stated that the deadline for filing to serve as lead plaintiff was February 17, 2020. *See* Lavallee Decl. Ex. A.  As February 17, 2020 is a Court holiday, the Court continued the deadline to seek appointment as lead plaintiff to February 18, 2020. *See* Order re Joint Stipulation to Revise Continuing Date Upon Which Responsive Pleading is Due (Jan. 15, 2020), ECF No. 18.  Therefore, the Green Dot Institutional Investor Group has satisfied the procedural requirements of the PSLRA by filing a the present motion seeking lead plaintiff status within the 60-day deadline and filing the requisite certification detailing its trading in Green Dot and suitability to serve as a class representative in this case.  *See* Lavallee Decl. Exs. B-D (the Green Dot Institutional Investor Group's Certifications).

### 2. The Green Dot Institutional Investor Group Is The Presumptive Lead Plaintiff Because It Has The Largest Financial Interest In The Relief Sought By The Class

The PSLRA establishes a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" who "has the largest financial interest in the relief sought by the class," and who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  "[T]he [PSLRA] 'provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of

their financial stake in the controversy.'" *Tanne*, 226 F.R.D. at 666 (quoting *Cavanaugh*, 306 F.3d at 732).

To the best of its counsel's knowledge, the Green Dot Institutional Investor Group believes that it has the largest financial interest in this litigation by any qualified movant seeking appointment as Lead Plaintiff. During the Class Period, the Green Dot Institutional Investor Group purchased 27,330 shares of Green Dot stock at a cost of $1,024,444.37 and suffered a loss of $1,071,665.53 on that investment. *See* Lavallee Decl. Ex. E. Accordingly, the Green Dot Institutional Investor Group has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is therefore entitled to the legal presumption of "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Cavanaugh*, 306 F.3d at 729-32.

### 3.     The Green Dot Institutional Investor Group Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the litigation, the Green Dot Institutional Investor Group also satisfies the applicable requirements of Rule 23. At the lead plaintiff stage, movants are required to make only a "preliminary showing" under Rule 23 that the proposed lead plaintiff's claims are typical and adequate. *Roberti v. OSI Sys., Inc.*, No. CV-13-09174-MWF (VKBx), 2014 WL 12845727, at *3 (C.D. Cal. Mar. 17, 2014); *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 WL 682882, at *2-3 (C.D. Cal. Mar. 2, 2012); *see also Cavanaugh*, 306 F.3d at 730; *Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. 2004).

#### a.     The Green Dot Institutional Investor Group's Claims Are Typical Of The Claims Of The Class

The Green Dot Institutional Investor Group's claims are typical of the claims of other Class members. The typicality requirement of Federal Rule of Civil

Procedure 23 is satisfied when the lead plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members and all claims are based on the same legal theory. *See Adams v. Biolase, Inc.,* No. 8:13-CV-1300-JLS-FFMx, 2013 WL 12128806, at *3 (C.D. Cal. Dec. 10, 2013); *see also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ("Typicality … is said to require that the claims of the class representatives be typical of those of the class, and to be satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (citation and internal quotation marks omitted), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005); *Ferrari*, 225 F.R.D. at 606-07 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)); *Tanne*, 226 F.R.D. at 666-67.

Here, the Green Dot Institutional Investor Group, like other Class members, seeks to hold Defendants liable for the consequences of their violations of the federal securities laws. In addition, the Green Dot Institutional Investor Group acquired Green Dot securities during the Class Period at prices artificially inflated by the Defendants' false statements and material omissions, and suffered damages as a result. The Green Dot Institutional Investor Group's claims, therefore, arise from the same events and are based on the same legal theory as the Class' claims.

Because there are well-defined common questions of law and fact involved in this case, the claims asserted by the Green Dot Institutional Investor Group, which are not subject to any unique defenses, are typical of the claims of other proposed Class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

9

**b.      The Green Dot Institutional Investor Group Will Fairly And Adequately Represent The Interests Of The Class**

The adequacy of representation requirement of Rule 23 is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Rubke v. Capitol Bancorp, Ltd.*, No. C 05-4800 PJH, 2006 WL 734390, at *2-3 (N.D. Cal. Mar. 21, 2006). "This prong is satisfied where the lead plaintiff's attorneys are qualified and where its interests are not antagonistic to those of the class." *Feyko*, 2012 WL 682882, at *3 (citations and internal quotation marks omitted). Accordingly, the Ninth Circuit has held that "[r]esolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

The Green Dot Institutional Investor Group fully meets the adequacy requirement. First, the Green Dot Institutional Investor Group, like every member of the Class, purchased Green Dot stock during the Class Period and suffered losses from Defendants' untrue, false and/or misleading statements and material omissions. The Green Dot Institutional Investor Group's interests, and those of its counsel, are therefore fully aligned with, and not adverse to, those of the Class. There are no facts that indicate any conflicts of interest between the Green Dot Institutional Investor Group and the other Class members. Moreover, the Green Dot Institutional Investor Group has submitted the requisite investor certifications which confirm that the Green Dot Institutional Investor Group understands and is willing to assume the responsibilities of a lead plaintiff. *See* Lavallee Decl. Exs. B-D.

Additionally, as discussed in Section III.B below, its selected counsel is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated their ability to effectively prosecute complex securities class actions and other forms of shareholder litigation.

For these reasons, the Green Dot Institutional Investor Group is a more than adequate class representative.

### 4. The Green Dot Institutional Investor Group is Precisely the Type of Lead Plaintiff Congress Envisioned in Enacting the PSLRA

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, the Green Dot Institutional Investor Group is the paradigmatic lead plaintiff envisioned by Congress in its enactment of the PSLRA – sophisticated institutional investors with a substantial financial interest in the litigation. *See* S. Rep. No. 104-98, at *11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (1995) ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs . . . ."); H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class action will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Lloyd v. CVB Fin. Corp.*, No. CV 10-06256 MMM (PJWx), 2011 WL 13128303, at *5 (C.D. Cal. Jan. 21, 2011) (noting that the PSLRA "establishes a preference that sophisticated institutional investors direct the course of securities cases"); *see also In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001) ("Congress intended that the lead plaintiff procedures under the PSLRA would 'encourage institutional investors to take a more active role in securities class action lawsuits.'") (citation omitted).

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

11

The members of the Green Dot Institutional Investor Group have also demonstrated their commitment to working together cohesively in the prosecution of this Action.  *See* Joint Declaration, Lavallee Decl. Ex. F.  Courts within the Ninth Circuit, including courts within this District, have repeatedly endorsed the appointment of small, cohesive groups of investors to lead securities class actions upon a determination they are "fully capable of representing the class's interests effectively." *In re Aqua Metals Sec. Litig.*, No. 17- cv-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018) (appointing lead plaintiff group which included Plymouth County); *see, e.g., McCracken v. Edwards Lifesciences Corp.*, No. 813CV1463JLSRNBX, 2014 WL 12694135, at *3 (C.D. Cal. Jan. 8, 2014) (appointing small group of investors giving weight to certain members' prior lead plaintiff experience); *In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 455 (C.D. Cal. 2002) (appointing group of two pension funds).

Here, the Green Dot Institutional Investor Group is a small, cohesive group of sophisticated institutional investors with a prior successful lead plaintiff experience.  Moreover, as set forth in the Joint Declaration, each member of the Green Dot Institutional Investor Group determined on their own volition to jointly seek appointment as Lead Plaintiff and litigate this Action independently of counsel and in the best interests of the Class.

Prior to deciding to seek appointment as Lead Plaintiff, Plymouth County engaged in separate conversations with Labaton Sucharow and Berman Tabacco concerning the Action.  During these conversations, Plymouth County learned of the extensive investigations undertaken by both firms, and ultimately retained both firms, instructing them to work together in order to maximize their respective investigative findings.  Further, Plymouth County, GPCPF, and New England Iron Workers, in their respective discussions with counsel, all expressed an interest in partnering with likeminded sophisticated institutional investors with lead plaintiff

experience. After learning of each other's mutual interests, Plymouth County, GPCPF, and New England Iron Workers independently determined that, based on their collective experience, sophistication, and resources, moving jointly for appointment as Lead Plaintiff would be in the best interests of the Class. *See Versata, Inc.*, 2001 WL 34012374, at *6-7 (finding a group composed of sophisticated investors that submitted declarations "providing background information and articulating why [each] member is seeking lead plaintiff status as part of the asserted group" to be "sufficiently cohesive and structured to maximize its individual strengths and sophisticated business knowledge" and to have "exhibited a cooperative spirit").

Importantly, the Joint Declaration "establishes the members' commitment to vigorously pursue the litigation, to oversee counsel to ensure the case is efficiently litigated in the class's best interests, to work collaboratively, and to proceed quickly." *In re Snap Inc. Sec. Litig.*, No. 217CV03679SVWAGR, 2019 WL 2223800, at *4 (C.D. Cal. Apr. 1, 2019). The Joint Declaration also sets forth that the members of the Green Dot Institutional Investor Group are determined to regularly communicate with each other, with or without counsel, and are willing to participate in discovery and attend settlement hearings. *See Edwards Lifesciences Corp.*, 2014 WL 12694135, at *4 (finding joint declaration's communication procedures and affirmation that proposed group would participate in discovery and settlement persuasive in appointing group).

Finally, the Joint Declaration demonstrates that the Green Dot Institutional Investor Group has already taken measures to ensure the vigorous and efficient prosecution of this Action. Specifically, the representatives of the Green Dot Investor Group, prior to the filing of its motion, held a telephonic meeting to discuss, among other things, the allegations in the litigation, merits of the claims against Defendants, the duties of the PSLRA lead plaintiff, and the benefits of

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL                                                                                    13

sharing resources and joint decision making. Notably, to ensure the Action is litigated in an efficient and non-duplicative manner, the Green Dot Investor Group has instructed Labaton Sucharow and Berman Tabacco to enter into a Joint Prosecution Agreement which would govern their activities in this litigation, their reporting to and oversight by the Green Dot Investor Group, and the allocation of litigation responsibilities. To this end, the Green Dot Investor Group has directed their proposed Co-Lead Counsel to provide this agreement to the Court upon request for *in camera* review.

Accordingly, the Green Dot Investor Group has clearly established its utmost commitment to zealously and efficiently representing the Class in order to maximize the potential recovery in the Action. Therefore, the appointment of the Green Dot Institutional Investor Group is not only appropriate, but comports with the intent of the PSLRA and is in the best interests of the Class.

**B.    The Court Should Approve the Green Dot Institutional Investor Group's Choice Of Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734. The Court should not disturb the lead plaintiff's selection of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And, indeed, it did not. While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

The Green Dot Institutional Investor Group has selected and retained Labaton Sucharow LLP and Berman Tabacco as the proposed Co-Lead Counsel for the Class.

Labaton Sucharow LLP has significant experience in prosecuting securities class actions and has excelled as lead counsel in numerous landmark securities class actions throughout the Unites States on behalf of defrauded investors, including cases in this District.  Labaton Sucharow LLP served as a lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $117.5 million settlement in *In re Mercury Interactive Corp. Securities Litigation*, No. 05-cv-3395 (N.D. Cal.).  In addition, Labaton Sucharow LLP was a lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which achieved a settlement of $624 million – one of the largest securities fraud settlements arising from the financial crisis of 2007 and 2008, and also secured a $160.5 million settlement as lead counsel in *In re Broadcom Corp. Class Action Litigation*, No. 06-cv-5036 (C.D. Cal.).  Labaton Sucharow LLP presently serves as lead and co-lead counsel in several significant investor class actions.  *See* Lavallee Decl. Ex. G.

Berman Tabacco is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous matters on behalf of investors, throughout the United States, including cases in this District, as detailed in the firm's resume.  *See* Lavallee Decl. Ex. H.  The firm has been ranked as a "Top Ten Plaintiffs' Firm" by *Benchmark Litigation*.  *Id.*  Since the passage of the PSLRA, Berman Tabacco has recovered billions of dollars on behalf of defrauded investors, including:  *In re BP PLC Sec. Litig.*, No. 10-md-2185 (S.D. Tex.) (as co-lead counsel representing the Ohio Public employees retirement system, the firm reached a $175 million settlement); *In re IndyMac Mortgage-Backed Sec. Litig.*,

No. 09-cv-04583-LAK (S.D.N.Y.) (as sole lead counsel representing the Wyoming State Treasurer and the Wyoming Retirement System, the firm reached settlements worth $346 million); *In re 2008 Fannie Mae Sec. Litig.*, No. 08-civ-07831-PAC (S.D.N.Y) (as co-lead counsel representing the Massachusetts Pension Reserves Investment Management Board, the firm achieved a $170 million settlement). *Id.* Berman Tabacco has the skill and knowledge necessary to enable them to prosecute this action effectively and expeditiously.

Moreover, not only are Labaton Sucharow and Berman Tabacco each well-qualified and experienced law firms in their own right, but they have a successful track record of working together cooperatively as co-lead counsel. Specifically, Labaton Sucharow and Berman Tabacco secured a $294.4 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.).

Thus, the Court can be assured that, by approving the Green Dot Institutional Investor Group's choice of counsel, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve the Green Dot Institutional Investor Group's selection of Labaton Sucharow LLP and Berman Tabacco as Co-Lead Counsel for the Class.

## IV.   CONCLUSION

For the foregoing reasons, the Green Dot Institutional Investor Group respectfully requests that this Court: (1) appoint the Green Dot Institutional Investor Group as Lead Plaintiff for the Class in this Action and all subsequently filed, related actions; and (2) approve Labaton Sucharow LLP and Berman Tabacco as Co-Lead Counsel for the Class.

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

16

DATED: February 18, 2020          Respectfully submitted,


By:    /s/ Nicole Lavallee
          Nicole Lavallee

Joseph J. Tabacco, Jr.
Jeffrey V. Rocha
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382
Email: jtabacco@bermantabacco.com
          nlavallee@bermantabacco.com
          jrocha@bermantabacco.com

Christopher J. Keller
Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
Email: ckeller@labaton.com
          ebelfi@labaton.com
          fmcconville@labaton.com

*Counsel for Movant Green Dot*
*Institutional Investor Group and*
*Proposed Co-Lead Counsel for the Class*

Guillaume Buell
**THORNTON LAW FIRM LLP**
One Lincoln Street
Boston, MA  02111
Telephone: (617) 720-1333
Facsimile:  (617) 720-2445
Email: gbuell@tenlaw.com

*Additional Counsel for Movant Green Dot
Institutional Investor Group*

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO THE GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

18

# CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered users via the e-mail addresses on the court's Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the court's Manual Notice List.

*Nicole Lavallee*
Nicole Lavallee

Joseph J. Tabacco, Jr.
Jeffrey V. Rocha
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermantabacco.com
        nlavallee@bermantabacco.com
        jrocha@bermantabacco.com

Christopher J. Keller
Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: ckeller@labaton.com
        ebelfi@labaton.com
        fmcconville@labaton.com

*Counsel for Movant Green Dot
Institutional Investor Group and
Proposed Co-Lead Counsel for the Class*

[Case No. 2:19-cv-10701-DDP-E] MEM. OF P&A ISO GREEN DOT INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF & FOR APPROVAL OF HIS SELECTION OF LEAD COUNSEL

Guillaume Buell
**THORNTON LAW FIRM LLP**
One Lincoln Street
Boston, MA  02111
Telephone: (617) 720-1333
Facsimile:  (617) 720-2445
Email: gbuell@tenlaw.com

*Additional Counsel for Movant Green Dot
Institutional Investor Group*