ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS (259916)
TRICIA L. McCORMICK (199239)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
triciam@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN KOFFSMON, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>GREEN DOT CORPORATION, et al.,<br><br>                              Defendants. | Case No. 2:19-cv-10701-DDP-E<br><br>CLASS ACTION<br><br>NEW YORK HOTEL TRADES COUNCIL & HOTEL ASSOCIATION OF NEW YORK CITY, INC. PENSION FUND'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF<br><br>DATE:     March 30, 2020<br>TIME:     10:00 a.m.<br>CTRM:    9C<br>JUDGE:   Hon. Dean D. Pregerson |

4832-1003-5895.v2

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND BACKGROUND .................................................... 1

II.   ARGUMENT ........................................................................................... 4

    A.    The Pension Fund Possesses the Largest Financial Interest ................ 4

    B.    The IIG's Joint Declaration Does Not Support Aggregation in this Case .......................................................................................... 7

    C.    The Remaining Movants Do Not Possess the Largest Financial Interest ......................................................................................... 13

    D.    The Pension Fund Meets All of the PSLRA's Requirements and Should Be Appointed Lead Plaintiff ....................................... 13

III.  CONCLUSION ................................................................................... 14

4832-1003-5895.v2

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Apple v. LJ Int'l, Inc.*,
    No. CV 07-6076 GAF,
    2008 U.S. Dist. LEXIS 12618 (C.D. Cal. Feb. 8, 2008) ...................................... 5

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) ............................................................ 3, 7

*Bhojwani v. Pistiolis*,
    No. 06 Civ. 13761 (CM),
    2007 U.S. Dist. LEXIS 52139 (S.D.N.Y. June 26, 2007) ................................... 5

*Buettgen v. Harless*,
    263 F.R.D. 378 (N.D. Tex. 2009) .................................................................... 2

*Crihfield v. CytRx Corp.*,
    No. CV 16-05519 SJO,
    2016 U.S. Dist. LEXIS 181615 (C.D. Cal. Oct. 26, 2016) ......................... *passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C 07-06140 MHP,
    2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) ................... 3, 6, 11, 12

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ..................................................................... 12

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
    No. 8:15-cv-00865-AG-JCG (C.D. Cal.) ........................................................... 9

*In re Bally Total Fitness Sec. Litig.*,
    No. 04 C 2430,
    2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005) ...................................... 5

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .................................................................. 1, 5, 13

4832-1003-5895.v2

**Page**

*In re Cloudera, Inc. Sec. Litig.*,
 No. 19-CV-03221-LHK,
 2019 U.S. Dist. LEXIS 216750 (N.D. Cal. Dec. 16, 2019) ....................6, 10, 12

*In re CMED Sec. Litig.*,
 No. 11 Civ. 9297 (KBF),
 2012 U.S. Dist. LEXIS 47785 (S.D.N.Y. Apr. 2, 2012)...................................... 6

*In re Doral Fin. Corp. Sec. Litig.*,
 414 F. Supp. 2d 398 (S.D.N.Y. 2006) ............................................................... 13

*In re E.spire Commc'ns, Sec. Litig.*,
 231 F.R.D. 207 (D. Md. 2000) ..................................................................... 8, 13

*In re Enron Corp. Sec. Litig.*,
 206 F.R.D. 427 (S.D. Tex. 2002) ................................................................... 8, 9

*In re Gemstar-TV Guide Int'l Sec. Litig.*,
 209 F.R.D. 447 (C.D. Cal. 2002) ...............................................................*passim*

*In re Gentiva Sec. Litig.*,
 281 F.R.D. 108 (E.D.N.Y. 2012) ....................................................................... 5

*In re LightInTheBox Holding Co., Sec. Litig.*,
 No. 13 Civ. 6016 (PKC),
 2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21, 2013) ............................... 12

*In re Netflix, Inc., Sec. Litig.*,
 No. 12-0225 SC,
 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 27, 2012) ................................. 7

*In re Network Assocs., Inc., Sec. Litig.*,
 76 F. Supp. 2d 1017 (N.D. Cal. 1999).............................................................2, 7

*In re Peregrine Sys. Sec. Litig.*,
 No. 02cv870-J (RBB),
 2002 U.S. Dist. LEXIS 27690 (S.D. Cal. Oct. 9, 2002)..................................... 2

*In re Petrobras Sec. Litig.*,
 104 F. Supp. 3d 618 (S.D.N.Y. 2015)................................................................. 6

- iii -

**Page**

*In re Pfizer Inc. Sec. Litig.*,
    233 F.R.D. 334 (S.D.N.Y. 2005)...................................................................5, 6

*In re Silicon Storage Tech., Inc.*,
    No. C 05-0295-PJH,
    2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) ....................................8

*In re Watchguard Sec. Litig.*,
    No. C05-678JLR,
    2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005)................................6

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v.
    FXCM Inc.*,
    No. 15-CV-3599 (KMW),
    2015 U.S. Dist. LEXIS 153202 (S.D.N.Y. Nov. 12, 2015) ...............................12

*Isaacs v. Musk*,
    No. 18-cv-04865-EMC,
    2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018)........................11, 12

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015).........................................................12, 13

*Makhlouf v. Tailored Brands, Inc.*,
    No. H-16-0838,
    2017 U.S. Dist. LEXIS 41872 (S.D. Tex. Mar. 23, 2017) ...................................6

*Mannkind Sec. Actions*,
    No. CV 11-00929 GAF (SSx),
    2011 U.S. Dist. LEXIS 164320 (C.D. Cal. Apr. 27, 2011)

*Nicolow v. Hewlett Packard Co.*,
    No. 12-05980 CRB,
    2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ....................................6

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
    275 F.R.D. 187 (S.D.N.Y. 2011)......................................................................12

- iv -

4832-1003-5895.v2

**Page**

*Rosian v. Magnum Hunter Res. Corp.*,
No. 13 Civ. 2668 (KBF),
2013 U.S. Dist. LEXIS 146236 (S.D.N.Y. Oct. 7, 2013) ................................... 7

*Sakhrani v. Brightpoint, Inc.*,
78 F. Supp. 2d 845 (S.D. Ind. 1999) ................................................................. 5

*Tan v. NIO Inc.*,
No. 19-CV-1424 (NGG) (VMS),
2020 WL U.S. Dist. LEXIS 36623 (S.D.N.Y. Mar. 3, 2020) ............................. 8

*Teran v. Subaye, Inc.*,
No. 11 Civ. 2614 (NRB),
2011 U.S. Dist. LEXIS 105774 (S.D.N.Y. Sep. 16, 2011) ........................... 6, 12

*Tsirekidze v. Syntax-Brillian Corp.*,
No. CV-07-2204-PHX-FJM,
2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 7, 2008) .................................... 2

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) .............................................................. 12

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
No. 05-cv-4617 (RJH),
2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 25, 2006) ..................................... 6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(3)(B)(iii) ...................................................................................... 1, 10
§78u-4(a)(3)(B)(iii)(I) ...................................................................................... 13
§78u-4(a)(3)(B)(iii)(II) ..................................................................................... 14

Federal Rules of Civil Procedure
Rule 23 ........................................................................................................ 1, 13

- v -

New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund (the "Pension Fund") respectfully submits this memorandum of law in opposition to the competing motions for appointment as lead plaintiff.

## I.    INTRODUCTION AND BACKGROUND

Five motions were timely filed by class members seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  According to the unambiguous language of the PSLRA, "[t]he 'most capable' plaintiff – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii).[2]  With a loss exceeding $662,000, it is the Pension Fund that suffered the single largest loss of any class member that has moved to be appointed lead plaintiff.  The Pension Fund also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See* ECF No. 34 at 5-7.  Accordingly, the Pension Fund's motion should be granted.

By contrast, the entity claiming the next largest financial interest (Plymouth County) was teamed up with two other unaffiliated pension funds by their counsel in an attempt to collectively assert the largest loss.  Generically dubbed the "Institutional Investor Group," the multiple law firms representing the three disparate funds aggregated their individual losses in order to ***collectively*** claim a loss

---

[1]  The motions were filed by: (1) the Pension Fund; (2) a collection of three unrelated investors which have dubbed themselves the "Institutional Investor Group" ("IIG"), Plymouth County Retirement Association ("Plymouth County"), Greater Pennsylvania Carpenters' Pension Fund ("GPCPF"), and Iron Workers District Council of New England Pension Fund ("Iron Workers"); (3) the Austin Fire Fighters Relief and Retirement Fund ("Austin FF") which joined together with individual John Mutsavage (together, the "Austin Fire Fighters Group"); (4) the City of Sarasota General Employees' Defined Benefit Pension Plan and City of Sarasota Firefighters' Pension Plan (the "City of Sarasota Funds"); and (5) Fred Schaebsdau. *See* ECF Nos. 19, 23, 26, 29 and 33.  On March 9, 2020, the City of Sarasota Funds filed a notice of non-opposition to the competing motions.  *See* ECF No. 43.

[2]  Unless otherwise noted, all emphasis is added and citations are omitted.

- 1 -

4832-1003-5895.v2

of over $1 million.  Significantly, however, no member of the IIG *alone* claims a larger financial interest than the Pension Fund:

| ENTITY | LOSS |
|---|---|
| The Pension Fund | $662,539 |
| Plymouth County | $592,917 |
| GPCPF | $301,353 |
| Iron Workers | $177,338 |

And, while the PSLRA contemplates the appointment of a "person or group of persons" as lead plaintiff, "courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *In re Gemstar-TV Guide Int'l Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002) (listing cases); *Mannkind Sec. Actions*, No. CV 11-00929 GAF (SSx), 2011 U.S. Dist. LEXIS 164320, at *11-*13 (C.D. Cal. Apr. 27, 2011) (same).  Indeed, as Judge Nora Manella recognized long ago in *Gemstar*, "'[t]o allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct the litigation.'" 209 F.R.D. at 451.[3]  Moreover, "nothing in the PSLRA authorizes institutional plaintiffs to consolidate their losses for the sole purpose of leapfrogging other movants." *In re Peregrine Sys. Sec. Litig.*, No. 02cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690, at *52 (S.D. Cal. Oct. 9, 2002).

The IIG will no doubt highlight their boilerplate "Joint Declaration" in an attempt to justify their aggregation.  The Joint Declaration, however, does nothing

---

[3]  *See also Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 7, 2008) ("when unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation"); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999); *Buettgen v. Harless*, 263 F.R.D. 378, 381-82 (N.D. Tex. 2009).

- 2 -

4832-1003-5895.v2

to dispel the artificiality of the group or support its legitimacy.  *Compare* ECF No. 25-6 *with Gemstar*, 209 F.R.D. 447; *Crihfield v. CytRx Corp.*, No. CV 16-05519 SJO (SKx), 2016 U.S. Dist. LEXIS 181615, at *13 (C.D. Cal. Oct. 26, 2016).  To the contrary, the Joint Declaration is filled with conclusory statements and aspirational assurances about the Group's members being able to work together.  It is deafeningly silent, however, as to ***why*** exactly the Group was formed, ***why*** one institutional investor alone cannot adequately serve in this case as lead plaintiff, and ***how*** the Group will operate.  "Simply stated, this conclusory declaration has little or no substance." *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *28 (N.D. Cal. Aug. 22, 2008).  In other words, the Joint Declaration fails to make the evidentiary showing required of a grouping of disparate class members who wish to have their losses aggregated for purposes of the PSLRA's financial interest calculation.[4]

"[T]he goal of the [PSLRA] is to reduce the 'collective action' problems that widely dispersed clients face in supervising their attorneys.  To that end, it makes sense that one client will provide more control than a disjointed group concocted by plaintiffs' counsel – ***even if the group consists of institutional investors***." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1152-53 (N.D. Cal. 1999).  When the losses of each class member before the Court are considered, it is readily apparent that the Pension Fund with a $662,539 loss is the movant which possesses the largest financial interest in the relief sought by the class.

The members of the IIG (each of whom suffered smaller losses than the Pension Fund), as well as the remaining lead plaintiff movants (each of whom likewise claims a smaller loss than the Pension Fund), cannot be appointed lead

---

[4]  The Austin Fire Fighters Group also consists of two unrelated investors, and, the arguments herein also apply to this grouping.  However, because the Austin Fire Fighters Group possesses a smaller loss (even combined) than the Pension Fund, it cannot even attempt to argue that it possesses the largest financial interest in the relief sought by the class.

- 3 -

4832-1003-5895.v2

plaintiff. Their motions should be denied. It is the Pension Fund which satisfies all of the PSLRA's requirements, and it should be appointed Lead Plaintiff.

## II.    ARGUMENT

### A.    The Pension Fund Possesses the Largest Financial Interest

Individually, the members of the IIG each possess a smaller financial interest than the Pension Fund. Thus, the only way the IIG can lay claim to having the largest financial interest is to aggregate Plymouth County's, GPCPF's, and Iron Workers' losses:

| MOVANT | SHARES PURCHASED | NET FUNDS EXPENDED | LOSS |
|---|---|---|---|
| Pension Fund | 25,143 | ($662,539) | ($662,539) |
| IIG: | | | |
| Plymouth County | 14,103 | ($592,917) | ($592,917) |
| GPCPF | 7,590 | ($301,353) | ($301,353) |
| Iron Workers | 5,637 | ($130,114) | ($177,338) |
| Austin Fire Fighters Group: | | | |
| Austin FF | 5,950 | ($442,541) | ($295,123) |
| Mutsavage | 9,470 | ($144,945) | ($144,945) |
| City of Sarasota Funds | 5,130 | ($218,754) | ($218,754) |
| Schaebsdau | 1,000 | ($76,270) | ($51,806) |

"'One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation. . . .'" *Gemstar*, 209 F.R.D. at 451; *see also Crihfield*, 2016 U.S. Dist. LEXIS 181615, at *13. "That [the] PSLRA does not explicitly prohibit a group of persons from being appointed lead [plaintiff] is not, in the Court's view, a

- 4 -

4832-1003-5895.v2

sufficient reason to allow otherwise unrelated group members to aggregate their losses for the sole purpose of claiming to have the largest financial interest in the relief sought by the class." *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM)(KNF), 2007 U.S. Dist. LEXIS 52139, at *21 (S.D.N.Y. June 26, 2007); *In re Bally Total Fitness Sec. Litig.*, No. 04 C 2430, 2005 U.S. Dist. LEXIS 6243, at *12-*13 (N.D. Ill. Mar. 15, 2005) ("Accordingly, ***we will consider the individual investors*** in the groups ***separately*** as lead plaintiff candidates, but we will not recognize the artificial aggregations of the [groups].") (citing *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845 (S.D. Ind. 1999)). [5]   And, it is not simply that these three funds have no relationship to one another, but rather the fact is, "[n]othing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA." *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005).

While the Ninth Circuit has expressly reserved judgement on this important issue (*Cavanaugh*, 306 F.3d at 731 n.8), the judges of this Court have recognized that to permit indiscriminate aggregation would "'encourage lawyers to direct the litigation.'" *Crihfield*, 2016 U.S. Dist. LEXIS 181615, at *11; *Apple v. LJ Int'l, Inc.*, No. CV 07-6076 GAF (JWJx), 2008 U.S. Dist. LEXIS 12618, at *10 (C.D. Cal. Feb. 8, 2008) (stressing the importance that "an aggregation of putative plaintiffs be closely scrutinized").

In *Crihfield*, Judge James S. Otero considered this issue following the Ninth Circuit's decision in *Cavanaugh*, carefully assessing the aggregation of multiple

---

[5]   While some courts may make an exception and appoint a small group of unrelated investors where one of the group's members has the largest individual loss, that is ***not*** the situation here where the IIG members do ***not*** individually have the largest financial interest, but, rather, are attempting to rely upon ***an aggregation of*** their losses to claim the largest financial interest. *See In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119 (E.D.N.Y. 2012) ("The Court is particularly skeptical of the proposed amalgamation, because this is not the situation where there is a pre-existing relationship or where the incurred losses of the separate institutional investors individually exceed the losses of any other.").

- 5 -

class members' losses for purposes of calculating financial interest.  2016 U.S. Dist. LEXIS 181615, at *13.  Judge Otero specifically declined to appoint a group of unrelated class members who claimed the largest financial interest only if the group members' losses were combined and instead appointed as lead plaintiff the class member with the single largest loss.  *Id.*; *see also Gemstar*, 209 F.R.D. at 451 (rejecting aggregation of unrelated group's losses).[6]

As the chart above demonstrates, each of the three members of the IIG suffered smaller losses than the Pension Fund.  In addition, the Pension Fund purchased more shares and expended more net funds than any other individual movant.[7]  Under all of the relevant factors, the Pension Fund clearly possesses the

---

[6]  *See also In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2019 U.S. Dist. LEXIS 216750, at *19-*22 (N.D. Cal. Dec. 16, 2019) (declining to appoint two unrelated institutional investors because "'courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff'"); *Makhlouf v. Tailored Brands, Inc.,* No. H-16-0838, 2017 U.S. Dist. LEXIS 41872, at *22-*23 (S.D. Tex. Mar. 23, 2017) (declining to aggregate the losses of two unrelated institutional investors, and instead appointing the institution with single largest loss); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) (finding groups of unrelated institutions "lawyer-driven" and stating that "many courts, including this one, are skeptical of such arrangements when they are the product of an artificial grouping designed merely to qualify as lead plaintiff") (citing cases); *Teran v. Subaye, Inc.*, No. 11 Civ. 2614 (NRB), 2011 U.S. Dist. LEXIS 105774, at *10 (S.D.N.Y. Sep. 16, 2011) (declining to aggregate the loss of a group where another movant possessed the single largest financial interest); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *22 (declining to aggregate the losses of groups of unrelated entities because doing so would be "acting contrary to the purposes of the PSLRA"); *Pfizer*, 233 F.R.D. at 337 (declining to appoint a group of unrelated institutional investors because "[n]othing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA . . . and I reject it").

[7]  While some courts look at the number of net shares purchased at the end of the Class Period as another factor in determining financial interest, where, as here, there are partial disclosures of the fraud throughout the Class Period, net shares purchased is not "a good indicator of financial loss."  *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923, at *11 (W.D. Wash. July 13, 2005); *see also Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *10-*14 (S.D.N.Y. Jan. 25, 2006); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876, at *20 (N.D. Cal. Mar. 4, 2013); *In re CMED Sec. Litig.*, No. 11 Civ. 9297 (KBF), 2012 U.S. Dist. LEXIS 47785, at *15 n.8 (S.D.N.Y. Apr. 2, 2012) (the court "is not aware of any case in this Circuit . . . that has calculated losses [under the net shares method] for purposes of appointing a lead plaintiff where the pleadings allege partial corrective

- 6 -

4832-1003-5895.v2

largest financial interest in the relief sought by the class of any class member which has sought to be appointed lead plaintiff.  Consequently, the Court should not permit the IIG to leapfrog the Pension Fund's indisputably larger individual financial interest in an attempt to claim the PSLRA's presumption.  *See Aronson*, 79 F. Supp. 2d at 1152-53 (appointing institutional investor with largest individual loss); *see also In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, 2012 U.S. Dist. LEXIS 59465, at *16-*19 (N.D. Cal. Apr. 27, 2012) (declining to aggregate group's individual losses, particularly since another movant "has the largest loss of any individual movant").[8]

### B.     The IIG's Joint Declaration Does Not Support Aggregation in this Case

When asked to consider aggregating the losses of previously unaffiliated entities, courts require a group to "'provide appropriate information about its members, structure, and intended functioning,'" including descriptions of its members, and "'any pre-existing relationships among them; an explanation of how [the group] was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.'"  *Network Assocs.*, 76 F. Supp. 2d at 1026.  Here, the IIG's Joint Declaration falls far short of evidencing that its origins were organic.

---

disclosures").  The complaint in this case alleges partial disclosures that caused a significant fall in the Company's stock, on February 20, 2019, May 8, 2019, and August 7, 2019, as well as the final disclosure on November 7, 2019.  *See* ECF No. 1 at ¶¶24-34.  Because of these partial disclosures, net shares purchased at the end of the Class Period is not indicative of financial interest in this case.

[8]   As at least one member of the IIG is aware, over the last decade, courts have become much less inclined to appoint multiple class members who aggregate their losses in order to claim the largest financial interest over a movant with the single largest loss.  *See, e.g., Rosian v. Magnum Hunter Res. Corp.*, No. 13 Civ. 2668 (KBF), 2013 U.S. Dist. LEXIS 146236, at *9-*13 (S.D.N.Y. Oct. 7, 2013) (court declined to aggregate the losses of a group including IIG member Iron Workers over the losses of a movant with the largest individual loss).

- 7 -

Indeed, "the group's testimony about the members' involvement in the case thus far and their plans for cooperation moving forward . . . represent little more than the type of 'conclusory assurances' the courts have repeatedly rejected as inadequate." *Tan v. NIO Inc.*, No. 19-CV-1424 (NGG) (VMS), 2020 U.S. Dist. LEXIS 36623, at \*14-\*15 (S.D.N.Y. Mar. 3, 2020). First, the IIG's Joint Declaration confirms that the members of the Group did ***not*** have a pre-existing relationship and were, in fact, brought together by counsel. *See* ECF No. 25-6. The Joint Declaration implicitly acknowledges as much, stating that "Plymouth County expressed that it would be interested in partnering with other sophisticated institutional investors." *Id.* at ¶10. Thus, it was counsel that connected Plymouth County and the other two members of the group. *See id*. "Any subsequent relationship that the members of these groups may have developed, after being introduced to each other by their lawyers, is insufficient in the court's view to qualify them as 'most adequate' lead plaintiff." *In re Silicon Storage Tech., Inc.*, No. C 05-0295-PJH, 2005 U.S. Dist. LEXIS 45246, at \*6-\*8, \*33 (N.D. Cal. May 3, 2005) (rejecting group of three movants that aggregated their losses to claim the largest financial interest).

The Joint Declaration also states that Plymouth County told its counsel that it was interested in working with like-minded institutions, yet nowhere does it explain ***why*** Plymouth ***needed*** to join together with one, let alone, ***two*** other class members to fulfill the lead plaintiff role. *See Crihfield*, 2016 U.S. Dist. LEXIS 181615, at \*12. And, it cannot be that Plymouth County's questionable track record concerning its service as a lead plaintiff, including its oversight of counsel in complex class action litigation, either warrants or justifies this artificial grouping. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002) (holding that an attempt "to detract from obstacles that [a movant] would face as a single applicant" is not justification for an artificial grouping of institutional investors). The members of the group have also shown they are "either 'unable or unwilling to agree on a single counsel to act on its behalf and serve as its voice.'" *In re E.spire Commc'ns, Sec.*

- 8 -

4832-1003-5895.v2

*Litig.*, 231 F.R.D. 207, 213-14 (D. Md. 2000).  So, not only does the record not "'contain any credible explanation for the group's creation,'" the group "'does not explain why it must be represented by two firms, each of which appears independently capable of prosecuting this action.'"  *Crihfield*, 2016 U.S. Dist. LEXIS 181615, at \*12; *see also Gemstar*, 209 F.R.D. at 452 (group's claim that it "'thoughtfully opted to join together'" did "not explain why joinder is necessary or beneficial to this litigation").

The Joint Declaration is also notably silent as to any details on ***how*** the class would benefit from the added expense of having three institutional investors (as opposed to one), as lead plaintiff, including expenses related to multiple depositions, additional discovery, and duplicative travel to hearings and/or trial.  Instead, the Joint Declaration offers platitudes and conclusory statements such as the members "concluded that joint appointment would contribute to the prosecution of the action," and that "joint appointment will benefit the Class by providing the Class with leadership that benefits from the combined experience, qualifications, resources and perspectives" of the members.  ECF No. 25-6 at ¶¶10-11.  Nothing in the Joint Declaration addresses why ***one*** qualified institutional investor would not be able to sufficiently prosecute this action. [9]  In short, there is "no clear or persuasive reason why [these movants] have joined together."  *Enron*, 206 F.R.D. at 455.

The IIG's mechanism to oversee the litigation further demonstrates the Group's ***in***adequacy.  The members of the IIG are left to speculate that they "do not anticipate that any material disagreements will arise," and that they aspirationally

---

[9]    To the contrary, recently in this District, an institutional investor serving as sole lead plaintiff, represented by a single law firm (Robbins Geller Rudman & Dowd LLP), effectively and efficiently prosecuted a securities class action case through trial before Judge Andrew J. Guilford, where the jury returned a verdict in favor of the shareholder class, finding that defendants committed securities fraud and awarding shareholders a verdict that will yield class members tens of millions of dollars in damages.  *See HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG-JCG (C.D. Cal.).

- 9 -

4832-1003-5895.v2

hope "to reach consensus with respect to all litigation decisions." ECF No. 25-6 at ¶19. Moreover, they "have agreed to set any such disputes to a majority vote" which further complicates the lead plaintiff structure because the two members of the group which collectively claim losses of $478,685 (GPCPF's $301,353 and Iron Workers' $177,332), would be empowered to override the vote of Plymouth County, the member with losses of $592,979 (not to mention the Pension Fund's even greater loss of over $622,000). *Id.* This would not just be inconsistent with the purposes of the PSLRA, it would turn the statute on its head, enabling movants with the ***smallest*** financial interest to control the lead plaintiff's decisions. 15 U.S.C. §78u-4(a)(3)(B)(iii).

Providing little in the way of substantive evidence, the IIG instead relies upon trite phrases such as its members: (i) "are highly motivated to maximize the Class' recovery"; (ii) have a "shared desire to maximize the recovery for the Class"; and (iii) possess a "shared view that a partnership is well suited for this litigation." ECF No. 25-6 at ¶¶8-13. Judge Otero's opinion in *Crihfield* is particularly instructive in this regard. There, the court declined to appoint a lead plaintiff group comprised of multiple class members despite the submission of a joint declaration, because, like here, the declaration failed to provide a credible explanation for the group's formation, noting that it "merely averr[ed] [that] 'the members . . . recognize that they are all like-minded investors that suffered substantial losses in their investments,'" and had "'participated in a conference call to discuss'" a number of other issues. 2016 U.S. Dist. LEXIS 181615, at *12. And, just as it does here, the declaration in *Crihfield* "'fails to detail any procedures by which [the Group] would "provide for efficient prosecution of the action," conduct meetings, or participate in the discovery process given that its members and attorneys are scattered throughout the [United States].'" *Id.*; *see also Cloudera*, 2019 U.S. Dist. LEXIS 216750, at *19-*24 (finding group of two unrelated institutional investors failed to meet the

- 10 -

4832-1003-5895.v2

adequacy requirement of a lead plaintiff movant group where the joint declaration submitted included only conclusory statements).

Likewise, in *Gemstar*, Judge Manella found that a proposed lead plaintiff group's joint declaration did nothing to minimize the lawyer-driven nature of the group where it assured the court that it did not anticipate disagreements, and where the members had selected two law firms to represent it. 209 F.R.D. at 451-52.[10] In *Isaacs v. Musk*, No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018), Judge Edward M. Chen similarly found a joint declaration unpersuasive where it "reflect[ed] that the TIG members are unrelated and were introduced to one another by their lawyers . . . and, although the members suggest they will be able to work together well, efficiently, and so forth, there is nothing concrete to back that up," especially considering "the members participated in only one joint call prior to filing the motion for appointment." *Compare id.* at *14-*15 *with* ECF No. 25-6 at ¶12.

Finally, in *Eichenholtz*, former Chief Judge Marilyn Hall Patel found that a joint declaration did not cure the group's deficiencies where the members of the group claimed: (i) they "'affirmatively decided that it would be a benefit to ourselves and the Class we seek to represent if we. . . sought appointment as Lead Plaintiff as part of a small, cohesive group'"; (ii) the group members "intend[ed] to communicate regularly"; and (iii) the group would "exercise joint decision-making." 2008 U.S. Dist. LEXIS 64633, at *27-*28. Despite these assurances, the court found

---

[10] While Judge Manella ultimately did appoint two institutional investors, she did so specifically relying upon the two funds' previous experience in "working together" and, most importantly, affirming that their supervision of "a single law firm" as lead counsel suggested that they, not their counsel, "would control this litigation." *Id*. at 455. Here, not only have the three members of the IIG not demonstrated that they have experience in working together, but they have failed to show the cohesion of being able to even agree upon a single lead counsel to represent them. Here, too, the IIG's failure to "explain why it must be represented by two firms, each of which appears independently capable of prosecuting this action," weighs against allowing the members of the IIG to aggregate their losses in order to claim the largest financial interest in this case. *Id*. at 452.

- 11 -

that the group failed to demonstrate how it would "tackle the massive coordination and strategic issues that are certain to arise in this litigation." *Id*. at \*28. In the end, the court found that the concerns raised by appointing unrelated entities brought together by counsel outweighed any benefit in their appointment. *Id*; *see also Cloudera*, 2019 U.S. Dist. LEXIS 216750, at \*19-\*24 (denying motion by two institutional investors despite their joint declaration and citing *Eichenholz*).[11]

Like the declarations proffered in *Crihfield*, *Gemstar*, *Isaacs*, *Eichenholz*, and *Cloudera*, the IIG's Joint Declaration confirms that "no matter how experienced or sophisticated these plaintiffs may be, the [Group] 'appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together "in the hope of thereby becoming the biggest loser for PSLRA purposes."'" *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (quoting *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006)). At bottom, the IIG is nothing more than three unrelated institutions that have been brought together by two law firms in "'an effort to achieve the highest possible

---

[11]  *See also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008) (rejecting the group's "conclusory assertion" that it would be able to effectively manage the litigation); *see also In re LightInTheBox Holding Co., Sec. Litig.*, No. 13 Civ. 6016 (PKC), 2013 U.S. Dist. LEXIS 165842, at \*4-\*5 (S.D.N.Y. Nov. 21, 2013) (declining to appoint a group of unrelated investors that had held a pre-filing conference call and established procedures for overseeing counsel, communicating with one another, and voting); *Teran*, 2011 U.S. Dist. LEXIS 105774, at \*10-\*12 (same); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) ("although [the members of a lead plaintiff movant group] have submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the [] Group will be able to effectively manage this litigation"); *Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, No. 15-CV-3599 (KMW), 2015 U.S. Dist. LEXIS 153202, at \*10-\*11 (S.D.N.Y. Nov. 12, 2015) (two unrelated movants did not have a proper "plan for cooperation" where their Joint Declaration stated "that they will 'confer via phone and/or email as necessary to ensure that we are able to independently communicate and make timely decisions'" as "[t]hese conclusory assurances are precisely the types of statements that courts in this District have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation").

- 12 -

"financial interest" figure to be chosen'" as lead plaintiff. *Khunt*, 102 F. Supp. 3d at 534. In the end, their appointment as lead plaintiff "'would allow and encourage lawyers to direct the litigation.'" *Id*.; *In re Doral Fin. Corp. Sec. Litig*., 414 F. Supp. 2d 398, 401 (S.D.N.Y. 2006). The appointment of a multiplicity of unrelated class members and counsel would be particularly inappropriate here, where the Pension Fund is a sophisticated and experienced lead plaintiff which possesses the single largest financial interest and has chosen a single experienced lead counsel to represent the class.

Thus, the Court should "not [be] persuaded that a larger group, which claims to have suffered the largest loss because of a mechanical aggregation of those losses and which is represented by two different law firms, should be preferred over a single investor, who has alleged the largest individual loss and who is represented by a single law firm." *E.spire*, 231 F.R.D. at 214. The IIG's motion should be denied.

### C. The Remaining Movants Do Not Possess the Largest Financial Interest

The remaining movants, the Austin Fire Fighters Group, the City of Sarasota Funds, and Mr. Schaebsdau each claim smaller losses than the Pension Fund, either individually or combined. As a result, their motions need not be considered. *Cavanaugh*, 306 F.3d at 730 ("the court must . . . consider[] the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23").

### D. The Pension Fund Meets All of the PSLRA's Requirements and Should Be Appointed Lead Plaintiff

As demonstrated above, the Pension Fund has the largest financial interest in the relief sought by the class. In addition, the Pension Fund satisfies the typicality and adequacy requirements of Rule 23. *See* ECF No. 34 at 5-7. Because the Pension Fund meets these requirements, it is the presumptively "most adequate plaintiff." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). In order to rebut the presumption, competing movants are required to submit ***proof*** that the Pension Fund is either subject to a

- 13 -

4832-1003-5895.v2

unique defense or is unable to adequately represent the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Because there is no such proof, the Pension Fund should be appointed Lead Plaintiff.

## III.  CONCLUSION

The Pension Fund meets all of the PSLRA's lead plaintiff requirements. Consequently, the Pension Fund respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of lead counsel. The members of the IIG, the Austin Fire Fighters Group, the City of Sarasota Funds, and Mr. Schaebsdau likewise do not possess the largest financial interest in the relief sought by the class, and as such their motions should be denied.

DATED: March 9, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
DANIELLE S. MYERS
TRICIA L. McCORMICK
JUAN CARLOS SANCHEZ

s/ Tricia L. McCormick
TRICIA L. McCORMICK

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for [Proposed]
Lead Plaintiff

- 14 -

4832-1003-5895.v2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 9, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ TRICIA L. McCORMICK
TRICIA L. McCORMICK

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  triciam@rgrdlaw.com

4832-1003-5895.v2

# Mailing Information for a Case 2:19-cv-10701-DDP-E Esteban Koffsmon v. Green Dot Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ian D Berg**
  iberg@aftlaw.com,tkellar@aftlaw.com

- **Marc L Godino**
  mgodino@glancylaw.com,info@glancylaw.com,marc-godino-1414@ecf.pacerpro.com

- **Eduard Korsinsky**
  ek@zlk.com

- **James N Kramer**
  jkramer@orrick.com,lpatts@orrick.com,jthompson@orrick.com

- **Nicole Lavallee**
  nlavallee@bermantabacco.com,sfservice@bermantabacco.com

- **Rosanne Leigh Mah**
  rmah@zlk.com,ek@zlk.com,brios@zlk.com,jtash@zlk.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey V Rocha**
  jrocha@bermantabacco.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Alexander K Talarides**
  atalarides@orrick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)