# EXHIBIT C

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| GERALD BURGER, Individually and On Behalf of All Others Similarly Situated, | ) ) | No. 2:04-cv-00575-ALM-NMK |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | Judge Marbley Magistrate Judge King |
| CARDINAL HEALTH, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

[Caption continued on following page.]

## THE PENSION FUND GROUP'S CONSOLIDATED OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY (0063373)
GEOFFREY J. MOUL (0070663)
BRIAN K. MURPHY (0070654)
326 S. High Street, Suite 400
Columbus, OH 43215
Telephone: 614/469-0400
614/469-0402 (fax)

[Proposed] Liaison Counsel

LERACH COUGHLIN STOIA
 GELLER RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
RAMZI ABADOU
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

Exhibit C
Page 15

| | |
|---|---|
| TODD FENER, On Behalf of Himself and All Others Similarly Situated, | No. 2:04-cv-00579-EAS-NMK |
| Plaintiff, | CLASS ACTION |
| vs. | Judge Sargus<br>Magistrate Judge King |
| CARDINAL HEALTH, INC., et al., | |
| Defendants. | |
| E. MILES SENN, Individually and On Behalf of All Others Similarly Situated, | No. 2:04-cv-00597-JDH-NMK |
| Plaintiff, | CLASS ACTION |
| vs. | Judge Holschuh<br>Magistrate Judge King |
| CARDINAL HEALTH, INC., et al., | |
| Defendants. | |
| DAVID KIM, On Behalf of Himself and All Others Similarly Situated, | No. 2:04-cv-00598-JDH-TPK |
| Plaintiff, | CLASS ACTION |
| vs. | Judge Holschuh<br>Magistrate Judge Kemp |
| CARDINAL HEALTH, INC., et al., | |
| Defendants. | |
| ARACE BROTHERS, Individually and On Behalf of All Others Similarly Situated, | No. 2:04-cv-00604-JDH-NMK |
| Plaintiff, | CLASS ACTION |
| vs. | Judge Holschuh<br>Magistrate Judge King |
| CARDINAL HEALTH, INC., et al., | |
| Defendants. | |

[Caption continued on following page.]

Exhibit C
Page 16

| | |
|---|---|
| JOHN HESSIAN, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>vs.<br><br>CARDINAL HEALTH, INC., et al.,<br><br>          Defendants. | No. 2:04-cv-00635-JDH-NMK<br><br>CLASS ACTION<br><br>Judge Holschuh<br>Magistrate Judge King |
| CONSTANCE MATTHEWS LIVING TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>vs.<br><br>CARDINAL HEALTH, INC., et al.,<br><br>          Defendants. | No. 2:04-cv-00636-JLG-MRA<br><br>CLASS ACTION<br><br>Judge Graham<br>Magistrate Judge Abel |
| MARISS PARTNERS, LLP, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>vs.<br><br>CARDINAL HEALTH, INC., et al.,<br><br>          Defendants. | No. 2:04-cv-00649-GCS-MRA<br><br>CLASS ACTION<br><br>Judge Smith<br>Magistrate Judge Abel |
| THE STATE OF NEW JERSEY, DEPARTMENT OF TREASURY, DIVISION OF INVESTMENT, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>vs.<br><br>CARDINAL HEALTH, INC., et al.,<br><br>          Defendants. | No. 2:04-cv-00831-GCS-NMK<br><br>CLASS ACTION<br><br>Judge Smith<br>Magistrate Judge King |

Exhibit C
Page 17

## TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|

I.     INTRODUCTION AND OVERVIEW ...................................................................1

II.    ARGUMENT ...........................................................................................................5

      A.     The PSLRA's Lead Plaintiff Procedure.................................................................5

      B.     The Pension Fund Group Is the "Most Adequate Plaintiff" ...................................6

           1.     The Pension Fund Group Has the Largest Financial Interest in the Relief Sought in this Case............................................................................6

           2.     The Pension Fund Group Satisfies Rule 23 ...............................................7

                a.     The Pension Fund Group Is a Proper "Group of Persons" ..............8

                b.     The Pension Fund Group Has Legal Standing to Pursue Valuable Class Claims Under the 1933 Act ..................................11

      C.     New Jersey Does Not Have the Largest Loss, Is a Presumptively Barred Professional Plaintiff and Does Not Have 1933 Act Standing ..............................13

      D.     First New York Is an Unusual Program Trader that Should Not Be Appointed Lead Plaintiff Because It Does Not Have the Largest Loss and Cannot Satisfy the Requirements of Rule 23 .......................................................16

           1.     First New York's Rapid Fire Day-Trading Activity Makes It Atypical of the Class.................................................................................16

           2.     First New York Is Inadequate to Serve as a Class Representative Because Its Trading Data Is Full of Errors Rendering Its Loss Calculation Unreliable .............................................................................17

           3.     First New York's Pleadings Are Jurisdictionally Defective.....................19

      E.     Wood Asset – An Investment Advisor – Did Not Suffer a Compensable Loss and Cannot Assert the Class's 1933 Act Claims..........................................20

      F.     All of the Other Motions Should Be Denied ......................................................22

III.   CONCLUSION.....................................................................................................22

Exhibit C
Page 18

Case: 2:19-cv-10701-FLA-E   Document 50-3   Filed: 03/16/20   Page: 6 of 40   Page ID
#:590
Case: 2:04-cv-00575-ALM-NMK   Doc #: 62   Filed: 09/24/04   Page: 5 of 39   PAGEID #:1359

## TABLE OF AUTHORITIES

**Page**

*Albert Fadem Trust v. Am. Elec. Power Co.*,
No. C2-02-1045, 2004 U.S. Dist. LEXIS 18499
(S.D. Ohio 2004)..............................................................................................2, 11

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)................................................................................................12

*Aronson v. McKesson HBOC, Inc.*,
79 F. Supp. 2d 1146 (N.D. Cal. 1999) ....................................................................15

*Bell v. Ascendant Solutions*,
No. 3:-01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850
(N.D. Tex. 2002) ...................................................................................................8, 9

*Borenstein v. Finova Group*,
No. CIV 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732
(D. Ariz. 2000)..........................................................................................................2

*Carson v. Clarent Corp.*,
No. C 01-03361 CRB, 2001 U.S. Dist LEXIS 22059
(N.D. Cal. 2001)......................................................................................................19

*Charles v. Prison Realty Trust, Inc.*,
No. 3:99-0452 (M.D. Tenn. 1999)............................................................................9

*Donio v. Advanced Lighting*,
No. 1:99-cv-00836 (N.D. Ohio 1999).......................................................................9

*Eckstein v. Smartalk Teleservices, Inc.*,
No. C2-98-814 (S.D. Ohio 1998)..............................................................................9

*Ferrari v. Impath, Inc.*,
No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898
(S.D.N.Y. 2004) .......................................................................................................2

*Fidel v. AK Steel Holding Corp.*,
No. C-1-00-320 (S.D. Ohio 2000) ............................................................................9

*Godin v. Firstenergy Corp.*,
No. 5:03-CV-1684 (N.D. Ohio 2003) .......................................................................9

*Griffin v. PaineWebber, Inc.*,
No. 99 Civ. 2292 (VM), 2001 U.S. Dist. LEXIS 8937
(S.D.N.Y. 2001) .....................................................................................................12

- ii -

Exhibit C
Page 19

**Page**

*Herman & MacLean v. Huddleston,*
    459 U.S. 375 (1983)...............................................................................................11

*Hirschey v. Fed. Energy Regulatory Comm'n,*
    777 F.2d 1 (D.C. Cir. 1985).....................................................................................14

*Hudson v. Reno,*
    130 F.3d 1193 (6th Cir. 1997) ................................................................................8

*In re AES Corp. Sec. Litig.,*
    825 F. Supp. 578 (S.D.N.Y. 1993) .......................................................................11

*In re Accredo Health, Inc. Sec. Litig.,*
    No. 03-2216 (W.D. Tenn. 2004)..............................................................................9

*In re Am. Bank Note Holographics Sec. Litig.,*
    93 F. Supp. 2d 424 (S.D.N.Y. 2000).....................................................................12

*In re Am. Med. Sys.,*
    75 F.3d 1069 (6th Cir. 1996) ..................................................................................7

*In re Baan Co. Sec. Litig.,*
    186 F.R.D. 214 (D.D.C. 1999).............................................................................9, 10

*In re Bank One S'holders Class Actions,*
    96 F. Supp. 2d 780 (N.D. Ill. 2000) ................................................................4, 16, 18

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) ......................................................................... *passim*

*In re Cendant Corp. Sec. Litig.,*
    264 F.3d 201 (3d Cir. 2001)..........................................................................1, 2, 7, 10

*In re Critical Path, Inc. Sec. Litig.,*
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) ................................................................15

*In re DPL, Inc. Sec. Litig.,*
    No. C-3-02-355 (S.D. Ohio 2003) ..........................................................................9

*In re Dollar Gen. Corp. Sec. Litig.,*
    No. 3:01-0388 (M.D. Tenn. 2001)............................................................................9

Exhibit C
Page 20

**Page**

*In re Enron Corp., Sec. Litig.*,
 206 F.R.D. 427 (S.D. Tex. 2002)..........................................................................7, 15, 16

*In re Kindred Healthcare Sec. Litig.*,
 No. 3:02-CV-600-H (W.D. Ky. 2003)...............................................................................9

*In re MicroStrategy Inc. Sec. Litig.*,
 110 F. Supp. 2d 427 (E.D. Va. 2000) ...........................................................4, 16, 17, 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
 169 F.R.D. 493 (S.D.N.Y. 1996) ....................................................................................20

*In re Network Assocs. Sec. Litig.*,
 76 F. Supp. 2d 1017 (N.D. Cal. 1999) ............................................................................15

*In re Northwestern Corp. Sec. Litig.*,
 299 F. Supp. 2d 997 (D.S.D. 2003) .........................................................................8, 9, 10

*In re OfficeMax, Inc. Sec. Litig.*,
 No. 1:00cv2432 (N.D. Ohio 2000) ..................................................................................11

*In re Olsten Corp. Sec. Litig.*,
 3 F. Supp. 2d 286 ..............................................................................................................18

*In re Safeguard Scientifics*,
 216 F.R.D.  577 (E.D. Pa. 2003)...........................................................................3, 17, 18

*In re Sprint Corp. Sec. Litig.*,
 164 F. Supp. 2d 1240 (D. Kan. 2001)................................................................................2

*In re Surebeam Corp. Sec. Litig.*,
 No. 03CV1721 JM (POR), 2003 U.S. Dist. LEXIS 25022
 (S.D. Cal. 2003) ...........................................................................................................8, 10

*In re Telxon Corp. Sec. Litig.*,
 67 F. Supp. 2d 803 (N.D. Ohio 1999)...................................................................... *passim*

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
 209 F.R.D. 353 (S.D.N.Y. 2002) ................................................................................4, 20

*In re Tyco Int'l, Ltd. Sec. Litig.*,
 MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390
 (D.N.H. 2000) ..................................................................................................................11

Exhibit C
Page 21

**Page**

*In re Tyco Int'l Sec. Litig.,*
No. 00-MD-1335-B (D.N.H. 2000) .................................................................................20, 21

*In re UnumProvident Corp. Sec. Litig.,*
No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633
(E.D. Tenn. 2003) ........................................................................................................ *passim*

*In re Verdisys Sec. Litig.,*
No. H-04-1297 (S.D. Tex. 2004).........................................................................................9, 10

*In re Versata, Inc.,*
No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270 (N.D. Cal. 2001)....................................8

*Kahan v. Quorum Health Group, Inc.,*
No. 3:98-1004 (M.D. Tenn. 1999).........................................................................................9

*Katt v. Titan Acquisitions, Ltd.,*
No. 3-99-0655 (M.D. Tenn. 2000).........................................................................................9

*Kelly v. VisionAmerica, Inc.,*
No. 3-00-0279 (M.D. Tenn. 2000).........................................................................................9

*Lernout & Hauspie Sec. Litig.,*
138 F. Supp. 2d 39 (D. Mass. 2001).....................................................................................8

*Lightbourn v. County of El Paso,*
118 F.3d 421 (5th Cir. 1997) ...............................................................................................12

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.,*
No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712
(D.N.J. 2000)......................................................................................................................5, 8

*McClain v. Lufkin Indus., Inc.,*
187 F.R.D. 267 (E.D. Tex. 1999).........................................................................................12

*Meyer v. Hutts,*
No. 3-98-0834 (M.D. Tenn. 1998).........................................................................................9

*Naiditch v. Applied Micro Circuits Corp.,*
No. 01-cv-0649K(AJB), 2001 U.S. Dist. LEXIS 21374
(S.D. Cal. 2001) ..................................................................................................................15

*New England Healthcare Employees Pension Fund v. Fruit of the Loom, Inc.,*
No. 1:98CV99-M (W.D. Ky. 1998).........................................................................................9

- v -

Exhibit C
Page 22

**Page**

*Newman v. Eagle Bldg. Techs.*,
209 F.R.D. 499 (S.D. Fla. 2002) ..................................................................................1, 6

*Offshore Logistics v. Tallentire*,
477 U.S. 207 (1986) ..............................................................................................13

*Olden v. LaFarge Corp.*,
No. 02-1148, 2004 U.S. App. LEXIS 18809 (6th Cir. 2004) .............................9

*Perrin v. United States*,
444 U.S. 37 (1979) .................................................................................................8

*Piven v. Sykes Enters.*,
137 F. Supp. 2d 1295 (M.D. Fla. 2000) ...........................................................15

*Smith v. Suprema Specialties, Inc.*,
206 F. Supp. 2d 627 (D.N.J. 2002) ......................................................... *passim*

*Steckman v. Hart Brewing*,
143 F.3d 1293 (9th Cir. 1998) ..........................................................................10

*Steiner v. Frankino*,
No. 1:98CV0264, 1998 U.S. Dist. LEXIS 21804
(N.D. Ohio 1998) ...................................................................................2, 6, 7,16

*Yousefi v. Lockheed Martin Corp.*,
70 F. Supp. 2d 1061 (C.D. Cal. 1999) ...............................................................9

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23 ................................................................................................... *passim*
Rule 23(a)(3) ............................................................................................12

15 U.S.C.
§78u-4(a)(3)(A)(i) ...................................................................................19
§78u-4(a)(3)(B)(i) ......................................................................................5
§78u-4(a)(3)(B)(iii) .................................................................................1, 3
§78u-4(a)(3)(B)(iii)(I) ........................................................................5, 9, 19
§78u-4(a)(3)(B)(iii)(I)(bb) ..........................................................................6
§78u-4(a)(3)(B)(iii)(II) ...............................................................................6
§78u-4(a)(3)(B)(iv) ...................................................................................21
§78u-4(a)(3)(B)(vi) ..............................................................................1, 3, 6

Exhibit C
Page 23

Case: 2:04-cv-00575-ALM-NMR Doc #: 62 Filed: 09/24/04 Page: 10 of 39 PAGEID #:1404

**Page**

## SECONDARY AUTHORITIES

Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law*
    (Princeton University Press 1997) ...................................................................................14

## LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 104-369 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 679 ..............................................................................14

Exhibit C
Page 24

## I.    INTRODUCTION AND OVERVIEW

Pending are seven motions for appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for this securities class action against Cardinal Health, Inc. ("Cardinal Health") and certain of its officers. In addition to the Pension Fund Group's motion, competing motions were filed by: (1) New Jersey, Division of Investment ("New Jersey"); (2) First New York Securities L.L.C. ("First New York"); (3) Wood Asset Management ("Wood Asset"); (4) Public Employees' Retirement System of Mississippi ("Mississippi PERS"); (5) Pacific Southwest Funding and the Engel Family Trust ("Pacific Southwest Group"); and (6) Devine and Silvestro (the "Devine Group").[1]

The PSLRA requires courts to appoint the "person or *group of persons*" with the "largest financial interest" in the relief sought by the class, that "otherwise satisfies the requirements of Rule 23," and that is not otherwise presumptively barred as a professional plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)-(vi); *In re UnumProvident Corp. Sec. Litig.*, No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633, at *21 (E.D. Tenn. 2003) (Collier, J.).

While the Sixth Circuit has yet to articulate an analytic framework for interpreting the PSLRA's "neither overly complex nor ambiguous" lead plaintiff provisions, the Ninth and Third Circuits have, and with considerable agreement. *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001). Under the PSLRA, the "*only* basis on which a court may compare plaintiffs competing to serve as lead plaintiff is the size

---

[1]    In descending order, the competing movants claim the following losses: (1) Pension Fund Group ($15.1 million); (2) New Jersey ($13 million); (3) First New York ($8.6 million); (4) Wood Asset ($4 million); (5) Mississippi PERS ($2.7 million); (6) Pacific Southwest Group ($23,000 due to Pacific Southwest Funding's withdrawal on September 8, 2004); (7) Devine Group ($11,603). *See Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002) ("The *most important factor* in determining the lead plaintiff is the amount of financial interest claimed."). (Here, as elsewhere, emphasis is added and citations and footnotes are omitted unless otherwise noted.)

- 1 -

Exhibit C
Page 25

of their financial stake in the controversy." *See Cavanaugh*, 306 F.3d at 732; *see also Steiner v. Frankino*, No. 1:98CV0264, 1998 U.S. Dist. LEXIS 21804, at *16 (N.D. Ohio 1998) (appointing the group with the largest loss as lead plaintiff) (White, C.J.).

Thus, the Pension Fund Group should be appointed Lead Plaintiff because, with a loss of over $15.1 million, it has the largest financial stake in this litigation and it also satisfies the requirements of Rule 23.[2] *See Cendant*, 264 F.3d at 268 ("a group composed of the three largest pension funds ... could adequately protect the class's interests"). In addition to possessing the largest loss and being able to satisfy Rule 23, the Pension Fund Group is also the *only* movant before the Court with the apparent willingness *and* legal standing to pursue *all claims for all class members* under both the Securities Exchange Act of 1934 ("1934 Act") and the Securities Act of 1933 ("1933 Act"). *See Borenstein v. Finova Group*, No. CIV 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732, at *26 (D. Ariz. 2000); *see generally Albert Fadem Trust v. Am. Elec. Power Co.*, No. C2-02-1045, 2004 U.S. Dist. LEXIS 18499, at *23, *27 (S.D. Ohio 2004) (Marbley, J.) (distinguishing §10(b) claims from §11 claims). Accordingly, all other motions should be denied.[3]

---

[2]    *See also In re Sprint Corp. Sec. Litig.*, 164 F. Supp. 2d 1240, 1244 (D. Kan. 2001) (appointing six institutional investors – including **Pension Fund Group** members PACE and Amalgamated Bank – as lead plaintiff).

[3]    Given that the Pension Fund Group is the PSLRA's presumptively "most adequate plaintiff," the competing movants will likely ask the Court to expend considerable time and effort attempting to rebut the Pension Fund Group's application. However, the "*obvious intent of these provisions is to ensure that the lead plaintiff is appointed at the earliest possible time, and to expedite the lead plaintiff process.*" *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818-189 (N.D. Ohio 1999) (O'Malley, J.). And regrettably, oftentimes, movants who are *not* the presumptively "most adequate plaintiff" resort to baseless attacks and rank inference to muddy this otherwise straightforward process. But *proof*, not innuendo, is required to rebut the Pension Fund Group's "most adequate plaintiff" presumption. *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *21-*23 (S.D.N.Y. 2004) (rejecting as a "red-herring" attempts by counsel to use "innuendo and inferences rather than established fact" to rebut a proposed lead plaintiff group's most adequate plaintiff presumption).

Exhibit C
Page 26

In addition to its smaller loss, New Jersey's motion should be denied because it *has impermissibly exceeded the PSLRA's strict presumptive bar against "professional plaintiffs." See* 15 U.S.C. §78u-4(a)(3)(B))(vi) ("a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, *in no more than 5 securities class actions* brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure *during any 3-year period"); see Telxon,* 67 F. Supp. 2d at 820-21 (refusing to appoint an institutional professional plaintiff). Here, because New Jersey has served as lead plaintiff in *seven other cases* in the past 3-year period, it is presumptively barred from being appointed in this case.[4] *See UnumProvident,* 2003 U.S. Dist. LEXIS 24633, at *20 ("The Court believes 15 U.S.C. §78u-4(a)(3)(B)(vi) is best interpreted as imposing a *presumptive* bar against lead plaintiff candidates who have served in that same capacity in five other cases over the past three years.") (emphasis in original).

Indeed, New Jersey's role as a professional plaintiff has already been detrimental to the class in that it refused to take reasonable steps to protect, not just its own claims, but the interests of all class members by joining with an investor with standing to allege strict-liability claims under the 1933 Act. *See id.* at *21-*22 (finding that professional plaintiffs' resources "are being spread too thin" to "insure [that] the interest of *all* shareholders [are] protected"). By contrast, the Pension Fund Group includes Amalgamated Bank, an investor with standing to assert all the valuable 1933 Act claims the class possesses.

First New York's motion should be denied because it does not have the largest loss, is a trading entity of the sort courts hold cannot satisfy Rule 23, and submitted trading data (from up to *195* different individual traders) which is riddled with errors and ambiguities that render its loss calculation unreliable – if not incomprehensible. *See In re Safeguard Scientifics,* 216 F.R.D. 577,

---

[4] At present, New Jersey is also apparently attempting to *simultaneously* prosecute six complex securities class actions – *five of which are currently in discovery.*

- 3 -

Exhibit C
Page 27

Case: 2:19-cv-10501-FLA-NMR Document 50-3 Filed: 03/16/20 Page: 15 of 40 Page ID
Case: 2:04-cv-00575-ALM-NMR Doc #: 62 Filed: 09/24/04 Page: 14 of 39 PAGEID #: 9408
#:599

582-83 (E.D. Pa. 2003) (finding that an investor that fails to provide reliable trading data cannot satisfy Rule 23); *In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (refusing to appoint as lead plaintiff an entity that *"engaged in extensive daytrading"*); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000).

In addition, First New York's application was not properly filed, and thus may be jurisdictionally barred. *See Telxon*, 67 F. Supp. 2d at 818 ("[t]he plain language of the statute precludes consideration of ... *any other pleading*, ... filed *after* the sixty (60) day window has closed"). Worse, its defective pleadings had to be corrected due to an apparent eleventh-hour jettisoning of something called Generic Trading of Philadelphia. *See* Declaration of Richard S. Wayne in Support of Motion of *The First Securities Group* for Appointment as Lead Plaintiff and Approval of Its Selection of Lead and Liaison Counsel ("Wayne Decl.") ("I submit this declaration in support of the motion of First New York Securities L.L.C. ('First New York') *and Generic Trading of Philadelphia, LLC* ('Generic') For Appointment As Lead Plaintiff ...."). [5] Such machinations reflect the *very type* of lawyer-driven maneuvers Congress tried to eliminate in enacting the PSLRA.

Wood Asset, a mere investment *advisor* with claimed losses of $4 million should also not be appointed lead plaintiff because the losses it *claims* are in fact those of its clients – Wood Asset itself has *no* financial stake of its own in this litigation. *See In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002) (investment *advisors* do not suffer compensable losses under the federal securities laws). Further, Wood Asset has provided *no* evidence that it even has authority to sue on behalf of its clients. *See Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627 (D.N.J.

---

[5]    *Compare* Wayne Decl. *with* Motion of *The First New York Securities L.L.C.* for Appointment as Lead Plaintiff and Approval of Its Selection of *Co-Lead* and Liaison Counsel. *See MicroStrategy*, 110 F. Supp. 2d at 440 (refusing to consider a lead plaintiff motion filed after the PSLRA's 60-day filing deadline).

Exhibit C
Page 28

Case: 2:04-cv-00575-ALM-NMR Doc #: 62 Filed: 09/24/04 Page: 15 of 39 PAGEID #:9409
Case: 2:19-cv-10701-FLA-E Document 50-3 Filed: 03/16/20 Page 16 of 40 Page ID
#:600

2002) (an investment advisor must provide evidence that it "'acts as attorney-in-fact for its clients and is authorized to bring suit to recover for, among other things, investment losses'"). While there may be instances where investment advisors seek and obtain the authority to file suit and litigate on their clients' behalf, Wood Asset has not provided the sort of evidence Courts consider necessary to appoint investment advisors like it as lead plaintiff. *See id.*

Finally, none of the remaining competing movants can be appointed lead plaintiff because their respective losses in this case are each considerably smaller than the Pension Fund Group's $15.1 million loss. *See* n.1, *supra.* Indeed, under *Cavanaugh*, the Court should not even **consider** the other applicants. *See* 306 F.3d at 732 ("[t]he court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order *if and only if* the presumptive lead plaintiff is found inadequate or atypical"); *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712, at *6-*14 (D.N.J. 2000) (appointing a group of five institutional investors with the largest combined loss as lead plaintiff and rejecting argument that a competing movant with the purported "single" largest loss should be appointed lead plaintiff).

## II.    ARGUMENT

### A.    The PSLRA's Lead Plaintiff Procedure

The PSLRA provides that in securities class actions, courts "shall appoint as lead plaintiff the member **or members** of the purported class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). In determining who is the most adequate plaintiff, the PSLRA provides that: "[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title [15 U.S.C. §§78a, *et seq.*] is the person or **group of persons** that ... in the determination of the court, has the **largest financial interest** in the relief sought by the class; and otherwise **satisfies the requirements of Rule 23** of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see*

- 5 -

Exhibit C
Page 29

*Cavanaugh*, 306 F.3d at 732 ("[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [it] is entitled to lead plaintiff status").

The PSLRA's rebuttable presumption may be rebutted only by ***proof*** that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class; or ... is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). In addition, the PSLRA's presumptive bar precludes overly litigious lead plaintiff movants:

> ***Restrictions on professional plaintiffs.*** Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C. §78u-4(a)(3)(B)(vi).

## B. The Pension Fund Group Is the "Most Adequate Plaintiff"

### 1. The Pension Fund Group Has the Largest Financial Interest in the Relief Sought in this Case

The papers filed with this Court reveal that the Pension Fund Group has the largest financial interest in the outcome of this litigation:

| PROPOSED LEAD PLAINTIFF | APPROXIMATE LOSS |
|---|---|
| **(1) Pension Fund Group** | **$15.1 million** |
| (2) New Jersey | $13.0 million |
| (3) First New York | $8.6 million |
| (4) Wood Asset | $4 million |
| (5) Mississippi PERS | $2.7 million |
| (6) Engel Family Trust | $23,000 |
| (7) Devine Group | $11,603 |

The Pension Fund Group's loss and Rule 23 qualifications ***alone*** entitles the Pension Fund Group to be appointed lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); *Cavanaugh*, 306 F.3d at 732 ("once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead"); *Steiner*, 1998 U.S. Dist. LEXIS 21804, at *16; *Newman*, 209 F.R.D. at 502 ("The

- 6 -

Exhibit C
Page 30

*most* important factor in determining the lead plaintiff is the amount of financial interest claimed."); *Cendant*, 264 F.3d at 264 ("institutional investors ... with large losses will, more often than not, satisfy the typicality and adequacy requirements [of Rule 23]").

### 2. The Pension Fund Group Satisfies Rule 23

As indicated by its pleadings and certifications, the Pension Fund Group also satisfies Rule 23's typicality and adequacy requirements. *See* Memorandum of Points and Authorities in Support of the Pension Fund Group's Motion for Appointment of Lead Plaintiff and Approval of Its Selection of Lead Counsel ("PFG Mem.") at 7-10. For purposes of being appointed lead plaintiff, a presumptive lead plaintiff need only make a *prima facie* showing that it can satisfy the **typicality** and **adequacy** requirements of Rule 23. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (Rule 23 is satisfied where the absent class members' claims have the same or similar grievances as the plaintiff); *Steiner*, 1998 U.S. Dist. LEXIS 21804, at *9.

Here, the Pension Fund Group's claims are typical of the class because the Pension Fund Group can and will allege that defendants violated the 1934 Act by publicly disseminating false and misleading statements, as well as the 1933 Act by issuing securities to class members pursuant to false Securities and Exchange Commission ("SEC") filed registration statements.[6] *See id.*

The Pension Fund Group is also adequate because it and its chosen counsel are qualified and competent, and its interests are not antagonistic to those of the class. *See In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002) (finding that the submissions of Lerach Coughlin's lawyers "stand out in the breadth and depth of its research and insight"). Lerach Coughlin is a 140-lawyer law firm that is actively engaged in complex litigation, emphasizing securities, consumer and antitrust class actions. Lerach Coughlin includes numerous trial attorneys, including many former

---

[6] The Pension Fund Group has prepared and will file a complaint with 1933 and 1934 Act claims to protect all class members.

Exhibit C
Page 31

Case: 2:19-cv-10701-FLA-E NM Document 50-3 Filed: 09/24/04 Page: 18 of 39 PAGEID #:941
Case: 2:04-cv-00575-ALM-NMR Doc #: 62 Filed: 09/24/04 Page: 18 of 39 PAGEID #:941
#:603

federal and state prosecutors, and utilizes an extensive group of in-house financial and accounting experts to aid in the prosecution of complex securities cases such as the one now pending against Cardinal Health. *See* PFG Mem., Ex. 4.

In addition, the Pension Fund Group is adequate because its members **have conferred with one another and their selected class counsel** in connection with their joint prosecution of this litigation, and intend to continue to work together to oversee counsel and provide vigorous representation on behalf of the class. *See In re Versata, Inc.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *12-*24 (N.D. Cal. 2001) (appointing a cohesive group with largest loss as lead plaintiff); *In re Surebeam Corp. Sec. Litig.*, No. 03CV1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *13-*16 (S.D. Cal. 2003) (same); *In re Northwestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1006 (D.S.D. 2003) (same); *Bell v. Ascendant Solutions*, No. 3:-01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850, at *14-*17 (N.D. Tex. 2002) (same); *Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43-45 (D. Mass. 2001) (same); *Honeywell*, 2000 U.S. Dist. LEXIS 16712, at *6-*14 (same).

### a. The Pension Fund Group Is a Proper "Group of Persons"

Reaching, the competing movants may argue that the Pension Fund Group is inadequate because it is a "group of persons." *See, e.g., Versata*, 2001 U.S. Dist. LEXIS 24270, at *12-*24 (discussing cases concluding that groups are preferable under the PSLRA); *see also* n.8, *infra* (listing Sixth Circuit cases appointing groups). As discussed below, however, this argument has little merit.

When interpreting statutes, courts begin by interpreting the statute in its "'ordinary, contemporary, common meaning,'" and here the PSLRA expressly provides that the most adequate plaintiff can be a *"person or group of persons."*[7] *See Hudson v. Reno*, 130 F.3d 1193, 1199 (6th

---

[7] Since the enactment of the PSLRA in 1995, groups of institutional investors have obtained several exceptionally large recoveries on behalf of the class. This real life record of achievement not only supports the decision of the members of the Pension Fund Group to join together here, but

- 8 -

Exhibit C
Page 32

Cir. 1997); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *Bell*, 2002 U.S. Dist. LEXIS 6850, at *15 ("The Court sees no textual statutory obstacle to considering the three plaintiffs' financial interests together."); *Northwestern*, 299 F. Supp. 2d at 1006 ("The PSLRA explicitly allows a 'group of persons' to be appointed as lead plaintiff."); *In re Verdisys Sec. Litig.*, No. H-04-1297, slip op. at 16 (S.D. Tex. 2004) ("The plain language of the PSLRA states that a group may be appointed lead plaintiff.") (Ex. 2, attached hereto); *see also Olden v. LaFarge Corp.*, No. 02-1148, 2004 U.S. App. LEXIS 18809, at *31-*32 (6th Cir. 2004) ("***We will not ignore the plain, unambiguous language of a statute where it achieves its intended purpose without any absurd result ....***").

Interpreting the PSLRA's "group of persons" language, the SEC and a *vast* majority of courts have correctly reasoned that while joint applications by tens or hundreds of investors put together by lawyers to try to grab control of a case are *not* proper lead plaintiffs, the PSLRA explicitly permits "'a group that is small enough to be capable of effectively managing the litigation and the lawyers ... [and] should be no more than ***three to five persons.***'"[8] *Compare In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216-17 (D.D.C. 1999) (quoting memorandum submitted by SEC), *with Yousefi v.*

---

confirms Congress' purpose in expressly providing for "groups of persons" to serve as lead plaintiff. *See* Exhibit 1, attached hereto; *see also Perrin v. United States*, 444 U.S. 37, 42 (1979) (the language in a statute's ordinary meaning expresses the legislative purposes of the statute).

[8]     Courts throughout this Circuit and in this district are in accord. *See Donio v. Advanced Lighting*, No. 1:99-cv-00836 (N.D. Ohio 1999) (appointing group as lead plaintiff); *Godin v. Firstenergy Corp.*, No. 5:03-CV-1684 (N.D. Ohio 2003) (same); *Fidel v. AK Steel Holding Corp.*, No. C-1-00-320 (S.D. Ohio 2000) (same); *In re DPL, Inc. Sec. Litig.*, No. C-3-02-355 (S.D. Ohio 2003) (same); *Eckstein v. Smartalk Teleservices, Inc.*, No. C2-98-814 (S.D. Ohio 1998) (same); *New England Healthcare Employees Pension Fund v. Fruit of the Loom, Inc.*, No. 1:98CV99-M (W.D. Ky. 1998) (appointing three investors); *In re Kindred Healthcare Sec. Litig.*, No. 3:02-CV-600-H (W.D. Ky. 2003) (appointing two investors); *In re Dollar Gen. Corp. Sec. Litig.*, No. 3:01-0388 (M.D. Tenn. 2001) (same); *Katt v. Titan Acquisitions, Ltd.*, No. 3-99-0655 (M.D. Tenn. 2000) (same); *Meyer v. Hutts*, No. 3-98-0834 (M.D. Tenn. 1998) (same); *Charles v. Prison Realty Trust, Inc.*, No. 3:99-0452 (M.D. Tenn. 1999) (same); *Kahan v. Quorum Health Group, Inc.*, No. 3:98-1004 (M.D. Tenn. 1999) (same); *Kelly v. VisionAmerica, Inc.*, No. 3-00-0279 (M.D. Tenn. 2000) (same); *In re Accredo Health, Inc. Sec. Litig.*, No. 03-2216 (W.D. Tenn. 2004) (same).

Exhibit C
Page 33

*Lockheed Martin Corp.*, 70 F. Supp. 2d 1061 (C.D. Cal. 1999) (declining to appoint 137 investors as lead plaintiff). Here, due to the Pension Fund Group's small size and cohesive composition, it meets the test articulated by the SEC in *Baan*.[9]  *See id.*; *see also Cendant*, 264 F.3d at 267.

Nevertheless, while the other movants may rely upon a handful of older lead plaintiff decisions that once imposed a judicial gloss upon the statute to avoid lawyer-driven amalgamations of dozens or hundreds of lead plaintiffs, the majority trend, the position of the SEC, and the district courts in this state, is to adopt a "rule of reason" that *supports* appointing small groups of institutional investors as Lead Plaintiff. *See Baan*, 186 F.R.D. at 216-17; *Surebeam*, 2003 U.S. Dist. LEXIS 25022, at *13 ("the *majority of courts* to have considered the issue allow aggregation in small groups"); *Northwestern*, 299 F. Supp. 2d at 1006; *Verdisys*, slip op. at 14-17 ("Courts have *routinely held* that the appointment of a group of persons to act as lead plaintiff is appropriate, and sometimes favored, under the PSLRA.").

In addition, to the extent some movants choose to rely upon it, Judge O'Malley's *Telxon* decision is readily distinguishable. *Compare Telxon*, 67 F. Supp. 2d 803 (refusing to appoint a group of *18* individual "unrelated" investors), *with Baan*, 186 F.R.D. at 216 ("The text of the PSLRA *does not* limit the composition of a 'group of persons' to those only with a pre-litigation relationship, *nor does the legislative history provide a sound enough foundation to support such a gloss*."); *Cendant*, 264 F.3d at 267 ("The statute contains no requirement mandating that the members of a proper group be 'related' in some manner . . . ."). Unlike *Telxon* where Judge O'Malley denied the appointment of *18* unrelated *individual* investors who apparently lacked the sophistication and resources to make informed decisions to act collectively or oversee counsel, here, the Pension Fund Group is comprised of *five institutional pension funds* with the resources,

---

[9]     *Steckman v. Hart Brewing*, 143 F.3d 1293, 1297 (9th Cir. 1998) (courts "must give *substantial deference* to the SEC's interpretation of the securities laws").

- 10 -

Exhibit C
Page 34

sophistication and motivation to oversee and direct its chosen counsel and to vigorously prosecute this litigation for the benefit of the class. *See In re OfficeMax, Inc. Sec. Litig.*, No. 1:00cv2432, slip op. at 14 (N.D. Ohio 2000) (limiting *Telxon*) (O'Malley, J.) (Ex. 3, attached hereto); *In re Tyco Int'l, Ltd. Sec. Litig. ("Tyco II")*, MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390, at *16 (D.N.H. 2000) (distinguishing *Telxon* and appointing a group of institutional investors as lead plaintiff).

### b. The Pension Fund Group Has Legal Standing to Pursue Valuable Class Claims Under the 1933 Act

Unlike other movants, the Pension Fund Group has standing to assert *all claims* on behalf of the class. On February 15, 2001, Cardinal Health issued 16.9 million shares in its acquisition of Bindley Western. Later in the Class Period, on January 2, 2003, Cardinal issued another 12.5 million shares in its Syncor acquisition. The damages associated with these claims exceed $100 million. These share issuances pursuant to allegedly false and misleading SEC filed registration statements entitle certain members of the class to pursue additional claims under the Securities Act – provided, *of course*, the court-appointed lead plaintiff has legal standing to assert them.[10] *See In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 592 (S.D.N.Y. 1993) (claims for different securities may only be brought by those who purchased those securities).

In contrast to the 1934 Act claims, claims under the 1933 Act do not require scienter; "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983); *AES*, 825 F. Supp. at 529; *Albert Fadam Trust*, 2004 U.S. Dist. LEXIS, at *23-*27. These are exceptionally important and valuable

---

[10] Cardinal Health recently restated its financial results for 2001, 2002, 2003 and the first three quarters of fiscal 2004. This restatement eliminated $39.2 million in revenue. The 2001 and 2003 Registration Statements are clearly false.

- 11 -

Exhibit C
Page 35

claims that New Jersey has either ignored or overlooked and, in any event, does not have standing to assert.

Unlike the Pension Fund Group which will assert 1933 Act claims so as to protect the interests of all members of the class, *New Jersey* neglected to join with an investor with §11 standing. *In re Am. Bank Note Holographics Sec. Litig.*, 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000) ("It is well established that a plaintiff seeking to represent a class must be a member of the class he purports to represent."). New Jersey made a conscious choice to move *without* joining an investor with standing to assert such claims. That decision alone weighs heavily against the *sole* lead plaintiff fiduciary status New Jersey seeks in this case.

Indeed, defendants will also assert (and thus exploit to the class's detriment) that New Jersey cannot meet the typicality requirement of Rule 23(a)(3) because it is unable to "'advance legal and remedial theories similar, if not identical, to those advanced by the named plaintiffs.'" *McClain v. Lufkin Indus., Inc.*, 187 F.R.D. 267, 280 (E.D. Tex. 1999) (citing *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)); *see Borenstein*, 2000 U.S. Dist. LEXIS 14732, at *26-*27 (rejecting motion of lead plaintiff applicant who only had standing to assert 1934 Act claims in favor of a lead plaintiff which had standing to assert claims under both the 1933 Act and the 1934 Act because it was "more typical" and "more adequate" and could thereby protect the "complete interests of all class members").[11]

New Jersey's unwillingness or inability to join with an investor with standing under the Securities Act, and *corresponding neglect to assert such claims* on behalf of the class further

---

[11] This is an important point because "'[a] class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997); *Griffin v. PaineWebber, Inc.*, No. 99 Civ. 2292 (VM), 2001 U.S. Dist. LEXIS 8937, at *6 (S.D.N.Y. 2001) ("[I]t is well established that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'").

- 12 -

Exhibit C
Page 36

illustrates why courts refuse to appoint professional plaintiffs like New Jersey to serve as lead plaintiff – namely, to *"insure the interest of all shareholders were protected."* *UnumProvident*, 2003 U.S. Dist. LEXIS 24633, at \*21. The simple fact is that New Jersey cannot legitimately be expected to adequately oversee this litigation when it is simultaneously trying to prosecute six other complex class actions – five of which are in discovery.

**C.      New Jersey Does Not Have the Largest Loss, Is a Presumptively Barred Professional Plaintiff and Does Not Have 1933 Act Standing**

Because New Jersey's loss of $13 million is smaller than the Pension Fund Group's loss of $15.1 million, New Jersey cannot be appointed Lead Plaintiff. *See Cavanaugh*, 306 F.3d at 732.

In addition to its smaller loss, New Jersey cannot be appointed because it is a professional plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(vi). Congress' choice of language in the PSLRA provides statutory evidence that the presumptive bar against professional plaintiffs applies to all plaintiffs, *including institutions like New Jersey*. *See UnumProvident*, 2003 U.S. Dist. LEXIS 24633, at \*13 (citing principles of statutory construction to bar an institutional professional plaintiff). The PSLRA bans "lead plaintiffs" *or* "officers, directors and fiduciaries" from serving as lead plaintiff on more than five occasions during any three-year period. 15 U.S.C. §78u-4(a)(3)(B)(vi). Any argument that the presumptive bar only applies to individuals is *not* well-founded, as there is no statutory basis for such an argument *and* individuals *do not have* "officers" and "directors." *Id.*; *UnumProvident*, 2003 U.S. Dist. LEXIS 24633, at \*19; *Offshore Logistics v. Tallentire*, 477 U.S. 207, 222 (1986) ("Normal principles of statutory construction require that we give effect to the subtleties of language that Congress chose to employ" in enacting a statute).

In light of the PSLRA's unambiguous statutory command, New Jersey must urge this Court to ignore the statutory text and instead appoint it Lead Plaintiff based on the following ambiguous language:

- 13 -

Exhibit C
Page 37

Case: 2:19-cv-10701-FLA-NMR Document 50-3 Filed: 09/24/04 Page: 24 of 39 PAGEID #:418
Case: 2:04-cv-00575-ALM-NMK Doc #: 62 Filed: 03/16/20 Page 25 of 40 Page ID
#:609

The conference report seeks to restrict professional plaintiffs from serving as lead plaintiff by limiting a person from serving in that capacity more than five times in three years. Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict. As a result, the Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years. The Conference Committee does not intend for this provision to operate at cross purposes with the "most adequate plaintiff" provision.... *The Conference Committee does expect, however, that it will be used with vigor to limit the activities of professional plaintiffs*.

*Compare* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 734, *with Telxon*, 67 F. Supp. 2d at 820-21 (declining to "accept the suggestion that preference [for institutional investors in the PSLRA's Conference Report] requires, or even encourages, the Court to disregard the *expressly stated* limitations [against professional plaintiffs] in the statute itself.") (emphasis in original); *UnumProvident*, 2003 U.S. Dist. LEXIS 24633, at *15 ("the statute itself provides no explicit blanket exception from the professional plaintiff rule for institutional investors").

Regardless, under Article I, §1 of the U.S. Constitution, it is the text of the PSLRA as enacted by Congress that binds the parties and this Court – not what a Conference Committee said the PSLRA may mean.[12] *See* U.S. Const. Art. I, §1; *Hirschey v. Fed. Energy Regulatory Comm'n*, 777 F.2d 1, 7 n.1 (D.C. Cir. 1985) (Scalia, J., concurring). Here, because New Jersey has served (and is presently serving) as lead plaintiff seven times in the past three-year period, it is *presumptively* barred from being appointed lead plaintiff here. *See UnumProvident*, 2003 U.S. Dist.

---

[12] According to Justice Scalia, "[o]ne of the routine tasks of the Washington lawyer-lobbyist is to draft language that sympathetic legislators can recite in a prewritten 'floor debate' – or, even better, insert into a committee report." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law*, at 34 (Princeton University Press 1997). In the same book, Lawrence H. Tribe similarly reasoned that the "thoughts and beliefs" of legislators "can never [be a] substitute for what was in fact *enacted as law*." *See id.* at 65 (emphasis in original).

- 14 -

Exhibit C
Page 38

Case: 2:19-cv-10701-FLA-E   Document 50-3   Filed: 03/16/20   Page 26 of 40   Page ID
Case: 2:04-cv-00575-ALM-NMR Doc #: 62 Filed: 09/24/04 Page: 25 of 39  PAGEID #: 9419
#:610

LEXIS 24633, at *19 ("the burden is upon the presumptively barred candidate to demonstrate why the bar should not be applied in a given case").

Further, courts in this Circuit flatly refuse to lift the ban on institutional professional plaintiffs like New Jersey. *See Telxon*, 67 F. Supp. 2d at 819-21; *UnumProvident*, 2003 U.S. Dist. LEXIS 24633, at *19. In a thoughtful opinion, Judge O'Malley emphasized that the PSLRA contains no express blanket exception for institutional investors, the Conference Report is not the law and that creating a blanket exception for institutional investors would turn the statute's grant of discretion into a requirement mandating that courts excuse institutional investors from the ban. *Telxon*, 67 F. Supp. 2d at 820-21.

And while some courts outside this Circuit have recognized some case-specific circumstances which might justify exemption from the PSLRA's professional plaintiff provision, *none apply here*. Courts have lifted the presumptive bar if the otherwise barred institution is the "only movant," or if "the other competing movants ... accrued an even longer record of participation in securities litigation" than the otherwise barred institution. *Id.* at 1156. *See, e.g., Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999). Other courts have lifted the presumptive bar when the other proposed lead plaintiffs were grossly inadequate or foreign.[13] *See, e.g., In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000). The Pension Fund Group is neither.

Finally, due to New Jersey's role as a lead plaintiff in six, multi-billion dollar class actions which are pending in venues across the country from Los Angeles to East Texas to Chicago, New Jersey neglected to protect the class's 1933 Act claims because it apparently suffers from the very

---

[13]     *See also Smith*, 206 F. Supp. 2d at 641 (lifting bar because presumptively barred movant was only institutional movant); *Naiditch v. Applied Micro Circuits Corp.*, No. 01-cv-0649K(AJB), 2001 U.S. Dist. LEXIS 21374, at *8 (S.D. Cal. 2001) (same); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102 (N.D. Cal. 2001) (same); *Enron*, 206 F.R.D. at 457 (same).

- 15 -

Exhibit C
Page 39

"fractured attention" that Judges Harmon, O'Malley and Collier reason preclude institutions like New Jersey from serving as lead plaintiff. *Enron*, 206 F.R.D. at 457; *see Telxon*, 67 F. Supp. 2d at 819-21; *UnumProvident*, 2003 U.S. Dist. LEXIS 24633, at *19. Accordingly, because New Jersey is a professional plaintiff, does not have the largest loss and cannot assert 1933 Act claims – its motion should be denied.

> **D.**      **First New York Is an Unusual Program Trader that Should Not Be Appointed Lead Plaintiff Because It Does Not Have the Largest Loss and Cannot Satisfy the Requirements of Rule 23**

First New York should not be appointed Lead Plaintiff because it is atypical of Cardinal Health investors and, in any event, has the *third* largest *claimed* loss in this case. *See Cavanaugh*, 306 F.3d at 732; *Steiner*, 1998 U.S. Dist. LEXIS 21804, at *13-*14.

> **1.**      **First New York's Rapid Fire Day-Trading Activity Makes It Atypical of the Class**

First New York *is not an investor in any true sense of the word* – but rather, an *amalgamation of 195 individual program traders* that cannot, individually or collectively, satisfy the adequacy and typicality requirements of Rule 23. *See Bank One*, 96 F. Supp. 2d at 784; *MicroStrategy*, 110 F. Supp. 2d at 436-37.

Unlike typical class members, First New York bought and sold large volumes of shares daily, generally holding them for just minutes or perhaps hours, seeking profits of pennies a share on the normal price fluctuations that occur in every stock. *See* Wayne Decl., Ex. B (buying and selling 240,700 shares on July 2, 2002 *alone*). As such, First New York fails to satisfy Rule 23 and is subject to unique defenses which would disqualify it even if it had provided evidence from which a court could determine its loss with confidence. *MicroStrategy*, 110 F. Supp. 2d at 436-37; *Bank One*, 96 F. Supp. 2d at 783-84. Further, defendants will argue that First New York's investment strategy is not the approach of typical investor members of the class who purchased (or sold) Cardinal Health securities in *reliance* on publicly available information. Because such an

- 16 -

Exhibit C
Page 40

investment strategy clearly has nothing to do with defendants' fraudulent public statements and/or omissions, First New York cannot be appointed in this case. *See, e.g., Safeguard*, 216 F.R.D. at 582-83. As the court explained in *MicroStrategy*:

> [E]ven assuming Wolverine Trading's evidence of loss was sufficient, its application did not satisfy the statutory requirements of typicality and adequacy .... Evidence presented ... confirmed that Wolverine Trading was an atypical investor that engages in transactions far beyond the scope of what a typical investor contemplates.... Accordingly, Wolverine Trading may [be] **subject to unique defenses based on its method of doing business**. For these reasons, Wolverine Trading [is] not an adequate class representative.

110 F. Supp. 2d at 436-37.

### 2. First New York Is Inadequate to Serve as a Class Representative Because Its Trading Data Is Full of Errors Rendering Its Loss Calculation Unreliable

First New York's claimed $8.6 million loss is again much smaller than the Pension Fund Group's $15.1 million loss.[14] *See Cavanaugh*, 306 F.3d at 732. In addition, the records First New York submitted are full of errors and ambiguities which make it difficult, if not impossible, for the Court to rely on either its loss calculation or its capacity to represent the class in this complex litigation. *See MicroStrategy*, 110 F. Supp. 2d at 436-37 n.6 (refusing to consider the evidence submitted for purposes of being appointed lead plaintiff because it did not permit a confident conclusion that its financial interest was as large as it averred); *Safeguard*, 216 F.R.D. at 582-83 & n.4 (a lead plaintiff's defective loss submissions left it "vulnerable to further attacks that would impose an **unnecessary disadvantage on the class**").

First New York's own trade data shows, for instance, that it claims to have traded Cardinal Health stock at prices the stock *never* traded, and churned in and out of the stock multiple times a

---

[14] Further, First New York's atypical day-trading activity **grossly and inappropriately enlarged the size of its claimed financial interest in this case** and (now realizing that its loss is smaller than the Pension Fund Group and New Jersey) there is little doubt that First New York will attempt to try to exploit its day-trading activity to somehow magnify the size of its financial interest in this case.

- 17 -

Exhibit C
Page 41

day seeking gains of pennies a share on normal intra-day price fluctuations *while seldom holding their positions open for more than a few hours*.

A brief, but not exhaustive, sampling of the errors for the *195 different traders* that make up First New York include: (1) the quoted sale price of *13,000* shares of Cardinal Health stock on 9/19/2003 at $77, is false (trading range for the day: $58.80-$56.93); (2) the sale of *25,000* shares on 11/18/2002 at $66, is also incorrect (range for the day: $69.80-$67.26); (3) the sale of *10,000* shares on 5/18/04 at $75, is glaringly inaccurate (range for the day: $69.90-$67.03); and (4) the sale price of *15,000* shares at $65 on January 18, 2002 is false (trading range: $62.50-$60.70). These errors, and others, do not to permit the Court or the parties a confident assessment of First New York's financial interest. *See Safeguard*, 216 F.R.D. at 582-83 & n.4; Ex. 4, attached hereto (Cardinal Health Pricing History chart).

In *MicroStrategy*, the court summarily refused to appoint a trader that submitted faulty data, like First New York, lead plaintiff, reasoning:

> Although Wolverine Trading's loss was apparently very large, *the evidence it submitted did not permit a confident conclusion that its loss was as large as it averred*: While the other candidates set forth in clear terms the specific transactions that led to a loss, Wolverine submitted a conclusory affidavit and a collection of indecipherable financial statements that purported to support the affidavit's conclusion.

110 F. Supp. 2d at 436. Like Wolverine Trading's submission in *MicroStrategy*, First New York submitted a conclusory affidavit and a collection of indecipherable financial statements in support of its Lead Plaintiff application. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (reasoning implicitly that plaintiff carries burden to present facts to support its assertion that it has the largest financial interest); *MicroStrategy*, 110 F. Supp. 2d at 436-37 (same); *Bank One*, 96 F. Supp. 2d at 783-84 (same).

- 18 -

Exhibit C
Page 42

Accordingly, First New York's lead plaintiff application should be denied based on its failure to provide the Court with reliable evidence demonstrating its "financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

### 3.     First New York's Pleadings Are Jurisdictionally Defective

Under the PSLRA, the window for filing motions for appointment of Lead Plaintiff in this case closed on August 31, 2004 – 60 days after the first notice was published on June 30, 2004. 15 U.S.C. §78u-4(a)(3)(A)(i).  First New York's *Corrected* Motion of Law filed with this Court on September 1, 2004, therefore should not be considered:

> The PSLRA is unequivocal and allows for no exceptions.  All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action.  The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, *or any other pleading*, for that matter, filed *after* the sixty (60) day window has closed.

*Telxon*, 67 F. Supp. 2d at 818; *see Carson v. Clarent Corp.*, No. C 01-03361 CRB, 2001 U.S. Dist LEXIS 22059, at *7 (N.D. Cal. 2001).  Because First New York failed to properly file all of its pleadings within the PSLRA's 60-day filing deadline, First New York's motion for appointment as lead plaintiff should be denied.  *See id.*; *Telxon*, 67 F. Supp 2d at 818.  Further, First New York's *inability to decide* who it was moving with for lead plaintiff in the first instance similarly indicates its inability to prosecute and monitor this litigation – and hence its inadequacy to represent the class.[15]

---

[15]     Again, First New York *unsuccessfully* attempted to jettison an entity called Generic Trading prior to filing its lead plaintiff motion.  *See* n.5, *supra*.  Who or what was Generic Trading of Philadelphia, and where are they now?

- 19 -

Exhibit C
Page 43

**E.      Wood Asset – An Investment Advisor – Did Not Suffer a
         Compensable Loss and Cannot Assert the Class's 1933 Act Claims**

Wood Asset is simply an investment *advisor* – it has made no showing that *it* purchased

and/or holds title to any Cardinal Health stock on its *own* behalf.[16]  Instead, Wood Asset simply

*manages* the money of *others* who invest in securities and has not shown that it has authority to

prosecute this case or recover their *client's* losses in this case. *See Smith*, 206 F. Supp. 2d at 634-35.

Accordingly, Wood Asset cannot be appointed Lead Plaintiff. *See Turkcell*, 209 F.R.D. at 358.

Because Wood Asset manages other people's money and not its own, Wood Asset does not

have standing to bring a claim for violations of the securities laws, let alone act as Lead Plaintiff at

least absent clear evidence that its clients have expressly provided this authority. *See In re NASDAQ

Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y. 1996) ("[A] plaintiff may not use the

procedural device of a class action to bootstrap himself into standing he lacks under the express

terms of the substantive law."); *Smith*, 206 F. Supp. 2d at 627, 634 (a manager must provide

evidence that it "'acts as attorney-in-fact for its clients and is authorized to bring suit to recover for

... investment losses'").

When faced with a similar situation where investment entities, like Wood Asset, applied for

Lead Plaintiff without providing the necessary information about their interest in the stock at issue,

the court in *In re Tyco Int'l Sec. Litig. ("Tyco I")*, No. 00-MD-1335-B, slip op. at 7-9 (D.N.H. 2000),

questioned the entities' standing:

> Did the member purchase the Tyco securities described in its certification on its own
> account, or on the account(s) of others?  Did the member take record/legal title to the
> Tyco securities described in its certification?      Did the member take
> equitable/beneficial title to the Tyco securities described in its certification, and, if
> not, who took equitable/beneficial title?    If the member did not take
> equitable/beneficial title to the Tyco securities described in its certification, what was
> the legal relationship (e.g., fiduciary, trust, contract) between the member and the

---

[16]      Wood Asset also does not appear to have legal standing to assert 1933 Act claims.

- 20 -

Exhibit C
Page 44

equitable/beneficial holder?  In purchasing the Tyco securities described in its certification, was the member acting as a broker, a short-seller, or a hedge fund?

*Id.* at 9.  In addition, the court required the entities to file memoranda addressing their "standing, typicality and adequacy."  *Id.*  One of the three entities applying for Lead Plaintiff in *Tyco I* withdrew its bid rather than comply with the court's ruling.  *See Tyco II*, 2000 U.S. Dist. LEXIS 13390, at *2 n.1.  *See also Smith*, 206 F. Supp. 2d at 634-35.

Even the most cursory review of the certification of Barry Wood demonstrates that Wood Asset has completely failed to address whether *it* suffered any losses at all or whether Wood Asset obtained authority to commence litigation (as opposed to receiving authorization to make investment decisions) for its clients which actually suffered the losses from defendants' misconduct.  In stark contrast to information required by the court in *Tyco I*, the Wood certification fails, for example, to affirmatively state whether Wood Asset took either record/legal and/or beneficial/equitable title in the Cardinal Health stock that was "purchased."[17]  *See Tyco I*, slip op. at 9.

Because Wood Asset does not have the largest loss, cannot assert the class's 1933 Act claims and has presented no evidence that it has been granted authority to file suit against Cardinal Health (as opposed to the authority to use its investment discretion to purchase stock for others) on behalf of the accounts it manages for those clients that actually own the Cardinal Health stock at issue, the Court should deny Wood Asset's motion for appointment as Lead Plaintiff.[18]

---

[17]    At a minimum, should it even reach Wood Asset's lead plaintiff motion, the Court should order a deposition of Wood Asset to ensure that: (i) it is a legitimate lead plaintiff; (ii) it has a beneficial interest in the stock that it claims it purchased; (iii) it has been authorized to commence and prosecute this action; and (iv) that it is willing and able to vigorously oversee the prosecution of this case.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iv) ("[D]iscovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.").

[18]    In fact, on July 21, 2004, the Ninth Circuit was sufficiently troubled by a petition for Writ of Mandamus involving a district court's appointment of an investment advisor which had failed to

- 21 -

Exhibit C
Page 45

## F.      All of the Other Motions Should Be Denied

Finally, none of the other movants can be appointed Lead Plaintiff because their respective financial interests are far smaller than the Pension Fund Group's 15.1 million loss. *See Cavanaugh*, 306 F.3d at 732 (holding that the "*only* basis on which a court may compare plaintiffs competing to serve as lead plaintiff is the size of their financial stake in the controversy").

## III.      CONCLUSION

For all the reasons stated herein, the Pension Fund Group's motion for appointment as Lead Plaintiff and for approval of its selection of Lead Counsel should be granted and all other motions should be denied.

DATED:  September 24, 2004                    Respectfully submitted,

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY (0063373)
GEOFFREY J. MOUL (0070663)
BRIAN K. MURPHY (0070654)

<u>**s/ Joseph F. Murray**</u>
JOSEPH F. MURRAY

326 S. High Street, Suite 400
Columbus, OH  43215
Telephone:  614/469-0400
614/469-0402 (fax)
E-mail:  murray@mmmb.com

[Proposed] Liaison Counsel

---

establish that it suffered a loss or had been properly authorized to sue, that it ordered the parties in that case to submit additional briefing on this very issue. *See In re Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, U.S. Court of Appeals for the Ninth Circuit Docket No. 04-73146.  The Writ remains pending.

- 22 -

Exhibit C
Page 46

Case: 2:19-cv-10701-FLA-E NM Document 50-3 Filed: 03/16/20 33 Page 34 of 40 Page ID
Case: 2:04-cv-00575-ALM-NMR Doc #: 62 Filed: 09/24/04 Page: 33 of 39 PAGEID #: 9147
#:618

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
RAMZI ABADOU
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JEFFREY W. LAWRENCE
SYLVIA WAHBA KELLER
LUKE O. BROOKS
100 Pine Street, 26th Floor
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

[Proposed] Lead Counsel for Plaintiffs

CAULEY, BOWMAN, CARNEY
  & WILLIAMS, LLP
S. GENE CAULEY
P.O. Box 25438
Little Rock, AR 72221-5438
Telephone: 501/312-8500
501/312-8505 (fax)

Additional Counsel for New Mexico

- 23 -

Exhibit C
Page 47

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys denoted on the attached Service List. I hereby certify that I have caused to be mailed by the United States Postal Service this document to the non-CM/ECF participants listed on the attached Service List.

**s/Joseph F. Murray**

JOSEPH F. MURRAY (00063373)
[Proposed] Liaison Counsel
MURRAY MURPHY MOUL + BASIL LLP
326 S. High Street, Suite 400
Columbus, OH 43215
Telephone: 614/469-0400
614/469-0402 (fax)
E-mail: murray@mmmb.com

S:\CasesSD\Cardinal Health Secs\BRF00013598-Opp.doc

- 24 -

Exhibit C
Page 48

CARDINAL HEALTH SECS
Service List - 9/24/2004    (04-0282)
Page 1 of  5

## Counsel For Defendant(s)

Geoffrey J. Ritts
John M. Newman, Jr.
Jones Day
901 Lakeside Avenue, North Point
Cleveland, OH  44114
   216/586-3939
   216/579-0212(Fax)

Brian G. Selden
J. Todd Kennard
J. Kevin Cogan
Jones Day
41 South High Street, Suite 1900
Columbus, OH  43215
   614/469-3939
   614/461-4198(Fax)

## Counsel For Plaintiff(s)

Mark C. Gardy
Stephen T. Rodd
Nancy  Kaboolian
Abbey Gardy, LLP
212 East 39th Street
New York, NY  10016
   212/889-3700
   212/684-5191(Fax)

Randall K. Pulliam
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219-4281
   214/521-3605
   214/520-1181(Fax)

Leonard  Barrack
Daniel E. Bacine
Mark R. Rosen
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
   215/963-0600
   215/963-0838(Fax)

Michael  Braun
Braun Law Group, P.C.
12400 Wilshire Boulevard
Los Angeles, CA  90025
   310/442-7755
   310/442-7756(Fax)

S. Gene Cauley
Cauley Bowman Carney & Williams, LLP
P.O. Box 25438
Little Rock, AR  72221-5438
   501/312-8500
   501/312-8505(Fax)

Exhibit C
Page 49

CARDINAL HEALTH SECS

Service List - 9/24/2004    (04-0282)

Page 2 of 5

Martin D. Chitwood
Nikole M. Davenport
Sara J. Biden
Chitwood & Harley, LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA  30309
  404/873-3900
  404/876-4476 (Fax)

John R. Climaco
Scott D. Simpkins
Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A.
1228 Euclid Avenue, 9th Floor
Cleveland, OH  44115
  216/621-8484
  216/771-1632 (Fax)

Michael F. Colley
David I. Shroyer
Daniel N. Abraham
Colley Shroyer & Abraham Co., LPA
536 South High Street
Columbus, OH  43215
  614/228-6453
  614/228-7122 (Fax)

David P. Meyer
David P. Meyer & Associates Co., LPA
401 North Front Street, Suite 350
Columbus, OH  43035
  614/224-6000
  614/224-6066 (Fax)

John G. Emerson
Emerson Poynter LLP
2228 Cottondale Lane, Suite 100
Little Rock, AR  72202
  501/907-2555
  501/907-2556 (Fax)

Vincent R. Cappucci
Stephen D. Oestreich
Robert N. Cappucci
Entwistle & Cappucci LLP
299 Park Avenue, 14th Floor
New York, NY  10171
  212/894-7200
  212/894-7272 (Fax)

Lionel Z. Glancy
Michael Goldberg
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
  310/201-9150
  310/201-9160 (Fax)

Steven O. Sidener
Joseph M. Barton
Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA  94105
  415/777-2230
  415/777-5189 (Fax)

Exhibit C
Page 50

CARDINAL HEALTH SECS

Service List - 9/24/2004    (04-0282)

Page 3 of 5

Stephen E. Chappelear
Hahn, Loeser & Parks, LLP
1050 Fifth Third Center
21 East State Street
Columbus, OH  43215-4224
   614/221-0240
   614/221-5909 (Fax)

Jack  Landskroner
Landskroner Grieco Madden, Ltd.
1360 West 9th Street, Suite 200
Cleveland, OH  44113
   216/522-9000
   216/522-9007 (Fax)

Richard B. Brualdi
Law Offices of Richard B. Brualdi
29 Broadway, Suite 1515
New York, NY  10006
   212/952-0602
   212/952-0608 (Fax)

Jeffrey W. Lawrence
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111-5238
   415/288-4545
   415/288-4534 (Fax)

Richard L. Creighton, Jr.
Brian P. Muething
Keating, Muething & Klekamp
One East Fourth Street, Suite 1700
Cincinnati, OH  45202
   513/579-6400
   513/579-6457 (Fax)

Leigh R. Lasky
Lasky & Rifkind, Ltd.
351 W. Hubbard, Suite 406
Chicago, IL  60610
   312/634-0057
   312/634-0059 (Fax)

William S. Lerach
Darren J. Robbins
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
   619/231-1058
   619/231-7423 (Fax)

Melvyn I. Weiss
David J. Bershad
Steven G. Schulman
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, NY  10119
   212/594-5300
   212/868-1229 (Fax)

Exhibit C
Page 51

CARDINAL HEALTH SECS

Service List - 9/24/2004    (04-0282)

Page 4 of 5

Joseph F. Murray
Geoffrey J. Moul
Brian K. Murphy
Murray Murphy Moul + Basil LLP
326 S. High Street, Suite 400
Columbus, OH  43215
  614/469-0440
  614/469-0402 (Fax)


Marc A. Topaz
Richard A. Maniskas
Tamara  Skvirky
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004
  610/667-7706
  610/667-7056 (Fax)


Edmund W. Searby III
Walter W. Noss
Scott + Scott, LLC
33 River Street
Chagrin Falls, OH  44022
  440/247-8200
  440/247-8275 (Fax)


Scott  Smith
Smith, Phillips & Associates Co., LPA
6660 North High Street, Suite 3F
Worthington, OH  43085
  614/846-1700
  614/846-3910 (Fax)


Eric J. Belfi
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, NY  10016
  212/682-1818
  212/682-1892 (Fax)


Arthur L. Shingler III
Scott + Scott, LLC
401 B Street, Suite 307
San Diego, CA  92101
  619/233-4565
  619/233-0508 (Fax)


David R. Scott
Neil  Rothstein
Scott + Scott, LLC
108 Norwich Avenue
Colchester, CT  06415
  860/537-5537
  860/537-4432 (Fax)


Richard S. Wayne
Thomas P. Glass
Joseph J. Braun
Strauss & Troy
Federal Reserve Building
150 East Fourth Street
Cincinnati, OH  45202-4018
  513/621-2120
  513/629-9426 (Fax)

Exhibit C
Page 52

CARDINAL HEALTH SECS
Service List - 9/24/2004    (04-0282)
Page 5 of 5

Jules Brody
Stull, Stull & Brody
6 East 45th Street, 4th Floor
New York, NY 10017
    212/687-7230
    212/490-2022(Fax)


Daniel R. Karon
Weinstein Kitchenoff Scarlato Karon & Goldman,
Ltd.
55 Public Square, Suite 1500
Cleveland, OH 44113-1998
    216/622-1851
    216/622-1852(Fax)

Joseph C. Langston
The Langston Law Firm, P.A.
100 South Main Street, P.O. Box 787
Bonneville, MS 38829
    662/728-3138
    662/728-1992(Fax)


Joseph H. Weiss
Weiss & Yourman
551 Fifth Avenue, Suite 1600
New York, NY 10176
    212/682-3025
    212/682-3010(Fax)

Exhibit C
Page 53