# EXHIBIT F

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LARRY LABUL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 3:18-cv-02062-VLB |
| Plaintiff, | ) ) | **CLASS ACTION** |
| vs. | ) ) | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |
| XPO LOGISTICS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | **February 12, 2019** |

1531506_1

## I.    **INTRODUCTION**

Presently pending in this Court is a class action lawsuit brought on behalf of purchasers of XPO Logistics, Inc. ("XPO" or the "Company") securities between February 26, 2014 and December 12, 2018, inclusive (the "Class Period") against XPO and two of its officers for violations of §10(b) and §20(a) of the Securities Exchange Act of 1934 ("1934 Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.  Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).

Local #817 IBT Pension Fund, Local 272 Labor-Management Pension Fund, and Local 282 Pension Trust Fund and Local 282 Welfare Trust Fund (collectively, the "Pension Funds") should be appointed as lead plaintiff because they: (1) timely filed this motion; (2) have a substantial financial interest in the outcome of this litigation; and (3) have claims that are typical of the claims of the class and will fairly and adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Pension Funds' selection of Robbins Geller Rudman & Dowd LLP as lead counsel should be approved because the firm is well experienced in litigating securities class actions like this and will adequately represent the interests of all class members.  Accordingly, the Pension Funds' motion should be granted.

## II.    **FACTUAL BACKGROUND**

XPO provides transportation and logistics services in the United States, North America, France, the United Kingdom, Spain, Europe, Asia, and internationally

- 1 -

1531506_1

through its Transportation and Logistics segments. Complaint, ¶2. XPO offers its services to customers in various industries, such as retail, e-commerce, food and beverage, manufacturing, technology and telecommunications, aerospace and defense, life sciences, healthcare, medical equipment, and agriculture. *Id.* Before acquiring XPO, the Company's Chief Executive Officer, defendant Bradley S. Jacobs, co-founded United Rentals, Inc. ("URI") in 1997, which eventually collapsed after an accounting scandal under Jacobs' leadership. *Id.*, ¶4.

Jacobs's tenure at XPO has been characterized by an aggressive mergers and acquisitions ("M&A") strategy. *Id.*, ¶5. XPO, for example, has completed 17 acquisitions since Jacobs took control of the Company, deploying $6.1 billion of capital. *Id.*, ¶3. *Fortune Magazine* noted that XPO "has grown from $177 million in sales in 2011 to $17 billion today, thanks largely to an incredible run of acquisitions." *Id.*, ¶5. On August 2, 2017, Jacobs announced plans to earmark up to $8 billion for additional acquisitions. *Id.*

The complaint alleges that throughout the Class Period, defendants made materially false and misleading statements and/or concealed that: (a) XPO's highly touted M&A strategy had yielded only minimal returns to the Company; (b) XPO was utilizing improper accounting practices to mask its true financial condition, including, inter alia, under-reporting of bad debts and aggressive amortization assumptions; and (c) as a result, XPO's public statements were materially false and misleading at all relevant times. *See, e.g., id.*, ¶6.

On December 12, 2018, Spruce Point Capital Management published a report regarding XPO, entitled "Trucking Ridiculous; End of the Road" which stated that a forensic investigation had revealed "financial irregularities that conveniently cover

- 2 -

1531506_1

Case 2:19-cv-10701-FLA-E Document 50-6 Filed 03/16/20 Page 5 of 11 Page ID
Case 3:18-cv-02062-SRU Document 34 Filed 02/22/19 Page 4 of 10
#:661

[the Company's] growing financial strain and inability to complete additional acquisitions despite repeated promises." *Id.*, ¶7. Spruce Point further reported that it had uncovered, among other issues, "concrete evidence to suggest dubious tax accounting, under-reporting of bad debts, phantom income through unaccountable M&A earn-out liabilities, and aggressive amortization assumptions: all designed to portray glowing 'Non-GAAP' results." *Id.* The Spruce Point report further stated that "XPO insiders have aggressively reduced their ownership interest in the Company since coming public, and recently enacted a new compensation structure tied to 'Adjusted Cash Flow Per Share' – defined in such a non-standard way that it is practically meaningless." *Id.* Spruce Point concluded that "[i]n our opinion, XPO has used a nearly identical playbook from [URI] leading up to its SEC investigation, executive felony convictions, and share price collapse." *Id.* On this news, XPO's stock price declined over 26%. *Id.*, ¶8.

As a result of defendants' alleged wrongful acts and omissions and the decline in XPO's stock value, class members have suffered significant losses and damages. *Id.*, ¶9.

## III. ARGUMENT

### A. The Pension Funds Should Be Appointed Lead Plaintiff

The PSLRA establishes a procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the

- 3 -

1531506_1

Case 2:19-cv-10701-FLA-E Document 50-6 Filed 03/16/20 Page 6 of 11 Page ID
Case 3:18-cv-02062-SRU Document 34 Filed 02/12/19 Page 5 of 10 Page ID
#:662

first complaint.  15 U.S.C. §78u-4(a)(3)(A)(i).  Next, the PSLRA provides that the Court

shall adopt a presumption that the most adequate plaintiff is the person that –

(aa) has either filed the complaint or made a motion in response to a notice
. . .;

(bb) in the determination of the court, has the largest financial interest in the
relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of
Civil   Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *Kelleher v. ADVO, Inc.*, 2007 WL 1232177, at *1 (D. Conn.

Apr. 24, 2007).  The Pension Funds meet these requirements and should therefore be

appointed Lead Plaintiff.

### 1.      This Motion Is Timely

The December 14, 2018, statutory notice published in this case advised

purported class members of the pendency of the action, the claims asserted, the

proposed Class Period, and the right to move the Court for appointment as lead

plaintiff by February 12, 2019.  *See* Declaration of Christopher M. Barrett in Support

of the Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel

("Barrett Decl."), Ex. A.  Because the Pension Funds' motion has been timely filed,

the Pension Funds are eligible for appointment as lead plaintiff.

### 2.      The Pension Funds Have the Largest Financial Interest
### in the Relief Sought by the Class

As evidenced by their Certifications, the Pension Funds purchased 43,740

shares of XPO securities during the Class Period and suffered approximately

$1,222,938 in losses as a result of defendants' alleged misconduct.[1]  *See* Barrett

---

[1]      The Pension Funds' loss is the same under either the "last in, first out" calculation method or the "first in, first out" calculation method.

- 4 -

1531506_1

Case 2:19-cv-10701-FLA-E2 Document 50-6 Filed 03/16/20 Page 7 of 11 Page ID
Case 3:18-cv-02062-SRU Document 34 Filed 02/22/19 Page 6 of 10
#:663

**Decl., Exs. B, C.** To the best of their counsel's knowledge, there are no other named plaintiffs with a larger financial interest. Therefore, the Pension Funds satisfy the PSLRA's prerequisite of having the largest financial interest.

### 3. The Pension Funds Otherwise Satisfy the Rule 23 Typicality and Adequacy Requirements

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "At this stage in the proceeding, for the purpose of appointing a lead plaintiff, the court need only consider the typicality and adequacy requirements of Rule 23." *Kelleher*, 2007 WL 1232177, at *2. Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4); *Kelleher*, 2007 WL 1232177, at *2.

"'Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Kelleher*, 2017 WL 1232177, at *2 (quoting *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)). Further, "'[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'" *Id.* Here, the Pension Funds satisfy this requirement because, just like all other class members, they: (1) purchased XPO securities during the Class Period; (2) were adversely affected by defendants' allegedly false and misleading statements; and (3) suffered damages when the truth about XPO's underwriting practices and

- 5 -

1531506_1

relationships with retailers was revealed. Thus, the Pension Funds' claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must evaluate adequacy of representation by considering: (i) whether the class representatives' claims conflict with those of the class; and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation. *See Kelleher*, 2007 WL 1232177, at \*2. Here, the Pension Funds are adequate representatives of the class. As evidenced by the injuries suffered, the Pension Funds' interests are clearly aligned with those of class members and there is no evidence of any antagonism between these respective interests. The Pension Funds have also evidenced their willingness to serve as lead plaintiff in this case as well as their ability to control the litigation. *See* Barrett Decl., Ex. D. In addition, the Pension Funds' proposed counsel are highly qualified, experienced, and able to conduct this complex litigation in a professional manner. *See* §III.B. *infra*. The Pension Funds have therefore made the prima facie showing of typicality and adequacy required by Rule 23 at this stage.

### B. The Court Should Approve the Pension Funds' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Pension Funds have selected Robbins Geller to serve as lead counsel.

With more than 200 attorneys in offices nationwide, Robbins Geller possesses substantial experience litigating complex securities litigation like this case. District

- 6 -

1531506_1

courts throughout the nation have noted Robbins Geller's reputation for excellence, resulting in the appointment of Robbins Geller to lead roles in hundreds of complex securities class action cases. *See, e.g., Jones v. Pfizer, Inc.*, No. 1:10-cv-03864-AKH, ECF No. 502 at 42-43 (S.D.N.Y. Aug. 10, 2015) (commending Robbins Geller for its work in achieving $400 million settlement on the eve of trial: "Without the quality and the toughness that you have exhibited, our society would not be as good as it is with all its problems. So from me to you is a vote of thanks for devoting yourself to this work and doing it well . . . . You did a really good job. Congratulations."); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (commenting that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country"); Barrett Decl., Ex. E. Robbins Geller's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues.

Thus, the Court can be assured that the class will receive the highest caliber of legal representation should it approve the Pension Funds' selection of Robbins Geller as Lead Counsel for the putative class.

## IV.    CONCLUSION

The Pension Funds have satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, the Pension Funds respectfully request that the Court grant their motion for appointment as lead plaintiff and approve their selection of counsel.

- 7 -

1531506_1

Case 2:19-cv-10701-FLA-E Document 50-6 Filed 03/16/20 Page 10 of 11 Page ID
Case 3:18-cv-02062-SRU Document 34 Filed 02/12/19 Page 9 of 10
#:666

DATED:  February 12, 2019      Respectfully submitted,

IZARD, KINDALL & RAABE, LLP
ROBERT A. IZARD (ct01601)
CHRISTOPHER M. BARRETT (ct30151)


s/ Christopher M. Barrett
CHRISTOPHER M. BARRETT (ct30151)

29 South Main Street, Suite 305
West Hartford, CT  06107
Telephone:  860/493-6292
860/493-6290 (fax)
rizard@ikrlaw.com
cbarrett@ikrlaw.com

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for [Proposed]
Lead Plaintiff

- 8 -

1531506_1

Case 2:19-cv-10701-FLA-E2 Document 50-6 Filed 03/16/20 Page 11 of 11 Page ID
Case 3:18-cv-02062-SRU Document 34 Filed 02/12/19 Page 10 of 10
#:667

## CERTIFICATE OF SERVICE

**I hereby certify under penalty of perjury that on February 12, 2019, I authorized
the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF
system which will send notification of such filing to the e-mail addresses on the
attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of
the foregoing via the United States Postal Service to the non-CM/ECF participants
indicated on the attached Manual Notice List.**

**s/ Christopher M. Barrett**
**CHRISTOPHER M. BARRETT (ct30151)**

**29 South Main Street, Suite 305**
**West Hartford, CT  06107**
**Telephone:  860/493-6292**
**860/493-6290 (fax)**
**rizard@ikrlaw.com**


**E-mail:  cbarrett@ikrlaw.com**

1531506_1