ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS (259916)
TRICIA L. McCORMICK (199239)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
triciam@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN KOFFSMON, on behalf of themselves and all others similarly situated,<br><br>                     Plaintiff,<br><br>     vs.<br><br>GREEN DOT CORPORATION, et al.,<br><br>                     Defendants. | Case No. 2:19-cv-10701-DDP-E<br><br><u>CLASS ACTION</u><br><br>REPLY MEMORANDUM IN FURTHER SUPPORT OF NEW YORK HOTEL TRADES COUNCIL & HOTEL ASSOCIATION OF NEW YORK CITY, INC. PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF<br><br>DATE:     March 30, 2020<br>TIME:     10:00 a.m.<br>CTRM:    9C<br>JUDGE:  Hon. Dean D. Pregerson |

4817-4552-9783.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     THE PENSION FUND IS THE PRESUMPTIVELY MOST
        ADEQUATE PLAINTIFF .................................................................................. 4

        A.      The Pension Fund Possesses the Largest Interest in the Relief
                Sought by the Class.................................................................................. 4

        B.      The Pension Fund Meets Rule 23's Requirements............................... 6

                1.      The Pension Fund Is Not Subject to a Unique Defense ............ 6

                2.      The IIG's Speculation that It Is More Adequate Falls
                        Short of the Proof Required to Rebut the Presumption
                        Which Lies in Favor of the Pension Fund ................................. 9

III.    CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Andrade v. Am. Apparel, Inc.*,
No. 10-06352 MMM, 2011 U.S. Dist. LEXIS 79795
(C.D. Cal. Mar. 15, 2011)..............................................................................................11

*Armour v. Network Assocs., Inc.*,
171 F. Supp. 2d 1044 (N.D. Cal. 2001) .........................................................................11

*Aronson v. McKesson HBOC, Inc.*,
79 F. Supp. 2d 1146 (N.D. Cal. 1999).............................................................................6

*Aviva Partners, LLC v. Navarre Corp.*,
No. 05-1151, 2005 U.S. Dist. LEXIS 45179
(D. Minn. Dec. 13, 2005) ................................................................................................7

*Brown v. China Integrated Energy, Inc.*,
No. CV 11-02559 MMM, 2011 U.S. Dist. LEXIS 151131
(C.D. Cal. Aug. 29, 2011) ......................................................................................3, 7, 9

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185
(S.D.N.Y. June 21, 2018) *objection overruled by* 2018 U.S. Dist.
LEXIS 217875 (S.D.N.Y. Aug. 27, 2018) .....................................................................11

*China Agritech, Inc. v. Resh*,
_ U.S. _, 138 S. Ct. 1800, 201 L.Ed. 123 (2018) ....................................................10, 11

*Crihfield v. CytRx Corp.*,
No. CV 16-05519 SJO, 2016 U.S. Dist. LEXIS 181615
(C.D. Cal. Oct. 26, 2016)................................................................................................1

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ..............................................7

*Einhorn v. Axogen, Inc.*,
No. 8:19-cv-69-EAK-AAS, 2019 U.S. Dist. LEXIS 195312
(M.D. Fla. Apr. 30, 2019)........................................................................................12, 13

*Ferrari v. Gisch*,
225 F.R.D. 599 (C.D. Cal. 2004) ....................................................................................5

4817-4552-9783.v1

**Page**

*Feyko v. Yuhe Int'l Inc.*,
   No. CV 11-05511 DDP, 2012 U.S. Dist. LEXIS
   (C.D. Cal. Mar. 2, 2012)................................................................................11

*Fleming v. Impax Labs. Inc.*,
   No. 16-cv-06557-HSG, 2017 U.S. Dist. LEXIS 22147
   (N.D. Cal. Feb. 15, 2017) .............................................................................12

*Gold v. Morrice*,
   No. CV 07-00931 DDP (JTLx) (C.D. Cal. June 26, 2007).......................4, 6, 13

*Hessefort v. Super Micro Computer, Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018) .........................................................12

*Hufnagle v. Rino Int'l Corp.*,
   No. CV 10-8695-VBF, 2011 U.S. Dist. LEXIS 19760
   (C.D. Cal. Feb. 16, 2011) ..............................................................................12

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002)....................................................................*passim*

*In re Connetics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. Jan. 29, 2008) ...............................................7

*In re Diamond Foods, Inc., Sec. Litig.*,
   281 F.R.D. 405 (N.D. Cal. 2012) ...................................................................11

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002) ................................................................3, 10

*In re GE Sec. Litig.*
   No. 09 Civ.1951 (DC), 2009 U.S. Dist. LEXIS 69133
   (S.D.N.Y. July 29, 2009)..................................................................................7

*In re Lyft Sec. Litig.*,
   2020 U.S. Dist. LEXIS 37606 (N.D. Cal. Mar. 4, 2020) ..................................7

*In re Maxim Integrated Prods.*,
   639 F. Supp. 2d 1038 (N.D. Cal. 2009) ...........................................................7

4817-4552-9783.v1

**Page**

*In re NTL Sec. Litig.*,
No. 02 Civ. 3013 (LAK) (AJP), 2006 U.S. Dist. LEXIS 5346
(S.D.N.Y. Feb. 14, 2006) ................................................................................. 8

*In re Peregrine Sys. Sec. Litig.*,
No. 02-cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690
(S.D. Cal. Oct. 9, 2002) .................................................................................... 4

*In re Regions Morgan Keegan Closed-End Fund Litig*,
No. 07-02830, 2010 U.S. Dist. LEXIS 132902
(W.D. Tenn. Dec. 15, 2010) ............................................................................. 7

*In re Snap Sec. Litig.*,
No. 2:17-cv-03679-SVW-AGR, 2019 U.S. Dist. LEXIS 202714
(C.D. Cal. Nov. 20, 2019) ............................................................................... 11

*In re Wash. Mut., Inc.*,
No. 2:08-md-1919 MJP, 2010 U.S. Dist. LEXIS 142992
(W.D. Wash. Oct. 12, 2010) ............................................................................. 7

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ........................................................... 1, 2

*Mauss v. NuVasive, Inc.*,
No. 13cv2005 JM (JLB), 2016 U.S. Dist. LEXIS 90412
(S.D. Cal. July 12, 2016) .................................................................................. 7

*McCracken v. Edwards Lifesciences Corp.*,
No. 8:13-CV-1463-JLS, 2014 U.S. Dist. LEXIS 2147
(C.D. Cal. Jan. 8, 2014) ................................................................................... 5

*Montoya v. Mamma.com Inc.*,
No. 05 Civ. 2313 (HB), 2005 U.S. Dist. LEXIS 10224
(S.D.N.Y. May 31, 2005) .................................................................................. 7

*Mortimer v. Diplomat Pharm., Inc.*,
No. 19 C 1735, 2019 U.S. Dist. LEXIS 120543
(N.D. Ill. July 19, 2019) ................................................................................... 7

- iv -

4817-4552-9783.v1

**Page**

*Nicolow v. Hewlett Packard Co.*,
    No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876
    (N.D. Cal. Mar. 4, 2013) ................................................................................... 13

*Perrin v. Sw. Water Co.*,
    No. 2:08-cv-7844-FMC-AGRx, 2009 U.S. Dist. LEXIS 134154
    (C.D. Cal. Feb. 13, 2009) ..................................................................................... 5

*Ross v. Abercrombie & Fitch Co.*,
    257 F.R.D. 435 (S.D. Ohio 2009) ........................................................................ 8

*Shah v. A10 Networks, Inc.*,
    No. 18-cv-01772-VC (N.D. Cal. June 29, 2018) ............................................... 13

*Takeda v. Turbodyne Techs., Inc.*,
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................................................. 5

*Tan v. NIO Inc.*,
    No. 19-CV-1424 (NGG) (VMS), 2020 U.S. Dist. LEXIS 36623
    (E.D.N.Y. Mar. 3, 2020) ....................................................................................... 2

*Tanne v. Autobytel*,
    226 F.R.D. 659 (C.D. Cal. 2005) ....................................................................... 13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(3)(B)(iii)(II) ................................................................................... 2, 6

Federal Rules of Civil Procedure
    Rule 23(a) ............................................................................................................. 6
    Rule 23 ......................................................................................................... 2, 6, 14

**LEGISLATIVE HISTORY**

H.R. Conf. Rep. No. 369-104, at 34 (1995), *reprinted in* 1995
    U.S.C.C.A.N. 730 ............................................................................................... 12

4817-4552-9783.v1

## I.   INTRODUCTION

The only remaining class members vying for appointment as lead plaintiff are: (1) New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund (the "Pension Fund"); and (2) three unaffiliated entities dubbed the Green Dot Institutional Investor Group (the "IIG") by their counsel.[1]  There is no dispute that of the entities before the Court, it is the Pension Fund which possesses the largest *individual* financial stake in the outcome of this litigation.  *See* ECF No 47 at 4.  Yet, the IIG asks the Court to allow it to aggregate its losses so as to leapfrog the Pension Fund's greater financial stake and claim the presumption of most adequate plaintiff.  *See* ECF No. 45 at 3.  The majority of courts around the country, however, "'have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'"  *Crihfield v. CytRx Corp*., No. CV 16-05519 SJO (SKx), 2016 U.S. Dist. LEXIS 181615, at *13 (C.D. Cal. Oct. 26, 2016) (Otero, J.) (declining to allow a group to aggregate its losses over those of the movant with the single largest loss); *Khunt v. Alibaba Grp. Holding Ltd*., 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) ("Many courts – including this one – have turned away pastiche plaintiffs whose grouping appears to be solely the product of the litigation . . . ."); *see also* ECF No. 47.[2]

Although the IIG claims its Joint Declaration supports its artificial grouping, the information it provides actually confirms the lawyer-driven nature of the group,

---

[1]   The three members of the IIG are: (i) Plymouth County Retirement Association; (ii) Greater Pennsylvania Carpenters' Pension Fund; and (iii) Iron Workers District Council of New England Pension Fund ("Iron Workers").   Originally, three additional movants also sought appointment as lead plaintiff, but two of those movants did not file an opposition to the competing motions ((i) the Austin Fire Fighters Relief and Retirement Fund and John Mutsavage, and (ii) Fred Schaebsdau), while the City of Sarasota General Employees' Defined Benefit Pension Plan and City of Sarasota Firefighters' Pension Plan filed a notice that they did not oppose the competing motions.

[2]   Unless otherwise noted, all emphasis is added and citations are omitted.

- 1 -

and weighs against the IIG's effort to aggregate its losses here.  *See* ECF No. 47 at 7-13.  In fact, "the most rational inference to be drawn from the fact that each member" contacted their law firms, "'[and] [t]hrough these discussions . . . learned of each other's interest in serving as [l]ead [p]laintiff' . . . is that the law firms introduced the members to one another after each inquired separately, which would also explain how two law firms came to be involved.  Needless to say, this does not work in the [IIG's] favor."  *Compare Tan v. NIO Inc.*, No. 19-CV-1424 (NGG) (VMS), 2020 U.S. Dist. LEXIS 36623, at *14 n.5 (E.D.N.Y. Mar. 3, 2020) *with* ECF No. 25-6 at ¶¶9-10.  "On the whole, no matter how experienced or sophisticated these plaintiffs may be, the [IIG] 'appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together "in the hope of thereby becoming the biggest loser for PSLRA purposes."'"  *Khunt*, 102 F. Supp. 3d at 534.  The IIG should not be allowed to aggregate its losses so as to allow it to leapfrog the Pension Fund's largest individual loss.

Because the Pension Fund possesses the largest financial interest and also satisfies Rule 23's typicality and adequacy requirements, the Pension Fund is presumptively the most adequate plaintiff.  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  In order to rebut the presumption which lies in favor of the Pension Fund, the IIG must submit ***proof*** that the Pension Fund is subject to a unique defense or will not adequately represent the class.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

The IIG attempts to meet its burden by asserting that the Pension Fund is subject to a unique defense based on the fact that the Pension Fund sold its Green Dot Corporation ("Green Dot" or the "Company") shares before the Class Period ended on November 7, 2019. [3]  *See* ECF No. 45 at 8.  Curiously, the IIG makes this argument despite the fact that two of its members also sold all of their shares prior to the end of the Class Period.  The Pension Fund, however, only sold Green Dot

---

[3]    The Class Period is May 9, 2018 through November 7, 2019.

4817-4552-9783.v1

securities *after* multiple partial disclosures which are clearly alleged in the complaint (and cited and relied upon by the IIG for loss causation), "and after it had suffered significant losses as a result of the plummeting stock price, [thus] there is no indication that [the Pension Fund] will be subject to unique defenses that do not apply to the class as a whole." *Brown v. China Integrated Energy, Inc.*, No. CV 11-02559 MMM (PLAx), 2011 U.S. Dist. LEXIS 151131, at *42 (C.D. Cal. Aug. 29, 2011) (Morrow, J.). *See also* §II.B.1, *infra*.

The IIG also contends that its grouping of unaffiliated entities is more adequate than a single entity serving as lead plaintiff because some day in the future an individual entity could later be found to be atypical or inadequate. *See* ECF No. 45 at 5-6, 9. In so arguing, the IIG seemingly acknowledges that each of the IIG group members individually are inadequate. Regardless, "the purpose of grouping Lead Plaintiffs is not to balance out each other's deficiencies." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002). More importantly, the Ninth Circuit unambiguously forbids comparing lead plaintiff movants by anything other than their financial stakes in the outcome of the litigation. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). Therefore, the IIG's belief that it is a *more* capable lead plaintiff (it is not) because of the risk that each of its constituent members may later be inadequate falls far short of the required evidence to justify combining the interests of otherwise disparate entities.

Moreover, courts around the country disagree with the contention that an artificial group of class members is superior to the appointment of a sole lead plaintiff. ECF No. 47. As Your Honor has recognized, appointing a multiple class member leadership structure "create[s] an unwieldy, duplicative and multi-headed 'litigation by committee,' adding little benefit to [] investors, but interposing several additional law firms between the class and recovery. It is for this reason that the PSLRA 'creates a statutory presumption that one lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal

- 3 -

4817-4552-9783.v1

theories.'" *Gold v. Morrice*, No. CV 07-00931 DDP (JTLx), slip op. at 18 (C.D. Cal. June 26, 2007) (appointing a single institutional investor as lead plaintiff and approving a single law firm as lead counsel) (emphasis in original) (attached as Exhibit 1 to the McCormick Reply Decl.);§II.B.2., *infra*.[4]   Concerns about duplication of effort, the unwieldiness of the proposed leadership structure, and the lawyer-driven nature of the amalgamation are exacerbated here where the "group" also asks the Court to appoint multiple sets of counsel.

In sum, the Pension Fund is the presumptively most adequate plaintiff.  The IIG has failed to submit any evidence, let alone ***proof***, that rebuts that presumption. Thus, according to the Ninth Circuit's straightforward application of the PSLRA's lead plaintiff provisions, the Pension Fund should be appointed Lead Plaintiff and the IIG's motion should be denied.

## II.   THE PENSION FUND IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

### A.   The Pension Fund Possesses the Largest Interest in the Relief Sought by the Class

Not one of the IIG members alone can satisfy the largest financial interest requirement, and "nothing in the PSLRA authorizes institutional plaintiffs to consolidate their losses for the sole purpose of leapfrogging other movants." *In re Peregrine Sys. Sec. Litig.*, No. 02-cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690, at *52 (S.D. Cal. Oct. 9, 2002); ECF No. 47 at 4.  For this reason, the overwhelming majority of courts decline to allow counsel to band together a group of unrelated class members to aggregate their losses to claim the largest financial interest.  *See* ECF No. 47 at 5-6.  But, the unaffiliated members of the IIG asks this Court to do just that.

---

[4]   The "Reply McCormick Decl." is the Declaration of Tricia L. McCormick in Support of Reply Memorandum in Further Support of New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund's Motion for Appointment as Lead Plaintiff.

- 4 -

The IIG cites *McCracken v. Edwards Lifesciences Corp.*, No. 8:13-CV-1463-JLS (RNBx), 2014 U.S. Dist. LEXIS 2147 (C.D. Cal. Jan. 8, 2014) (Staton, J.), to justify the aggregation of its members' losses.  There, however, Judge Staton held that the Court "need not decide the issue" of "whether a group seeking appointment as lead plaintiff may aggregate the losses of its members" specifically because one of the members of the group claimed the largest individual loss.  *Id*. at *8-*9.  Since ***none*** of the IIG members possess the largest loss here, *McCracken* does not support the aggregation of losses in order to claim the largest financial interest in this case.

The IIG also misplaces reliance upon *Perrin v. Sw. Water Co.*, No. 2:08-cv-7844-FMC-AGRx, 2009 U.S. Dist. LEXIS 134154 (C.D. Cal. Feb. 13, 2009) (Cooper, J.), to support its claim to the largest financial interest.  The Court in *Perrin* did not analyze the propriety of aggregating the disparate class members' losses, but stated the group was "small and manageable," citing *Cavanaugh* for the proposition that "a group of five businessmen with the largest financial losses is presumptively the most adequate plaintiff."  *Id*. at *13.  The Ninth Circuit in *Cavanaugh*, however, specifically stated that it was not asked to consider the issue of whether "a group can satisfy the 'largest financial interest' requirement by aggregating losses."  306 F.3d at 731 n.8.  As a result, *Perrin* attributes a holding to *Cavanaugh* that is unsupported, and *Perrin* does not support the aggregation of IIG's losses here.[5]

Moreover, the IIG's Joint Declaration fails to explain why saddling the class with multiple class members and multiple lead counsel is warranted.  *See* ECF No. 47 at 7-13.  To the contrary, "it makes sense that one client will provide more control than a disjointed group concocted by plaintiffs' counsel -- even if the group consists

---

[5]   *Perrin* also relies on *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1135-36 (C.D. Cal. 1999) (Morrow, J.) and *Ferrari v. Gisch*, 225 F.R.D. 599 (C.D. Cal. 2004) (Manella, J.).  But, in *Takeda*, Judge Morrow, like Judge Staton in *McCracken*, appointed a group ***which included the movant with the single largest loss***.  *Id*.  In addition, in *Ferrari*, the Court did not address the question of whether a group can aggregate its losses to claim the largest financial interest.  Thus, neither *Takeda* nor *Ferrari* is helpful with respect to the issue presented here.

- 5 -

of institutional investors." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1152-53 (N.D. Cal. 1999). Because the IIG can only assert the largest financial interest by combining the losses of its three members, and aggregation here would be inconsistent with the goals and purposes of the PSLRA, the Pension Fund is the movant which possesses the largest financial interest.

**B.     The Pension Fund Meets Rule 23's Requirements**

Once the Court has determined which movant has the largest financial interest, here the Pension Fund, "it must then focus its attention on ***that*** plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306 F.3d at 730 (emphasis in original); *Gold*, No. CV 07-00931 DDP (JTLx), slip op. at 9 (McCormick Reply Decl., Ex. 1). The Pension Fund demonstrated that it meets these requirements because its claims are typical of the class's claims, and there is no conflicts between the Pension Fund's claims and those of the class. *See* ECF No. 34 at 4-5. Consequently, the Pension Fund is "the presumptively most adequate plaintiff." *Cavanaugh*, 306 F.3d at 730. The next "step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id*. To rebut the presumption, the IIG is required to submit proof that the Pension Fund either is subject to a unique defense or cannot adequately represent the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). None of the IIG's arguments rebuts the presumption.

**1.     The Pension Fund Is Not Subject to a Unique Defense**

The IIG attempts to meet its burden of submitting proof to rebut the presumption by labeling the Pension Fund an "in-and-out" plaintiff subject to a unique defense because the Pension Fund sold all of its Green Dot shares before the Class Period ended on November 7, 2019. *See* ECF No. 45 at 9. Putting aside the fact that two of the three members of the IIG also sold all of their shares prior to

- 6 -

November 7, 2019 (*see* ECF No. 25-5), Judge Morrow, and district courts around the country, disagree. "The fact that subsequent disclosures occurred after [the Pension Fund] no longer owned [Green Dot] stock does not show that [the Pension Fund] will be an inadequate lead plaintiff," because it is well established that "loss causation can be established by partial market disclosures that cause the price of the stock to decline." *Brown*, 2011 U.S. Dist. LEXIS 151131, at *39, *41 (finding a class member typical and adequate and appointing it lead plaintiff despite having sold all stock after partial disclosures but before the end of the class period).[6]  In fact, even at the more stringent class certification stage (and at the motion to dismiss stage), courts regularly find that "in-and-out" investors can demonstrate loss causation through partial disclosures.  *See, e.g., In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1003-04 (N.D. Cal. Jan. 29, 2008) (finding in and out purchaser

---

[6]   *See also In re Lyft Sec. Litig*., 2020 U.S. Dist. LEXIS 37606, at *17 (N.D. Cal. Mar. 4, 2020) (finding competing movant did not rebut the presumption of most adequate plaintiff where that plaintiff held shares through partial disclosures); *In re Maxim Integrated Prods.*, 639 F. Supp. 2d 1038, 1048 (N.D. Cal. 2009) ("Loss causation may be alleged through a series of partial disclosures."); *Mauss v. NuVasive, Inc.*, No. 13cv2005 JM (JLB), 2016 U.S. Dist. LEXIS 90412, at *30 (S.D. Cal. July 12, 2016) ("the combination of [] partial disclosures" was "sufficient to plead loss causation"); *Mortimer v. Diplomat Pharm., Inc.*, No. 19 C 1735, 2019 U.S. Dist. LEXIS 120543, at *15 (N.D. Ill. July 19, 2019) ("Fund is not inadequate or atypical solely because it can only show losses related to one of the three disclosures at issue here"); *In re Regions Morgan Keegan Closed-End Fund Litig*, No. 07-02830, 2010 U.S. Dist. LEXIS 132902, at*31 (W.D. Tenn. Dec. 15, 2010) ("Although the Supreme Court has recognized that, where the 'purchaser sells his shares quickly before the relevant truth begins to leak out,' no loss based on a misrepresentation occurs, . . . that defect does not preclude claims where there are ***partial*** disclosures before an investor sells the majority of his shares.") (emphasis in original); *In re GE Sec. Litig*. No. 09 Civ.1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *12 (S.D.N.Y. July 29, 2009) ("Loss causation 'does not require full disclosure and can be established by partial disclosure during the class period which causes the price of shares to decline.'"); *Montoya v. Mamma.com Inc*., No. 05 Civ. 2313 (HB), 2005 U.S. Dist. LEXIS 10224, at *6-*7 (S.D.N.Y. May 31, 2005) (appointing so-called "in-and-out trader" and noting "loss causation does not require ***full*** disclosure and can be established by ***partial*** disclosure during the class period which causes the price of shares to decline") (emphasis in original); *Aviva Partners, LLC v. Navarre Corp*., No. 05-1151 (PAM/RLE), 2005 U.S. Dist. LEXIS 45179, at *9 (D. Minn. Dec. 13, 2005) ("Selling shares after a partial disclosure is sufficient to satisfy the loss causation criteria established by *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627, 1633, 161 L. Ed. 2d 577 (2005).").

- 7 -

4817-4552-9783.v1

had standing at motion to dismiss stage); *In re Wash. Mut., Inc.*, No. 2:08-md-1919 MJP, 2010 U.S. Dist. LEXIS 142992, at *48 (W.D. Wash. Oct. 12, 2010) (finding loss causation on shares sold after partial disclosures but before the end of the class period); *Ross v. Abercrombie & Fitch Co.,* 257 F.R.D. 435, 456 (S.D. Ohio 2009) (same); *In re NTL Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP), 2006 U.S. Dist. LEXIS 5346, at *40-*41 (S.D.N.Y. Feb. 14, 2006) (same).

Tellingly the IIG members themselves rely upon the partial disclosures alleged in the complaint to support loss causation:

> ***As to loss causation*** and damages, the Complaint alleges that, on February 20, 2019, the true state of Green Dot's business started to be revealed when, during the fiscal year 2018 conference call, Defendant Streit relayed how Green Dot's strategy to attract "high-value," direct deposit customers was "self-sabotaging" as it led to the cannibalization of "one and done" customer accounts, which represented a significant source of Green Dot's revenue . . . . On this news, shares of Green Dot common stock fell $7.47, or approximately 10% . . . .

> The Complaint further alleges that, after market close on May 8, 2019, the Company . . . further disclosed the self-inflicting wounds caused by the Company's strategy to "attract high-value long-term customers sometimes at the expense of low value or what we call one and done customers". . . . On this news, shares of Green Dot common stock fell $16.71 per share, or approximately 26.41% . . . .

> Then again, on August 7, 2019, the Company issued a press release in connection with its financial and operating results for the second fiscal quarter and six month period ending June 30, 2019 ("Q2 2019"), wherein the Company reduced its fiscal year outlook and noted "accelerated loss of unit sales in [its] prepaid product lines, resulting in

- 8 -

lower active accounts from both non-reloading customers and cash reloading customers." . . . On this news, shares of Green Dot fell $19.84 per share, or approximately 41.98% . . . .

ECF No. 24 at 4-5.[7]  Importantly, each of these three disclosures took place *prior to all* of the Pension Fund's sales (August 12-15, 2019).[8]  *See* ECF No. 35-3. Therefore, the IIG's unique defense argument is a red herring.  The Pension Fund sold all of its shares only "after it had suffered significant losses as a result of the plummeting stock price, [and] there is no indication that it will be subject to unique defenses that do not apply to the class as a whole." *Brown*, 2011 U.S. Dist. LEXIS 151131, at *42.

**2.      The IIG's Speculation that It Is More Adequate Falls Short of the Proof Required to Rebut the Presumption Which Lies in Favor of the Pension Fund**

The IIG claims that its group of disparate members could more adequately represent the class as lead plaintiff than the Pension Fund could as sole lead plaintiff. *See* ECF No. 45 at 5-6, 9.  The Ninth Circuit in *Cavanaugh*, however, expressly rejects a "freewheeling comparison" of lead plaintiff candidates, mandating that

a straightforward application of the statutory scheme, as outlined above, provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case.  Once that comparison is made and the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory

---

[7]   The vast majority of the IIG's losses are based upon these same partial disclosures because *nearly 90%* of its members' shares (24,354 of 27,330 shares) were sold before the end of the Class Period. *See* ECF No. 25-5.

[8]   Conversely, *all* of IIG member Iron Workers' sales during the Class Period were *before any* of these partial disclosures when the price of Green Dot shares was trading over $70 per share. *See* ECF No. 25-5.

- 9 -

4817-4552-9783.v1

requirements. ***That the district court believes another plaintiff may be "more typical" or "more adequate" is of no consequence***. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.

306 F.3d at 732.

The IIG insists that a group could "protect the interests of the Class in the event a solitary Lead Plaintiff is disqualified as inadequate or atypical." ECF No. 45 at 5-6. Curiously, this rationale for the joinder of the IIG members appears nowhere in the IIG's Joint Declaration as something the members considered before they made their joint motion. *See* ECF No. 25-6. This justification is not persuasive as "the purpose of grouping Lead Plaintiffs is not to balance out each other's deficiencies." *Enron*, 206 F.R.D. at 457.

The IIG's reliance upon the Supreme Court's opinion in *China Agritech, Inc. v. Resh*, _ U.S. _, 138 S. Ct. 1800, 201 L.Ed. 123 (2018), likewise does not support its contention that several class members can more adequately protect the class in this case than a sole lead plaintiff. There, the Supreme Court held that the statute of limitations is not tolled during the pendency of a putative class action to permit a plaintiff to file a new class action: (i) after the statute of limitations has expired; and (ii) after class certification of the original class claims was denied for failure to make the required showing of market efficiency. *Id*. In essence, therefore, the IIG argues that its group of unaffiliated entities would ensure more adequate representation of the class because the class's claims would be jeopardized by the appointment of the Pension Fund as sole lead plaintiff:

- ***if*** the Pension Fund were eventually to be found either atypical or inadequate at the class certification stage, and

- ***if*** there were no adequate named plaintiffs; and

- 10 -

4817-4552-9783.v1

- • *if* the Court declined to reopen the lead plaintiff issue to allow a new lead plaintiff to intervene in the case before class certification denial, and

- • *if* the statute of limitations had already run on the class's claims.

"This improbable if-you-give-a-mouse-a-cookie hypothetical about a future series of events is far too attenuated to rebut the statutory presumption." *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *20 (S.D.N.Y. June 21, 2018) *objection overruled by* 2018 U.S. Dist. LEXIS 217875 (S.D.N.Y. Aug. 27, 2018).  Indeed, this Court has also recognized that arguments based on conjecture fall far short of the required *proof* that the presumptive lead plaintiff *will not* adequately represent the class, and "fail[] to provide this court with anything other than speculation, which is insufficient to rebut the lead plaintiff presumption." [9]  *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS at *10 n.6 (C.D. Cal. Mar. 2, 2012) (Pregerson, J.).[10] In fact, the IIG's rationale, if legitimate, would mean that courts would *never* appoint as lead plaintiff a single institution over a group of class members regardless of their respective financial stakes – a conclusion that is inconsistent with the PSLRA and

---

[9]   The IIG's speculative argument is also baseless. *See In re Snap Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2019 U.S. Dist. LEXIS 202714 (C.D. Cal. Nov. 20, 2019) (Wilson, J.) (finding *China Agritech* inapplicable where (even *after* denying the initial class certification motion to allow the appointment of a new lead plaintiff) the lead plaintiff and named plaintiff withdrew, and the Court reopened the lead plaintiff issue to allow a new lead plaintiff to lead the case).  Thus, courts have the ability to protect class claims from dismissal based solely on the inability or unwillingness of a lead plaintiff to adequately continue to represent the class.

[10]   *See also Andrade v. Am. Apparel, Inc.*, No. 10-06352 MMM (PJWx), 2011 U.S. Dist. LEXIS 79795, at *40-*41 (C.D. Cal. Mar. 15, 2011) (Morrow, J.) ("'speculative assertions are insufficient to rebut the presumption' regarding most adequate plaintiff"); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) (speculation insufficient to rebut the most adequate plaintiff presumption); *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 412 (N.D. Cal. 2012) (finding speculation that an institutional investor will not adequately represent the class insufficient to rebut the presumption of most adequate plaintiff.

- 11 -

4817-4552-9783.v1

the Ninth Circuit's directive in *Cavanaugh*, that lead plaintiff movants be compared only on the basis of financial stake.

The IIG's speculation aside, the Pension Fund is an experienced institutional investor that courts have previously found to be a typical and adequate ***sole*** lead plaintiff. *See Fleming v. Impax Labs. Inc.*, No. 16-cv-06557-HSG, 2017 U.S. Dist. LEXIS 22147, at *6 (N.D. Cal. Feb. 15, 2017) ("the [Pension] Fund's 'substantial financial stake in the outcome of this litigation, its timely filing of its motion, and the quality of its briefing all demonstrate that it is both motivated to, and capable of, vigorously pursuing this litigation'"); *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056 (N.D. Cal. 2018) (appointing the Pension Fund as lead plaintiff).

Furthermore, the PSLRA's legislative history states that institutional investors, like the Pension Fund, "generally will be typical," and will effectively represent the class. H.R. Conf. Rep. No. 369-104, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; *see also Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF (VBKx), 2011 U.S. Dist. LEXIS 19760, at *14 (C.D. Cal. Feb. 16, 2011) (Fairbank, J.) (same). Thus, any consideration of the ***unlikelihood*** that the Pension Fund would put the class in jeopardy by its appointment as sole lead plaintiff must be balanced against the ***virtual certainty*** that appointing the IIG, an unaffiliated grouping of entities, will result in weakened ability of the lead plaintiff to control counsel, reduce costs, and maximize efficiencies.

For instance, recently, an institutional investor asked a court to appoint it with the sole presumptively most adequate plaintiff "as a solution to [a] purported conflict." *Einhorn v. Axogen, Inc.*, No. 8:19-cv-69-EAK-AAS, 2019 U.S. Dist. LEXIS 195312, at *7 (M.D. Fla. Apr. 30, 2019). The court declined, finding any benefit to the class of the additional class member "is belied by policy considerations regarding control over and cost of securities class actions. Appointment of co-lead plaintiffs detracts from the PSLRA's fundamental goal of client control." *Id*. at *9. As in *Einhorn*, "the best way for the Court to effectuate the purposes of the PSLRA

- 12 -

4817-4552-9783.v1

is to appoint [the Pension Fund] as sole lead plaintiff." *Id*. at \*10; *see also Gold*, No. CV 07-00931 DDP (JTLx), slip op. (declining to appoint a co-lead plaintiff) (McCormick Reply Decl., Ex. 1); *Tanne v. Autobytel*, 226 F.R.D. 659, 669 (C.D. Cal. 2005) (plaintiff "has not shown that the appointment of co-lead plaintiffs is preferable to the appointment of a single lead plaintiff in this case. Rather, the court concludes, a co-lead plaintiff structure is unnecessary, and might harm the class . . . .").

Conversely, the risks and policy considerations regarding client control associated with the appointment of amalgamations of unrelated class members as lead plaintiff have led courts to go so far as to *sua sponte* disaggregate groups, even when the group was the only movant before the court, and to appoint as lead plaintiff the movant with the single largest loss. *See, e.g.*, *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876, at \*23-\*24 (N.D. Cal. Mar. 4, 2013); *Shah v. A10 Networks, Inc.*, No. 18-cv-01772-VC, slip op. (N.D. Cal. June 29, 2018) (McCormick Reply Decl., Ex. 2). For example, in *Nicolow*, a group of institutional investors like the IIG moved to be appointed lead plaintiff and submitted evidence regarding "its prelitigation formation and operation." 2013 U.S. Dist. LEXIS 29876, at \*23. Judge Breyer recognized that a group of institutional investors *might* be able to "accomplish the PSLRA's goal of having the plaintiffs exert meaningful control and supervision over plaintiffs' counsel," but found "it equally likely that diluting the responsibility of the institutional investor with the largest financial interest will work against the PSLRA's goals." *Id*. Consequently, the court separately evaluated each of the class members which sought lead plaintiff appointment and appointed the institution that claimed the largest individual loss. *Id* at \*24.

The IIG's speculation – that the Pension Fund might someday, after the statute of limitations has passed on the class's claims, be found atypical or inadequate – is insufficient to rebut the presumption that the Pension Fund is the most adequate

- 13 -

4817-4552-9783.v1

plaintiff.   And, it is certainly not a justification to appoint as lead plaintiff an unaffiliated group of entities that must aggregate their respective losses in order to claim the largest financial interest.  The Pension Fund should be appointed Lead Plaintiff, and the IIG's motion should be denied.

## III.   CONCLUSION

The Pension Fund possesses the largest financial interest of any of the class members that moved for appointment as lead plaintiff.  In addition, the Pension Fund has demonstrated that it meets Rule 23's typicality and adequacy requirements.  The IIG has not submitted any proof that the Pension Fund cannot adequately represent the class or that the Pension Fund is subject to a defense unique.  Consequently, the Pension Fund should be appointed Lead Plaintiff and its selection of Lead Counsel should be approved.

DATED:  March 16, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
TRICIA L. McCORMICK
JUAN CARLOS SANCHEZ


                s/ Tricia L. McCormick
              TRICIA L. McCORMICK

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for [Proposed]
Lead Plaintiff

- 14 -

4817-4552-9783.v1

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 16, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

        s/ Tricia L. McCormick
        TRICIA L. McCORMICK

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  triciam@rgrdlaw.com

4817-4552-9783.v1

# Mailing Information for a Case 2:19-cv-10701-DDP-E Esteban Koffsmon v. Green Dot Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ian D Berg**
  iberg@aftlaw.com,tkellar@aftlaw.com

- **Mark Samuel Greenstone**
  mgreenstone@greenstonelaw.com,info@glancylaw.com

- **Takeo A Kellar**
  tkellar@aftlaw.com

- **Eduard Korsinsky**
  ek@zlk.com

- **James N Kramer**
  jkramer@orrick.com,lpatts@orrick.com,jthompson@orrick.com

- **Nicole Lavallee**
  nlavallee@bermantabacco.com,sfservice@bermantabacco.com

- **Rosanne Leigh Mah**
  rmah@zlk.com,ek@zlk.com,brios@zlk.com,jtash@zlk.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey V Rocha**
  jrocha@bermantabacco.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Alexander K Talarides**
  atalarides@orrick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)