# EXHIBIT 1

Exhibit 1
001

FILED
CLERK, U.S. DISTRICT COURT

JUN 26 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

JUN 27 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

✓ Priority
✓ Send
___ Clsd
✓ Enter
NO JS-5/JS-6
___ JS-2/JS-3
___ Scan Only

SCANNED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI GOLD, individually and on behalf of all others similarly situated, | Case No. CV 07-00931 DDP (JTLx) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART VARIOUS PLAINTIFFS' MOTIONS REGARDING CONSOLIDATION, LEAD PLAINTIFF STATUS, AND LEAD COUNSEL STATUS** |
| v. | |
| BRAD A. MORRICE, TAJ. S. BINDRA, ROBERT K. COLE, PATTI M. DODGE, NEW CENTURY FINANCIAL CORP., | [Motions of NYS Teachers, Joe Verne, Charles Hooten, Reinhard Barthel, and PSP Group (Docket Nos. 17, 24, 30, 34, 41, respectively) filed on April 10, 2007; Kaufman Trust's motion |
| Defendants. | transferred (Docket. No. 113) on May 14, 2007] |

This matter is before the Court on plaintiffs' motions regarding consolidation, appointment of lead plaintiff, and appointment of lead counsel.[1]  After reviewing the papers submitted by the parties, the Court consolidates the actions, appoints the

_____

[1] Several plaintiffs filed motions and subsequently withdrew them.  Accordingly, the motions the Court has reviewed and addressed in this tentative ruling are those filed by:  NYS Teachers (Docket No. 17); Joe Verne (Docket No. 24); Charles Hooten (Docket No. 30); Reinhard Barthel (Docket No. 34); "Preferred Share Purchasers Group" ("PSP Group") (Docket No. 41); and Jay Peter Kaufman Revocable Trust ("Kaufman Trust").

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

Exhibit 1
002

New York State Teachers Retirement System ("NYS Teachers") as lead plaintiff, and appoint its counsel as lead counsel.

## I.   BACKGROUND

These actions are securities purchaser class action lawsuits that have been brought against certain officers and/or directors of New Century, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5.[2]  The following factual summary is based on the common allegations of the many plaintiffs' complaints:

New Century is organized as a real estate investment trust under the laws of Maryland, with its principal executive offices in Irvine, California.  Throughout the class period, Defendants artificially inflated the price of New Century securities through false and misleading statements concerning New Century's finances and mortgage lending business.  In particular, at all relevant times, New Century maintained inadequate reserves against losses associated with loan delinquencies.  These understated reserves caused New Century to overstate its publicly reported earnings significantly.  This manipulation created the false impression that New Century employed appropriate mechanisms and procedures to manage the risks associated with its subprime lending business, thereby bolstering New Century's false and misleading statements to that effect during the class period.

---

[2]  As discussed below, a few plaintiffs are also alleging violations of Section 11.

2

Exhibit 1
003

Moreover, during the period of Defendants' misconduct and the artificial inflation in New Century stock, certain key officers and directors of New Century engaged in significant insider sales.

On February 7, 2007, after the market had closed for the day, New Century announced that it would have to restate its 2006 financial statements for the first three quarters of 2006. New Century also delayed filing its annual report on Form 10-k for the fiscal year ended December 31, 2006. According to New Century, its "restated net income [would be] significantly lower than previously reported" for all three quarters as a result of the improper application of generally accepted accounting principles ("GAAP") to New Century's financial reserves for loan delinquencies. New Century also disclosed that it was investigating whether its financial statements for prior periods were similarly misstated.

The next day, shares of New Century's stock declined $10.92 per share (or 36 percent) to close at $19.24 per share. They have been steadily declining ever since. The Securities and Exchange Commission, the U.S. Attorney's Office, and the Market Trading Analysis Department of the New York Stock Exchange ("NYSE") all have commenced investigations related to these disclosures and, on March 13, 2007, New Century was suspended from trading on the NYSE. New Century filed for Chapter 11 bankruptcy protection on April 2, 2007, and subsequently terminated over three thousand of its employees.

In the wake of New Century's corrective disclosures, numerous class actions were filed in the Central District of California. The first such complaint, Avi Gold v. Brad A. Morrice, et al., was filed on February 8, 2007. Numerous notices of the pendency of the

3

Exhibit 1
004

class actions were also published over a widely circulated national business-oriented service, alerting class members to the April 10, 2007 deadline to submit motions seeking to serve as lead plaintiff on behalf of the New Century investors.  The first notice referred to a class period extending from May 4, 2006 until February 7, 2007.  Subsequent notices expanded this class period to extend from February 3, 2005 through March 2, 2007.

Several plaintiffs have filed motions regarding consolidation of the actions, appointment of lead plaintiff, and appointment of lead counsel.  The Court has reviewed all submissions in writing this tentative ruling.[3]

## II.   CONSOLIDATION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that where there are multiple actions on behalf of a class asserting substantially the same claim or claims, a court shall resolve the issue of consolidation before appointing a lead plaintiff.  Consolidation is appropriate when there are several actions involving common questions of law or fact.  See 15 U.S.C. § 78u-4(a)(3)(B)(ii); Fed. R. Civ. P. 42(a).

There are over twenty securities class action complaints currently pending before this Court on behalf of investors in New Century securities.  All of the related actions allege class action claims for violations of Section 10(b) and 20(a) of the Exchange Act on behalf of class members who purchased or otherwise acquired

---

[3]   The Court hereby grants the Kaufrman Trust's motion to file a response to the dual filings of the PSP Group, dated June 11 and June 13, 2007.  The Court has reviewed the Kaufman Trust's response to PSP Group's filings.

4

Exhibit 1
005

New Century securities during the class period. Each of the related actions names the same defendants and asserts similar class claims brought on behalf of purchasers of New Century securities who purchased in reliance on the materially false and misleading statements and omissions at all relevant times. Accordingly, consolidation is appropriate here under the PSLRA and Federal Rule of Civil Procedure 42(a).

The only movant to oppose consolidation is the PSP Group. The PSP Group's principal argument against consolidation is that, because preferred shareholders have priority over common shareholders in a bankruptcy liquidation, there is a conflict of interest between the preferred shareholders and the common shareholders. This argument, however, does not justify ordering these actions to proceed separately. Litigation against New Century is automatically stayed during the pendency of the bankruptcy. 11 U.S.C. § 362(a). However, the securities class action against the individual defendants will be unimpeded by New Century's bankruptcy proceedings. It will be up to the bankruptcy court, rather than this Court, to determine which class of shareholders has liquidation priority over the other. 11 U.S.C. § 1123; In re Enron Sec. Litig., 206 F.R.D. 427, 451 (S.D. Tex. 2002) (declining opposition to consolidation by reasoning that "[u]ltimately the bankruptcy court will determine the priority or preference status of the various securities holders here for claims against Enron."). The fact that the preferred shareholders will have a different liquidation priority status in bankruptcy than the common shareholders is not enough to overcome the strong preference for consolidating these securities cases which share a common core

5

Exhibit 1
006

of facts and legal issues. Therefore, the Court consolidates the actions into one case, In re New Century.[4]

## III. LEAD PLAINTIFF

The Ninth Circuit has held that the PSLRA "provides a simple three-step process for identifying the lead plaintiff" in a securities fraud case. In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002).

First, the plaintiff who files the first action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. Id.; 15 U.S.C. § 78u-4(a)(3)(A)(I). Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. Id.

Next, the Court shall appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members within 90 days after publication of the initial notice of pendency. 15 U.S.C § 78u-4(a)(3)(B)(I). In determining who is the "most adequate plaintiff," the Exchange Act provides that:

The court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that:

---

[4] As the Enron court noted, consolidation for pretrial matters does not necessarily mean that the claims will all be tried together, especially where the nature of the evidence and damages issues differ substantially. Enron, 206 F.R.D. at 438.

6

Exhibit 1
007

(aa) has either filed the complaint or made a motion in response to a notice

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. 78u-4(a)(3)(B)(iii); Cavanaugh, 306 F.3d at 729-30; In re Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001) (citing 15 U.S.C. 78u-4(a)(3)(B)(iii)).

As a third and final step, the court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." Cavanaugh, 306 F.3d at 730. The Cavanaugh court cautioned that a straightforward application of the statutory scheme provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case; so long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, she is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job. Id. at 732.

**A.    Publication**

Plaintiff in the first-filed action published a notice on Market Watch on February 9, 2007. This notice indicated that applications for appointment as lead plaintiff were to be made no

7

Exhibit 1
008

later than April 10, 2007.[5]  Thus, the Court finds that the publication requirement was been met.

### B.   Largest Financial Interest

Courts in this Circuit generally look to three factors in determining which plaintiff has the largest financial interest in the litigation:   (1) the number of shares that the plaintiffs purchased during the class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs.  See, e.g., Ferrari v. Gisch, 225 F.R.D. 559, 604 (C.D. Cal. 2004).

A review of the declarations and briefs submitted by the movants shows that NYS Teachers is the presumptive lead plaintiff because it has suffered, by far, the largest loss overall.  NYS Teachers purchased 1,362,500 shares of New Century common stock on a gross basis during the class period.  During the same period, NYS Teachers sold only a small portion of these shares, resulting in net purchases of 1,300,100 shares.  NYS Teachers expended a total of $52,745,180.00 on these purchases.  As a result of the revelations of Defendant's misconduct, NYS Teachers suffered approximately $50 million in losses.  Specifically, NYS Teachers lost $48,976,835.76 on a LIFO ("last in, first out") basis and $50,837,398.56 on a FIFO ("first in, first out") basis.  (Nicholas Decl., Exs. D & E.)

Given that NYS Teachers is clearly the investor with the largest overall losses - nearly ten times those of any other

---

[5]  For purposes of this tentative, the Court accepts the Kaufman Trust's motion as timely.

Exhibit 1
009

plaintiff applying for lead plaintiff status - the Court is finds that NYS Teachers is the presumptive lead plaintiff.

## C.    Rule 23

In Cavanaugh, the Ninth Circuit stated that once the court has identified the plaintiff with the greatest financial stake in the lawsuit, it "must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" Id. at 730. At this stage, the court "must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims." Id. A wide ranging analysis "is not appropriate and should be left for consideration of a motion for class certification." Fischler v. AmSouth Bancorp., 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997). Moreover, as noted by the Third Circuit in Cendant, "institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements." Cendant, 264 F.3d at 264.

### 1.    Typicality

The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the lead plaintiffs have incentives that align with those of absent class members so that the absentees' interests will be fairly represented. Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994) (citation and ellipses omitted). Under Rule 23's permissive

9

Exhibit 1
010

standards, representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.   <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).   "Typicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."   <u>Takeda v. Turbodyne Tech., Inc.</u>, 67 F.Supp.2d 1129, 1136-37 (C.D. Cal. 1999) (citations omitted).

Here, the NYS Teachers' claims are typical because, just like other proposed class members, NYS Teachers: (1) purchased or acquired New Century securities during the class period, (2) at prices alleged to be artificially inflated by New Century's materially false and misleading statements and omissions, and (3) suffered damage as a result.   <u>See</u> <u>Tanne v. Autobyel, Inc.</u>, 226 F.R.D. 659, 667 (C.D. Cal. 2005).   Consequently, NYS Teachers' claims are similar to those of the other proposed class members. Accordingly, the Court finds that NYS Teachers has made a preliminary showing that it satisfies the typicality requirement of Rule 23.

### 2.   Adequacy

Rule 23(a) also requires that the person(s) representing the class be able to "fairly and adequately protect the interests" of all members in the class.   Fed. R. Civ. P. 23(a)(4).   Whether the class representative will adequately represent the class depends on the circumstances of each case.   <u>McGowan v. Faulkner Concrete Pipe Co.</u>, 659 F.2d 554, 559 (5th Cir. 1981).   The Ninth Circuit has held

10

Exhibit 1
011

that representation is "adequate" when: (1) the representative's interests are not antagonistic to the interests of absent class members; (2) it is unlikely that the action is collusive; and (3) counsel for the class is qualified and competent.  In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 855 (9th Cir. 1982).

In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy. See Riordan v. Smith Barney, 113 F.R.D. 60, 64 (N.D. Ill. 1986). "Adequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff[s] to vigorously prosecute the action."  In re Milestone Scientific Sec. Lit., 183 F.R.D. 404, 416 (D. N.J. 1998).

Here, NYS Teachers is an adequate plaintiff because it has suffered the greatest financial loss, ensuring vigorous advocacy. It has submitted a certification affirming its understanding of the duties owed to class members through its commitment to oversee the prosecution of this class action.  (See Nicholas Decl., Exs. A & F.)  Moreover, NYS Teachers is a classic example of the type of lead plaintiff envisioned by Congress in its enactment of the PSLRA.  See, e.g., Cendant, 404 F.3d at 180 (holding that the PSLRA establishes "a paradigm in which the plaintiff with the largest stake in the case, usually a large and sophisticated institution, is accorded the status of lead plaintiff and assigned the right to appoint and duty to monitor lead counsel for the class").  Finally,

Exhibit 1
012

there is no evidence that NYS Teachers' action is collusive.[6] Accordingly, the Court finds that NYS Teachers has made a preliminary showing that it satisfies the adequacy requirement of Rule 23.

### 3.    Conclusion Regarding Rule 23

NYS Teachers has made a prima facie showing that it satisfies both the typicality and adequacy requirements of Rule 23.   The Court concludes that NYS Teachers is presumptively the most adequate lead plaintiff.   See Cavanaugh, 306 F.3d at 730.

### D.    Rebutting the Presumption

Pursuant to the PSLRA, the statutory presumption in favor of the most adequate plaintiff can only be rebutted in two ways.   As provided in the statute:

> The presumption . . . may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff -
>
> > (aa) will not fairly and adequately protect the interests of the class; or
> >
> > (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see also Advanced Tissue Sciences, 184 F.R.D. at 350-51.   As noted in Cendant, "once the presumption is triggered, the question is not whether another

---

[6]    See discussion at III.D.2, infra.

12

Exhibit 1
013

movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job."   Cendant, 264 F.3d at 267 (internal quotations omitted) (emphasis added).

### 1.   Verne

Movant Joe Verne initially requested that the purchasers of Series B Preferred Stock form an independent class or subclass. However, in light of New Century's May 24, 2007 admission that its 2005 financial statements can no longer be relied upon, he "no longer sees a conflict between purchasers of the Series A Preferred Stock and purchasers of the Series B Preferred stock."   (Response of Lead Plaintiff Movant, Joe Verne, to the Preferred Share Purchaser Group's Motion to Oppose Consolidation, at 1.)   Accordingly, Verne no longer opposes NYS Teachers' motion for appointment as lead plaintiff.   Thus, the Court finds that Verne has not rebutted the presumption that NYS Teachers should be appointed as lead plaintiff.

### 2.   Hooten

Movant Charles Hooten is the only movant to assert that NYS Teachers is conflicted from serving as lead plaintiff.   First, he argues that NYS Teachers may own common stock of Bear Stearns & Co., a large financial institution that could possibly be a defendant in this action.   However, he has not submitted any evidence that NYS Teachers owns such stock, and "speculations about possible conflicts do not rebut the statutory presumption that one

13

Exhibit 1
014

lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories." Aronson v. McKesson, 79 F.Supp.2d 1146, 1151 (N.D. Cal. 1999) (emphasis omitted). Furthermore, even if Hooten had submitted evidence that NYS Teachers owned common stock of Bear Stearns & Co., that evidence would likely not constitute "proof" of a conflict. In enacting the PSLRA, Congress envisioned that large institutional investors would often serve as lead plaintiffs. Such institutional investors typically hold stock in a large companies. The fact that one of those companies may end up as a defendant at some stage in the litigation is likely not enough to overcome the strong presumption in favor of appointing institutional investors as lead plaintiffs.

Hooten also argues that NYS Teachers is conflicted because it is audited by KPMG, the same company that audits New Century. Courts that have addressed this argument, however, have found it "unremarkable" that a large corporation and a large institutional investor use the same large auditing firm. See, e.g., In re Electronic Date Systems Corp. Sec. Litig., 226 F.R.D. 559, 565 (E.D. Tex. 2005). The Court agrees with this reasoning and finds that Hooten's allegations of conflict have failed to rebut the presumption that NYS Teachers should be appointed as lead plaintiff.

### 3.    Barthel

Movant Reinhard Barthel has suffered an alleged loss of $108,293. He argues that he is the only plaintiff seeking to be appointed solely on behalf of the purchasers of options, and that

14

Exhibit 1
015

purchasers of options should be separated into a different subclass. Thus, he contends that he should be appointed lead plaintiff for the options class.

However, district courts throughout the United States have rejected the notion of appointing "niche" lead plaintiffs for options subclasses. See, e.g., In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. 13, 20-21 (D.D.C. 2006) (declining to appoint co-lead plaintiff on behalf of options purchasers where the option movant's "financial loss is so dwarfed by that of the stockholders, the creation of a sub-class and the potential for fragmenting the litigation strategy is not warranted."). Here, Barthel's loss of is dwarfed by that of the other investors. The Court therefore finds that the creation of a subclass, and thus the potential for fragmenting the litigation strategy, is not warranted at this stage.

### 4.   PSP Group and Kaufman Trust

The PSP Group and the Kaufman Trust each own preferred shares of New Century stock. Both movants contend that they have claims under Section 11 of the Securities Act of 1933 ("Securities Act") that are not related to the Section 10(b) fraud actions brought by plaintiffs who own common stock in New Century. Accordingly, they argue that the Court should create a subclass for the Section 11 claimants and appoint one of them as co-lead plaintiff because: (1) the burden of proof for Section 11 claims is lower than that of Section 10 claims; (2) the preferred shareholders can more quickly pursue their claims against the underwriter defendants in this case if afforded co-lead plaintiff status; and (2) strategic conflicts

15

Exhibit 1
016

between the interests of the common share purchasers and the preferred share purchasers may prevent NYS Teachers from adequately representing both share purchasers' interests.

It is undisputed that the Court has discretion to create a subclass when the claims in the litigation are so different that the interests of the various segments of the class conflict. However, courts typically refuse to appoint co-lead plaintiffs on behalf of "niche" investors in preferred securities when all the claims are predicated on the same allegedly false and fraudulent misrepresentations. In re Delphi Corp. Sec. Deriv. & ERISA Litig., 458 F.Supp.2d 455, 462 (E.D. Mich. 2006). This is because a lead plaintiff need not have standing to bring all causes of action against defendants. As the Central District of California explained in Tanne:

> Nothing in the PSLRA indicates that district courts must choose a lead plaintiff to sue on every available action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.

Tanne, 226 F.R.D. at 669 (citations and quotations omitted). The Tanne court further reasoned that while a lead plaintiff is appointed under the PSLRA to manage and oversee a consolidated securities class action, a named plaintiff with standing to assert each claim available to the class must be approved by the court at the class at the class certification stage. See id. at 670.

16

Exhibit 1
017

Thus, "lead plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims." In re Global Crossing, Ltd. Sec. Litig., 313 F.Supp.2d 189, 204 (S.D.N.Y. 2003); see also In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 122-23 (S.D.N.Y. 2002) (holding that "in order for a claim to be asserted on behalf of a putative class, only the named plaintiffs - but not necessarily the lead plaintiff - must have standing."); Fishbury, Ltd. V. Connetics Corp., 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) (holding that speculation about potential class standing problems should not be resolved by the appointment of multiple lead plaintiffs, but by the appointment, if necessary and desirable, of additional class representatives as the litigation proceeds).

Here, NYS Teachers does not have standing to bring Section 11 claims. However, it has represented that, if appointed as lead plaintiff, it will name additional plaintiffs to pursue all legitimate claims available to the class. These additional named plaintiffs will have their own legal representation. Therefore, to the extent that conflicts among the shareholders arise as litigation proceeds, those who own preferred shares will have a means of assuring that their interests are not trumped by those of the common shareholders.

Moreover, although the preferred share purchasers argue that they may able to settle their claims against the underwriters more quickly if given co-lead plaintiff status, there is no guarantee that this would actually occur. It is true that there is a lower

17

Exhibit 1
018

burden of proof for Section 11 claims than Section 10 claims, and that it might be more efficient if the preferred shareholders were given the authority to their Section 11 claims against the underwriters on a different discovery schedule. However, it is more likely that, in order to present their defenses to the Section 11 claims, the underwriters will bring cross-complaints against the New Century officers who are defendants on both the Section 10 and 11 claims. In that event, the discovery on both claims would likely turn on the same set of facts and legal issues and involve the same individuals. Given this framework, it would be too speculative to say that the Section 11 claims against the underwriters will necessarily be resolved more expediently than the other claims if the preferred shareholders were given lead plaintiff status.

Therefore, while the Court appreciates the preferred shareholders concerns, it does not find them sufficient to rebut the presumption that NYS Teachers will "fairly and adequately" act as the lead plaintiff.

### 5. Conclusion Regarding Lead Plaintiff

There are at least four different New Century securities at issue in this case. To appoint four separate co-lead plaintiffs on behalf of each group of investors would likely create an unwieldy, duplicative and multi-headed "litigation by committee," adding little benefit to New Century investors, but interposing several additional law firms between the class and recovery. It is for this reason that the PSLRA "creates a statutory presumption that one lead plaintiff can vigorously pursue all available causes of

Exhibit 1
019

action against all possible defendants under all available legal theories." McKesson, 79 F.Supp.2d at 1151 (emphasis in original).

No plaintiff has sufficiently rebutted the presumption that NYS Teachers should be lead plaintiff. Accordingly, the Court appoints NYS Teachers as lead plaintiff in this class action suit.

## IV.   LEAD COUNSEL

The PSLRA directs that once the court has designated a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); Cavanaugh, 306 F.3d at 732 n. 11 ("Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class.").

NYS Teachers has retained the law firm Bernstein Litowitz to serve as lead counsel. The Court has reviewed the firm's resume and is satisfied that the firm is more than capable of serving competently in the role of lead counsel. The firm has experience litigating securities fraud class actions; since the enactment of the PSLRA, Bernstein Litowitz has served as lead or co-lead counsel in numerous other successful securities class actions in federal district courts within the Ninth Circuit. Further, NYS Teachers' selection of Bernstein Litowitz as lead counsel appears to have resulted from a careful search in which NYS Teachers considered several qualified law firms' proposals, including counsel's proposed fee structures for the case. (Schneider Decl. ¶¶ 4-5.)

19

Exhibit 1
020

Accordingly, the Court appoints Bernstein Litowitz as lead counsel.

## V.   CONCLUSION

For the foregoing reasons, the Court consolidates the actions, appoints the NYS Teachers as lead plaintiff, and appoints the law firm Bernstein Litowitz as lead counsel. All other pending lead plaintiff/lead counsel motions will be denied.[7]

Unless the parties otherwise agree, NYS Teachers shall file an amended consolidated complaint within thirty days from the date of entry of this order. Defendants shall file a responsive pleading within thirty days from the date the amended consolidated complaint is filed.

IT IS SO ORDERED.

Dated:  6-26-07

DEAN D. PREGERSON
United States District Judge

---

[7]  To the extent that the motions requested consolidation, they are granted.

20

Exhibit 1
021