# EXHIBIT A

Case 2:19-cv-10701-FLA-E   Document 68-1   Filed 08/20/21   Page 2 of 12   Page ID #:931

2021 WL 3121385
United States Court of Appeals, Ninth Circuit.

IN RE George MERSHO; Vincent Chau; Stanley Karczynski,
George Mersho; Vincent Chau; Stanley Karczynski,
as The Nikola Investor Group II, Petitioners,
v.
United States District Court for the District of Arizona, Phoenix, Respondent,
Nikola Corporation; Steve Girsky; Steve Shindler; Mark Russell; Kim J. Brady; Trevor
R. Milton; Angelo Baio; Dennis J. Stacy, Sr.; T3 Trading Group; Mahjabin Dinyarian;
Albert Holzmacher; Michael Wood; Tate Wood; Joseph Roe; Patrick Brostowin;
Nayankumar Patel; Shahab Sandhu; Nikola Investor Group, Real Parties in Interest.

No. 20-73819
|
Argued and Submitted June 18, 2021 San Francisco, California
|
Filed July 23, 2021

**Synopsis**
**Background:** Group of investors petitioned for writ of mandamus to vacate order by United States District Court for the District of Arizona, Steven P. Logan, J., 507 F.Supp.3d 1128, that declined to appoint group as lead plaintiff in putative class action alleging securities fraud, to instruct District Court to appoint group as lead plaintiff instead of individual investor, and to clarify that a group could be appointed as lead plaintiff.

**Holdings:** The Court of Appeals, Andrew P. Gordon, District Judge, sitting by designation, held that:

District Court did not comply with burden-shifting process under Private Securities Litigation Reform Act (PSLRA) in determining that presumption that group was adequate lead plaintiff was rebutted, and

writ of mandamus vacating order was warranted.

Writ granted in part.

Case 2:19-cv-10701-FLA-E    Document 68-1    Filed 08/20/21    Page 3 of 12   Page ID
#:932

Petition for Writ of Mandamus, D.C. No. 2:20-cv-01797-SPL

**Attorneys and Law Firms**

Jeffrey C. Block (argued), Jacob A. Walker, and Michael Gaines, Block & Leviton LLP, Boston, Massachusetts; Jeremy A. Lieberman and J. Alexander Hood II, Pomerantz LLP, New York, New York; for Petitioners.

Robert K. Kry (argued), MoloLamken LLP, Washington, D.C.; Laurence M. Rosen and Phillip Kim, The Rosen Law Firm P.A., New York, New York; for Real Parties in Interest.

Before: Milan D. Smith, Jr. and Lawrence VanDyke, Circuit Judges, and Andrew P. Gordon,[*] District Judge.

## OPINION

GORDON, District Judge:

**\*1** George Mersho, Vincent Chau, and Stanley Karczynski petition for a writ of mandamus to vacate the district court order that declined to appoint their group as lead plaintiff. They also request that the writ instruct the district court to appoint their group as lead plaintiff instead and to clarify that a group can be appointed as lead plaintiff. We grant the mandamus petition in part and order the district court to vacate its order appointing Angelo Baio as lead plaintiff.

## FACTS AND PROCEDURAL BACKGROUND

**\*2** The underlying litigation consists of several proposed federal securities class actions against Nikola Corporation and related defendants that have been filed in, or transferred to, the United States District Court for the District of Arizona. The plaintiffs allege they suffered losses from buying Nikola Corporation securities after a non-party report described apparent false statements made by the founder and contained in company advertising materials. Plaintiffs filed eight motions to consolidate, with six movants seeking to be named lead plaintiff.

Petitioners Mersho, Chau, and Karczynski moved to be lead plaintiff as a group under the name Nikola Investor Group II (Group II). Group II's motion indicated that it had the largest financial interest in the litigation of $6,010,333.00 and argued that it satisfies typicality and adequacy. The motion included a joint declaration detailing the Petitioners' investing experience, their agreement

to move as a group for appointment as lead plaintiff, and their plan to resolve any disagreements that might arise.

After granting consolidation, the district court turned to the question of lead plaintiff appointment, which is governed by the three-step process set out in the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4. That statute requires a district court to the identify the presumptive lead plaintiff, who is the movant with the largest financial interest and who has made a prima facie showing of adequacy and typicality. *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb)–(cc). Once the presumption is established, competing movants can rebut the presumption by showing that the presumptive lead plaintiff will not fairly or adequately represent the class. *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa).

To begin, the district court ranked the financial interest of all the movants:

|   | Movant Name | Financial Interest |
|---|---|---|
| 1 | Nikola Investor Group II | $6,010,333.00 |
| 2 | Nayankumar Patel | $1,525,627.35 |
| 3 | The Investor Group | $1,332,589.97 |
| 4 | Angelo Baio | $703,459.93 |
| 5 | Shahab Sandu | $548,114.30 |
| 6 | Mahjabin Dinyarian | $479,413.00 |

Notably, had the Petitioners moved for lead plaintiff individually, Mersho and Chau would have had the first and second largest financial interest ($2,446,429.00 and $2,094,640.00, respectively), and Karczynski would have had the fourth ($1,469,265.00). Because Group II had the largest financial interest, the district court evaluated its pleadings and declaration and determined that Group II made a prima facie showing of adequacy and typicality.

The district court next considered the efforts by competing movants to rebut that presumption. It outlined four arguments advanced by Baio and Patel:

> 1) Nikola Investor Group II is a group of unrelated individuals brought together by counsel, 2) it has failed to explain why the grouping and four law firms are necessary, 3) its filings are full of errors that suggest the individuals are not involved and counsel is running the litigation, and 4) it has not shown it is a cohesive group and its members are geographically diverse and unconnected.

*Borteanu v. Nikola Corp.*, 507 F. Supp. 3d 1128, 1137 (D. Ariz. 2020). The district court went on to discuss how courts are "often hesitant" to appoint a group as lead plaintiff. *Id.* It explained that courts "uniformly" refuse to appoint groups of unrelated investors who are "brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff."

*Id.* (quoting *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273 at *3 (D. Ariz. Apr. 7, 2008)). The district court also expressed concern that if a group serves as lead plaintiff, the group's counsel may actually drive the litigation, rather than the individuals in the group. *Id.* Due to this "hesitancy," it noted "courts often focus on evidence of cohesion in the group." *Id.*

**\*3** The district court then rejected Group II as lead plaintiff, notwithstanding the presumption:

> Here, the members are all from different states and appear to have joined solely for purposes of litigation. They have presented a signed Joint Declaration showing that they met telephonically to discuss the benefits and detriments of proceeding as a group, and litigation strategy going forward. They promise to be the decisionmakers, direct the activities of their counsel, and meet telephonically to discuss strategy. However, as competing movant Angelo Baio points out, it is not clear how the members of Nikola Investor Group II found each other, and courts generally prefer group members to have a pre-litigation relationship. Despite the Joint Statement, the Court has misgivings about the cohesion of Nikola Investor Group II and its ability to control the litigation without undue influence from counsel. Therefore, the Court will not appoint Nikola Investor Group II as lead plaintiff.

*Id.* at 1137–38 (internal citations omitted). The district court declined to appoint the next two movants with the largest losses because they did not satisfy the adequacy and typicality requirements. *Id.* at 1138–40. It ultimately selected Baio, the investor with the fourth largest losses of just over $700,000. *Id.* at 1140.

Petitioners seek a writ of mandamus that vacates the district court's order, directs the district court to appoint Group II as lead plaintiff instead, and clarifies that groups are permitted to serve as lead plaintiff under the PSLRA. Baio, as a real party in interest, opposes the petition.

## DISCUSSION

This court has the authority to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651. A writ is an extraordinary remedy and Petitioners bear the burden of showing that their right to it is "clear and indisputable." *In re Boon Glob. Ltd.*, 923 F.3d 643, 649 (9th Cir. 2019) (quotation omitted). To determine whether a writ of mandamus should be granted, we weigh the five factors outlined in *Bauman v. United States District Court*:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests

a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression. 557 F.2d 650, 654–55 (9th Cir. 1977) (internal citations omitted).

"The *Bauman* factors should not be mechanically applied." *Cole v. U.S. Dist. Ct. for Dist. of Idaho*, 366 F.3d 813, 817 (9th Cir. 2004). A showing of only one factor does not mean the writ must be denied, nor does a showing of all factors mean that the writ must be granted. *Id.* And not all factors will be relevant in every case. *Christensen v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 844 F.2d 694, 697 (9th Cir. 1988). "Mandamus review is at bottom discretionary ...." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1099 (9th Cir. 1999).

## I. Clear Error

**\*4** Analysis of whether to grant a writ usually begins with the third *Bauman* factor of "clear error, because the absence of the third factor is dispositive." *In re Boon Glob. Ltd.*, 923 F.3d at 649 (quotation omitted). "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.' " *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 708 (9th Cir. 2009) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993)). A ruling usually cannot be clearly erroneous if there is no Ninth Circuit authority on point, or the question has not been addressed by any circuit court. *See In re Grice*, 974 F.3d 950, 955 (9th Cir. 2020); *In re Swift Transp. Co. Inc.*, 830 F.3d 913, 916–17 (9th Cir. 2016) (per curiam). But a decision can still be clearly erroneous in the absence of controlling precedent if the "plain text of the statute prohibits the course taken by the district court." *Cohen*, 586 F.3d at 710; *see also In re Cavanaugh*, 306 F.3d 726, 731 (9th Cir. 2002) (granting a writ petition because the district court had gone "off the statutory track").

### A. The PSLRA Process for Appointing Lead Plaintiff

To determine whether there is clear error, we must look to the lead plaintiff appointment process set out in the PSLRA. Before the PSLRA, lead plaintiffs were usually selected based on who was the first to file suit. *In re Cavanaugh*, 306 F.3d at 729. This practice created concerns that attorneys acting on a contingency basis were primarily running the litigation on behalf of "figurehead" plaintiffs who were unlikely to monitor their attorneys' activities. *In re Cendant Corp. Sec. Litig.* (*Cendant II*), 404 F.3d 173, 191 (3d Cir. 2005). Authors Elliot J. Weiss and John S. Beckerman wrote an article about these concerns, proposing that investors with multimillion-dollar interests in the class actions should be selected as lead plaintiffs so that they would have greater incentive to watch over counsel. *Id.* at 191–92 (citing Weiss & Beckerman, *Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions*, 104 Yale L.J. 2053, 2053–54, 2056, 2088 (1995)). This insight provided the basis for the lead plaintiff provisions that Congress adopted into the PSLRA. *In re Cendant Corp. Litig.* (*Cendant I*), 264 F.3d 201, 262

(3d Cir. 2001) (citing S. Rep. No. 104-98, at 11 n.32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 n.32).

The three-step process for the selection of lead plaintiff under the PSLRA is "neither overly complex nor ambiguous." *In re Cavanaugh*, 306 F.3d at 729. In step one, notice of the action must be posted so purported class members can move for lead plaintiff appointment. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)–(II). The statute expressly allows a "group of persons" to move for appointment. *Id.* § 78u-4(a)(3)(B)(iii)(I).

In step two, the district court must determine which movant is the "most adequate plaintiff," which is defined as the plaintiff "most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B)(i). To do so, the district court must "adopt a presumption that the most adequate plaintiff" is the movant with the largest financial interest who "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I). This means the district court must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality.[1] *In re Cavanaugh*, 306 F.3d at 730. Once the district court has determined that the movant with the largest stake has made a prima facie showing of adequacy and typicality, that movant "becomes the presumptively most adequate plaintiff." *Id.* (quotation omitted). If the movant with the largest losses does not satisfy the Rule 23 requirements, the district court must then look to the movant with the next largest losses and repeat the inquiry. *Id.* At this step, the process is not adversarial, so the Rule 23 determination should be based on only the movant's pleadings and declarations. *Id.*

 **\*5** At step three, the process "turns adversarial." *Id.* The presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff ... will not fairly and adequately protect the interests of the class; or [ ] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb). But just because "the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient." *In re Cavanaugh*, 306 F.3d at 729 n.2. The statute requires proof that the presumptive lead plaintiff is not adequate. *Id.* The statute permits discovery if the movant can "demonstrate[ ] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). If the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i).

Courts determine whether a plaintiff will adequately represent a class by answering two questions: (1) do the movant and its "counsel have any conflicts of interest with other class members" and (2) will the movant and its "counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quotation omitted) (applying those questions to a Rule 23 class certification decision); *see also Cendant I*, 264 F.3d at 265–66

(applying those questions to a PSLRA lead plaintiff appointment). Under the PSLRA, the district court must essentially do this analysis twice. At step two, it will consider whether the movant has made a prima facie showing of adequacy. *In re Cavanaugh*, 306 F.3d at 730. At step three, it will consider whether competing movants have offered proof that the presumptive lead plaintiff will not adequately represent the class. *Id.* at 730–31. "The district court has latitude as to what information it will consider in determining typicality and adequacy." *Id.* at 732.

### B. Lack of Evidence About How Group II's Members Met Was Insufficient Proof to Rebut the Presumption

In the present case, the district court determined at step three that the competing movants rebutted the presumption that Group II would be the most adequate plaintiff. It felt "it [was] not clear how the members of Nikola Investor Group II found each other" and it therefore had "misgivings" about the group's cohesion and ability to control counsel.

Petitioners argue that the district court made a clear error at step three because it determined that the presumption had been rebutted by its "misgivings" rather than any new evidence providing "proof" that Group II would not be an adequate lead plaintiff. Baio responds that the district court acted within its discretion by reviewing evidence already in the record and determining that a lack of a pre-litigation relationship showed that Group II was not adequate. Baio also argues that the district court's decision cannot be clearly erroneous because there is no prior Ninth Circuit authority on the issue. Petitioners reply that the same evidence that established the presumption cannot then rebut that presumption, and that the district court strayed from the statute.

In *Cavanaugh*, this court granted a writ of mandamus after a district court erred in determining that the lead plaintiff presumption had been rebutted. 306 F.3d at 731, 739. There, the district court held that a movant had rebutted the presumption that an investor group was the most adequate lead plaintiff by showing that the group's choice of counsel charged much higher attorney fees than the other competing movants' choice of counsel. *Id.* at 728.

This court held that the district court "went off the statutory track ... by failing to give effect to the presumption." *Id.* at 731. The district court impermissibly compared attorney costs between movants instead of focusing on whether the presumptive lead plaintiff was adequate. *Id.* at 732. We cautioned that district courts cannot "depart from the statutory text because they believe some other arrangement would better serve the legislative goals." *Id.* at 731–32. "The district court has latitude as to what information it will consider in determining typicality and adequacy," but a plaintiff's choice of counsel is relevant only to determine whether that decision "is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id.* at 732–33; *see also id.* at 738 n.19 ("[T]he question is whether the choices made by the movant with the largest losses

are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class ...." (quoting *Cendant I*, 264 F.3d at 266)).

**\*6** Here, the district court made a similar error because it did not give effect to the presumption. The district court effectively left the burden on Group II to prove adequacy at step three even though the burden should have shifted to the competing movants to show inadequacy. It considered Petitioners' joint declaration detailing how they would work together, but declined to appoint Group II based on its "misgivings" about how they would work together because Petitioners had failed to explain how they found each other. By penalizing Petitioners for not explaining how they found each other, the district court continued to place the burden on them to prove adequacy. Further, it based its decision on "misgivings" about a lack of cohesion or control over counsel even though the only evidence it acknowledged—the Petitioners' joint declaration—contradicts such conclusions.[2] Misgivings are not evidence that cast "genuine and serious doubt on [the] plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id.* at 733.

For the presumption to have meaning at step three, competing movants must point to evidence of inadequacy. Competing movants must convince the district court that the presumptive lead plaintiff would not be adequate, not merely that the district court was wrong in determining that the prima facie elements of adequacy were met. That is the purpose of the presumption and burden-shifting. The district court made a prima facie determination at step two that Group II was adequate. But at step three, it appeared to change its mind because other courts usually prefer members of the group to have a pre-litigation relationship. It pointed to no evidence to support its decision, instead relying only on the absence of proof by Group II regarding a pre-litigation relationship and its misgivings. That does not comport with the burden-shifting process Congress established in the PSLRA.[3]

This amounts to clear error because the district court acted contrary to the statutory process set out in the PSLRA. Even though there is no Ninth Circuit precedent squarely on point, a district court cannot take an action that "the plain text of the statute prohibits." *Cohen*, 586 F.3d at 710. We are left with a "definite and firm conviction that a mistake has been committed." *Id.* at 708 (quoting *Concrete Pipe & Prods. of Cal., Inc.*, 508 U.S. at 623, 113 S.Ct. 2264).

This is not to say that district courts are precluded from considering pre-litigation relationships or cohesion altogether. District courts have "latitude" in what information they can consider to assess adequacy. *In re Cavanaugh*, 306 F.3d at 732. Many district courts have considered the lack of a pre-litigation relationship as part of their adequacy analysis at step two because it may indicate that members may not work together well to vigorously prosecute the litigation or they might not be able to control counsel. *See, e.g., In re Cloudera, Inc. Sec. Litig.*, No. 19-cv-03221-LHK, 2019 WL 6842021, at \*6–8 (N.D. Cal. Dec. 16, 2019). District courts often consider a pre-litigation

relationship along with other factors such as the size of the group, how the members found their counsel, and the prosecution procedures set out in their filings. *Id.* at *6.

But the analysis must hew to the legal standard prescribed by the statute. *In re Cavanaugh*, 306 F.3d at 732. If a district court determines at step three that a movant is inadequate, it must articulate how the evidence proves inadequacy. *Cendant I*, 264 F.3d at 266–67 (stating that the pre-litigation relationship of group members can "properly enter into the calculus of whether that group would 'fairly and adequately protect the interests of the class,' but it is this test, not one of relatedness, with which courts should be concerned"). Because the district court here based its decision only on speculation that Group II lacks a pre-litigation relationship, it left the burden on Group II at step three, and it was clear error to find that the presumption had been rebutted.

## II. The Remaining *Bauman* Factors

**\*7**  Because the district court clearly erred, the third *Bauman* factor is satisfied. We also look to the remaining *Bauman* factors to determine whether a writ of mandamus is appropriate. The first and second *Bauman* factors focus on the availability of relief, while the fourth and fifth factors focus on the extent to which the error arises in other cases. *See Bauman*, 557 F.2d at 654–55. Including the third factor of clear error, we find that four of the five *Bauman* factors weigh in favor of granting the writ of mandamus.

Petitioners argue that the district court's order is an unappealable interlocutory order and they will be irreversibly prejudiced by not receiving the benefit of the presumption. They also argue that district courts commonly err by restricting group eligibility to serve as lead plaintiff, which creates unpredictability for investors that are considering proceeding as a group. Baio responds that the order can be reviewed on direct appeal and that Petitioners face no prejudice because they will still receive the benefit of any judgment the class recovers, or they can opt out to pursue their own claims. He further contends that conflicting district court rulings are not the product of oft-repeated error but rather are the product of district courts exercising their discretion in weighing the evidence.

"The first *Bauman* factor highlights the need for mandamus to be used only when no other realistic alternative is (or was) available to a petitioner." *Cole*, 366 F.3d at 817. The second *Bauman* factor is similar but focuses on whether the harm to the petitioners cannot be corrected on a direct appeal. *San Jose Mercury News*, 187 F.3d at 1099. These factors are usually considered together. *Id.*

Here, the Petitioners have no realistic alternative to challenge the district court's decision absent mandamus relief. An interlocutory appeal under the collateral order doctrine is unavailable for an order designating lead plaintiff. *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218–19 (9th Cir. 2000) (holding that the order is not subject to interlocutory appeal "because it is not a conclusive, immutable determination of the issue" and because adequacy and

typicality are "intimately involved with the merits" (quotation omitted)). Without the availability of an interlocutory appeal, "it is fair to conclude that the plaintiffs do not have an adequate remedy, other than mandamus, from the district court's order." *In re Cavanaugh*, 306 F.3d at 740 (Wallace, J. concurring); *see also Cohen*, 586 F.3d at 713 ("[M]andamus is the proper vehicle to challenge the appointment of lead plaintiff at this stage in the litigation absent certification of an interlocutory appeal.").

Petitioners could technically challenge the district court's order on direct appeal. *Z-Seven Fund*, 231 F.3d at 1219; *cf. N. Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*, 593 F.2d 642, 645 (5th Cir. 1979) (holding that a motion to disqualify class counsel "is, in effect, a claim that the class was not adequately represented. And the requirement that the class be adequately represented is reviewable on appeal from a final judgment"). But the harm to Petitioners will not be meaningfully corrected on appeal. Once the district court determined that Petitioners satisfied step two, they became entitled to the lead plaintiff presumption. By the time that the trial proceeds with a different lead plaintiff and counsel, Petitioners will be "denied their presumptive statutory right under ... the PSLRA to direct and oversee the litigation with their choice of counsel." *In re Cavanaugh*, 306 F.3d at 740 (Wallace, J. concurring). The first and second *Bauman* factors therefore weigh in favor of mandamus relief.

**\*8** "[T]he fourth and fifth *Bauman* factors are often mutually exclusive." *San Jose Mercury News*, 187 F.3d at 1103. The fourth factor looks to whether the case involves an "oft-repeated error," while the fifth factor considers whether the petition raises new and important problems or issues of first impression. *Bauman*, 557 F.2d at 655. Here, the fifth factor weighs in favor of mandamus relief because Petitioners raise new and important issues about how courts consider the cohesion of group plaintiffs. Although this court laid out the lead plaintiff appointment steps in *Cavanaugh*, its analysis focused on ensuring district courts were not comparing adequacy between movants when one movant had already established the statutory presumption. *In re Cavanaugh*, 306 F.3d at 732–33. There are no cases from the Ninth Circuit guiding district courts on how to consider group cohesion at any stage of the process and many district courts have taken it into consideration in the lead plaintiff analysis. *See Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at \*8 (N.D. Cal. Aug. 22, 2008) (collecting cases). Consequently, the fifth factor also supports granting mandamus relief.

Because four of the five *Bauman* factors weigh in favor of mandamus relief, a writ of mandamus is appropriate here. We grant the petition for writ of mandamus to the extent it seeks to vacate the district court's order appointing Baio as lead plaintiff. But we decline to instruct the district court to appoint Group II as lead plaintiff. That is a matter the district court should decide in light of the guidance we provide in this opinion.[4]

## CONCLUSION

We grant Mersho, Chau, and Karczynski's petition for a writ of mandamus to the extent it seeks to vacate the district court's order appointing Angelo Baio as lead plaintiff. We remand to the district court to redetermine the lead plaintiff in a manner that is consistent with this opinion.

## WRIT GRANTED IN PART.

## All Citations

--- F.4th ----, 2021 WL 3121385, 21 Cal. Daily Op. Serv. 7477

## Footnotes

\*  The Honorable Andrew P. Gordon, United States District Judge for the District of Nevada, sitting by designation.

1  Rule 23(a) provides that:

   One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

   We have determined that the lead plaintiff process focuses on typicality and adequacy "in particular" because "[f]ailure to satisfy ... numerosity and commonality criteria[ ] would preclude certifying a class action at all." *In re Cavanaugh*, 306 F.3d at 730 & n.5.

2  The competing movants argued to the district court that Group II was inadequate because Group II's own filings contained errors and inconsistent formatting, which showed a lack of cohesion. The district court did not rely on this evidence in making its decision.

3  This decision is also troubling because it resulted in the appointment of a lead plaintiff whose losses are less than half or one-third of what each of the Petitioners suffered individually. Although having the largest stake is not dispositive, the result here appears incongruous with the PSLRA's presumption that the investors with the largest stake have the greatest incentive to supervise the litigation closely.

4  Additionally, to the extent Petitioners seek a writ to clarify that groups can serve as lead plaintiff, that is clear from the statutory language. The district court acknowledged a group can serve as a lead plaintiff. No further clarification is needed.

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.