Joseph J. Tabacco, Jr. (SBN 75484)
Email: jtabacco@bermantabacco.com
Nicole Lavallee (SBN 165755)
Email: nlavallee@bermantabacco.com
Kristin J. Moody (SBN 206326)
Email: kmoody@bermantabacco.com
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382

*Counsel for Movant Green Dot*
*Institutional Investor Group and*
*Proposed Co-Lead Counsel for the Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN KOFFSMON, on behalf themselves and all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>GREEN DOT CORPORATION, STEVEN W. STREIT and MARK SHIFKE,<br><br>                    Defendants. | No. 2:19-cv-10701-DDP-E<br><br>CLASS ACTION<br><br>**GREEN DOT INSTITUTIONAL INVESTOR GROUP'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**<br><br>Date:  September 20, 2021<br>Time: 10:00 a.m.<br>Courtroom:  9C, 9th Floor<br>Judge:  Hon. Dean D. Pregerson |

## TABLE OF CONTENTS

I.    RECONSIDERATION IS APPROPRIATE.......................................................... 1

II.   APPLYING THE CLARIFICATION AND GUIDANCE IN *MERSHO*, GREEN DOT INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ................................................................. 3

  A.    *Mersho* Makes Clear that Groups Can Serve as Lead Plaintiff and Acknowledges the Aggregation of Losses to Demonstrate Largest Financial Interest................................................................... 3

  B.    *Mersho*'s Precedential Findings Regarding Analyzing Group Cohesion are Also Controlling Here..................................................... 4

III.  CONCLUSION ................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ...............................................................1, 2

*In re Cendant Corp. Litig. (Cedant I)*,
    264 F.3d 201 (3d Cir. 2001)....................................................................7

*In re Cloudera, Inc. Sec. Litig.*,
    No. 19-CV-03221-LHK, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019)..............8

*In re Mersho*,
    6 F.4th 891 (9th Cir. 2021) ...........................................................passim

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)............................................................1, 2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .............................................................2

Lead plaintiff movant Green Dot Institutional Investor Group[1] respectfully submits this Rely Memorandum in further support of its motion (the "Motion") for reconsideration of this Court's August 6, 2021 Order (i) appointing movant New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund ("Pension Fund") as lead plaintiff in the above-captioned securities class action and (ii) denying the competing motion of Green Dot Institutional Investor Group to serve as lead plaintiff (the "Lead Plaintiff Order" or "LP Order").

## I.   RECONSIDERATION IS APPROPRIATE

Contrary to the Pension Fund's assertions and mischaracterizations, reconsideration is appropriate here as the recent Ninth Circuit precedent *In re Mersho*, 6 F.4th 891 (9th Cir. 2021) ("*Mersho*"), not addressed by the Lead Plaintiff Order, provides new guidance and clarification on the Private Securities Litigation Reform Act of 1995 ("PSLRA") lead plaintiff selection process that is controlling here.

As discussed in Green Dot Institutional Investor Group's opening brief, the PSLRA lead plaintiff selection process is a three step process. The first step is not at issue here. Step two is a two part process. At the first part of step two, the district court must focus on the losses allegedly suffered by the various plaintiffs in identifying as the "presumptively most adequate plaintiff" "the person or group of persons that … has the largest financial interest." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Mersho*, 6 F.4th at 899; *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). At this part of step two, "the Reform Act provides in categorical terms that the only basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *Cavanaugh*, 306 F.3d 732.

---

[1] Green Dot Institutional Investor Group is comprised of Plymouth County Retirement Association, Greater Pennsylvania Carpenters Pension Fund, and Iron Workers District Council of New England.

[Case No. 2:19-cv-10701] GREEN DOT INSTITUTIONAL INVESTOR GROUP'S REPLY ISO MOTION FOR RECONSIDERATION                                                                                          1

Once the largest financial interest is established, the court must *then* move to the second part of step two and focus its attention *on that plaintiff alone* and determine, based on the information that movant has provided in its pleadings and declarations, whether it satisfies the requirements of Rule 23, in particular those of "typicality" and "adequacy." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Mersho*, 6 F.4th at 899; *Cavanaugh*, 306 F.3d at 729-30. "[T]here is no adversary process to test the substance of those claims." *Cavanaugh*, 306 F.3d at 730. If the movant with the largest financial stake in the controversy provides information that satisfies these requirements, it becomes the presumptively most adequate plaintiff and the court moves on to step three in regard to that plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Mersho*, 6 F.4th at 899; *Cavanaugh*, 306 F.3d at 729-30. As the Ninth Circuit stated, no comparison should be done with other competing movants at this time. *Mersho*, 6 F.4th at 903; *Cavanaugh*, 306 F.3d at 732-33.

At step three, the presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff ... will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Mersho*, 6 F.4th at 899. Again, the focus here is solely on the movant group that has the largest losses. *Id*.

Courts cannot weigh which might be the most adequate or typical class member to lead the litigation. *Mersho*, 6 F.4th at 900; *Cavanaugh*, 306 F.3d at 731-32. Only if the largest movant or movant group is deemed inadequate or atypical, can a court consider competing movants. *Mersho*, 6 F.4th at 900-01; *Cavanaugh*, 306 F.3d at 731-32.

*Mersho* is critical here as it adds clarification and guidance to this process directly relevant to the Court's order here. *Mersho* clarifies that groups are permitted to serve as lead plaintiff and acknowledges the aggregation of a group's

losses in evaluating largest financial interest.  Moreover, it provides, for the first time, "guidance to district courts on how to consider group cohesion" and makes clear that mere "misgivings," without ***evidence of inadequacy or typicality***, about a group is insufficient to demonstrate inadequacy.

## II.   APPLYING THE CLARIFICATION AND GUIDANCE IN *MERSHO*, GREEN DOT INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A.   *Mersho* Makes Clear that Groups Can Serve as Lead Plaintiff and Acknowledges the Aggregation of Losses to Demonstrate Largest Financial Interest

Contrary to the Pension Fund's mischaracterizations otherwise, *Mersho,* citing the PSLRA, makes clear that groups are permitted to serve as lead plaintiff and also recognizes the aggregation of losses in determining the largest financial interest.  *Mersho*, 6 F.4th at 896, 899, 903 n.4.  Indeed, the Ninth Circuit expressly acknowledged and did not disturb the district court's aggregation of losses, adopting the district court's calculation in its decision and accepting aggregation, which the Court here questioned in the Lead Plaintiff Order.  *Mersho*, 6 F.4th at 896; *cf.* LP Order at 4 ("[T]he Ninth Circuit has not addressed the question 'whether a group can satisfy the "largest financial interest" requirement by aggregating losses.'").  Moreover, as further discussed below, *Mersho* holds that an analysis of a group's cohesiveness, should, if at all, be considered in connection with a group's ***adequacy***. *Mersho*, 6 F.4th at 901.

Here, contrary to *Mersho*, the Court declined to aggregate Green Dot Institutional Investor Group's losses, LP Order at 6-8.  Further, the Court did so due to speculation about the cohesiveness of the group, LP Order at 6-7, which, among other issues discussed below, is contrary to *Mersho's* finding that any cohesiveness considerations should be done in connection with a group's ***adequacy***.

---

As the Court did not aggregate Green Dot Institutional Investor Group's losses at the first part of step two of the lead plaintiff selection process, which would undeniably deem it as having the largest financial interest here, the Court should reconsider its opinion in light of *Mersho* and find that Green Dot Institutional Investor Group has the largest financial interest.

### B.    *Mersho*'s Precedential Findings Regarding Analyzing Group Cohesion are Also Controlling Here

The Ninth Circuit in *Mersho* also provides guidance for the first time to district courts on how to consider group cohesion in the lead plaintiff process, acknowledging that many district court's consider this in their adequacy analysis yet "[t]here are no cases from the Ninth Circuit guiding district courts on how to consider group cohesion at any stage of the process and many district courts have taken it into consideration in the lead plaintiff analysis." *Mersho*, 6 F.4th at 903. Contrary to the Pension Fund's assertion otherwise, this is an issue at the heart of the Court's Order here.

*Mersho* makes clear that, while not required, district courts may consider cohesion as part of its ***adequacy*** analysis, but that that analysis "***must hew to the legal standard prescribed by the statute***….The pre-litigation relationship of group members can 'properly enter into the calculus of whether that group would "***fairly and adequately protect the interests of the class***," ***but it is this test, not one of relatedness, with which courts should be concerned***.'" *Mersho*, 6 F.4th at 902.[2] To be clear, "[c]ourts determine whether [that] plaintiff will adequately represent a

---

[2] Contrary to the Pension Fund's assertion otherwise, Green Dot Institutional Investor Group does not "argue[] that under *Mersho* a district court can never properly consider a group's formation, pre-litigation relationships, or cohesion in making the lead plaintiff determination." Pension Fund's Opp. to Mot. for Reconsideration (Aug. 30, 2021), ECF No. 72 ("Opp.") at 6 (emphasis omitted). As discussed in its opening brief and herein, Green Dot Institutional Investor Group argues that the *Mersho* binding opinion on how to consider the group's formation was not applied here.

class by answering two questions: (1) do the movant and its 'counsel have any conflicts of interest with other class members' and (2) will the movant and its 'counsel prosecute the action vigorously on behalf of the class?'" *Id*. at 899-900. Further, *Mersho* finds that mere "misgivings" or speculation about the cohesiveness of a group, rather than evidence of inadequacy, is insufficient to rebut an adequacy showing. *Id.* at 901. *Mersho* further explained that "misgivings are not evidence that cast 'genuine and serious doubt on [the] plaintiff's willingness or ability to perform the functions of lead plaintiff.'" *Id*. (alteration in original) (citation omitted).

Thus, not only was the Court's consideration of cohesiveness in connection with largest financial interest rather than adequacy inconsistent with *Mersho*, but the Court's consideration of Green Dot Institutional Investor Group's cohesiveness was further inconsistent with *Mersho's* guidance.

Having incorrectly evaluated Green Dot Institutional Investor Group's cohesiveness in connection with largest financial interest, the Court never found that Green Dot Institutional Investor Group was inadequate – *i.e.*, that it and its counsel could not prosecute the action vigorously on behalf of the class or that it or its counsel have any conflicts of interest with other class members. Instead, it did this analysis for the Pension Fund only. Indeed, because the Court found the Pension Fund was the presumptive lead plaintiff, it only considered whether the presumption had been rebutted as to the Pension Fund. As discussed in Green Dot Institutional Investor Group's opening brief, in that analysis, the Court expressly stated, "[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job;" "***this Court will not, therefore, consider whether [Green Dot Institutional Investor Group] would be a 'more adequate' plaintiff than the Pension Fund***." LP Order at 12. The Court

clearly ***never found Green Dot Institutional Investor Group was inadequate***.  The Pension Fund ignores this in its Opposition.

Further, contrary to *Mersho*, the Court expressed speculative concern about the Green Dot Institutional Investor Group's lack of a pre-existing relationship and "that any ***potential*** disagreements among the [Green Dot Institutional Investor Group]'s members will be resolved by majority vote, ***raising the possibility*** that litigation decisions will be driven by two investors … with relatively small financial interests at stake" and noting that the "Joint Declaration provides no explanation why the [Green Dot Institutional Investor Group] has chosen to retain two separate law firms."  LP Order at 6-7 (emphasis added).

Yet in *Mersho*, the Ninth Circuit found clear error with a similarly speculative analysis:

> [The District Court] considered Petitioners' joint declaration detailing how they would work together, but declined to appoint Group II based on its "misgivings" about how they would work together because Petitioners had failed to explain how they found each other.  By penalizing Petitioners for not explaining how they found each other, the district court continued to place the burden on them to prove adequacy.

*Mersho*, 6 F.4th at 901.

These errors also led this Court to impermissibly place the burden on the plaintiff with largest financial interest who had made a Rule 23 prima facie showing to disprove the adequacy of the plaintiff with significantly smaller losses.

In the face of this, while conceding certain errors by the Court, the Pension Fund also mischaracterizes *Mersho's* guidance and findings regarding analyzing group cohesion.  *See, e.g.*, Opp. at 6-7, 9.  The Pension Fund states that *Mersho* "clarified that the consideration of a particular group's cohesion must be done when determining whether the group has made its prima facie showing at step two of the

process."  Opp. at 7; *see also Mersho*, 6 F.4th at 901.  As stated above, it is indisputable that the Court did ***not*** do an analysis of whether Green Dot Institutional Investor Group made a Rule 23 prima facie showing, including as to adequacy.  It declined to aggregate the group's losses at the first part of step two, and thus found the Pension Fund had the largest financial interest and moved on to that plaintiff to do a Rule 23 analysis in the second part of step two.  Thus, this alone concedes one of the Court's error's here.

Moreover, *Mersho* did not state that consideration of a group's cohesion must be done, but that it is not ***precluded*** from doing so.  *Mersho*, 6 F. 4th at 901; Opp. at 7 (citing same).  The Pension Fund states that *Mersho* acknowledges that "[m]any district courts have considered the lack of a pre-litigation relationship as part of their adequacy analysis at step two."  Opp at 6 (alteration in original).  However, a main reason *Mersho* granted mandamus relief was to provide guidance to district court's in doing such an analysis.  Critically, and ignored by the Pension Fund, *Mersho **then*** states, "[b]ut the analysis [of pre-litigation relationships and cohesion] must hew to the legal standard prescribed by the statute….The pre-litigation relationship of group members can 'properly enter into the calculus of whether that group would "***fairly and adequately protect the interests of the class,*** *but it is this test, not one of relatedness, with which courts should be concerned.*'"  *Mersho*, 6 F.4th at 902 (quoting *In re Cendant Corp. Litig. (Cedant I)*, 264 F.3d 201, 266-67 (3d Cir. 2001) discussing the analysis at step two).  Indeed, in this discussion of *Cendant I* relied on by *Mersho*, the Third Circuit further states that "[t]he ***statute contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class*.'" [3]  *Cendant I*, 264 F.3d at 266.

---

[3] While the Pension Group repeatedly states that *Mersho* "cites with approval" the district court case *Cloudera*, Opp. at 7, 9, it does no such thing.  *Mersho* cites it as an example of a district court that considered a lack of a pre-ligation relationship in

Contrary to the Pension Fund's assertions, once the Green Dot Institutional Investor Group's largest financial interest is established, it also satisfies the second part of step two – a prima facie showing under Rule 23 – which would make it the presumptive lead plaintiff – a presumption that has not been rebutted. Indeed, Green Dot Institutional Investor Group provided detailed evidence regarding its origins, cohesiveness, motivations, and ability to independently oversee counsel and the litigation, making a prima facie showing of adequacy. ECF No. 24 at 8-14; ECF No. 25-6 at ¶¶8-20; ECF No. 45 at 4-7. This demonstrates a group more than adequately capable of vigorously prosecuting the litigation and controlling its counsel: it is a cohesive group, the three members of which each determined on their own volition to jointly seek appointment as Lead Plaintiff in the best interest of the class, and which has a process in place for conducting the litigation, keeping apprised of the case and making decisions, staying in regular contact with each other, and resolving disagreement. In the face of this, the Pension Fund has offered no evidence to rebut the presumption.

As such, the Court should reconsider its opinion in light of *Mersho* and appoint Green Dot Institutional Investor Group lead plaintiff.

## III. CONCLUSION

For the foregoing reasons and those in its opening brief, Green Dot Institutional Investor Group respectfully requests that the Court reconsider its August 6, 2021 Lead Plaintiff Order and appoint Green Dot Institutional Investor Group as lead plaintiff.

---

its analysis of the adequacy of a plaintiff group. *Mersho*, 6 F.4th at 901-02. This is not surprising, as a reason *Mersho* granted mandamus relief was to provide guidance for district court's that choose to evaluate group cohesion. In any event, in *Cloudera*, unlike here, the group "provided no detail whatsoever about any decisionmaking process." *In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2019 WL 6842021, at *7 (N.D. Cal. Dec. 16, 2019).

DATED: September 3, 2021          Respectfully submitted,

By:  /s/ Kristin J. Moody
         Kristin J. Moody

Joseph J. Tabacco, Jr.
Nicole Lavallee
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382
Email: jtabacco@bermantabacco.com
         nlavallee@bermantabacco.com
         kmoody@bermantabacco.com

Christopher J. Keller
Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
Email: ckeller@labaton.com
         ebelfi@labaton.com
         fmcconville@labaton.com

*Counsel for Movant Green Dot
Institutional Investor Group and
Proposed Co-Lead Counsel for the Class*

Guillaume Buell
**THORNTON LAW FIRM LLP**
One Lincoln Street
Boston, MA  02111
Telephone: (617) 720-1333
Facsimile:  (617) 720-2445
Email: gbuell@tenlaw.com

*Additional Counsel for Movant Green Dot
Institutional Investor Group*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered users via the e-mail addresses on the court's Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the court's Manual Notice List.


By:  */s/ Kristin J. Moody*
         Kristin J. Moody

Joseph J. Tabacco, Jr.
Nicole Lavallee
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382
Email: jtabacco@bermantabacco.com
          nlavallee@bermantabacco.com
          kmoody@bermantabacco.com

Christopher J. Keller
Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
Email: ckeller@labaton.com
          ebelfi@labaton.com
          fmcconville@labaton.com

*Counsel for Movant Green Dot Institutional Investor Group and Proposed Co-Lead Counsel for the Class*

[Case No. 2:19-cv-10701] GREEN DOT INSTITUTIONAL INVESTOR GROUP'S REPLY ISO MOTION FOR RECONSIDERATION

Guillaume Buell
**THORNTON LAW FIRM LLP**
One Lincoln Street
Boston, MA  02111
Telephone: (617) 720-1333
Facsimile:  (617) 720-2445
Email: gbuell@tenlaw.com

*Additional Counsel for Movant Green Dot Institutional Investor Group*