1

2

3                                                            O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  ESTEBAN KOFFSMON,              )  Case No. CV 19-10701 DDP (Ex)
                                   )
12              Plaintiff,         )
                                   )  **ORDER DENYING MOTION FOR**
13      v.                         )  **RECONSIDERATION**
                                   )
14  GREEN DOT CORPORATION, ET      )  [Dkt. 67]
    AL.,                           )
15                                 )
                Defendants.        )
16

17

18       Presently before the court is a Motion for Reconsideration of

19  this Court's Order Appointing Led Class Plaintiff and Approving

20  Class Counsel ("Order"), filed by the "Green Dot Institutional

21  Investor Group," comprised of Plymouth County Retirement

22  Association ("Plymouth County"), Greater Pennsylvania Carpenters

23  Pension Fund ("the Carpenters Fund"), and Iron Workers District

24  Council of New England ("Iron Workers Council") (collectively, "the

25  IIG").  Having considered the submissions of the IGG and of the New

26  York Hotel Trades Council & Hotel Association of New York City,

27  Inc. Pension Fund ("Pension Fund"), the court denies the motion for

28  reconsideration and adopts the following Order.

**I.   Discussion**

1        In this securities fraud putative class action against

2  Defendant Green Dot Corporation ("Green Dot") and others, the IGG

3  and the Pension Fund filed competing motions to be appointed lead

4  class counsel, pursuant to 15 U.S.C. § 78u-4(a)(3).  The Pension

5  Fund allegedly suffered losses of $662,539 as a result of

6  Defendants' misrepresentations.  The constituent members of the IGG

7  — Plymouth County, the Carpenters Fund, and the Iron Workers

8  Council — alleged losses of $592,917, $301,353, and $130,114,

9  respectively, for a total of $1,071,666.

10       This Court analyzed the competing motions under the three-step

11  framework set forth by the Private Securities Litigation Reform Act

12  ("PSLRA").  See 15 U.S.C. § 78u-4(a)(3); see also In re Cavanaugh,

13  306 F.3d 726, 729 (9th Cir. 2002).  The court recognized that the

14  PSLRA contemplates the possibility that a "group of persons" might

15  be the movant best suited to represent the class, and that the only

16  basis upon which a court may compare competing plaintiffs is the

17  size of the plaintiffs' relative financial stakes in the matter.

18  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Cavanaugh, 306 F.3d at 732.

19  The Order also observed, however, that "the Ninth Circuit has not

20  addressed the question 'whether a group can satisfy the "largest

21  financial interest" requirement by aggregating losses.'" (Order at

22  4, quoting Cavanaugh, 306 F.3d at 731 n.8.).  As the Order

23  explained, the majority of courts in this circuit have "refused to

24  appoint as lead plaintiff groups of unrelated individuals, brought

25  together for the sole purpose of aggregating their claims in an

26  effort to become the presumptive lead plaintiff."  In re Gemstar-TV

27  Guide Int'l, Inc. Sec. Litig., 209 F.R.D. 447, 451 (C.D. Cal.

28  2002).  Consistent with that consensus view, the Court declined to

1  aggregate the losses of the IGG's constituent members.  (Order at

2  6-9.)   The Court therefore considered the Pension Fund to be the

3  movant with the largest financial stake at issue and thus, the

4  presumptive lead Plaintiff, before appointing the Pension Fund as

5  lead plaintiff.  (Order at 9, 12.)

6      Shortly before this Court's Order issued, the Ninth Circuit

7  issued its opinion in In Re Mersho, 6 F.4th 891 (2021).  IGG argues

8  that, under Mersho, this Court should have aggregated the IGG

9  members' losses, considered the IGG to be the presumptive lead

10 plaintiff, and appointed IGG rather than the Pension Fund as lead

11 plaintiff.  The court disagrees.

12      The district court in Mersho, like this Court, declined to

13 appoint an investor group lead plaintiff where, as here, it

14 appeared that the investors had no prior relationship, and came

15 together solely for the purpose of aggregating their claims in an

16 attempt to be appointed lead plaintiff.  Mersho, 6 F.4th at 897.

17 There, as here, the district court had misgivings about the

18 investor group's formation, cohesion, and ability to control

19 litigation, as opposed to counsel directing proceedings.  Id.

20 Critically, however, the district court in Mersho determined that

21 the investor group had made a prima facie showing of typicality and

22 adequacy, and was therefore the presumptive lead plaintiff.  Id.;

23 see also Cavanaugh, 306 F.3d at 730.  Only later, at step three of

24 the analysis, did the district court determine, without reference

25 to any evidence, that the presumption of adequacy had been

26 rebutted.  Mersho, 6 F.4th at 897.  The Ninth Circuit held that the

27 district court's determination "did not give effect to the

28 presumption," and instead improperly placed the burden on the

3

1  investor group to provide evidence of adequacy, rather than on

2  competing movants to rebut the presumption with evidence of

3  inadequacy.  Mersho, 6 F.4th at 901.

4      Here, in contrast, the court has at no point considered the

5  IGG to be the presumptive lead plaintiff.  The Mersho court

6  acknowledged that "[t]here are no cases from the Ninth Circuit

7  guiding district courts on how to consider group cohesion at any

8  stage of the [PSLRA lead plaintiff] process . . . ."  Mersho, 6

9  F.4th at 903 (internal citation omitted).  In providing that

10  guidance, the court recognized that "the district court must

11  essentially do [an adequacy] analysis twice. At step two, it will

12  consider whether the movant has made a prima facie showing of

13  adequacy. At step three, it will consider whether competing movants

14  have offered proof that the presumptive lead plaintiff will not

15  adequately represent the class."  Id. at 900.  The court explicitly

16  declined, however, "to say that district courts are precluded from

17  considering pre-litigation relationships or cohesion altogether,"

18  at any step.  Id. at 901.  Indeed, "[m]any district courts have

19  considered the lack of a pre-litigation relationship as part of

20  their adequacy analysis at step two because it may indicate that

21  members may not work together well to vigorously prosecute the

22  litigation or they might not be able to control counsel.  District

23  courts often consider a pre-litigation relationship along with

24  other factors such as the size of the group, how the members found

25  their counsel, and the prosecution procedures set out in their

26  filings."  Id. at 901-02 (internal citation omitted) (emphasis

27  added).

28

4

1     These are precisely the concerns this Court raised in the

2  Order, albeit not explicitly in terms of adequacy.[1]  As stated

3  above, and in the Order, many courts have "refused to appoint as

4  lead plaintiff groups of unrelated individuals, brought together

5  for the sole purpose of aggregating their claims in an effort to

6  become the presumptive lead plaintiff."  Gemstar, 209 F.R.D. at

7  451; see also In re Cloudera, Inc. Sec. Litig., No.

8  19-CV-03221-LHK, 2019 WL 6842021, at *6-8 (N.D. Cal. Dec. 16,

9  2019); In re Stitch Fix, Inc. Sec. Litig., 393 F. Supp. 3d 833, 835

10  (N.D. Cal. 2019) ("[T]he clear consensus in our district is that a

11  group of investors who had no pre-existing relationship with one

12  another, and whose relationship and group status were forged only

13  by a lawyer, is not appropriate to be lead plaintiff based on their

14  aggregated losses. . . .  To permit aggregation and lead plaintiff

15  status for such a group undercuts the goal of having the plaintiffs

16  and not the lawyers call the shots in securities class actions.");

17  Crihfield v. CytRx Corp., No. CV1605519SJOSKX, 2016 WL 10587938, at

18  *4 (C.D. Cal. Oct. 26, 2016); Frias v. Dendreon Corp., 835 F. Supp.

19  2d 1067, 1073 (W.D. Wash. 2011) (discussing various rationales for

20  rejecting groups comprised of unrelated individuals); In re Network

21  Assocs., Inc., Sec. Litig., 76 F. Supp. 2d 1017, 1026 (N.D. Cal.

22

23     [1] As one court has recognized, Mersho did not address the
approach employed by this Court and others, which focused on
24  aggregation of claims rather than adequacy.  See Xu v. FibroGen,
Inc., No. 21-CV-02623-EMC, 2021 WL 3861454, at *8 n. 15 (N.D. Cal.
25  Aug. 30, 2021).  Although this Court is of the view that these
approaches may be intertwined under circumstances such as those
26  presented here, the result here would not differ under a purely
adequacy-focused approach.  As suggested above, even if the court
27  were to aggregate the IGG members' claims, the IGG has failed to
make a prima facie showing of adequacy, for the reasons discussed
28  in the Order.

1   1999).   The <u>Mersho</u> court's guidance as to the evidentiary

2   requirements applicable to a step three analysis in no way compels

3   the conclusion here that the IGG is the presumptive lead plaintiff

4   at step two.   <u>Cf.</u> <u>Xu v. FibroGen, Inc.</u>, No. 21-CV-02623-EMC, 2021

5   WL 3861454, at *9 (N.D. Cal. Aug. 30, 2021) (analyzing, post-

6   <u>Mersho</u>, artificiality of investor group at step two).

7        **IV.   Conclusion**

8        For the reasons stated above, the IGG's Motion for

9   Reconsideration is DENIED.

10

11

12   IT IS SO ORDERED.

13

14

15   Dated: January 19, 2022

16                                    DEAN D. PREGERSON
                                     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

6