JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:  (415) 773-5700
Facsimile:  (415) 773-5759

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| IN RE GREEN DOT CORPORATION SECURITIES LITIGATION | Case No. 2:19-cv-10701-DDP-E<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Hearing<br>Date:    November 7, 2022<br>Time:    10 a.m.<br>Judge:   Hon. Dean D. Pregerson<br>Ctrm:    9C |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    ARGUMENT ............................................................................................ 2

    A.    The Complaint Should Be Dismissed Because it is Puzzle-Pled .......... 2

    B.    The Complaint Does Not Allege a False or Misleading Statement ....... 3

        1.    When Plaintiff's Cherry-Picked Quotations Are Read in Context, It Is Clear That the Allegedly Omitted Information Was in Fact Disclosed ................................................................ 4

        2.    Plaintiff Concedes That Accurate Statements of Historical Fact Are Not Actionable, And Defendants Had No Duty To Discuss Or Predict Green Dot's Future Prospects ....................... 5

        3.    The Complaint Lacks Particularized Allegations Establishing That Any Challenged Statement Was Affirmatively False When Made .................................................................................. 6

        4.    The Challenged Statements Did Not Create an Affirmatively False or Misleading Impression ..................................................... 9

        5.    The Challenged Statements Are Otherwise Inactionable Because They Are Forward-Looking, or Statements of Opinion and Puffery ................................................................ 10

    C.    The Complaint Fails to Adequately Plead Scienter ........................... 13

        1.    The Complaint Fails to Plead Facts Indicative of Any Individual Defendant's Scienter ................................................. 13

        2.    Under *Tellabs*' "Holistic" Analysis, Plaintiff Fails to Establish Scienter .................................................................... 16

    D.    Green Dot Has Not Waived Its Challenge to The Complaint's— Purported—10(b)(a) and (c) Claims .................................................. 17

III.   CONCLUSION ...................................................................................... 18

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Amgen Inc. Sec. Litig.*,
   544 F. Supp. 2d 1009 (C.D. Cal. 2008)...................................................................5

*In re Apple Inc. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020) ........................................................14

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ..................................................................................9

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) ..................................................................................8

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
   398 F. Supp. 3d 549 (N.D. Cal. 2019)................................................................9, 10

*Jiangchen v. Rentech, Inc.*,
   2017 WL 10363990 (C.D. Cal. Nov. 20, 2017) .....................................................3

*Kairalla v. Advanced Med. Optics, Inc.*,
   2008 WL 2879087 (C.D. Cal. June 6, 2008)........................................................10

*Kang v. PayPal Holdings, Inc.*,
   2022 WL 3155241 (N.D. Cal. Aug. 8, 2022)........................................................18

*Lu v. Align Tech., Inc.*,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019).........................................................3, 4, 5

*N.M. State Inv. Council v. Ernst & Young LLP*,
   641 F.3d 1089 (9th Cir. 2011)...............................................................................15

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
   2018 WL 3126393 (N.D. Cal. June 26, 2018) ........................................................9

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004)...............................................................................16

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014)...........................................................................7, 14

*In re Portal Software, Inc. Sec. Litig.*,
   2005 WL 1910923 (N.D. Cal. Aug. 10, 2005)......................................................11

ii

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

*Primo v. Pac. Biosciences of Cal., Inc.*,
    940 F. Supp. 2d 1105 (N.D. Cal. 2013)..........................................................2, 3

*In re Quality Systems, Inc. Securities Litigation*,
    865 F.3d 1130 (9th Cir. 2017) ............................................................... 12, 13

*In re QuantumScape Sec. Class Action. Litig.*,
    580 F. Supp. 3d 714 (N.D. Cal. 2022)................................................................11

*Ret. Sys. v. Sterling Fin. Corp.*,
    963 F. Supp. 2d 1092 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393
    (9th Cir. 2017) ...............................................................................................8

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ..........................................................................10

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ................................................................... 14, 15

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
    485 F. Supp. 3d 1113 (N.D. Cal. 2020)..............................................................7

*Shenwick v. Twitter, Inc.*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017)............................................................10

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996)..............................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S 308 (2007) .................................................................................. 13, 14, 16

*Toubian v. Bos. Sci. Corp.*,
    2014 WL 12607702 (C.D. Cal. Aug. 19, 2014) ................................................17

*Touloudjian v. Cal. Dep't of Corr. & Rehab.*,
    2021 WL 4812315 (C.D. Cal. May 24, 2021)......................................................5

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002)............................................................................7

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018)............................................................................16

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994)..............................................................................6

iii

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)...........................................................................15

iv

## I.      INTRODUCTION

Defendants' Motion to Dismiss (the "Motion" or "Mot.")[1] presents multiple independently dispositive reasons why the Complaint should be dismissed. Plaintiff's opposition brief (the "Opposition" or "Opp.") does nothing to rebut that showing, and instead argues that the Complaint's fatal flaws are "issues of fact" that must be left to the jury.  Plaintiff is wrong, and the Court can and should dismiss the Complaint based solely on its inadequate allegations and the judicially-noticeable documents incorporated by reference therein.

*First*, as the Motion establishes, the Complaint is improperly puzzle-pled and forces the reader to try and "match" each misleading statement with an alleged reason for falsity.  Relying on inapposite cases, the Opposition claims that the Complaint's puzzle-pleading is for the trier of fact to sort out.  The law says otherwise:  Puzzle pleading is a pleading defect that warrants dismissal.

*Second*, the Complaint does not allege an actionable misstatement.  As the Motion shows, most of the alleged misstatements are accurate statements of historical performance, opinions, forward-looking, or puffery—and thus inactionable as a matter of law.  And Plaintiff's claim that Green Dot's internal data predicted an "inevitable impact" on its business is irrelevant, because the Complaint does not allege any particularized facts to show any Green Dot disclosure was false or misleading *when made*.  Plaintiff's attempt to plead fraud-by-hindsight fails as a matter of both law and logic and cannot be used to state a claim under the PSLRA.

*Third*, the Complaint does not allege specific facts creating a "strong inference" that any Defendant acted with scienter, *i.e.*, with fraudulent intent. Whether viewed individually or holistically, Plaintiff's allegations fail.  Plaintiff's attempt to run away from the governing law on scienter are unavailing, and the Complaint must be dismissed for that additional reason.

---

[1] Unless otherwise noted, all defined terms herein have the same definition as in the Motion.

1

*Fourth*, in a last-ditch effort to keep its Complaint alive, Plaintiff insists that the Motion should be denied because the Complaint purportedly pleads claims under subsections (a) and (c) of Rule 10b-5 and Defendants failed to move to dismiss those claims. Wrong again. Defendants moved to dismiss the Complaint in its *entirety* and *all* causes of action, and made no distinction between subsections (a), (b), or (c) of Rule 10b-5. Thus, even if the Complaint can be said to assert claims under subsections (a) and (c) of Rule 10b-5 (and it does not), the Motion's arguments for dismissal apply with equal force to such purported claims.

## II.    ARGUMENT

### A.    The Complaint Should Be Dismissed Because it is Puzzle-Pled

As the Motion shows, the Complaint should be dismissed because it does not sufficiently specify the reasons why each alleged misstatement was false or materially misleading when made. *See* Mot. at 14-15. That is, it is "puzzle-pled," and thus does not satisfy the stringent requirements of the PSLRA.

Plaintiff scarcely disputes that the Complaint places the onus on the reader to piece together *which* challenged statement is rendered allegedly false or misleading based on *which* bullet point in a subsequent laundry list of allegedly "true facts." *See, e.g.*, AC ¶¶ 40-41. Instead, Plaintiff argues that despite the Complaint's puzzle pleading, "Defendants appear to have been able to identify the alleged misstatements and the reasons why they were misleading." Opp. at 13. But whether "Defendants were able to argue that the pleading was inadequate does not establish that it provided them with sufficient notice of the claims against them." *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013).

Plaintiff also directs the Court to several inapposite cases where the plaintiff properly connected each "specific statement" to an explanation "shortly thereafter" of its false or misleading nature. *See* Opp. at 12-13 (citing *Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *9 (C.D. Cal. Jan. 17, 2020); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *9 (C.D. Cal. June 9, 2016)). But in the Complaint here, by sharp

contrast, "the paragraphs that ostensibly explained why the block quoted statements were false or misleading contained *multiple reasons*, leaving the court to decipher *which reason applied to which statement*." *Jiangchen v. Rentech, Inc.*, 2017 WL 10363990, at *6 (C.D. Cal. Nov. 20, 2017) (emphasis added).

Plaintiff also claims that the question of puzzle-pleading is for the trier of fact. *See* Opp. at 13. Wrong. A complaint should be dismissed where its allegations leave "the Court to guess *how* the[] factual allegations render the Defendants' representations misleading," *Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1277 (N.D. Cal. 2019), which is the case here. For example, a reader cannot discern how the alleged fact that a "claimed increase in 'GDV' … masked a less-lucrative product-mix trend," AC ¶ 41(b), renders the challenged statement "we're not seeing any competitive pressure," *id.* ¶ 40(e), false or misleading. Because neither Defendants nor the Court should be "required to guess at the basis of [Plaintiff's] claims," the Complaint should be dismissed. *Primo*, 940 F. Supp. 2d at 1112.

### B.    The Complaint Does Not Allege a False or Misleading Statement

Plaintiff concedes that none of the challenged statements can be false or misleading because Defendants failed to predict an "inevitabl[e] impact" on Green Dot's "bottom line" due to a shift away from its legacy prepaid card business. *See* Opp. at 21-22. Yet the Complaint's allegations rest on little else, and there are no specific facts alleged to show that any challenged statement was false when made or provided investors with a misleading impression of Green Dot's business. Moreover, and in any event, the information that Plaintiff faults Defendants for purportedly concealing was in fact *disclosed* by Defendants.

Unable to cite any specific factual allegations showing that any challenged statement was false or misleading when made, Plaintiff instead argues that the Motion presents "factual disputes … for another day." *Id.*. at 16. That is false. All of the purportedly "extrinsic materials" that Plaintiff complains about, *id.* at 15, are incorporated by reference into the Complaint (or otherwise judicially noticeable by

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

the Court), and therefore must be considered as effectively "part of the complaint," *see* RJN at 1. Put simply, the Court is permitted to, and has the obligation to, assess the adequacy of Plaintiff's pleadings based on the entirety of the public disclosures being challenged, rather than Plaintiff's cherry-picked selections alone. As the Motion shows, when Green Dot's challenged disclosures are considered in their entirety, as they must be for purposes of this Motion, every one of the challenged statements is shown to be inactionable under the PSLRA *as a matter of law*. *See* Mot. at 15-30.

### 1. When Plaintiff's Cherry-Picked Quotations Are Read in Context, It Is Clear That the Allegedly Omitted Information Was in Fact Disclosed

As an initial matter, all of Plaintiff's claims depend on "cherry-picking portions of Defendants' statements and ignoring other portions." *Lu*, 417 F. Supp. 3d at 1276. In the very same documents Plaintiff references in its Complaint, Green Dot disclosed the exact information that Plaintiff asserts was omitted. *See* Mot. at 9-12, 21-23. Thus, Plaintiff cannot maintain that Defendants concealed a declining "growth rate" in legacy prepaid cards, *see, e.g.*, AC ¶ 39, conflated legacy and non-legacy active accounts to "mask[]" its "product-mix trend," *id.* ¶ 41, or that e-banking accounts "were not generating the high-margin[s]" of legacy prepaid accounts at the time, *id.*, when the documents on which the Complaint relies disclosed precisely those things, *see, e.g.*, Mot. at 6 (chart illustrating declining growth rate in legacy accounts built from disclosures to investors); RJN at 237, 717, 724, 743-44, 751-52 (noting that growth in active accounts was due in large part to growth in non-legacy card accounts); *id.* at 716, 719 (recognizing that its newer e-banking accounts initially have materially lower margins than legacy prepaid accounts).

Plaintiff does not credibly dispute that its allegations fail when Defendants' "statements [are] viewed properly as a whole." *Lu*, 417 F. Supp. 3d at 1276. Instead, as before, Plaintiff claims that the question of whether Defendants' disclosures were "adequate" is a "factual dispute for another day." Opp. at 14-15, 20. Plaintiff is

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

wrong again.  "To allege falsity under the PSLRA, Plaintiff 'must account for the entirety of [the statements] on which they rely, and not simply invoke selective quoting to make their claims.'"  *Lu*, 417 F. Supp. 3d at 1276 (quoting *In re Ocera Therapeutics, Inc. Sec. Litig.*, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018)).

Plaintiff argues that Defendants are raising an improper and "fact-specific" "truth-on-the-market defense[]."  Opp. at 20.  But Defendants are not asserting that Green Dot's "failure to disclose material information may be excused [because] the information was made credibly available to the market by *other sources*."  *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008) (emphasis added).  Instead, Defendants are citing to the *very same documents* Plaintiff incorporates into its Complaint, which demonstrate on their face that Green Dot did not "fail[] to disclose material information" as Plaintiff falsely claims.  *Id.*

**2.  Plaintiff Concedes That Accurate Statements of Historical Fact Are Not Actionable, And Defendants Had No Duty To Discuss Or Predict Green Dot's Future Prospects**

The Opposition does not dispute the Motion's showing that ten of the challenged statements are not actionable because they are accurate statements of historical fact.  *See* Mot. at 16-17 (citing AC ¶¶ 38(b), 40(a), 40(c), 40(d), 42, 46, 48(c), 48(d), 50(a), 53(a), 53(d)).  Plaintiff's failure to dispute that point operates as a concession that those ten statements cannot be used to state a claim.  *See, e.g.*, *Touloudjian v. Cal. Dep't of Corr. & Rehab.*, 2021 WL 4812315, at *6 (C.D. Cal. May 24, 2021) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." (internal quotations omitted)).

Plaintiff nonetheless argues that the challenged statements of undisputed historical fact are actionable because Defendants were supposedly required to disclose "adverse information that cuts against the positive information."  Opp. at 14 (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018)).  But the "adverse information" Plaintiff insists that Defendants should have disclosed

5

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

is that Green Dot's "product mix trend" would "inevitably" have a negative "impact on the Company's bottom line." AC ¶ 49. It is well established that Defendants are *not* required to "caution that future prospects may not be as bright as past performance," and are "*not* required to forecast future events" in that fashion. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1406 (9th Cir. 1996) (emphasis added; internal quotation marks omitted); *see* Mot. at 20.

Indeed, as the Motion explains, Plaintiff's core theory of fraud—and entire Complaint—fails as a matter of law because it depends on the outcome of Green Dot's supposedly inevitable ***future*** results. *See* Mot. at 20; *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1420 (9th Cir. 1994) (rejecting claim where plaintiffs' "argument distills to a contention that WOW should have predicted the collapse in sales that occurred in late 1987"). Because Plaintiff's fraud claim, in reality, is that Defendants' historical statements "omitted … future trends" rather than "current facts," Opp. at 22, those statements cannot be used to state a claim as a matter of law.

### 3. The Complaint Lacks Particularized Allegations Establishing That Any Challenged Statement Was Affirmatively False When Made

Plaintiff also fails to allege particularized facts establishing that any challenged statement was affirmatively false *when made*. *See* Mot. at 17-19. Plaintiff instead paints a broad-strokes picture to suggest that the challenged statements were at odds with Defendants' knowledge of the state of the company. But that picture is based on nothing more than assumptions and conclusory statements.

First, while Plaintiff makes much of Green Dot's "internal metrics" or reports that allegedly showed that its prepaid card business was not growing or having a positive impact on profitability, *see* Opp. at 17, the Opposition cannot cite to any detail whatsoever in the Complaint regarding the specific contents of those "internal metrics" or reports. Instead, like the Complaint, the Opposition offers only conclusions about what those "internal metrics" or reports "must have" said given the eventual fall in Green Dot's stock price. Conclusions and assumptions are plainly

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

insufficient to plead falsity. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087-88 (9th Cir. 2002) (rejecting attempts to establish knowledge of a contrary state of affairs through "general allegations that the defendants had received internal reports"). Simply put, Plaintiff's "negative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient to meet the heightened pleading requirements of the PSLRA." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (brackets omitted).

Even if the Complaint had adequately alleged that Defendants knew of a generalized "decline[]" in Green Dot's legacy prepaid card business, and it does not, such knowledge would not be inconsistent with the challenged statements. Indeed, Plaintiff's own graphic illustrates that Green Dot's prepaid card revenues *grew* up until Q2 2019, *see* Opp. 8; AC ¶ 80, at which time, Green Dot disclosed to investors that "erosion" in the prepaid legacy market was likely to "impact" the Company, and lowered its earnings guidance accordingly, *see* Mot. at 7-8; RJN at 812.

Second, Plaintiff asserts that Green Dot misled investors by hiding the *reasons* for changing its product mix—according to Plaintiff, it was because of "new competition," AC ¶ 34—but the Complaint alleges no facts to support that assertion. *See SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126-27 (N.D. Cal. 2020) (dismissing allegations that "fail[] to substantiate … the extent of competition" and are "devoid of any specificity whatsoever as to what the extent of competition … truly was"). Plaintiff's assertions regarding an inevitable "decline due to existential competition" are wholly conclusory. Opp. at 18. Statements disclaiming concern about competition thus cannot be deemed false, particularly given Green Dot's success during most of the Class Period. *See* Mot. at 19.

Third, Plaintiff cannot cite to any factual allegations in the Complaint to support its repeated supposition that Defendants knew that Green Dot's product "mix-shift was toward less lucrative products" and its "unit economics were

7

deteriorating." Opp. at 19. True, as recognized by the market analysts that Plaintiff relies on in its Complaint, "newer initiatives initially have lower margins." RJN at 912. But they also "ramp up as customer usage grows." *Id.* And Defendants never concealed that its non-legacy products would have lower margins initially. *See* Mot. at 9-12. Plaintiff alleges zero facts to show that Defendants misrepresented the *lifetime* value of Green Dot's growing non-legacy business, or their belief that shifting attention to these new products would improve the company's business.

At most, Plaintiff alleges that "on average, it would take more than 4 non-legacy customers to make up for the loss of 4 legacy prepaid customers." AC ¶ 60(d). But Plaintiff "does not indicate the origin of this data or explain how it was calculated." *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1112 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017). Without an "identified source for this data," the Court cannot determine whether Plaintiff's calculations reflect facts or bare "speculation." *Id.* at 1113.

Last, Plaintiff seeks doctrinal support for its fraud-by-hindsight approach from *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995), asserting that "temporal proximity between optimistic statements and a downturn 'is circumstantial evidence that the optimistic statements were false when made.'" Opp. at 17. But that rule only applies when the downturn takes place "very shortly after" the challenged statements—like the couple of months in *Fecht*. *See* 70 F.3d at 1083. It cannot possibly serve as a basis for finding that statements made, in this case, *eighteen months earlier* were false when made. Indeed, Green Dot made cautionary disclosures to investors regarding a slowing growth rate in its legacy prepaid card business and lowered its earning guidance accordingly on May 9, 2019, *see* RJN at 812, long before the purported "downturn" Plaintiff relies upon.

Put simply, the Complaint does not allege corroborating facts, as required by the PSLRA, showing that Defendants "knew all along" a downturn was inevitable, or that Defendants misrepresented the value of the non-legacy business they sought

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

to grow.  While it may have become clear *later* that Defendants' initial assessment of that value was too optimistic, there's nothing in the Complaint demonstrating that Defendants knew Green Dot's product-mix shift would "inevitably" have a negative impact on the Company's profitability.

### 4. The Challenged Statements Did Not Create an Affirmatively False or Misleading Impression.

As the Motion explains, the challenged statements here were not inconsistent with any "true facts"—even if the Court were to shield its eyes to the judicially-noticeable and incorporated disclosures of alleged omissions—and therefore did not affirmatively create a misleading picture for investors.  *See* Mot. at 23-24.

Plaintiff claims that Green Dot's challenged statements failed to address what "investors would have wanted to know."  Opp. at 21.  But that allegation depends on the assumption that Green Dot was aware that its disclosures were "inconsistent" with a future downturn in performance—a future Green Dot was not required to predict.  Indeed, it is only Plaintiff's supposition that purportedly declining legacy business "would inevitably impact Green Dot's bottom line" that, in its view, "show[s] the [allegedly omitted] information was material to investors."  *Id.* at 21-22.  That does not demonstrate that the challenged statements "create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]" *at the time* those statements were made.  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  Nor did the challenged disclosures "affirmatively le[a]d … in a wrong direction."  *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 398 F. Supp. 3d 549, 556 (N.D. Cal. 2019).

For example, Plaintiff makes much of purportedly "conflated active-account metrics."  Opp. at 19.  But even if Green Dot had failed to disclose the extent to which active-account metrics were attributable to non-legacy, rather than legacy prepaid accounts—it did disclose this information, *see, e.g.*, RJN at 744, 751-52, 765, 768—those metrics are not "contradict[ed]" by the alleged omissions.  *Norfolk Cty. Ret.*

9

*Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at \*5 (N.D. Cal. June 26, 2018). The numbers are consistent with—and certainly not "necessarily inconsistent" with—the "underlying true fact[]" that Green Dot was actively shifting its product mix, even if one takes for granted Plaintiff's conclusory allegation that the product mix shift self-evidently moved in a less lucrative direction. *Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087, at \*3 (C.D. Cal. June 6, 2008).[2]

Moreover, Plaintiff's reliance on *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115 (N.D. Cal. 2017), *see* Opp. at 18, 20-21, 22, is misplaced. In that case, the defendant's disclosures of growth in one metric—MAU, or "monthly active users"—was deemed to be "unhelpful at best and misleading at worst in the absence of companion DAU ['daily active user'] data." *Shenwick*, 282 F. Supp. 3d at 1138. In other words, the DAU data undercut the challenged statements and showed that "MAU was not really accelerating." *Id.* at 1139. But there is no viable claim here that relevant metrics—like the number of active accounts, or gross dollar volume—would somehow be "unhelpful" or necessarily "misleading" in the *absence* of companion information breaking those numbers down by type of account. A rise in gross dollar volume derived from non-legacy business does not necessarily predict a loss of legacy prepaid card business; nor do added non-legacy accounts spell a necessary decline in legacy prepaid accounts. Unlike in *Shenwick*, therefore, the challenged misstatements did not "affirmatively le[a]d" investors in the "wrong direction." *Irving Firemen's Relief*, 398 F. Supp. 3d at 556.

> ### 5.   The Challenged Statements Are Otherwise Inactionable Because They Are Forward-Looking, or Statements of Opinion and Puffery

Unable to allege specific facts to support its core theory of fraud, Plaintiff is left challenging forward-looking statements, and statements of puffery, opinion or

---

[2] Plaintiff takes issue with the contention that statements are not misleading if they are "not necessarily inconsistent with the underlying true facts," *Kairalla*, 2008 WL 2879087 at \*3. *See* Opp. at 20 n.8. But that language comes from *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001), and remains good law.

10

belief.  None of those are actionable as a matter of law.  *See* Mot. at 24-30.

*First*, Plaintiff fails to demonstrate that the forward-looking statements challenged in the Complaint fall outside the PSLRA safe harbor.  *See* Mot. at 25-26.  Plaintiff argues that many of the challenged forward-looking statements are actionable because they "include present-tense" language like "continuing" or "ongoing."  Opp. at 23.  But even where forward-looking statements contain present-tense language, they are protected by the PSLRA's safe harbor if only future events could establish their truth or falsity.  Mot. at 24.  To the extent those statements are taken to imply that historical performance would "continue" into the future or remain "ongoing," they are inactionable.

Moreover, each of the challenged forward-looking statements was properly accompanied by cautionary language that identified specific risk factors.  *See* Mot. at 26; *see also, e.g.*, RJN at 588 (discussing "risks and uncertainties" associated with, inter alia, "dependence on revenues derived from Walmart"; "competition"; and "new growth initiatives").  That language was far from "boilerplate," as Plaintiff asserts.  *See* Opp. at 24.  And similarly detailed cautionary statements have merited safe-harbor treatment before.  *See, e.g.*, *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at *14 (N.D. Cal. Aug. 10, 2005).

*Second*, the Motion demonstrates that the statements of opinion and belief challenged in the Complaint cannot be used to state a claim.  *See* Mot. at 29-30.  Plaintiff argues the challenged statements of opinion are actionable because they contain "embedded statements of fact."  Opp. at 25.  But in reality, each of the challenged opinion statements reflects an expression of subjective belief—like "[w]e feel upbeat," or "feel pretty good"—about future performance.  *See* AC ¶¶ 38(c), 38(d), 53(d), 61(c).  They do not reflect "certainty," *contra* Opp. at 26, as when one says, "the coffee is hot," *In re QuantumScape Sec. Class Action. Litig.*, 580 F. Supp. 3d 714, 738 (N.D. Cal. 2022) (Plaintiff's case), but are instead classic statements of belief, as when one says, "I *think* the coffee is hot," *id.* (emphasis added).

11

While one cited statement does not include "opinion-qualifying language," AC ¶ 57(b), it clearly reflects a subjective view. Green Dot represented that while slower active account growth was admittedly "not great," it was "glad" to see growth in direct deposit accounts—which rendered the lack of active account growth "not relevant to … performance." RJN at 798. Those statements reflect a subjective *belief* that Green Dot's product-mix shift benefited the Company. Plaintiff cannot contend that these emotive expressions are "verifiably untrue." Opp. at 25.

Plaintiff also insists that Defendants had "knowledge of the adverse facts cutting against their purported 'opinions.'" *Id.* at 26. But as discussed above, the Complaint is devoid of any particularized allegations to that effect, and Plaintiff's conclusory allegations of adverse knowledge cannot be used to state a claim under the PSLRA.

*Third,* the Motion shows that Plaintiff cannot state a claim by challenging generalized assertions of corporate optimism, or puffery. *See* Mot. at 27-28. That is because there is no verifiable metric against which to measure the truth or falsity of vague assessments like "strong momentum," "hitting," "very nice[]," or "doing very well." *See id.* (listing examples of corporate puffery). Indeed, for each one of these challenged statements, Defendants cited cases holding that substantially similar statements have been held to be inactionable as mere puffery. *See id.* at 28-29.

Plaintiff's cited authorities, meanwhile, are inapposite. *See* Opp. at 27-29. *In re Intuitive Surgical Securities Litigation* involved a case where optimistic statements "regarding [a product's] safety, ergonomic benefits, and efficacy could be objectively assessed through safety reports." 65 F. Supp. 3d 821, 834 (N.D. Cal. 2014). And in *In re Quality Systems, Inc. Securities Litigation*, 865 F.3d 1130, 1144 (9th Cir. 2017), the defendant made untrue statements regarding "[the] proportion of the [specific] markets he believed were [available]." The court indicated, however, that a more generalized statement would not have been actionable, such as if the defendant had "just [communicated] that he believed plenty of opportunities for new system sales

12

existed." *Id.* The statements at issue here are closer to the latter: vague and generalized statements of optimism. There are no allegations that Defendants "*kn[ew]*" their statements about "specific aspects of [the] company's operation" to be false, as in *Quality Systems*. *Id.* at 1143 (emphasis added). To the contrary, the challenged statements largely took place in the context of increasing revenue and growth. *See* Mot. at 7-8.

### C.    The Complaint Fails to Adequately Plead Scienter

The Motion demonstrates that the Complaint should also be dismissed because it does not allege particularized facts that would give rise to a "strong inference" that any Defendant acted with scienter, or fraudulent intent. *See* Mot. at 30-35. To the contrary, when considered under the holistic analysis required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S 308, 314 (2007), the facts properly before the Court raise a compelling inference the Defendants acted with an innocent, not culpable, state of mind. *See* Mot. at 34-35.

Plaintiff has no viable response. Instead, Plaintiff repeats its conclusory and deficient allegations, misstates the governing law in an effort to lower the pleading standard, cites to the inapplicable "core operations" doctrine, and references the Individual Defendants' alleged stock sales. None of these arguments carry the day.

### 1.    The Complaint Fails to Plead Facts Indicative of Any Individual Defendant's Scienter

To establish scienter, the Complaint relies heavily on conclusory allegations regarding the Individual Defendants' purported access to "reports" and other generalized information regarding Green Dot's financials. *See* Mot. at 31. As Defendants explained, these allegations miss the mark: Ninth Circuit law requires, among other things, that Plaintiff points to "specific information that contradicted, or was inconsistent with, any of the challenged statements." *Id.* Again, Plaintiff's "negative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient to meet the heightened pleading

13

requirements of the PSLRA." *Intuitive Surgical*, 759 F.3d at 1063 (brackets omitted).

Plaintiff's primary response is to wave away the governing Ninth Circuit law on this point, claiming that the entire landscape changed with the Supreme Court's decision in *Tellabs*, and the Ninth Circuit's decision in *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). But Plaintiff overstates the impact of these cases on the law surrounding scienter.

*S. Ferry* recognized that under *Tellabs*' "holistic" analysis, even some vague allegations regarding a defendant's role in a company may help give rise to scienter when combined with more specific allegations. But where a plaintiff relies heavily on a defendant's purported access to "reports" as a way of establishing scienter—that is, where that purported knowledge *is* the specific allegations on which the plaintiff relies—*S. Ferry* does not relieve the plaintiff of its obligation to establish *what* those reports said that would have established a defendant's scienter. Indeed, after *S. Ferry*, courts in this Circuit—including the Ninth Circuit—continue to dismiss complaints relying on purported "reports" with no corroborating details. *See, e.g.*, *Intuitive Surgical, Inc.*, 759 F.3d at 1063; *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *22 (N.D. Cal. June 2, 2020) (noting that "if a plaintiff is to rely on the existence of reports as a means of establishing knowledge, she must 'include adequate corroborating details,' such as the 'sources of her information with respect to the reports, how she learned of the reports, who drafted them, ... which officers received them, and 'an adequate description of their contents'").

At most, the Complaint's allegations establish that "defendants generally had access to [sales and account] data." *Id.* at *23. But absent from the Complaint is any allegation that, at the time a specific statement was made, the Individual Defendants had access to a specific report that "detail[ed] the specific facts that render defendants' statements allegedly false." *Id.* Under this analysis, it does not matter that one of the Individual Defendants represented that they "kn[e]w what the internal numbers" were, Opp. at 31, because the Complaint does not allege what those internal

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

numbers were, what time period they covered, when Defendants allegedly had access to them, or what statement they allegedly rendered false.  Nor is Plaintiff's claim saved by the allegation that Defendants had access to "key metrics" like the number of active accounts.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (allegations that defendants "closely reviewed the accounting numbers generated ... each quarter (through the use of the Access databases), and that top executives … discussed quarterly inventory numbers" insufficient to establish scienter).[3]

The "core operations" doctrine also does not save the Complaint.  To be sure, "in some unusual circumstances, the core operations inference, without more, may raise the strong inference required by the PSLRA."  *S. Ferry*, 542 F.3d at 785.  But "[a]s a general matter, 'corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud' or other allegations supporting scienter."  *Id.* at 784-85 (quoting *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 534 F.3d 1068, 1087 (9th Cir. 2008)).

Here, the Complaint contains no such "additional allegation of specific information conveyed to management" regarding the purported fraud and that *contradicted* Defendants' public statements.  At most, the Complaint cites a handful of statements showing that they were aware of active card growth metrics and the number of prepaid versus direct-deposit customers.  *See, e.g.*, Opp. at 32-33.  But statements evidencing knowledge about certain customer metrics is a far cry from the particularized allegations establishing knowledge of *contradictory* adverse facts

---

[3] Plaintiff also points to the Individual Defendants' SOX certifications as evidence of scienter.  Opp. at 33.  But as the Motion explains, "'required certifications … add nothing substantial to the scienter calculus.'"  Mot. at 31 (quoting *Zucco*, 552 F.3d at 1003-04).  And the case relied on by Plaintiff, *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089 (9th Cir. 2011), is plainly distinguishable: the plaintiff there pointed to certain corrective changes to its processes that, among other things, "were not simply part of [defendant's] SOX compliance."  *Id.* at 1101.

15

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

that courts have found sufficient to establish scienter under the core operations theory. *Cf. Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004) (strong inference of scienter where defendants made detailed statements demonstrating specific knowledge of adverse facts that contradicted their public statements, including "[w]e know exactly how much we have sold in the last hour around the world").

Finally, Plaintiff cites Defendants' senior positions within the Company as proof that they must have known about the purported false and misleading statements. Per Plaintiff, Defendants "had ultimate responsibility for directing and managing the Company's business operations, and communications to investors," and that therefore, it is "absurd to suggest that [they were] without knowledge" of the purported misstatements. Opp. at 32. But as the Ninth Circuit continues to recognize, allegations that defendants were "hands-on managers who generally understood the company's [financials]" are insufficient to establish scienter. *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).

### 2. Under *Tellabs*' "Holistic" Analysis, Plaintiff Fails to Establish Scienter

As the Motion shows, Plaintiff's scienter allegations not only fail individually, but also in the aggregate, under the holistic analysis *Tellabs* demands. *See* Mot. at 34-35. Green Dot continued to buy back its own shares throughout the course of the purported fraud at allegedly inflated prices. What is more, the Individual Defendants' stock sales, which were consistent with prior trading practices and made pursuant to non-discretionary 10b5-1 trading plans, were small compared to their overall Green Dot holdings. *Id.* at 32-34. And when Green Dot began to struggle, it chose to lower the Company's guidance months before the Class Period ended. *Id.* at 34. As the Motion explains, these factors strongly cut *against* a finding of scienter. *Id.* at 32-35.

16

Plaintiff has no substantive response to the compelling innocent inference arising from the Company's stock buy-back program, the Individual Defendants' stock trades pursuant to 10b5-1 trading plans, and Defendants' early disclosure of adverse facts. Instead, they are left speculating about a hypothetical nefarious motive. *See* Opp. at 34. As Plaintiff would have it, "the Individual Defendants set up a Company stock buy-back program to prop up the stock price temporarily so they could profit from their own insider sales before bailing," or maybe "set up trading plans (which are noticeably missing from Defendants' exhibits) so that they could evade suspicion for their insider sales during the Class Period[.]" *Id.* But in deciding a motion to dismiss, "a court need not accept as true unreasonable inferences [or] unwarranted deductions of fact." *Toubian v. Bos. Sci. Corp.*, 2014 WL 12607702, at *2 (C.D. Cal. Aug. 19, 2014) (internal quotations omitted), which is to say that Plaintiff's rank speculation cannot be used to plead a strong inference of scienter.

Ultimately, Plaintiff seems to believe that under *Tellabs*' holistic analysis, a claim may survive without any specific allegations at all. But for a claim of scienter to be viable, it still must have constituent parts—specific, precise, allegations pertaining to the *specific contradictory* information Defendants purportedly possessed at the time they made the challenged statements. Plaintiff has no such allegations, and thus fails to satisfy the PSLRA's requirements for pleading scienter.

### D.   Green Dot Has Not Waived Its Challenge to The Complaint's—Purported—10(b)(a) and (c) Claims

In a desperate effort to save its Complaint, Plaintiff asserts that the Motion should be denied because the Complaint purportedly avers a distinct cause of action under subsections (a) and (c) of Rule 10b-5, and the Motion failed to specifically move to dismiss that claim. *See* Opp. at 10-11. Plaintiff is wrong on both counts.

As an initial matter, the Complaint does not allege a "scheme" intended to defraud under Rule 10b-5(a) or (c). While the Complaint states that it alleges claims under "Rule 10b-5"—not Rule 10b-5(b) specifically—it does not allege any

17

purported "scheme" to defraud distinct from the alleged misstatements, nor does it allege how such a purported scheme differs (if at all) from the allegedly false and misleading statements at the heart of Plaintiff's Rule 10b-5(b) claim.

In any event, if Plaintiff's reference to "Rule 10b-5" is sufficient to invoke separate Rule 10b-5(a) and (c) claims, so too is Defendants' nearly-identical language in their Motion sufficient to dismiss them. Defendants' Motion made clear that it was moving to dismiss Plaintiff's *entire* "Rule 10b-5" claim. *See* Mot. at i, 13, 15. As such, Defendants likewise moved to dismiss any claims under subsections (a) and (c) of Rule 10b-5.

And such claims fail for the same reasons the subsection (b) claim fails. Indeed, Plaintiff does not—and cannot—explain how, in this case, a separate Rule 10b-5(a) and (c) claim could survive separate and apart from a subsection Rule 10b-5(b) claim. The court in *Kang v. PayPal Holdings, Inc.*, 2022 WL 3155241 (N.D. Cal. Aug. 8, 2022) dismissed all claims under virtually identical circumstances. The court explained that the purported scheme alleged in that case under Rule 10b-5(a) and (c) "consists entirely of (and fails for the same reasons as) the misstatements analyzed" under Rule 10b-5(b). *Id.* at *13. The court further explained that "[j]ust as Plaintiffs have failed to plausibly allege that any of the statements in the complaint were false or misleading, they do not allege any false or misleading conduct . . . [n]or do they allege a strong inference of scienter." *Id.* The same result is warranted here.

## III. CONCLUSION

For these reasons, the Complaint should be dismissed.


Dated: September 16, 2022  Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP


By:    */s/ Alexander K. Talarides*
ALEXANDER K. TALARIDES
Attorneys for Defendants

18