O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: GREEN DOT CORPORATION SECURITIES LITIGATION | Case No. CV 19-10701 DDP (Ex) |
| | ORDER DENYING DEFENDANTS' MOTION TO DISMISS |
| | [Dkt. 86] |

Presently before the court is a motion to dismiss filed by Defendants Green Dot Corporation ("Green Dot"), Steven W. Streit, and Mark Shifke (collectively, "Defendants"). Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following Order.

## I. Background

Defendant Green Dot, a publicly traded corporation, is the world's largest pre-paid debit card company. (Amended Complaint ¶ 16.) Its "primary business" is selling high-fee pre-paid debit card products to low-income customers who often lack traditional bank accounts. (Id. ¶¶ 2, 17.) By 2018, Green Dot was earning over $1 billion per year, largely by focusing on its high-margin pre-paid debit card products. (Id. ¶ 22.) By mid-2017, however,

growth in these profitable "legacy" accounts had begun to slow. (Id. ¶ 29.)

Plaintiffs allege that between May 2018 and November 2019, Defendants mislead investors about declines in Green Dot's legacy pre-paid accounts, understated the important of those accounts, and exaggerated the value of new banking services products. (Id. ¶ 35.) Plaintiffs allege, for example, that Defendants not only omitted information about Green Dot's faltering pre-paid sales, but also conflated legacy pre-paid accounts with newer, less profitable direct deposit and banking services accounts, thus "obscuring account and fee losses". (Id. ¶ 36.) By so doing, Plaintiffs allege, Defendants artificially inflated Green Dot's share price long enough for Defendants Streit and Shifke to sell millions of dollars of Green Dot shares. (Id. ¶ 37.)

Beginning in 2019, however, Defendants began making a series of alleged "corrective disclosures." (Id. ¶ 64.) In one such disclosure, for example, Streit acknowledged that a single user who might have purchased a new pre-paid debit card every pay period would have singlehandedly accounted for six pre-paid Green Dot accounts per quarter, but would represent only a single account after transitioning to Green Dot's newer direct deposit services. (Id. ¶ 66.) In a later disclosure, Defendants acknowledged that they had lost 300,000 legacy accounts. (Id. ¶ 69.) After these and other corrective disclosures, Green Dot's share price fell, declining over 67% between February and November 2019. (Id. ¶¶ 67, 71, 76, 82).

Plaintiffs' Amended Complaint alleges, on behalf of a putative class, securities fraud causes of action for violations of Sections

10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rul 10b-5, 17 C.F.R. § 240.10b-5. Defendants now move to dismiss the Amended Complaint.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Furthermore, under the Private Securities Litigation Reform Act of 1995 (PSLRA), a complaint alleging securities fraud must meet a heightened pleading standard. The PSLRA requires that any securities fraud claim "[s]pecify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. Section 78u-4(b)(1), (b)(2).

Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be

sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## III. Discussion

### A. Puzzle Pleading

Defendants contend first that the Amended Complaint ("AC") is impermissibly "puzzle-pleaded," and should be dismissed on that basis. "In the securities fraud context, the term 'puzzle pleading' refers to a pleading that requires a defendant and the court to 'match up' the statements that form the basis of the plaintiff's claims with the reasons why those statements are misleading." In re Cisco Sys. Inc. Sec. Litig., No. C 11-1568 SBA, 2013 WL 1402788, at *5 (N.D. Cal. Mar. 29, 2013). Puzzle pleadings often include lengthy quotations of defendants' public statements and informational offerings, accompanied by a list of omissions or misstatements that are not connected to any specific representation. See, e.g., Primo v. Pac. Biosciences of California, Inc., 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013); In re Autodesk, Inc. Sec. Litig., 132 F. Supp. 2d 833, 841 (N.D. Cal. 2000). In In re Splash Tech. Holdings, Inc. Sec. Litig., 160

F. Supp. 2d 1059 (N.D. Cal. 2001), for example, seventy-six of the complaint's 124 pages consisted of groupings of many alleged misrepresentations and lengthy quotations of press releases, followed by lists of up to nineteen reasons why the statements were false, without identifying which reason pertained to which statement. In re Splash Tech., 160 F. Supp. 2d at 1073.

The AC here does not suffer from comparable deficiencies. The relevant allegations span approximately thirteen of the AC's approximately thirty-nine substantive pages. (AC pp. 11-24.) Allegedly misleading statements are grouped by date and by subject matter. Paragraph 48, for example, concerns August 2018 statements and omissions regarding Green Dot's legacy pre-paid business. Subparagraphs (a)-(f) recite six four-line quotations from a Green Dot earnings call, including representations that "established product lines . . . are just doing really well," and "material growth [is] being driven for both our established product lines and our new [] programs." (AC ¶¶ 48(a),(c).) Immediately following those statements, paragraph 49 lists four reasons why such statements were misleading, such as that "the growth rate for Green Dot's legacy prepaid cards was shrinking," and that growth in new accounts did not generate fees comparable to those generated by legacy accounts. (AC ¶¶ 49(a),(d).) To be sure, the reasons stated in the AC do not necessarily map directly onto preceding allegations of misleading statements. For example, paragraph 40(e) includes an allegedly misleading statement that Green Dot was not facing any competitive pressure. The true fact alleged at paragraph 41(e), however, has nothing to do with competitive pressure. Rather, paragraph 41(a) alleges that in reality,

competition was forcing Green Dot to change its product mix. Notwithstanding this lack of parallel structure, the connection between allegedly misleading statements and the alleged reasons why those statements were false is reasonably easy to discern. The allegations are sufficiently well-structured to allow Defendants and the court to understand Plaintiffs' claims, and do not rise to the level of puzzle pleading. See In re Apple Inc. Sec. Litig., No. 19-CV-02033-YGR, 2020 WL 2857397, at *8 (N.D. Cal. June 2, 2020).

B. Substantive Allegations

1. Defendants' Request for Judicial Notice

Defendants raise several arguments as to why Plaintiffs' allegations of falsity are deficient. As an initial matter, however, many of Defendants' contentions center on facts outside the Amended Complaint. Defendants ask this Court to take judicial notice of 32 separate exhibits, spanning over 1,100 pages. These exhibits fall into four general categories: (1) Green Dot SEC forms, (2) transcripts of earnings calls, (3) analyst reports, and (4) Shifke and Streit's SEC forms.[1]

---

[1] Although Defendants' Request for Judicial Notice ("RJN") identifies 32 exhibits, strictly speaking, Defendants only ask that the court take judicial notice of three exhibits, consisting of individual Defendants' SEC filings. (RJN at 4-5) Defendants' RJN asks that the court consider the remainder of the exhibits pursuant to the incorporation by reference doctrine. (RJN at 1-4.) Judicial notice and the doctrine of incorporation by reference are, however, distinct concepts. See Khoja, 899 F.3d at 1002. Defendants' motion makes no mention of the incorporation by reference doctrine, let alone any substantive argument why the doctrine permits this Court to consider any particular exhibit at the pleading stage. Instead, Defendants attempt to shoehorn, by way of a chart, hundreds of pages of supposedly incorporated documents into a request for judicial notice. This Court, having already granted Defendants leave to file an overlong brief, will (continued...)

This court can take judicial notice of facts that are not subject to reasonable dispute. Fed. R. Evid. 201. The Ninth Circuit has recognized, however, "a concerning pattern in securities cases" of "exploitation" of judicial notice procedures at the pleading stage. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018). The court acknowledged that securities fraud cases such as this one present "especially significant" risks of "overuse and improper application of" judicial notice. Id. The Khoja court further cautioned, that a district court must "consider-and identify- which fact or facts it is noticing . . . ." Id. at 999. Notwithstanding this admonition, Defendants' Request for Judicial Notice ("RJN") lists, in chart form, dozens of documents spanning hundreds of pages. Although it is clear that Defendants want this Court to take judicial notice of the contents, and not merely the existence, of these documents, Defendants' RJN does not identify any particular facts. This Court cannot, therefore, conduct the analysis required under Rule 201.

In any event, even assuming the RJN had adequately identified specific facts, Defendants concede that, under Khoja, courts should not assume the truth of such facts "if the purpose is to dispute or create a defense to a well-pled fact in a complaint." (Defendants' Reply In Support of RJN at 1) (emphasis omitted). See Khoja, 899

---

[1] (...continued)
not permit Defendants to circumvent even the expanded page limitation by improperly shunting discussion, such as it is, of the incorporation by reference doctrine to a Request for Judicial Notice. Nor will the court consider Defendants' belated and repeated efforts to introduce arguments regarding incorporation by reference for the first time in Defendants' Reply. See, e.g., U.S. ex rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000).

F.3d at 1014. ("Although incorporation by reference generally permits courts to accept the truth of matters asserted in incorporated documents, we reiterate that it is improper to do so only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint."). Defendants contend, however, that Khoja does permit courts to use noticed facts "to create factual disputes with a plaintiff's *conclusory* allegations." Id., quoting In re Eventbrite, Inc. Securities Litigation, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) (emphasis original). This argument is not persuasive. A plaintiff's conclusory allegations are not entitled to the assumption of truth in the first instance. Iqbal, 556 U.S. at 679. It is unclear to this Court, therefore, why it would ever be necessary or appropriate to consider a judicially noticeable fact for the purpose of disputing a conclusory allegation that cannot support a claim for relief anyway.

Accordingly, Defendants' Request for Judicial Notice is denied. The court proceeds to address those of Defendants' arguments that do not depend upon facts outside the four corners fo the amended complaint.

2. Falsity

To state a claim for securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, plaintiffs must plead particularized facts demonstrating "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009). A complaint alleging securities fraud under the Private Securities Litigation

Reform Act of 1995 ("PSLRA") must meet a heightened pleading standard. The PSLRA requires that any securities fraud claim "[s]pecify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. Section 78u-4(b)(1), (b)(2). When analyzing intent, courts must view complaints holistically, and should deny a motion to dismiss if the inference of scienter advanced by plaintiffs is "at least as compelling as any opposing inference one could draw from the facts alleged." Matrixx Initiatives, Inc. v. Siracusano, 141 S. Ct. 1309, 1324 (2011) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007).

Generally, "whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact." Fecht v. Price Co., 70 F.3d 1078, 1081 (9th Cir. 1995). "Only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law." Id. (quoting Durning v. First Boston Corp., 815 F.2d 1265, 1268 (9th Cir.)) (internal quotation marks and alteration omitted). Defendants argue, in part, that "Plaintiff's fraud claim, in reality, is that Defendants' historical statements omitted future trends rather than current facts." (Reply at 6:12-14 (internal quotation marks omitted).) The AC, however, includes numerous allegations of misrepresentations about Green Dot's then-current state of affairs. Such statements included, for example, that Green Dot "continues to

gain traction on nearly all fronts" and that its classic products "continue to do extremely well" (AC ¶¶ 38(a),(c)), that there was a "continuing long-term portfolio mix shift towards higher lifetime value accounts" (AC ¶ 40(a)), that new customers had "a meaningfully higher lifetime value" than legacy customers (AC ¶ 40(b)), that active accounts were growing and setting new records for Green Dot (AC ¶ 40(c)), that Green Dot was "not seeing any competitive pressure" (AC ¶ 40(e)), that new products were "driving the engine to get the fees" (AC ¶ 46), that "established product lines [] are just doing really well," (AC ¶ 48(a)), that the growth in new accounts "continues to be an ongoing tailwind to [] profitability" (AC 48(f)), and so on.

The AC is also replete with allegations that these statements were misleading when made. The AC alleges, for example, that far from continuing to "gain traction," growth in Green Dot's legacy products had already slowed (AC ¶¶ 39(a),(c)), that competition was already forcing Green Dot to shift to a new, less lucrative product mix, (AC ¶¶ 41(a),(b)), and that new, mostly free products were not as profitable as legacy products, (AC ¶¶ 41 (b)-(e)), 43, 47(a)). At this stage of proceedings, therefore, the court cannot agree that Plaintiff's claims are based solely or obviously upon immaterial statements of historical fact, predictions of future performance predicated upon such statements, or other statements that a trier of fact could not find to be misleading.[2] See In re

---

[2] Nor do the allegations recounted above constitute statements of opinion or puffery. See In re Impac Mortg. Holdings, Inc. Sec. Litig., 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) ("[V]ague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under (continued...)

Stac Elecs. Sec. Litig., 89 F.3d 1399, 1406 (9th Cir. 1996) ("[A] company is not required to forecast future events.").

3. Scienter

Lastly, Defendants contend that Plaintiff fails to adequately allege scienter. The court disagrees. As part of a "holistic" review, "a series of less precise allegations [may] be read together to meet the [scienter] requirement." South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008); Matrixx Initiatives, 141 S. Ct. at 1324. As an initial matter, Plaintiff appears to suggest that its "core operations" allegations alone suffice to allege scienter. (Opp. at 32.) The AC alleges that Streit and Shifke "were top executives at the Company and led its day-to-day operations." (AC ¶ 90.) Plaintiff further alleges that these Defendants "monitored and/or oversaw the overall business strategy, which hinged upon knowledge of the growth (or lack thereof) of active accounts. . . ." (Id.) Relatively standard allegations such as these, however, do not, without more, support a stronger inference that Defendants had knowledge of relevant facts than an inference that they did not. South Ferry, 542 F.3d at 784.

---

[2] (...continued)
federal securities laws."). But see In re Quality Sys., Inc. Sec. Litig., 865 F.3d 1130, 1143 (9th Cir. 2017) ("When valuing corporations, investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers. But even general statements of optimism, when taken in context, may form a basis for a securities fraud claim when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly.") (cleaned up).

Indeed, it is "exceedingly rare" for the core operations inference, alone, to suffice under the PSLRA. Id. at 785 n.3.

"Core operations" allegations may give rise to a strong inference of scienter, however, in conjunction with other allegations, particularly those suggesting that corporate manager defendants were exposed or had access to information related to allegedly misleading statements. South Ferry, 542 F.3d at 785-86. Such is the case here. Plaintiff alleges that Streit and Shifke actually received Customer Relationship Management Reports that charted the shift in Green Dot's customer base on a "near-real-time basis." (AC ¶ 29.) The AC also identifies half a dozen other similar reports by name, and alleges that Streit and Shifke had access to those reports. (AC ¶ 30.) Plaintiff further alleges that Streit made certain marketing decisions, loosened Green Dot's fraud management standards in reaction to that data, and acknowledged to investors, "We know what the internal numbers are." (AC ¶¶ 30, 32, 89.) Moreover, Plaintiff alleges that while Green Dot's stock plummeted in value to less than $25 per share as the truth about its business came to light, Streit and Shifke sold millions of dollars of Green Dot shares at average prices of $76.87 and $77.90 per share, respectively, before abruptly leaving the company. (AC ¶¶ 82-83, 97.) Taken as a whole, these allegations support at least as strong an inference of an intent to deceive as any more benign inference.[3]

---

[3] Again, much of Defendants' argument makes reference to materials that, as discussed above, the court has not considered at this stage of proceedings. Nothing in this Order shall be read to suggest that the court takes any position on the merits of any of Plaintiff's allegations.

**IV. Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: March 29, 2024

DEAN D. PREGERSON
United States District Judge