ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
JESSICA T. SHINNEFIELD (234432)
CHRISTOPHER R. KINNON (316850)
MEGAN A. ROSSI (318643)
JOHN M. KELLEY (339965)
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
rjensen@rgrdlaw.com
jshinnefield@rgrdlaw.com
ckinnon@rgrdlaw.com
mrossi@rgrdlaw.com
jkelley@rgrdlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GREEN DOT CORPORATION SECURITIES LITIGATION | Case No. 2:19-cv-10701-DDP (Ex) |
| | <u>CLASS ACTION</u> |
| | DISCOVERY MATTER |
| | JOINT STIPULATION REGARDING PLAINTIFFS' MOTION FOR ENTRY OF STIPULATED PROTECTIVE ORDER AND DEFENDANTS' CROSS-MOTION FOR ENTRY OF STIPULATED PROTECTIVE ORDER |

Date:      November 15, 2024
Time:      9:30 A.M.
Dept:      750

Discovery Cutoff: October 31, 2025
Pretrial Conference: October 5, 2026
Trial: November 3, 2026

4888-5037-1303.v1

# TABLE OF AUTHORITIES

**Page**

I.   INTRODUCTORY STATEMENTS ................................................................... 1

    A.   Plaintiffs' Introductory Statement ........................................................... 1

    B.   Defendants' Introductory Statement ........................................................ 2

II.   THE PARTIES DISPUTE ONE CLAUSE IN OTHERWISE STIPULATED PROTECTIVE ORDER .......................................................... 4

    A.   Plaintiffs' Position ................................................................................... 4

        1.   Statement of Facts............................................................................ 4

        2.   Good Cause Exists to Enter Plaintiffs' Proposed Protective Order ................................................................................ 6

        3.   The Court Should Reject Defendants' Unusual and Unreasonable Expert Disclosure Demand .................................... 6

            a.   Defendants' Proposed Expert Disclosure Limitations Are Overbroad and Impracticable ............... 7

            b.   Defendants' Proposed Expert Disclosure Limitations Are Unnecessary ......................................... 8

            c.   The Expert Disclosure Limitations Prejudice Plaintiffs and Unfairly Advantage Defendants ............... 9

        4.   Conclusion ..................................................................................... 10

    B.   Defendants' Position .............................................................................. 10

        1.   Background and Statement of Facts ............................................. 10

        2.   Argument: Good Cause Exists to Enter Defendants' Proposed Protective Order ........................................................... 12

        3.   Conclusion ..................................................................................... 16

4888-5037-1303.v1

Pursuant to Central District Local Civil Rule 37-2.1, Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund and plaintiff Teamsters Local Union No. 727 Pension Fund (together, "Plaintiffs") hereby respectfully submit this joint stipulation between Plaintiffs and defendants Green Dot Corporation ("Green Dot" or the "Company"), former Chief Executive Officer Steven W. Streit ("Streit"), and former Chief Financial Officer Mark Shifke ("Shifke") (collectively, "Defendants" and together with Plaintiffs, the "Parties") regarding the Parties' cross-motions for entry of a stipulated protective order.

## I. INTRODUCTORY STATEMENTS

### A. Plaintiffs' Introductory Statement

This case concerns Defendants' scheme to mislead investors about Green Dot's faltering business model, which depended upon selling high-fee, prepaid debit cards ("legacy prepaid cards") to lower-income Americans who lack access to personal bank accounts. By 2018, Green Dot's senior insiders, including individual defendants Streit and Shifke, were aware that this "bread and butter" business was in decline. ¶2.[1] Rather than come clean with investors, however, they misled the market and capitalized on their deception through $62 million in insider sales. Among other deceptions facilitating their fraudulent scheme, Defendants manipulated key performance metrics to hide declining sales and profitability in Green Dot's prepaid business, as Green Dot shifted toward digital offerings. Further, Defendants were so desperate to conceal Green Dot's dying prepaid business that Streit halted efforts by the fraud management team to tighten customer identification procedures for prepaid accounts, even though 30%-40% of these accounts had a negative status, such as an unmatched address or name. ¶32. These

---

[1] Unless otherwise noted, all "¶__" or "¶¶__" references are to the Amended Complaint for Violations of the Federal Securities Laws (ECF 83) (the "Complaint"), emphasis is added, and citations are omitted.

- 1 -

4888-5037-1303.v1

loose identification procedures enabled individual customers to have hundreds of prepaid accounts, with at least one having 1,000 separate accounts. *Id.*

Plaintiffs have attempted to negotiate a stipulated protective order with Defendants for months now in order to facilitate Defendant and third-party document productions, but Defendants have refused to agree to standard terms. Instead, they demand a highly unusual provision that would require Plaintiffs to disclose to Defendants their experts prior to the expert disclosure date if the experts either: (i) consult for or are "associated" with any Green Dot competitor (competitor is undefined), ***or are "likely" to consult for or be associated with one in the future***; or (ii) worked in any capacity for Green Dot for any amount of time on or after January 1, 2018. *See* Declaration of Christopher R. Kinnon in Support of Plaintiffs' Motion for Entry of Stipulated Protective Order ("Kinnon Decl."), Ex. A at 3 (the "Expert Disclosure Limitations"), filed concurrently herewith. Defendants' proposed Expert Disclosure Limitations would effectively give them veto power over Plaintiffs' experts. Delay in third-party discovery has resulted from Defendants' unwillingness to abandon this unreasonable term. Accordingly, to avoid any further delay, Plaintiffs ask the Court to enter Plaintiffs' Stipulated Protective Order. *See* Kinnon Decl., Ex. B (Plaintiffs' version of the proposed Stipulated Protective Order).

### B. Defendants' Introductory Statement

As the Supreme Court has made clear, the federal securities laws are not intended to provide insurance against investment losses. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). But that is exactly what Plaintiffs seek.

Green Dot is a fintech company that offers various financial services to consumers, including debit, credit, and prepaid cards, tax refunds, and other services. After going public in 2010, Green Dot was financially successful for several years and its stock price rose accordingly. But in 2019, facing increasing competition from

- 2 -

4888-5037-1303.v1

newer digital and mobile banking companies, Green Dot's overall performance slowed and its stock price fell accordingly.

Plaintiffs allege that the stock price declines were the result of the market learning that the Company had concealed important information about its performance and future prospects. The evidence will show otherwise. Defendants' public disclosures were the product of a thorough and reliable process in which numerous professionals participated, and that resulted in disclosures that were accurate, comprehensive, and accompanied by meaningful cautionary language regarding the future.

All investors know that investing in a company's stock comes with risk. Sometimes business goes well, and sometimes it does not. Plaintiffs here suffered ordinary investment losses, not fraud.

At issue in this motion is the Parties' stipulated protective order. The Parties have worked together to prepare a comprehensive protective order that will govern the production of confidential information in this action, but cannot reach agreement on one point. Specifically, Green Dot seeks inclusion of a provision, Paragraph 12.4, that would preclude Plaintiffs from sharing Green Dot's confidential information with any competitors or former employees that Plaintiffs may retain as experts. Plaintiffs unreasonably have refused to agree to this provision, thus necessitating this motion.

As explained below, Green Dot has the right to preclude its competitors and former employees from gaining access to its confidential information, even if Plaintiffs retain any of those competitors or former employees as experts. Accordingly, Defendants respectfully request that the Court enter the version of the stipulated protective order that Defendants have proposed, which contains Paragraph 12.4 but is otherwise identical to Plaintiffs' proposed stipulated protective order.

- 3 -

4888-5037-1303.v1

## II.    THE PARTIES DISPUTE ONE CLAUSE IN OTHERWISE STIPULATED PROTECTIVE ORDER

Plaintiffs respectfully ask the Court to enter Plaintiffs' proposed Stipulated Protective Order, whereas Defendants respectfully ask the Court to enter Defendants' version of the proposed Stipulated Protective Order.[2]    The Parties' respective positions are set forth below.

### A.    Plaintiffs' Position

#### 1.    Statement of Facts

On April 23, 2024, Plaintiffs sent Defendants a draft protective order.  The Parties subsequently exchanged drafts and met and conferred several times in attempts to negotiate a stipulated protective order.  *See* Kinnon Decl., ¶3.

By August 22, 2024, the Parties had largely agreed to a mutually acceptable protective order, with the primary remaining dispute concerning Defendants' request to limit the standard protective order provision permitting disclosure of materials designated confidential to experts.  *Id.*, ¶6.  Plaintiffs proposed (and propose) keeping the definition of "expert" from the Sample Stipulated Protective Order for the United States District Court for the Central District of California (the "Sample Order") – "a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this Action" – which would permit disclosure of confidentially designated material to experts.  *See id.*, Ex. C, ¶¶2.7, 7.2 (the Sample Order).

---

[2]    A copy of Plaintiffs' proposed Stipulated Protective Order, without the additional clause requested by Defendants, is attached as Exhibit B to the Kinnon Declaration ("Plaintiffs' Stipulated Protective Order").    A copy of Defendants' Proposed Stipulated Protective Order, with the additional clause Plaintiffs oppose included as Paragraph 12.4, is attached as Exhibit 1 to the Declaration of M. Todd Scott in Support of Defendants' Opposition to Plaintiffs' Motion for Entry of Stipulated Protective Order and Cross-Motion for Entry of Stipulated Protective Order ("Scott Decl."), also filed concurrently herewith.

- 4 -

4888-5037-1303.v1

Defendants provided no good reason for deviating from the Sample Order's expert language.  In the intervening period, Plaintiffs served Defendants and third parties document discovery requests.  Kinnon Decl., ¶¶4-5.  To date, **at least three third parties, including Deutsche Bank Securities Inc. ("Deutsche Bank"), Barclays Capital Inc. ("Barclays"), and Canaccord Genuity, LLC ("Canaccord"), have delayed producing documents until the Stipulated Protective Order is complete**. *Id.*, ¶¶7-9; *id.*, Ex. D (correspondence with third parties).

On September 11, 2024, Defendants sent Plaintiffs their proposed Expert Disclosure Limitations:

> A Party (the "Retaining Party") wishing to retain a testifying or consulting expert who is **associated with another Party** (the "Affected Party") **must disclose the identity of the proposed expert** to the Affected Party before providing the proposed expert with any information designated CONFIDENTIAL by the Affected Party under this Protective Order.  The Affected Party can object to the retention by serving a letter pursuant to Local Rule 37-1, in which case the Retaining Party may not provide the proposed expert with any information designated CONFIDENTIAL until the dispute is resolved by agreement or court order.  For purposes of this paragraph, a person is considered to be "associated with" another Party if he or she (i) was a director or employee of the Affected Party on or after January 1, 2018, or (ii) is at the time of the retention in competition with the Affected Party, or reasonably **likely** in the future to be in competition with the Affected Party, whether as an director, owner, employee, or **consultant of a competing company** or otherwise.

Kinnon Decl., ¶10; *id.*, Ex. A at 3.

On September 17, 2024, Plaintiffs advised Defendants they would move the Court to enter Plaintiffs' Stipulated Protective Order without the Expert Disclosure

- 5 -

4888-5037-1303.v1

Limitations that Defendants insisted upon. Kinnon Decl., ¶11. On September 17, 2024, Defendants stated that they would oppose the motion and ask the Court to add the Expert Disclosure Limitations "as a stand-alone Paragraph 12.4." *Id.*, ¶12; *id.*, Ex. A at 1. On September 24, 2024, Plaintiffs proposed adopting the Sample Order, an offer Defendants refused on September 27, 2024. *Id.*, ¶¶13-14; *id.*, Ex. C.

### 2. Good Cause Exists to Enter Plaintiffs' Proposed Protective Order

The party seeking a protective order has the burden of showing that "'good cause'" for the order exists. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Good cause exists here. First, the Parties have agreed to everything but the Expert Disclosure Limitations. Second, without a stipulated protective order, some third parties are unwilling to produce documents to Plaintiffs. Indeed, third parties Deutsche Bank, Canaccord, and Barclays are withholding relevant documents until a protective order is entered. Kinnon Decl., ¶¶7-9; *id.*, Ex. D. Thus, Plaintiffs have demonstrated good cause for the Court to enter Plaintiffs' Stipulated Protective Order.

### 3. The Court Should Reject Defendants' Unusual and Unreasonable Expert Disclosure Demand

Plaintiffs negotiated with Defendants for months in good faith to reach agreement on all the necessary terms for a protective order in this case. *See* Kinnon Decl., Ex. B (Plaintiffs' Stipulated Protective Order). But Defendants are now delaying third-party discovery until and unless Plaintiffs agree to their Expert Disclosure Limitations. Specifically, Defendants seek to preclude Plaintiffs' experts from obtaining any documents Defendants designate confidential without Defendants' prior consent if any Plaintiffs' expert either: (i) consults with or is "associated" with any Green Dot competitor, a term left undefined, ***or is "likely" to consult for or be associated with one in the future***; or (ii) worked in any capacity for Green Dot for any amount of time on or after January 1, 2018. *See* Expert Disclosure Limitations *supra*, §II.A.2; *see also* Kinnon Decl., Ex. A at 3.

- 6 -

Nothing in this case justifies such a drastic departure from the relevant expert provisions in the Court's Sample Order, which is the basis for Plaintiffs' position in Plaintiffs' Stipulated Protective Order.  The Court should enter Plaintiffs' Stipulated Protective Order without the Expert Disclosure Limitations for the three reasons set forth below.  *See Sampson v. City of El Centro*, 2015 WL 11658713, at *4 (S.D. Cal. Aug. 31, 2015) ("'courts are in the best position to prevent both the overly broad use of [protective] orders'").

### a.  Defendants' Proposed Expert Disclosure Limitations Are Overbroad and Impracticable

Protective orders must be narrowly tailored and no broader than necessary. *Hullinger v. Anand*, 2016 WL 7444614, at *4 (C.D. Cal. June 20, 2016).  Plaintiffs' Stipulated Protective Order is narrowly tailored and not overbroad.  Defendants' proposed Expert Disclosure Limitations, however, are impermissibly overbroad, vague, and thus impracticable.

For example, Plaintiffs would have to disclose the name of any expert who is "***likely in the future***" to be "***in competition***" with Green Dot, whether "***as a director, owner, employee, or consultant of a competing company***."  Kinnon Decl., Ex. A at 3.  Requiring Plaintiffs to make such prognostications is impracticable and unwarranted.  And because Defendants do not define "in competition," Plaintiffs would have to disclose any expert working with or consulting for any banking, credit or debit card, or technology business ***or who may do so in the future***.  This expansive competitor language includes virtually any potential experts Plaintiffs might retain and effectively requires Plaintiffs to disclose their expert before he or she is permitted to review documents in this case necessary to establishing liability, "making it impossible for plaintiff[s] to effectively litigate this case." *See Ho v. Marathon Pat. Grp., Inc.*, 2021 WL 10862800, at *4 (C.D. Cal. June 23, 2021) (declining to impose similar limitations because "prohibiting plaintiff from disclosing highly confidential materials to plaintiff's own experts without

- 7 -

authorization from defendant will unfairly restrict plaintiff's ability to work with his experts").  Such overbroad language also invites disputes that will burden the Court.

### b. Defendants' Proposed Expert Disclosure Limitations Are Unnecessary

Defendants bear the burden "of showing that specific prejudice or harm will result" without the Expert Disclosure Limitations. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130-31 (9th Cir. 2003) (listing cases).  Defendants cannot make this requisite good cause showing here because the stale and generic business information at issue in this case is useless to Green Dot's competitors.  Defendants' "generalized, unsupported assertions of unfair advantage" over five-year-old business records fail to explain "'how a competitor would use the information to obtain an unfair advantage,'" let alone support the extreme protections Defendants propose. *Whitecryption Corp. v. Arxan Techs., Inc.*, 2016 WL 7852471, at *2 (N.D. Cal. Mar. 9, 2016); *see also Rivera v. Nibco Inc.*, 2024 WL 3429662, at *4 (E.D. Cal. July 16, 2024) (declining to protect "'stale information that is too old to be presently confidential'").

The courts' model protective orders in this Circuit and District further demonstrate why Defendants' proposed limitations are also unnecessary to protect their routine business records here.  For example, the Sample Order in this District for standard litigation does not limit disclosure to experts. *See* Kinnon Decl., Ex. C. Similarly, the Northern District of California's model orders only limit disclosure to experts in cases concerning patents and trade secrets, not in standard litigation as here. *Id.*, Exs. E-F (model orders).  Indeed, even the Northern District's Model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets does not prevent disclosure to experts who may be consultants to competitors in the future; rather, it limits only those experts "anticipated to become an employee of a Party or of a Party's competitor." *Id.*, Ex. F, ¶2.7.

- 8 -

4888-5037-1303.v1

Thus, Plaintiffs' Stipulated Protective Order (without Defendants' Expert Disclosure Limitations) is more than sufficient to protect the information in this case, which does not involve litigation between competitors or concern patents or trade secrets. *See Tilei v. Cal. Dep't of Corrs. & Rehab.*, 2017 WL 4310755, at *3 (N.D. Cal. Sept. 28, 2017) ("Any vague threats of harm to safety and security are addressed by the fact the information will be produced subject to the protective order already in place . . . ."); *see also Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) ("plaintiffs are not competitors of defendants, so with a stipulated protective order in place, there is virtually no risk that defendants' 'secrets' will be disclosed").

### c.    The Expert Disclosure Limitations Prejudice Plaintiffs and Unfairly Advantage Defendants

Defendants' proposed language would also hamstring Plaintiffs' choice of expert by requiring Plaintiffs to prematurely disclose any expert who has or may in the future work or consult for any party Green Dot asserts competes in one of its industries (banking, credit or debit cards, or technology). This would effectively give Defendants veto power over Plaintiffs' expert selection and provide a preview of Plaintiffs' litigation strategy. For these reasons, courts in this District have rejected similar efforts to limit disclosure to experts. *See Ho*, 2021 WL 10862800, at *4 ("Requiring defendant's authorization to share materials with experts would force plaintiff to disclose to defendant what documents he intends to show his experts as well as the identity of the experts well before the expert disclosure deadline, giving defendant an unfair preview of plaintiff's experts and restricting plaintiff's ability to show his experts relevant information."). And because Plaintiffs have no competitors, these prejudices are entirely one-sided, creating a major advantage for Defendants and a considerable disadvantage for Plaintiffs.

Concerning the Expert Disclosure Limitations' prohibition on hiring former employees as experts, Plaintiffs do not anticipate hiring a former Green Dot employee as an expert. But Plaintiffs understand that the universe of prepaid debit

- 9 -

4888-5037-1303.v1

card experts is likely very small, and Defendants' expansive protections would prevent Plaintiffs from hiring any expert who worked for Green Dot for even one day in any role since 2018. This is especially problematic given the Complaint's allegation that Green Dot grew by acquisition, potentially transforming the entire prepaid debit card business into former Green Dot employees. *See, e.g.*, ¶25 ("[t]o compensate and mask declines in its own legacy prepaid business, Green Dot repeatedly acquired other prepaid card companies [and] was running out of competitors to buy"). For example, if only two such experts exist, Defendants have retained one, and the other worked at Green Dot, then the Expert Disclosure Limitations would unfairly deprive Plaintiffs of a prepaid card expert.

In sum, "permitting experts to access highly confidential materials so long as they agree to be bound by the protective order is sufficient to adequately protect defendant's privacy interests, while allowing plaintiff's experts to access relevant information." *Ho*, 2021 WL 10862800, at \*4.

### 4.    Conclusion

Accordingly, Plaintiffs respectfully request that the Court enter Plaintiffs' Stipulated Protective Order without Defendants' Expert Disclosure Limitations provision.

### B.    Defendants' Position

#### 1.    Background and Statement of Facts

Since the commencement of discovery earlier this year, the Parties have worked in good faith to negotiate three separate agreements that will control discovery in this complex securities fraud case. The Parties have agreed on the terms of a Privilege Log Agreement and an ESI Protocol, and those will be submitted for the Court's approval shortly.

The Parties have also worked together in good faith to negotiate a detailed Stipulated Protective Order to protect confidential information exchanged in discovery. Plaintiffs made the initial proposal, which differed from the sample

- 10 -

4888-5037-1303.v1

protective order on the Court's website.  Scott Decl. ¶ 4 & Ex. 2.  Defendants responded by proposing certain changes, and then several proposed versions were exchanged back-and-forth.

As Plaintiffs state, "[b]y August 22, 2024, the Parties had largely agreed to a mutually acceptable protective order." *Supra* at 4.  At that point, "the primary remaining dispute" concerned the expert clause—one paragraph in a 15-page document.  *Id.*  Defendants' prior proposed iterations of the Stipulated Protective Order contained language addressing their concerns relating to disclosure to competitors and former employees, but they revised that language in a proposal to Plaintiffs on September 11, 2024.  *Id.*  The revised language was as follows:

> A Party (the "Retaining Party") wishing to retain a testifying or consulting expert who is associated with another Party (the "Affected Party") must disclose the identity of the proposed expert to the Affected Party before providing the proposed expert with any information designated CONFIDENTIAL by the Affected Party under this Protective Order.  The Affected Party can object to the retention by serving a letter pursuant to Local Rule 37-1, in which case the Retaining Party may not provide the proposed expert with any information designated CONFIDENTIAL until the dispute is resolved by agreement or court order.  For purposes of this paragraph, a person is considered to be "associated with" another Party if he or she (i) was a director or employee of the Affected Party on or after January 1, 2018, or (ii) is at the time of the retention in competition with the Affected Party, or reasonably likely in the future to be in competition with the Affected Party, whether as an director, owner, employee, or consultant of a competing company or otherwise.

Kinnon Decl., Ex. A.

- 11 -

4888-5037-1303.v1

On September 17, Plaintiffs rejected Defendants' revised language and the parties agreed that they would raise the issue to the Court for resolution, with Plaintiffs preparing the initial portion of this joint stipulation.  Plaintiffs then waited nearly a month before finally doing so on October 15, 2024.

Meanwhile, the Parties had already begun serving discovery requests on each other and on third parties.  Plaintiffs state that some third parties have refused to produce documents until a Protective Order is entered, *supra* at 4-5, but omit that at least ten other third parties have produced documents.  Scott Decl. ¶ 6.  Plaintiffs also fail to note that Defendants themselves agreed to produce confidential documents before entry of the Protective Order, provided that Plaintiffs agree to treat them as though subject to Defendants' proposed version of the Order.  Scott Decl. ¶ 7 & Ex. 4.

### 2.     Argument: Good Cause Exists to Enter Defendants' Proposed Protective Order

The sole issue in dispute is whether it is reasonable to include a clause in the Protective Order restricting disclosure of a party's confidential information to its former employees and competitors.  Contrary to Plaintiffs' claims, there is nothing unusual or unfair about Green Dot's proposed language preventing disclosure of its confidential information to competitors or former employees.

Green Dot's proposed language is simple, reasonable, and narrowly tailored to achieve the protection Green Dot seeks, and to which Green Dot is entitled under applicable law.  Unfortunately, Plaintiffs have refused to agree to include the provision, thus necessitating this motion, even though the provision would not prevent Plaintiffs from hiring any experts they want—it only prevents them from providing Green Dot's confidential information to Green Dot's competitors or former employees.  Indeed, the very fact that Plaintiffs have refused to agree to this basic type of protection suggests that they have already retained, or intend to retain, competitors or former employees of Green Dot with whom they intend to share

- 12 -

Green Dot's confidential business information.  This only underscores the need for the protective language Defendants have proposed in Paragraph 12.4.

Ninth Circuit courts have repeatedly held that a protective order should include language preventing the disclosure of confidential information to a party's anticipated competitors or former employees.  *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, 2023 WL 8281690, at *5 (N.D. Cal. Nov. 30, 2023) ("Retaining former employees of Kaiser or of a competitor (or people who are actively seeking employment from Kaiser or a Kaiser competitor) raises legitimate concerns which cannot be adequately addressed by other provisions of the Protective Order."); *TD Prof'l Servs. v. Truyo Inc.*, 2022 WL 3098985, at *7 (D. Ariz. Aug. 4, 2022) ("The very purpose of protective orders would be in jeopardy, then, if the Court were to allow Plaintiff to employ Defendants' competitors or Plaintiff's closely related associates to access Defendants' highly sensitive and confidential business information."); *Corley v. Google, Inc.*, 2016 WL 3421402, at *2 (N.D. Cal. June 22, 2016) ("This court has repeatedly ruled that it is usually improper to hire an opponent's former employee as an expert because such an expert is substantially likely to inflict unfair prejudices which the former employer cannot realistically discover or guard against.").  This Court should likewise require the Protective Order in this case to shield confidential information from a party's competitors or former employees.

Plaintiffs offer a series of arguments regarding Defendants' proposed expert disclosure limitation, arguing that it is unusual, impractical, unnecessary, and prejudicial.  These arguments are speculative, unsupported, and meritless.[3]

_____

[3]  Plaintiffs also charge that Defendants are delaying discovery because of their "unwillingness to abandon this unreasonable term." *Supra* at 4.  Not so.  Plaintiffs fail to acknowledge that Defendants, as well as several third parties, have already begun producing documents, and that there is more than a year remaining in the fact discovery period. *Supra* at 11; Scheduling Order (ECF No. 118).  Plus, if Plaintiffs were really concerned about getting documents from third parties as quickly as possible, they could have abandoned their own unreasonable refusal to agree to a

- 13 -

4888-5037-1303.v1

*First*, Defendants' proposed limitation is not unusual.  As shown above, Ninth Circuit courts frequently adopt protective orders that limit disclosure of confidential information to a party's former employees or actual or potential competitors.  Further, Plaintiffs note that the Northern District of California's model order "does not prevent disclosure to experts who may be consultants to competitors in the future; rather, it limits only those experts anticipated to become an employee of a Party or of a Party's competitor."  *Supra* at 8 (emphasis added).  But that very language shows that the Northern District adopts Defendants' view that it is appropriate to limit disclosure to competitors, with only a minor difference between employees and consultants of a competitor.  *TVIIM, LLC v. McAfee, Inc.*, 2014 WL 2768641, at *2 (N.D. Cal. June 18, 2014) ("This district clearly requires that an 'expert' under the Protective Order may not be a past or current employee of a Party or of a Party's competitor or anticipated to become an employee of a Party or a Party's competitor." (cleaned up)).  Plaintiffs also complain about Defendants' "drastic departure from the relevant expert provisions in the Court's sample order."  *Supra* at 6.  But both sides have proposed certain deviations from the Court's sample order and, as shown above, Plaintiffs did so first.  *Supra* at 10.[4]

*Second*, Defendants' proposed limitation is not impractical. Plaintiffs complain that they "would have to disclose the name of any expert who is 'likely in the future' to be 'in competition' with Green Dot."  *Supra* at 7 (emphasis omitted).

protection that multiple courts have endorsed. *Infra* at 12-13.  They also could have submitted their portion of this Joint Stipulation sooner than a month after the parties reached an impasse on this very narrow issue. *Supra* at 11.

[4]  Plaintiffs quote *Sampson v. City of El Centro*, 2015 WL 11658713, at *4 (S.D. Cal. Aug. 31, 2015), for the proposition that "'courts are in the best position to prevent both the overly broad use of [protective] orders.'" *Supra* at 6.  But they omit the remainder of the quoted language, which makes clear that there is a countervailing consideration: "courts are in the best position to prevent both the overly broad use of [protective] orders *and the unnecessary denial of confidentiality for information that deserves it*." *Sampson*, 2015 WL 11658713, at *4 (emphasis added).

- 14 -

4888-5037-1303.v1

Plaintiffs' argument rests on a distortion of Defendants' proposed language. Defendants actual proposal would apply only to an expert who "is at the time of the retention in competition with the Affected Party, or *reasonably* likely in the future to be in competition with the Affected Party." *Supra* at 11. Plaintiffs merely need to ask a potential expert, at the time of retention, to confirm that she is not actively competing against Green Dot and has no specific plans to do so. Plaintiffs' interpretation of the "in competition" language is similarly overwrought—it would not apply to "any banking, credit or debit card, or technology business," *supra* at 7, but rather competition with Green Dot. At the end of the day, Green Dot's position is entirely reasonable—confidential information it must disclose only because it has been sued should not be at risk of winding up in the hands of competitors or former employees. That, after all, is the core purpose of protective orders in the first place.

*Third*, Defendants' proposed limitation is not unnecessary. Plaintiffs refer to "the stale and generic business information at issue in this case." *Supra* at 7. But Plaintiffs' first set of discovery requests belie that characterization, as they have requested certain information pertaining to sensitive government investigations and other matters "through the present." Scott Decl., Ex. 3. In any event, the Parties have already agreed that discovery in this case will include information sufficiently sensitive that it warrants the protections of a protective order; the only question now is whether those protections should apply to competitors and former employees.

*Fourth*, Defendants' proposed limitation is not prejudicial. Defendants are not seeking and will not have "veto power" over Plaintiffs' choice of experts. *Supra* at 9. Plaintiffs' position is based on the entirely speculative and unsubstantiated claim that "Plaintiffs understand that the universe of prepaid debit card experts is likely very small," even positing that "only such two such experts exist." *Supra* at 9-10. This is pure conjecture, unsupported by any evidence whatsoever, and thus not properly considered by the Court in resolving this motion under Local Rule 7-6 ("Factual contentions involved in any motion and opposition to motions shall be

- 15 -

4888-5037-1303.v1

presented, heard, and determined upon declarations and other written evidence (including documents, photographs, deposition excerpts, etc.) alone . . . .").  This case involves consumer financial services, not classified weapons systems.  There is no reason to believe that the pool of qualified potential experts is unusually shallow or limited to Green Dot's competitors or former employees.[5]

### 3.    Conclusion

Defendants respectfully request that the Court enter the version of the Stipulated Protective Order attached as Exhibit 1, which includes the disputed Paragraph 12.4.

DATED:  October 24, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
JESSICA T. SHINNEFIELD
CHRISTOPHER R. KINNON
MEGAN A. ROSSI
JOHN M. KELLEY

s/ Christopher R. Kinnon
CHRISTOPHER R. KINNON

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

---

[5]    Plaintiffs cite *Ho v. Marathon Patent Group, Inc.*, 2021 WL 10862800, at *4 (C.D. Cal. June 23, 2021), for the proposition that Defendants are seeking to require Plaintiffs to disclose their experts to Defendants, and that this would "mak[e] it impossible for [Plaintiffs] to effectively litigate this case." *Supra* at 7.  Once again, Plaintiffs omit important context from their quotation.  The full quotation in *Ho* shows why that decision is inapposite here: "*defendant's position that anyone plaintiff would call as an expert is a potential competitor* suggests defendant may well not authorize plaintiff to show highly confidential documents to his experts, making it impossible for plaintiff to effectively litigate this case."  *Ho*, 2021 WL 10862800 at *4 (emphasis added).  Defendants here do not contend that any expert Plaintiffs may retain would be a potential competitor or former employee; to the contrary, Defendants assert that there is no legitimate need for Plaintiffs to retain Green Dot employees or competitors because there are so many other potential experts in this field.  Scott Decl. ¶ 9.

- 16 -

4888-5037-1303.v1

PITTA LLP
VINCENT F. PITTA
120 Broadway, 28th Floor
New York, NY  10271
Telephone:  212/652-3890
212/652-3891 (fax)

Additional Counsel for Plaintiffs

DATED:  October 24, 2024

ORRICK, HERRINGTON
  & SUTCLIFFE LLP
JAMES N. KRAMER
ALEXANDER K. TALARIDES
M. TODD SCOTT


                    s/ M. Todd Scott
                  M. TODD SCOTT

405 Howard Street
San Francisco, CA  94105
Telephone:  415/773-5700
619/773-5759 (fax)
jkramer@orrick.com
atalarides@orrick.com
tscott@orrick.com

Attorneys for Defendants

GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
RICHARD E. GOTTLIEB
EMIL PETROSSIAN
AYAD MATHEWS
10250 Constellation Boulevard, 19th
Floor
Los Angeles, CA  90067
Telephone:  310/553-3000
310/556-2920 (fax)
rgottlieb@glaserweil.com
epetrossian@glaserweil.com
amathews@glaserweil.com

Additional Counsel for Defendant Green
Dot Corporation

- 17 -

4888-5037-1303.v1

## ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4

Pursuant to L.R. 5-4.3.4, I hereby attest that all signatories listed above concurred in this filing.

DATED: October 24, 2024

s/ Christopher R. Kinnon
CHRISTOPHER R. KINNON

- 18 -

4888-5037-1303.v1