ROBBINS GELLER RUDMAN
  & DOWD LLP
JESSICA T. SHINNEFIELD (234432)
CHRISTOPHER R. KINNON (316850)
MEGAN A. ROSSI (318643)
JOHN M. KELLEY (339965)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
jshinnefield@rgrdlaw.com
ckinnon@rgrdlaw.com
mrossi@rgrdlaw.com
jkelley@rgrdlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| In re GREEN DOT CORPORATION SECURITIES LITIGATION | ) ) ) | Case No. 2:19-cv-10701-DDP (Ex) |
|---|---|---|

CLASS ACTION

DISCOVERY MATTER

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL INFORMATION RELATED TO THE FEDERAL RESERVE ORDER TO CEASE AND DESIST

Date:        December 6, 2024
Time:        9:30 A.M.
Dept:        750

Discovery Cutoff: October 31, 2025
Pretrial Conference: October 5, 2026
Trial: November 3, 2026

4889-0544-3318.v1

**TABLE OF CONTENTS**

**Page**

I.  PLAINTIFFS' STATEMENT ................................................................ 1

    A.  Introduction ................................................................................. 1

    B.  Factual Background .................................................................... 4

    C.  Procedural Background................................................................ 5

    D.  Legal Standard .......................................................................... 11

    E.  Argument .................................................................................... 13

        1.  Documents and Information About the Federal Reserve's Order and Examination Are Discoverable .............................. 13

        2.  The Documents and Information Sought Are Relevant and Proportional to Plaintiffs' Case ........................................ 14

        3.  Defendants May Not Assert the Bank Examination Privilege ................................................................................ 15

        4.  The Information Plaintiffs Seek Is Factual and Not Protected by the Bank Examiner's Privilege .......................... 16

        5.  Plaintiffs Properly Seek Documents from Green Dot, Not the Federal Reserve ................................................................ 17

        6.  Defendants Must Log Documents Withheld as Bank Examination Privileged ........................................................... 19

    F.  Conclusion ................................................................................. 21

II. DEFENDANTS' STATEMENT .................................................... 21

    A.  Introduction................................................................................. 21

    B.  Background ................................................................................. 24

        1.  The Federal Reserve's Enforcement Action Against Green Dot................................................................................ 24

        2.  Defendants Are Fulfilling Their Discovery Obligations in Good Faith ............................................................................... 25

        3.  The Federal Reserve Confirms the Attached Documents Are Confidential Supervisory Information............................... 26

    C.  Argument .................................................................................... 27

        1.  The Attached Documents Are Confidential Supervisory Information Protected from Disclosure .................................... 27

4889-0544-3318.v1

**Page**

       2.     Defendants Cannot Produce the Attached Documents
Until the Federal Reserve Has Determined Whether to
Waive Its Privilege ...................................................................29

       3.     Plaintiffs Have Failed to Exhaust Their Administrative
Remedies..................................................................................31

       4.     Plaintiffs Will Not Be Prejudiced By Denial of the
Motion Because the Attached Documents Are Readily
Available to Plaintiffs Through Discovery................................32

       5.     Documents Regarding Green Dot's Tax Subsidary Are
Not Relevant to Plaintiffs' Claims ...........................................33

  D.     Conclusion .......................................................................................35

4889-0544-3318.v1

Pursuant to Central District of California Local Civil Rule 37-2.1, Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund and plaintiff Teamsters Local Union No. 727 Pension Fund (together, "Plaintiffs") hereby respectfully submit this joint stipulation of Plaintiffs and defendants Green Dot Corporation ("Green Dot" or the "Company"), former Chief Executive Officer ("CEO") Steven W. Streit ("Streit"), and former Chief Financial Officer Mark Shifke ("Shifke") (collectively, "Defendants" and together with Plaintiffs, the "Parties"), regarding Plaintiffs' motion to compel information related to the Federal Reserve System's (the "Federal Reserve") July 19, 2024 cease and desist order.

## I.    PLAINTIFFS' STATEMENT

Plaintiffs move to compel Green Dot to: (i) produce Green Dot business documents concerning and produced in connection with the Federal Reserve's July 19, 2024 Order to Cease and Desist and Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as Amended (the "Federal Reserve Order") as it relates to Green Dot's prepaid debit card accounts and its tax business; (ii) provide factual information responsive to Lead Plaintiff's First Set of Interrogatories to Defendant Green Dot Corporation, Interrogatory No. 2 ("Plaintiffs' Interrogatory No. 2") concerning the Federal Reserve Order; and (iii) identify on a privilege log any documents withheld on the basis of the Federal Reserve's purported bank examination privilege.

### A.    Introduction

Plaintiffs move to compel Defendants to produce highly relevant documents and information responsive to Plaintiffs' discovery requests.  In the Federal Reserve Order, the Federal Reserve fined Green Dot ***$44 million*** concerning alleged deficiencies relating to the Company's compliance risk management framework, including its anti-money laundering compliance.  Declaration of Christopher R. Kinnon in Support of Plaintiffs' Motion to Compel Information Related to the Federal

- 1 -

4889-0544-3318.v1

Reserve Order to Cease and Desist (the "Kinnon Decl."), Ex. A (the Federal Reserve Order), filed concurrently herewith. These are the same controls Plaintiffs allege Streit personally loosened to "avoid losing more accounts." ¶32.[1] Plaintiffs therefore seek Green Dot documents from or relating to May 9, 2018 to November 7, 2019, inclusive (the "Class Period") that Green Dot produced to the Federal Reserve pertaining to Categories A, B, and E of the Federal Reserve Order – those "related to the marketing, selling, and servicing of general purpose reloadable ('GPR') prepaid debit card accounts and Green Dot's offering of tax return preparation payment services with a third party." Kinnon Decl., Ex. A at 7-9.

The Federal Reserve Order alleges that Green Dot's specific deceptive acts and practices included keeping "many accounts . . . open" despite "zero-dollar account balance[s]" so that "*consumers continued to incur monthly fees*," "*misrepresenting [Green Dot's] GPR prepaid debit card[s]*," and "*failing to disclose . . . the full cost of their tax refund processing fee*." *Id.* These fee-related consumer allegations correspond with Plaintiffs' allegations in the Complaint that Defendants "misled investors by concealing critical information about Green Dot's declining core prepaid debit card business" and "obfuscated Green Dot's account and fee losses" to "prop[] up Green Dot's stock price long enough [for defendants Streit and Shifke] to sell $62 million dollars of their own Green Dot shares at artificially inflated prices." ¶3.

Thus, the documents and information Plaintiffs seek related to the Federal Reserve Order are highly relevant and proportional to the needs of this case. Indeed, Defendants concede the relevance of Categories A and B of the Federal Reserve Order by acknowledging they "will not withhold such documents" on relevance grounds. Kinnon Decl., Ex. B at 24. Accordingly, Defendants should produce promptly the documents and information Plaintiffs seek in Plaintiffs' First Set of Requests for

---

[1] Unless otherwise noted, all "¶__" or "¶¶__" references are to the Amended Complaint for Violations of the Federal Securities Laws (ECF 83) (the "Complaint"), emphasis is added, and citations are omitted.

- 2 -

4889-0544-3318.v1

Production of Documents and Data to Defendants, Request No. 38 ("Plaintiffs' RFP No. 38"), which seeks "documents produced to or communications with any governmental agency or regulator (public or private), including . . . the Federal Reserve," and Plaintiffs' Interrogatory No. 2, asking Defendants to identify information concerning the Federal Reserve Order, including "all documents received from the Federal Reserve or provided to it." Kinnon Decl., Ex. C at 53; *id.*, Ex. D at 67-68.

Yet Defendants refuse to produce such indisputably relevant and responsive information and documents – even documents they already produced to the Federal Reserve, which can be easily and inexpensively gathered and thus should have been produced to Plaintiffs months ago – until and unless Plaintiffs guess the correct search terms. Kinnon Decl., Exs. B, E, F, H; *id.*, ¶11. Defendants even refuse to provide basic factual information (including whether Defendants provided documents to the Federal Reserve) relating to the Federal Reserve Order, asserting that all related factual information is subject to the bank examination privilege. Kinnon Decl., Exs. G-H. Defendants assert that even Green Dot's internal business records from the Class Period produced to the Federal Reserve are "confidential supervisory information" ("CSI") that Plaintiffs can only obtain from the Federal Reserve. Kinnon Decl., Exs. B, H. Defendants even refuse to identify on a privilege log documents purportedly subject to the bank examination privilege, asserting that is also CSI, thus preventing Plaintiffs from evaluating Defendants' all-encompassing privilege assertions. Kinnon Decl., ¶13.

But as the Federal Reserve explained to Green Dot: "***CSI 'does not include . . . [d]ocuments prepared by or for a supervised financial institution for its own business purposes*** that are in its own possession'"; thus, "***Green Dot's internal business documents that do not contain or reveal the Board's CSI may be produced to the plaintiffs, provided that all CSI has first been redacted***." Kinnon Decl., Ex. B at 28 n.2. Thus, the Federal Reserve has not asserted any privilege over the Green Dot

- 3 -

4889-0544-3318.v1

business records and related factual information Plaintiffs seek.  Moreover, Defendants themselves ***lack standing*** to assert the bank examination privilege, which """"can neither be claimed nor waived by a private party."""" *See Tchrs. Ins. & Annuity Ass'n v. Munro*, 2022 WL 2234972, at *4 (C.D. Cal. May 9, 2022).

For these and the following reasons, Plaintiffs respectfully ask the Court to order Defendants to: produce all factual information and documents responsive to Plaintiffs' Interrogatory No. 2 and Plaintiffs' RFP No. 38, including Green Dot's internal business documents (redacting any of the Federal Reserve's CSI if necessary); and enter on a privilege log anything withheld on the basis of the bank examination privilege.

### B.     Factual Background

This securities fraud class action concerns Defendants' scheme to mislead investors about Green Dot's faltering business model.  Leading up to the Class Period, Green Dot's primary business model was selling high-fee, prepaid debit cards ("legacy prepaid" cards) to lower-income Americans who lack access to a personal bank account.  ¶¶2-3.  By 2018, it was apparent to Green Dot's senior insiders, including defendants Streit and Shifke, that this "bread and butter" business was in decline.  *Id.*  But rather than come clean with investors, Streit and Shifke misled the market and capitalized on their deception through $62 million in insider sales.  *Id.*

Among other methods and means of their fraud, Defendants manipulated key performance metrics to hide declines in Green Dot's prepaid business and decreasing profitability as they shifted toward (what investors did not know were less profitable) digital offerings.  ¶3.  Defendants were so desperate to conceal Green Dot's dying prepaid business that Streit halted efforts by the fraud management team to tighten loose customer identification procedures on an account base that was so rife with fraud that 30%-40% had a negative status, such as an unmatched address or name.  ¶32.  This led to individual customers with hundreds of accounts, one reaching 1,000 accounts.  *Id.*

- 4 -

4889-0544-3318.v1

On July 19, 2024, the Federal Reserve issued a cease and desist order and assessed a $44-million-dollar civil fine concerning, among other things, Green Dot's marketing, selling, and servicing of Green Dot's prepaid and its tax refund processing fees during a period that includes a portion of Plaintiffs' Class Period. Kinnon Decl., Ex. A. The Federal Reserve Order connected Green Dot's deceptive acts and practices to alleged deficiencies with Green Dot's compliance risk management framework, including its anti-money laundering compliance. *Id.* These are the same controls Plaintiffs allege defendant Streit personally loosened to "avoid losing more accounts" by "halt[ing] the efforts of Green Dot's Fraud Management team to tighten loose customer identification procedures," forcing "Green Dot employees to accept an account base that was rife with fraud." ¶32.

## C.    Procedural Background

On July 19, 2024, the same day that the Federal Reserve issued the Federal Reserve Order, Plaintiffs served Green Dot requests for production of documents and data, which sought, among other things, documents produced to or communications with any governmental agency or regulator (public or private), including the Federal Reserve:

REQUEST NO. 38:

From May 1, 2017 to the present, documents produced to or communications with any governmental agency or regulator (public or private), including, but not limited to, the SEC, the DOJ, the NYSE, the Federal Reserve, or the Financial Industry Regulatory Authority, as well as requests from, draft or final consent orders or offers, or other actual or proposed actions or penalties concerning Defendants' public statements, compliance risk management (including consumer compliance and compliance with fraud or anti-money-laundering rules or regulations), and transactions in Green Dot Securities, including, but not limited to, transcripts or notes of testimony or interviews provided, exhibits, or

- 5 -

4889-0544-3318.v1

presentations thereto given by any present or former Green Dot employee or representative.

Kinnon Decl., Ex. C at 53.

On August 19, 2024, Defendants responded to Plaintiffs' RFP No. 38 by objecting on grounds of the purported "bank examination or supervision privilege" but without "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed," as required under Federal Rule of Civil Procedure (the "Rules") 26(b)(5)(ii). Fed. R. Civ. P. 26(b)(5)(ii). Specifically, Defendants responded as follows:

RESPONSE TO REQUEST FOR PRODUCTION NO. 38:

Defendants object to this Request on the grounds that it seeks materials that are neither relevant to any parties' claims or defenses nor proportional to the needs of the case.  Defendants further object to this Request to the extent that it seeks information that is protected from disclosure or discovery by the attorney-client privilege, the attorney work-product doctrine, the bank examination or supervision privilege, or the common-interest privilege, and any other applicable privilege or protection against disclosure.  Defendants further object to this Request as overly broad and unduly burdensome in that it asks for documents without limitation to a reasonable scope.

Subject to and without waiving any of their specific or general objections, Defendants are willing to meet and confer with Plaintiff regarding appropriate limitations to this Request.

Kinnon Decl., Ex. E at 105.

On July 30, 2024, Plaintiffs sought additional discovery from Defendants concerning the Federal Reserve Order, seeking, among other things, information concerning "all documents received from the Federal Reserve or provided to it." Specifically, Plaintiffs' Interrogatory No. 2 asked Defendants to:

- 6 -

4889-0544-3318.v1

<u>INTERROGATORY NO. 2</u>:

Identify each individual at Green Dot who communicated with anyone at the Federal Reserve from May 1, 2017 through the present concerning the Consent Order, including any preliminary, investigative, fact-finding, formal or informal presentations, interviews, submissions, or proffers, and describe the communications as follows: (a) name of the individual; (b) name of the individual with whom they communicated at the Federal Reserve; (c) where, how, and when they communicated with the Federal Reserve, including any testimony given; (d) all topics discussed; (e) all documents received from the Federal Reserve or provided to it; and (f) any conclusions, proposals, negotiations, compliance, oversight, implementations progress reports, penalties, reviews, tasking, or follow-up recommended, considered, or discussed beyond what is written in the Consent Order.

Kinnon Decl., Ex. D at 67-68.

In response to Plaintiffs' Interrogatory No. 2, Defendants conceded that its counsel "communicated via email, telephone, and in-person meetings with the Federal Reserve concerning the Consent Order" and that Green Dot's "[s]enior executives were briefed on such communications and may have participated in one or more external calls with the regulator." Kinnon Decl., Ex. F at 121. But Defendants again objected on the basis of the purported bank examination or supervision privilege, refused to describe "documents received from the Federal Reserve or provided to it," and asserted that "the nature and substance of all such communications are subject to the bank examination privilege and therefore Green Dot is prohibited from disclosing any such information." *Id.* Specifically, Defendants responded as follows:

- 7 -

4889-0544-3318.v1

ANSWER TO INTERROGATORY NO. 2:

Green Dot incorporates by reference herein its Preliminary Statement and General Objections.  Green Dot objects to this Interrogatory to the extent that it seeks information that is protected from disclosure or discovery by the bank examination or supervision privilege, any regulation governing the disclosure of confidential supervisory information, and any other applicable privilege or protection requiring Green Dot to keep information confidential.  Green Dot objects to this Interrogatory, including the identified time period, on the ground that it is overbroad, unduly burdensome, and not proportional to the needs of the case.  Green Dot objects to this Interrogatory on the ground that it calls for the discovery of information that is not relevant to any party's claim or defense or proportional to the needs of the case.

Subject to and without waiving the foregoing objections, Green Dot answers as follows: During the period preceding the disclosure of the Consent Order on July 19, 2024, Green Dot's Legal Department and its outside counsel, initially Davis, Polk & Wardwell, and then, later, Winston & Strawn, communicated via email, telephone, and in-person meetings with the Federal Reserve concerning the Consent Order. Senior executives were briefed on such communications and may have participated in one or more external calls with the regulator.  The nature and substance of all such communications are subject to the bank examination privilege and therefore Green Dot is prohibited from disclosing any such information.  Green Dot further notes that the Consent Order is publicly available, and it asserts no such privilege with respect to the underlying bank practices.

*Id.*

- 8 -

4889-0544-3318.v1

On August 26, 2024, the Parties met and conferred about Defendants' objections to Plaintiffs' RFP No. 38. Kinnon Decl., ¶7. During the meet and confer, Defendants refused to provide any additional information about the Federal Reserve Order. *Id.* Plaintiffs continued to meet and confer with Defendants, by email and telephone, concerning their responses and objections to Plaintiffs' Interrogatory No. 2 and to Plaintiffs' RFP No. 38. *Id.*, ¶¶8-9. Defendants represented on September 6, 2024, that they "intend to supplement our answer to Interrogatory No. 2," but to date they have not done so despite Plaintiffs' follow ups. *Id.*, ¶9; *id.*, Ex. I at 132.

Before bringing this dispute to the Court, Plaintiffs also sought to narrow or resolve the Parties' dispute by seeking additional information about Defendants' objections. Specifically, on August 30, 2024, Plaintiffs sent Defendants a letter requesting factual information concerning the Federal Reserve Order as follows:

> 1. ***Have Defendants produced documents to the Federal Reserve about Green Dot's Card Business***, as that term is defined in Plaintiffs' RFPs? If so, when? Additionally, have Defendants produced any documents relating to the Class Period (May 9, 2018 through November 7, 2019) that existed independent of and/or prior to the Federal Reserve's investigation or inquiry, such as business records and/or communications from the Class Period? If not produced, have Defendants disclosed or shown any similar documents or communications to the Federal Reserve?
>
> 2. ***Have Defendants notified the Federal Reserve of Plaintiffs' requests for documents and information in this case and, if so, when***? As you are likely aware, courts require a party resisting discovery to inform the regulator. *See, e.g.*, *Munro*, 2022 WL 2234972, at *4; *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *6 (S.D.N.Y. Nov. 16, 2016) ("[I]n the event Plaintiffs request materials that Defendants believe may be subject to the privilege, Defendants shall

- 9 -

promptly notify all relevant regulators to ensure that they have a reasonable opportunity to intervene here and be heard.").

3. ***Has the Federal Reserve asserted privilege over any or all of the materials requested by Plaintiffs***, including but not limited to RFP 38 or Interrogatory 2, and if so, which materials?

4. ***Are Defendants withholding any factual documents or information based on the purported bank examiner's privilege***? As you likely know, courts hold that the bank examiner's privilege protects only agency opinions and recommendations, not facts. *See, e.g.*, *Munro*, 2022 WL 2234972, at *4; *accord Sharkey v. J.P. Morgan Chase & Co.*, 2013 WL 2254553, at *1 (S.D.N.Y. May 22, 2013) ("purely factual material falls outside the privilege").

Kinnon Decl., Ex. G at 128.

On September 20, 2024, Defendants responded to Plaintiffs' August 30, 2024 letter without providing answer to these questions. Kinnon Decl., Ex. H. Instead, Defendants asserted the bank examination privilege, invoking an all-encompassing obligation to "maintain the confidentiality of all information and documents that it understands may constitute CSI," but making no effort to identify any possible non-CSI responsive material. *Id.* at 131. Defendants insisted that Plaintiffs' only means of obtaining Green Dot's own business records is by submitting to the Federal Reserve's regulatory procedures set forth in 12 C.F.R. §261.23(b). *Id.*

On October 11, 2024, Defendants sent another letter reiterating their position that all information and communications Plaintiffs seek relating to or produced in connection with the Federal Reserve Order are subject to the bank examination privilege. *See* Kinnon Decl., Ex. B. However, Defendants attached to their October 11, 2024 correspondence a letter from the Federal Reserve that directly controverted Defendants position. As the Federal Reserve's Associate General Counsel explained:

- 10 -

4889-0544-3318.v1

CSI "does not include . . . [d]ocuments prepared by or for a supervised financial institution for its own business purposes that are in its own possession and that do not include [CSI]."    12 C.F.R. §261.2(b)(2)(i).   Pursuant to this regulation, ***portions of Green Dot's internal business documents that do not contain or reveal the Board's CSI may be produced to the plaintiffs, provided that all CSI has first been redacted***."

*Id.* at 28 n.2 (emphasis added).

In view of the Federal Reserve's express guidance (and failure to assert any privilege over specific documents after being notified of Plaintiffs' discovery requests), Plaintiffs asked Defendants to produce all such internal Green Dot business documents and factual information related to the Federal Reserve Order immediately, but Defendants did not.  Kinnon Decl., ¶12; *id.*, Ex. J at 136 (10/11/24 email from Chris Kinnon to Adam Miller requesting that "all non-CSI should be provided or produced without further delay and any CSI redacted").

In a final attempt to avoid bringing this issue before the Court, Plaintiffs met and conferred with Defendants on October 17, 2024, again asking Defendants to produce documents and information in compliance with the Federal Reserve's guidance. Kinnon Decl., ¶13.  Necessitating this motion, Defendants disregarded the Federal Reserve's clear position that the materials Plaintiffs seek are not subject to the bank examination privilege, stating that they would only disclose the non-CSI if Plaintiffs could guess the correct search terms that hit upon these documents.  *Id.* Defendants also told Plaintiffs they would not enter on a privilege log any documents withheld on the purported bank examination privilege.  *Id.*

### D.    Legal Standard

The scope of permissible discovery under the Rules is intentionally and necessarily broad.  Rule 26(b)(1) provides:

- 11 -

4889-0544-3318.v1

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Evidence is relevant if: "(a) it has ***any tendency*** to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevance "'has been construed broadly to encompass any matter that bears on, ***or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case***.'" *Atzin v. Anthem, Inc.*, 2021 WL 3085327, at *2 (C.D. Cal. Jan. 13, 2021).

The Court has broad discretion to decide relevance. *See, e.g.*, *Hall v. Marriott Int'l, Inc.*, 2021 WL 1906464, at *4-*5 (S.D. Cal. May 12, 2021) (citing *Laub v. U.S. DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003)). Proportionality is evaluated in light of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* at *4.

Once the requesting party shows relevance and proportionality, "'[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Id.* at *5 (quoting *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009)). "The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate,

- 12 -

4889-0544-3318.v1

generalized, conclusory, or speculative arguments." *Id.* "Where 'the responding party provides a boilerplate or generalized objection, said "objections are inadequate and tantamount to not making any objection at all."'" *Id.* Under Rule 34, responding parties must produce responsive documents and data within their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Furthermore, the fundamental nature of the Rules requires that they "'be construed and administered to secure the just, speedy, and inexpensive determination of every action.'" *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 643 (C.D. Cal. 2005).

### E.   Argument

#### 1.   Documents and Information About the Federal Reserve's Order and Examination Are Discoverable

As aforementioned, on July 19, 2024, the Federal Reserve issued its Federal Reserve Order and assessed a $44-million-dollar fine to Green Dot concerning, among other things: (i) Green Dot's marketing, selling, and servicing of Green Dot's prepaid debit card accounts from November 2017 through January 2021; (ii) deficiencies relating to Green Dot's compliance risk management framework; and (iii) unfair or deceptive acts related to Green Dot's tax preparation payment services. Kinnon Decl., Ex. A.[2]  The related Green Dot business records and factual information Plaintiffs seek are highly relevant to this case, as Defendants effectively concede, and re-producing these documents imposes no burden on Defendants. Moreover, Defendants lack standing to assert the bank examination privilege, and the Federal Reserve does not (and cannot) assert privilege over the factual information sought here.

---

[2]   The scope of the Federal Reserve's inquiries overlaps with the Class Period. For example, the Complaint alleges a Class Period between May 9, 2018 and November 7, 2019, inclusive.  ¶1.  By comparison, the Federal Reserve Order's prepaid card allegations date from November 2017 through January 2021 (Category A); from June 2019 through December 2020 (Category B); and from January 2017 through December 2022 (Category E).  Kinnon Decl., Ex. A.

- 13 -

4889-0544-3318.v1

### 2.    The Documents and Information Sought Are Relevant and Proportional to Plaintiffs' Case

The Federal Reserve Order alleges that Green Dot's specific deceptive acts and practices – dating from 2017 through 2021 – included keeping "many accounts . . . open" despite "zero-dollar account balances" so that "consumers continued to incur monthly fees," "misrepresenting [Green Dot's] GPR prepaid debit card[s]," and "failing to disclose . . . the full cost of their tax refund processing fee." Kinnon Decl., Ex. A at 7-9. Thus, the subject matter of the Federal Reserve Order directly relates to Plaintiffs' allegations, *inter alia*, that Defendants misled investors during the Class Period by concealing critical information about Green Dot's declining core prepaid debit card business, used its tax business revenue to conceal declining growth in the legacy prepaid card business management framework, and that CEO Streit forced Green Dot employees to turn a blind eye to the Company's risk management procedures in order to stop the bleeding of accounts and prop up its numbers. *E.g.*, ¶¶3, 32-33; *see also* ECF 102 at 2 ("Plaintiffs allege that between May 2018 and November 2019, Defendants mislead investors about declines in Green Dot's legacy pre-paid accounts . . . ."). Indeed, Defendants concede relevance as to two of the three Federal Reserve Order topics at issue (challenging only the tax category) and even say they would produce some of the documents if Plaintiffs can guess the correct search terms. Kinnon Decl., Ex. B at 24; *id.*, ¶13. Thus, Plaintiffs demonstrate that the documents and information sought "'bears on, or . . . reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Atzin*, 2021 WL 3085327, at *2.

The information and documents sought are also proportional to Plaintiffs' case. Plaintiffs allege that investors lost hundreds of millions buying Green Dot stock at prices inflated by Defendants' misconduct (¶2); Defendants, not Plaintiffs, have access to this highly relevant information, creating informational asymmetry; discovery concerning what Green Dot's internal documents show regarding the

- 14 -

4889-0544-3318.v1

Company's effort to inflate its fees through deceptive acts and practices is important to resolving Plaintiffs' allegations that Defendants deliberately misrepresented the true state of its prepaid business to investors; and, any burden in gathering and reproducing to Plaintiffs documents already produced to the Federal Reserve is minimal, especially given the obvious benefit of such discovery to Plaintiffs. *See Hall*, 2021 WL 1906464, at *4 (considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").

The information and documents Plaintiffs seek are therefore highly relevant and proportional to the needs of this case.

### 3. Defendants May Not Assert the Bank Examination Privilege

In resisting Plaintiffs' discovery into the Federal Reserve Order, withholding relevant information and documents from Plaintiffs in discovery, and refusing to provide basic factual information concerning the Federal Reserve's Order and investigation, Defendants improperly invoke the Federal Reserve's purported bank examination privilege. Kinnon Decl., Exs. B, E-F, H.

But the law is clear that private parties, like Defendants here, lack standing to assert the bank examination privilege. *See Munro*, 2022 WL 2234972, at *4 (upholding order compelling production of documents produced to regulators and noting that the privilege "'belongs to the agency and must be asserted by it'" and "'"can neither be claimed nor waived by a private party"'"); *see also United States v. Heine*, 2016 WL 1270907, at *9 (D. Or. Mar. 31, 2016) ("the Bank cannot assert the privilege on behalf of the relevant agencies"). Thus, Defendants' assertion of the privilege is improper and should be disregarded. Furthermore, the Federal Reserve has not claimed privilege over the documents and information Plaintiffs seek. Kinnon Decl., Ex. B (Federal Reserve's October 10, 2024 letter, attached to Defendants'

- 15 -

October 11, 2024 letter).  Instead, the Federal Reserve has told Green Dot expressly that "portions of Green Dot's internal business documents that do not contain or reveal the Board's CSI *may be produced to the plaintiffs*."  *Id.* at 28 n.2.

### 4. The Information Plaintiffs Seek Is Factual and Not Protected by the Bank Examiner's Privilege

Even when properly invoked, the bank examination privilege only protects a bank examiner's CSI, not the factual information and business records Plaintiffs seek. *In re Bankers Tr. Co.*, 61 F.3d 465, 467 (6th Cir. 1995).  As the Federal Reserve correctly told Green Dot, CSI does ***not*** include "'[d]ocuments prepared by or for a supervised financial institution for its own business purposes that are in its own possession and that do not include [CSI].'"  Kinnon Decl., Ex. B at 28 n.2.  Indeed, the regulations themselves define CSI to include "'reports of examination and inspection' as well as 'documents prepared by, on behalf of, or for the use of the [Federal Reserve] Board, [or] a Reserve Bank.'"  *Bankers Tr.*, 61 F.3d at 467 (citing 12 C.F.R. §261.2).[3]  Thus, the factual information and Green Dot business documents at issue here are simply not subject to the bank examination privilege.  *See Bankers Tr.*, 61 F.3d at 471 ("Purely factual material falls outside the privilege, and if relevant, must be produced."); *see also Munro*, 2022 WL 2234972, at *4 (ordering production and noting the bank examination privilege only "'protects agency opinions and recommendations, as well as banks' responses to those opinions and recommendations, from disclosure'"); *Pieterson v. Wells Fargo Bank*, 2018 WL 4039972, at *5 (N.D. Cal. Aug. 8, 2018) ("While there may well be responsive documents that are protected by the bank examiner's privilege, RFP No. 18 does not

---

[3] The Ninth Circuit has not addressed this privilege, but acknowledged the Sixth Circuit's definition in this case and cited *Bankers Tr.* approvingly. *See Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 976 n.5 (9th Cir. 2017); *see also In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 4125618, at *6 (N.D. Cal. Sept. 6, 2024) (citing *Bankers Tr.*, 61 F.3d at 470-71).

- 16 -

4889-0544-3318.v1

exclusively seek documents about complaints that originated with an agency. It is therefore unlikely that all complaint-related documents are privileged.").[4]

Indeed, the documents and factual information Plaintiffs seek concerning the Federal Reserve Order are Green Dot business records and/or communications that were already produced to the Federal Reserve – not agency opinions or the Federal Reserve's CSI. *See* Kinnon Decl., Ex. D at 67-68 (Plaintiffs' Interrogatory No. 2 seeking, *e.g.*, a description of "all documents received from the Federal Reserve or provided to it"); *id.*, Ex. C at 53 (Plaintiffs' RFP No. 38 seeking, *e.g.*, "documents produced to or communications with any governmental agency or regulator (public or private), including . . . the Federal Reserve"). Because none of this information is subject to the bank examination (or any other) privilege, the Court should compel Defendants to produce it promptly to Plaintiffs.[5]

### 5. Plaintiffs Properly Seek Documents from Green Dot, Not the Federal Reserve

Preliminarily, Plaintiffs are concurrently and properly seeking documents and information related to the Federal Reserve Order that may be considered CSI directly from the Federal Reserve.

But Defendants assert that Plaintiffs must seek Green Dot's business documents produced to the Federal Reserve (and related factual information concerning the

---

[4] Unsurprisingly, those courts "have actually examined bank examiners' reports *in camera* and found them to be all or partially factual." *See Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 448 (E.D.N.Y. 1993) (ordering production when plaintiff was seeking only the factual portions of communications and finding the request was not barred by the bank examiner privilege) (citing *Seafirst Corp. v. Jenkins*, 644 F. Supp. 1160, 1163 (W.D. Wash. 1986); *see also Delozier v. First Nat'l Bank of Gatlinburg*, 113 F.R.D. 522, 525 (E.D. Tenn. 1986) (report redacted to leave only factual portions); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 585 (E.D.N.Y. 1979) (same)).

[5] To the extent Defendants argue that these documents are protected by the attorney-client privilege or work product doctrine, they waived any such privilege or protection by producing the documents to the Federal Reserve. *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) ("Qwest will have waived the attorney-client privilege and work-product protection for the Waiver Documents by disclosing them to the SEC and the DOJ").

- 17 -

4889-0544-3318.v1

Federal Reserve Order) from the Federal Reserve.  Kinnon Decl., Ex. H at 130-131 ("Plaintiffs must contact the FRB's General Counsel regarding their requests for documents and information in this case and to exhaust their administrative remedies regarding the same."); *id.*, Ex. B at 24 ("Plaintiffs must first comply with the applicable regulations – in particular, the provision requiring Plaintiffs to make an administrative request to the FRB, 12 C.F.R. §261.23(b)").

Defendants are just wrong.  As a court held in this District in *Munro*, granting a similar motion to compel, the bank examination privilege does not prevent "Petitioner from unilaterally turning over the documents produced to the banking and insurance regulators."  2022 WL 2234972, at *2; *see also* Civil Minutes, *Tchrs. Ins. & Annuity Ass'n v. Munro*, No. 2:22-mc-00015-VAP-EX (C.D. Cal. Mar. 18, 2022), ECF 45. That is because "federal regulations, even when interpreted with the force of law, cannot be enforced if they purport to override the Federal Rules of Civil Procedure." *See, e.g.*, *Soc. Media*, 2024 WL 4125618, at *6 (citing *Bankers Tr.*, 61 F.3d at 470-71) (affirming its conclusion "that the Federal Rules of Civil Procedure govern whether the documents should be produced, not federal regulations").  In *Bankers Tr.*, the Sixth Circuit granted the plaintiff's motion to compel documents directly from the defendant rather than the Federal Reserve:

> We therefore hold that the language in 12 C.F.R. §261.14 that requires a party that is served with a subpoena, order, or other judicial process to continually decline to disclose information or testimony exceeds the congressional delegation of authority and cannot be recognized by this court.  Such a regulation is plainly inconsistent with Rule 34 and cannot be enforced.  To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here. . . .

- 18 -

4889-0544-3318.v1

Moreover, we find no compelling reason to discard the relatively straightforward discovery methods outlined in the Federal Rules of Civil Procedure simply because the Federal Reserve has attempted to mandate a different procedure.

61 F.3d at 470-71.

The *Bankers Tr.* court explained that it would be "illogical . . . to require [plaintiff] to initiate the much more cumbersome procedure of serving a subpoena on the Federal Reserve . . . simply to enable [plaintiff] to obtain the same documents that defendant . . . possesses." *Id.* at 471; *accord Erhart v. BofI Holding, Inc.*, 2018 WL 5994417, at *5 (S.D. Cal. Nov. 15, 2018) ("[T]he Court finds that the parties are under no obligation to abide by the OCC procedures as to the 'non-public' documents specifically enumerated and covered under those regulations."). The same applies here.

Thus, Plaintiffs are entitled to seek documents and information directly from Green Dot concerning the Federal Reserve Order, including documents and factual information Green Dot produced to the Federal Reserve.

### 6.    Defendants Must Log Documents Withheld as Bank Examination Privileged

Because the Court will ultimately adjudicate whether the bank examination privilege applies to withheld documents, Defendants must identify on a privilege log documents they withhold on that basis. If a party "asserts a privilege against producing otherwise responsive information, it must so state as required by Rule 34(b)(2) and provide an appropriate privilege log as required by Rule 26(b)(5)(A)." *Kearns v. Loandepot.com, LLC*, 2023 WL 9375111, at *7 (C.D. Cal. Dec. 4, 2023) (granting plaintiff's motion to compel a privilege log where defendants had refused to admit whether they were even withholding anything on privilege grounds).

Since Plaintiffs propounded their requests for production of documents and requests for interrogatories on July 19 and 30, 2024, Defendants have refused to admit

- 19 -

4889-0544-3318.v1

whether they even produced any documents or information pursuant to the Federal Reserve Order. Kinnon Decl., ¶10; *id.*, Ex. H. Defendants have asserted that the bank examination privilege prevents them from even identifying the material they are withholding. *See* Kinnon Decl., Ex. H at 130 ("what Plaintiffs are now demanding Green Dot to produce is expressly prohibited by law, including not just as to the existence and character of documents that may have been produced, but also with respect to the nature, dates, and content of FRB communications").

But this is clearly wrong, as even a cursory review of Ninth Circuit law reveals. *See Erhart*, 2018 WL 5994417, at *5 ("Thus, the Court ORDERS BofI to produce a privilege log of documents it contends it cannot produce to Erhart because they are covered by the bank examination privilege within **14 days** of this order (if not already done)); *see also Erami v. JPMorgan Chase Bank*, 2016 WL 11520703, at *8 (C.D. Cal. Feb. 23, 2016) ("To the extent defendant withholds documents responsive to request number 10 that it contends are protected by the Bank Examiner's privilege or any other privilege or protection, defendant must provide plaintiff with a sufficiently detailed privilege log to enable plaintiff to evaluate the applicability of the privilege or other protection."); *Pieterson*, 2018 WL 4039972, at *5 ("Even if all responsive documents were privileged, Defendant cannot merely rest on a privilege objection. Instead, it must produce a privilege log, as required by this Court's standing order, so that Plaintiff can assess and potentially challenge the privilege claims. This is particularly important because the bank examiner's privilege is not absolute and may be pierced under some circumstances based on the 'competing interests of the party seeking the documents and those of the government.'").

The Court should thus compel Defendants to log any purported agency opinions and recommendations, including Green Dot's responses to those opinions and recommendations, withheld on grounds of the bank examination privilege so Plaintiffs can evaluate these claims.

- 20 -

4889-0544-3318.v1

## F.    Conclusion

In sum, the documents and information Plaintiffs seek from Defendants concerning the Federal Reserve Order are relevant and proportional to Plaintiffs' allegations, not subject to the bank examination privilege, and discoverable directly from Green Dot.  For these and all the foregoing reasons, the Court should grant Plaintiffs' motion and order Defendants to: (i) produce Green Dot business documents and factual information concerning the Federal Reserve Order as it relates to Green Dot's prepaid debit cards accounts and its tax business (Topics A, B, and E), including documents already produced to the Federal Reserve; (ii) provide adequate responses to Plaintiffs' Interrogatory No. 2 concerning the Federal Reserve Order; and (iii) enter any documents withheld on the basis of the Federal Reserve's purported bank examination privilege on a privilege log.

## II.    DEFENDANTS' STATEMENT

### A.    Introduction

Plaintiffs claim that they are merely seeking Green Dot's Class Period "business records." If that were true, there would be no need for this Motion because Defendants have repeatedly confirmed that they will produce their business records, provided they are relevant and not privileged. In reality, however, Plaintiffs are actually seeking the ***compilation*** of business records that Green Dot provided to its government banking regulator, the Federal Reserve Board ("Federal Reserve"), as part of the Federal Reserve's confidential regulatory activities. That compilation of documents, much like a trial attorney's collection of key documents, would reveal the Federal Reserve's work product and is therefore confidential supervisory information ("CSI"), and likewise subject to the bank examination privilege. Even so, Plaintiffs are not without recourse—there is a well-established mandatory process for litigants to seek the agency's approval for the production of information subject to the examination privilege. Plaintiffs claim to have commenced that process (although they did not provide any evidence of doing so), but filed this Motion before it had run its

- 21 -

4889-0544-3318.v1

course, which means they have failed to exhaust their administrative remedies. As such, and as many courts have held, they are not entitled to judicial relief.

With that background, the Court should deny Plaintiffs' Motion for the following reasons.

*First*, the Motion is unnecessary because Defendants have repeatedly confirmed that they will produce all of their Class Period business records responsive to Plaintiffs' 48 overly broad requests for production ("RFPs"). That process is underway and the potentially responsive documents are currently being gathered and reviewed for production. Plaintiffs falsely claim that Defendants are asserting that the "internal business records from the Class Period [Green Dot] produced to the Federal Reserve are 'confidential supervisory information' ("CSI") that Plaintiffs can only obtain from the Federal Reserve." *Supra* at 3. In fact, and as Plaintiffs well know, Defendants' position is that the ***compilation*** of documents provided to the Federal Reserve is subject to the examination privilege—but the underlying documents, standing alone, are not subject to the examination privilege and ***will be produced*** if otherwise discoverable.

*Second*, Plaintiffs ask the Court to ignore the rules of discovery and disregard both the law concerning confidential supervisory information and the right of the Federal Reserve Board to assert the bank examiner privilege. Under well-established law—and as the Federal Reserve has explicitly communicated to Green Dot in connection with this dispute—all documents submitted by Green Dot to the Federal Reserve concerning examination and enforcement are CSI. The Federal Reserve owns a privilege over its work product, including the materials Plaintiffs are now demanding. Green Dot does not hold the privilege and, therefore, is forbidden by law from waiving or disregarding it.

*Third*, Plaintiffs' Motion is premature and should be denied because Plaintiffs have not exhausted their administrative remedies. Federal law provides a process for litigants to ask the Federal Reserve to waive the examination privilege in appropriate

- 22 -

4889-0544-3318.v1

cases, but requires such litigants to provide the agency with information necessary for it to make an informed decision. *See* 12 C.F.R. § 261.23. Until the Federal Reserve determines that Plaintiffs have a substantial need to access CSI that outweighs the need to maintain confidentiality, Defendants are barred from producing documents "contained in or related to" examination of enforcement by the agency. *See* 5 U.S.C. § 552(b)(8) (exempting CSI from disclosure); 12 C.F.R. § 261.23(a)(1) (CSI is both confidential and privileged). Accordingly, Green Dot is ***barred by federal law*** from producing in discovery the compilations of documents provided to the Federal Reserve in response to its requests because such compilations constitute CSI. *See* 12 C.F.R. § 261.20(a) (CSI is property of the Federal Reserve alone); 12 C.F.R. § 261.21(b) (limiting disclosure of CSI by bank to enumerated personnel within bank); *see also, e.g.*, *In re CitiMortgage HAMP Litig.*, 2012 WL 10450139, at *8 (C.D. Cal. Jun. 7, 2012) (Abrams, J.) ("Plaintiffs here have not yet sought the responsive documents from the OCC, and therefore their request that the Court balance the interests involved in production is premature."); *In re Countrywide Fin. Corp. Sec. Litig.*, 2009 WL 5125089, at *2 (C.D. Cal. Dec. 28, 2009) (Pfaelzer, J.) (holding that, before seeking judicial relief, a litigant "must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the [Federal Reserve] and OCC, pursuant to federal regulations").

*Fourth*, Plaintiffs' Motion is, in effect, a request for Green Dot to produce all of the business records it provided to the Federal Reserve in connection with the Consent Order—***irrespective of whether those documents are responsive to the RFPs***. Granting Plaintiffs' Motion not only would enable them to improperly review the Federal Reserve's confidential investigative work product, but also would give Plaintiffs documents to which they are not entitled under the rules of discovery.

Preventing Plaintiffs from usurping the Federal Reserve's privilege will not cause them any prejudice. In response to the RFPs, Defendants have already agreed to collect documents from ***27*** Green Dot custodians (from the ***43*** Plaintiffs initially

- 23 -

4889-0544-3318.v1

requested), and the initial collection from those custodians captured more than four million documents. Applying Plaintiffs' very broad search terms to that collection yielded ***more than two million potentially responsive documents***, and Plaintiffs have indicated that they may request even more. *See* Declaration of M. Todd Scott ("Scott Decl.") ¶¶ 3-10. These documents may not be produced as quickly as Plaintiffs would prefer, but that is not a valid basis for Plaintiffs to demand access to privileged government work-product and non-responsive documents.

*Fifth*, Plaintiffs' request for documents relating to Green Dot's tax products subsidiary also should be denied on relevance grounds. Plaintiffs' Amended Complaint does not allege misstatements in connection with the tax product subsidiary, and thus Plaintiffs are not entitled to discovery on that subject.

For these reasons, and as set forth in more detail below, Plaintiffs' Motion should be denied.

**B.     Background**

**1.     The Federal Reserve's Enforcement Action Against Green Dot**

The Federal Reserve's regulation of a banking entity like Green Dot consists of both supervision and enforcement. Supervision is an ongoing, iterative process; enforcement occurs when the Federal Reserve identifies a potential problem issue and initiates enforcement proceedings pursuant to the Federal Deposit Insurance Act. 12 U.S.C. § 1818(b). At that point, the Federal Reserve and the bank enter into a formal process to investigate and address the problem issues, including through remedies and penalties, where required.

In May of 2023, the Federal Reserve notified Green Dot of potential problems and initiated an enforcement action that resulted in the July 2024 Consent Order. As part of its investigation, the Federal Reserve and Green Dot exchanged written communications between May 2023 and July 2024. Scott Decl. ¶¶ 11-12. Those written communications are undisputed CSI, which Plaintiffs concede is not

4889-0544-3318.v1

discoverable. *Supra* at 4. In certain instances, however, those written communications from Green Dot attached its business records and other non-public documents (the "Attached Documents"). The Attached Documents, of which there are approximately 40, are what Plaintiffs seek in this Motion.[6]

### 2.    Defendants Are Fulfilling Their Discovery Obligations in Good Faith

Contrary to Plaintiffs' claims above, Defendants have been working diligently and in good faith to fulfill their discovery obligations in this case. To date, Defendants have made six document productions, most recently on November 12, 2024. Defendants made those productions in good faith despite the fact that a Protective Order was not entered in this case until November 4, 2024, and the parties did not finalize and file their stipulated Electronic Discovery Agreement until November 5, 2024. Across the six productions, Defendants produced 242 documents totaling more than 7,600 pages, and completed their response to six of the RFPs. *See* Scott Decl. ¶ 10. These documents represent a small fraction of the potentially discoverable documents in this case, most of which consist of electronically stored information ("ESI").

Regarding the ESI, on September 17, 2024, Plaintiffs proposed that Defendants collect documents spanning a four-year discovery period from 46 individual custodians and run a list of search terms spanning 18 pages. *Id.*, ¶ 4. Plaintiffs later

---

[6] Plaintiffs incorrectly assert that Defendants are wholesale refusing to produce business documents with CSI references. *First*, consistent with the Federal Reserve position, to the extent Defendants' normal discovery processes identify additional internal Green Dot documents generated in the ordinary course referencing either the Attached Documents, relevant examination or enforcement matters, or communications with or requests from the Federal Reserve concerning the Consent Order (*i.e.*, from May 2023 to July 2024), Defendants will redact those portions of the documents and produce the remainder, with redaction logs, in the normal course of discovery. *Second*, if the Federal Reserve permits, Defendants will identify on a privilege log the enforcement-related communications exchanged between the Federal Reserve and Green Dot from May 2023 to July 2024.

- 25 -

"narrowed" their demands by removing three custodians, leaving 43. *Id.*, ¶ 5. Despite the enormous volume of documents already collected, Plaintiffs have indicated they may seek documents from at least another sixteen proposed custodians.

As noted, Defendants have collected ESI from 27 of Plaintiffs' proposed custodians, totaling more than 4.3 million documents. Running Plaintiffs' proposed search terms yielded more than 2.2 million search term hits from the 27 custodians' data alone. *Id.*, ¶¶ 7-8.

### 3.    The Federal Reserve Confirms the Attached Documents Are Confidential Supervisory Information

After Plaintiffs demanded production of the Attached Documents, Green Dot contacted the Federal Reserve and sought its input regarding its privilege. In its response (the "Federal Reserve Letter"), the Federal Reserve made plain that Green Dot is:

> correct that communications between a supervised financial institution such as Green Dot and the Federal Reserve pertaining to supervisory matters such as formal or informal enforcement actions, investigations, consent orders, or other supervisory matters, and internal bank documents that contain or would reveal CSI, among other documents and information, are CSI under the Board's regulations. ***Those regulations define CSI to include information that is or was created <u>or obtained</u>*** in furtherance of the Board's supervisory, investigatory, or enforcement activities, including activities conducted under delegated authority by a Federal Reserve Bank, and includes, by way of example, reports of examination, inspection, and visitation; ***investigative requests for documents*** or other information, and supervisory correspondence or other supervisory communications; as well as any portion of a document

- 26 -

4889-0544-3318.v1

in the possession of a supervised financial institution, that contains or would reveal CSI.

Kinnon Decl., Ex. B at 28 (internal quotation marks and alterations omitted; emphasis added) (citing 12 C.F.R. § 261.2(b)(1)).

This language confirms that the Federal Reserve's investigative document requests, and the documents it "obtained in" response, are CSI and may likewise be privileged. And as the Federal Reserve Letter further confirmed, "Green Dot is **prohibited** by the Board's regulations from producing CSI to [P]laintiffs" in this case. *Id.* at Ex. B. at 27 (emphasis added).

### C. Argument

#### 1. The Attached Documents Are Confidential Supervisory Information Protected from Disclosure

There can be no serious dispute that both the examination communications themselves and, relevant here, the Attached Documents Green Dot provided to the Federal Reserve, are CSI that cannot be disclosed. Pursuant to federal statute, information that is "contained in or **related to examination … reports** prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions" is shielded from disclosure. *See* 5 U.S.C. § 552(b)(8) (emphasis added) (defining categories of information exempt from disclosure); *see also* 12 C.F.R. § 261.15(a)(8) (same). Such information is deemed "confidential supervisory information," which the relevant federal regulations specifically define to include "information that is or was created or **obtained in furtherance of the [Federal Reserve's] … enforcement activities**, including activities conducted by a Federal Reserve Bank (Reserve Bank) … and any information derived from or related to such information." 12 C.F.R. § 261.2(b)(1) (emphasis added). *See also* Scott Decl., Ex. 1 (Fed. Reserve Bank of N.Y., Circular No. 11002, Improper Disclosure of Confidential Supervisory Information by Financial Institutions (Dec. 5, 1997) (non-public enforcement activities deemed confidential)).

- 27 -

4889-0544-3318.v1

Although the Court need not reach the question on this Motion because Plaintiffs have failed to exhaust their administrative remedies, the Attached Documents may likewise be subject to the bank examiner's privilege. Ninth Circuit courts recognize that the bank examiner's privilege "protects agency opinions and recommendations, *as well as banks' responses* to those opinions and recommendations, from disclosure." *Tchrs. Ins. & Annuity Ass'n v. Munro*, 2022 WL 2234972, at *4 (C.D. Cal. May 9, 2022) (emphasis added); *see also United States v. Heine*, 2016 WL 1270907, at *9 (D. Or. Mar. 31, 2016) (same).

Were there any doubt that the Attached Documents fall within the definition of CSI, the Federal Reserve Letter plainly states these "*regulations define CSI to include information that is* … *obtained* in furtherance of the [Federal Reserve] Board's … *enforcement activities*." Kinnon Decl., Ex. B at 28 (internal quotation marks omitted). The Federal Reserve deems CSI both "confidential and privileged." 12 C.F.R. § 261.23(a)(1). Any party other than the Federal Reserve "in possession of confidential supervisory information" is prohibited from disclosing it. *Id.*; *see also* 12 C.F.R. § 261.23(b)(1)(ii).

Plaintiffs argue that the Federal Reserve Letter "directly controvert[s] Defendants' position" because it states that "portions of Green Dot's internal business documents that do not contain or reveal the Board's CSI may be produced to the plaintiffs, provided that all CSI has first been redacted." *Supra* at 11 (quoting Kinnon Decl. Ex. B at 28). But Defendants do not dispute that Plaintiffs have a right to seek discovery of Green Dot's "business documents"—rather, Defendants' position is that Plaintiffs cannot demand production of the Attached Documents *as they were provided to the Federal Reserve*, because in that format they are CSI.

Plaintiffs cite *In re Bankers Trust* for the proposition that "[p]urely factual material falls outside the privilege, and if relevant, must be produced." 61 F.3d 465, 471 (6th Cir. 1995). Defendants agree. The Attached Documents, however, *as a compilation*, are CSI, not "purely factual material," because (i) the compilation would

- 28 -

4889-0544-3318.v1

reveal the Federal Reserve's investigative work product and (ii) the compilation is material submitted to the Federal Reserve "concerning" supervision and enforcement, 5 U.S.C. § 552(b)(8), and is "contained in or related to" the Federal Reserve's examination.  12 C.F.R. § 261.15(a)(8).

### 2. Defendants Cannot Produce the Attached Documents Until the Federal Reserve Has Determined Whether to Waive Its Privilege

Even though the status of the Attached Documents as CSI should resolve the issue in Defendants' favor, Plaintiffs argue that Defendants somehow lack standing to invoke the separate bank examiner privilege that belongs to the Federal Reserve. *Supra* at 16. The argument fails for two reasons:  *First*, standing is irrelevant to the question whether the Attached Documents are CSI, as shown above. *Second,* Plaintiffs' legal proposition is wrong.  As courts have long recognized, regulated banking entities cannot produce any CSI in civil discovery unless and until the party seeking the information submits a request to the regulator and the regulator determines whether to waive its privilege.  *See, e.g.*, *Chase Bank USA, N.A. Check Loan Cont. Litig. v. Chase Bank*, 2011 WL 2078621, at *1 (N.D. Cal. Mar. 17, 2011) ("Unless and until" the regulatory agency either "does not claim a privilege or any claim of privilege … is found to be without merit," a party "***shall not*** be required to produce the subject documents to plaintiffs.") (emphasis added). Even Plaintiffs' primary authority, *In re Bankers Trust*, recognizes that "the Federal Reserve must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion" before a defendant may produce any CSI that is potentially subject to the Federal Reserve's privilege. 61 F.3d at 472.

Plaintiffs nonetheless argue that Defendants are "just wrong" about their obligation to preserve the Federal Reserve's privilege, and cite *Munro* to argue that "the bank examination privilege does not prevent [Defendants] from unilaterally turning over the documents produced to the banking and insurance regulators." *Supra* at 18 (citing *Munro*, 2022 WL 2234972, at * 2). But contrary to Plaintiffs'

- 29 -

characterization of *Munro*, the court did not hold that a regulated entity could simply "unilaterally turn[] over the documents produced to the banking and insurance regulators." 2022 WL 2234972, at * 2. Instead, the regulated entity in that case "reported difficulty with notifying regulators about any potentially privileged document" and, as a result, no regulator had asserted privilege. *Id.*, at *4. By sharp contrast, in this case Green Dot promptly notified the Federal Reserve of the dispute and the regulator responded by specifically directing Green Dot to not produce any CSI. Kinnon Decl., Ex. B at 27.[7]

Further, Plaintiffs never address *Munro's* holding that the bank examiners' privilege "can neither be claimed ***nor waived*** by a private party." *Munro*, 2022 WL 2234972, at *4 (emphasis added). By demanding that Green Dot produce documents subject to the examination privilege, Plaintiffs asked Green Dot to essentially waive the Federal Reserve's privilege. This Green Dot cannot do. Fed. R. Civ. P. 26(b)(1) (limiting the scope of discovery to "nonprivileged matter"). The privilege belongs to the Federal Reserve, and only the Federal Reserve can decide whether to exercise it or waive it.

Instead, as explained in another case Plaintiffs cite, the proper procedure is that when "Plaintiffs request materials that Defendants believe may be subject to the privilege, Defendants shall promptly notify all relevant regulators to ensure that they

---

[7] Plaintiffs' citation to *United States v. Heine* is even more inapt. Plaintiffs cite it for the proposition that "the Bank cannot assert the privilege on behalf of the relevant agencies." 2016 WL 1270907, at *9 (cited *supra* at 16). But Plaintiffs fail to acknowledge that the regulator had participated in the litigation and ***expressly declined*** to assert the bank examiner's privilege. *Id.* at *9-10 ("The FDIC did not refuse to produce responsive documents based on the bank examiner's privilege, although the FDIC did require that its production be subject to a protective order entered by the Court that provides, among other things, that disclosure shall not constitute a waiver of any privileges. In addition, counsel for the FDIC was present at the March 30, 2016 hearing on the Bank's motion to quash. Counsel for the FDIC did not assert the bank examiner's privilege with regard to any of the Subpoena's requests for production from the Bank.").

- 30 -

have a reasonable opportunity to intervene here and be heard." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *6 (S.D.N.Y. Nov. 16, 2016) (cited *supra* at 10). That is exactly what Green Dot did here.

### 3. Plaintiffs Have Failed to Exhaust Their Administrative Remedies

As Plaintiffs' own declaration exhibit confirms, applicable regulations establish that the burden is on the party seeking CSI to request it from the regulator. *See* 12 C.F.R. § 261.23(b)(2). The regulations require the requesting party to provide certain information to the regulatory agency, in this case the Federal Reserve, showing "[t]he relevance of the confidential supervisory information to the issues or matters raised by the litigation," and "[t]he reason why the information sought, or equivalent information adequate to the needs of the case, cannot be obtained from any other source." *Id.* Then, "[a]rmed with this information, the [Federal Reserve] can make a reasoned determination whether to permit use of CSI in a particular case, subject to conditions and limitations if necessary to protect confidentiality or, alternatively, to assert privilege." Kinnon Decl., Ex. B at 28.

Courts routinely enforce the plain language of these regulations to hold that litigants cannot obtain CSI without first seeking regulatory waiver. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Allied World Nat'l Ins. Co.*, 2024 WL 4416981, at *6 (D.D.C. Sept. 30, 2024) (denying motion to compel documents subject to the bank examination privilege and containing CSI because the party seeking the records did not follow the administrative process established by the agency); *In re B of I Holding, Inc. Sec. Litig.*, 2022 WL 507663, at *1 (S.D. Cal. Feb. 18, 2022) ("Because it is the OCC and not the Bank who holds the privilege, it was then incumbent upon plaintiff to request that the OCC waive the privilege as to any protected documents."); *In re Countrywide*, 2009 WL 5125089 at *2 ("Plaintiffs must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the [Federal Reserve] and OCC, pursuant to federal regulations."). *In re CitiMortgage, Inc., Home*

- 31 -

*Affordable Modification Program ("HAMP") Litig.*, 2013 WL 12484094, at \*3 (C.D. Cal. Jan. 31, 2013) ("The better approach is to give the agencies a chance to assert any privilege before seeking relief from the Court.").

Plaintiffs effectively concede the applicability of these regulations by admitting that they have recently contacted the Federal Reserve to seek a waiver. But that process apparently has not run its course, which is to say that Plaintiffs have not exhausted their administrative remedies, and as such their Motion is at best premature.

### 4. Plaintiffs Will Not Be Prejudiced By Denial of the Motion Because the Attached Documents Are Readily Available to Plaintiffs Through Discovery

Although Plaintiffs are required to seek the Federal Reserve's waiver in order to gain access to CSI, that does not shield the individual documents within the Attached Documents compilation from discovery. Any document generated in the ordinary course of business that Green Dot produced to the Federal Reserve exists in two distinct forms—as both an individual document, and as part of the compilation(s) provided to the Federal Reserve. Put simply, every document may be discoverable in the first form, but not in the second (absent waiver of the privilege).

The situation is much like one involving an attorney's compilation of key documents—each individual document in the compilation is fully discoverable, but the compilation as whole is not because it would tend to reveal the attorney's mental impressions. *See, e.g.*, *Sporck v. Peil*, 759 F.2d 312, 316 (3rd Cir. 1985). The same is true here. The underlying business documents are fully discoverable (assuming all other requirements are met) whether or not they were later provided to the Federal Reserve, but the ***compilation as such*** is not discoverable because that would intrude on the agency's confidential bank supervisory activities.

Plaintiffs ignore and obfuscate this critical distinction. They claim that Defendants are trying to shield the underlying documents from discovery, but ***Defendants have never taken that position and do not take it now***. In fact, as the Federal Reserve Letter makes clear, those same underlying documents can be

- 32 -

4889-0544-3318.v1

produced in the form in which Green Dot possesses them—as stand-alone business documents—because doing so would not reveal CSI. In other words, whether any Green Dot document is discoverable must be determined without reference to whether or not it was provided to the Federal Reserve.

Plaintiffs further accuse Defendants of gamesmanship, claiming that they "stat[ed] that they would only disclose the non-CSI if Plaintiffs could guess the correct search terms that hit upon these documents." *Supra* at 12. This is an absurd mischaracterization of Defendants' position, which is simply that the documents provided to the Federal Reserve will be produced if determined to be discoverable based on search terms or any other valid method of identifying discoverable information, which methods do not include consideration of whether the documents were requested by or obtained by the Federal Reserve.[8]

The Court should not permit Plaintiffs to trample on the well-recognized and well-justified need to keep bank regulatory activity confidential simply so that Plaintiffs can accelerate the document discovery process. The request for an order directing Defendants to produce the compilations of documents provided to the Federal Reserve should be rejected.

### 5.    Documents Regarding Green Dot's Tax Subsidiary Are Not Relevant to Plaintiffs' Claims

The Consent Order describes five categories of alleged misconduct by Green Dot. For purposes of this Motion, the parties appear to agree that documents relating to Categories A and B are relevant to this dispute, and are therefore discoverable, and that information relating to Categories C and D is not relevant to this dispute, and therefore not discoverable. That leaves Category E, which concerns Green Dot's tax subsidiary "failing to disclose clearly and conspicuously to the major tax preparer's customers the full cost of their tax refund processing fee." Kinnon Decl., Ex. A at 8.

---

[8] In any case, since Plaintiffs' search terms hit on more than two million documents, it is a safe bet that they guessed correctly.

- 33 -

4889-0544-3318.v1

The omission to adequately disclose fees for a separate tax preparation business has nothing to do with the allegations of the Amended Complaint, which does not allege that Defendants made any misstatement or omission about the tax preparation business. Rather, as paragraphs 2-3 of the Amended Complaint explain, Plaintiffs' allegations concern purported misstatements about Green Dot's prepaid debit cards, and the Company's shifting "product mix" from prepaid cards to direct deposit and digital banking:

> Green Dot's primary business is selling high-fee, prepaid debit cards ("legacy prepaid" cards) to lower-income Americans who lack access to a personal bank account. By 2018, it was apparent to Green Dot's senior insiders that sales of the Company's "bread and butter" legacy prepaid cards were faltering. . . . Defendants' fraudulent scheme and wrongful course of business was designed to and did defraud investors as they repeatedly made misleading statements concerning the value of Green Dot's prepaid customers and business, the scope of the decline in its prepaid business, and the effect of and reason for its shift to digital and direct deposit accounts.

ECF No. 83 ¶¶ 2-3.

In fact, Green Dot's tax preparation subsidiary is mentioned only once in the entire Amended Complaint, in paragraph 33:

> Seasonal bumps from Green Dot's tax business and the last gasps of growth from prior acquisitions had allowed Defendants to conceal declining growth in the legacy prepaid card business in the short term, but Defendants knew this mirage could not last.

*Id.* ¶ 33.

The Amended Complaint makes no allegations whatsoever that Green Dot made any misstatements or omissions about the tax subsidiary's business or engaged in any misconduct within the tax subsidiary's business. And even the lone passing

- 34 -

4889-0544-3318.v1

reference to the tax business in paragraph 33 was really about the prepaid card business.

Thus, Plaintiffs' own allegations demonstrate that there is no need for discovery into the tax business itself or the Federal Reserve's enforcement action related thereto. The issue raised in the Consent Order—whether the tax business's consumer fee disclosures were sufficiently conspicuous—does not have any bearing on the actual issues Plaintiffs have raised relating to the completely separate prepaid card business. The issue is irrelevant and Plaintiffs' effort to force Green Dot to spend time and money providing discovery into this topic—on top of the millions of documents it has already collected on the actual issues in the case—is just an attempt to gain tactical leverage, not necessary information within the scope of discovery. Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant to any party's claim or defense and proportional to the needs of the case").

Accordingly, Plaintiffs' request for discovery on tax business enforcement matter should be rejected as both irrelevant and out of proportion to the needs of the case. *See, e.g.*, *Woodall v. Walt Disney Co.*, 2022 WL 1103736, at \*6 (C.D. Cal. Apr. 13, 2022) ("Discovery is a means to an end: learning relevant facts, documents, and witnesses so that a party is not ambushed by surprise information. It is not meant to be what it often has become: an expensive, time-consuming litigation within the litigation." (quoting *Procaps S.A. v. Patheon Inc.*, 2013 WL 4773433, at \*6 (S.D. Fla. Sept. 4, 2013)).

### D.    Conclusion

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion be denied.

DATED:  November 19, 2024                    ROBBINS GELLER RUDMAN
                                                                              & DOWD LLP
                                                                         JESSICA T. SHINNEFIELD
                                                                         CHRISTOPHER R. KINNON
                                                                         MEGAN A. ROSSI
                                                                         JOHN M. KELLEY

- 35 -

4889-0544-3318.v1

s/ Christopher R. Kinnon
CHRISTOPHER R. KINNON

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

PITTA LLP
VINCENT F. PITTA
120 Broadway, 28th Floor
New York, NY  10271
Telephone: 212/652-3890
212/652-3891 (fax)

Additional Counsel for Plaintiffs

DATED:  November 19, 2024

ORRICK, HERRINGTON
 & SUTCLIFFE LLP
JAMES N. KRAMER
ALEXANDER K. TALARIDES
M. TODD SCOTT


s/ M. Todd Scott
M. TODD SCOTT

405 Howard Street
San Francisco, CA  94105
Telephone:  415/773-5700
619/773-5759 (fax)
jkramer@orrick.com
atalarides@orrick.com
tscott@orrick.com

Attorneys for Defendants

- 36 -

4889-0544-3318.v1

GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
RICHARD E. GOTTLIEB
EMIL PETROSSIAN
AYAD MATHEWS
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA  90067
Telephone:  310/553-3000
310/556-2920 (fax)
rgottlieb@glaserweil.com
epetrossian@glaserweil.com
amathews@glaserweil.com

Additional Counsel for Defendant Green Dot Corporation

- 37 -

4889-0544-3318.v1

**ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4**

Pursuant to L.R. 5-4.3.4, I hereby attest that all signatories listed above concurred in this filing.

DATED:  November 19, 2024

s/ Christopher R. Kinnon<br>
CHRISTOPHER R. KINNON

- 38 -