# EXHIBIT C

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE (181542)
RACHEL L. JENSEN (211456)
JESSICA T. SHINNEFIELD (234432)
CHRISTOPHER R. KINNON (316850)
MEGAN A. ROSSI (318643)
JOHN M. KELLEY (339965)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com
rjensen@rgrdlaw.com
jshinnefield@rgrdlaw.com
ckinnon@rgrdlaw.com
mrossi@rgrdlaw.com
jkelley@rgrdlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| In re GREEN DOT CORPORATION SECURITIES LITIGATION | ) ) ) | Case No. 2:19-cv-10701-DDP (Ex) CLASS ACTION |
|---|---|---|
| | | PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND DATA TO DEFENDANTS |

4873-8255-3549.v1

EXHIBIT C
31

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund and plaintiff Teamsters Local Union No. 727 Pension Fund (collectively, "Plaintiffs") request that defendants Green Dot Corporation and its former executives Steven W. Streit and Mark Shifke (collectively, "Defendants") produce the requested documents, as defined below, no later than 30 days from the date of service hereof, or at such other time and place as the parties mutually agree.

Defendants are required to produce for inspection any and all requested documents and data that are in their actual or constructive possession, custody, or control, or in the actual or constructive possession, custody, or control of their officers, employees, agents, representatives, or attorneys.  Defendants shall produce documents as they are kept in the usual course of business or shall organize and label the documents to correspond with the categories in the request.  Such production shall be made in accordance with the "DEFINITIONS," "INSTRUCTIONS," and "FORM OF PRODUCTION" set forth below.

## I.    DEFINITIONS

1.    "All" shall include the term "each" and vice-versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

2.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

3.    "Account Services" refers to revenues and expenses derived from Green Dot's deposit account programs during the Relevant Period, such as prepaid cards, debit cards, consumer and small business checking accounts, secured credit cards, payroll debit cards, and gift cards.  These deposit account programs are marketed under several of the Company's leading consumer brand names and under the brand names of the Company's "Banking as a Service," or "BaaS," partners.

- 1 -

EXHIBIT C
32

4. The "Action" refers to the above-captioned lawsuit.

5. "Active Cards" refers to any general purpose reloadable prepaid debit card (or "GPR card"), prepaid card, or checking account in Green Dot's portfolio that had a purchase, reload, or ATM withdrawal transaction during a given quarter in the Relevant Period.

6. "Active Accounts" refers to any bank account within Green Dot's Account Services segment during a given quarter in the Relevant Period. This includes general purpose reloadable prepaid card accounts, demand deposit or "checking" accounts, and credit card accounts in Green Dot's portfolio that had a purchase, deposit, or ATM withdrawal transaction during the applicable quarter.

7. "BaaS" refers to products and services concerning Green Dot's "Banking as a Service" platform, providing financial services and related products to companies and businesses during the Relevant Period, including, but not limited to, debit and payroll cards, embedded financial and money movement services, tax products, mobile banking, and any similar Green Dot product or services that Green Dot's partners use to provide or facilitate banking and payments.

8. "Board of Directors" refers to Green Dot's Board of Directors and any committees or subcommittees thereof, including any ad hoc or special committees.

9. "Class Period" means the currently alleged class period of May 9, 2018 through November 7, 2019, inclusive.

10. "Communication" refers to any transmittal of information, including, but not limited to, words, numbers, and pictures, by any means of transmission, including, but not limited to, speech, writing, audio, video, documents (as defined below), or electronically stored information (as defined below), or other media of any kind. The term "communication" also includes, but is not limited to, all inquiries, discussions, conversations, correspondence, negotiations, agreements, presentations, understandings, meetings, notices, requests, responses, demands, complaints, press, publicity, or trade releases.

- 2 -

4873-8255-3549.v1

EXHIBIT C
33

11.    "Company" or "Green Dot" refers to Green Dot Corporation; any of its direct or indirect subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, and successors; all of its present and former officers, directors, employees, members of the Board of Directors, agents, accountants, attorneys, and advisors; and all other persons acting or purporting to act on its behalf.

12.    "Complaint" refers to the First Amended Complaint for Violations of the Federal Securities Laws filed in this Action, ECF 83.

13.    "Concern" or "concerning" means relating to, referring to, reflecting upon, describing, evidencing, or constituting.

14.    "Correspondence" means any letter, memorandum, note, email, facsimile, text message, instant message, internet message board posting, social media post or message, or any other writing containing a communication.

15.    "Defendants" refers to Green Dot and its former executives Steven W. Streit and Mark Shifke.

16.    "Documents" means all documents and data responsive to a particular request and is intended to have the broadest possible meaning under Fed. R. Civ. P. 34(a), including, but not limited to, electronically stored information ("ESI," as defined below), electronic or computerized data compilations, communications (as defined above), contracts, correspondence (as defined above), memoranda, invoices, records, presentations, summaries or audio or video recordings of conversations or interviews or meetings, photographs, press releases, handwritten or any other notes, and work papers.  A draft of a non-identical copy of any document is a separate document within the meaning of this term.

17.    "DOJ" refers to the U.S. Department of Justice and any of its direct or indirect subsidiaries, agencies, divisions, or affiliates (foreign or domestic), predecessors, successors, present and former officers, directors, employees, agents, accountants, and advisors, and all other persons acting or purporting to act on its behalf.

- 3 -

EXHIBIT C
34

18.    "Electronically stored information" or "ESI" includes, but is not limited to, all items covered by Fed. R. Civ. P. 34(a)(1)(A) and includes all information or data that is generated, received, processed, transmitted, or stored electronically, including metadata (*e.g.*, author, recipient, file creation date, file modification date, file name, file path, etc.), regardless of the media or whether it is in the original format in which it was created.

19.    "Federal Reserve" refers to the United States' central banking system known as the Federal Reserve System created by the Federal Reserve Act, including in its regulatory and supervisory capacities.

20.    "GPR card" refers to general purpose reloadable prepaid debit cards.

21.    "Green Dot's Card Business" refers to any and all of Green Dot's GPR or prepaid debit cards , products, or services (including, but not limited to, Green Dot-branded or co-branded products, products sold at Walmart, CVS, Rite Aid, Walgreens, Dollar Tree, Meijer, Boost Mobile, AT&T, and Citibank); BaaS cards, products, or services (including, but not limited to, Uber, TurboTax, Pay Card, and Simply Paid); direct deposit cards, products, or services; and any other similar card, product, or service that could be or was included at any time as an Active Account or Active Card during the Relevant Period, any product or service on the "Green Dot Network," and any digital, online, or app-based card, product, or service.

22.    "Green Dot Network" refers to Green Dot's network of more than 90,000 retail distribution locations for its products and services in the United States.

23.    "Green Dot Security" or "Green Dot Securities" refers to any note, stock, bond, debenture, transferable share, evidence of indebtedness, or any other security issued by Green Dot or any derivative of the foregoing, including, but not limited to, any put or call option.

24.    "Identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address, present or last known email address, and when referring to a natural person, additionally, the present or last known

- 4 -

EXHIBIT C
35

place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the information of that person.

25.    "Identify," with respect to documents, means to give, to the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

26.    "Including" is used to emphasize the type of document requested and does not limit the request in any way.

27.    "Individual Defendants" refers to Steven W. Streit ("Streit") and Mark Shifke ("Shifke").

28.    "Meeting" refers to the contemporaneous presence of any natural person (including by telephone or electronic connection) for any purpose, whether or not such presence was prearranged or by chance and whether or not the meeting was formal or informal or occurred in connection with some other activity.  The term "meeting" also includes presentations.

29.    "Person" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

30.    "Prepaid cards" refers to any Green Dot prepaid debit cards, including, but not limited to, GPR cards, branded, and co-branded products.

31.    "Policies" means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly.

32.    "Refer," "relate," "referring," or "relating" means all documents which explicitly or implicitly, in whole or in part, were received in conjunction with or were generated as a result of, the subject matter of the request, including, but not limited to, all documents which reflect, record, memorialize, discuss, describe, compare,

- 5 -

consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

33.    "SEC" refers to the U.S. Securities and Exchange Commission and any of its direct or indirect subsidiaries, agencies, divisions, or affiliates (foreign or domestic), predecessors, successors, present and former officers, directors, employees, agents, accountants, and advisors, and all other persons acting or purporting to act on its behalf.

34.    "You" or "your" refers, respectively, to each Defendant to whom these requests are directed, including, but not limited to, any subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, joint ventures, present and former officers, directors, employees, representatives, agents, and all other persons acting or purporting to act on behalf of the foregoing.

35.    The use of the singular form of any word includes the plural and vice versa.

## II.    INSTRUCTIONS

1.    In responding to these requests, all documents shall be produced in accordance with Fed. R. Civ. P. 26 and 34.

2.    In responding to these requests, you shall produce all responsive documents (including those stored electronically) that are in your possession, custody, or control or in the possession, custody, or control of your predecessors, successors, parents, subsidiaries, divisions, or affiliates or any of your respective directors, executives, officers, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document, including, but not limited to, any documents produced to you by third parties.

3.    All unique documents responsive to the requests herein that are stored on your electronic backup tapes or hard drives shall be produced.

- 6 -

EXHIBIT C
37

4.    Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and copying by Plaintiffs original documents as they are kept in the usual course of business in their original folders, binders, covers, and containers, or facsimiles thereof, or you shall organize and label the documents to correspond to the categories in these requests.  If the original document is not in your custody, then you are to produce an identical copy thereof, as well as any non-identical copies that differ for any reason (including, but not limited to, the making of notes thereon) from the original or from the other copies produced.  Plaintiffs reserve the right to request inspection of the original documents, including those stored electronically, as they are kept in the usual course of business.

5.    These requests are specifically intended to encompass any ESI maintained in any form of computer memory or on computer hard drives, diskettes, or "cloud" or virtual storage, including any word processing or spreadsheet programs or electronic mail systems, or in any form of electronic or computer-related storage, whether or not you currently have "hard copy" printouts of the same.  To the extent that there are documents containing information relevant to these requests that are currently in electronic format, the documents are to be produced in their native format.

6.    If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, you shall furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

(a)    the privilege being asserted;

(b)    the person on whose behalf the privilege is asserted;

(c)    a precise statement of the facts upon which the claim is based;

(d)    a description of the purported privileged document including: its nature (*e.g.*, letter, memorandum, tape, etc.); the date it was prepared; the date the document bears; the date the document was sent; the date the document was received; the name of the person who prepared the document; the name(s) of the person(s) who

- 7 -

EXHIBIT C
38

received the document; the name of each person to whom it was sent or was intended to be sent, including all addresses and all recipients of copies; the subject matter of the document; and

(e)    a statement as to whom each identified person represented or purported to represent at all relevant times.

7.    If a portion of any document responsive to these requests is withheld under claim of privilege, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.  Whenever a document is not produced in full or is produced in redacted form, so indicate on the document, identifying those portions of the document which are not being produced.  For each document that is redacted, in addition to providing the redacted version of the document, the parties should furnish logs which comply with the legal requirements under federal law, but at a minimum will include the following information:

(a)    the Begin Production ID of the document;

(b)    the End Production ID of the document;

(c)    a description of why privilege is being asserted over the document; and

(d)    which privilege is asserted.

8.    A privilege log of documents withheld or redacted as set forth in paragraphs 6-7 above shall be provided within 30 days of the production of documents responsive to these requests.

9.    You are to produce each document requested herein in its entirety, without deletion or excision (except as redacted for privilege), regardless of whether you consider the entire document to be relevant or responsive to the requests.  All documents must be produced with all attachments and enclosures, and in their original folder, binder, or other cover or container, regardless of whether you consider the entire document to be relevant or responsive to the request.  Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box,

- 8 -

EXHIBIT C
39

notebook, or other cover or container, a copy of the label of such cover or container must be attached to the document or group of documents.

10.    If a document responsive to these requests was at any time in your possession, custody, or control but is no longer available for production, as to each document state the following information:

(a)    whether the document is missing or lost;

(b)    whether it has been destroyed;

(c)    whether the document has been transferred or delivered to another person, and, if so, at whose request;

(d)    whether the document has been otherwise disposed of; and

(e)    a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

11.    If in responding to these requests you claim any ambiguity in interpreting a document Request or a Definition or Instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to produce responsive documents, but there shall be set forth as part of your response the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

12.    All requests shall be deemed continuing and ongoing, and you are required to supplement your responses with new or newly discovered material in accordance with Fed. R. Civ. P. 26(e).

**III.    FORM OF PRODUCTION OF HARD-COPY DOCUMENTS**

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document

- 9 -

EXHIBIT C
40

contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as *single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image*. Multi-page OCR text for each document should also be provided.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**IV.    FORM OF PRODUCTION OF ESI**

1.    Format: Except where otherwise noted in this section, electronically stored information ("ESI") should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images.  Spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes reflected in the metadata should be produced in native format.  Short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.) will be produced in RSMF with all available metadata and attachments.  Except for messages that contain privileged content, the complete communication will be produced, separated into 24-hour increments.  To the extent RSMF cannot be provided, the parties shall meet and confer on the appropriate metadata fields and format of production.  If an original document being produced in image format contains color, the document should be produced as *single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image*.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  TIFFs/JPGs should show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document.  For example, TIFFs/JPGs of email messages should include the BCC line, and documents should display comments and hidden content.

2.    Format – Native Files: If a document is produced in RSMF or in native format, a single-page, Bates stamped image slip sheet stating the document has been

- 10 -

EXHIBIT C
41

produced in native format should also be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.    De-Duplication: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4.    Technology-Assisted Review: Predictive coding/technology-assisted review or artificial intelligence shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

- 11 -

4873-8255-3549.v1

EXHIBIT C
42

5.      Metadata: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.  For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the parties should meet and confer as to the appropriate metadata fields to be produced.

6.      Embedded Objects: Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field.  Logos need not be extracted as separate documents as long as they are displayed in the parent document.

7.      Attachments: If any part of an email or its attachments is responsive, the entire email and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege.  The parties should meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege.  The attachments should be produced sequentially after the parent email.  The parties shall use their best efforts to collect and produce point-in-time documents that are links in documents and emails, including, but not limited to, Google G Suite, Microsoft 365, etc.  Documents extracted from links shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship.  If documents cannot be extracted from links at the time of collection, the parties should promptly meet and confer to discuss alternative methods of collection and production.

8.      Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

9.      Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and

- 12 -

4873-8255-3549.v1

EXHIBIT C
43

confer regarding methods of production.  Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

10.    Exception Report: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type, and the file location.

11.    Encryption: To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

12.    Redactions: If documents that the parties have agreed to produce in native format need to be redacted, the parties should implement redactions while ensuring that proper formatting and usability are maintained.  Spreadsheets requiring redaction should be redacted using native redaction software and produced in native format.

## V.    RELEVANT TIME PERIOD

The requests herein refer to the time period from May 1, 2017 through March 25, 2020 (the "Relevant Period"), unless otherwise specifically indicated.  Responsive documents and data shall include all those that relate to the Relevant Period, even if generated, modified, communicated, or published outside of the Relevant Period.

## VI.    DOCUMENT REQUESTS

REQUEST NO. 1:

Corporate organizational charts, employee directories, or other documents sufficient to identify or describe Green Dot's organization and corporate structure (including divisions, business segments, operating units, departments, and the relationship between and among them) during the Class Period, including, but not limited to, directories and organizational charts sufficient to identify by name, title, or reporting relationship:

- 13 -

EXHIBIT C
44

(a)     direct reports (including "dotted line" reporting relationships) to Defendants Streit and Shifke;

(b)     individuals that comprised Green Dot's senior management;

(c)     members of Green Dot's Board of Directors and committees and subcommittees thereof; and

(d)     members of the Financial Planning & Analysis ("FP&A") and sales groups.

REQUEST NO. 2:

Documents memorializing Green Dot Board of Directors meetings (whether formal or informal and including any committee or subcommittee thereof), including board packages, financial closing packages, meeting minutes, exhibits, agendas, memoranda, resolutions (whether adopted or discussed), notes (whether prepared prior to, during or subsequent to Board of Directors meetings), reports, and presentations, as well as documents and communications concerning any action of the Green Dot Board of Directors by written consent.

REQUEST NO. 3:

Documents concerning any communications, press releases, conference calls, presentations, telephone or Zoom/Teams calls, or meetings with Green Dot shareholders, securities analysts, financial analysts, investors, financial publications, news reporters, journalists, or investment bankers concerning Green Dot, including, but not limited to, any scripts, slide decks, transcripts, recordings, tapes, or videos prepared in connection with, or as a result of, such meetings, including, but not limited to:

(a)     May 9, 2018 1Q18 earnings call;

(b)     May 16, 2018 JPMorgan Conference;

(c)     August 8, 2018 2Q18 earnings call;

(d)     November 7, 2018 3Q18 earnings call;

(e)     February 20, 2019 4Q18 earnings call;

- 14 -

EXHIBIT C
45

(f)      May 8, 2019 1Q19 earnings call;

(g)      August 7, 2019 2Q19 earnings call; and

(h)      November 7, 2019 3Q19 earnings call.

REQUEST NO. 4:

Documents prepared for, distributed at, or memorializing any Green Dot meetings, whether internal or external, involving the Individual Defendants or any other officer or executive of Green Dot, during which any aspect of Green Dot's Card Business was a topic or otherwise discussed, including, but not limited to, weekly financial planning and town-hall meetings.

REQUEST NO. 5:

Documents and communications concerning the retention, engagement, or consultation with any third party, including public relations consultants, disclosure consultants, or legal advisors in connection with Green Dot's public disclosures during the Class Period or any aspect of Green Dot's Card Business.

REQUEST NO. 6:

Documents sufficient to show indemnification agreements between Green Dot and either of the Individual Defendants, including agreements to assume liability, agreements to assume the defense, non-disparagement agreements, and joint defense agreements made by Defendants, any insurer for Defendants, or any other entities that may be financially affected by the claims in this Action.

REQUEST NO. 7:

Documents from 2015 to the present concerning the sales, revenue, or growth of Green Dot's Card Business, including, but not limited to:

(a)      related metrics on a per-product, per-unit, per-service, categorical, and aggregate basis, including, but not limited to, demand, charges and fees, purchase volume, interest income, churn, reloading, total card loaded funds (or "GDV"), card usage and engagement, total addressable market, margins, market share, average sales prices, inventory, cash transfers, economics and profitability, Active Accounts, Active

- 15 -

EXHIBIT C
46

Cards, number of customers, incentives, promotions, discounts, and all other related metrics or key performance indicators;

(b)    retailers, sales channels, and partners; and

(c)    charts, projections, comparisons, analyses, evaluations, trends, or changes concerning any of the above on a comparative, per-product, per-unit, per-service, categorical, and aggregate basis, and any related trends or changes, including, but not limited to, related periodic (annual, quarterly, monthly, weekly, or daily) reports, dashboard reports, or other summary compilations or databases.

REQUEST NO. 8:

Documents from 2015 to the present concerning Green Dot's Card Business customer data by product or service, card type, and sales outlet, including: the lifetime value of customers; any differences in the relative, comparative, or absolute value of customers (*e.g.*, prepaid customers compared to other customers); the relative, comparative, or absolute value of long-term and short-term customers; how many and what kinds of products or services customers used; any customer overlap between products or services; any customer demographic information or profiles ; any analyses of Green Dot's "best customers," high-value or low-value customers, repeat customers, "unbanked" or "underbanked" customers; and any related analyses, trends, or changes in any of the above.

REQUEST NO. 9:

Documents concerning Green Dot's Card Business competitors, regarding any actual, potential, or forecasted loss of sales, growth, customers, business volume, or market share from such competitors, including, but not limited to, other prepaid cards, neo-banks (*e.g.*, Chime, Varo, N26, Aspiration), Square, PayPal, Venmo, and any other similar companies or products and services.

REQUEST NO. 10:

Documents from 2015 to the present concerning Green Dot's Active Accounts and Active Cards key metrics, including, but not limited to, composition, definition, or

- 16 -

4873-8255-3549.v1

EXHIBIT C
47

calculation; products, categories, services, or cards included as Active Accounts or Active Cards; and any changes or trends over time.

REQUEST NO. 11:

Documents concerning Green Dot's discontinuance of its "Number of Active Cards" "Key Metric" and commencement of its "Number of Active Accounts" "Key Metric" in 2018, including:

(a) recommendations and analysis concerning the change;

(b) proposal(s) and alternative(s) considered;

(c) reason(s) for adopting the change;

(d) meetings and communications about the same; and

(e) documents sufficient to show all persons involved in the proposals and decision-making process.

REQUEST NO. 12:

Documents from 2015 through 2019 concerning Green Dot's actual or potential acquisition(s) of competitor(s) to Green Dot's Card Business, and the actual or potential impact of acquisition(s) on Green Dot's sales, revenue, growth, and customer acquisition.

REQUEST NO. 13:

Documents concerning Green Dot's purported shift to digital and direct deposit products from prepaid cards, including, but not limited to, "[t]he continuing long-term portfolio mix shift towards higher lifetime value accounts" (*see* ¶40(a) in the Complaint).

REQUEST NO. 14:

Documents concerning new or lost shelf facings (*i.e.*, retail outlets or doors) for Green Dot's prepaid cards, including circumstances and reasons for the same – for example, as described in ¶38(b) of the Complaint.

- 17 -

4873-8255-3549.v1

EXHIBIT C
48

REQUEST NO. 15:

Documents concerning Green Dot's February 20, 2019 disclosure of a slowdown in "quarterly active accounts" as described in ¶¶65-66 of the Complaint.

REQUEST NO. 16:

Documents concerning Green Dot's May 8, 2019 disclosure that it had experienced a loss of 300,000 prepaid accounts and would have to expend $60 million to market Company cards as described in ¶69 of the Complaint.

REQUEST NO. 17:

Documents concerning Green Dot's August 7, 2019 disclosure that it lost "500,000 active prepaid accounts," that the Company's Active Accounts had declined, and slashing the Company's fiscal 2019 outlook as described in ¶¶72-74 of the Complaint.

REQUEST NO. 18:

Documents concerning Green Dot's November 7, 2019 disclosure that the declines in Green Dot's prepaid accounts would continue through the first half of 2020 as described in ¶¶77-79 of the Complaint.

REQUEST NO. 19:

Documents concerning Green Dot's Customer Relationship Management Report, BIA dashboard, Financial Key Metric Report, Cohort Report, Tableau Report, Revenue Pacing Report, and Consolidated Activity Reports ("CARs"), and any other reports or databases related to Green Dot's Card Business, and Streit and Shifke's (or their assistants' or direct reports') access to and knowledge of same.

REQUEST NO. 20:

Documents concerning Streit's decision to end a marketing campaign in August 2018 after concluding it was not attracting enough new customers to overcome significant drop-offs in new customer acquisitions, as described in ¶30 of the Complaint, including all meetings and communications concerning same.

- 18 -

4873-8255-3549.v1

EXHIBIT C
49

REQUEST NO. 21:

Documents concerning or memorializing any actual, proposed, or otherwise considered changes to Green Dot's customer-identification, risk-management, or anti-money-laundering procedures or protocols, including, but not limited to, involving Green Dot's Fraud Management team, Streit, Shifke, or other Green Dot executives, including the allegations in ¶32 of the Complaint.

REQUEST NO. 22:

Documents concerning negative status accounts (including, but not limited to, unmatched address or name, excessive disputes, or negative balance) at Green Dot – for example, as described in ¶32 of the Complaint.

REQUEST NO. 23:

Documents concerning Green Dot customers with numerous accounts – for example, as described in ¶32 of the Complaint, including internal and external reports and communications concerning the same.

REQUEST NO. 24:

Documents concerning any seasonal revenue, sales, or growth variations or changes in Green Dot's tax business and any impact on Green Dot's Card Business, Active Accounts, or Active Cards, including, but not limited to, Green Dot's Turbo Tax cards.

REQUEST NO. 25:

Documents concerning Green Dot's actual or projected financial condition, performance, or prospects, including documents (and retailer or sales-outlet-specific information) relating to budgets, business plans, marketing plans, merchandise or sales plans and forecasts, performance targets, strategic goals, profitability analyses, financial statements, reviews, or similar economic or financial comparisons.

REQUEST NO. 26:

Documents concerning statements made by Defendants in SEC filings and press releases or made during conference or industry calls with analysts or investors during

- 19 -

EXHIBIT C
50

the Class Period, including, but not limited to, statements concerning fiscal 2018 and 2019's actual or anticipated sales, revenue, growth, gross or profit margins, customers, products, product health or demand, value of customers or products, or product sales mix (*e.g.*, the shift to digital products), and documents forming the basis and/or contradicting those statements.

REQUEST NO. 27:

Documents concerning meeting, exceeding, or missing market estimates or Company guidance of Green Dot's revenue, earnings per share, growth, or common stock price.

REQUEST NO. 28:

Documents concerning the price or value of Green Dot stock (*i.e.*, GDOT on the New York Stock Exchange ("NYSE")), including analysis of or the reasons that the market price of Green Dot stock increased or decreased on a particular date or over time.

REQUEST NO. 29:

Documents concerning the Individual Defendants' Class Period transactions in Green Dot Securities, including any 10b5-1 trading plans and all amendments thereto, including the circumstances and reasons for the same.

REQUEST NO. 30:

Documents and communications concerning the Individual Defendants' compensation from Green Dot for or during calendar years 2017 through 2019, including, but not limited to, documents related to:

(a)     any severance packages, termination agreements, or parachute payments;

(b)     payments made pursuant to §280G of the Internal Revenue Code, 26 U.S.C. §280G;

(c)     all bonuses or other compensation policies, terms, and agreements;

(d)     any performance reviews;

- 20 -

EXHIBIT C
51

(e)    the benchmarking of salaries against peer groups; and

(f)    all payments, loans, or taxable benefits received from Green Dot.

REQUEST NO. 31:

Documents and communications regarding Green Dot's share price, market capitalization, number of shareholders, volume of shares traded, or the value of any Green Dot Security.

REQUEST NO. 32:

Documents concerning any affirmative defense you have raised or anticipate raising in this litigation.

REQUEST NO. 33:

Documents concerning Green Dot's Class Period public filings with the SEC, including Sarbanes-Oxley certifications.

REQUEST NO. 34:

Documents concerning the Company's policies, procedures and practices relating to: (i) sales; (ii)  revenue; (iii) fraud prevention; (iv) internal controls; (v) public or corporate disclosures; (vi) insider trading; (vii) code of business conduct and ethics; and (viii) the retention or destruction of documents, including the retention or destruction of ESI; and documents concerning the Company's compliance with or violation of any such policies or procedures.

REQUEST NO. 35:

Documents relating to executive departures (whether planned or unplanned), including Streit, Shifke, Brett Narlinger, and Daniel Henry.

REQUEST NO. 36:

Documents concerning the decision to promote Daniel Henry to the role of CEO and President, and his promotion, as announced by the Company on March 25, 2020, and any interim or acting CEO or President before then.

- 21 -

4873-8255-3549.v1

EXHIBIT C
52

REQUEST NO. 37:

Documents concerning or communications with, by, among, or between Ernst & Young, the Public Accounting Oversight Board, and the American Institute of Certified Public Accountants, including, but not limited to, transcripts of testimony, exhibits, or presentations thereto given by any Green Dot employee (including, without limitation, any former employee of Green Dot).

REQUEST NO. 38:

From May 1, 2017 to the present, documents produced to or communications with any governmental agency or regulator (public or private), including, but not limited to, the SEC, the DOJ, the NYSE, the Federal Reserve, or the Financial Industry Regulatory Authority, as well as requests from, draft or final consent orders or offers, or other actual or proposed actions or penalties concerning Defendants' public statements, compliance risk management (including consumer compliance and compliance with fraud or anti-money-laundering rules or regulations), and transactions in Green Dot Securities, including, but not limited to, transcripts or notes of testimony or interviews provided, exhibits, or presentations thereto given by any present or former Green Dot employee or representative.

REQUEST NO. 39:

Documents concerning Plaintiffs, Plaintiffs' counsel, and this Action.

REQUEST NO. 40:

Calendars, date books, appointment books, and telephone logs reflecting Green Dot-related activities maintained by or for each of the Individual Defendants and each current or former Green Dot employee or other person identified as a potential defense witness in Defendants' Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST NO. 41:

Documents sufficient to identify all personal and business phone numbers, email addresses, social media aliases or screen names or handles, of each Individual

- 22 -

4873-8255-3549.v1

EXHIBIT C
53

Defendant, their personal or executive assistants, and for each current or former Green Dot employee identified in Defendants' Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST NO. 42:

Documents and communications regarding the employment or severance agreement(s) of each of the Individual Defendants and each current or former Green Dot employee identified in Defendants' Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST NO. 43:

A current résumé or curriculum vitae for each of the Individual Defendants and each current or former Green Dot employee identified in Defendants' Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST NO. 44:

Documents identified in your Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST NO. 45:

Documents received from any third party subpoenaed in this Action.

REQUEST NO. 46:

To the extent not captured by the above requests, documents you know to be relevant to this Action.  This request is made without regard to the Relevant Period.

REQUEST NO. 47:

All analyst reports concerning Green Dot, and documents regarding coverage of Green Dot by securities analysts or the news media.

4873-8255-3549.v1

EXHIBIT C
54

REQUEST NO. 48:

Documents concerning any internal inquiry, audit, or formal or informal investigation concerning Green Dot's Card Business or of the Individual Defendants.

DATED: July 19, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE
RACHEL L. JENSEN
JESSICA T. SHINNEFIELD
CHRISTOPHER R. KINNON
MEGAN A. ROSSI
JOHN M. KELLEY

_____

CHRISTOPHER R. KINNON

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

PITTA LLP
VINCENT F. PITTA
120 Broadway, 28th Floor
New York, NY  10271
Telephone: 212/652-3890
212/652-3891 (fax)

Additional Counsel for Plaintiffs

- 24 -

4873-8255-3549.v1

EXHIBIT C
55

## TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001  (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003  (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001  (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008  (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | eMail, Attachment, Scanned Doc, eFile, Chat/Text | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. |
| MEETING START TIME | HH:MM | Start time of calendar entry. |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry. |
| MEETING END TIME | HH:MM | End time of calendar entry. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business.  This field should be populated for both email and e-files. |
| FILEPATH-DUP | i.e.  /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business.  This field should be populated for both email and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author or owner of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item.  An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item.  An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Slack, WhatsApp, Teams, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document.  The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in.  **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding Bates numbers.  **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc.  If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1]For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

EXHIBIT C
56

**DECLARATION OF SERVICE BY EMAIL**

I, CHRISTOPHER R. KINNON, not a party to the within action, hereby declare that on July 19, 2024, I served the attached PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND DATA TO DEFENDANTS on the parties in the within action by email addressed as follows:

**COUNSEL FOR PLAINTIFFS:**

| NAME | FIRM | EMAIL |
|---|---|---|
| Jason A. Forge<br>Rachel L. Jensen<br>Jessica T. Shinnefield<br>Christopher R. Kinnon<br>Megan A. Rossi<br>John M. Kelley | Robbins Geller Rudman & Dowd LLP<br>655 West Broadway<br>Suite 1900<br>San Diego, CA  92101 | jforge@rgrdlaw.com<br>rjensen@rgrdlaw.com<br>jshinnefield@rgrdlaw.com<br>ckinnon@rgrdlaw.com<br>mrossi@rgrdlaw.com<br>jkelley@rgrdlaw.com |
| Vincent F. Pitta | Pitta LLP<br>120 Broadway, 28th Floor<br>New York, NY  10271 | vpitta@pittalaw.com |

**COUNSEL FOR DEFENDANTS:**

| NAME | FIRM | EMAIL |
|---|---|---|
| James M. Kramer<br>Alexander K. Talarides<br>M. Todd Scott | Orrick, Herrington & Sutcliffe LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105 | jkramer@orrick.com<br>atalarides@orrick.com<br>tscott@orrick.com |
| Adam Miller | Orrick, Herrington & Sutcliffe LLP<br>2100 Pennsylvania Avenue NW<br>Washington, D.C.  20037 | adam.miller@orrick.com |
| Megan Benton | Orrick, Herrington & Sutcliffe LLP<br>400 Capitol Mall<br>Suite 3000<br>Sacramento, CA  95814-4497 | mbenton@orrick.com |
| Richard E. Gottlieb<br>Emil Petrossian<br>Jacob Yang | Glaser Weil Fink Howard Jordan & Shapiro LLP<br>10250 Constellation Boulevard<br>19th Floor<br>Los Angeles, CA  90067 | rgottlieb@glaserweil.com<br>epetrossian@glaserweil.com<br>jyang@glaserweil.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 19, 2024, at San Diego, California.

CHRISTOPHER R. KINNON