# EXHIBIT D

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE (181542)
RACHEL L. JENSEN (211456)
JESSICA T. SHINNEFIELD (234432)
CHRISTOPHER R. KINNON (316850)
MEGAN A. ROSSI (318643)
JOHN M. KELLEY (339965)
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com
rjensen@rgrdlaw.com
jshinnefield@rgrdlaw.com
ckinnon@rgrdlaw.com
mrossi@rgrdlaw.com
jkelley@rgrdlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| In re GREEN DOT CORPORATION SECURITIES LITIGATION | ) ) ) ) | Case No. 2:19-cv-10701-DDP (Ex) |
|---|---|---|
| | | <u>CLASS ACTION</u> |
| | | LEAD PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT GREEN DOT CORPORATION |

4875-0162-4019.v1

EXHIBIT D
59

Pursuant to Federal Rules of Civil Procedure 26 and 33, Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund demands that Defendant Green Dot Corporation ("you," defined below) answer the following Interrogatories separately and fully under oath within 30 days from the date of service. You must respond to each Interrogatory in accordance with the instructions and definitions set forth below. These Interrogatories are continuing and require supplemental answers upon discovery of additional pertinent information according to Fed. R. Civ. P. 26(e).

## I. PROCEDURES FOR INTERROGATORIES

The following definitions, instructions, and procedures are to be considered applicable to each Interrogatory and are hereby incorporated into each Interrogatory to which it pertains.

1. These Interrogatories are continuing in nature. Therefore, any information coming into your possession or that of your counsel that would change the answers or responses in any way must be promptly furnished to Lead Counsel, in any event, no later than 30 days after receipt of such information. You are hereby notified that an order will be sought at trial barring the admission of any evidence responsive to any Interrogatory which you have failed to disclose.

2. Where an Interrogatory asks for a date, an amount, or any other specific information, a statement that the precise date, amount, or other specific information is unknown to you is inadequate where you are capable of approximating the information requested.

3. If any of these Interrogatories cannot be answered in full, answer to the extent possible, specifying your reasons for your inability to answer the remainder and stating whatever information, knowledge, or belief you do have concerning (defined below) the unanswered portion.

4. If you withhold any information or documents (defined below) based upon a claim of privilege or work product protection, please provide a privilege log

- 1 -

4875-0162-4019.v1

EXHIBIT D
60

that is consistent with any agreed-upon privilege protocol, or in the absence of such agreement, the privilege log should be in a searchable and sortable format containing the following information: (a) identify (defined below) the withheld information or document(s), including its date, author(s), addressee(s), and any other recipients[1]; (b) identify the contents of the information being withheld with sufficient particularity to enable Plaintiffs to bring the matter before the Court for a ruling on the claim of privilege; and (c) identify the privilege or doctrine under which the information is being withheld.  Attorneys and third parties should be clearly identified.

5.    Throughout these Interrogatories, language should be read in light of the context in which it is used.  Consequently, the singular includes the plural and the plural includes the singular where appropriate.  Furthermore, the masculine is intended to also refer to the feminine where appropriate and vice versa.

6.    If your answer to any Interrogatory or subpart thereof is "N/A" or "Not Applicable," describe in detail your reason(s) for making such reply.  Furthermore, in reply to any Interrogatory or subpart thereof, do not merely state "see attached records" unless you have no additional memory of the matters referred to in the specific Interrogatory or subpart thereof.  If you have any additional memory of the matters referred to, describe it in detail.

---

[1]    For emails and e-docs, metadata fields, including, but not limited to, Author, Subject, Title, Attachment Name, File Name, Custodian(s), Sender/From, Recipient/To/CC/BCC, Sent Date/Time, Create Date/Time, Date/Time Last Modified, File Extension, Attachment Count, Hash Value, Conversation ID, or Thread ID, and information sufficient to understand family relationship of withheld documents should be provided.  For electronically stored information other than email and e-docs that do not conform to the metadata fields listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., you will provide the metadata fields that are similar to the above-listed fields and other fields that are reasonably available and relevant to the privilege assertion.

- 2 -

## II.    DEFINITIONS

1.    "All" shall include the term "each" and vice-versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

2.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

3.    "Account Services" refers to revenues and expenses derived from Green Dot's deposit account programs during the Relevant Period (defined below), such as prepaid cards, debit cards, consumer and small business checking accounts, secured credit cards, payroll debit cards, and gift cards.  These deposit account programs are marketed under several of the Company's leading consumer brand names and under the brand names of the Company's "Banking as a Service," or "BaaS," partners.

4.    The "Action" refers to the above-captioned lawsuit.

5.    "Active Accounts" refers to any bank account within Green Dot's Account Services segment during a given quarter in the Relevant Period.  This includes general purpose reloadable prepaid card accounts, demand deposit or "checking" accounts, and credit card accounts in Green Dot's portfolio that had a purchase, deposit, or ATM withdrawal transaction during the applicable quarter.

6.    "Active Cards" refers to any general purpose reloadable prepaid debit card (or "GPR card"), prepaid card, or checking account in Green Dot's portfolio that had a purchase, reload, or ATM withdrawal transaction during a given quarter in the Relevant Period.

7.    "BaaS" refers to products and services concerning Green Dot's "Banking as a Service" platform, providing financial services and related products to companies and businesses during the Relevant Period, including, but not limited to, debit and payroll cards, embedded financial and money movement services, tax products,

- 3 -

mobile banking, and any similar Green Dot product or services that Green Dot's partners use to provide or facilitate banking and payments.

8.    "Board of Directors" refers to Green Dot's Board of Directors and any committees or subcommittees thereof, including any ad hoc or special committees.

9.    "Card Meetings" means any recurring or regular Green Dot meetings concerning Green Dot's Card Business, including, but not limited to, task forces, working groups, and email listservs.

10.    "Card Reports" means regular (daily, weekly, monthly, quarterly, yearly) reports and databases that collected, analyzed, gathered, or distributed any metrics concerning Green Dot's Card Business, including, but not limited to, BIA dashboard, Financial Key Metrics, the Cohort Report, the Tableau Report, and the Revenue Pacing Report, as well as Consolidated Activity Reports ("CARs"), generated to reflect current and projected customer bases for the Company's product lines.

11.    "Class Period" means the currently alleged class period of May 9, 2018 through November 7, 2019, inclusive.

12.    "Communication" refers to any transmittal of information, including, but not limited to, words, numbers, and pictures, by any means of transmission, including, but not limited to, speech, writing, audio, video, documents (as defined below), or electronically stored information (as defined below), or other media of any kind.  The term "communication" also includes, but is not limited to, all inquiries, discussions, conversations, correspondence, negotiations, agreements, presentations, understandings, meetings, notices, requests, responses, demands, complaints, press, publicity, or trade releases.

13.    "Company" or "Green Dot" refers to Green Dot Corporation; any of its direct or indirect subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, and successors; all of its present and former officers, directors, employees, members of the Board of Directors, agents, accountants, attorneys, and advisors; and all other persons acting or purporting to act on its behalf.

- 4 -

EXHIBIT D
63

14.    "Concern" or "concerning" means relating to, referring to, reflecting upon, describing, evidencing, or constituting.

15.    "Consent Order" means the Board of Governors of the Federal Reserve System's July 19, 2024 Order to Cease and Desist and Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as Amended, concerning Green Dot Corporation and Green Dot Bank.

16.    "Correspondence" means any letter, memorandum, note, email, facsimile, text message, instant message, internet message board posting, social media post or message, or any other writing containing a communication.

17.    "Defendants" refers to Green Dot and its former executives Steven W. Streit and Mark Shifke.

18.    "Documents" means all documents and data responsive to a particular request and is intended to have the broadest possible meaning under Fed. R. Civ. P. 34(a), including, but not limited to, electronically stored information ("ESI," as defined below), electronic or computerized data compilations, communications (as defined above), contracts, correspondence (as defined above), memoranda, invoices, records, presentations, summaries or audio or video recordings of conversations or interviews or meetings, photographs, press releases, handwritten or any other notes, and work papers.  A draft of a non-identical copy of any document is a separate document within the meaning of this term.

19.    "Electronically stored information" or "ESI" includes, but is not limited to, all items covered by Fed. R. Civ. P. 34(a)(1)(A) and includes all information or data that is generated, received, processed, transmitted, or stored electronically, including metadata (*e.g.*, author, recipient, file creation date, file modification date, file name, file path, etc.), regardless of the media or whether it is in the original format in which it was created.

20.    "Federal Reserve" refers to the United States' central banking system known as the Federal Reserve System created by the Federal Reserve Act, including

- 5 -

in its regulatory and supervisory capacities, the Federal Reserve Bank of San Francisco, the Federal Reserve Bank of Dallas, and the Board of Governors of the Federal Reserve System.

21. "GPR card" refers to general purpose reloadable prepaid debit cards.

22. "Green Dot's Card Business" refers to any and all of Green Dot's GPR or prepaid debit cards, products, or services (including, but not limited to, Green Dot-branded or co-branded products, products sold at Walmart, CVS, Rite Aid, Walgreens, Dollar Tree, Meijer, Boost Mobile, AT&T, and Citibank); BaaS cards, products, or services (including, but not limited to, Uber, TurboTax, Pay Card, and Simply Paid); direct deposit cards, products, or services; and any other similar card, product, or service that could be or was included at any time as an Active Account or Active Card during the Relevant Period, any product or service on the "Green Dot Network," and any digital, online, or app-based card, product, or service.

23. "Identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address, present or last known email address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the information of that person.

24. "Identify," with respect to documents, means to give, to the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

25. "Including" is used to emphasize the type of information requested and does not limit the request in any way.

26. "Individual Defendants" refers to Steven W. Streit ("Streit") and Mark Shifke ("Shifke").

27. "Meeting" or "meetings" refers to the contemporaneous presence of any natural person (including by telephone or electronic connection) for any purpose,

- 6 -

whether or not such presence was prearranged or by chance and whether or not the meeting was formal or informal or occurred in connection with some other activity. The term "meeting" also includes presentations.

28.   "Person" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

29.   "Prepaid cards" refers to any Green Dot prepaid debit cards, including, but not limited to, GPR cards, branded, and co-branded products.

30.   "Regular" or "regularly" means yearly, quarterly, monthly, weekly, or daily.

31.   "You" or "your" refers, respectively, to Green Dot, including, but not limited to, any subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, joint ventures, present and former officers, directors, employees, representatives, agents, and all other persons acting or purporting to act on behalf of the foregoing.

32.   The use of the singular form of any word includes the plural and vice versa.

## III.   RELEVANT TIME PERIOD

The Interrogatories herein refer to the time period from May 1, 2017 through March 25, 2020 (the "Relevant Period"), unless otherwise specifically indicated. Responsive answers shall include all information to make the answers complete and accurate throughout the Relevant Period.

## IV.   INTERROGATORIES

INTERROGATORY NO. 1:

For each of the following retailers and partners for Green Dot's Card Business products and services, state (a) the individuals with whom Green Dot communicated regularly concerning Green Dot's products and services, and (b) the individuals at

- 7 -

4875-0162-4019.v1

EXHIBIT D
66

Green Dot who communicated regularly with each retailer or partner concerning Green Dot's Card Business products and services:

- Walmart Inc.

- CVS Pharmacy, Inc.

- Rite Aid Corporation

- 7-Eleven, Inc.

- Walgreens Boots Alliance, Inc.

- Dollar Tree, Inc.

- Meijer, Inc.

- DISH Wireless L.L.C. (dba Boost Mobile)

- AT&T Inc.

- Citibank, N.A.

- Uber Technologies, Inc.

- Intuit Inc.

- Apple Inc. (regarding Apple Cash)

INTERROGATORY NO. 2:

Identify each individual at Green Dot who communicated with anyone at the Federal Reserve from May 1, 2017 through the present concerning the Consent Order, including any preliminary, investigative, fact-finding, formal or informal presentations, interviews, submissions, or proffers, and describe the communications as follows: (a) name of the individual; (b) name of the individual with whom they communicated at the Federal Reserve; (c) where, how, and when they communicated with the Federal Reserve, including any testimony given; (d) all topics discussed; (e) all documents received from the Federal Reserve or provided to it; and (f) any conclusions, proposals, negotiations, compliance, oversight, implementations,

- 8 -

4875-0162-4019.v1

progress reports, penalties, reviews, tasking, or follow-up recommended, considered, or discussed beyond what is written in the Consent Order.

INTERROGATORY NO. 3:

Identify each Card Report, including: (a) name, purpose, content, location, and cadence of each Card Report, including, but not limited to, listing any key metrics, products and services, and other information collected or analyzed; (b) the recipients, senders, and custodians of each Card Report.

INTERROGATORY NO. 4:

Identify any Card Meetings, including the name(s) and purpose(s) of such meetings, attendees, meeting cadence (*i.e.*, daily, weekly, monthly, or yearly), whether notes or minutes were taken and by whom as well as the location of such notes, and any related summaries, reports, or presentations.

DATED:  July 30, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE
RACHEL L. JENSEN
JESSICA T. SHINNEFIELD
CHRISTOPHER R. KINNON
MEGAN A. ROSSI
JOHN M. KELLEY

_____
        CHRISTOPHER R. KINNON

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

PITTA LLP
VINCENT F. PITTA
120 Broadway, 28th Floor
New York, NY  10271
Telephone: 212/652-3890
212/652-3891 (fax)

Additional Counsel for Plaintiffs

- 9 -

## DECLARATION OF SERVICE BY EMAIL

I, SUSAN M. WILLIAMS, not a party to the within action, hereby declare that on July 30, 2024, I served the attached **LEAD PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT GREEN DOT CORPORATION** on the parties in the within action by email addressed as follows:

### COUNSEL FOR PLAINTIFFS:

| NAME | FIRM | EMAIL |
|---|---|---|
| Jason A. Forge<br>Rachel L. Jensen<br>Jessica T. Shinnefield<br>Christopher R. Kinnon<br>Megan A. Rossi<br>John M. Kelley | Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101 | jforge@rgrdlaw.com<br>rjensen@rgrdlaw.com<br>jshinnefield@rgrdlaw.com<br>ckinnon@rgrdlaw.com<br>mrossi@rgrdlaw.com<br>jkelley@rgrdlaw.com |
| Vincent F. Pitta | Pitta LLP<br>120 Broadway, 28th Floor<br>New York, NY 10271 | vpitta@pittalaw.com |

### COUNSEL FOR DEFENDANTS:

| NAME | FIRM | EMAIL |
|---|---|---|
| James M. Kramer<br>Alexander K. Talarides<br>M. Todd Scott | Orrick, Herrington & Sutcliffe LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105 | jkramer@orrick.com<br>atalarides@orrick.com<br>tscott@orrick.com |
| Adam Miller | Orrick, Herrington & Sutcliffe LLP<br>2100 Pennsylvania Avenue NW<br>Washington, D.C. 20037 | adam.miller@orrick.com |
| Megan Benton | Orrick, Herrington & Sutcliffe LLP<br>400 Capitol Mall, Suite 3000<br>Sacramento, CA 95814-4497 | mbenton@orrick.com |
| Richard E. Gottlieb<br>Emil Petrossian<br>Jacob Yang | Glaser Weil Fink Howard Jordan<br>& Shapiro LLP<br>10250 Constellation Boulevard<br>19th Floor<br>Los Angeles, CA 90067 | rgottlieb@glaserweil.com<br>epetrossian@glaserweil.com<br>jyang@glaserweil.com |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 30, 2024, at San Diego, California.

*Susan M. Williams*

SUSAN M. WILLIAMS

4875-0162-4019.v1