JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

RICHARD E. GOTTLIEB (SBN 289370)
rgottlieb@glaserweil.com
EMIL PETROSSIAN (SBN 264222)
epetrossian@glaserweil.com
AYAD MATHEWS (SBN 339785)
amathews@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Defendants
GREEN DOT CORPORATION,
STEVEN W. STREIT, and MARK SHIFKE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| IN RE GREEN DOT CORPORATION SECURITIES LITIGATION | Case No. 2:19-cv-10701-DDP-E |
| | Hon. Dean D. Pregerson |
| | <u>CLASS ACTION</u> |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR REVIEW OF MAGISTRATE JUDGE'S DECEMBER 11, 2024 DISCOVERY RULING** |
| | Courtroom: 9C<br>Hearing Date: February 10, 2025<br>Hearing Time: 10:00 a.m. |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION & RELEVANT BACKGROUND ................................... 1

II.     LEGAL STANDARD ................................................................. 7

III.    ARGUMENT ........................................................................... 8

A.      The Discovery Ruling Is Contrary to Law Because Plaintiffs Have Not Exhausted Their Administrative Remedies. .......................... 9

B.      Because Plaintiffs Have Not Exhausted Their Administrative Remedies, the Court Should Notify the Federal Reserve and Permit It to Intervene Before Making any Adverse Ruling on the Applicability of the Bank Examination Privilege. ............................. 10

C.      The Discovery Ruling Is Contrary to Law Because It Fails to Address the Legal Status of the Challenged Documents as Confidential Supervisory Information ....................................... 11

D.      The Documents at Issue Are Confidential Supervisory Information .......................................................................... 13

E.      Green Dot Cannot Disclose CSI Without Agency Approval. ............. 15

F.      Plaintiffs' Failure to Exhaust Remedies Renders Plaintiffs' Motion Premature. ................................................................. 17

IV.     CONCLUSION ........................................................................ 18

## TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*In re Atl. Fin. Fed. Sec. Litig.*,
    1992 WL 50074 (E.D. Pa. Mar. 3, 1992) ........................................................ 18

*Blount v. City of Los Angeles*,
    2014 WL 6966051 (C.D. Cal. Dec. 8, 2014) ..................................................... 7

*Bond v. Arrowhead Reg'l Med. Ctr.*,
    2014 WL 12853150 (C.D. Cal. July 28, 2014) .................................................. 8

*Chase Bank USA, N.A. Check Loan Cont. Litig. v. Chase Bank*,
    2011 WL 2078621 (N.D. Cal. Mar. 17, 2011) .................................................. 18

*In re CitiMortgage HAMP Litig.*,
    2012 WL 10450139 (C.D. Cal. June 7, 2012) ............................................. 10, 17

*City of Colton v. Am. Promotional, Inc.*,
    2006 WL 8436702 (C.D. Cal. Feb. 6, 2006) ..................................................... 15

*In re Countrywide Fin. Corp. Sec. Litig.*,
    2009 WL 5125089 (C.D. Cal. Dec. 28, 2009) ............................................ 10, 17

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
    978 F. Supp. 2d 267 (S.D.N.Y. 2013) .............................................................. 11

*Fed. Nat'l Mort. Ass'n v. Allied World Nat'l Ins. Co.*,
    2024 WL 4416981 (D.D.C. Sept. 30, 2024) ................................................. 9, 17

*Schreiber v. Society for Sav. Bancorp*,
    11 F.3d 217 (D.C. Cir. 1993) .......................................................................... 13

*Sporck v. Peil*,
    759 F.2d 312 (3rd Cir. 1985) ......................................................................... 15

*Thomas v. Cnty. of Los Angeles*,
    275 F. App'x 664 (9th Cir. 2008) .................................................................. 13

*United States v. Hernandez-Meza*,
    720 F.3d 760 (9th Cir. 2013) ......................................................................... 13

*United States v. Vega*,
    2023 WL 4983240 (C.D. Cal. May 6, 2023) .................................................... 15

1

# <u>TABLE OF AUTHORITIES (CONTINUED)</u>

**Rules and Statutes**                                                    **Page(s)**

C.D. Cal. Local Rules
   Rule 72-2.1 ................................................................................ 1

Fed. R. Civ. P.
   Rule 72(a) .............................................................................. 1, 7

5 U.S.C.
   § 552(b)(8) ............................................................................ 1, 11

18 U.S.C.
   § 641 .................................................................................. 4, 6, 16

28 U.S.C.
   § 636(b)(1)(A) .......................................................................... 7

12 C.F.R.
   § 261.2(b)(1) ........................................................... 2, 11, 12, 14, 15
   § 261.15(a)(8) ............................................................................ 1
   § 261.20(a) .............................................................................. 16
   § 261.23(a)(1) .......................................................................... 11
   § 261.23(b)(1) ..................................................................... 11, 16
   § 261.23(b)(2) ....................................................................... 9, 17

MEMO. OF POINTS & AUTH. ISO DEFENDANTS' MOTION FOR REVIEW OF DISCOVERY RULING

Pursuant to Civil Local Rule 72-2.1 and Federal Rule of Civil Procedure 72(a), Defendants Green Dot Corporation ("Green Dot"), Steven W. Streit, and Mark Shifke (collectively, "Defendants") respectfully submit this motion for review of Judge Eick's December 11, 2024 discovery ruling (ECF No. 140) (the "Discovery Ruling") on Plaintiffs' Motion to Compel Information Related to the Federal Reserve Order to Cease and Desist (the "Motion").[1]

As explained below, the Court should set aside the Discovery Ruling as contrary to law to the extent it requires Defendants to produce confidential supervisory information ("CSI"), which is the property of the Federal Reserve Board (the "Federal Reserve"). The Discovery Ruling should be set aside because, respectfully, it did not consider (1) Plaintiffs' failure to exhaust their administrative remedies, given that the Federal Reserve is still considering Plaintiffs' recently submitted request for the very same documents at issue in the Motion; and (2) the legal distinction between the bank examination privilege, which is held by the Federal Reserve, and CSI, which is separately protected from disclosure by federal law. Likewise, (3) the ruling should be set aside to the extent it purports to rule on the applicability of the bank examination privilege without first allowing the Federal Reserve to intervene to assert the same.

## I.  INTRODUCTION & RELEVANT BACKGROUND

Under federal law and a long line of jurisprudence in the Ninth Circuit and beyond, information that is "contained in or related to examination . . . reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions" is protected from disclosure.  *See* 5 U.S.C. § 552(b)(8) (defining categories of information exempt from disclosure); *see also* 12 C.F.R. § 261.15(a)(8) (same).  Such information is deemed CSI, which the relevant federal regulations specifically define to include "information that is or was created

---

[1] Pursuant to the Local Rules, the parties submitted their contentions relating to the Motion in a Joint Stipulation (ECF No. 134), and each party thereafter filed a Supplemental Memorandum (ECF Nos. 138, 139).

1

or ***obtained in furtherance of the [Federal Reserve's]*** . . . ***enforcement activities***, including activities conducted by a Federal Reserve Bank (Reserve Bank) . . . and any information derived from or related to such information." 12 C.F.R. § 261.2(b)(1) (emphasis added).

Green Dot's subsidiary, Green Dot Bank, is a Utah state-bank member of the Federal Reserve System, and is therefore regulated by, and subject to examination from, the Federal Reserve.[2] In May 2023, the Federal Reserve submitted to Green Dot a proposed consent order to address issues raised during the bank examination process. *See* ECF No. 134 ("Joint Stip.") at 24. After receiving the first draft of the potential order, Green Dot and its outside counsel discussed the issues and the terms of the order with the Federal Reserve. In some of those direct written communications, Green Dot or its counsel attached pre-existing business documents, which Defendants referred to in the Joint Stipulation as the "Attached Documents" given that they were *attached* to and were part of the communications between the bank and its regulator as part of the deliberations. *Id.* at 24-25.

In July 2024, the Federal Reserve, with Green Dot's consent, issued an administrative order requiring Green Dot to pay a penalty and improve its risk management practices (the "Consent Order"). Plaintiffs immediately served discovery requests for documents concerning the Consent Order. Green Dot contended that these documents were not discoverable for two reasons relevant here: (1) the documents contain information subject to a bank examination privilege held by the Federal Reserve; and (2) the documents are CSI and therefore subject to regulations prohibiting Green Dot from disclosing them without the Federal Reserve's approval.

---

[2] *See* Federal Financial Institutions Examination Council, National Information Center, "Green Dot Bank," RSSD ID: 243375, available at https://www.ffiec.gov/npw/Institution/Profile/243375?dt=20180919.

2

MEMO. OF POINTS & AUTH. ISO DEFENDANTS' MOTION FOR REVIEW OF DISCOVERY RULING

Plaintiffs subsequently filed the Motion, seeking to compel Green Dot to "produce Green Dot *business documents* concerning and produced in connection with the Federal Reserve's July 19, 2024 Order to Cease and Desist . . . as it relates to Green Dot's prepaid debit card accounts and its tax business." Joint Stip. at 1 (emphasis added).[3]   In opposing the Motion, Defendants stressed that the direct communications between Green Dot or its counsel and the Federal Reserve constitute CSI and thus were not at issue in the Motion, because Plaintiffs acknowledged their obligation to seek the agency's permission to obtain CSI. Joint Stip. at 24-25 (citing *id.* at 4).[4] Plaintiffs have not disputed that the direct communications between Green Dot and the Federal Reserve were not at issue in their Motion.

On November 15, 2024, shortly before filing the Motion, Plaintiffs sent a letter to the General Counsel of the Federal Reserve, requesting that the agency "produce ***all documents received from Green Dot Corporation*** . . . [and] all documents provided to Green Dot, or any of its former or current employees, in connection with the Board's July 19, 2024 Cease and Desist Order." Declaration of M. Todd Scott ("Scott Decl."), Ex. A at 1 (emphasis added). As they did in the Motion, Plaintiffs plainly seek from the Federal Reserve information concerning its supervisory activities (here, its enforcement action).

Plaintiffs' Motion separately sought just the documents attached to the communications between Green Dot and the Federal Reserve. In opposing the Motion, Green Dot asserted such documents were CSI because they were attached to communications that are protected from disclosure under federal laws and regulations. With the Federal Reserve's permission, Defendants thereafter served a

---

[3] Judge Eick held that "any discovery related solely to the tax preparation subsidiary" is not discoverable based on relevance and proportionality principles. ECF No. 140. Defendants do not object to or seek review of that portion of the Discovery Ruling.

[4] Plaintiffs stated in their Motion that they were simultaneously "seeking documents and information related to the Federal Reserve Order that may be considered CSI directly from the Federal Reserve." Joint Stip. at 17. Defendants believe that request is still pending. *Infra* at 18.

MEMO. OF POINTS & AUTH. ISO DEFENDANTS' MOTION FOR REVIEW OF DISCOVERY RULING

privilege log detailing each of the 21 direct communications with the Federal Reserve concerning the Consent Order that Defendants believe constitute protected CSI, and for each such communication, stating how many business documents were attached. Scott Decl. ¶ 5. There were a total of forty individual documents attached to various direct communications, and it is these forty documents (minus the tax preparation documents) that the Discovery Ruling directed Defendants to produce. *Id.*

In a short ruling, Judge Eick concluded that Green Dot lacked standing to invoke the bank examination privilege on behalf of the Federal Reserve but likewise determined that documents relating to Green Dot's tax preparation payments subsidiary were not discoverable. Absent from the Discovery Ruling was any formal analysis of the arguments and any discussion of Defendants' further, alternate arguments—(1) that Plaintiffs have failed to exhaust their administrative remedies; and (2) that federal law and regulations prohibit Defendants from disclosing the documents without the agency's permission and, in fact, there are criminal penalties for violating those regulations. *See* 18 U.S.C. § 641 (establishing criminal liability for anyone who "without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof"). Cases have repeatedly upheld both arguments, refusing to permit litigants to bypass the regulations by issuing discovery demands, and recognizing a bank's legal obligation to withhold such communications until the banking regulator has acted on the request. The Discovery Ruling did not address those cases and instead directed Green Dot to produce documents solely on the basis that Defendants lack standing to object. As a result, the ruling more broadly threatens to expose Green Dot to liability if it is likewise forced, in the future, to comply on the same grounds with respect to other documents.

For all these reasons, and as shown below, the Discovery Ruling requiring Defendants to disclose the documents is contrary to law. The Court should vacate that portion of the Discovery Ruling and either deny Plaintiffs' motion to compel

4

outright (subject to Defendants' agreement to immediately produce the Attached Documents not solely relating to the tax subsidiary) or remand the issue to Judge Eick for fulsome consideration of the impact of relevant federal law and regulations.

Recent events buttress the need for review. Defendants have advised the Federal Reserve of the Discovery Ruling and Defendants' resulting obligation to produce the attached business records. In a December 24, 2024 letter (received one business day before this motion was due to be filed), the Federal Reserve confirmed that *all* of the subject communications (that is, the 21 direct communications and all 40 attached business documents) are CSI, but authorized production of most of the attached business documents (excluding only those related to Green Dot's tax preparation subsidiary). *See* Scott Decl., Ex. F at 2. Defendants therefore will produce the subject business documents to Plaintiffs in accordance with the Discovery Ruling.

But the Federal Reserve also made clear both that (1) Plaintiffs have failed to exhaust administrative remedies, and (2) that it need not intervene in this action to assert the bank examination privilege:

> For the remaining 21 of the Green Dot CSI documents, which are direct communications between Green Dot and Board Legal Division staff, *the Board continues to assert [the] bank examination privilege*, pending receipt of and action upon an appropriate request from plaintiffs under the Board's CSI regulations (at 12 C.F.R. § 261.23(b)) for CSI in the possession of Green Dot. Indeed, because the plaintiffs have not exhausted their administrative remedies, we want to reiterate, as set forth in the Board's October 10, 2024 letter to Green Dot, that courts, including those in the Central District of California, routinely deny motions to compel production of banking agency CSI in such situations, even if no regulator has intervened in the action.

*Id.* at 3 (citations omitted and emphasis added). Further, in a footnote, the Federal Reserve likewise directed it be notified "should the Court deem intervention or any other specific action necessary to preserve privilege or otherwise protect the important Board and public interests at issue." *Id.* at 3 n.1.

5

In short, while the Federal Reserve letter permits disclosure of most of the 40 business records, it does not resolve—and in fact buttresses—both the bank examination privilege question and the two alternative grounds for vacating the Discovery Ruling:

*First,* the Federal Reserve letter makes clear that documents of the type challenged in the Motion are CSI, and that Defendants are obligated to withhold them absent authorization from the Federal Reserve.  While the Discovery Ruling itself is plainly limited to the business records attached to the communications between Green Dot and the Federal Reserve between May 2023 and July 2024, Plaintiffs are expected to assert that the ruling more broadly impacts Green Dot's future ability to withhold other supervision-related documents on the basis that they are CSI, even though Judge Eick never reached that issue.  Defendants therefore respectfully seek review of the Discovery Ruling to foreclose any argument that the ruling more broadly eliminates the legal requirement that Defendants withhold CSI, or that Defendants have somehow acquiesced to any such ruling or otherwise waived or forfeited their future rights against disclosure by failing to seek review.  The Federal Reserve's consistent position throughout has been that all supervisory-related communications with Green Dot, as well as any internal documents relating to or referencing such matters, are CSI, and that Green Dot is required by federal law and regulations to maintain the confidentiality of such CSI under threat of criminal liability and cannot be compelled otherwise, regardless of whether the Federal Reserve has intervened in this action.  *See* Scott Decl., Ex. F at 2-3; 18 U.S.C. § 641.

*Second*, the Federal Reserve's December 24, 2024 letter reiterates that Plaintiffs have not exhausted their administrative remedies, and therefore this issue requires resolution before judicial intervention.  In their November 15 request to the Federal Reserve, Plaintiffs are concurrently seeking a waiver of the bank examination privilege with respect to a far broader scope of documents than was at issue in the Motion, and the Federal Reserve has not yet reached a determination on whether to

6

authorize any future productions. As the Federal Reserve stated in its letter, it "continues to assert [the] bank examination privilege" over the communications between May 2023 and July 2024 "pending receipt of and action upon an appropriate request from plaintiffs under the Board's CSI regulations (at 12 C.F.R. § 261.23(b)) for CSI in the possession of Green Dot." Scott Decl., Ex. F at 3.

*Third,* rejecting the conclusion that the bank examination privilege objection is improper, the Federal Reserve letter makes clear that the Discovery Ruling should be vacated to the extent it made a determination regarding the bank examination privilege without permitting the Federal Reserve to intervene and argue the issue on its behalf. While the Federal Reserve does not believe that its intervention is necessary at this point, the Court should permit the agency, as it expressly requests, "to preserve privilege or otherwise protect the important Board and public interests at issue." *Id.*

## II.    LEGAL STANDARD

A magistrate judge's ruling on a pretrial discovery matter is subject to review under Rule 72(a), which provides that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a)*; see also* 28 U.S.C. § 636(b)(1)(A) (applying same standard). "The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." *Blount v. City of Los Angeles*, 2014 WL 6966051, at *1 (C.D. Cal. Dec. 8, 2014).

The question presented here pertains to Judge Eick's legal conclusions regarding the applicability of the regulations prohibiting Green Dot from disclosing the documents at issue. Judge Eick did not determine that the regulations do not apply based on an analysis of the facts or law; rather, he did not address the issue in any way. A magistrate judge's order "is 'contrary to law' when it fails to apply or

misapplies relevant statutes, case law or rules of procedure." *Bond v. Arrowhead Reg'l Med. Ctr.*, 2014 WL 12853150, at *1 (C.D. Cal. July 28, 2014).

### III.   ARGUMENT

The Court should set aside the Discovery Ruling because it did not address: (1) that Plaintiffs have failed to exhaust their administrative remedies; (2) that the subject documents are CSI, and Green Dot is permitted to object to disclosure on this basis; and (3) the Federal Reserve must be given the opportunity to intervene before the Court makes any determinations regarding the applicability of the bank examination privilege.

As more fully set forth below, Judge Eick's conclusion that "Defendants lack standing to assert 'the bank examination or supervision privilege,'" ECF No. 140 at 2, is, in any event, focused on the wrong point.[5]  Green Dot has never argued that it is the holder of that privilege.  The Discovery Ruling never acknowledges or considers that the bank examination privilege and the regulations prohibiting disclosure of CSI are distinct legal concepts, the latter of which plainly obligates Green Dot not to disclose CSI without agency approval.  As a result, Judge Eick never reached the separate question whether the documents at issue are CSI, nor did he consider the regulations prohibiting disclosure of CSI.  Likewise, the Discovery Ruling did not  address Plaintiffs' failure to exhaust administrative remedies, as courts have repeatedly required.  The failure to address these arguments was,

---

[5] As noted above, the Federal Reserve has, through its December 24, 2024 letter, asserted the bank examination privilege with respect to the 21 direct communications, which are the only documents potentially still directly in dispute, although as explained above, Plaintiffs have taken an overly broad interpretation of the Discovery Ruling such that it may implicate more than just those 21 communications.  The Federal Reserve stated in the December 24 letter that it "does not believe that formal intervention pursuant to Federal Rule of Civil Procedure 24 is necessary to assert the Board's privilege, or that such intervention is likely to serve the interests of the Court or the parties in efficient resolution of this matter, but please provide prompt notice should the Court deem intervention or any other specific action necessary to preserve privilege or otherwise protect the important Board and public interests at issue."  Scott Decl., Ex F at 3 n.1.  Accordingly, the Discovery Ruling should be vacated also because of this material change in facts.

respectfully, legal error.  Defendants request that the Court either deny Plaintiffs' motion to compel or remand it to Judge Eick to consider Defendants' argument based on the regulations in the first instance.

### A.   The Discovery Ruling Is Contrary to Law Because Plaintiffs Have Not Exhausted Their Administrative Remedies.

In opposing the Motion, Green Dot demonstrated that Plaintiffs have failed to exhaust their administrative remedies.  *See* Joint Stip. at 22-23, 31-32.  Federal law provides a process for litigants to ask the Federal Reserve to waive the examination privilege in appropriate cases, but requires such litigants to provide the agency with information necessary for it to make an informed decision.  *See* 12 C.F.R. § 261.23(b)(2).  As a threshold matter, the Court should set aside the Discovery Ruling as contrary to law because, as of this filing, Plaintiffs have still not exhausted their administrative remedies, as further reinforced by the Federal Reserve's December 24, 2024 letter.  *See* Scott Decl., Ex. F at 3.

Defendants believe that Plaintiffs are still awaiting a determination on their letter request of November 15, 2024  to the Federal Reserve, in which Plaintiffs seek "all documents received from Green Dot Corporation . . . in connection with the [Consent Order]."  Scott Decl., Ex. A.  In its December 24, 2024 letter, the Federal Reserve again emphasizes this fact:  "because the plaintiffs have not exhausted their administrative remedies, we want to reiterate, as set forth in the Board's October 10, 2024 letter to Green Dot, that courts, including those in the Central District of California, routinely deny motions to compel production of banking agency CSI in such situations, even if no regulator has intervened in the action."  *Id.* at 3 (citations omitted).

As Plaintiffs have not exhausted their administrative remedies, the Court should set aside the Discovery Ruling as contrary to law and direct Plaintiffs to await such a ruling before proceeding with their motion to compel.  *See, e.g., Fed. Nat'l Mort. Ass'n v. Allied World Nat'l Ins. Co.*, 2024 WL 4416981, at \*6 (D.D.C. Sept.

30, 2024) ("[p]ut simply, defendants must first follow the administrative process to request from the [banking agency] the 31 documents purportedly subject to the bank examination privilege and  containing CSI that they believe are improperly withheld"); *In re CitiMortgage HAMP Litig.,* 2012 WL 10450139, at *8 (C.D. Cal. June 7, 2012) ("[p]laintiffs here have not yet sought the responsive documents from the [Office of the Comptroller of the Currency], and therefore their request that the Court balance the interests involved in production is premature"); *In re Countrywide Fin. Corp. Sec. Litig.*, 2009 WL 5125089, at *2 (C.D. Cal. Dec. 28, 2009) ("[p]laintiffs must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the FRB and OCC").[6]

**B.** **<u>Because Plaintiffs Have Not Exhausted Their Administrative Remedies, the Court Should Notify the Federal Reserve and Permit It to Intervene Before Making any Adverse Ruling on the Applicability of the Bank Examination Privilege.</u>**

As noted above, as Plaintiffs have failed to exhaust their administrative remedies, the Federal Reserve believes that it need not intervene to assert the bank examination privilege. *See* Scott Decl., Ex. F at 3. Further, the Federal Reserve has asked that it be notified and be permitted to intervene if the Court reaches a different conclusion. *Id.* at 3 n.1. The Court should vacate the Discovery Ruling and notify the Federal Reserve if it intends to deny this Motion for Review on the grounds that Defendants lack standing to assert the bank examination privilege.

---

[6] In their portion of the Joint Stipulation, Plaintiffs stated that they "are concurrently and properly seeking documents and information related to the Federal Reserve Order that may be considered CSI directly from the Federal Reserve." Joint Stip. at 17. This was misleading, because it implied that the documents at issue on this motion were not the subject of Plaintiffs' request to the Federal Reserve. The letter shows otherwise. Scott Decl., Ex. A at 1 (requesting that the Federal Reserve "produce all documents received from [Green Dot], or any of its former or current employees, and all documents provided to Green Dot, or any of its former or current employees, in connection with the Board's July 19, 2024 Cease and Desist Order").

10

**C.**   **The Discovery Ruling Is Contrary to Law Because It Fails to Address the Legal Status of the Challenged Documents as Confidential Supervisory Information**

Even if the Court concludes that Plaintiffs need not exhaust their administrative remedies (it should not), the Discovery Ruling is contrary to law because it fails to distinguish between the bank examination privilege and the separate legal concept of CSI, as Green Dot expressly asserted in opposing Plaintiffs' Motion.  *See* Joint Stip. at 29; *see also id.* at 27-28 (arguing that the Attached Documents "are CSI that cannot be disclosed" under federal statutes and regulations, and separately, that they "may likewise be subject to the bank examiner's privilege").

Unlike the bank examination privilege, confidential supervisory information, or CSI, derives from the exemption under the Freedom of Information Act for "matters that are . . . contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions[.]"  5 U.S.C. § 552(b)(8).  The regulations promulgated by the Federal Reserve define CSI to include "information that is or was created or ***obtained in furtherance of the [Federal Reserve's]*** . . . ***enforcement activities***, including activities conducted by a Federal Reserve Bank (Reserve Bank) . . . and any information derived from or related to such information."  12 C.F.R. § 261.2(b)(1) (emphasis added).  The regulations impose on the regulated entity a prohibition on disclosing CSI.  12 C.F.R. § 261.23(a)(1); *see also id.* § 261.23(b)(1)(ii).

In contrast, the bank examination privilege is a judicially-created doctrine empowering the regulatory agency to protect information relating to its examinations.  *See Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 273 (S.D.N.Y. 2013) ("The bank examination privilege is a common-law privilege" to protect "the distinctively continuous and informal process of bank regulation, which especially requires candor from regulated entities.").  This differs from the regulations prohibiting disclosure of CSI, which implement a statutory command to

regulated entities to refrain from disclosing such information. The two are not the same.

The entirety of Judge Eick's analysis of the issues presented is as follows:

> As to privileges: (a) Defendants lack standing to assert "the bank examination or supervision privilege." See Teachers Ins. & Annuity Assoc. v. Munro, 2022 WL 2234972, at *4 (C.D. Cal. May 9, 2022); accord United States v. Heine, 2016 WL 1270907, at *9 (D. Or. Mar. 31, 2016) (bank examination privilege is held only by government agencies and may not be asserted by anyone else); Wultz v. Bank of China Ltd., 61 F. Supp. 3d 272, 282, 286 (S.D.N.Y. 2013) (same); and (b) the other privileges asserted by Defendants (including the vaguely referenced "any other applicable privilege or protection against disclosure") are factually unsupported on this record.

ECF No. 140 at 2.

In part (a) of this paragraph, Judge Eick specifically addressed the bank examination privilege, but did not even reference, much less analyze, the applicable regulations cited above and in Defendants' portion of the Joint Stipulation. Indeed, neither the *Munro* nor *Heine* decisions on which Judge Eick relied even mentioned the applicable regulations, which apparently were not asserted by the parties in those cases.

In part (b) of the paragraph, Judge Eick refers to "other privileges asserted by Defendants." It is not entirely clear what was meant by this phrase, but nothing in that sentence addresses the specific regulations Defendants cited, which unambiguously prohibit them from disclosing CSI not as a matter of privilege, but as a matter of federal laws and regulations. To the extent that Judge Eick did mean for this phrase to encompass the regulations cited by Defendants, he did not explain what facts Defendants needed to establish or why he concluded that they had failed to do so. In any event, the only fact that Defendants needed to establish was that the documents are CSI, and their privilege log clearly demonstrated this by showing that the Attached Documents constituted "information that is or was created or obtained

12

in furtherance of the [Federal Reserve's] . . . enforcement activities."  12 C.F.R. § 261.2(b)(1).

A court is required to address the issues put forward by the parties and to explain its decisions.  As the Ninth Circuit has explained in a case where a district court failed to rule on an issue presented by one of the parties:

> Giving an explanation for significant rulings is an important component of due process.  It lets the adversely affected party know that the judge has heard and understood its argument, and that the judge's ruling is based on the facts and the law.  An explanation also allows the judge to confirm that his ruling is correct.  If he is unable to articulate a plausible rationale for his ruling, he may think better of it.  Finally, and not least, by failing to give any indication that he applied the correct legal standard, the district judge made appellate review difficult.

*United States v. Hernandez-Meza*, 720 F.3d 760, 767-68 (9th Cir. 2013); *see also Thomas v. Cnty. of Los Angeles*, 275 F. App'x 664, 667-68 (9th Cir. 2008) (vacating and remanding a district court order that "contains no reference to the controlling legal rules, nor does it apply these principles to the protected discovery in light of Fuiava's collateral state proceedings" because the "district court must explain its decision to allow for appellate review").

The failure to acknowledge and apply the regulations relied on by Defendants, much less explain why they are not applicable, is "contrary to law" and entitled to no deference.

**D.      The Documents at Issue Are Confidential Supervisory Information**

Under federal regulations, documents attached to or referencing supervisory communications are plainly CSI.  CSI includes any information that meets the regulatory definition even if in the physical possession of a regulated entity.  12 C.F.R. § 262.2(b)(1) ("[A]ny portion of a document in the possession of any person, entity, agency or authority, including a supervised financial institution, that contains or would reveal confidential supervisory information is confidential supervisory information."); *Schreiber v. Society for Sav. Bancorp*, 11 F.3d 217, 222 (D.C. Cir.

13

1993) ("[T]he district court's assertion that Schreiber could obtain the bank examination reports and related correspondence from Bancorp was erroneous. The reports and records gathered or created by the agencies in the course of performing their regulatory responsibilities are deemed the records of the agencies.").

Business records of the type at issue in the Motion meet the regulatory definition of CSI because they are "information that is or was created or obtained in furtherance of the [Federal Reserve's] . . . enforcement activities." 12 C.F.R. § 261.2(b)(1).  As Green Dot explained in the Joint Stipulation, the documents at issue are *compilations* of individual business documents relating to the events underlying the Consent Order.  As individual documents, the documents are not CSI and Green Dot has consistently stated that it would produce them if otherwise discoverable.  But as compilations of documents Green Dot provided to the regulatory agency as part of an enforcement proceeding, the documents are CSI under the straightforward definition in the regulations.[7]

For example, the first entry on Green Dot's privilege log reflects an email from Green Dot's counsel to the Federal Reserve Board that attached 32 underlying business records. *See* Scott Decl. ¶ 5.  The "parent email" is a direct communication with the FRB that is clearly CSI and not at issue in this motion. *Supra* at 3.  It is the 32 attachments that are at issue.  Each of those 32 attachments, as a pre-existing individual document, is not CSI and will be produced if otherwise discoverable.  But *as a compilation*, the set of 32 documents together is CSI because it constitutes "information that is or was created or obtained in furtherance of the [Federal Reserve's] . . . enforcement activities."  12 C.F.R. § 261.2(b)(1).

---

[7] As stated above, Green Dot will produce the Attached Documents (other than those relating solely to the tax subsidiary) based on the Federal Reserve's December 24, 2024 letter.  But, as the Federal Reserve stated in its letter, those documents are CSI that Green Dot cannot disclose without the agency's permission.  Because this issue may recur in the future, Defendants must explain why the documents are CSI in the first instance even though the specific documents at issue in the Motion are no longer in dispute.

MEMO. OF POINTS & AUTH. ISO DEFENDANTS' MOTION FOR REVIEW OF DISCOVERY RULING

In the Joint Stipulation, Green Dot analogized the situation to one involving a trial attorney's compilation of "key documents."  Each individual document in the compilation is discoverable, but the compilation as a whole is not discoverable because it would tend to reveal the attorney's mental impressions.  *See, e.g.*, *Sporck v. Peil*, 759 F.2d 312, 316 (3rd Cir. 1985).[8]  Put another way, Green Dot's position is simply that whether each of the individual documents is discoverable must be determined without regard to whether that document was later provided to the regulatory agency.  Plaintiffs' effort to identify important documents by piggy-backing on the work of the regulator is an impermissible intrusion into the regulatory process.

In sum, Green Dot never contended that its underlying business records cannot be discovered.  To the contrary, the documents would have been produced in the ordinary course if relevant and not otherwise privileged.  But as a compilation provided to the Federal Reserve in furtherance of its enforcement activities, the set of documents is plainly CSI under the applicable regulations and may not be produced without the agency's approval (as here, but not in the broader set requested November 15, 2024).

### E.    Green Dot Cannot Disclose CSI Without Agency Approval.

Duly promulgated federal regulations expressly provide that Green Dot cannot disclose CSI without the Federal Reserve's approval.  *See* 12 C.F.R. §§ 261.2(b)(1) (broadly defining CSI); 261.20(a) (CSI remains property of the Federal Reserve), 261.23(b)(1)(iii) (requiring Federal Reserve permission before disclosure).

---

[8] *Sporck* is a leading case establishing the principle that an attorney's compilation of documents is work product. It has been cited repeatedly for that proposition, including by the Central District of California. *See, e.g.*, *United States v. Vega*, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023); *City of Colton v. Am. Promotional, Inc.*, 2006 WL 8436702, at *3 (C.D. Cal. Feb. 6, 2006).  And to be clear, Defendants are not claiming that the underlying business records attached to agency communications are attorney work product, but reference the *Sporck* doctrine to show that a compilation of materials may be protected from discovery even if the individual documents within that compilation are discoverable.

15

The importance of protecting CSI is not based on the narrow interest of the individual banks, but rather is intended to ensure a "robust supervisory environment" meant to protect the banking system as a whole. *McKinley v. Bd. of Gov. of Fed. Reserve Sys.*, 647 F.3d 331, 340 (D.C. Cir. 2011) ("The Board and Reserve Banks rely on the willingness of supervised institutions to provide full information in order to assure a robust supervisory environment. If supervised institutions no longer believe the Board could or would maintain the confidentiality of information it collects through the supervisory process, they would be less willing to provide the Board with the information it needs to assure a robust supervisory environment.").

Thus, a violation of the prohibitions on disclosure of CSI can have severe consequences. In 2005, the Federal Reserve and other federal banking agencies published an "Interagency Advisory on the Confidentiality of the Supervisory Rating and Other Nonpublic Supervisory Information." That document states that "[a]ny person who discloses or uses nonpublic information except as expressly permitted by one of the appropriate federal banking agencies or as provided by the agency's regulations may be subject to the ***criminal penalties*** provided in 18 USC 641." Scott Decl., Ex. C (emphasis added). The cited statute, in turn, provides that for up to ***ten years imprisonment*** for any person who "without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof." 18 U.S.C. § 641 (emphasis added). In 2016, the Federal Reserve ordered a company to pay a $36.3 million fine and brought an enforcement action to permanently bar an employee from the banking industry "stemming from his and his subordinates' unauthorized use and disclosure of confidential supervisory information." Scott Decl., Ex. D.

Green Dot—and its employees—are bound by these regulations and subject to serious penalties under federal law if they are violated. But the Discovery Ruling never addresses the law or regulations, and directed Defendants to violate them.

16

**F.    Plaintiffs' Failure to Exhaust Remedies Renders Plaintiffs' Motion Premature.**

The federal regulations at issue do not mean that CSI can never be obtained by a party in litigation.  Rather, these regulations prescribe a process for litigants to seek the Federal Reserve's permission to obtain CSI.  Specifically, the requesting party must provide the Federal Reserve with information showing "[t]he relevance of the confidential supervisory information to the issues or matters raised by the litigation," and "[t]he reason why the information sought, or equivalent information adequate to the needs of the case, cannot be obtained from any other source."  12 C.F.R. § 261.23(b)(2).  Then, "[a]rmed with this information, the [Federal Reserve] can make a reasoned determination whether to permit use of CSI in a particular case, subject to conditions and limitations if necessary to protect confidentiality or, alternatively, to assert privilege."  Scott Decl., Ex. E (Oct. 10, 2024 Letter from Federal Reserve Board Counsel to Defendants' Counsel) at 3.

Courts in this district have held that litigants must complete the regulatory process to seek the banking regulator's approval before demanding that the regulated entity produce CSI in discovery.  *See, e.g.*, *In re CitiMortgage HAMP Litig.*, 2012 WL 10450139, at *8 (C.D. Cal. June 7, 2012) ("Plaintiffs here have not yet sought the responsive documents from the [Office of the Comptroller of the Currency], and therefore their request that the Court balance the interests involved in production is premature"); *In re Countrywide Fin. Corp. Sec. Litig.*, 2009 WL 5125089, at *2 (C.D. Cal. Dec. 28, 2009) ("Plaintiffs must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the [Federal Reserve] and OCC, pursuant to federal regulations.").  Other courts around the country have repeatedly held the same.  *See, e.g.*, *Fed. Nat'l Mort. Ass'n v. Allied World Nat'l Ins. Co.*, 2024 WL 4416981, at *6 (D.D.C. Sept. 30, 2024) ("Put simply, defendants must first follow the administrative process to request from the [banking agency] the 31 documents purportedly subject to the bank examination privilege and containing CSI

17

that they believe are improperly withheld."); *Chase Bank USA, N.A. Check Loan Cont. Litig. v. Chase Bank*, 2011 WL 2078621, at *1 (N.D. Cal. Mar. 17, 2011) ("Unless and until" the regulatory agency either "does not claim a privilege or any claim of privilege … is found to be without merit," a party "shall not be required to produce the subject documents to plaintiffs."); *In re Atl. Fin. Fed. Sec. Litig.*, 1992 WL 50074, at *1 (E.D. Pa. Mar. 3, 1992) (reversing magistrate judge order granting motion to compel because Office of Thrift Supervision regulations "operate as an absolute bar against disclosure by the subject association" and directing plaintiffs to seek the records from the agency).

Here, Plaintiffs have submitted a request to the Federal Reserve for permission to obtain CSI. Joint Stip. at 17. Defendants understand that that request remains pending before the agency. Scott Decl., ¶ 4. This means that Plaintiffs have not completed the administrative process with respect to documents other than the Attached Documents. In accordance with the case law cited above—which the Discovery Ruling did not cite or address—Plaintiffs' effort to obtain CSI through the litigation discovery process is premature.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant this motion for review of Judge Eick's Discovery Ruling. Respectfully, the ruling did not consider the binding regulations that Defendants cited in the Joint Stipulation, and as a result, the order is incompatible with Green Dot's legal obligations and potentially exposes the company and its employees to significant legal penalties, possibly even imprisonment. None of this is necessary because there is a process in place to determine whether Plaintiffs can receive the information they seek. Plaintiffs have initiated that process and should have brought it to a conclusion before asking this Court for relief.

The Court "has the power to affirm, modify, vacate, set aside or reverse the magistrate judge's order and may remand the cause and direct the entry of such

MEMO. OF POINTS & AUTH. ISO DEFENDANTS' MOTION FOR REVIEW OF DISCOVERY RULING

appropriate judgment, decree or order, or require such further proceedings . . . as may be just under the circumstances." *Hubbs v. Big Lots Stores, Inc.*, 2019 WL 12536541, at *1 (C.D. Cal. July 2, 2019).

Defendants submit that the Discovery Ruling should be vacated and Plaintiffs' Motion should be denied as premature (subject to Defendants' agreement to immediately produce the Attached Documents other than those relating solely to the tax subsidiary). In the alternative, the Court should remand the matter to Judge Eick to consider Defendants' argument based on the CSI regulations in the first instance.

Respectfully submitted,

Dated: December 26, 2024

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
James N. Kramer
Alexander K. Talarides
M. Todd Scott

**GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP**
Richard E. Gottlieb
Emil Petrossian
Ayad Mathews


By: */s/ Emil Petrossian*
     Emil Petrossian

*Attorneys for Defendants*
GREEN DOT CORPORATION,
STEVEN W. STREIT, and MARK SHIFKE

19

MEMO. OF POINTS & AUTH. ISO DEFENDANTS' MOTION FOR REVIEW OF DISCOVERY RULING