# EXHIBIT E



# BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
## WASHINGTON, DC 20551

LEGAL DIVISION

October 10, 2024

By Electronic Mail
Amy Pugh, Esq.
General Counsel and Interim Chief Risk Officer
Green Dot Corporation
114 West 7th Street, Suite 240
Austin, TX 778701
apugh@greendotcorp.com

Re:    Discovery Requests for Confidential Supervisory Information in
       *In re Green Dot Corp. Sec. Litig.*, No.2:19-cv-10701-DDP-E (C.D. Cal.)

Dear Ms. Pugh:

On behalf of the Board of Governors of the Federal Reserve System ("Board"), I write in response to your inquiry in your capacity as General Counsel for the defendant, Green Dot Corporation ("Green Dot") in the above-captioned securities class action pending in the U.S. District Court for the Central District of California. You have written to inform the Board pursuant to 12 C.F.R. § 261.24(a)(1) that certain documents and information responsive to plaintiffs' discovery requests in this action may contain confidential supervisory information ("CSI") of the Board governed by its regulations at 12 C.F.R. §§ 261.2(b)(1), .20, .23 and .24.

In particular, you write that, after publication of the Board's July 19, 2024 Consent Cease and Desist Order[1] ("Consent Order") with Green Dot, plaintiff served Green Dot with Interrogatories and related discovery requests, including Interrogatory No. 2, which requests in pertinent part that Green Dot:

Identify each individual at Green Dot who communicated with anyone at the Federal Reserve from May 1, 2017 through the present concerning the Consent Order, including any preliminary, investigative, fact-finding, formal or informal presentations, interviews, submissions, or proffers, and describe the communications as follows: (a) name of the individual; (b) name of the individual with whom they communicated at the Federal Reserve; (c) where, how, and when

---

[1] *Available at*
https://www.federalreserve.gov/newsevents/pressreleases/files/enf20240719b1.pdf

they communicated with the Federal Reserve, including any testimony given; (d) all topics discussed; (e) all documents received from the Federal Reserve or provided to it; and (f) any conclusions, proposals, negotiations, compliance, oversight, implementations progress reports, penalties, reviews, tasking, or follow-up recommended, considered, or discussed beyond what is written in the Consent Order.

Green Dot served its Answers and Objections to the Interrogatories on plaintiffs on August 29, 2024, including its objections to Interrogatory No. 2, which provided in pertinent part that:

> Green Dot objects to … Interrogatory [No. 2] to the extent that it seeks information that is protected from disclosure or discovery by the bank examination or supervision privilege, any regulation governing the disclosure of confidential supervisory information, and any other applicable privilege or protection requiring Green Dot to keep information confidential. …

> The nature and substance of all such communications [between Green Dot and the Federal Reserve regarding supervisory matters] are subject to the bank examination privilege and therefore Green Dot is prohibited from disclosing any such information. Green Dot further notes that the Consent Order is publicly available, and it asserts no such privilege with respect to the underlying bank practices.

In response to Green Dot's objections that it was prohibited by Federal Reserve regulations and the bank examination privilege from disclosing supervisory communications with the Federal Reserve, you state that plaintiffs refused to accept Green Dot's objections to production of CSI. In particular, by letter to Green Dot dated August 30, 2024, a copy of which you provided, plaintiffs asserted that courts "including the Central District of California" where this action is pending "hold that defendants lack standing to assert the purported bank examiners privilege." Aug. 30 Letter at 1 (citing *Teachers. Ins. & Annuity Ass'n of Am. v. Munro*, 2022 WL 2234972, at *4 (C.D. Cal. May 9, 2022) and *United States v. Heine*, 2016 WL 1270907, at *9 (D. Or. Mar. 31, 2016)). Plaintiffs also inquired whether "the Federal Reserve [has] asserted privilege" over any or all of the materials requested by plaintiffs including but not limited to Interrogatory No. 2. You seek the Federal Reserve's guidance regarding this issue.

As explained below, in the absence of prior written approval from the Board's General Counsel under its regulations, which plaintiffs have neither sought nor obtained (despite their awareness), Green Dot is prohibited by the Board's regulations from producing CSI to plaintiffs.

3

*Plaintiffs Must Exhaust Their Administrative Remedies Under the Board's Regulations*

You are correct that communications between a supervised financial institution such as Green Dot and the Federal Reserve pertaining to supervisory matters such as formal or informal enforcement actions, investigations, consent orders, or other supervisory matters, and internal bank documents that contain or would reveal CSI, among other documents and information, are CSI under the Board's regulations. Those regulations define CSI to include "information that is or was created or obtained in furtherance of the Board's supervisory, investigatory, or enforcement activities, including activities conducted [under delegated authority] by a Federal Reserve Bank," and includes, by way of example, "reports of examination, inspection, and visitation; … *investigative requests for documents or other information*, and supervisory correspondence or other supervisory communications"; as well as "any portion of a document in the possession of … a supervised financial institution, that contains or would reveal" CSI.[2] 12 C.F.R. § 261.2(b)(1) (emphasis supplied).

CSI is "confidential and privileged" and the Board "does not normally disclose [CSI] to the public or authorize third parties in possession of [CSI] to further use or disclose the information." *Id.* § 261.23(a)(1). Even in the hands of supervised financial institutions such as Green Dot, CSI is the property of the Board and may not be disclosed without the prior written approval of the Board's General Counsel, which the plaintiffs have not sought or obtained in this case. 12 C.F.R. §§ 261.2(b)(1), .20(a), .23(b)(1)(iii); *see Schreiber v. Society for Sav. Bancorp*, 11 F.3d 217, 222 (D.C. Cir. 1993) (examination reports and related correspondence are records of the agency and may be obtained from a bank only with the agency's permission); 12 U.S.C. § 326 ("The Board of Governors of the Federal Reserve System, at its discretion, may furnish any report of examination or other confidential supervisory information concerning any State member bank or other entity examined under any other authority of the Board … to any other person that the Board determines to be proper.").

Under the Board's regulations, litigants such as the plaintiffs may request access to CSI for use in litigation by filing a written request directly with the Board's General Counsel under the procedures set forth in 12 C.F.R. § 261.23(b). This regulation requires the litigant to provide certain information regarding the judicial proceeding, as well as a "narrow and specific description" of the CSI sought, the relevance of the information to the issues or matters raised by the litigation, and the reason why "the information sought, or equivalent information adequate to the needs of the case, cannot be obtained from any other source." *Id.* The litigant must also commit to obtain an appropriate protective order acceptable to the Board to preserve the confidentiality of the information. *Id.* Armed with this information, the Board can make a reasoned determination whether to permit use of CSI in a particular case, subject to conditions and limitations if necessary to protect confidentiality, *id.* 261.23(d)(2), or, alternatively, to assert privilege.

---

[2] CSI "does not include … [d]ocuments prepared by or for a supervised financial institution for its own business purposes that are in its own possession and that do not include [CSI]." 12 C.F.R. § 261.2(b)(2)(i). Pursuant to this regulation, portions of Green Dot's internal business documents that do not contain or reveal the Board's CSI may be produced to the plaintiffs, provided that all CSI has first been redacted.

4

Despite Green Dot's objections based on the Board's regulations, plaintiffs have neither requested nor obtained the Board's permission to access CSI for use in this litigation, and therefore have not exhausted their administrative remedies or provided the Board the opportunity to assert the bank examination privilege. *See In re Bankers Trust Co.*, 61 F.3d 465, 472 (6th Cir. 1995) (holding, in case where the requesting party had first exhausted administrative remedies, that "[t]he bank examination privilege belongs to the Federal Reserve"); *see also Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 14-cv-7126 (JMF), 2016 WL 6779901, at *6 (S.D.N.Y. Nov. 16, 2016) ("[p]laintiff would have to seek relief 'through the established administrative process' before coming back to this court" seeking production of the Federal Reserve's and Office of the Comptroller of the Currency's CSI (internal quotation omitted)); *In re CitiMortgage HAMP Litig.*, 2012 WL 10450139, at *8 (C.D. Cal. June 7, 2012) ("[p]laintiffs here have not yet sought the responsive documents from the OCC, and therefore their request that the Court balance the interests involved in production is premature"); *In re Countrywide Fin. Corp. Sec. Litig.*, 2009 WL 5125089, at *2 (C.D. Cal. Dec. 28, 2009) ("[p]laintiffs must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the FRB and OCC").

While plaintiffs correctly acknowledge the existence of the bank examination privilege and that the privilege belongs to the applicable bank regulator, Aug. 30 Letter at 1, 2, their assertion that "defendants lack standing to assert" the bank examination privilege, *id*. at 1, is inapplicable here where plaintiffs have not exhausted their administrative remedies. *In re B of I Holding, Inc. Sec. Litig.*, 2022 WL 507663, at *1 (S.D. Cal. Feb. 18, 2022) ("Because it is the [agency] and not the Bank who holds the privilege, it was then incumbent upon plaintiff to request that the [agency] waive the privilege as to any protected documents."). In that regard, the Board's regulations provide that CSI is "confidential and privileged ... and not normally disclose[d] ... to the public," 12 C.F.R. § 261.23(a), and that CSI "remains the property of the Board" and that "no person [or] entity ... to whom [CSI] is made available or who otherwise possesses [CSI] ... may use any such information for an unauthorized purpose or disclose any such information without the prior written permission of the [Board's] General Counsel." *Id.* § 261.20(a); *see Schreiber*, 11 F.3d at 222 (examination reports and related correspondence are records of the agency and may be obtained from a bank only with the agency's permission).

The cases cited by plaintiffs do not suggest otherwise. The *Munro* decision contains no discussion of the need to exhaust administrative remedies, nor is there any indication that the parties brought to the court's attention the regulations of any particular regulator prohibiting disclosure of CSI absent prior agency approval, as the Board's regulations require here. *See* 2022 WL 2234972, at *4. Indeed, the court in *Munro* acknowledged that "the bank examiner's privilege . . . 'protects agency opinions and recommendations, as well as banks' responses to those opinions and recommendations, from disclosure.'" *Id.* (quoting *Heine*, 2016 WL 1270907, at *9). Similarly, *Heine*, in which the FDIC produced to criminal defendants "non-privileged materials responsive to the[ir] first and third requests" and "did not refuse to produce responsive documents based on the bank examination privilege," 2016 WL 1270907, at *9, is inapposite here where plaintiffs have not served the Board with a written request for access to CSI, nor has the Board been given the opportunity to respond to such a request.

If the Board can provide further assistance in this matter,[3] please do not hesitate to contact Yvonne Mizusawa of the Board's Legal Division staff at yvonne.f.mizusawa@frb.gov.

Sincerely,

/s/  Alye S. Foster

Alye S. Foster
Associate General Counsel

cc:  (by email)

Avery Belka
Vice President and Deputy General Counsel
Federal Reserve Bank of San Francisco
avery.belka@sf.frb.org

Emily Greenwald
Senior Vice President
Federal Reserve Bank of Dallas
emily.greenwald@dal.frb.org

---

[3] Green Dot may provide this letter to the parties or the Court, including in public filings, as needed in connection with this litigation.