JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

RICHARD E. GOTTLIEB (SBN 289370)
rgottlieb@glaserweil.com
EMIL PETROSSIAN (SBN 264222)
epetrossian@glaserweil.com
AYAD MATHEWS (SBN 339785)
amathews@glaserweil.com
GLASER WEIL FINK HOWARD
    JORDAN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| IN RE GREEN DOT CORPORATION SECURITIES LITIGATION | Case No. 2:19-cv-10701-DDP-E <br><br> CLASS ACTION <br><br> **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S DECEMBER 11, 2024 DISCOVERY RULING** <br><br> Judge: Honorable Dean D. Pregerson <br> Courtroom: 9C <br> Hearing Date: February 10, 2025 <br> Hearing Time: 10:00 a.m. |

# **TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT.........................................................................1

II.     ARGUMENT ...................................................................................................3

    A.      Plaintiffs Concede They Have Failed to Exhaust Their Administrative Remedies.............................................................................3

    B.      The Motion for Review Does Not Seek an Advisory Opinion..............5

    C.      The Federal Reserve Has Asserted the Bank Examination Privilege as to the Direct Communications and Should be Allowed to Cure Any Procedural Deficiencies....................................6

    D.      Plaintiffs Conflate Federal Regulations Prohibiting Disclosure of CSI and the Bank Examination Privilege, and Ignore Those Distinctions. ........................................................................................8

III.    CONCLUSION ...............................................................................................13

DEFS' REPLY ISO MOTION FOR PARTIAL REVIEW OF MAGISTRATE JUDGE'S DISCOVERY RULING

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*In re B of I Holding, Inc. Sec. Litig.*,
   2022 WL 507663 (S.D. Cal. Feb. 18, 2022) .....................................................8, 11

*In re Bankers Tr. Co.*,
   61 F.3d 465 (6th Cir. 1995) .................................................................................. 8

*Campidoglio LLC v. Wells Fargo & Co.*,
   870 F.3d 963 (9th Cir. 2017) .............................................................................11

*Chase Bank USA, N.A. Check Loan Contr. Litig.*,
   2011 WL 2078621 (N.D. Cal. Mar. 17, 2011) ....................................................8

*DWG Corp. v. Granada Invs., Inc.*,
   962 F.2d 1201 (6th Cir.1992) ..............................................................................9

*FBI v. Fikre*,
   601 U.S. 234 (2024) .............................................................................................6

*Fed. Nat'l Mortg. Ass'n v. Allied World Nat'l Ins. Co.*,
   2024 WL 4416981 (D.D.C. Sept. 30, 2024)....................................................... 10

*Roy v. Cnty. of L.A.*,
   2018 WL 3439168 (C.D. Cal. July 11, 2018) ................................................9, 10

*Roy v. Cnty. of L.A.*,
   2018 WL 914773 (C.D. Cal. Feb. 7, 2018) ..........................................................9

*Steele v. First Nat'l Bank of Mifflintown*,
   2013 WL 1209180 (M.D. Pa. Mar. 25, 2013)..................................................5, 9

*V5 Techs. v. Switch, Ltd.*,
   334 F.R.D. 306 (D. Nev. 2019) .......................................................................9, 10

DEFS' REPLY ISO MOTION FOR PARTIAL REVIEW OF MAGISTRATE JUDGE'S DISCOVERY RULING

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

**Statutes**                                                                                       **Page(s)**

5 U.S.C.
  § 552(b)(8) ........................................................................................................ 10

12 C.F.R.
  § 261.2(b)(1) ..................................................................................................... 11
  § 261.14(a)(8) ................................................................................................... 10
  § 261.15(a)(8) ................................................................................................... 10
  § 261.20(a)) .................................................................................................. 2, 12
  §261.23(b)(1)(iii) ................................................................................................ 2

## I.   PRELIMINARY STATEMENT

Plaintiffs cannot have it both ways.  In the same brief, they argue *both* that (i) Defendants seek an improper advisory opinion, and (ii) the Discovery Ruling broadly prohibits Defendants from withholding, in the future, *any* federally protected documents generated during bank examinations and enforcement—that is, both confidential supervisory information ("CSI") and bank examiner-privileged communications.  For the reasons set forth below, and as set forth in Defendants' opening brief, the Court should reject both arguments and grant Defendants' motion.

Plaintiffs' underlying Motion to Compel sought solely those documents "concerning and produced in connection with" the Consent Order entered into by Green Dot and its primary federal regulator, the Federal Reserve, in July 2024. Mem. at 3.[1]  As Defendants have explained, and as their privilege log substantiates, the documents "concerning the Consent Order" consisted of (i) 21 direct written communications exchanged between Green Dot's representatives and the Federal Reserve from May 2023 through July 2024, and (ii) 40 underlying business records that were attached as supporting exhibits to certain of the direct written communications.  Defendants have referred to these documents as the "Direct Communications" and the "Attached Documents," respectively.  Mem. at 2 (citing Joint Stip.[2] at 24-25).

While the Attached Documents have now been produced, Plaintiffs' Opposition creates uncertainty as to whether they continue to seek the (more sensitive) Direct Communications. Plaintiffs' argument that this motion seeks a mere advisory opinion makes sense only if they do not seek the Direct Communications, but they never quite say that.  Instead, they couple what is effectively a mootness

---

[1] "Mem." refers to the Memorandum of Points and Authorities in Support of Defendants' Motion For Review of Magistrate Judge's December 11, 2024 Discovery Ruling, filed on December 26, 2024 (ECF No. 141-1).

[2] ECF No. 134.

1

argument with a defense of (and extrapolation from) Judge Eick's Discovery Ruling, arguing that "Judge Eick did not commit legal error by ruling that Plaintiffs did not have to exhaust their legal remedies before obtaining Green Dot's records from Green Dot under the Federal Rules of Civil Procedure." Opp. at 11-12.[3]

Confirming the fears identified in Defendants' opening brief,[4] this assertion is troubling because it demonstrates that Plaintiffs are trying to use the Discovery Ruling to argue that Defendants cannot withhold *any* documents based on the CSI-specific regulations, not just those documents at issue in the underlying motion to compel. To the extent that Judge Eick's Discovery Ruling would permit such an outcome, it is contrary to law and must be set aside. *See* Mem. at 8-17.

Moreover, if this Court affirms Judge Eick's Discovery Ruling without clarification, Plaintiffs contend they are not obligated to exhaust their administrative remedies as to any *future* documents sought in discovery in this case on the flimsiest of arguments: they need not do so because the Federal Reserve has not yet made a final determination on their narrower November 15, 2024 request. Opp. at 11. But this argument fails because Plaintiffs have not even sought permission for disclosure of any other categories of information, much less received a determination from the Federal Reserve. The law is crystal clear: because the Federal Reserve is the owner of all CSI, 12 C.F.R. § 261.20(a), it is exempt from disclosure under federal law (exemption 8 of FOIA), and federal regulations require Plaintiffs to seek permission from the Federal Reserve to gain access. 12 C.F.R. §261.23(b)(1)(iii); Mem. at 15-16. Thus, Defendants respectfully request that this Court make clear that *both parties are required* to comply with these provisions, and that nothing in the Discovery Ruling excuses Plaintiffs from complying, now and in the future, with federal

---

[3] ECF No. 147.

[4] *See* Mem. at 6 ("Plaintiffs are expected to assert that the ruling more broadly impacts Green Dot's future ability to withhold other supervision-related documents on the basis that they are CSI, even though Judge Eick never reached that issue.").

2

regulations before seeking judicial intervention.

## II.    <u>ARGUMENT</u>

Contrary to Plaintiffs' contentions: (a) Plaintiffs have not exhausted their administrative remedies as to documents other than the Direct Communications; (b) this motion does not seek an advisory opinion; (c) the Federal Reserve has asserted the bank examination privilege as to the Direct Communications; and (d) the Discovery Ruling did not adequately address Defendants' argument based on the applicable regulations.  Each point is addressed in turn.[5]

### A.    <u>Plaintiffs Concede They Have Failed to Exhaust Their Administrative Remedies.</u>

Plaintiffs concede they have so far failed to exhaust their administrative remedies because the Federal Reserve is still considering their letter of November 15, 2024.  Instead, they baldly assert (without legal or factual foundation) that they are somehow excused from doing so because "the Federal Reserve has delayed, claimed not to understand Plaintiffs' straightforward request (without asking for clarification for months), and *effectively denied* Plaintiffs any discovery."  Opp. at 11 (emphasis added).  As a result, this Court should grant review for this reason alone, and direct Plaintiffs to first exhaust their administrative remedies before demanding any future CSI from Defendants.  *See* Mem. at 9-10.

Plaintiffs' attempt to bypass the administrative process is meritless for numerous reasons.  As a threshold matter, Plaintiffs do not contest that the Federal Reserve's December 24, 2024 letter, which authorized Green Dot to disclose the

---

[5] Plaintiffs incorrectly claim that "Defendants do not dispute the relevance of the Federal Reserve materials here."  Opp. at 4.  In fact, Defendants did dispute the relevance of information relating to Green Dot's tax subsidiary, and Judge Eick agreed with Defendants on that point, holding that such information is not discoverable.  Plaintiffs have not disputed or appealed that holding.  Beyond that, Defendants accepted the nominal relevance of the other documents at issue only "for purposes of the motion."  Joint Stip. at 33.  Defendants do not agree that these documents are actually relevant to this case and reserve the right to object to their admission into evidence based on lack of relevance or any other ground.

DEFS' REPLY ISO MOTION FOR PARTIAL REVIEW OF MAGISTRATE JUDGE'S DISCOVERY RULING

Attached Documents (other than those relating to the tax subsidiary), addresses and seeks a clarification with respect to the scope of documents Plaintiffs are seeking from the Federal Reserve.  Rather than respond to the agency, Plaintiffs ask this Court to issue an adverse determination against that agency without any due process or an opportunity for it to be heard.

Further, instead of exhausting those remedies, and going well beyond the scope of the Discovery Ruling (which implicated just 61 documents), Plaintiffs now assert "that *any redactions based off the Bank Examination Privilege* as identified in the November 21, 2024 privilege log should be produced given the Court's December 11 Order."  Supplemental Declaration of M. Todd Scott ("Scott Supp. Decl."), Ex. G (emphasis added).  This November 21, 2024 privilege log, which Defendants served after Plaintiffs' Motion to Compel was submitted, covers documents identified in response to other document requests, and is plainly not subject to Judge Eick's Discovery Ruling. *See infra* at 5-6.

The Court should not permit Plaintiffs to bootstrap a narrow ruling regarding documents "concerning the Consent Order" into an all-encompassing prohibition on Green Dot's ability to comply, now and in the future, with Defendants' binding legal obligations to its regulator.  Under the duly-promulgated regulations applicable to Green Dot as a regulated entity—and to Plaintiffs as a party seeking information from a regulated entity—Plaintiffs must first request the Federal Reserve's permission to access those documents.  Mem. at 17-18 (citing authorities establishing that courts in this district and elsewhere have held that litigants must complete the administrative process to seek the regulator's approval before demanding that the regulated entity produce CSI in discovery).  Plaintiffs have not made any such request to the Federal Reserve for documents beyond the scope of the subject Discovery Ruling, and the Court should not allow Plaintiffs to evade that clear legal obligation.

4

**B.**    **The Motion for Review Does Not Seek an Advisory Opinion.**

In an effort to avoid this Court's review of their attempted misuse of the Discovery Ruling, Plaintiffs argue that this motion seeks a mere "advisory opinion." Opp. at 5-6. This argument fails for two obvious reasons.

*First,* as discussed above, Plaintiffs are expressly seeking to bootstrap the Discovery Ruling to prevent Defendants from withholding any other documents based on the bank examination privilege. On December 19, 2024, Plaintiffs' counsel sent an email challenging a number of Defendants' privilege claims, which made explicit that "it is Plaintiffs' position that any redactions based off the Bank Examination Privilege as identified in the November 21, 2024 privilege log should be produced given the Court's December 11 Order." Scott Supp. Decl., Ex. G.

Thus, if Judge Eick's Discovery Ruling is left undisturbed, Plaintiffs will assert (and have asserted) that the ruling bars Defendants from hereafter withholding any documents or information based on the applicable federal regulations prohibiting unauthorized disclosure of CSI (which, as detailed below, Plaintiffs continue to conflate with the bank examination privilege). And it is all but certain that, had Defendants allowed Judge Eick's erroneous conclusion to stand unchallenged, Plaintiffs would have contended that Defendants had forfeited their right to challenge that conclusion with respect to other discovery disputes. As such, Defendants were compelled to appeal Judge Eick's Discovery Ruling now in order to preserve their ability to rely on the regulations in the future.

*Second*, if Plaintiffs continue to seek the Direct Communications, this issue is likewise plainly ripe for review. On the one hand, the Opposition asserts that "Judge Eick's Order requires Defendants to produce 'all discovery responsive to Request for Production No. 38 and Interrogatory No. 2,' *including Green Dot's direct communications with the Federal Reserve.*" Opp. at 5 (emphasis added). But immediately thereafter, Plaintiffs contradict themselves by stating that "[n]onetheless, Defendants have agreed to produce these underlying business

documents to Plaintiffs . . . . Accordingly, *under Defendants' interpretation of Judge Eick's Order*, this Motion merely seeks an advisory opinion from the Court." *Id.* at 5-6 (emphasis added).  Plaintiffs go on to state that "[a]ssuming, *arguendo*, that Defendants' contention is correct and Judge Eick's Order only applies to the underlying business documents, there is nothing left for this Court to decide; Defendants have already agreed to produce those documents to Plaintiffs regardless of this Court's ruling." *Id.* at 6.[6]

As a result, it is unclear whether Plaintiffs contend that Defendants are still required to produce the Direct Communications under Judge Eick's Discovery Ruling, and in the absence of a clear statement as to Plaintiffs' position, the Court should not treat the motion as one seeking an advisory opinion.  *FBI v. Fikre*, 601 U.S. 234, 243 (2024) (holding that, "in all cases," the party asserting mootness must meet the "formidable standard" of establishing that "it cannot reasonably be expected to resume its challenged conduct").

If, however, Plaintiffs were to agree or the Court were to hold that Judge Eick's Discovery Ruling does not require production of the Direct Communications and does not free either party from compliance with the federal CSI regulations as to all other discovery requests (*i.e.*, discovery requests that were not the subject of Judge Eick's Discovery Ruling), then Defendants would concur that this motion may be resolved on that basis.

**C.**     **<u>The Federal Reserve Has Asserted the Bank Examination Privilege as to the Direct Communications and Should be Allowed to Cure Any Procedural Deficiencies.</u>**

Defendants do not dispute that the Federal Reserve owns the bank examination privilege.  But, subsequent to Judge Eick's Discovery Ruling, the Federal Reserve

---

[6] Following receipt of the Federal Reserve's December 24, 2024 letter discussed herein, Defendants agreed to produce the Attached Documents (other than those relating to the tax subsidiary).  Defendants have now produced those documents. *See* Scott Supp. Decl. ¶ 7.  Thus, there is no live dispute as to that specific aspect of Judge Eick's Discovery Ruling.

DEFS' REPLY ISO MOTION FOR PARTIAL REVIEW OF MAGISTRATE JUDGE'S DISCOVERY RULING

itself has asserted the privilege as to the Direct Communications (while declining to do so as to the Attached Documents). As a result, the Court should conclude that the bank examination privilege applies to those documents and has been properly asserted by the entity with standing to do so.

Plaintiffs' assertion that "the Federal Reserve has deliberately declined to intervene in this dispute despite having the opportunity to do so" (Opp. at 8-9) cannot be squared with the Federal Reserve's December 24, 2024 letter. As Plaintiffs admit, the Federal Reserve's letter states that it "does not believe that formal intervention pursuant to Federal Rule of Civil Procedure 24 is necessary to assert the [Federal Reserve]'s privilege, or that such intervention is likely to serve the interests of the Court or the parties in efficient resolution of this matter, but *please provide prompt notice should the Court deem intervention or any other specific action necessary to preserve privilege or otherwise protect the important [Federal Reserve] and public interests at issue*." Opp. at 9-10 (quoting Scott Decl., Ex. F,[7] at 3) (emphasis added). Plaintiffs offer no argument in support of their apparent position that this written statement by the Federal Reserve is insufficient to properly assert the privilege. Opp. at 10-11.

But, if the Court determines that the Federal Reserve's letter is not a proper invocation of the privilege, the appropriate recourse is to afford the agency the opportunity it has requested to cure any deficiency, not to deem the government's privilege waived on a technicality. "The bank examination privilege belongs to the Federal Reserve, and therefore, where a claim of the privilege is appropriate, *the Federal Reserve must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion*." *In re Bankers Tr. Co.*, 61 F.3d 465, 472 (6th Cir. 1995) (emphasis added); *see also Chase Bank USA, N.A. Check Loan Contr. Litig.*, 2011 WL 2078621, at *1 (N.D. Cal. Mar. 17, 2011) ("[I]n order to determine

---

[7] ECF No. 141-8.

DEFS' REPLY ISO MOTION FOR PARTIAL REVIEW OF MAGISTRATE JUDGE'S DISCOVERY RULING

whether the OCC, as the holder of any privilege that exists, asserts any such claim, Plaintiffs must advise the OCC of documents they are requesting for which Chase claims the bank examiner's privilege. *If the OCC responds that it does not claim the privilege*, then the Court may order Chase to produce the documents to Plaintiffs, unless the documents are subject to other limitations.") (emphasis added).

Defendants reiterate that Green Dot does not seek to invoke the bank examination privilege itself. But as a regulated entity, Green Dot respects its importance and urges the Court to exercise caution before overriding it without granting the Federal Reserve an opportunity to be heard. That is, the Court should either deem the Direct Communications privileged based on the Federal Reserve's December 24, 2024 letter, or it should grant the agency's request to be notified "should the Court deem intervention or any other specific action necessary *to preserve privilege or otherwise protect the important [Federal Reserve] and public interests at issue*." Scott Decl., Ex. F at 3 (emphasis added).[8]

### D. Plaintiffs Conflate Federal Regulations Prohibiting Disclosure of CSI and the Bank Examination Privilege, and Ignore Those Distinctions.

In their opening brief, Defendants showed that the Discovery Ruling was contrary to law because it failed to address Defendants' argument that applicable federal regulations prevent it from disclosing CSI without the approval of the regulatory agency. Mem. at 11-17. Judge Eick addressed the bank examination privilege, but the regulations are a separate and distinct source of legal authority and Judge Eick did not address them. *Id.* at 12-13. "The failure to acknowledge and

___

[8] Even if the Court determines that the Federal Reserve's December 24, 2024 letter is not sufficient to assert the bank examination privilege and that the agency is not entitled to an opportunity to cure any procedural defects, that holding by definition would only apply to the Direct Communications, not any other documents that may be requested in discovery. Of the millions of documents that Green Dot has collected for potential production in this case, a substantial portion of them could potentially be subject to the bank examination privilege. Defendants do not intend to produce any of those documents without giving the Federal Reserve an opportunity to decide whether or not to invoke the bank examination privilege.

apply the regulations relied on by Defendants, much less explain why they are not applicable, is 'contrary to law' and entitled to no deference." *Id.* at 13.

In response, all Plaintiffs can say is that Judge Eick stated that he had "read and considered all papers filed in support of and in opposition to 'Plaintiffs' Motion to Compel.'" Opp. at 13. Respectfully, this boilerplate statement does not suffice. If it did, then no reviewing court would ever conclude that an issue was not sufficiently addressed by the court below. *DWG Corp. v. Granada Invs., Inc.*, 962 F.2d 1201, 1202 (6th Cir.1992) (reversing and remanding the denial of the defendant's motion where "the court's silence prohibits [the appellate court] from examining the soundness of its discretionary judgment"); *Steele v. First Nat'l Bank of Mifflintown*, 2013 WL 1209180, at *4 (M.D. Pa. Mar. 25, 2013) (acknowledging that the magistrate judge's and the court's failure to address the defendant's privity argument constituted "error"). As Defendants established in their opening brief, the task of a judge authoring an opinion subject to appellate review is to provide an explanation for significant rulings that an appellate court can evaluate. Mem. at 13 (citing cases). Judge Eick's Discovery Ruling simply did not do that with regard to Defendants' arguments based on the regulations.[9]

---

[9] Plaintiffs cite to *Roy v. Cnty. of L.A.*, 2018 WL 3439168, at *4 (C.D. Cal. July 11, 2018) and *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 314 n.12 (D. Nev. 2019), for the proposition that Judge Eick was not required to discuss "each and every argument" made by the Defense. Opp. at 14. Both cases are distinguishable. In *Roy*, the court had previously issued a very lengthy opinion (20 printed pages, single spaced) addressing the parties' arguments in great detail. *Roy v. Cnty. of L.A.*, 2018 WL 914773 (C.D. Cal. Feb. 7, 2018). The defendants then moved for reconsideration from the same judge, Judge Birotte. Here, by contrast, Judge Eick's ruling was roughly one page, his *entire discussion* of the relevant issue was one sentence ("Defendants lack standing to assert 'the bank examination or supervision privilege.'"), he never even mentioned the relevant regulations, and the issue is being appealed to a different judge. *See* ECF No. 140 at 2. In *V5 Techs.*, meanwhile, the court did not fail to consider an issue, but rather disposed of the motion based on one argument and then appropriately declined to "opine on the other potential bases for denying the requested relief." 334 F.R.D. at 314 n.12. In sum, neither *Roy* nor *V5* is remotely like this case, and neither provides a basis to conclude that Judge Eick's Discovery Ruling was sufficient.

DEFS' REPLY ISO MOTION FOR PARTIAL REVIEW OF MAGISTRATE JUDGE'S DISCOVERY RULING

This failure is particularly problematic because Judge Eick's Discovery Ruling wrongly suggests that the CSI regulations are essentially indistinguishable from the bank examination privilege. Plaintiffs appear to be laboring under the same misconception. Opp. at 14 ("[A]s to whether or not the documents could be considered CSI, Judge Eick properly noted that no party with standing to assert the bank examination privilege (which only protects CSI) had intervened to do so – making that argument irrelevant."); *see also id.* at 13 (claiming that Defendants were "positing a distinction between CSI and the bank examination privilege").

This is incorrect. While the bank examination privilege and CSI are related and overlapping concepts, they "present distinct bases for a party to withhold information. The bank examination privilege is a common-law privilege, without a statutory 'underpinning.' . . . By contrast, CSI is defined in and protected by regulations issued pursuant to authorizing federal statutes." *Fed. Nat'l Mortg. Ass'n v. Allied World Nat'l Ins. Co.*, 2024 WL 4416981, at *3 n.3 (D.D.C. Sept. 30, 2024).

As discussed in Defendants' opening brief, Mem. at 11, the regulations prohibiting unauthorized disclosure of CSI derive from a statutory command found in Exemption 8 of the Freedom of Information Act, which shields from disclosure information "contained in or related to examination . . . reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8)); *see also* 12 C.F.R. § 261.15(a)(8) (exempting Federal Reserve records from disclosure pursuant to FOIA Exemption 8).[10]

The scope of the information subject to the statutory exemption from disclosure is extraordinarily broad. It includes:

> *information that is or was **created or obtained in furtherance of the Board's supervisory, investigatory, or enforcement***

---

[10] The information covered by FOIA Exemption 8 and by the CSI regulations is coextensive. *See, e.g.*, 12 C.F.R. § 261.14(a)(8) (identifying CSI in title of the regulation subsection implementing Exemption 8).

*activities, including activities conducted by a Federal Reserve Bank (Reserve Bank) under delegated authority, relating to any supervised financial institution, and any information derived from or related to such information.* Examples of confidential supervisory information include, without limitation, reports of examination, inspection, and visitation; confidential operating and condition reports; supervisory assessments; investigative requests for documents or other information; and supervisory correspondence or other supervisory communications. *Additionally, any portion of a document in the possession of any person, entity, agency or authority, including a supervised financial institution, that contains or would reveal confidential supervisory information is confidential supervisory information.*

12 C.F.R. § 261.2(b)(1) (emphasis added).

This scope of information covered by the regulations is far broader than that applicable to the bank examination privilege, which protects communications between regulator and regulated entity. *In re B of I Holding, Inc. Sec. Litig.*, 2022 WL 507663, at *2 (S.D. Cal. Feb. 18, 2022) ("The bank examination privilege protects communications between banks and their regulators from disclosure, with the aim of preserving and promoting candor in such communications.") (cleaned up).[11]

Federal regulations further make clear that all information meeting this regulatory definition of CSI is the property of the Federal Reserve and cannot be disclosed without its express consent, no matter whether the information is in the possession of the regulator or the regulated entity:

information, including but not limited to information made available under this subpart, **remains the property of the Boar**d, and except as otherwise provided in this regulation, no person, entity, agency, or authority to whom the information is made available or who otherwise possesses the information, including any officer, director, employee, or agent thereof, may use any such information for an unauthorized purpose or disclose any

___

[11] Plaintiffs' statement that "the Ninth Circuit has not yet addressed the bank examination privilege," Opp. at 7, is incorrect. *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 976 n.5 (9th Cir. 2017) (noting the existence of the bank examination privilege but declining to "resolve the contours of this privilege in our own circuit" because the plaintiffs were not entitled to relief even if the district court's ruling that certain documents were subject to the privilege was incorrect).

DEFS' REPLY ISO MOTION FOR PARTIAL REVIEW OF MAGISTRATE JUDGE'S DISCOVERY RULING

such information without the prior written permission of the General Counsel.

12 C.F.R. § 261.20(a) (emphasis added); *see also* Fed. Reserve Bank of N.Y., Circular No. 11002, Improper Disclosure of Confidential Supervisory Information by Financial Institutions (Dec. 5, 1997) ("All confidential supervisory information is the property of the Board of Governors of the Federal Reserve System, and may be used only as the Board of Governors permits.").[12]

In other words, these regulations *require* entities in the possession of information "created or obtained in furtherance of the Board's supervisory, investigatory, or enforcement activities" to refuse to "disclose any such information without the prior written consent of the General Counsel." Any violation of these confidentiality obligations can have severe consequences, including for individual employees of the regulated entity. Mem. at 16.

In this light, Judge Eick's bare conclusion that Green Dot must produce the documents at issue because it "lacks standing" to assert the bank examination privilege is contrary to law because it fails to consider Green Dot's separate binding obligation to not disclose CSI without the approval of its regulator. Unlike the bank examination privilege, the regulations directly compel Green Dot to refuse unauthorized disclosures of CSI and impose penalties for violations. Green Dot clearly does not lack standing to comply with these regulations, and to the extent Judge Eick's Discovery Ruling suggests otherwise it is contrary to law.

The bank examination privilege and the regulations prohibiting unauthorized disclosure of CSI are distinct in both the scope of information covered and the parties entitled to invoke them. These distinctions were presented to Judge Eick, but his Discovery Ruling ignored them. Mem. at 11 (citing Joint Stip. at 27-29). Thus, his

---

[12] This Federal Reserve Circular was attached as Exhibit 1 to the November 20, 2024 Declaration of M. Todd Scott submitted along with the Joint Stip. It is also attached hereto as Exhibit H to the Supplemental Declaration of M. Todd Scott accompanying this reply memorandum.

DEFS' REPLY ISO MOTION FOR PARTIAL REVIEW OF MAGISTRATE JUDGE'S DISCOVERY RULING

Discovery Ruling would require Green Dot and its employees to violate binding federal regulations without even so much as acknowledging the existence of those regulations.

To the extent Plaintiffs rely on Judge Eick's Discovery Ruling to demand discovery of either the Direct Communications or other documents protected by federal law, the Discovery Ruling should be set aside as contrary to law.

## III.    CONCLUSION

For the foregoing reasons, as well as those stated in their opening brief, Defendants respectfully request that the Court grant this Motion for Review and direct that Plaintiffs' Motion to Compel be denied or remand the matter to Judge Eick for reconsideration in light of the legal principles applicable to Defendants' obligations regarding CSI. In the alternative, if the Court concludes that this Motion is moot because Judge Eick's Discovery Ruling does not compel the production of any documents other than the Attached Documents and does not prevent Defendants from objecting to other discovery requests based on the CSI regulations, then Defendants request that any order denying the Motion on such grounds include an express statement to that effect.

13

Dated:  January 27, 2025

Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
JAMES N. KRAMER
ALEXANDER K. TALARIDES
M. TODD SCOTT


 /s/ M. Todd Scott
M. TODD SCOTT
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:  415-773-5700
Facsimile:  415-773-5957

-   and   -

**GLASER WEIL FINK HOWARD
   JORDAN & SHAPIRO LLP**
RICHARD E. GOTTLIEB
EMIL PETROSSIAN
AYAD MATHEWS
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

*Attorneys for Defendants*

14