# EXHIBIT 4

Case 2:19-cv-10701-FLA-E    Document 154-4    Filed 04/25/25    Page 1 of 184    Page ID #:3793

ROBBINS GELLER RUDMAN
  & DOWD LLP
JESSICA T. SHINNEFIELD (234432)
CHRISTOPHER R. KINNON (316850)
MEGAN A. ROSSI (318643)
JOHN M. KELLEY (339965)
RACHEL C. BRABY (356720)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
jshinnefield@rgrdlaw.com
ckinnon@rgrdlaw.com
mrossi@rgrdlaw.com
jkelley@rgrdlaw.com
rbraby@rgrdlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| In re GREEN DOT CORPORATION SECURITIES LITIGATION | ) ) ) | Case No. 2:19-cv-10701-DDP (Ex) |
|---|---|---|
| | ) | <u>CLASS ACTION</u> |
| | | PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT GREEN DOT CORPORATION'S REQUESTS FOR ADMISSION TO PLAINTIFFS, SET ONE |

4928-5394-2805.v1

## I.    OBJECTIONS TO DEFINITIONS

1.    Plaintiffs specifically object to the definitions of "Green Dot," "Defendants," and "Individual Defendants" to the extent they are inconsistent with the Amended Complaint for Violations of the Federal Securities Laws (ECF 83). Plaintiffs further object to these definitions to the extent that they purport to encompass information that is protected by the attorney-client privilege, the work product doctrine, and/or any other lawfully recognized privilege, protection, or immunity from disclosure.

2.    Plaintiffs specifically object to the definition of "Market" on the basis that it is overly broad and unduly burdensome.  Plaintiffs further object to the definition and its use throughout these Requests as inconsistent.  The term is used 116 times throughout the Requests, including 98 times as part of the term "market analyst."  However, the analysts that Defendants refer to do not provide analysis of the entire "secondary securities market" as Defendants have defined the term; they provide analysis of Green Dot Corporation ("Green Dot") and its competitors. Plaintiffs further object to the definition and the term as used throughout the Requests for purposes of requesting that Plaintiffs admit, for example, that "the market was aware" of a certain assertion, as this is argumentative and seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this definition as premature to the extent it calls for an expert opinion or requires consultation with an expert.

3.    Plaintiffs specifically object to the definitions of "Plaintiff," "You," and "Your" on the bases that they are overly broad and unduly burdensome, to the extent that they purport to encompass information that is protected by the attorney-client privilege, the work product doctrine, and/or any other lawfully recognized privilege, protection, or immunity from disclosure, and/or to the extent that they purport to impose any obligations greater than those set forth in the Federal Rules of Civil Procedure.

- 1 -

4928-5394-2805.v1

## II.    OBJECTIONS TO INSTRUCTIONS

Plaintiffs object to the Instructions to the extent that they purport to impose any obligations upon Plaintiffs that are not imposed by law or are otherwise broader than or inconsistent with the Federal Rules of Civil Procedure 26 and 36, the applicable Local Rules, the Individual Rules of the Court, its standing orders, and/or any orders of the Court in this action.

## III.    GENERAL OBJECTIONS

1.    Plaintiffs object to each Request to the extent that it purports to require the disclosure of information and/or communications protected from disclosure by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or immunity from disclosure, regardless of whether such privilege or immunity from disclosure is specifically identified in the Response(s) to which it applies.  Any inadvertent disclosure of privileged or otherwise protected information shall not be deemed to be a waiver by Plaintiffs of any applicable privilege or immunity from disclosure.

2.    Plaintiffs object to each Request to the extent that it calls for any response, legal conclusion, investigative conclusion, or expert analysis so early in the discovery period of this action.  Discovery, investigation, research, expert reports, and analysis are ongoing in this action and may disclose the existence of additional facts, add meaning or interpretation to known facts, establish entirely new factual conclusions or legal contentions, or possibly lead to additions, variations, and/or changes to these responses.

3.    Plaintiffs object to each Request to the extent that it requires an expert opinion or consultation with an expert.  Plaintiffs further object to each Request to the extent it seeks information that is premature prior to the conclusion of fact or expert discovery.  Plaintiffs further object to the Requests to the extent that a response will necessarily involve expert testimony, and disclosure of expert testimony is premature at this time.  Plaintiffs reserve the right to supplement or modify any information

- 2 -

4928-5394-2805.v1

herein, including evidentiary materials, resulting from expert testimony and discovery in this action.

4.      Plaintiffs object to each Request to the extent that it uses the terms "disclose" and "reported" without defining either.  Plaintiffs further object that each of the above terms is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object that each Request that uses the term "disclose" is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact.  Plaintiffs further object to the use of each term to the extent that the determination of whether Defendants "disclosed" or an analyst "reported" certain information will necessarily involve expert testimony, and disclosure of expert testimony is premature at this time.

5.      Plaintiffs object to each Request to the extent that it asks for Plaintiffs to confirm that certain words appear in Defendants' SEC filings, Defendants' public statements, or in third-party reports.  Plaintiffs further object that each such Request that refers to outside documents, either documents in Defendants' or a third party's possession, seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to each such Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs further object that each such document referenced in the Request speaks for itself.  By admitting any such Request that refers to outside documents, Plaintiffs only confirm that the words that Defendants cite in their Requests appear therein; Plaintiffs do not admit the truth of those words.

6.      Plaintiffs object to each Request to the extent that it calls for information that is not relevant to either party's claim or defense and/or to the extent it seeks information that is not proportional to the needs of the case, in light of the importance of the issues at stake in the case, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the information in resolving the issues in the case and the burden or expense of obtaining the information or any factual assertions contained therein.

- 3 -

4928-5394-2805.v1

7.      Plaintiffs do not admit, adopt, or acquiesce in any factual or legal contention, assertion, characterization, or implication that is contained in the Requests or any underlying documents or statements.  In responding to the Requests, Plaintiffs will admit or deny (if possible) only the facts stated in the Requests, as clarified by Plaintiffs' Responses (where applicable).

8.      By responding to the Requests, Plaintiffs do not concede or waive any rights to subsequently object to the relevance, materiality, or admissibility as evidence of any of the information sought.

9.      By making a specific objection to a Request, Plaintiffs do not imply that the specific objection is not applicable in response to any other Request or that the General Objections are not applicable to the Request.

10.      In providing information in response to the Requests, Plaintiffs do not in any way waive, or intend to waive, but rather intend to preserve, and are preserving:

(a)      all objections as to competency, proportionality, relevancy, materiality, authenticity, and admissibility of any Request, the Responses, and their subject matter;

(b)      all objections as to vagueness, ambiguity, or other infirmity in the form of the discovery requests, and any objections based on the undue burden imposed by the Requests;

(c)      all rights to object on any ground to the use of any of the information produced in response to the Requests or their subject matter in any subsequent proceedings, including at summary judgment or trial in this or any other action;

(d)      all rights to object on any ground to any further Requests or other discovery involving or related to the subject matter of any Request;

(e)      rights to amend, modify, supplement, or clarify any of the responses or objections set forth herein at a later time; and

- 4 -

4928-5394-2805.v1

(f)      any and all privileges and rights under the applicable sections of the Federal Rules of Civil Procedure, the Local Rules, or other statutes, guidelines, or common law.

No incidental or implied admissions are intended in these Responses, and Plaintiffs' response to all or any part of a Request also is not intended to be, and shall not be, a waiver by Plaintiffs of all or any part of its objections to that Request.

**IV.    SPECIFIC RESPONSES AND OBJECTIONS**

REQUEST FOR ADMISSION NO. 1:

Admit that in its August 9, 2017 report, market analyst *William Blair* reported that "in the March 2017 quarter, [Green Dot] management disclosed about 50% of the 5 million of active cards are on the 'new' products."  Attached hereto as Ex. 1.

RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's August 9, 2017 Green Dot report titled "Momentum Continues,

- 5 -

Increasing Estimates and Raising Rating to Outperform" contains the following words, among others:

> On an organic basis, active cards were 1% below year-ago-levels, and recent trends suggest the company is well on its way to achieving year-over-year card growth by early 2018. Management's commentary and recent results suggest the economics of new products (launched in the first half of 2016) are well above legacy products, and management has previously disclosed over 50% of active cards are on the new products.
>
> *        *        *
>
> **While management did not provide updated metrics for the June quarter, in the March 2017 quarter, management disclosed about 50% of the 5 million of active cards are on the "new" products, and the economics of the new cards are tracking well ahead of internal models**. We continue to believe improving customer mix remains a large opportunity for Green Dot and look forward to increased disclosure and the potential impact on earnings (likely accelerating revenue growth and improving margins). The cross-currents between improving per card metrics (i.e., revenue per card) are clearly skewed by a lower denominator (shrinking card base), but card profitability appears to be improving. This has been partly driven by two years of declining cards (excluding UniRush) and the move to paid reloads (from free reloads).

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 2:

Admit that on page 13 of Green Dot's Form 10-K for the period ended December 31, 2017 (issued February 27, 2018), it disclosed that the "margins for new products and services may not be as high as the margins we have experienced in the past."

RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document

- 6 -

4928-5394-2805.v1

outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a statement outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the words "margins for new products and services may not be as high as the margins we have experienced in the past," among others, appear in Green Dot's 306-page Form 10-K for the period ended December 31, 2017 (issued February 27, 2018).

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 3:

Admit that on page 33 of Green Dot's Form 10-K for the period ended December 31, 2017, Green Dot disclosed that in its "Account Services segment, organic revenue growth was driven in part by the continued trend of an improving mix in our active card portfolio toward higher revenue generating customers as compared to the prior year" and "a higher proportion of cards that are loaded by direct deposit."

RESPONSE TO REQUEST FOR ADMISSION NO. 3:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion.  Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact.   Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks

- 7 -

4928-5394-2805.v1

information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.  Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that appear in Green Dot's Form 10-K for the period ended December 31, 2017 (issued February 27, 2018) contains the following words, among others:

> Total operating revenues for the year ended December 31, 2017 increased 23.8% over the prior year.  This is a result of double digit organic revenue growth for the year ended December 31, 2017 and our acquisition of UniRush, which closed on February 28, 2017.  In our Account Services segment, organic revenue growth was driven in part by the continued trend of an improving mix in our active card portfolio toward higher revenue generating customers as compared to the prior year, improved unit economics on our new suite of prepaid card products, a higher proportion of cards that are loaded by direct deposit, and a return to year-over-year growth in the number of active cards in our organic portfolio during the second half of 2017.  These factors contributed to an improvement in the quality of our active card portfolio, as evidenced by greater customer engagement through increased gross dollar volume and purchase volume on a year-over-year basis.  In our Processing and Settlement Services segment, organic revenues also increased due to a) increased transactions and higher revenue per transaction in our Tax Processing revenue division, b) increased transactions and higher revenue per transaction in our Money Processing revenue division and c) substantially increased transaction volume from our Simply Paid product line.

Plaintiffs otherwise deny the request.

<u>REQUEST FOR ADMISSION NO. 4</u>:

Admit that in its February 12, 2018 report, market analyst *William Blair* reported that "Green Dot's improving customer mix (including more direct deposit customers)" and noted that "Management does not disclose the number of direct deposit customers."  Attached hereto as Ex. 2.

- 8 -

RESPONSE TO REQUEST FOR ADMISSION NO. 4:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.   Plaintiffs also object that the term "noted" is undefined, vague, ambiguous, and overbroad.   Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.  Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's February 12, 2018 Green Dot report titled "Organic Growth Acceleration in 2017 Sets the Table for Strong Fourth Quarter and 2018" contains the following words, among others:

> **The September quarter marked the first year-over-year increase in organic card growth after eight consecutive quarters of declines and was achieved several quarters ahead of expectations**. Though comparisons will get more challenging, Green Dot's improving customer mix (including more direct deposit customers) should support solid revenue growth and margin expansion in 2018.  Furthermore, Green Dot's integrated banking technology platform is expanding its target market beyond the legacy prepaid business
>
> *     *     *
>
> Management's commentary and recent results suggest the economics of new products (launched in the first half of 2016) are well

- 9 -

above legacy products, and management has previously disclosed over 50% of active cards are on the new products. Revenue per active card increased 5% in the third quarter, following 14% growth in 2016. We continue to believe improving customer mix remains   significant opportunity for Green Dot, as it has a key driver of accelerating revenue growth and improving margins.

\*       \*       \*

**We anticipate about 4% active card organic growth in the December quarter (versus 5% in the September quarter) to 5.2 million.  Management is aggressively pursuing both active card growth and increased cardholder activity (i.e., purchase volume, gross payment volume, direct deposit) and customer mix.** Management has previously indicated that direct deposit and potentially GoBank customers can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while others generate $15.  Management does not disclose the number of direct deposit customers.

\*       \*       \*

**We anticipate continued momentum of the Banking as a Service (BaaS) Platform, and look for additional details of the economics (versus the core prepaid business).**

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 5:

Admit that during Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that the "total active accounts increased for the second consecutive quarter, growing by 4.5% year-over-year . . . with active accounts receiving direct deposit, growing by 21% in the quarter," and that Green Dot was experiencing a "continuing long-term portfolio mix shift towards higher lifetime value accounts."

RESPONSE TO REQUEST FOR ADMISSION NO. 5:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves.  Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion.  Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact.  Plaintiffs further object to the extent the Request selectively

- 10 -

4928-5394-2805.v1

quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on statements outside of the Class Period.  Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's February 21, 2018 Earnings Call for Q4 2017 contains the following words, among others, attributed to defendant Streit:

> In our Account Services segment, organic growth and total active accounts increased for the second consecutive quarter, growing by 4.5% year-over-year despite a tougher year-ago comp, with active accounts receiving direct deposit, growing by 21% in the quarter.  This continuing long-term portfolio mix shift towards higher lifetime value accounts helped push organic Account Services gross dollar volume or GDV flowing through our programs up by 17%, marking the eighth successive quarter of year-over-year growth in organic GDV.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 6:

Admit that during Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that for 2018, "we intend to focus on attracting . . . consumer segments who are more likely to enroll in direct deposit" and "more and more people are using direct deposits."

RESPONSE TO REQUEST FOR ADMISSION NO. 6:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves.  Plaintiffs also object that the term "disclosed" is undefined, vague,

- 11 -

4928-5394-2805.v1

ambiguous, overbroad, and calls for a legal conclusion.  Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on statements outside of the Class Period.  Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's February 21, 2018 Earnings Call for Q4 2017 contains the following words, among others, attributed to defendant Streit:

> Now I'm pleased to review our performance and strong execution against our 2017 Six-Step Plan and also introduce our new 2018 Six-Step Plan, which will serve as the foundation for how we expect to again achieve double-digit top and bottom line growth.
>
> In 2017, step 1 was to grow the number of active accounts year-over-year by early 2018.  We beat that goal handily with a number of both organic accounts turning positive in Q3, nearly 6 months ahead of our plan, and consolidated active accounts also growing well ahead of plan.
>
> For 2018, step 1 will be to continue to grow the number of active accounts year-over-year and to improve the unit economics of those accounts.  In particular, we intend to focus on attracting millennials and other consumer segments who are more likely to enroll in direct deposit, take advantage of our award-winning mobile apps, benefit from our cash back rewards programs and enjoy the other features we've designed into our products to encourage higher deposits and longer-term retention. This, in turn, is expected to deliver increased average revenue per active account and more robust flow-through of that revenue to contribution margin.

Plaintiffs otherwise deny this Request.

- 12 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 7:

Admit that during Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit stated that "if you think about our established business lines or legacy business lines being prepaid cards and reloads . . . those two lines of business continue to be a good part of our revenue and certainly more than half of our revenue. But the new lines of business are sizable and getting more sizable. So the answer is our bread and butter from the old days is still our bread and butter today. Just like coffee is still important to Starbucks. But the new ads we put in are becoming more and more material."

RESPONSE TO REQUEST FOR ADMISSION NO. 7:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on statements outside of the Class Period. Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's February 21, 2018 Earnings Call for Q4 2017 contains the following words, among others, attributed to defendant Streit in response to an analyst question concerning "the materiality of the new business lines versus the established business lines and just any way to size that":

- 13 -

4928-5394-2805.v1

Oh gosh. I mean, obviously, we track our established products versus new products internally, but we disclosed just the segments. The answer is that our – if you think about our established business lines or legacy business lines being prepaid cards and reloads, right, that would be the historic Green Dot, those 2 lines of business continue to be a good part of our revenue and certainly more than half of our revenue. But the new lines of business are sizable and getting more sizable. So the answer is our bread and butter from the old days is still our bread and butter today. Just like coffee is still important to Starbucks. But the new ads we put in are becoming more and more material, which is, in part, why we're looking at different accounting presentations for next year. And while we've had to build out and have been excited to build out so much more sophistication in our operating platform because you're doing lots of different things simultaneously, and so that's been all part of our growth.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 8:

Admit that during Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Shifke stated that Green Dot was "evolv[ing] from . . . selling prepaid cards" into a "technology-forward branchless bank."

RESPONSE TO REQUEST FOR ADMISSION NO. 8:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on statements outside of the Class Period. Plaintiffs further object that the Request is compound.

- 14 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's February 21, 2018 Earnings Call for Q4 2017 contains the following words, among others, attributed to defendant Shifke:

> I would now like to discuss our plan to adjust our presentation of revenues beginning next year in 2019. As Green Dot's business model continues to successfully evolve from what used to be largely a monoline, single channel model of selling prepaid cards and cash reloads at retail stores, into a new kind of bank, a modern, pro-consumer, technology-forward branchless bank that offers many products and services directly to consumers and through enterprise-level partnerships via our Banking as a Service platform. We believe our current presentation of revenues should also evolve to ensure we are properly presenting our company's financial performance in a way that's transparent, easy to follow and fully reflective of our evolution into a unique, growing and increasingly diverse FinTech bank holding company.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 9:

Admit that during Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Shifke stated that "if you go back to where we started, it was prepaid card sold at retail, and today, we've got a platform where we're providing broader set of financial services and reaching consumers of enterprises that we partner."

RESPONSE TO REQUEST FOR ADMISSION NO. 9:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

- 15 -

4928-5394-2805.v1

Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a statement outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's February 21, 2018 Earnings Call for Q4 2017 contains the following words, among others, attributed to defendant Shifke in response to an analyst question about whether "there [are] some benchmarks that you look for or guidepost internally to say, 'Ha, this really is a business that's growing beyond the traditional unbanked, underbanked consumer?'  I don't know if it's demographic.  Do you see that we don't?  Or something else that can help us":

> Yes.  Just to echo what Steve said.  Now if you start from – if you go back to where we started, it was prepaid card sold at retail, and today, we've got a platform where we're providing broader set of financial services and reaching consumers of enterprises that we partner with.  So now if you have an Apple phone, you're getting our financial services.  And if you drive for Uber, you're getting our financial services.  And it continues on that we can provide broadly for – as Steve said, for all Americans on demand financial services.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 10:

Admit that during Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Shifke disclosed that "Green Dot's business model continues to successfully evolve from what used to be largely a monoline, single channel model of selling prepaid cards . . . into a new kind of bank . . . that offers many [digital] products and services directly to consumers and through enterprise-level partnerships via our Banking as a Service ["BaaS"] platform."

RESPONSE TO REQUEST FOR ADMISSION NO. 10:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves.  Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion.  Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal

- 16 -

4928-5394-2805.v1

conclusion, not a fact.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on statements outside of the Class Period.  Plaintiffs further object that Request No. 10 is duplicative of Request No. 8.  Plaintiffs object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's February 21, 2018 Earnings Call for Q4 2017 contains the following words, among others, attributed to defendant Shifke:

> I would now like to discuss our plan to adjust our presentation of revenues beginning next year in 2019.  As Green Dot's business model continues to successfully evolve from what used to be largely a monoline, single channel model of selling prepaid cards and cash reloads at retail stores, into a new kind of bank, a modern, pro-consumer, technology-forward branchless bank that offers many products and services directly to consumers and through enterprise-level partnerships via our Banking as a Service platform.  We believe our current presentation of revenues should also evolve to ensure we are properly presenting our company's financial performance in a way that's transparent, easy to follow and fully reflective of our evolution into a unique, growing and increasingly diverse FinTech bank holding company.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 11:

Admit that during Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit stated that "we think our BaaS programs will begin to become a big driver."

- 17 -

RESPONSE TO REQUEST FOR ADMISSION NO. 11:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a statement outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's February 21, 2018 Earnings Call for Q4 2017 contains the following words, among others, attributed to defendant Streit, in response to an analyst question concerning whether Green Dot is "going to have more meaningful contribution from some of these platform customers": "And as years go by, we think it will be way more material because we think our BaaS programs will begin to become a big driver, which isn't to say that our own products don't continue to grow beautifully, but it is a different kind of offering, right?"

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 12:

Admit that, collectively, the disclosures referenced in Requests for Admission ("RFAs") Nos. 3 through 11, above, disclosed that Green Dot's "product mix trend," as that term is used in the Amended Complaint, was moving toward direct deposit and BaaS accounts.

- 18 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 12:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the terms and phrase "disclosures," "disclosed," and "moving toward" are ambiguous, undefined, and call for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request, just as the Requests to which it refers, selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a statement outside of the Class Period. Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 13:

Admit that, when combined with the disclosure (RFA No. 2) that the "margins for new products and services may not be as high as the margins we have experienced in the past," and the disclosures in RFAs 3-11, Green Dot disclosed by the February 21, 2018 earnings call that the margins for these new products and services (*i.e.*, direct deposit and BaaS accounts) may not be as high as Green Dot had experienced in the past.

- 19 -

RESPONSE TO REQUEST FOR ADMISSION NO. 13:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the terms "disclosures" and "disclosed" are ambiguous, undefined, and call for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request, just as the Requests to which it refers, selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a statement outside of the Class Period. Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 14:

Admit that during Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit stated that "the margins on some of [Green Dot's] new BaaS programs are materially lower than those of our established and at scale legacy product lines."

RESPONSE TO REQUEST FOR ADMISSION NO. 14:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its

- 20 -

4928-5394-2805.v1

context.    Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a statement outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's February 21, 2018 Earnings Call for Q4 2017 contains the following words, among others, attributed to defendant Streit:

Step 4 in 2017 was to drive increasing efficiencies across our consolidated operating platform in order to successfully expand margins year-over-year, while still giving us room to invest in growth for tomorrow.  We did just that.  As detailed in step 3, we invested heavily and smartly to ensure that Green Dot has the opportunity to deliver compounding double-digit revenue growth for years to come, all while still allowing for margin expansion.  In fact, despite these platform growth investments adding millions to our expense base in 2017, we delivered full year-over-year adjusted EBITDA margin expansion of 140 basis points and grew EPS year-over-year by 48%.

For 2018, step 4 will remain the same, running an efficient business is always in style and we believe needs to be an ongoing key objective.  Despite the incremental year-over-year SG&A from new hires, the ongoing investments into better products for today and new products for tomorrow, the increasing expenses associated with scaling our operating platform to handle the load and the fact that the margins on some of our new BaaS programs are materially lower than those of our established and at scale legacy product lines, we intend to, once again, deliver adjusted EBITDA margin expansion in 2018 of at least another 100 basis points on a full year-over-year basis.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 15:

Admit that in its February 21, 2018 report, market analyst *Deutsche Bank* reported that Green Dot's "[p]urchase volume per active cards grew 10.5% Y/Y as the company continues to make progress on the direct deposit."  Attached hereto as Ex. 3.

- 21 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 15:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's February 21, 2018 Green Dot report titled "Monitoring Contribution from BAAS (ex-TurboTax)" contains the following words, among others: "Purchase volume per active cards grew 10.5% Y/Y as the company continues to make progress on the direct deposit driven by the payroll card portfolio, Rapid! PayCard, acquired through the UniRush acquisition."

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 16:

Admit that in its February 21, 2018 report, market analyst *Deutsche Bank* reported that "GDOT is repositioning itself as a FinTech company with the BAAS (Banking As A Service) initiatives." Attached hereto as Ex. 3.

- 22 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 16:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's February 21, 2018 Green Dot report titled "Monitoring Contribution from BAAS (ex-TurboTax)" contains the following words, among others:

> GDOT is repositioning itself as a FinTech company with the BAAS (Banking As A Service) initiatives. We will continue to monitor GDOT's ability to generate material revenue growth from these new BAAS initiatives that are outside its core prepaid business and TurboTax. While the company classifies TurboTax as BAAS (due to new technology architecture), we believe it's essentially part of the core prepaid business. Although Apple Cash and Uber are great partners, we do not expect material revenue contribution from those programs in the mid-term and believe the company's core business is still a prepaid card issuer focused on unbanked/underbanked market segment.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 17:

Admit that, by February 22, 2018, the market was aware: (1) that Green Dot's product mix trend was moving toward direct deposit and BaaS accounts; and (2) the

- 23 -

4928-5394-2805.v1

margins on Green Dot's new BaaS programs were materially lower than those of its established and at scale legacy product lines.

RESPONSE TO REQUEST FOR ADMISSION NO. 17:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a statement outside of the Class Period. Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 18:

Admit that in its February 22, 2018 report, market analyst *Lake Street Capital Markets* reported that "Green Dot reported another strong quarter" and the "[k]ey drivers were organic active card growth and more frequent card use due to a higher mix of direct deposit." Attached hereto as Ex. 4.

RESPONSE TO REQUEST FOR ADMISSION NO. 18:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and

- 24 -

overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.  Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Lake Street Capital Markets' February 22, 2018 Green Dot report titled "Direct Deposit Growth Driving Increased Rev/Card; Raising Estimates And Target; Maintain HOLD Rating" contains the following words, among others: "Green Dot reported another strong quarter with results just below our estimates but well ahead of consensus.  Key drivers were organic active card growth and more frequent card use due to a higher mix of direct deposit."

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 19:

Admit that in its February 22, 2018 report, market analyst *Lake Street Capital Markets* reported that Green Dot's "modeling for a slight acceleration of active card growth in 2018 to 7% driven by continued growth of direct deposit accounts which tend to be stickier (up 21% Y/Y)."  Attached hereto as Ex. 4.

RESPONSE TO REQUEST FOR ADMISSION NO. 19:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and

- 25 -

4928-5394-2805.v1

overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Lake Street Capital Markets' February 22, 2018 Green Dot report titled "Direct Deposit Growth Driving Increased Rev/Card; Raising Estimates And Target; Maintain HOLD Rating" contains the following words, among others:  "We are modeling for a slight acceleration of active card growth in 2018 to 7% driven by continued growth of direct deposit accounts which tend to be stickier (up 21% Y/Y)."

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 20:

Admit that in its February 22, 2018 report, market analyst *Craig Hallum* reported that Green Dot's "[o]rganic card growth of ~4.5% was in-line with our estimates with the higher revenue per card (0.8% Y/Y vs. our -1.4% Y/Y) being the primary driver of the revenue beat.  This was driven by the strength in direct deposit growth, which was up 80% Y/Y."  Attached hereto as Ex. 5.

RESPONSE TO REQUEST FOR ADMISSION NO. 20:

Plaintiffs incorporate each of their General Objections set forth above.  Plaintiffs further object that the document referenced in the Request speaks for itself.  Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and

- 26 -

4928-5394-2805.v1

overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Craig-Hallum's February 22, 2018 Green Dot report titled "Right Model At The Right Time; Management Expanding TAM And Driving Improving Economics.  Reiterate BUY Rating, Raising Our Price Target To $75" contains the following words, among others:

> We expect the beat and raise momentum to continue in 2018 as the company continues improving the economics per card with growing users and increased deposit and spending activity driven by increased functionality.

*        *        *

> **QTR: Beat On All Metrics.  Economics Per Card Continue To Improve**.
>
> •       Organic card growth of ~4.5% was in-line with our estimates with the higher revenue per card (0.8% Y/Y vs. our -1.4% Y/Y) being the primary driver of the revenue beat.  This was driven by the strength in direct deposit growth, which was up 80% Y/Y.

Plaintiffs otherwise deny this Request.

- 27 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 21:

Admit that in its February 22, 2018 report, market analyst *Craig Hallum* reported that Green Dot is "in the midst of an inflection point with Green Dot's successful transition to a BaaS platform."  Attached hereto as Ex. 5.

RESPONSE TO REQUEST FOR ADMISSION NO. 21:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Craig-Hallum's February 22, 2018 Green Dot report titled "Right Model At The Right Time; Management Expanding TAM And Driving Improving Economics.  Reiterate BUY Rating, Raising Our Price Target To $75" contains the following words, among others:

**STOCK OPPORTUNITY**

We have a Buy rating on Green Dot and are raising our price target to $75.  We believe we are in the midst of an inflection point with Green Dot's successful transition to a BaaS platform, powering their accelerated growth, TAM penetration and margin expansion.  Our $75 price target is based on 13.6x EV/multiple on our 2019 adjusted

- 28 -

4928-5394-2805.v1

EBITDA estimate of $268 million.  This multiple is somewhat below where PayPal trades today.  We see a lot of similarities with Green Dot and PayPal in that they are both democratizing financial services.  However with Green Dot's limited accelerated growth track record, smaller market cap and lower liquidity we believe a ~14x EV/EBITDA multiple, a discount to PayPal, to be appropriate.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 22:

Admit that in its February 22, 2018 report, market analyst *William Blair* reported that "Green Dot's improving customer mix should support solid revenue growth and margin expansion in 2018."  Attached hereto as Ex. 6.

RESPONSE TO REQUEST FOR ADMISSION NO. 22:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's February 22, 2018 Green Dot report titled "Momentum Continues With Top-/Bottom-Line Upside; Guide for 2018 Is in Line, Likely Conservative" contains the following words, among others:

- 29 -

4928-5394-2805.v1

Management's commentary and recent results suggest that the economics of new products (launched in the first half of 2016) are well above legacy products, and management has previously disclosed 50%-66% of its cardholders are using the new products, which have improved economics, but anticipates modest changes to the mix going forward. We continue to believe improving customer mix and growth of direct deposits remain large opportunities for Green Dot and look forward to increased disclosure and the potential impact to earnings (likely accelerating revenue growth and improving margins).

**Though comparisons will get more challenging, Green Dot's improving customer mix should support solid revenue growth and margin expansion in 2018**. Furthermore, we believe Green Dot's integrated banking technology platform is expanding its target market beyond the legacy prepaid business.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 23:

Admit that in its February 22, 2018 report, market analyst *William Blair* reported that Green Dot's "number of direct deposit customers rose 87% in the December quarter," and "Management does not disclose the number of direct deposit customers." Attached hereto as Ex. 6.

RESPONSE TO REQUEST FOR ADMISSION NO. 23:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request

- 30 -

4928-5394-2805.v1

disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period. Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's February 22, 2018 Green Dot report titled "Momentum Continues With Top-/Bottom-Line Upside; Guide for 2018 Is in Line, Likely Conservative" contains the following words, among others:

**Including the benefit from UniRush, the number of direct deposit customers rose 87% in the December quarter**. Management has previously indicated that direct deposit and potentially GoBank customers can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while others generate $15. Management does not disclose the number of direct deposit customers.

\* \* \*

**Management cited continued strong industry interest in its banking-as-a-service (BaaS) Platform, which is booked within the account services segment**. We believe Green Dot's comprehensive banking platform provides it with a unique competitive advantage with new partnerships and expands Green Dot's target market; however, the long-term economics of the business remain less clear, in our view.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 24:

Admit that in its February 26, 2018 report, market analyst *Guggenheim Securities LLC* reported that "[i]mportantly for GDOT, active accounts receiving direct deposit grew by 21% YoY in 4Q - the shift to direct deposit active accounts is driving significant expansion in GDV, which increased by 87%." Attached hereto as Ex. 7.

RESPONSE TO REQUEST FOR ADMISSION NO. 24:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document

- 31 -

4928-5394-2805.v1

outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Guggenheim Securities LLC's February 26, 2018 Green Dot report titled "GDOT – Can't Beat Dot Result in 4Q; We Expect a Strong '18E – Raising PT to $76" contains the following words, among others:

> **Key Conclusions**: 4Q's EPS beat ($0.29 vs. our/consensus' $0.24/$0.25) punctuated a record year for GDOT in 2017, and highlighted the company's sustained strong execution.  Looking ahead, we expect continued growth in active accounts and - more importantly - we believe GDV growth will remain high over the next few quarters.  These are the key drivers behind our forecast for another year of double-digit top- and bottom-line growth for GDOT in '18E/'19E; we continue to forecast above-consensus EPS.  Raising our PT from $72 to $76 (implying 15% upside) as we roll our numbers forward; we remain Buy-rated.
>
> . . . GDOT's strong revenue growth is being driven by several dynamics: most notably, Account Services delivered record revenue of $180M on continued expansion in total active accounts (5.26M), which grew by 27% YoY.  Importantly for GDOT, active accounts receiving direct deposit grew by 21% YoY in 4Q - the shift to direct deposit active accounts is driving significant expansion in GDV, which increased by 87% YoY.
>
> *        *        *
>
> Bottom line, we believe GDOT is well positioned to generate double-digit top- and bottom-line growth in '18E/'19E; we think 2018 sets up as another beat-and-raise year for GDOT - particularly given management's statements that it will continue to focus on improving the unit economics of its active accounts, which we would expect should drive higher GDV and revenue over time.

- 32 -

4928-5394-2805.v1

**In addition to our expectation for continued strong N-T performance, we also have a positive view of GDOT's M-T/L-T outlook**.  In particular, we like GDOT's ongoing Banking as a Service (BaaS) strategy, which we think will support incremental revenue and EPS expansion over the longer term.  Tax reform can also help sustain GDOT's strong growth, in our view, as the company plans to invest a portion of the tax savings into further high-growth initiatives.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 25:

Admit that in its April 13, 2018 report, market analyst *William Blair* reported that "Green Dot's integrated banking technology platform is expanding its target market beyond the legacy prepaid business."  Attached hereto as Ex. 8.

RESPONSE TO REQUEST FOR ADMISSION NO. 25:

Plaintiffs incorporate each of their General Objections set forth above.  Plaintiffs further object that the document referenced in the Request speaks for itself.  Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that the Request disregards Plaintiffs' allegations by asking Plaintiffs to opine on a document outside of the Class Period.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's April 13, 2018 Green Dot report titled "First-Quarter Preview, Rolling Out the Intuit Product and Expanding its Banking as a Service Strategy" contains the following words, among others:

- 33 -

4928-5394-2805.v1

> **Raising our March quarter adjusted EPS estimate to $1.27 (from $1.20), but our full-year estimates remain unchanged at $2.88 in 2018 and $3.32 in 2019; reiterate Outperform rating**. While comparisons become more challenging, Green Dot's improving customer mix should support solid revenue growth and margin expansion, and we expect management will at least affirm 2018 guidance on the upcoming earnings conference call. Furthermore, we believe Green Dot's integrated banking technology platform is expanding its target market beyond the legacy prepaid business and believe shares could support more of a fintech multiple. Green Dot shares currently trade at 13.6 times our 2018 adjusted EBITDA estimate and 11.4 times our 2019 estimate.

* * *

> **While revenue contribution is not disclosed, we anticipate Banking-as-a-Service (BaaS) initiatives (booked within the Account Services segment) could be a long-term growth driver for Green Dot**. We believe Green Dot's comprehensive banking platform provides it with a unique competitive advantage with new partnerships and expands Green Dot's target market; however, the long-term economics of the business remain less clear, in our view.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 26:

Admit that on page 28 of Green Dot's Form 10-Q for Q1 2018 (issued May 10, 2018), Green Dot disclosed that for Q1 2018 "[o]ur new product lines currently have margins below our established product lines."

RESPONSE TO REQUEST FOR ADMISSION NO. 26:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or

- 34 -

4928-5394-2805.v1

otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Green Dot's Form 10-Q for Q1 2018 (issued May 10, 2018) contains the following words, among others:

> Our total operating revenues for the three months ended March 31, 2018 increased $62.0 million, or 24.5%, over the prior year comparable period.  Our growth was driven by a 19% increase in our active accounts and greater customer engagement as evidenced by growth in gross dollar volume and purchase volume within our Account Services segment. Total operating revenues also increased as a result of year-over-year growth in the total number of cash transfers and the number of tax refunds processed within our Processing and Settlement Services segment.  In the first quarter of 2018, our Account Services segment had a mix of revenue from both our established product lines and several new product lines.  Our new product lines currently have margins below our established product lines and as a result, we experienced year- over-year margin compression during the quarter.  In the second half of 2018, we expect the revenue growth from our established product lines, as well as the maturation of our new products will offset the unfavorable mix impact in the first quarter.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 27:

Admit that, after May 10, 2018 (*i.e.*, the date of issuance of Green Dot's Form 10-Q for Q1 2018), the market was aware that Green Dot's new product lines were generating margins below its legacy prepaid accounts.

RESPONSE TO REQUEST FOR ADMISSION NO. 27:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion.  Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available

4928-5394-2805.v1

or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny.  Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 28:

Admit that, after May 10, 2018 (*i.e.*, the date of issuance of Green Dot's Form 10-Q for Q1 2018), the market was aware that Green Dot's new products were not generating the high-margin card fees of its legacy prepaid accounts.

RESPONSE TO REQUEST FOR ADMISSION NO. 28:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs also object to this Request as premature to the extent it calls for an expert opinion or requires consultation with an expert. Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny.  Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 29:

Admit that on page 29 of Green Dot's Form 10-Q for Q1 2018, Green Dot disclosed that "active accounts" includes "any bank account" within Green Dot

- 36 -

including "prepaid card accounts, demand deposit or 'checking' accounts, and credit card accounts."

RESPONSE TO REQUEST FOR ADMISSION NO. 29:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Green Dot's Form 10-Q for Q1 2018 (issued May 10, 2018) contains the following words, among others:

> **Number of Active Accounts** – represents any bank account within our Account Services segment that is subject to United States Patriot Act compliance and, therefore, requires customer identity verification prior to use and is intended to accept ongoing customer cash or ACH deposits. This includes general purpose reloadable prepaid card accounts, demand deposit or "checking" accounts, and credit card accounts in our portfolio that had a purchase, deposit or ATM withdrawal transaction during the applicable quarter. We had 6.01 million and 5.05 million active accounts outstanding as of March 31, 2018 and 2017, respectively. We use this metric to analyze the overall size of our active customer base and to analyze multiple metrics expressed as an average across this active account base. The increase in the number of active accounts of 19% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs.

- 37 -

4928-5394-2805.v1

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 30:

Admit that on page 29 of Green Dot's Form 10-Q for Q1 2018, Green Dot disclosed that for Q1 2018 growth, the "increase in the number of active accounts of 19% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs."

RESPONSE TO REQUEST FOR ADMISSION NO. 30:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Green Dot's Form 10-Q for Q1 2018 (issued May 10, 2018) contains the following words, among others:

> **Number of Active Accounts** – represents any bank account within our Account Services segment that is subject to United States Patriot Act compliance and, therefore, requires customer identity verification prior to use and is intended to accept ongoing customer cash or ACH deposits. This includes general purpose reloadable prepaid card accounts, demand deposit or "checking" accounts, and credit card accounts in our portfolio that had a purchase, deposit or ATM withdrawal transaction during the applicable quarter. We had 6.01 million and 5.05 million active accounts outstanding as of March 31,

- 38 -

4928-5394-2805.v1

2018 and 2017, respectively. We use this metric to analyze the overall size of our active customer base and to analyze multiple metrics expressed as an average across this active account base. The increase in the number of active accounts of 19% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 31:

Admit that, after May 10, 2018, the market was aware that the launch of new product lines was what had "primarily driven" the 19% increase in Green Dot's active accounts.

RESPONSE TO REQUEST FOR ADMISSION NO. 31:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 32:

Admit that during Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit stated that Green Dot had "increase[ed] the number of accounts receiving direct deposit by 930,000 on a year-over-year basis."

- 39 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 32:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 9, 2018 Earnings Call for Q1 2018 contains the following words, among others, attributed to defendant Streit:

> Now let me review how we're performing against our 2018 Six-Step Plan, our road map for ongoing growth. Step 1 was to continue to grow the number of active accounts year-over-year and to improve the unit economics of those accounts. As you know from the record-breaking results in Q1, we are well ahead on this goal, having added nearly 1 million new active accounts while increasing the number of accounts receiving direct deposit by 930,000 on a year-over-year basis.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 33:

Admit that during Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit stated there was "ongoing momentum in [Green Dot's] efforts to attract and retain direct deposit accounts."

RESPONSE TO REQUEST FOR ADMISSION NO. 33:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its

- 40 -

4928-5394-2805.v1

context.    Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 9, 2018 Earnings Call for Q1 2018 contains the following words, among others, attributed to defendant Streit:

> Of course, in our business, attracting and retaining the right kinds of customers is actually more important than the number of active customers in and of itself.  Specifically, we have previously shared that a direct deposit customer typically has a meaningfully higher lifetime value than accounts that do not receive direct deposit.  Given the ongoing momentum in our efforts to attract and retain direct deposit accounts, we're proud to share that the number of Green Dot customers who are now receiving direct deposit increased by 930,000 customers year-over-year, meaning that we added 900,000 new direct deposit accounts to our active portfolio as compared to the prior year period, with 80% of all GDV in the quarter being sourced through direct deposit, also setting a new record.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 34:

Admit that during Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit stated that Green Dot was "continuing [its] long-term portfolio mix shift towards higher lifetime value accounts."

RESPONSE TO REQUEST FOR ADMISSION NO. 34:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.    Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object

- 41 -

4928-5394-2805.v1

to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 9, 2018 Earnings Call for Q1 2018 contains the following words, among others, attributed to defendant Streit:

> The continuing long-term portfolio mix shift towards higher lifetime value accounts helped push the Account Services gross dollar volume or GDV flowing through our various Account Services products up by 57% year-over-year to more than $11.7 billion, setting another new record for our company.

> To put that number into perspective, we added more than $4 billion in GDV just in Q1 2018 over Q1 2017, which itself was up $1.2 billion over Q1 2016. While a good percentage of that growth came from our new Banking-as-a-Service programs, the majority or 62% of that growth came from our own established branded programs, illustrating the tremendous success we're having across our various product lines, both new and established.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 35:

Admit that during Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Shifke stated that "the mix of customers receiving direct deposit of funds grew substantially . . . such that now approximately one half of all our active accounts received direct deposit in the quarter."

RESPONSE TO REQUEST FOR ADMISSION NO. 35:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or

- 42 -

4928-5394-2805.v1

otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 9, 2018 Earnings Call for Q1 2018 contains the following words, among others, attributed to defendant Shifke:

> First, we increased total active accounts 19% year-over-year to approximately 6 million active accounts. Within the active account portfolio, the mix of customers receiving direct deposit of funds grew substantially, as Steve noted, such that now approximately 1/2 of all our active accounts received direct deposit in the quarter. In fact, 80% of all GDV flowing through our Account Services products came from direct deposit.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 36:

Admit that during Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit stated that "[m]uch of th[e] growth" in active accounts "came from our new Banking-as-a-Service or BaaS program," and "one-third of that growth came from our own established branded programs."

RESPONSE TO REQUEST FOR ADMISSION NO. 36:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that the Request is compound.

- 43 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 9, 2018 Earnings Call for Q1 2018 contains the following words, among others, attributed to defendant Streit:

> What's more impressive than how much we grew is the composition of that growth.  Much of this growth came from our new Banking-as-a-Service or BaaS program, as you might expect, given all the business wins we announced last year in that part of the business.  But more than 1/3 of that growth came from our own established branded programs.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 37:

Admit that during Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit stated that "one third is from the new programs, the BaaS programs [and] one-third of that growth is from our established programs, the legacy business, if you will."

RESPONSE TO REQUEST FOR ADMISSION NO. 37:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 9, 2018 Earnings Call for Q1 2018 contains the following words, among others, attributed to defendant Streit, in response to the analyst question asking "[w]hen you talk about the platform programs

- 44 -

4928-5394-2805.v1

and the extent of the growth they've driven, is that – can we interpret that as being materially or materially all the new tax programs as opposed to say Uber or Apple Pay Cash?  Is that the right way to think about it?":

> Well, kind of, sort of.  So we can't, as you can imagine, break apart individual programs for you all, but I can give you this guidance only because we kind of had a feeling we would get that question.  So if you think about the growth in Q1, think of that in thirds, with 1/3 of that growth being from the Banking-as-a-Service programs, which would include tax but also has Apple Pay Cash and has the Uber programs and some other things in there.  But 1/3 is from the new programs, the BaaS programs.  1/3 of that growth is from our established programs, the legacy business, if you will; and 1/3 of that growth was from 2 months of the UniRush acquisition, which had not lapped until March.  So it's really 1/3 and 1/3 and 1/3, and again, it shows you, Andrew, this broad-based growth we're enjoying from new products, old products and in this case, the acquisition in the quarter as well.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 38:

Admit that during Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit stated that "[a]s we shared in our last call, we expected that the newer branded product lines and the large-scale Banking-as-a-Service program launches that were expected to contribute material revenue growth in the quarter would have a much lower contribution margin than our established product lines and that is exactly what happened, causing consolidated margins to compress somewhat year-over-year . . . ."

RESPONSE TO REQUEST FOR ADMISSION NO. 38:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object

- 45 -

4928-5394-2805.v1

to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 9, 2018 Earnings Call for Q1 2018 contains the following words, among others, attributed to defendant Streit:

> As we shared in our last call, we expected that the newer branded product lines and the large-scale Banking-as-a-Service program launches that were expected to contribute material revenue growth in the quarter would have a much lower contribution margin than our established product lines and that is exactly what happened, causing consolidated margins to compress somewhat year-over-year, with margins on those programs expected to expand over future periods as those programs scale.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 39:

Admit that, during Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that, "to the extent that the more legacy products have monthly maintenance fees and so forth, they have higher revenue. So in order for the . . . BaaS cards to equal in revenue they'd have to be mostly direct deposit, which so far, they've been. So it could be, Mike, but they're very different fee schedules and different kinds of products. I don't know that we have an expectation that margins, because of that revenue, will ever be as rich as our legacy products, but they're all additive and they all do a good job."

RESPONSE TO REQUEST FOR ADMISSION NO. 39:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or

- 46 -

4928-5394-2805.v1

document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 9, 2018 Earnings Call for Q1 2018 contains the following words, among others, attributed to defendant Streit, in response to an analyst question asking about Green Dot's "TAM [total addressable market]" and whether Green Dot's "new platform cards . . . have the ability, over time, to kind of generate the same fees or economics of your legacy cards?":

> I don't know.  The answer is if a lot of them turn into heavy direct deposit users over the long term, the answer is it could be.  But to the extent that the more legacy products have monthly maintenance fees and so forth, they have higher revenue.  So in order for the TAM card – I'm sorry, for the BaaS cards to equal in revenue they'd have to be mostly direct deposit, which so far, they've been.  So it could be, Mike, but they're very different fee schedules and different kinds of products.  And I don't know that we have an expectation that margins, because of that revenue, will ever be as rich as our legacy products, but they're all additive and they all do a good job.  And over time, to the extent there are heavy deposits and heavy usage, they certainly could be.  It's very early to know.  And then in terms of the TAM and how penetrated we are, we don't think a whole lot.  Look, when we first launched the company, if you think back to the IPO in 2010, we thought the TAM, we described as underbanked and unbanked American families.  We said they were 60 million adults, I think is what the quote was, or the number was at that time, and we got that number from one of the federal agencies.  And that was the number that was used by a lot of companies, not just ours.  But now, the TAM really isn't that.  In other words, that TAM has nothing to do with an Apple program or an Intuit program or, for that matter, our Green Dot 5% card.  When you see us on MTV or Comedy Central, when you see a Green Dot ad, it has nothing to do with prepaid.  It's not – they don't even know – the viewer doesn't even know about prepaid.  It's just a new kind of bank account that appeals to a different generation with a different value proposition that feels very fair [and] organic and not tested on animals and all the cool things that you do with products that go after the millennial and younger audience.  And that's a new audience for us.  So if you think about the research that I alluded to in my prepared remarks, that a majority of young people,

- 47 -

4928-5394-2805.v1

young meaning under 44, indicate that they'd be very open to this kind of account, look, I don't know, we have 6 million accounts. Some are going to be from low-income people, a lot are not, which is why we're having such a great boon in direct deposit and GDV. We added [$4 billion-plus] in GDV in the quarter. And I mentioned, Mike, in the prepared remarks, over 2/3 of that – or 2/3 of that, rather, was not from new programs. It was from old-fashioned Green Dot and Walmart cards. So it shows you that we're still fairly early on in that TAM, and we've clearly been able to realign our sights higher to say, "Look, we'll always want to serve low and moderate income Americans because it's part of our mission. It's been a great part of our mission, and it continues and always will be part of our mission." But it turns out that having a really cool, modern, easy to get, low-cost, penalty-free card is not just for low-income people. Like – rich people like that, too, as it turns out. So we just seem to have a lot of new energy towards the products because it's not viewed as low income. It's just viewed as smart. And smart is in vogue in any segment.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 40:

Admit that during Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit stated that the high "year-over-year margin compression in Q1 is actually the net result of us having achieved materially expanded margins on our established product lines being offset by the materially lower margins generated on our large-scale new product lines."

RESPONSE TO REQUEST FOR ADMISSION NO. 40:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

- 48 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 9, 2018 Earnings Call for Q1 2018 contains the following words, among others, attributed to defendant Streit:

Step 3 is about continuing to invest prudently for future growth. As you can see from the more than $60 million in year-over-year revenue growth in the quarter, investing in new technologies, new products and new sales channels, along with investing in the people, infrastructure and internal controls to handle it all is an essential part of helping to achieve consistent growth over time.

Altogether, our recent investments into acquiring UniRush; developing a secured credit card product; creating the SimplyPaid disbursement engine; building out our Banking-as-a-Service platform that now powers program from Apple, Intuit, Uber and soon, Stash; and the new product features we've rolled out like Prize Savings at Walmart and the Green Dot 5% Cashback Debit card have been very successful for us, and we believe positions us to drive incremental growth for many quarters to come.

There is, of course, a near-term tradeoff when we make the decision to reinvest some of today's profits back into so many exciting high-potential growth initiatives for tomorrow. Absorbing the associated incremental platform and SG&A expenses on new programs that generally take some time to scale, and therefore, knowing we're going to need to absorb the resulting lower margins on those new programs is a philosophical approach Green Dot has embraced for several years.

The investments we made in the past are helping to propel the strong performance we have today. And we expect that investments we make today will help fuel the growth of tomorrow. For example, in Q1, several new programs drove a material amount of new revenue that had margins well below our established product margins. We discussed this dynamic on our fourth quarter call, but it's actually again worth noting since the year-over-year margin compression in Q1 is actually the net result of us having achieved materially expanded margins on our established product lines being offset by the materially lower margins generated on our large-scale new product lines.

As Mark will share in his section of the call, we are raising full year guidance for revenue and profitability while also reaffirming our expectations for 2018 margin expansion even when considering the growth investments we've made, and will continue to make, in initiatives intended to drive future growth. This ability to invest significant amounts of money into new growth initiatives while still generating year-over-year consolidated margin expansion is, we believe, a very compelling and sustainable part of our products and platform operating model.

Step 4 is part of why Step 3 works so well. That is continuing to drive increasing efficiencies across our consolidated operating platform in order to successfully expand margins year-over-year while still giving us room to invest in growth for tomorrow. While Q1 margins declined

- 49 -

4928-5394-2805.v1

for good reasons, as we just discussed, we're anticipating year-over-year margin expansion for the full year.  We believe there's still a lot of meat on the bone, so to speak, in terms of opportunities for operating efficiencies and transformational process improvements across the enterprise that we feel can help us continue to achieve these margin goals going forward.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 41:

Admit that in its May 9, 2018 report, market analyst *Cohen & Co.* reported that Green Dot's "[re]venue growth was contributed 1/3 by Banking as a Service programs, 1/3 by growth in legacy programs and 1/3 by the 2 months of the UniRush acquisition.  As expected, adj. EBITDA margin of 33.1% was down ~240 bps y-o-y reflecting outperformance from newer, lower margin revenue streams."  Attached hereto as Ex. 9.

RESPONSE TO REQUEST FOR ADMISSION NO. 41:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Cowen Equity Research's May 9, 2018 Green Dot report titled "GDOT 1Q18: Solid Top Line Performance" contains the following words, among others:

- 50 -

GDOT posted solid 1Q18 results that came in ahead of our top and bottom line estimates, largely reflecting revenue outperformance. Revenue of $315M was up 24.5% y-o-y (+16% organic), and was ~$11M ahead of our above consensus estimate. Revenue growth was contributed 1/3 by Banking as a Service programs, 1/3 by growth in legacy programs and 1/3 by the 2 months of the UniRush acquisition. As expected, adj. EBITDA margin of 33.1% was down ~240 bps y-o-y reflecting outperformance from newer, lower margin revenue streams. Adj. EPS of $1.40 was $0.11 ahead of our estimate/consensus with a lower share count and tax rate driving ~$0.03 of upside vs. our model. Active cards continued their positive momentum, with 1M new cards added in the quarter or ~21% y-o-y growth, with half of the growth coming from new programs. On an organic basis, GDOT still expects active card growth in the mid-single digits for the year. Both GDV and purchase volume posted strong double-digit growth (~57%/~36% y-o-y), with the number of customers receiving direct deposit increasing by 930K y-o-y.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 42:

Admit that in its May 9, 2018 report, market analyst *Cohen & Co.* reported that Green Dot's "[a]ctive cards continued their positive momentum, with 1M new cards added in the quarter or ~21% y-o-y growth, with half of the growth coming from new programs." Attached hereto as Ex. 9.

RESPONSE TO REQUEST FOR ADMISSION NO. 42:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

- 51 -

Subject to and without waiving the foregoing objections, Plaintiffs admit that Cowen Equity Research's May 9, 2018 Green Dot report titled "GDOT 1Q18: Solid Top Line Performance" contains the following words, among others:

> GDOT posted solid 1Q18 results that came in ahead of our top and bottom line estimates, largely reflecting revenue outperformance. Revenue of $315M was up 24.5% y-o-y (+16% organic), and was ~$11M ahead of our above consensus estimate. Revenue growth was contributed 1/3 by Banking as a Service programs, 1/3 by growth in legacy programs and 1/3 by the 2 months of the UniRush acquisition. As expected, adj. EBITDA margin of 33.1% was down ~240 bps y-o-y reflecting outperformance from newer, lower margin revenue streams. Adj. EPS of $1.40 was $0.11 ahead of our estimate/consensus with a lower share count and tax rate driving ~$0.03 of upside vs. our model. Active cards continued their positive momentum, with 1M new cards added in the quarter or ~21% y-o-y growth, with half of the growth coming from new programs. On an organic basis, GDOT still expects active card growth in the mid-single digits for the year. Both GDV and purchase volume posted strong double-digit growth (~57%/~36% y-o-y), with the number of customers receiving direct deposit increasing by 930K y-o-y.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 43:

Admit that in its May 9, 2018 report, market analyst *Deutsche Bank* noted Green Dot's "lower contribution margin for new programs." Attached hereto as Ex. 10.

RESPONSE TO REQUEST FOR ADMISSION NO. 43:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "noted" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and

- 52 -

4928-5394-2805.v1

its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's May 9, 2018 Green Dot report titled "Beats Conservative Guidance Again" contains the following words, among others, including that Green Dot "expects 100bps margin expansion for the full year":

**Guides 2Q18 EBITDA/EPS below street; raises full year guidance**.

In line with the prior quarters, GDOT beat conservative guidance. EBITDA margins declined y-o-y in 1Q18 and came in below expectations and company guided to 2Q18 EBITDA significantly below street estimates potentially due to lower contribution margin for new programs; however, the company expects 100bps of EBITDA margin expansion for FY18 driven by operating leverage in 2H18. GDOT also raised the full year guidance by the 1Q18 beat. Given the conservatism baked into the guidance, we are raising our FY18E and FY19E EPS to $3.07 and $3.37 respectively and our target price to $64. Maintain Hold.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 44:

Admit that in its May 9, 2018 report, market analyst *Deutsche Bank* reported that Green Dot's "[a]ctive cards increased 18% Y/Y to 5.96m, roughly inline with our estimate of 5.97, and was driven ~50% due to growth in the core and remaining 50% from new programs." Attached hereto as Ex. 10.

RESPONSE TO REQUEST FOR ADMISSION NO. 44:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object

- 53 -

4928-5394-2805.v1

to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's May 9, 2018 Green Dot report titled "Beats Conservative Guidance Again" contains the following words, among others: "Active cards increased 18% Y/Y to 5.96m, roughly inline with our estimate of 5.97, and was driven ~50% due to growth in the core and remaining 50% from new programs including TurboTax."

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 45:

Admit that in its May 9, 2018 report, market analyst *Deutsche Bank* reported that "GDOT added 930K new direct deposit customer to their portfolio compared to prior year.  Roughly ½ of the active cards received direct deposit in the quarter and 80% of the GDV came from direct deposit consumers."  Attached hereto as Ex. 10.

RESPONSE TO REQUEST FOR ADMISSION NO. 45:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

- 54 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's May 9, 2018 Green Dot report titled "Beats Conservative Guidance Again" contains the following words, among others:

> GDOT added 930K new direct deposit customer to their portfolio compared to prior year. Roughly 1/2 of the active cards received direct deposit in the quarter and 80% of the GDV came from direct deposit consumers (including tax refund from direct deposit). Increase in direct deposit customers led to 35% Y/Y increase in purchase volume to $7.44bn beating our estimate of $6.9bn.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 46:

Admit that in its May 9, 2018 report, market analyst *Guggenheim Securities LLC* reported that Green Dot's "[t]otal active accounts grew significantly in the first quarter, to 6M from 5M the year prior, due to significant consumer uptake of GDOT's direct deposit accounts." Attached hereto as Ex. 11.

RESPONSE TO REQUEST FOR ADMISSION NO. 46:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

- 55 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that Guggenheim Securities LLC's May 9, 2018 Green Dot report titled "Outlook Remains Robust; Raising PT to $78" contains the following words, among others:

> **1Q Results**: GDOT ($1.40) beat our/consensus' EPS forecasts ($1.34/$1.29) driven by robust organic revenue growth (+16% YoY), which improved by 400bps sequentially.  Including acquisitions, firmwide revenue grew by 25% YoY.  Revenue expansion is being driven by 1) the launch of new product lines, and 2) GDOT expanding its Banking-as-a-Service platform into new partnerships – including with Apple for its Apple Pay Cash P2P service, and the new TurboTax card offered by Intuit.  GDOT's strong top-line growth is being partly offset by margin compression – adjusted EBITDA of $104M was 16% higher YoY, but adjusted EBITDA margin of 33.1% was 240bps lower YoY due to the front-loading of expenses for newer initiatives.  Total active accounts grew significantly in the first quarter, to 6M from 5M the year prior, due to significant consumer uptake of GDOT's direct deposit accounts, which now account for 80% of GDV.  As a result of this strategic shift, GDV reached a new record in 1Q of $11.7B, an increase of 56% YoY.  Purchase volume was $7.5B, an increase of 36% YoY.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 47:

Admit that in its May 9, 2018 report, market analyst *BTIG* reported that Green Dot's "growth in gross dollar volume (GDV) per active account increased during 1Q18 by more than 32% versus the prior year period, a jump that management attributed in large part to an increase in direct-deposit accounts."  Attached hereto as Ex. 12.

RESPONSE TO REQUEST FOR ADMISSION NO. 47:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or

- 56 -

4928-5394-2805.v1

otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that BTIG's May 9, 2018 Green Dot report titled "Surge in 'Sticky' Direct-Deposit Accounts Helps Drive Beat-and-Raise That Could Reignite GDOT Shares" contains the following words, among others:

> Inasmuch as shares of Green Dot Corporation (GDOT) have slumped during the past six weeks – a pause that followed the stock's surge of more than 150% during 2017 – the company needed to provide investors with a reason to renew their enthusiasm for its story and prospects. GDOT this afternoon after the market close released a 1Q18 report that may have provided that spark as it featured a strong beat-and-raise across each of the metrics that matter to investors.

> • GDOT in its quarterly report posted new records in operating revenue, adjusted EBITDA and non-GAAP earnings per share and boosted its FY18 guidance for each metric, helping to address investor concerns about the sustainability of its operating momentum. Indeed, the company's growth in gross dollar volume (GDV) per active account increased during 1Q18 by more than 32% versus the prior year period, a jump that management attributed in large part to an increase in direct-deposit accounts that are "sticky" and therefore feature higher lifetime values.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 48:

Admit that in its May 9, 2018 report, market analyst *BTIG* reported that Green Dot's "Management during today's conference call disclosed that GDOT's direct-deposit accounts had increased by an impressive 930K in 1Q18 versus the prior year period as its total number of active accounts grew to 6.01mm from 5.05mm in 1Q17." Attached hereto as Ex. 12.

RESPONSE TO REQUEST FOR ADMISSION NO. 48:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and

- 57 -

overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that BTIG's May 9, 2018 Green Dot report titled "Surge in 'Sticky' Direct-Deposit Accounts Helps Drive Beat-and-Raise That Could Reignite GDOT Shares" contains the following words, among others:

Inasmuch as shares of Green Dot Corporation (GDOT) have slumped during the past six weeks – a pause that followed the stock's surge of more than 150% during 2017 – the company needed to provide investors with a reason to renew their enthusiasm for its story and prospects.  GDOT this afternoon after the market close released a 1Q18 report that may have provided that spark as it featured a strong beat-and-raise across each of the metrics that matter to investors.

• GDOT in its quarterly report posted new records in operating revenue, adjusted EBITDA and non-GAAP earnings per share and boosted its FY18 guidance for each metric, helping to address investor concerns about the sustainability of its operating momentum.  Indeed, the company's growth in gross dollar volume (GDV) per active account increased during 1Q18 by more than 32% versus the prior year period, a jump that management attributed in large part to an increase in direct-deposit accounts that are "sticky" and therefore feature higher lifetime values.

• Management during today's conference call disclosed that GDOT's direct-deposit accounts had increased by an impressive 930K in 1Q18 versus the prior year period as its total number of active accounts grew to 6.01mm from 5.05mm in 1Q17.  They added that 80% of the company's record $11.7bn in GDV in 1Q18 was associated with direct-deposit accounts.

Plaintiffs otherwise deny this Request.

- 58 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 49:

Admit that in its May 9, 2018 report, market analyst BTIG reported that "[a]s impressive as GDOT's 1Q18 beat was, what made it even more noteworthy was how broad-based the company's growth in GDV was during the quarter. Management said about a third of that growth was derived from new programs, about a third arose from legacy programs such as MoneyPak, and a third was driven by the company's acquisition of UniRush last year." Attached hereto as Ex. 12.

RESPONSE TO REQUEST FOR ADMISSION NO. 49:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that BTIG's May 9, 2018 Green Dot report titled "Surge in 'Sticky' Direct-Deposit Accounts Helps Drive Beat-and-Raise That Could Reignite GDOT Shares" contains the following words, among others:

- As impressive as GDOT's 1Q18 beat was, what made it even more noteworthy was how broad-based the company's growth in GDV was during the quarter. Management said about a third of that growth was derived from new programs, about a third arose from legacy programs such as MoneyPak, and a third was driven by the company's acquisition of UniRush last year.

- 59 -

4928-5394-2805.v1

*    *    *

- Management explained during today's call that with GDOT issuing so many new cards under both new and legacy programs, it "takes some time for the money to catch up." With that said, management projected that the company's adjusted EBITDA margin would increase by approximately 100bps during FY18 versus the prior year given their expectation that the margin would expand by 360bps during 2H18, reflecting the significant amount of operating leverage in its business model.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 50:

Admit that in its May 9, 2018 report, market analyst *William Blair* reported that "Green Dot added over 930,000 direct deposit accounts, which now represent about 50% of total accounts, and 80% of GDV was driven by direct deposit customers." Attached hereto as Ex. 13.

RESPONSE TO REQUEST FOR ADMISSION NO. 50:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's May 9, 2018 Green Dot report titled "Strong First Quarter as BaaS Clients Ramp Up; Raising Estimates" contains the following words, among others:

- 60 -

4928-5394-2805.v1

**While comparisons are becoming more challenging coming off a very strong 2017, Green Dot's new client additions under its banking-as-a-service (BaaS) model and improving customer mix support healthy long-term growth and margin expansion**. Over the last year, Green Dot added over 930,000 direct deposit accounts, which now represent about 50% of total accounts, and 80% of GDV was driven by direct deposit customers.  Further, high-margin interest income derived from deposits rose 89% year-over-year, to $5.3 million.  We believe Green Dot's integrated banking technology platform is expanding its target market beyond the legacy prepaid business.  Green Dot shares currently trade at 13.8 times our 2018 adjusted EBITDA estimate and 11.9 times our 2019 estimate.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 51:

Admit that in its May 9, 2018 report, market analyst *William Blair* reported that Green Dot's "[a]ctive cards rose 18% year-over-year, to 5.96 million (up from 5.05 million in the year-ago-quarter), driven evenly by traditional cards and new initiatives."  Attached hereto as Ex. 13.

RESPONSE TO REQUEST FOR ADMISSION NO. 51:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

- 61 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's May 9, 2018 Green Dot report titled "Strong First Quarter as BaaS Clients Ramp Up; Raising Estimates" contains the following words, among others:

> **Management's June quarter revenue guidance was slightly above our estimate, but EBITDA and EPS guidance was about 12% below our prior estimate, due to expenses related to the new business**. Management cited various expenses (call center, supply chain, card expense) that are associated with the new initiatives for the near-term margin pressure, but expressed confidence in expanding margins by about 100 basis points in 2018.  For the June quarter management anticipates approximately 12% revenue growth to $249 million (versus our prior estimate of $247 million), 4% adjusted EBITDA growth to $52 million (versus our prior estimate of $59 million), and 13% adjusted EPS growth to $0.62 (versus our prior estimate of $0.71).

> **Active cards rose 18% year-over-year, to 5.96 million (up from 5.05 million in the year-ago-quarter), driven evenly by traditional cards and new initiatives**.  Management anticipates midsingle-digit active card growth in 2018, but appears more focused on driving cardholder activity.  Purchase volume per card rose 15% year-over-year and revenue per active card rose 1% year-over-year; we believe these metrics highlight improving customer mix.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 52:

Admit that, by May 10, 2018, the market was aware that Green Dot was obtaining "materially lower margins" on its new product lines.

RESPONSE TO REQUEST FOR ADMISSION NO. 52:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion.  Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions

- 62 -

4928-5394-2805.v1

will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 53:

Admit that, by May 10, 2018, the market was aware that: (1) Green Dot legacy products generated higher revenue because of, among other things, monthly maintenance fees, and (2) in order for BaaS accounts to equal that revenue, they would also have to be mostly in the form of direct deposit accounts.

RESPONSE TO REQUEST FOR ADMISSION NO. 53:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 54:

Admit that in its May 10, 2018 report, market analyst *Morgan Stanley* reported that for Q1 2018 Green Dot "delivered revenue upside of ~$17mn during the quarter

4928-5394-2805.v1

vs. MSe/Cons $299/$297mn, driven by better active card growth (+19% YoY) in both legacy and new programs as well as better usage/revenue metrics across its broader product portfolio."

RESPONSE TO REQUEST FOR ADMISSION NO. 54:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Morgan Stanley's May 10, 2018 Green Dot report titled "Strong Tax Season Adds to Core Underlying Strength" contains the following words, among others:

> **1Q18 review**: GDOT delivered revenue upside of ~$17mn during the quarter vs. MSe/Cons $299/$297mn, driven by better active card growth (+19% YoY) in both legacy and new programs as well as better usage/revenue metrics across its broader product portfolio. Revenue benefits yielded Adjusted EBITDA of $104mn, which outperformed Cons at $100mn but missed MSe ($109mn). We note this was attributable to a mix shift towards newer products and BaaS programs that are relatively unscaled. Adj EPS of $1.40 was in-line with MSe and ahead of Cons at $1.29.

Plaintiffs otherwise deny this Request.

- 64 -

REQUEST FOR ADMISSION NO. 55:

Admit that in its May 10, 2018 report, market analyst *Morgan Stanley* reported that "GDOT's adjusted EBITDA margins compressed 240 bps YoY during the quarter due to mix shift towards newer branded product lines and BaaS program launches."

RESPONSE TO REQUEST FOR ADMISSION NO. 55:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Morgan Stanley's May 10, 2018 Green Dot report titled "Strong Tax Season Adds to Core Underlying Strength" contains the following words, among others:

> **Mixed: Back end loaded EBITDA margin expansion**: GDOT's adjusted EBITDA margins compressed 240 bps YoY during the quarter due to mix shift towards newer branded product lines and BaaS program launches that come with upfront expenses.  Margins are expected to remain pressured in 2Q, but should expand notably (>350bps YoY) in 2H as some of these programs start to scale, combined with leverage on SG&A expenses.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 56:

Admit that in its May 10, 2018 report, market analyst *Morgan Stanley* reported that Green Dot's "Direct Deposit card base continues to grow rapidly: We believe that

- 65 -

4928-5394-2805.v1

a growing Direct Deposit user base is one of the key drivers for GDOT's improved revenue profile given benefits of higher engagement and lifetime revenues.  GDOT noted that 50% of its active card portfolio is now on Direct Deposits, which denotes a very healthy mix with positive revenue implications."

RESPONSE TO REQUEST FOR ADMISSION NO. 56:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Morgan Stanley's May 10, 2018 Green Dot report titled "Strong Tax Season Adds to Core Underlying Strength" contains the following words, among others:

> **Positive: Direct Deposit card base continues to grow rapidly**: We believe that a growing Direct Deposit user base is one of the key drivers for GDOT's improved revenue profile given benefits of higher engagement and lifetime revenues.  GDOT noted that 50% of its active card portfolio is now on Direct Deposits, which denotes a very healthy mix with positive revenue implications.  We believe that 50% Direct Deposit user base also implies that there is ample remaining runway for growth.

Plaintiffs otherwise deny this Request.

- 66 -

4928-5394-2805.v1

<u>REQUEST FOR ADMISSION NO. 57</u>:

Admit that in its May 10, 2018 report, market analyst *Craig Hallum* reported that Green Dot's "large revenue beat was driven by the new Intuit relationship, increasing mix of direct deposit accounts (now ~50% of the portfolio), the new enterprise programs on the BaaS platform and from increasing use of mobile usage (1.5m mobile app downloads up 71% Y/Y)." Attached hereto as Ex. 14.

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 57</u>:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Craig-Hallum's May 10, 2018 Green Dot report titled "'Wheels Up' – Accelerating Fundamentals Across The Board. Early Stages of Banking-as-a-Service (BaaS) Evolution To Sustain Growth For Years Ahead, Reiterate BUY Rating, Raising Price Target To $80" contains the following words, among others:

> GreenDot's Banking-as-a-Service model has substantially expanded its historical prepaid unbanked TAM (20% of U.S) to include the underbanked of at least 40% of America (est. 110M adults). Employers/Employees and the Gig Economy are seeking solutions to make payroll/payments faster and cheaper. We believe we are in the early stages of the evolution of underbanked moving from branch based penalty models towards payment based banking models.

Green Dot's branchless interchange based revenue model provides a low cost solution. Adding mobile convenience is driving people to steer direct payroll deposits to GreenDot which is accelerating spending volumes and interchange revenues. GreenDot's world class enterprise level relationship puts it in a strong position to grow existing products and win new relationships, driving double digit revenue growth and expanding margins for the foreseeable future.

**QTR: Beat On Top & Bottom Line Driven By Intuit Win & BaaS Programs**.

• A large revenue beat was driven by the new Intuit relationship, increasing mix of direct deposit accounts (now ~50% of the portfolio), the new enterprise programs on the BaaS platform and from increasing use of mobile usage (1.5m mobile app downloads up 71% Y/Y).

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 58:

Admit that in its May 10, 2018 report, market analyst *Craig Hallum* reported that Green Dot's "EBITDA only beat slightly given much of the revenue was off new lower margin BaaS programs that have yet to scale." Attached hereto as Ex. 14.

RESPONSE TO REQUEST FOR ADMISSION NO. 58:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

- 68 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that Craig-Hallum's May 10, 2018 Green Dot report titled "'Wheels Up' – Accelerating Fundamentals Across The Board.  Early Stages of Banking-as-a-Service (BaaS) Evolution To Sustain Growth For Years Ahead, Reiterate BUY Rating, Raising Price Target To $80" contains the following words, among others:

- EBITDA only beat slightly given much of the revenue was off new lower margin BaaS programs that have yet to scale.

\* \* \*

**Outlook: Full Year Guide Raised.   EBITDA Margins Left Unchanged**.

- The 2Q guide was a bit light on EBITDA due to timing of investments in rollout of new BaaS programs but is likely conservative given the overall momentum.

- Success of current programs and the strong pipelines discussed on the call further increased our conviction of sustainable double digit revenue growth and expanding EBITDA margins for years ahead.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 59:

Admit that in its May 10, 2018 report, market analyst *JPMorgan & Co.* reported that Green Dot's "[r]evenues increased 25% (or 16% organic, up four points sequentially), driven by 1M new accounts versus the prior year period (1/3rd of the growth from established branded programs)."  Attached hereto as Ex. 15.

RESPONSE TO REQUEST FOR ADMISSION NO. 59:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object

- 69 -

4928-5394-2805.v1

to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that J.P. Morgan's May 10, 2018 Green Dot report titled "1Q18 Recap: Solid Growth Quarter, Raising Estimates and PT" contains the following words, among others:

> Revenues increased 25% (or 16% organic, up four points sequentially), driven by 1M new accounts versus the prior year period (1/3rd of the growth from established branded programs), and better card usage, engagement and unit economics.  EBITDA margins declined 240bps from the prior year period to 33.1% (JPMe 34.2%), due to launch costs associated with new programs and other investments.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 60:

Admit that in its May 10, 2018 report, market analyst *JPMorgan & Co.* reported that Green Dot's "80% of GDV was loaded via direct deposit, the number of direct deposit accounts increased >900k from the prior year period, and now account for roughly half of GDOT's ~6M active accounts, driving increased engagement and unit economics."  Attached hereto as Ex. 15.

RESPONSE TO REQUEST FOR ADMISSION NO. 60:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or

- 70 -

otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that J.P. Morgan's May 10, 2018 Green Dot report titled "1Q18 Recap: Solid Growth Quarter, Raising Estimates and PT" contains the following words, among others:

> **Core card metrics stable to better sequentially**.  EOP active cards increased 18% (JPMe 16%).  Money transfers increased 2% (JPMe 6%), down four points sequentially.  GDV load and purchase volume increased 51% (JPMe 23%) and 35% (JPMe 42%), respectively, which impressed us.  Importantly, 80% of GDV was loaded via direct deposit, the number of direct deposit accounts increased >900k from the prior year period, and now account for roughly half of GDOT's ~6M active accounts, driving increased engagement and unit economics.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 61:

Admit that in its May 15, 2018 report, market analyst *JPMorgan & Co.* reported that "Streit believes GDOT's products and services appeal to a broad swath of consumers, evidenced by the fact that direct deposit accounts for roughly 80% of card load and account holders are increasingly using bill pay, check writing and digital features."  Attached hereto as Ex. 16.

RESPONSE TO REQUEST FOR ADMISSION NO. 61:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or

- 71 -

4928-5394-2805.v1

otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that J.P. Morgan's May 15, 2018 Green Dot report titled "J.P. Morgan Conference Takeaways – ALERT" contains the following words, among others:

- ***GDOT attributed its recent string of beat and raises to***: (1) the successful launch/adoption of several new feature-rich cards, (2) a rising mix of direct deposit users, (3) millennials embracing digital banking (nearly 60% of GDOT branded customers are millennials), and (5) new acquisition channels (like digital and various BaaS partnerships) that put GDOT "in the flow," without heavy marketing spend.  It appears GDOT has reached an inflection point; key KPIs and anecdotes point to greater user engagement, which could ultimately drive longer account life and customer lifetime value.

- ***Expanded TAM***.  CEO Steve Streit no longer views the prepaid industry as a distinct market, but rather a part of the broader banking industry.  Streit believes GDOT's products and services appeal to a broad swath of consumers, evidenced by the fact that direct deposit accounts for roughly 80% of card load and account holders are increasingly using bill pay, check writing and digital features.  With the introduction of digital products and reward cards, GDOT believes its TAM has nearly doubled to 110M users.  Retail remains its largest customer acquisition channel, but all channels are performing well, particularly online/digital, where customer lifetime value metrics are highest.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 62:

Admit that in its June 14, 2018 report, market analyst *William Blair* reported "the evolution of Green Dot's business from a prepaid company to a bank/fintech company."  Attached hereto as Ex. 17.

RESPONSE TO REQUEST FOR ADMISSION NO. 62:

Plaintiffs incorporate each of their General Objections set forth above.  Plaintiffs further object that the document referenced in the Request speaks for itself.  Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the

- 72 -

document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's June 14, 2018 Green Dot report titled "Highlights from William Blair's 38th Annual Growth Stock Conference" contains the following words, among others:

> **Green Dot's president, CEO, and director, Steve Streit, and CFO, Mark Shifke, attended William Blair's 38 Annual Growth Stock Conference and provided a broad overview of the evolution of Green Dot's business from a prepaid company to a bank/fintech company**. We believe Green Dot's new client additions under its banking-as-a-service (BaaS) model, its improving customer mix, and expanded market opportunity could support healthy long-term growth and margin expansion. Further, the company benefits from strong recurring revenues driven by over 6 million cardholders (growing at a midsingle-digit clip) and over 12 million tax processing customers.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 63:

Admit that in its June 14, 2018 report, market analyst *William Blair* reported that "Green Dot's new client additions under its banking-as-a-service (BaaS) model, its improving customer mix, and expanded market opportunity could support healthy long-term growth and margin expansion." Attached hereto as Ex. 17.

RESPONSE TO REQUEST FOR ADMISSION NO. 63:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and

- 73 -

overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's June 14, 2018 Green Dot report titled "Highlights from William Blair's 38th Annual Growth Stock Conference" contains the following words, among others:

> **Green Dot's president, CEO, and director, Steve Streit, and CFO, Mark Shifke, attended William Blair's 38 Annual Growth Stock Conference and provided a broad overview of the evolution of Green Dot's business from a prepaid company to a bank/fintech company**.  We believe Green Dot's new client additions under its banking-as-a-service (BaaS) model, its improving customer mix, and expanded market opportunity could support healthy long-term growth and margin expansion.  Further, the company benefits from strong recurring revenues driven by over 6 million cardholders (growing at a midsingle-digit clip) and over 12 million tax processing customers.
>
> *             *             *
>
> **Management appeared to us to be incrementally confident in sustaining double-digit organic revenue growth and in expanding margins**.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 64:

Admit that in its June 14, 2018 report, market analyst *William Blair* reported that "Green Dot's focus on growing direct deposit customers a few years ago represented a material change for the company and has substantially improved the quality of the customer base; 930,000 new direct deposit customers were added over

- 74 -

last 12 months and now represent about 50% of total accounts." Attached hereto as Ex. 17.

RESPONSE TO REQUEST FOR ADMISSION NO. 64:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's June 14, 2018 Green Dot report titled "Highlights from William Blair's 38th Annual Growth Stock Conference" contains the following words, among others:

> **Green Dot's focus on growing direct deposit customers a few years ago represented a material change for the company and has substantially improved the quality of the customer base; 930,000 new direct deposit customers were** added over last 12 months and now represent about 50% of total accounts. Direct deposit customers extend the average life of a customer and drive interest income. Further, Green Dot has significantly increased its direct account originations through various websites, which has a much higher success in adding direct deposit customers and eliminates revenue sharing from in-store originated accounts. The company has various services to drive direct deposits, such as SimplyPaid, which started with Uber, and which accelerates payments to both W-2 and 1099 employees (booked in Processing/Settlement revenues). Management previously indicated that direct deposit (and potentially GoBank customers) can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while other cards generate $15.

- 75 -

\* \* \*

**Management appeared to us to be incrementally confident in sustaining double-digit organic revenue growth and in expanding margins**.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 65:

Admit that in its July 10, 2018 report, market analyst *Jefferies* reported that "[Green Dot] is amid a fundamental shift in terms of its business model (e.g., focus on BaaS)." Attached hereto as Ex. 18.

RESPONSE TO REQUEST FOR ADMISSION NO. 65:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Jefferies's July 10, 2018 Green Dot report titled "Assuming Coverage of GDOT; BaaS Driving Fundamental Inflection & Green in '18" contains the following words, among others:

**We assume coverage of GDOT with a Buy rating and an $89 PT. Herein, we highlight our take on key topics influencing the stock including: (i) GDOT is uniquely poised to benefit from scarcity value in the prepaid/underbanked space; (ii) BaaS is fundamentally transforming the business and contributing to material revenue and**

- 76 -

**EPS beats; and (iii) competitive threats have largely abated and GDOT remains an industry leader**.

**Fundamentals are at an inflection point**.  We think the past several quarters have begun to show GDOT's true earnings power and that the company is in the midst of a fundamental shift in terms of its business model; after several quarters of investment, a strong top-line margin and earnings power are starting to take hold.  Fundamentals have beaten consensus estimates on the top and bottom line for the past 9+ quarters and we think the Street is underestimating the traction that GDOT is gaining in the market.

**Large TAM, with an estimated 60M US consumers underbanked, nearly 12x the number of current cardholders**.  We think GDOT benefits from its scarcity value among investors looking to play the prepaid theme.  We estimate the underbanked population at ~60M consumers – nearly 12x the number of active cards at GDOT.

**BaaS is fundamentally transforming the business – driving revenue and margin upside**.  We believe one of the key drivers at Green Dot is the BaaS platform.  At scale, we see BaaS driving recurring revenues off a largely fixed cost base, with correspondingly high incremental margins.   Although this dynamic will take time to materialize, it makes us incrementally bullish about the long-term margin expansion trajectory of the business.

**Competition ebbs and flows but GDOT is still the go-to**.  Currently, the largest two competitors in the US general purpose reloadable (GPR) card market are TSYS (TSS, Hold) and GDOT.  Although we believe competitive trends are worth monitoring and that new entrants, particularly smaller industry participants, may drive headline risk, we believe a core differentiator in the industry is breadth of retail locations and distribution.   We believe GDOT retains a significant advantage in this area.

**Valuation looks attractive in the context of growth and margin potential**.  GDOT shares have rallied over the past 12 months, but we believe the stock still has room to run, with multiple expansion and potential upside to Street estimates as drivers.  In our view, 2018 could be the year that consistent growth and a potential beat and rise rhythm help the stock re-rate higher and return to its > 25x multiple.

*        *        *

**Fundamentals Starting to Reflect a New Green Dot**

We believe that the past several quarters have started to show the true earnings power at Green Dot and that the company is amid a fundamental shift in terms of its business model (e.g., focus on BaaS).  Following several quarters of investment, strong top-line margin and earnings power are just starting to take hold.

**Fundamental tailwinds from BaaS (Banking as a Service) and Execution in the Core Business**

- 77 -

4928-5394-2805.v1

> We believe one of the key drivers of the recent strength at Green Dot and some of the more optimistic tone from investors was management's statement on the 1Q18 earnings call that one third of the quarter's 25% constant currency growth came from the BaaS platform. We believe this represents an important inflection point, demonstrating that Green Dot's oft-discussed TAM (Total Addressable Market) expansion from Banking-as-a-Service is beginning to drive material growth. Management again emphasized that it was still early days for BaaS, with very significant growth runway ahead. We discuss these topics later in this report, although we emphasize that these are some of the more salient sources of growth for the company.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 66:

Admit that in its July 10, 2018 report, market analyst *Jefferies* noted Green Dot "Management's statement on the 1Q18 earnings call that one third of the quarter's 25% constant currency growth came from the BaaS platform." Attached hereto as Ex. 18.

RESPONSE TO REQUEST FOR ADMISSION NO. 66:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "noted" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Jefferies's July 10, 2018 Green Dot report titled "Assuming Coverage of GDOT;

4928-5394-2805.v1

BaaS Driving Fundamental Inflection & Green in '18" contains the following words, among others:

> **We assume coverage of GDOT with a Buy rating and an $89 PT.  Herein, we highlight our take on key topics influencing the stock including: i) GDOT is uniquely poised to benefit from scarcity value in the prepaid/underbanked space; ii) BaaS is fundamentally transforming the business and contributing to material revenue and EPS beats; and iii) competitive threats have largely abated and GDOT remains an industry leader**.
>
> **Fundamentals are at an inflection point**.  We think the past several quarters have begun to show GDOT's true earnings power and that the company is in the midst of a fundamental shift in terms of its business model; after several quarters of investment, a strong top-line margin and earnings power are starting to take hold.  Fundamentals have beaten consensus estimates on the top and bottom line for the past 9+ quarters and we think the Street is underestimating the traction that GDOT is gaining in the market.
>
> **Large TAM, with an estimated 60M US consumers underbanked, nearly 12x the number of current cardholders**.  We think GDOT benefits from its scarcity value among investors looking to play the prepaid theme.  We estimate the underbanked population at ~60M consumers – nearly 12x the number of active cards at GDOT.
>
> **BaaS is fundamentally transforming the business – driving revenue and margin upside**.  We believe one of the key drivers at Green Dot is the BaaS platform.  At scale, we see BaaS driving recurring revenues off a largely fixed cost base, with correspondingly high incremental margins.  Although this dynamic will take time to materialize, it makes us incrementally bullish about the long-term margin expansion trajectory of the business.
>
> **Competition ebbs and flows but GDOT is still the go-to**.  Currently, the largest two competitors in the US general purpose reloadable (GPR) card market are TSYS (TSS, Hold) and GDOT.  Although we believe competitive trends are worth monitoring and that new entrants, particularly smaller industry participants, may drive headline risk, we believe a core differentiator in the industry is breadth of retail locations and distribution.  We believe GDOT retains a significant advantage in this area.
>
> **Valuation looks attractive in the context of growth and margin potential**.  GDOT shares have rallied over the past 12 months, but we believe the stock still has room to run, with multiple expansion and potential upside to Street estimates as drivers.  In our view, 2018 could be the year that consistent growth and a potential beat and rise rhythm help the stock re-rate higher and return to its > 25x multiple.

*     *     *

**Fundamentals Starting to Reflect a New Green Dot**

- 79 -

4928-5394-2805.v1

We believe that the past several quarters have started to show the true earnings power at Green Dot and that the company is amid a fundamental shift in terms of its business model (e.g., focus on BaaS). Following several quarters of investment, strong top-line margin and earnings power are just starting to take hold.

**Fundamental tailwinds from BaaS (Banking as a Service) and Execution in the Core Business**

We believe one of the key drivers of the recent strength at Green Dot and some of the more optimistic tone from investors was management's statement on the 1Q18 earnings call that one third of the quarter's 25% constant currency growth came from the BaaS platform. We believe this represents an important inflection point, demonstrating that Green Dot's oft-discussed TAM (Total Addressable Market) expansion from Banking-as-a-Service is beginning to drive material growth. Management again emphasized that it was still early days for BaaS, with very significant growth runway ahead. We discuss these topics later in this report, although we emphasize that these are some of the more salient sources of growth for the company.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 67:

Admit that in its July 10, 2018 report, market analyst *Jefferies* reported that Green Dot is "modeling operating margins of 15.7% in 2018, an increase of 7bp y/y, as we expect near-term business investment in BaaS to weigh on operating expenses in the near term."  Attached hereto as Ex. 18.

RESPONSE TO REQUEST FOR ADMISSION NO. 67:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and

- 80 -

4928-5394-2805.v1

its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Jefferies's July 10, 2018 Green Dot report titled "Assuming Coverage of GDOT; BaaS Driving Fundamental Inflection & Green in '18" contains the following words, among others:

> We are also modeling operating margins of 15.7% in 2018, an increase of 7bp y/y, as we expect near-term business investment in BaaS to weigh on operating expenses in the near term. Looking through periods of business reinvestment, we see long-term margin expansion potential on the grounds that BaaS provides a long-term margin expansion opportunity for Green Dot. At scale, we see BaaS driving recurring revenues off a largely fixed cost base, with correspondingly high incremental margins. Although this dynamic will take time to materialize, it makes us incrementally bullish about the long-term margin expansion trajectory of the business.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 68:

Admit that in its July 17, 2018 report, market analyst *Craig Hallum* reported that "Green Dot is Pioneering a New Distribution Model: By opening up their banking infrastructure via their 'BaaS' platform which essentially acts as a back bone for 'FinTechs' & Employers (FDIC insured deposits, etc.)." Attached hereto as Ex. 19.

RESPONSE TO REQUEST FOR ADMISSION NO. 68:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object

- 81 -

4928-5394-2805.v1

to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Craig-Hallum's July 17, 2018 Green Dot report titled "The New 'BaaS' Distribution Approach Is Not Well Understood Yet.  GDOT Could Be A Big Stock – We Lay Out A Path To ~$140 Stock In 2 Years.  Reiterating BUY Rating And Raising Our Price Target To $95" contains the following words, among others:

**The GDOT story is still not well understood/followed and we lay out how this could be a $140 stock in 2 years.  We believe this story will continue to gain attention as more investors understand and appreciate Green Dot's "Trojan Horse," which is their new distribution model**.  We are seeing "Phase 2" emerge in the FinTech world.  Single product FinTech's are beginning to build checking account services around their core product.  The bottleneck here is the banking charter which is required to offer banking services but difficult to obtain.  Even Square (Sell Rated) has recently had to withdraw its FDIC bank application (albeit we expect they intend to refile at a later date).

- **Green Dot is Pioneering a New Distribution Model**: By opening up their banking infrastructure via their "BaaS" platform which essentially acts as a back bone for "FinTechs" & Employers (FDIC insured deposits, etc.), Green Dot is pioneering a new banking distribution model and will likely see double digit account growth for the next 3-4 years.

- **We are seeing FinTechs build banking service capabilities around their core product offering**: Acorns, Moneylion, Square's Cash App, Venmo, Stash (in conjunction with GDOT relationship) have all recently announced the issuance of debit cards, a sign that "FinTechs" want to add additional checking account functionality to their core product set.

- We believe conservatively the company could double the number of accounts in the next 3-4 years, making this stock is a two year double from here (shown on page 2).  **If the company achieves ~5% penetration into their new distribution partners (Apple, Intuit, Stash, Uber) that alone could add ~6 million new accounts, or 2x where they are today**.  Not to mention, we have yet to see how these new programs will scale, which we expect will be better than currently modeled.

Plaintiffs otherwise deny this Request.

- 82 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 69:

Admit that in its July 25, 2018 report, market analyst *William Blair* reported that "Green Dot has evolved the business from a prepaid company to a bank/fintech company. We believe Green Dot's banking-as-a-service (BaaS) model, improving customer mix, and expanded market opportunity and strong recurring revenues driven by over 6 million cardholders should support healthy long-term growth." Attached hereto as Ex. 20.

RESPONSE TO REQUEST FOR ADMISSION NO. 69:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's July 25, 2018 Green Dot report titled "Expect Solid Second Quarter, Looking for Color on BaaS Pipeline" contains the following words, among others:

> **On the heels of meetings with Green Dot's CEO and CFO at William Blair's 38 Annual Growth Stock Conference in mid-June and ahead of June-quarter earnings (slated for Wednesday, August 8), we reiterate our Outperform rating**. Green Dot has evolved the business from a prepaid company to a bank/fintech company. We believe Green Dot's banking-as-a-service (BaaS) model, improving customer mix, and expanded market opportunity and strong recurring revenues driven by over 6 million cardholders should support healthy long-term growth. We believe the Uber relationship could prove a

- 83 -

4928-5394-2805.v1

precursor for other "Gig" sector partners. All said, we believe Green Dot can potentially accelerate organic revenue growth into the double digits, with margin expansion and capital return driving upper-teens EPS growth over the long term. Shares trade at about 16 times our 2019 adjusted EBITDA and 24 times our 2019 EPS estimates. Green Dot shares appreciated 156% in 2017 and a further 39% to date in 2018 as earnings growth materially exceeded expectations and revenue growth accelerated.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 70:

Admit that in its July 25, 2018 report, market analyst *William Blair* reported that "Green Dot's focus on direct deposit customers represents a key strategy shift for the company; we believe about 50% of total customers use direct deposits, up substantially over the past few years." Attached hereto as Ex. 20.

RESPONSE TO REQUEST FOR ADMISSION NO. 70:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's July 25, 2018 Green Dot report titled "Expect Solid Second Quarter, Looking for Color on BaaS Pipeline" contains the following words, among others:

**Green Dot's focus on direct deposit customers represents a key strategy shift for the company; we believe about 50% of total**

- 84 -

4928-5394-2805.v1

**customers use direct deposits, up substantially over the past few years**.  Direct deposit customers extend the average life of a customer and drive interest income.  Further, Green Dot has significantly increased its direct account originations through various websites, which has a much higher success in adding direct deposit customers and eliminates revenue sharing from in-store originated accounts.  The company has various services to drive direct deposits, such as SimplyPaid, which started with Uber and accelerates payments to both W-2 and 1099 employees (booked in Processing/Settlement revenues).  Management previously indicated that direct deposit (and potentially GoBank customers) can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while other cards generate $15.

**Growth of direct-to-consumer products has bolstered performance**.  Green Dot has significantly increased its origination of new cardholders through direct or online marketing.  The directly originated customer is more likely to use direct deposits and generates more attractive returns compared to accounts originated through Green Dot's vast retail partnership network.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 71:

Admit that in its July 25, 2018 report, market analyst *William Blair* reported that Green Dot's BaaS "initiative appears to be pressuring near-term margins as the businesses ramp up."  Attached hereto as Ex. 20.

RESPONSE TO REQUEST FOR ADMISSION NO. 71:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and

- 85 -

4928-5394-2805.v1

its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's July 25, 2018 Green Dot report titled "Expect Solid Second Quarter, Looking for Color on BaaS Pipeline" contains the following words, among others:

> Expenses related to new business initiatives (i.e., call center, supply chain, cards) are likely to pressure margins over the near term; however, 2018 guidance suggests approximately 100 basis points of margin expansion.
>
> *       *       *
>
> **We look for additional clarity regarding the size and long-term economics of the BaaS initiatives (booked within the account services segment); management has previously cited a strong pipeline of new opportunities**. Green Dot BaaS clients include Apple (AAPL $193.79), Uber, Intuit (INTU $216.39; Outperform), Walmart (WMT $87.23), PayPal (PYPL $92.10; Outperform) OneMain, and Stash. The initiative appears to be pressuring near-term margins as the businesses ramp up and should clearly drive deposits and interest income, but the long-term economics of the business remain less clear, in our view.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 72:

Admit that on pages 29-30 of Green Dot's Form 10-Q for Q2 2018 (issued August 9, 2018), Green Dot disclosed that for Q2 2018, its Total Revenue grew 16.1% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 72:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks

- 86 -

4928-5394-2805.v1

information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 73:

Admit that on pages 29-30 of Green Dot's Form 10-Q for Q2 2018, Green Dot disclosed that for Q2 2018, Green Dot's Active Accounts grew 14% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 73:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

- 87 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 74:

Admit that on page 30 of Green Dot's Form 10-Q for Q2 2018, Green Dot disclosed that for Q2 2018, "[t]he increase in the number of active accounts of 14% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs."

RESPONSE TO REQUEST FOR ADMISSION NO. 74:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Green Dot's Form 10-Q for Q2 2018 (issued August 9, 2018) contains the following words, among others:

> **Number of Active Accounts** – represents any bank account within our Account Services segment that is subject to United States Patriot Act compliance and, therefore, requires customer identity verification prior to use and is intended to accept ongoing customer cash or ACH deposits. This includes general purpose reloadable prepaid card accounts, demand deposit or "checking" accounts, and credit card accounts in our portfolio that had a purchase, deposit or ATM withdrawal transaction during the applicable quarter. We had 5.86 million and 5.15 million active accounts outstanding as of June 30, 2018 and 2017, respectively. We use this metric to analyze the overall size of our active customer base and to analyze multiple metrics expressed as an

- 88 -

average across this active account base.  The increase in the number of active accounts of 14% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 75:

Admit that during Green Dot's August 8, 2018 Earnings Call for Q2 2018, Mr. Shifke stated that Green Dot was working to have its "portfolio mix move more towards direct deposit customers as a percentage of total and away from one-and-dones."

RESPONSE TO REQUEST FOR ADMISSION NO. 75:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's August 8, 2018 Earnings Call for Q2 2018 contains the following words, among others, attributed to defendants Shifke and Streit in response to William Blair Analyst Robert Paul Napoli's question about "[t]he accounts that you're adding, #1 out of 6 of your target achievements is higher revenue per account.  That is a lot of different types of accounts coming on.  Do you still expect to have increasing revenue per account or profitability per account even given the huge growth?":

- 89 -

4928-5394-2805.v1

[Shifke:] Yes. And I think just to further Steve's point. As you see the portfolio mix move more towards direct deposit customers as a percentage of total and away from one-and-dones, by definition, you'll have more revenue per active on the direct deposit customers than you will on your one-and-dones.

[Streit:] Well, since it's not a metric we guide, let me answer it a different way instead of saying what we expect. What we've seen is that more accounts and more revenue per account, because revenue is driven primarily by spend and retention. So they're all sort of a wheel of synergy that creates that outcome of more revenue. So we think that to the extent we can continue to issue more accounts and that our existing users like the products, they enroll in direct deposit, I think in the prepared remarks we said that of the 700,000 new accounts year-over-year, 500,000 were direct deposit accounts. And as you know, we had a spectacular statistic in Q1 on that as well. That's big stuff, right, because the more they use it, the more they will use it, unless we do something to alienate the customer, but we hope not. And that's what generates that increasing revenue over time because accounts grow in revenue over time as they become more seasoned with the customer. So we think we have a lot of good stuff ahead of us. That's probably the best way I can answer it.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 76:

Admit that during Green Dot's August 8, 2018 Earnings Call for Q2 2018, Mr. Streit disclosed that Green Dot gained "an additional 700,000 more active accounts, in which approximately 500,000 were new direct deposit accounts."

RESPONSE TO REQUEST FOR ADMISSION NO. 76:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or

- 90 -

4928-5394-2805.v1

otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's August 8, 2018 Earnings Call for Q2 2018 contains the following words, among others, and attributed to defendant Streit:

> In our Account Services segment, total revenue in the segment jumped by 17% to $204.3 million as total active accounts jumped for the sixth consecutive quarter, growing by 14% year-over-year to 5.9 million active accounts or an additional 700,000 more active accounts, in which approximately 500,000 were new direct deposit accounts. Again, this growth was 100% organic.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 77:

Admit that during Green Dot's August 8, 2018 Earnings Call for Q2 2018, Mr. Shifke disclosed that Green Dot's "direct deposit accounts grew by 28% year-over-year."

RESPONSE TO REQUEST FOR ADMISSION NO. 77:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object

- 91 -

4928-5394-2805.v1

to this Request to the extent that Green Dot's alleged disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's August 8, 2018 Earnings Call for Q2 2018 contains the following words, among others, attributed to defendant Shifke:

> Now diving into the segments. The Account Services segment delivered GAAP revenue of $204.3 million, representing organic year-over-year growth of 17%. We increased total active accounts in the quarter by 14% year-over-year to approximately 5.9 million active accounts. This active account growth was spectacular and well ahead of our internal expectations. Even more encouraging is that the growth in active accounts is being driven both by our newer BaaS Platform programs and our own products. As Steve alluded to in his remarks, the larger portfolio of actives also continues to demonstrate healthy growth metrics and a more profitable average account. Consider that direct deposit accounts grew by 28% year-over-year, which helped drive GDV to $9.4 billion in the quarter, which was 25% higher than last year. Again, all this growth is organic.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 78:

Admit that during Green Dot's August 8, 2018 Earnings Call for Q2 2018, Mr. Shifke stated that Green Dot's "growth in active accounts is being driven both by our newer BaaS Platform programs and our own products."

RESPONSE TO REQUEST FOR ADMISSION NO. 78:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

- 92 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's August 8, 2018 Earnings Call for Q2 2018 contains the following words, among others, attributed to defendant Shifke:

> Now diving into the segments.  The Account Services segment delivered GAAP revenue of $204.3 million, representing organic year-over-year growth of 17%.  We increased total active accounts in the quarter by 14% year-over-year to approximately 5.9 million active accounts.  This active account growth was spectacular and well ahead of our internal expectations.  Even more encouraging is that the growth in active accounts is being driven both by our newer BaaS Platform programs and our own products.  As Steve alluded to in his remarks, the larger portfolio of actives also continues to demonstrate healthy growth metrics and a more profitable average account.  Consider that direct deposit accounts grew by 28% year-over-year, which helped drive GDV to $9.4 billion in the quarter, which was 25% higher than last year.  Again, all this growth is organic.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 79:

Admit that in its August 8, 2018 report, market analyst *William Blair* reported that Green Dot's "[o]rganic revenue growth rose 16% year-over-year (versus 12% in the December 2017 quarter and 16% in the March quarter), with growth being evenly split between new initiatives and legacy products."  Attached hereto as Ex. 21.

RESPONSE TO REQUEST FOR ADMISSION NO. 79:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and

- 93 -

4928-5394-2805.v1

its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's August 8, 2018 Green Dot report titled "Strong Results Continue; Pipeline Remains Robust, Raising Estimates" contains the following words, among others:

> **Similar to recent history, Green Dot's June quarter results were strong, as revenues exceeded our estimate by 4.9% and adjusted EBITDA exceeded our estimate by 11%; management raised 2018 guidance**. Organic revenue growth rose 16% year-over-year (versus 12% in the December 2017 quarter and 16% in the March quarter), with growth being evenly split between new initiatives and legacy products. We believe underlying organic growth may have accelerated in the quarter, adjusted for the timing of the Intuit (INTU $210.04; Outperform) addition. Adjusted EBITDA rose 15% year-over-year, to $57.6 million (versus our estimate of $51.7 million), and adjusted EPS rose 33%, to $0.74 (versus our estimate of $0.62).

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 80:

Admit that in its August 8, 2018 report, market analyst *William Blair* reported Green Dot "Management's commentary suggests newer initiatives initially have lower margins but ramp up as customer usage grows. Further growth of direct deposit customers is very supportive of margins over time." Attached hereto as Ex. 21.

RESPONSE TO REQUEST FOR ADMISSION NO. 80:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object

- 94 -

4928-5394-2805.v1

to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's August 8, 2018 Green Dot report titled "Strong Results Continue; Pipeline Remains Robust, Raising Estimates" contains the following words, among others:

> **Management expressed confidence in Green Dot's long-term margin outlook, and cited 30% incremental EBITDA margins for the combined business**.  Management's commentary suggests newer initiatives initially have lower margins but ramp up as customer usage grows.  Further growth of direct deposit customers is very supportive of margins over time.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 81:

Admit that in its August 8, 2018 report, market analyst *William Blair* reported "Green Dot has evolved the business from a prepaid company to a fintech/payments/banking company, which has substantially expanded the total available market.  We believe the company remains in the early stages of the BaaS initiative."  Attached hereto as Ex. 21.

RESPONSE TO REQUEST FOR ADMISSION NO. 81:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object

- 95 -

to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's August 8, 2018 Green Dot report titled "Strong Results Continue; Pipeline Remains Robust, Raising Estimates" contains the following words, among others:

> **Reiterate Outperform rating as Green Dot has evolved the business from a prepaid company to a fintech/payments/banking company, which has substantially expanded the total available market. We believe the company remains in the early stages of the BaaS initiative**. We believe Green Dot's BaaS model, improving customer mix, expanded market opportunity, and strong recurring revenues should support healthy long-term growth. Further, we have been encouraged by the dramatic increase in adjusted EPS over the last several years: $1.46 in 2016, $2.21 in 2017, and over $3.00 in 2018. All said, we believe Green Dot can potentially sustain organic revenue growth into the double digits, with steady margin expansion and capital return driving upper-teens EPS growth over the long term. Shares trade at about 15.3 times and 13.0 times our 2019 and 2020 adjusted EBITDA estimates. We believe our estimates are conservative and that shares should at least appreciate in line with earnings growth.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 82:

Admit that in its August 8, 2018 report, market analyst *William Blair* reported Green Dot's "[a]pproximately 500,000 out of the 700,000 cards that have been activated for the last 12 months are direct deposit customers; we believe over 50% of active customers have direct deposit." Attached hereto as Ex. 21.

RESPONSE TO REQUEST FOR ADMISSION NO. 82:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks

- 96 -

4928-5394-2805.v1

information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's August 8, 2018 Green Dot report titled "Strong Results Continue; Pipeline Remains Robust, Raising Estimates" contains the following words, among others:

> **Approximately 500,000 out of the 700,000 cards that have been activated for the last 12 months are direct deposit customers; we believe over 50% of active customers have direct deposit**. Management previously indicated that direct deposit (and potentially GoBank customers) can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while other cards generate $15.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 83:

Admit that in its August 9, 2018 report, market analyst *BTIG* reported that half of Green Dot's GDV growth for Q2 2018 "was generated by its Banking as a Service [BaaS] . . . platform with the other half driven by its traditional products."

RESPONSE TO REQUEST FOR ADMISSION NO. 83:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or

- 97 -

4928-5394-2805.v1

otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that BTIG's August 9, 2018 Green Dot report titled "2Q18 Report Features 11th Straight EPS Beat-and-Raise, But Mixed 3Q18 Guidance Muddles the Picture" contains the following words, among others:

> GDOT's largest segment, Account Services, during 2Q18 generated operating revenue of $204.3mm, up 17% versus the prior year period.  Aiding that performance was a 14% increase in total active accounts to 5.9mm, marking the sixth straight quarter of growth in that metric.  The company's gross dollar volume (GDV) increased during 2Q18 by 25% year-over-year to $9.4bn, with management noting that half of that growth was generated by its Banking as a Service (BaaS) platform with the other half driven by its traditional products.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 84:

Admit that in its August 9, 2018 report, market analyst *BTIG* reported that "[Green Dot's] gross dollar volume (GDV) increased during 2Q18 by 25% year-over-year to $9.4bn, with management noting that half of that growth was generated by its Banking as a Service (BaaS) platform with the other half driven by its traditional products."

RESPONSE TO REQUEST FOR ADMISSION NO. 84:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object

- 98 -

4928-5394-2805.v1

to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object to this Request as duplicative of Request No. 83.

Subject to and without waiving the foregoing objections, Plaintiffs admit that in BTIG's August 9, 2018 Green Dot report titled "2Q18 Report Features 11th Straight EPS Beat-and-Raise, But Mixed 3Q18 Guidance Muddles the Picture" contains the following words, among others:

> GDOT's largest segment, Account Services, during 2Q18 generated operating revenue of $204.3mm, up 17% versus the prior year period. Aiding that performance was a 14% increase in total active accounts to 5.9mm, marking the sixth straight quarter of growth in that metric. The company's gross dollar volume (GDV) increased during 2Q18 by 25% year-over-year to $9.4bn, with management noting that half of that growth was generated by its Banking as a Service (BaaS) platform with the other half driven by its traditional products.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 85:

Admit that in its August 9, 2018 report, market analyst *JPMorgan & Co.* reported that Green Dot's "[r]evenues increased 16% (all organic), driven by a 700k increase in new accounts versus the prior year period (~1/2 of the growth from BaaS programs)." Attached hereto as Ex. 22.

RESPONSE TO REQUEST FOR ADMISSION NO. 85:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks

4928-5394-2805.v1

information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that J.P. Morgan's August 9, 2018 Green Dot report titled "2Q18 Recap: Solid Beat and Raise" contains the following words, among others:

**Headline results**.    Revs/EPS of $258M/$0.74 exceeded JPM/Street of $252M/$0.63 and $251M/$0.63, and upside was driven by better-than-expected card growth/usage and delayed investment spending. Revenues increased 16% (all organic), driven by a 700k increase in new accounts versus the prior year period (~1/2 of the growth from BaaS programs), and better card usage, engagement and unit economics. EBITDA margins declined 20bps from the prior year period to 22.3% (JPMe 21.0%), but were 140bps ahead of guidance, driven by a combination of delayed investment spend and better-than-expected BaaS margins.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 86:

Admit that, by August 9, 2018, the market was aware that approximately half of Green Dot's growth was from its new BaaS platform.

RESPONSE TO REQUEST FOR ADMISSION NO. 86:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs

- 100 -

4928-5394-2805.v1

object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 87:

Admit that in its September 27, 2018 report, market analyst *Zacks Equity Research* reported that "[c]urrently, [Green Dot's] BaaS platform programs are growing very quickly." Attached hereto as Ex. 23.

RESPONSE TO REQUEST FOR ADMISSION NO. 87:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Zacks Equity Research's September 27, 2018 Green Dot report contains the following words, among others:

> Green Dot's long-term strategic plan to be a "New Kind of Bank" is leading to impressive organic results. Strength across established product lines and BaaS platform programs are the key drivers of growth.

- 101 -

4928-5394-2805.v1

Currently, BaaS platform programs are growing very quickly. The company's longlasting relationship with Walmart is a key catalyst behind its operating revenue growth. A strong cash generation capacity allows the company to pursue strategic acquisitions and invest in growth initiatives. However, Green Dot is experiencing weak year-over-year comps and seasonal fluctuations in revenues. The company has never declared and currently do not have any plan to pay cash dividends on common stock. In a year's time, the stock has outperformed the industry it belongs to.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 88:

Admit that in its September 27, 2018 report, market analyst *Zacks Equity Research* reported that "Green Dot's long-term strategic plan to be a 'New Kind of Bank' is leading to impressive results. Strength across established product lines and BaaS platform programs are the key drivers of growth." Attached hereto as Ex. 23.

RESPONSE TO REQUEST FOR ADMISSION NO. 88:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Zacks Equity Research's September 27, 2018 Green Dot report contains the following words, among others:

- 102 -

4928-5394-2805.v1

Green Dot's long-term strategic plan to be a "New Kind of Bank" is leading to impressive organic results. Strength across established product lines and BaaS platform programs are the key drivers of growth. Currently, BaaS platform programs are growing very quickly. The company's longlasting relationship with Walmart is a key catalyst behind its operating revenue growth. A strong cash generation capacity allows the company to pursue strategic acquisitions and invest in growth initiatives. However, Green Dot is experiencing weak year-over-year comps and seasonal fluctuations in revenues. The company has never declared and currently do not have any plan to pay cash dividends on common stock. In a year's time, the stock has outperformed the industry it belongs to.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 89:

Admit that in its October 9, 2018 report, market analyst *William Blair* reported that "Green Dot has evolved the business from a prepaid company to a fintech/payments/banking company," and "[w] e believe Green Dot's banking- as-a-service (BaaS) model, improving customer mix, and expanded market opportunity and strong recurring revenues driven by over 6 million active accounts should support healthy long-term growth." Attached hereto as Ex. 24.

RESPONSE TO REQUEST FOR ADMISSION NO. 89:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that this Request is compound.

- 103 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's October 9, 2018 Green Dot report titled "Preview: Expect Solid Quarter, Looking for Announcements of New BaaS Partners" contains the following words, among others:

> We reiterate the Outperform rating ahead of September-quarter results; tweaking our quarterly estimates, but our annual estimates remain unchanged.  Green Dot has evolved the business from a prepaid company to a fintech/payments/banking company, which has substantially expanded the market opportunity.  We believe Green Dot's banking as- a-service (BaaS) model, improving customer mix, and expanded market opportunity and strong recurring revenues driven by over 6 million active accounts should support healthy long-term growth.  The company maintains a strong balance sheet; we estimate it will exit 2018 with $4.25 per share of net cash.  Shares trade at about 14.3 times our 2019 adjusted EBITDA estimate, 3.7 times revenue, and 23 times EPS.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 90:

Admit that in its October 9, 2018 report, market analyst *William Blair* reported that "[w]e look for clarity on Green Dot's long-term margin opportunity as the BaaS business ramps up; management has previously disclosed 30% incremental EBITDA margins for the combined business; we estimate 31% in 2018 and 42% in 2019. Management's commentary suggests newer initiatives initially have lower margins." Attached hereto as Ex. 24.

RESPONSE TO REQUEST FOR ADMISSION NO. 90:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or

- 104 -

4928-5394-2805.v1

otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's October 9, 2018 Green Dot report titled "Preview: Expect Solid Quarter, Looking for Announcements of New BaaS Partners" contains the following words, among others:

**We look for clarity on Green Dot's long-term margin opportunity as the BaaS business ramps up; management has previously disclosed 30% incremental EBITDA margins for the combined business; we estimate 31% in 2018 and 42% in 2019.** Management's commentary suggests newer initiatives initially have lower margins but ramp up as customer usage grows. Further growth of direct deposit customers is very supportive of margins over time.

\*    \*    \*

**We look for additional clarity into the long-term economics of the BaaS initiatives, but management's commentary suggests the the long-term margin opportunity is attractive.** We believe the initiative is pressuring near-term margins, but as the business ramps up, interest income and interchange revenues should grow. We believe the returns on the business are attractive and margins should scale materially over time, in line with the 30%-plus incremental margins of the traditional business.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 91:

Admit that in its October 9, 2018 report, market analyst William Blair reported that "[o]ur estimate is based on management's disclosure that about 50% of total revenue growth in the June quarter was driven by the BaaS business." Attached hereto as Ex. 24.

RESPONSE TO REQUEST FOR ADMISSION NO. 91:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and

- 105 -

4928-5394-2805.v1

overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's October 9, 2018 Green Dot report titled "Preview: Expect Solid Quarter, Looking for Announcements of New BaaS Partners" contains the following words, among others:

**We look for improved disclosure, but we roughly estimate that the BaaS business rose 175% year-over-year in the first half of 2018, to $27 million (less than 5% of net revenue)**.  Our estimate is based on management's disclosure that about 50% of total revenue growth in the June quarter was driven by the BaaS business; this suggests about $18 million of gross revenues (versus about $6 million in the June 2017 quarter).  Further, management disclosed commissions/processing-related costs associated with the BaaS service totaled $10.9 million in the June quarter (versus $3.8 million in the June 2017 quarter), and interest income rose 121% year-over-year, to $5.3 million.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 92:

Admit that in its October 9, 2018 report, market analyst *William Blair* reported that "Green Dot continues to benefit from improving customer mix highlighted by growth of direct deposit customers; on the June 2018 conference call, management indicated that over 70% of the 700,000 cards that were activated for the last 12 months are direct deposit customers, and we believe over 50% of active customers have direct deposit."  Attached hereto as Ex. 24.

- 106 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 92:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's October 9, 2018 Green Dot report titled "Preview: Expect Solid Quarter, Looking for Announcements of New BaaS Partners" contains the following words, among others:

> **Green Dot continues to benefit from improving customer mix highlighted by growth of direct deposit customers; on the June 2018 conference call, management indicated that over 70% of the 700,000 cards that were activated for the last 12 months are direct deposit customers, and we believe over 50% of active customers have direct deposit**. Management previously indicated that direct deposit (and potentially GoBank customers) can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while other cards generate $15.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 93:

Admit that in its October 26, 2018 report, market analyst *Craig Hallum* reported that "[w]e believe we are in the midst of an inflection point with Green Dot's successful transition to a BaaS platform." Attached hereto as Ex. 25.

- 107 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 93:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Craig-Hallum's October 26, 2018 Green Dot report titled "Show Me The Money From Money 20/20 – BaaS TAM Expanding Rapidly & The Best Way To Play Is Still GDOT & QTWO" contains the following words, among others:

> We have a Buy rating on Green Dot with a $95 price target. We believe we are in the midst of an inflection point with Green Dot's successful transition to a BaaS platform, powering their accelerated growth, TAM penetration and margin expansion. Our $95 price target is based on 16.6x EV/ multiple on our 2019 adjusted EBITDA estimate of $283 million.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 94:

Admit that in its October 29, 2018 report, market analyst *Zacks Equity Research* reported that Green Dot's "[s]trength across established product lines and BaaS platform programs are the key drivers of growth. Currently, BaaS platform programs are growing very quickly." Attached hereto as Ex. 26.

- 108 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 94:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Zacks Equity Research's October 29, 2018 Green Dot report contains the following words, among others:

> Green Dot's long-term strategic plan to be a "New Kind of Bank" is leading to impressive organic results. Strength across established product lines and BaaS platform programs are the key drivers of growth. Currently, BaaS platform programs are growing very quickly. The company's longlasting relationship with Walmart is a key catalyst behind its operating revenue growth. A strong cash generation capacity allows the company to pursue strategic acquisitions and invest in growth initiatives. In a year's time, the stock has outperformed the industry it belongs to. However, Green Dot is experiencing weak year-over-year comps and seasonal fluctuations in revenues. The company has never declared and currently do not have any plan to pay cash dividends on common stock.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 95:

Admit that in its October 29, 2018 report, market analyst *Zacks Equity Research* reported that "BaaS programs are contributing significantly to Green Dot's GDV growth, active card growth and revenue growth." Attached hereto as Ex. 26.

- 109 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 95:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Zacks Equity Research's October 29, 2018 Green Dot report contains the following words, among others:

- Green Dot's long-term strategic plan to be a "New Kind of Bank" is leading to impressive results. Strength across established product lines and BaaS platform programs are the key drivers of growth. Under the strategic plan, the company is focusing on the use of technology ubiquitous digital and retail brick-and-mortar distribution and large partnerships. It is trying to generate solid revenues from increasing customer satisfaction instead of rising customer penalty fees. These initiatives are expected to increase operating and financial momentum significantly, moving ahead.

- The company's Banking as a Service or BaaS platform programs are growing very quickly. BaaS programs are contributing significantly to Green Dot's GDV growth, active card growth and revenue growth. To make the platform more productive and increase its contribution, Green Dot is investing heavily in a number of large BaaS programs, including programs for Apple, Uber and Intuit. All these programs are expected to improve year over year.

- Green Dot's longstanding relationship with Walmart is a key driver of its operating revenues. The company has been providing Walmart branded GPS cards since the launch of the Walmart MoneyCard program in 2007. Green Dot Bank has been issuing those card accounts since 2014. Green Dot designs and delivers the Walmart

- 110 -

4928-5394-2805.v1

MoneyCard product and provides all ongoing program support, including network IT, website functionality, regulatory and legal compliance, customer service and loss management. Walmart provides it with shelf space to offer Green Dot-branded cards and GoBank checking account products. Green Dot's operating revenues derived from products and services offered through Walmart represented 40%, 45% and 46% of total operating revenues for 2017, 2016 and 2015, respectively.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 96:

Admit that on pages 30-31 of Green Dot's Form 10-Q for Q3 2018 (issued November 9, 2018), it disclosed that for Q3 2018, Green Dot's Total Revenue, as that term is defined therein, grew 14.4% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 96:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

- 111 -

REQUEST FOR ADMISSION NO. 97:

Admit that on pages 30-31 of Green Dot's Form 10-Q for Q3 2018, Green Dot disclosed that for Q3 2018, its Active Accounts, as that term is defined therein, grew 3% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 97:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 98:

Admit that on page 31 of Green Dot's Form 10-Q for Q3 2018, Green Dot disclosed that for Q3 2018, "[t]he increase in the number of active accounts of 3% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs."

- 112 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 98:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Green Dot's Form 10-Q for Q3 2018 (issued November 9, 2018) contains the following words, among others:

> **Number of Active Accounts** – represents any bank account within our Account Services segment that is subject to United States Patriot Act compliance and, therefore, requires customer identity verification prior to use and is intended to accept ongoing customer cash or ACH deposits. This includes general purpose reloadable prepaid card accounts, demand deposit or "checking" accounts, and credit card accounts in our portfolio that had a purchase, deposit or ATM withdrawal transaction during the applicable quarter. We had 5.43 million and 5.27 million active accounts outstanding as of September 30, 2018 and 2017, respectively. We use this metric to analyze the overall size of our active customer base and to analyze multiple metrics expressed as an average across this active account base. The increase in the number of active accounts of 3% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs.

Plaintiffs otherwise deny this Request.

- 113 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 99:

Admit that during Green Dot's November 7, 2018 Earnings Call for Q3 2018, Mr. Streit stated that Green Dot's "number of active accounts receiving direct deposit grew by 13% year-over-year."

RESPONSE TO REQUEST FOR ADMISSION NO. 99:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's November 7, 2018 Earnings Call for Q3 2018 contains the following words, among others, attributed to defendant Streit:

> In our Account Services segment, total revenue increased by 14% to $194 million, with a seventh consecutive quarter of active card growth of 3%, now to 5.4 million active accounts.  While the number of active accounts receiving direct deposit grew by 13% year-over-year.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 100:

Admit that during Green Dot's November 7, 2018 Earnings Call for Q3 2018, Mr. Streit stated that "in the last two years, Green Dot has added 1.3 million new active accounts and added 1.1 million direct deposit active accounts, a 2-year growth rate of 33% in actives and 114% in direct deposit actives."

- 114 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 100:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's November 7, 2018 Earnings Call for Q3 2018 contains the following words, among others, attributed to defendant Streit:

> To put this into perspective, looking back to Q3 2016, in the last 2 years, Green Dot has added 1.3 million new active accounts and added 1.1 million direct deposit active accounts, a 2-year growth rate of 33% in actives and 114% in direct deposit actives over the previous 2Q, 3 periods, a quarter that is typically our seasonally softest quarter.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 101:

Admit that during Green Dot's November 7, 2018 Earnings Call for Q3 2018, Mr. Streit stated that for Q3 2018, Green Dot "s[old] fewer one-and-done . . . [than] reloadable. The percentage of people who acquire our accounts now are far more likely to reload and when they reload, they're far more likely to do it through electronic means, meaning direct deposit. . . . That is real, and is a trend we see continuing. It has been there for a very, very long time, at least 1.5 or 2 years. And we see that opportunity continue."

- 115 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 101:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that this Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's November 7, 2018 Earnings Call for Q3 2018 contains the following words, among others, attributed to defendant Streit, in response to an analyst question about "organic revenue growth":

> I think it – what we said is it has the potential to it. Of course, it depends how that pipeline materializes. But the pipeline is pretty robust and the platform effect has the opportunity to do that. But let me comment on the active card number, because it is goofy. And we knew it stand out. It certainly stood out with us. So we guide mid to single digits, as you know, which most people take as 5. And if you think about the 3 months that make up the quarter, we were that or better. We were about 7% or 8% in July, 7% or 8% in August. And then September fell out of bed, and was like 2% or something. And that's why the average is where it is. So we actually went back and looked and there were some year-over-year comp issues in September discretely as it related to the natural disasters that happened last year and a large number of cards that we sold related to Disaster Relief and FEMA funds and other things that go into cards for that purpose. So it was just a wacky comp, if you will, but not indicative of anything related to the business. And in fact, for Q4, we think we'll be at 5% or above based on how we're tracking in October. So it is a strange number, and we knew it would stand out and so I'm glad you asked the question because it allowed me to explain it. But not anything we should focus on. Absent September, it would have been that same 5%, 6%, 7% average growth. So that's number one. But you bring up a good point that it is changing. We sell fewer one-and-done, for lack of a better word, or nonreloadable is a phrase we use, and not one and done, that's a wrong phrase because

- 116 -

4928-5394-2805.v1

they may use it several times, but nonreloadable versus reloadable. The percentage of people who acquire our accounts now are far more likely to reload and when they reload, they're far more likely to do it through electronic means, meaning direct deposit. And that does mean more revenue per card. That is real, and is a trend we see continuing. It has been there for a very, very long time, at least 1.5 or 2 years. And we see that opportunity continue. So we don't see anything slowing down with that, but we do think that, over time, in the absence of new products, which we certainly have a slate of new products we'll roll out, which we think will be compelling and attract customers and new BaaS programs that we think will continue to attract customers and then new programs that will attract new customers. We think the opportunity for active card growth will continue there as it has been. But don't be distracted. And I'm really glad you asked it, to other investors listening, the 3% number is a little goofy, and I wouldn't put much into it, except for that September comp.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 102:

Admit that during Green Dot's November 7, 2018 Earnings Call for Q3 2018, Robert Paul Napoli, representing market analyst *William Blair*, stated that Green Dot's "business is changing so rapidly."

RESPONSE TO REQUEST FOR ADMISSION NO. 102:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's November 7, 2018 Earnings Call for

- 117 -

4928-5394-2805.v1

Q3 2018 contains the following words, among others, attributed to Robert Paul Napoli:

> And one, I would like to understand, the business is changing so rapidly. I mean, it does – the revenue was up, I think, 14% organic revenue growth, but the cards were up 3%, so the revenue per card is up pretty materially. I was just trying to understand, what we should expect as we think forward to 2019, '20? And I think Steve you suggested that the pipeline of BaaS' suggest double-digit organic growth for years to come, if I heard that correct?

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 103:

Admit that in its November 7, 2018 report, market analyst *William Blair* reported that Green Dot's "newer initiatives initially have lower margins," and the "margins on the BaaS business are below the corporate average."

RESPONSE TO REQUEST FOR ADMISSION NO. 103:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that this Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's November 7, 2018 Green Dot report titled "Core Business Remains Steady, BaaS Opportunity Continues to Emerge; Raising Estimates in two separate portions contains the following words, among others:

- 118 -

4928-5394-2805.v1

**Management plans to heavily market its BaaS platform in 2019 and indicated that BaaS alone could drive double-digit revenue growth for the company in coming years; this suggests the business could be over $100 million of incremental annual revenues over time**. We believe margins on the BaaS business are below the corporate average currently due to heavy investment. The pipeline of new customers appears very strong. Green Dot BaaS clients include Apple (AAPL $209.95), Uber, Tax Slayer, Intuit (INTU $221.88; Outperform), Walmart (WMT $104.32), PayPal (PYPL $88.23; Outperform), OneMain (OMF $30.67), and Stash.

\* \* \*

**Management has previously expressed confidence in Green Dot's long-term margin outlook, and previously cited 30% incremental EBITDA margins for the combined business**. Management's commentary suggests newer initiatives initially have lower margins but ramp up as customer usage grows. Further growth of direct deposit customers is very supportive of margins over time.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 104:

Admit that in its report dated November 7, 2018, market analyst *William Blair* reported that in Green Dot's Q3 2018, "the number of direct deposit customers rose 13% year-over-year," with "over 50% of active customers hav[ing] direct deposit."

RESPONSE TO REQUEST FOR ADMISSION NO. 104:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that this Request is compound.

- 119 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's November 7, 2018 Green Dot report titled "Core Business Remains Steady, BaaS Opportunity Continues to Emerge; Raising Estimates" contains the following words, among others:

**Green Dot continues to benefit from improving customer mix highlighted by growth of direct deposit customers; approximately 70% of gross dollar volume (GDV) came from direct deposit customers; we believe over 50% of active customers have direct deposit and over 80% of new active cards**. Further, management disclosed that the number of direct deposit customers rose 13% year-over-year, and nearly 85% of new accounts that have been added since September 2016 were direct deposit customers (1.1 million out of 1.3 million accounts). Management previously indicated that direct deposit (and potentially GoBank customers) can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while other cards generate $15.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 105:

Admit that in its report dated November 7, 2018, market analyst *William Blair* reported that "Green Dot continues to benefit from an improving customer mix and more direct deposit customers."

RESPONSE TO REQUEST FOR ADMISSION NO. 105:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and

- 120 -

4928-5394-2805.v1

its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's November 7, 2018 Green Dot report titled "Core Business Remains Steady, BaaS Opportunity Continues to Emerge; Raising Estimates" contains the following words, among others:

**Green Dot continues to benefit from improving customer mix highlighted by growth of direct deposit customers; approximately 70% of gross dollar volume (GDV) came from direct deposit customers; we believe over 50% of active customers have direct deposit and over 80% of new active cards**. Further, management disclosed that the number of direct deposit customers rose 13% year-over-year, and nearly 85% of new accounts that have been added since September 2016 were direct deposit customers (1.1 million out of 1.3 million accounts). Management previously indicated that direct deposit (and potentially GoBank customers) can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while other cards generate $15.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 106:

Admit that in its report dated November 7, 2018, market analyst *William Blair* reported that "Green Dot continues to benefit from improving customer mix highlighted by growth of direct deposit customers; approximately 70% of gross dollar volume (GDV) came from direct deposit customers; we believe over 50% of active customers have direct deposit and over 80% of new active cards. Further, management disclosed that the number of direct deposit customers rose 13% year-over-year, and nearly 85% of new accounts that have been added since September 2016 were direct deposit customers (1.1 million out of 1.3 million accounts)."

RESPONSE TO REQUEST FOR ADMISSION NO. 106:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and

- 121 -

overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs further object to the Request to the extent that it is duplicative of Request Nos. 104 and 105.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's November 7, 2018 Green Dot report titled "Core Business Remains Steady, BaaS Opportunity Continues to Emerge; Raising Estimates" contains the following words, among others:

**Green Dot continues to benefit from improving customer mix highlighted by growth of direct deposit customers; approximately 70% of gross dollar volume (GDV) came from direct deposit customers; we believe over 50% of active customers have direct deposit and over 80% of new active cards**.  Further, management disclosed that the number of direct deposit customers rose 13% year-over-year, and nearly 85% of new accounts that have been added since September 2016 were direct deposit customers (1.1 million out of 1.3 million accounts).  Management previously indicated that direct deposit (and potentially GoBank customers) can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while other cards generate $15.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 107:

Admit that in its November 7, 2018 report, market analyst *William Blair* reported that "we roughly estimate that the BaaS business rose 154% year-over-year in the nine months ended September to $38 million (about 5% of net revenue).  Our estimate is based on management's disclosure that about 50% of total revenue growth

- 122 -

4928-5394-2805.v1

in the June quarter was driven by the BaaS business; this suggests about $18 million of gross revenues (versus about $6 million in the June 2017 quarter)."

RESPONSE TO REQUEST FOR ADMISSION NO. 107:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's November 7, 2018 Green Dot report titled "Core Business Remains Steady, BaaS Opportunity Continues to Emerge; Raising Estimates" contains the following words, among others:

> **We look for improved disclosure, but we roughly estimate that the BaaS business rose 154% year-over-year in the nine months ended September to $38 million (about 5% of net revenue)**. Our estimate is based on management's disclosure that about 50% of total revenue growth in the June quarter was driven by the BaaS business; this suggests about $18 million of gross revenues (versus about $6 million in the June 2017 quarter). Further, management disclosed that commissions/processing-related costs associated with the BaaS service totaled $33 million year-to-date (versus $11 million year-to-date in 2017), and interest income rose 109% year-over-year, to $16 million.

Plaintiffs otherwise deny this Request.

- 123 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 108:

Admit that in its November 7, 2018 report, market analyst *Cowen Equity Research* reported that Green Dot's "[a]ctive cards grew ~3% in the quarter, down from its recent double-digit growth, . . . with the number of customers receiving direct deposit increasing by 230,000 y-o-y." Attached hereto as Ex. 27.

RESPONSE TO REQUEST FOR ADMISSION NO. 108:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that this Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Cowen Equity Research's November 7, 2018 Green Dot report titled "GDOT 3Q18: Another Beat and Raise" contains the following words, among others:

**Continued Momentum In The Business**

GDOT posted solid 3Q18 results that came in ahead of our estimates across the board. Revenue of $230.6M was up 14.4% and was ~$3.7M ahead of our above consensus estimate. Revenue growth was driven by strong double digit growth in both Account Services and Processing and Settlement Services, which grew +14% and +13%, respectively. Adj. EBITDA margin of 19.6% expanded ~280 bps y-o-y despite increased investments in the quarter, reflecting improving margin flow-through from some of the new BaaS programs and continued margin improvement in established products. Adj. EPS of $0.59 was well ahead of our/consensus estimate of $0.43, largely driven by the stronger adj. EBITDA performance. Active cards grew ~3% in the

- 124 -

4928-5394-2805.v1

quarter, down from its recent double-digit growth, due to a tough comparison last September related to hurricane activity. Despite the slowdown in active card growth, both GDV and purchase volume continued to grow at a double digit clip (~18%/~13% y-o-y), with the number of customers receiving direct deposit increasing by 230,000 y-o-y.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 109:

Admit that in its November 7, 2018 report, market analyst *Deutsche Bank* reported that Green Dot's "[a]ctive card growth moderated to 3% Y/Y in 3Q18, which the company blamed on difficult comps in September and reiterated mid-single-digit growth for 4Q18 and going forward. However, we would highlight that net active cards declined." Attached hereto as Ex. 28.

RESPONSE TO REQUEST FOR ADMISSION NO. 109:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's November 7, 2018 Green Dot report titled "Clarification on 2019 Revenue Growth" contains the following words, among others:

- 125 -

4928-5394-2805.v1

**Card attrition picks up**

Active card growth moderated to 3% Y/Y in 3Q18, which the company blamed on difficult comps in September and reiterated mid-single-digit growth for 4Q18 and going forward. However, we would highlight that net active cards declined 430K from 2Q to 3Q, which the company attributed to normal seasonality and highlighted 250K direct deposit additions in the quarter. We will continue to monitor for the ability to reaccelerate net card addition in 4Q18. We will continue to monitor competition from Square Cash and PayPal Venmo. Please refer to the note by our Payments, Processors, and IT Services analyst Bryan Keane, "Payments: Monetizing the Underbanked" for details.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 110:

Admit that, by November 9, 2018, the market was aware that Green Dot's product mix had shifted to lower margin BaaS products, with more than half the customers having direct deposit accounts.

RESPONSE TO REQUEST FOR ADMISSION NO. 110:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

- 126 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 111:

Admit that in its November 14, 2018 report, market analyst *Zacks Equity Research* reported that "BaaS programs are contributing significantly to Green Dot's GDV growth, active card growth and revenue growth."  Attached hereto as Ex. 29.

RESPONSE TO REQUEST FOR ADMISSION NO. 111:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Zacks Equity Research's November 14, 2018 Green Dot report contains the following words, among others:

> The company's Banking as a Service or BaaS platform programs are growing very quickly. BaaS programs are contributing significantly to Green Dot's GDV growth, active card growth and revenue growth. To make the platform more productive and increase its contribution, Green Dot is investing heavily in a number of large BaaS programs, including programs for Apple, Uber and Intuit.  All these programs are expected to improve year over year.

Plaintiffs otherwise deny this Request.

- 127 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 112:

Admit that on pages 33-34 of Green Dot's Form 10-K for the period ended December 31, 2018 (issued February 27, 2019), Green Dot disclosed that for Q4 2018, its Total Revenue, as that term is defined therein, grew 17% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 112:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 113:

Admit that on pages 33-34 of Green Dot's Form 10-K for the period ended December 31, 2018, Green Dot disclosed that for Q4 2018, Green Dot's Active Accounts, as that term is defined therein, grew 1% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 113:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself.

- 128 -

4928-5394-2805.v1

Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 114:

Admit that on page 34 of Green Dot's Form 10-K for the period ended December 31, 2018, Green Dot disclosed that for Q4 2018, "[t]he increase in the number of active accounts was primarily driven by the launch of several new programs in 2018 and growth from our existing account programs," and that Green Dot "experienced year-over-year double digit growth in our direct deposit active accounts."

RESPONSE TO REQUEST FOR ADMISSION NO. 114:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the

- 129 -

document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that this Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Green Dot's Form 10-K for the period ended December 31, 2018 (issued February 27, 2019), contains the following words:

> We had 5.34 million, 5.30 million, and 4.13 million active accounts outstanding as of December 31, 2018, 2017, and 2016, respectively. We use this metric to analyze the overall size of our active customer base and to analyze multiple metrics expressed as an average across this active account base. The increase in the number of active accounts was primarily driven by the launch of several new programs in 2018 and growth from our existing account programs. Additionally, a subset of our active account base is comprised of accountholders that are enrolled in direct deposit ("direct deposit active accounts"). We experienced year-over-year double digit growth in our direct deposit active accounts.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 115:

Admit that in its January 3, 2019 report, market analyst *BTIG* noted "the consistent progress the company has made during the past few years in repositioning its core prepaid debit card business and the benefits it has accrued from the variety of programs and partnerships it has added." Attached hereto as Ex. 30.

RESPONSE TO REQUEST FOR ADMISSION NO. 115:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "noted" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the

- 130 -

document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that BTIG's January 3, 2019 Green Dot report titled "Upgrading to Buy with $94 PT; Positive Prepaid Card Trends + Banking as a Service = Sustainable Growth" contains the following words, among others:

> GDOT appears to have sustainable momentum after beating the consensus revenue/EPS estimates in 12 straight quarters and posting double-digit or better year-over-year growth in non-GAAP EPS for nine straight quarters. Both streaks underline the consistent progress the company has made during the past few years in repositioning its core prepaid debit card business and the benefits it has accrued from the variety of programs and partnerships it has added.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 116:

Admit that in its January 3, 2019 report, market analyst *BTIG* reported that "[o]ne of the key elements driving GDOT's success in recent quarters has been an increase in direct deposit accounts; such accounts increased during 3Q18 by 13% year-over-year and accounted for 70% of the company's gross dollar volume (GDV) load during the quarter." Attached hereto as Ex. 30.

RESPONSE TO REQUEST FOR ADMISSION NO. 116:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the

- 131 -

4928-5394-2805.v1

document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that BTIG's January 3, 2019 Green Dot report titled "Upgrading to Buy with $94 PT; Positive Prepaid Card Trends + Banking as a Service = Sustainable Growth" contains the following words, among others:

> Given the tendency of some prepaid debit card holders to buy a card, use it once and then discard it, industry participants have for years sought to increase the number of their cardholders who have their pay deposited directly to their cards insofar as these customers are "stickier" and generate recurring revenue for the card issuer. One of the key elements driving GDOT's success in recent quarters has been an increase in direct deposit accounts; such accounts increased during 3Q18 by 13% year-over-year and accounted for 70% of the company's gross dollar volume (GDV) load during the quarter. We believe this trend bodes well for the consistency of GDOT's future revenues and earnings from its core business, which represented more than 80% of its 3Q18 revenues.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 117:

Admit that in its February 4, 2019 report, market analyst *William Blair* reported that "Green Dot continues to benefit from improving customer mix highlighted by growth of direct deposit customers; about 70% of gross dollar volume (GDV) came from direct deposit customers; we believe over 50% of active customers have direct deposit and over 80% of new active cards. Further, management disclosed that the number of direct deposit customers rose 13% year-over-year, and nearly 85% of new accounts that have been added since September 2016 were direct deposit customers (1.1 million out of 1.3 million accounts)." Attached hereto as Ex. 31.

- 132 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 117:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's February 4, 2019 Green Dot report titled "Expect Solid December Quarter; 2019 Guidance and New BaaS Partners Are Key" contains the following words, among others:

> **Green Dot continues to benefit from improving customer mix highlighted by growth of direct deposit customers; about 70% of gross dollar volume (GDV) came from direct deposit customers; we believe over 50% of active customers have direct deposit and over 80% of new active cards**. Further, management disclosed that the number of direct deposit customers rose 13% year-over-year, and nearly 85% of new accounts that have been added since September 2016 were direct deposit customers (1.1 million out of 1.3 million accounts). Management previously indicated that direct deposit (and potentially GoBank customers) can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while other cards generate $15.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 118:

Admit that during Green Dot's February 20, 2019 Earnings Call for Q4 2018, Mr. Streit stated that for Q4 2018, "we are somewhat a victim of our own success in

- 133 -

4928-5394-2805.v1

converting more and more of our quarterly active accounts to direct deposit active accounts," and that "the mix shift towards direct deposit and more engaged customers is clearly better for profitability and growth, the lower churn also means fewer accounts issued to short-term customers, which weighs down on unit sales and therefore the quarterly active account metric."

RESPONSE TO REQUEST FOR ADMISSION NO. 118:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speaks for themselves. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that this Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's February 20, 2019 Earnings Call for Q4 2018 contains the following words, among others, attributed to defendant Streit:

> So how can our direct deposit and purchase volume metrics be so strong and yet actives be up only 1%? The reason is that we are somewhat a victim of our own success in converting more and more of our quarterly active accounts to direct deposit active accounts. Here's how the math works: An active account is defined as a single card that has at least one customer generated transaction in the quarter. So for example, a customer who buys one card every 2 weeks to, say, load their wages to the card and then pay bills, shop online or whatever their purpose may be, that one customer would be generating 6 active accounts in the quarter. But when that same customer buys just one card in the quarter, decides to enroll in direct deposit and then keeps that card in their wallet and uses at the same way every 2 weeks to pay bills, shop online or whatever their purpose may have been; that same customer is now generating account of just one active account in the quarter.

- 134 -

4928-5394-2805.v1

To this point, of the major Green Dot Bank issued card portfolios, the number of weekly active accounts grew around 8.5% on average in the quarter as compared with a number of weekly active accounts in last year's Q4. The reason is, is that more customers appeared to be increasingly using the card as their top of wallet card with transactions occurring every week; whereas a short-term customer who doesn't use our card as their top of wallet card, they only use the card occasionally, maybe once every few weeks but not every week. While the mix shift towards direct deposit and more engaged customers is clearly better for profitability and growth, the lower churn also means fewer accounts issued to short-term customers, which weighs down on unit sales and therefore the quarterly active account metric. Our Processing and Settlement Services segment continues to build on its growth momentum, achieving another record-setting results in the quarter. Revenue in this segment grew 11% to $45 million, driven by increasing transaction counts and cash transfers and SimplyPaid corporate disbursements.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 119:

Admit that during Green Dot's February 20, 2019 Earnings Call for Q4 2018, Mr. Shifke stated that "[o]ur expectation is that we should be continuing to grow our direct deposit accounts."

RESPONSE TO REQUEST FOR ADMISSION NO. 119:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's February 20, 2019 Earnings Call for Q4 2018 contains the following words, among others, attributed to defendant Shifke:

- 135 -

4928-5394-2805.v1

Yes, which – we've discussed for some time that's really being driven by a direct deposit active growth. That was very healthy growth in the quarter. Our expectation is that we should be continuing to grow our direct deposit accounts. And as we do, you'll see those metrics in terms of GDV proactive – purchase volume proactive continue to increase.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 120:

Admit that in its February 20, 2019 report, market analyst *BTIG* reported about Green Dot's "Banking as a Service (BaaS) platform," noting that "Management said the platform . . . accounted for about half of the company's revenue growth during 4Q18." Attached hereto as Ex. 32.

RESPONSE TO REQUEST FOR ADMISSION NO. 120:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that this Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that BTIG's February 20, 2019 Green Dot report titled "Operating Outperformance Continues with 4Q18 Report: 13th Straight Earnings Beat; Reiterating Buy" contains the following words, among others:

One of the keys to GDOT's future growth prospects is the ongoing development of its Banking as a Service (BaaS) platform. Management

- 136 -

said the platform, which has a 300% revenue CAGR since it launched in 2016, accounted for about half of the company's revenue growth during 4Q18.  They added that GDOT during 2019 would roll out a new iteration of the platform – BaaS 3.0 – before rolling out BaaS 4.0 in 1H20.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 121:

Admit that in its February 20, 2019 report, market analyst *Cowen Equity Research* reported that Green Dot's "[a]ctive accounts growth was ~1%, a deceleration from 3Q18's ~3%, reflecting higher conversion of active accounts to direct deposit active accounts."  Attached hereto as Ex. 33.

RESPONSE TO REQUEST FOR ADMISSION NO. 121:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that appear in Cowen Equity Research's February 20, 2019 Green Dot report titled "GDOT 4Q18: Strong 2018, Favorable 2019 Outlook" contains the following words, among others:

GDOT posted 4Q18 results that came in ahead of consensus estimates.  Revenue of $238M was up 11.7% y-o-y and grew 17% for FY18, or ~15% on an organic basis.  On a segment basis, Account

- 137 -

Services revenue of $200M grew 11% y-o-y and Processing and Settlement Services revenue of $45M grew 11% y-o-y. Adj. EBITDA margin of 18.4% was up 330 bps y-o-y and 100 bps for FY18. Active accounts growth was ~1%, a deceleration from 3Q18's ~3%, reflecting higher conversion of active accounts to direct deposit active accounts. Going forward, while we would expect active accounts to grow at a somewhat lower pace than the long-term target of mid-single digit, direct deposit growth remains healthy aiding revenue growth.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 122:

Admit that in its February 20, 2019 report, market analyst *Deutsche Bank* reported that Green Dot's "[k]ey operating metrics namely active cards, direct deposit, and purchase volume growth has been moderating and the company guided to significant slowdown in revenue growth in 1Q19 to 6%." Attached hereto as Ex. 34.

RESPONSE TO REQUEST FOR ADMISSION NO. 122:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's February 20, 2019 Green Dot report titled "Active Cards Disappoint; Revenue Growth Slowing Down" contains the following words, among others, including that there is "limited visibility in the model":

- 138 -

4928-5394-2805.v1

> Key operating metrics namely active cards, direct deposit, and purchase volume growth has been moderating and the company guided to significant slowdown in revenue growth in 1Q19 to 6%. Low single digit active card growth in 2019 along with limited visibility in the model raises concerns about revenue acceleration in the back-half of 2019.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 123:

Admit that in its February 20, 2019 report, market analyst *Deutsche Bank* reported that Green Dot's "BAAS accounted for 25% of net revenue growth or 40% of the reported revenue growth for 2018." Attached hereto as Ex. 34.

RESPONSE TO REQUEST FOR ADMISSION NO. 123:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's February 20, 2019 Green Dot report titled "Active Cards Disappoint; Revenue Growth Slowing Down" contains the following words, among others, including that there is "limited visibility in the model":

> BAAS accounted for 25% of net revenue growth or 40% of the reported revenue growth for 2018. Given the 17% reported revenue growth in 2018, 40% of that growth would suggest that BAAS accounted for ~7% of revenue growth in 2018 or BAAS contributed to $60m of

- 139 -

4928-5394-2805.v1

incremental revenues. BAAS includes TurboTax prepaid cards which we estimate to account for $40m-$50m of revenues. (TurboTax portfolio accounted for 5% of the GDOT's 2011 revenues which was ~$25m and assuming growth profile inline with the TurboTax business). As such, BAAS excluding TurboTax grew ~$15m in 2019. Assuming BAAS revenues doubled, it would mean BAAS excluding TurboTax is $30m of revenues in 2019 and total BAAS revenues in 2018 were ~$75m in revenues. However, pass-through were ~$42m in 2018 which would imply BAAS is only $35m in net revenues or 3-4% of overall revenues. We believe the BAAS revenue growth will moderate in 2019 as TurboTax win anniversaries.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 124:

Admit that in its February 20, 2019 report, market analyst *Deutsche Bank* reported that Green Dot's "[a]ctive card growth moderated to 0.8% in contrast to the company guidance of mid-single digit and company lowered active card growth guidance to low single digits y-o-y." Attached hereto as Ex. 34.

RESPONSE TO REQUEST FOR ADMISSION NO. 124:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's February 20, 2019 Green Dot report titled "Active Cards Disappoint; Revenue Growth Slowing Down," contains the following words, among others,

- 140 -

4928-5394-2805.v1

including that there is "limited visibility in the model": "Active card growth moderated to 0.8% in contrast to the company guidance of mid-single digit and company lowered active card growth guidance to low single digits y-o-y."

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 125:

Admit that in its February 20, 2019 report, market analyst *Deutsche Bank* reported that Green Dot's "[c]ard and other fee revenues of $119m came in above our/consensus estimate of $116m despite the slowdown in active card growth driven by higher fees.  We will continue to monitor the negative impact of mix shift towards direct deposit customers on the fee growth as fees are waived for direct deposit customers."  Attached hereto as Ex. 34.

RESPONSE TO REQUEST FOR ADMISSION NO. 125:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's February 20, 2019 Green Dot report titled "Active Cards Disappoint; Revenue Growth Slowing Down" contains the following words, among others, including that there is "limited visibility in the model":

- 141 -

4928-5394-2805.v1

Card and other fee revenues of $119m came in above our/consensus estimate of $116m despite the slowdown in active card growth driven by higher fees. We will continue to monitor the negative impact of mix shift towards direct deposit customers on the fee growth as fees are waived for direct deposit customers.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 126:

Admit that in its February 21, 2019 report, market analyst *Craig Hallum* reported that Green Dot's "lower Active card growth (~0.6% Y/Y Vs. Our 5.2% Est.) was a surprise but shouldn't be looked at as a negative given the driver relates to a higher mix of direct deposits and how the company counts the active cards in the quarter (direct deposit user uses card continuously vs. traditional which continuously buys new cards). Direct deposit drives higher usage = higher Fee revenue per card which was up ~10% Y/Y." Attached hereto as Ex. 35.

RESPONSE TO REQUEST FOR ADMISSION NO. 126:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Craig-Hallum's February 21, 2019 Green Dot report titled "Guide Better Than Feared, Positive Walmart Commentary, Vision & Investments Should Drive Continued Lead

- 142 -

4928-5394-2805.v1

In Space & Long Term Moat.  Reiterate BUY Rating And $115 Price Target" contains the following words, among others:

> The lower Active card growth (~0.6% Y/Y Vs. Our 5.2% Est.) was a surprise but shouldn't be looked at as a negative given the driver relates to a higher mix of direct deposits and how the company counts the active cards in the quarter (direct deposit user uses card continuously vs. traditional which continuously buys new cards).  Direct deposit drives higher usage = higher Fee revenue per card which was up ~10% Y/Y.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 127:

Admit that in its February 21, 2019 report, market analyst *Craig Hallum* reported that Green Dot's "BaaS likely contributed ~50% of the company's growth (~300% CAGR since 2016) this year."  Attached hereto as Ex. 35.

RESPONSE TO REQUEST FOR ADMISSION NO. 127:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Craig-Hallum's February 21, 2019 Green Dot report titled "Guide Better Than Feared, Positive Walmart Commentary, Vision & Investments Should Drive Continued Lead

- 143 -

In Space & Long Term Moat.  Reiterate BUY Rating And $115 Price Target" contains the following words, among others:

- The lower Active card growth (~0.6% Y/Y Vs.  Our 5.2% Est.) was a surprise but shouldn't be looked at as a negative given the driver relates to a higher mix of direct deposits and how the company counts the active cards in the quarter (direct deposit user uses card continuously vs. traditional which continuously buys new cards).  Direct deposit drives higher usage = higher Fee revenue per card which was up ~10% Y/Y.

- BaaS likely contributed ~50% of the company's growth (~300% CAGR since 2016) this year with the company announcing an expanded relationship with Intuit QuickBooks's ~3 mil. US SMBs for payroll.

- Continued retail expansion with emphasis on expanding products and shelf space with Walmart (new Tax Refund Reload on Walmart Money Card, expanding the Everyday Walmart Card).

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 128:

Admit that in its February 21, 2019 report, market analyst *Guggenheim Securities LLC* reported "[w]e think 1Q and possibly even 2Q will be bumpy for GDOT: tax-season impacts, ongoing explanations/discussions about growth in active accounts."  Attached hereto as Ex. 36.

RESPONSE TO REQUEST FOR ADMISSION NO. 128:

Plaintiffs incorporate each of their General Objections set forth above.  Plaintiffs further object that the document referenced in the Request speaks for itself.  Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and

- 144 -

4928-5394-2805.v1

its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Guggenheim Securities LLC's February 21, 2019 Green Dot report titled "GDOT: Conservative Guide And Ongoing Business Model Transition = Opportunity" contains the following words, among others:

> **High Level**: We think 1Q and possibly even 2Q will be bumpy for GDOT: tax-season impacts, ongoing explanations/discussions about growth in active accounts, pipeline, etc. However, we've seen model transitions like this before, and what we've found is that the NT dynamics that are causing investor consternation eventually fade away, and are replaced with greater focus/appreciation for how the particular model transition – when it's done well, like we believe GDOT management is doing here – ultimately can (and does) produce more robust, durable revenue – and EPS streams for the company. In short, as revenue from short-term customers becomes less of GDOT's mix and contribution from its direct deposit – and BaaS-related revenue streams increases, we see a stronger company with a higher-quality financial profile emerging. We'd be buyers on the dip; we think the '19 guide will likely prove conservative, and we believe the long-tailed nature of GDOT's model transition will ultimately drive further share price appreciation.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 129:

Admit that in its February 21, 2019 report, market analyst *Guggenheim Securities LLC* reported that Green Dot's "[a]ctive cards grew by 1% to 5.3M . . . however, the number of accounts receiving direct deposit grew by 10% YoY." Attached hereto as Ex. 36.

RESPONSE TO REQUEST FOR ADMISSION NO. 129:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks

- 145 -

4928-5394-2805.v1

information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Guggenheim Securities LLC's February 21, 2019 Green Dot report titled "GDOT: Conservative Guide And Ongoing Business Model Transition = Opportunity" contains the following words, among others:

> **4Q Results**: Adjusted EPS ($0.56) beat our/consensus' forecasts ($0.51/$0.49) substantially, driven by continued strong revenue growth (+12% YoY) against a tough comp (4Q17 rev. +31% YoY).  Active cards grew by 1% to 5.3M, below both our and consensus' expectations; however, the number of accounts receiving direct deposit grew by 10% YoY, showing continued strength, while purchase volume grew by 11% to a quarterly record of $6B.  GDV increased by 18% YoY to $9.8B – the eighth consecutive quarter of double-digit GDV growth.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 130:

Admit that in its February 21, 2019 report, market analyst *JPMorgan & Co.* reported that Green Dot's "[a]ctive cards increased only 1% from the prior year period, which Mgmt attributed to a more engaged user base (fewer 'one and done' users), which is supported by continued double-digit growth in direct deposit users." Attached hereto as Ex. 37.

RESPONSE TO REQUEST FOR ADMISSION NO. 130:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document

- 146 -

4928-5394-2805.v1

outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that J.P. Morgan's February 21, 2019 Green Dot report titled "4Q18 Recap: New Partnerships Delivering; Trimming Ests. for D&A and Tax" contains the following words, among others:

> GDOT reported good headline results, its 13th consecutive Rev/EPS beat, driven by 12% organic revenue growth, strong user engagement and BaaS momentum (BaaS related revs increased 300% between '16 and '18).  Active cards increased only 1% from the prior year period, which Mgmt attributed to a more engaged user base (fewer "one and done" users), which is supported by continued double-digit growth in direct deposit users and purchase volume growth, but could weigh on shares near-term, nonetheless.  GDOT sees '19 revenue and EPS guidance up 10% respectively, about in line with prior Street estimates.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 131:

Admit that in its February 21, 2019 report, market analyst *William Blair* reported that "[i]n the December quarter, [Green Dot's] active accounts rose 1% year-over-year to 5.34 million, but gross dollar volume rose 16% and purchase volume rose 11%, which highlights the importance of the mix shift to direct deposit customers."  Attached hereto as Ex. 38.

RESPONSE TO REQUEST FOR ADMISSION NO. 131:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and

- 147 -

4928-5394-2805.v1

overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's February 21, 2019 Green Dot report titled "December-Quarter Results and 2019 Guidance Largely in Line; Expanding BaaS to the SMB Market" contains the following words, among others:

> **December-quarter results did not have the upside of recent history, but were solid, in our view, with organic revenue growth of 12% (versus 14% in the September quarter and 15% in 2018)**.  Total revenues of $238 million were $3 million above our estimate; adjusted EBITDA rose 37%, to $43.9 million ($0.4 million above our estimate); and adjusted EPS rose 94%, to $0.56 (versus our estimate of $0.49).  In the December quarter, active accounts rose 1% year-over-year to 5.34 million, but gross dollar volume rose 16% and purchase volume rose 11%, which highlights the importance of the mix shift to direct deposit customers.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 132:

Admit that in its March 7, 2019 report, market analyst *Deutsche Bank* reported that Green Dot's "[a]ctive card growth moderated to 0.8% in 4Q18 and below the company guidance of mid-single digit and company lowered active card growth guidance in 2019 to low single digits y-o-y."  Attached hereto as Ex. 39.

RESPONSE TO REQUEST FOR ADMISSION NO. 132:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself.

- 148 -

4928-5394-2805.v1

Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's March 7, 2019 Green Dot report titled "Bull/Bear Debate Intensifies" contains the following words, among others, including that there is "limited visibility in the model":

- **Slowdown in active card growth**: Active card growth moderated to 0.8% in 4Q18 and below the company guidance of mid-single digit and company lowered active card growth guidance in 2019 to low single digits y-o-y.

\*      \*      \*

- Card and other fee revenues per active card increased 10% Y/Y in 4Q18 potentially due to mix shift towards higher fee products . . . .

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 133:

Admit that in its March 7, 2019 report, market analyst *Deutsche Bank* reported that Green Dot "will continue to monitor the sustainability of the growth and the negative impact of mix shift towards direct deposit customers on the fee growth as fees are waived for direct deposit customers."  Attached hereto as Ex. 39.

- 149 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 133:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's March 7, 2019 Green Dot report titled "Bull/Bear Debate Intensifies" contains the following words, among others, including that there is "limited visibility in the model" contains the following words, among others:

> Card and other fee revenues per active card increased 10% Y/Y in 4Q18 potentially due to mix shift towards higher fee products; however, we will continue to monitor the sustainability of the growth and the negative impact of mix shift towards direct deposit customers on the fee growth as fees are waived for direct deposit customers.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 134:

Admit that on pages 26-27 of Green Dot's Form 10-Q for Q1 2019, issued May 9, 2019, Green Dot disclosed that for Q1 2019, Green Dot's Total Revenue, as that term is defined therein, grew 6.3% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 134:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself.

- 150 -

4928-5394-2805.v1

Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 135:

Admit that on pages 26-27 of Green Dot's Form 10-Q for Q1 2019, Green Dot disclosed that for Q1 2019, its Active Accounts, as that term is defined therein, grew 1% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 135:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object

- 151 -

to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 136:

Admit that on page 27 of Green Dot's Form 10-Q for Q1 2019, Green Dot disclosed that for Q1 2019, it "experienced year-over-year high single-digit growth in our direct deposit active accounts."

RESPONSE TO REQUEST FOR ADMISSION NO. 136:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statement referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Green Dot's Form 10-Q for Q1 2019 (issued May 9, 2019) contains the following words, among others:

- 152 -

We had 6.05 million and 6.01 million active accounts outstanding as of March 31, 2019 and 2018, respectively. We use this metric to analyze the overall size of our active customer base and to analyze multiple metrics expressed as an average across this active account base. Additionally, a subset of our base of active account holders is comprised of account holders that are enrolled in direct deposit ("direct deposit active accounts"). We experienced year-over-year high single-digit growth in our direct deposit active accounts.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 137:

Admit that during Green Dot's May 8, 2019 Earnings Call for Q1 2019, Mr. Streit stated that there was "erosion in the number of legacy product line nondirect deposit active accounts," and that Green Dot "expect[ed] the lower number of legacy nondirect deposit actives to have an impact in Q2."

RESPONSE TO REQUEST FOR ADMISSION NO. 137:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs further object that the Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 8, 2019 Earnings Call for Q1 2019 contains the following words, among others, attributed to defendant Streit:

Looking at our various components of active accounts. New product lines are now the largest drivers of active account growth in the entire Account Services segment. In fact, in Q1, new product lines, primarily consisting of BaaS programs, contributed over 420,000 new

- 153 -

4928-5394-2805.v1

active accounts all from product lines that largely didn't even exist just 2 years ago. At the same time, we're experiencing some erosion in the number of legacy product line nondirect deposit active accounts primarily from our legacy brick-and-mortar retail channel and, to a lesser degree, from our RushCard and AccountNow digital direct brands.

*     *     *

We do, however, expect the lower number of legacy nondirect deposit actives to have an impact in Q2. So something for us to watch for sure as we seek to improve this trend when we launch our new and more compelling products in the second half.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 138:

Admit that during Green Dot's May 8, 2019 Earnings Call for Q1 2019, Mr. Shifke stated that "[t]he reason we pulled down our soft guide to just 3% is that we believe the lower number of legacy nondirect deposit actives that Steve spoke about, plus lower tax refund processing revenue than initially expected will together cause a few points of lower revenue in the quarter than initially projected."

RESPONSE TO REQUEST FOR ADMISSION NO. 138:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's May 8, 2019 Earnings Call for Q1 2019 contains the following words, among others, attributed to defendant Shifke:

- 154 -

4928-5394-2805.v1

We expect Q2 to deliver non-GAAP operating revenue of $261 million, up about 3% year-over-year. Our original expectation for Q2 when we first guided the year was for revenue to be a few points higher than our current expectation. The reason we pulled down our soft guide to just 3% is that we believe the lower number of legacy nondirect deposit actives that Steve spoke about, plus lower tax refund processing revenue than initially expected will together cause a few points of lower revenue in the quarter than initially projected.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 139:

Admit that in its May 8, 2019 report, market analyst *Cowen Equity Research* reported that Green Dot's "Account Services revenue of $228M grew 4.6% y-o-y, below our estimate, with active accounts largely flat y-o-y (+0.7%). New product lines, largely BaaS programs, was the largest driver of active account growth (+420,000) while legacy non direct deposit active accounts declined." Attached hereto as Ex. 40.

RESPONSE TO REQUEST FOR ADMISSION NO. 139:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

- 155 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that Cowen Equity Research's May 8, 2019 Green Dot report titled "GDOT 1Q19: Reinvestment Tempers Outlook" contains the following words, among others:

> GDOT posted 1Q19 results that were largely in-line with our/consensus revenue estimates and beat on adj. EBITDA and EPS. Revenue of $326M was up 6% y-o-y, in-line with guidance of $323M-$327M. On a segment basis, Account Services revenue of $228M grew 4.6% y-o-y, below our estimate, with active accounts largely flat y-o-y (+0.7%). New product lines, largely BaaS programs, was the largest driver of active account growth (+420,000) while legacy non direct deposit active accounts declined. Processing and Settlement Services revenue of $107M grew 9% y-o-y, aided by increasing cash transfers and tax refunds processed (+7%). Adj. EBITDA margin of 36.5% was up 90 bps y-o-y, above our estimate. Looking into 2Q, GDOT has tempered its revenue expectation to +3%, now factoring in lower legacy non-direct deposit active accounts and lower tax refund processing revenue than originally expected. New product launches planned in 2H19 are forecasted to offset a softer 2Q. We expect erosion from legacy non-direct deposit active accounts to continue to pressure active account growth through the year with an offset in new BaaS driven account growth late in the year. That said, the timing and revenue contribution/card are difficult to model – creating increased execution risk to 2019/20E top-line growth.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 140:

Admit that in its May 8, 2019 report, market analyst *Cowen Equity Research* reported that "GDOT has tempered its revenue expectation to +3%, now factoring in lower legacy non-direct deposit active accounts." Attached hereto as Ex. 40.

RESPONSE TO REQUEST FOR ADMISSION NO. 140:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or

- 156 -

4928-5394-2805.v1

otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Cowen Equity Research's May 8, 2019 Green Dot report titled "GDOT 1Q19: Reinvestment Tempers Outlook" contains the following words, among others:

> GDOT posted 1Q19 results that were largely in-line with our/consensus revenue estimates and beat on adj. EBITDA and EPS. Revenue of $326M was up 6% y-o-y, in-line with guidance of $323M-$327M.  On a segment basis, Account Services revenue of $228M grew 4.6% y-o-y, below our estimate, with active accounts largely flat y-o-y (+0.7%).  New product lines, largely BaaS programs, was the largest driver of active account growth (+420,000) while legacy non direct deposit active accounts declined.  Processing and Settlement Services revenue of $107M grew 9% y-o-y, aided by increasing cash transfers and tax refunds processed (+7%).  Adj. EBITDA margin of 36.5% was up 90 bps y-o-y, above our estimate.  Looking into 2Q, GDOT has tempered its revenue expectation to +3%, now factoring in lower legacy non-direct deposit active accounts and lower tax refund processing revenue than originally expected.  New product launches planned in 2H19 are forecasted to offset a softer 2Q.  We expect erosion from legacy non-direct deposit active accounts to continue to pressure active account growth through the year with an offset in new BaaS driven account growth late in the year.  That said, the timing and revenue contribution/card are difficult to model – creating increased execution risk to 2019/20E top-line growth

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 141:

Admit that in its May 8, 2019 report, market analyst *Cowen Equity Research* noted, as to Green Dot, its expectation that "erosion from legacy non-direct deposit active accounts to continue to pressure active account growth through the year." Attached hereto as Ex. 40.

RESPONSE TO REQUEST FOR ADMISSION NO. 141:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "noted" is undefined, vague, ambiguous, and

- 157 -

4928-5394-2805.v1

overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Cowen Equity Research's May 8, 2019 Green Dot report titled "GDOT 1Q19: Reinvestment Tempers Outlook" contains the following words, among others:

GDOT posted 1Q19 results that were largely in-line with our/consensus revenue estimates and beat on adj. EBITDA and EPS. Revenue of $326M was up 6% y-o-y, in-line with guidance of $323M-$327M.  On a segment basis, Account Services revenue of $228M grew 4.6% y-o-y, below our estimate, with active accounts largely flat y-o-y (+0.7%).  New product lines, largely BaaS programs, was the largest driver of active account growth (+420,000) while legacy non direct deposit active accounts declined.  Processing and Settlement Services revenue of $107M grew 9% y-o-y, aided by increasing cash transfers and tax refunds processed (+7%).  Adj. EBITDA margin of 36.5% was up 90 bps y-o-y, above our estimate.  Looking into 2Q, GDOT has tempered its revenue expectation to +3%, now factoring in lower legacy non-direct deposit active accounts and lower tax refund processing revenue than originally expected.  New product launches planned in 2H19 are forecasted to offset a softer 2Q.  We expect erosion from legacy non-direct deposit active accounts to continue to pressure active account growth through the year with an offset in new BaaS driven account growth late in the year.  That said, the timing and revenue contribution/card are difficult to model – creating increased execution risk to 2019/20E top-line growth.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 142:

Admit that in its May 8, 2019 report, market analyst *Deutsche Bank* reported that "[a]lthough [Green Dot's] direct deposit customers drive higher interchange

- 158 -

revenues, we will monitor the cannibalization of the monthly card fees and cash transfer transactions." Attached hereto as Ex. 41.

RESPONSE TO REQUEST FOR ADMISSION NO. 142:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's May 8, 2019 Green Dot report titled "History doesn't repeat itself but if often rhymes" contains the following words, among others, including that there is "limited visibility in the model":

> GDOT expected active cards to grow 5-10% in 2015 at the start of the year; however, the active cards started to decline in 2H15 and organic active card growth didn't turn positive until 2017. Accordingly, we will cautiously monitor the ability to turn around the active card growth with the elevated investments. Although direct deposit customers drive higher interchange revenues, we will monitor the cannibalization of the monthly card fees and cash transfer transactions.

Plaintiffs otherwise deny any this Request.

REQUEST FOR ADMISSION NO. 143:

Admit that in its May 8, 2019 report, market analyst *Deutsche Bank* reported that Green Dot's "[a]ctive card growth moderated to 0.7% Y/Y and management discussed the company is experiencing erosion in non-direct deposit active accounts,

- 159 -

4928-5394-2805.v1

estimating attrition to impact revenues in the $3-5m range." Attached hereto as Ex. 41.

RESPONSE TO REQUEST FOR ADMISSION NO. 143:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's May 8, 2019 Green Dot report titled "History doesn't repeat itself but if often rhymes" contains the following words, among others, including that there is "limited visibility in the model":

- GDOT missed 1Q19 revenue estimates predominantly due to lower card fees and muted active card growth.

- Active card growth moderated to 0.7% Y/Y and management discussed the company is experiencing erosion in non-direct deposit active accounts, estimating attrition to impact revenues in the $3-5m range.

- Card and other fee revenues of $130m came in below consensus/our estimates of $135m/$138m due to decline in fee per card of 1% in the quarter after growing 10% Y/Y in 4Q18. We will continue to monitor the negative impact of mix shift towards direct deposit customers on the fee growth as fees are waived for direct deposit customers.

Plaintiffs otherwise deny this Request.

- 160 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 144:

Admit that in its May 9, 2019 report, market analyst *BTIG* reported that Green Dot's "Management said they had seen erosion in GDOT's non-direct deposit active accounts.  These include the company's brick-and-mortar retail channel and, to a lesser extent, its Rush card and digital direct brands" and "generate revenue for that company at what management characterized as 'better than average' contribution margins."  Attached hereto as Ex. 42.

RESPONSE TO REQUEST FOR ADMISSION NO. 144:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that this Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that BTIG's May 9, 2019 Green Dot report titled "Downgrading to Neutral (from Buy) After 1Q19 Report; FY19 Guidance Slashed to Reflect New Investments" contains the following words, among others:

- Management said they believed the $60mm investment could translate into over 1mm incremental active accounts that could generate incremental lifetime revenue of approximately $200mm to $300mm at a contribution margin of about 50%.

* * *

- 161 -

4928-5394-2805.v1

- Management said they had seen erosion in GDOT's non-direct deposit active accounts. These include the company's brick-and-mortar retail channel and, to a lesser extent, its Rush card and digital direct brands. While such customers are not nearly as attractive as those who load their cards through direct deposit of their paychecks, they nevertheless generate revenue for that company at what management characterized as "better than average" contribution margins.

- At the same time, GDOT announced multiple new signings in its banking-as-a-service (BaaS) segment. CEO Steve Streit, who during the company's 4Q18 conference call had indicated that the pace of BaaS signings had not been fast enough, and then walked back those remarks following a negative reaction from GDOT shares, touted the accomplishments of the company's BaaS sales staff during the quarter.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 145:

Admit that, by May 10, 2019, the market was aware of the "erosion" in the number of Green Dot legacy "non-direct deposit" active accounts.

RESPONSE TO REQUEST FOR ADMISSION NO. 145:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

- 162 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 146:

Admit that, by May 10, 2019, the market was aware that the lower number of Green Dot legacy nondeposit active accounts was likely to have a negative impact on earnings in the second quarter of 2019.

RESPONSE TO REQUEST FOR ADMISSION NO. 146:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion.  Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny.  Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 147:

Admit that on page 29 of Green Dot's Form 10-Q for Q2 2019, issued August 9, 2019, Green Dot disclosed that for Q2 2019, Green Dot's Total Revenue, as that term is defined therein, grew 5.5% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 147:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion.  Plaintiffs further object that the Request is

- 163 -

4928-5394-2805.v1

argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny.  Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 148:

Admit that on page 30 of Green Dot's Form 10-Q for Q2 2019, Green Dot disclosed that for Q2 2019, its Active Accounts decreased by 1% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 148:

Plaintiffs incorporate each of their General Objections set forth above.  Plaintiffs further object that the document referenced in the Request speaks for itself.  Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion.  Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object

- 164 -

4928-5394-2805.v1

to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny.  Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 149:

Admit that on page 29 of Green Dot's Form 10-Q for Q2 2019, Green Dot disclosed it gained "240,000 active accounts under our BaaS programs" on a year-over-year basis.

RESPONSE TO REQUEST FOR ADMISSION NO. 149:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion.  Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact.   Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Green Dot's Form 10-Q for Q2 2019 (issued August 9, 2019) contains the following words, among others:

Our total operating revenues for the three and six months ended June 30, 2019 increased $14.5 million and $34.7 million, respectively, or 6% over each of the prior year comparable periods, generating revenue

- 165 -

4928-5394-2805.v1

growth from both our Account Services and Processing and Settlement Services segments.  Our growth within our Account Services segment was driven principally by an increase in account holders enrolled in direct deposit despite an overall decline in the number of active accounts in our Account Services segment over the same period.  As a result, we experienced overall growth in gross dollar volume and purchase volume and corresponding growth in interchange revenue over each of the prior year comparable periods.  We also experienced a year-over-year increase in net interest income due to higher yields on our cash and investment balances as a result of rate increases by the Federal Reserve over the course of 2018.  Within our Processing and Settlement Services segment, total operating revenues increased as a result of year-over-year growth in the total number of cash transfers and disbursements through our Simply Paid platform for the three and six months ended June 30, 2019 compared with the prior year periods, and an overall increase in the number of tax refunds processed through the first half of 2019 versus the prior year comparable period.

As of June 30, 2019, our active accounts declined by approximately 500,000 on a year-over-year basis primarily due to a decline in the number of non-direct deposit active accounts under our legacy branded account programs, partially offset by an increase of approximately 240,000 active accounts under our BaaS programs.  The decline in our active accounts in recent periods is attributable in part to changes in our competitive environment, particularly as new entrants market largely free bank account offerings.  While we expect these trends to continue to negatively impact our number of active accounts for the remainder of 2019, we believe the trend will moderate in Q4 2019 and we are well positioned with our innovative product roadmap and strong infrastructural competitive advantages to address these competitive pressures and return to active account and associated revenue growth beginning in 2020.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 150:

Admit that in its June 4, 2019 report, market analyst *Northland Securities* reported that Green Dot's "legacy active accounts which generate multiples more revenue, margin and profit per active card (due to monthly fee and reload fees) are drastically shrinking.  Thus, the mix from higher revenue and higher margin legacy accounts to lower revenue and lower margin BaaS accounts is a huge headwind for GDOT."  Attached hereto as Ex. 43.

RESPONSE TO REQUEST FOR ADMISSION NO. 150:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself.

- 166 -

Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Northland Securities's June 4, 2019 Green Dot report titled "BaaS vs Legacy Economics and GDOT's Big Pivot" contains the following words, among others, including that "[w]e were surprised (as many were) by GDOTs recent 'Big Pivot'":

> We had long wondered about the economics of the new BaaS accounts vs. the Legacy GDOT/UniRush/Walmart accounts with their $3.95-$9.95 monthly fees and $3.00-$5.95 cash reload fees.  We had asked this question a couple of times but never got a straight answer and thus we recently decided to dig deeper.

> *        *        *

> In addition, GDOT's legacy active accounts were 5.1 million in 2Q17 and in 1Q19, total legacy and BaaS accounts were 6.05 million.  We believe this 6.05 million, after adding 420k active accounts in 1Q19, 500k active accounts in 1Q18, and 450k in 2Q18 (which are only numbers GDOT disclosed) as such we believe at least 1.5 to 2.0 million BaaS active accounts and roughly 4.0 million to 4.5 million legacy active accounts with monthly fees and reload fees.  As such, legacy active accounts which generate multiples more revenue, margin and profit per active card (due to monthly fee and reload fees) are drastically shrinking. **Thus, the mix from higher revenue and higher margin legacy accounts to lower revenue and lower margin BaaS accounts is a huge headwind for GDOT**.

Plaintiffs otherwise deny this Request.

- 167 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 151:

Admit that in its June 4, 2019 report, market analyst *Northland Securities* reported that "[t]he mix shift and competition from Venmo, Chime, Radius Bank, Square, SoFi Money, VARO, Axos, Simple, etc, is huge and why would a customer pay the ~$6 monthly fee and reload fees to GDOT when they can get the same services from Venmo, Chime, Radius Bank, Square, SoFi Money, VARO, Axos, Simple, etc for free."  Attached hereto as Ex. 43.

RESPONSE TO REQUEST FOR ADMISSION NO. 151:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Northland Securities's June 4, 2019 Green Dot report titled "BaaS vs Legacy Economics and GDOT's Big Pivot" contains the following words, among others, including that "[w]e were surprised (as many were) by GDOTs recent 'Big Pivot'":

> We had long wondered about the economics of the new BaaS accounts vs. the Legacy GDOT/UniRush/Walmart accounts with their $3.95-$9.95 monthly fees and $3.00-$5.95 cash reload fees. We had asked this question a couple of times but never got a straight answer and thus we recently decided to dig deeper.

*      *      *

- 168 -

**The mix shift and competition from Venmo, Chime, Radius Bank, Square, SoFi Money, VARO, Axos, Simple, etc, is huge and why would a customer pay the ~$6 monthly fee and reload fees to GDOT when they can get the same services from Venmo, Chime, Radius Bank, Square, SoFi Money, VARO, Axos, Simple, etc for free**. GDOT's historical legacy low income customer in the past could only get access to plastic debit cards by paying high fees; now they can get them for basically free. GDOT in 2013 generated ~$130 adjusted revenue per average active card per year. This climbed to ~$180 per card in 2018 and yes, it's not perfect, but it makes a point. These low-income customers, who used to pay high fees for the privilege of a plastic debit card, do not have to pay more when they can get one for free.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 152:

Admit that in its June 6, 2019 report, market analyst *William Blair* reported that Green Dot's "recent decline in non-direct-deposit accounts is creating headwinds. In the March quarter, 47% of active accounts were direct deposit (up from 24% in the March 2016 quarter). . . . Conversely, the number of non-direct-deposit accounts has dropped in two of the last three years and is 450,000 accounts below 2016." Attached hereto as Ex. 44.

RESPONSE TO REQUEST FOR ADMISSION NO. 152:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that this Request is compound.

- 169 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blairs' June 6, 2019 Green Dot report titled "Highlights From William Blair's 39th Annual Growth Stock Conference" contains the following words, among others:

**Management provided new data on its mix of active accounts between direct deposit and non-direct-deposit accounts; the recent decline in non-direct-deposit accounts is creating headwinds**. In the March quarter, 47% of active accounts were direct deposit (up from 24% in the March 2016 quarter). Direct deposit accounts generate substantially more revenue per account and support the significant growth in revenue per active account. Conversely, the number of non-direct-deposit accounts has dropped in two of the last three years and is 450,000 accounts below 2016. Management previously indicated that direct deposit (and potentially GoBank customers) can generate lifetime revenue of $400 (over 24 months); reload customers can generate $130 of lifetime revenue (over 9 months), while other cards generate $15.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 153:

Admit that during Green Dot's August 7, 2019 Earnings Call for Q2 2019, Mr. Streit stated that Green Dot gained "around 500,000 active prepaid accounts."

RESPONSE TO REQUEST FOR ADMISSION NO. 153:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the statements referenced in the Request speak for themselves. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that the Thomson Reuters transcript of Green Dot's August 7, 2019 Earnings Call for Q2 2019 contains the following words, among others, attributed to defendant Streit:

- 170 -

4928-5394-2805.v1

In Q2 on a year-over-year basis, we were down by around 500,000 active prepaid accounts, primarily from the loss of nonreloading customers and cash reloading customers, offset by an increase of around 240,000 BaaS active accounts. The digital banking industry segment has become incredibly competitive this year. And over the past several months in particular with several so-called neo-banks, flush with new rounds of venture capital, spending a record amount of marketing dollars to convert customers to their largely free bank account offerings.

While Green Dot has fared well historically against competition over many years, and we are still far and away the largest digital bank in this segment, we're taking these competitive pressures seriously. There's little doubt in our minds that the increased marketing spend from so many competitors in aggregate is taking its toll on our new customer acquisition.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 154:

Admit that in its August 7, 2019 report, market analyst *BTIG* reported that "[t]he pressure on unit sales in Green Dot Corporation's (GDOT) legacy prepaid product lines, flagged by management in conjunction with the company's 1Q19 report in May, accelerated during 2Q19 and caused a loss of active accounts from both non-reloading and cash reloading customers." Attached hereto as Ex. 45.

RESPONSE TO REQUEST FOR ADMISSION NO. 154:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

- 171 -

4928-5394-2805.v1

Subject to and without waiving the foregoing objections, Plaintiffs admit that BTIG's August 7, 2019 Green Dot report titled "GDOT Reduces FY19 Guidance for Second Time in as Many Quarters as Competition Drives Drop in Prepaid Card Accounts; Reiterating Neutral" contains the following words, among others:

> The pressure on unit sales in Green Dot Corporation's (GDOT) legacy prepaid product lines, flagged by management in conjunction with the company's 1Q19 report in May, accelerated during 2Q19 and caused a loss of active accounts from both non-reloading and cash reloading customers.  So, while the 2Q19 report that GDOT released today after the market close featured top- and bottom-line beats, that outperformance was vastly overshadowed by management's sharp reduction in their FY19 guidance from the reduced forecast they had provided in the company's 1Q19 report.
>
> *       *       *
>
> •  . . . While they said they expected continued weakness in its legacy prepaid debit card product lines in 3Q19, they added that they anticipated performance to moderate in 4Q19 and a return to active account and revenue growth in 2020.
>
> •      Management said they anticipated a reversal in the fortunes of GDOT's legacy prepaid debit card lines given the company's competitive advantage in terms of infrastructure versus its neobank challengers, as well as the planned launch of products in certain Banking-as-a-Service (Baas) programs that they believe will reinvigorate demand for its brand.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 155:

Admit that in its August 7, 2019 report, market analyst *Cowen Equity Research* reported that "GDOT lowered its 2019 guidance for the second consecutive quarter given an accelerated decline in active accounts.  Revenue from new products is no longer expected to overcome the loss of revenue from lower active accounts in the legacy prepaid product."  Attached hereto as Ex. 46.

RESPONSE TO REQUEST FOR ADMISSION NO. 155:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the

- 172 -

4928-5394-2805.v1

document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Cowen Equity Research's August 7, 2019 Green Dot report titled "GDOT 2Q19: Uncertainty Abounds" contains the following words, among others:

GDOT lowered its 2019 guidance for the second consecutive quarter given an accelerated decline in active accounts.  Revenue from new products is no longer expected to overcome the loss of revenue from lower active accounts in the legacy prepaid product.  Clearly, competition has intensified.  We see significantly more execution risk in the stock as well as the likelihood of higher marketing spend.

. . . Management reiterated its expectation of ~1M incremental active accounts exiting the year due to new product launches.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 156:

Admit that in its August 7, 2019 report, market analyst *Cowen Equity Research* reported that Green Dot "experienced an accelerated loss of unit sales in legacy prepaid product lines resulting in a decline in active accounts.  Active accounts were down -3% y-o-y due to lower active accounts from both non-reloading and cash reloading customers partially offset by growth in BaaS active accounts (+240,000).  The company expects the trend of lower active accounts to continue into 3Q before moderating in 4Q."  Attached hereto as Ex. 46.

RESPONSE TO REQUEST FOR ADMISSION NO. 156:

Plaintiffs incorporate each of their General Objections set forth above.  Plaintiffs further object that the document referenced in the Request speaks for itself.

- 173 -

Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context.  Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Cowen Equity Research's August 7, 2019 Green Dot report titled "GDOT 2Q19: Uncertainty Abounds" contains the following words, among others:

> Non-GAAP revenue increased +4.8% y-o-y, with Processing and Settlement revenue up +14% and Account Services revenue up 1.8%. The company experienced an accelerated loss of unit sales in legacy prepaid product lines resulting in a decline in active accounts.  Active accounts were down -3% y-o-y due to lower active accounts from both non-reloading and cash reloading customers partially offset by growth in BaaS active accounts (+240,000).  The company expects the trend of lower active accounts to continue into 3Q before moderating in 4Q. Management reiterated its expectation of ~1M incremental active accounts exiting the year due to new product launches.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 157:

Admit that in its August 7, 2019 report, market analyst *William Blair* reported that Green Dot's "[a]ctive accounts unexpectedly fell 3% year-over-year, to 5.66 million, driven a 500,000 drop in legacy actives partially offset by 240,000 new BaaS accounts; management is targeting active account growth in the December quarter." Attached hereto as Ex. 47.

- 174 -

4928-5394-2805.v1

RESPONSE TO REQUEST FOR ADMISSION NO. 157:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that William Blair's August 7, 2019 Green Dot report titled "Competitive Pressures Force Disappointing Guidance Cut, Stock Will Be Inexpensive but Visibility Is Lower" contains the following words, among others:

**Guidance calls for the core BaaS business to grow revenues 70% in 2019, and management alluded to several large programs that should drive growth in 2020**. We look for improved disclosure, but believe BaaS represents less than 10% of total revenues and likely has lower margins (versus its legacy business).

\* \* \*

**Active accounts unexpectedly fell 3% year-over-year, to 5.66 million, driven a 500,000 drop in legacy actives partially offset by 240,000 new BaaS accounts; management is targeting active account growth in the December quarter**. Management indicated that the number of direct deposit accounts would continue to decline over time without success of the new products.

Plaintiffs otherwise deny this Request.

- 175 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 158:

Admit that in its August 7, 2019 report, market analyst *Deutsche Bank* reported that "GDOT active cards declined -3.4% Y/Y (down ~500K legacy prepaid account)" and that the decline is also weighing on other operating metrics, namely, purchase volume and the "company now expects active cards to decline in 2H19." Attached hereto as Ex. 48.

RESPONSE TO REQUEST FOR ADMISSION NO. 158:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "reported" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation. Plaintiffs also object that this Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's August 7, 2019 Green Dot report titled "Fundamentals Deteriorate as Active Cards Decline" contains the following words, among others:

GDOT active cards declined -3.4% Y/Y (down ~500K legacy prepaid account), which is also weighing on other operating metrics, namely, purchase volume and cash-transfer transactions, which moderated significantly. The company now expects active cards to decline in 2H19 but to return to growth in 2020, which is disappointing, particularly given the $60m of elevated spend in 2019. Although the company blamed increased marketing from the neo-banks weighing on the legacy prepaid-card activation, we believe there could also be potential competition from the deep-pocketed Square and PayPal/Venmo as these providers have significantly enhanced their offerings, have better brand recognition, and consumer-friendly fees. Accordingly, we

- 176 -

4928-5394-2805.v1

believe the competitive pressure on the card growth and fees could further intensify. Although the company remains positive on the Unlimited card adoption, given the limited visibility in the model, we will continue to monitor the ability to sustainably turn around the card growth given majority of revenues are still generated from the legacy prepaid product.

Plaintiffs otherwise deny this Request.

REQUEST FOR ADMISSION NO. 159:

Admit that in its August 8, 2019 report, market analyst *Deutsche Bank* cited "Company Data" to provide a "Direct Deposit Active card analysis."

RESPONSE TO REQUEST FOR ADMISSION NO. 159:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "cited" is undefined, vague, ambiguous, and overbroad. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that financial analysts' view of Green Dot, its stock, and its disclosures will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs admit that Deutsche Bank's August 8, 2019 Green Dot report titled "Monitoring Risk to the Business Model as the Competition Hits Hard" contains the following words, among others: "Figure 1: Direct Deposit Active card analysis" and beneath the figure: "Source: Company data."

Plaintiffs otherwise deny this Request.

- 177 -

4928-5394-2805.v1

REQUEST FOR ADMISSION NO. 160:

Admit that on pages 30-31 of Green Dot's Form 10-Q for Q3 2019, issued November 12, 2019, Green Dot disclosed that for Q3 2019, its Total Revenue, as that term is defined therein, grew 1.7% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 160:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself. Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 161:

Admit that on pages 30-32 of Green Dot's Form 10-Q for Q3 2019, Green Dot disclosed that for Q3 2019, its Active Accounts, as that term is defined therein, decreased by 4.6% year-over-year.

RESPONSE TO REQUEST FOR ADMISSION NO. 161:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs further object that the document referenced in the Request speaks for itself.

- 178 -

4928-5394-2805.v1

Plaintiffs also object that the term "disclosed" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object to the extent the Request selectively quotes the document and thus mischaracterizes and misquotes the statement and/or document outside its context. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control. Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny. Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 162:

Admit that, by November 13, 2019, the market was aware that, despite a 4.6% drop in Green Dot Active Accounts, Total Revenue had increased by 1.7% (each as defined in the 10-Q for Q3 2019, and both numbers year-to-year).

RESPONSE TO REQUEST FOR ADMISSION NO. 162:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the phrase "market was aware" is undefined, vague, ambiguous, overbroad, and calls for a legal conclusion. Plaintiffs further object that the Request is argumentative because it asks Plaintiffs to admit a contested legal conclusion, not a fact. Plaintiffs further object that the terms "Active Accounts" and "Total Revenue" are undefined, vague, ambiguous, and overbroad. Furthermore, Plaintiffs object to this Request to the extent it seeks information not in Plaintiffs' possession, custody, or control. Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within

- 179 -

4928-5394-2805.v1

Defendants' possession, custody, or control.  Plaintiffs object to this Request to the extent that Green Dot's alleged disclosures and omissions will be the subject of expert testimony and require an expert opinion and/or consultation.  Plaintiffs also object that this Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs neither admit nor deny.  Plaintiffs lack sufficient information at this time to answer this Request.

REQUEST FOR ADMISSION NO. 163:

Admit that the chart cited at paragraph 80 of the Amended Complaint indicates that growth in Green Dot's "card revenue and fees" was declining at the start of the Class Period and declined every quarter of the Class Period.

RESPONSE TO REQUEST FOR ADMISSION NO. 163:

Plaintiffs incorporate each of their General Objections set forth above. Plaintiffs also object that the terms "growth," "declining," and "declined" are undefined, vague, ambiguous, and overbroad.  Plaintiffs further object to this Request to the extent that it seeks information that is publicly available or otherwise equally within Defendants' possession, custody, or control.  Plaintiffs also object that this Request is compound.

Subject to and without waiving the foregoing objections, Plaintiffs admit that paragraph 80 of the Amended Complaint states, "As depicted in the chart below the decline in Green Dot's prepaid card product line caused its card revenues and other fees to plummet during the Class Period."

DATED:  February 10, 2025

ROBBINS GELLER RUDMAN
& DOWD LLP

_____
CHRISTOPHER R. KINNON

- 180 -

JESSICA T. SHINNEFIELD
CHRISTOPHER R. KINNON
MEGAN A. ROSSI
JOHN M. KELLEY
RACHEL C. BRABY
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

PITTA LLP
VINCENT F. PITTA
120 Broadway, 28th Floor
New York, NY  10271
Telephone: 212/652-3890
212/652-3891 (fax)

Additional Counsel for Plaintiffs

4928-5394-2805.v1

**DECLARATION OF SERVICE BY EMAIL**

I, BENJAMIN ENGFELT, not a party to the within action, hereby declare that on February 10, 2025, I served the attached **PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT GREEN DOT CORPORATION'S REQUESTS FOR ADMISSION TO PLAINTIFFS, SET ONE** on the parties in the within action by email addressed as follows:

**COUNSEL FOR PLAINTIFFS**:

| NAME | FIRM | EMAIL |
|---|---|---|
| Jessica T. Shinnefield<br>Christopher R. Kinnon<br>Megan A. Rossi<br>John M. Kelley<br>Rachel C. Braby | Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101 | jshinnefield@rgrdlaw.com<br>ckinnon@rgrdlaw.com<br>mrossi@rgrdlaw.com<br>jkelley@rgrdlaw.com<br>rbraby@rgrdlaw.com |
| Vincent F. Pitta | Pitta LLP<br>120 Broadway, 28th Floor<br>New York, NY  10271 | vpitta@pittalaw.com |

**COUNSEL FOR DEFENDANTS**:

| NAME | FIRM | EMAIL |
|---|---|---|
| James M. Kramer<br>Alexander K. Talarides<br>M. Todd Scott | Orrick, Herrington & Sutcliffe LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105 | jkramer@orrick.com<br>atalarides@orrick.com<br>tscott@orrick.com |
| Adam Miller | Orrick, Herrington & Sutcliffe LLP<br>2100 Pennsylvania Avenue NW<br>Washington, D.C.  20037 | adam.miller@orrick.com |
| Megan Benton | Orrick, Herrington & Sutcliffe LLP<br>400 Capitol Mall, Suite 3000<br>Sacramento, CA  95814-4497 | mbenton@orrick.com |
| Richard E. Gottlieb<br>Emil Petrossian<br>Ayad Mathews | Glaser Weil Fink Howard Jordan<br>   & Shapiro LLP<br>10250 Constellation Boulevard<br>19th Floor<br>Los Angeles, CA  90067 | rgottlieb@glaserweil.com<br>epetrossian@glaserweil.com<br>amathews@glaserweil.com |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 21, 2025, at Nashville, Tennessee.

_Benjamin Engfelt_
_____
BENJAMIN ENGFELT

4928-5394-2805.v1