ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN (190812)
JESSICA T. SHINNEFIELD (234432)
CHRISTOPHER R. KINNON (316850)
MATTHEW J. BALOTTA (310303)
JOHN M. KELLEY (339965)
RACHEL C. BRABY (356720)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
jshinnefield@rgrdlaw.com
ckinnon@rgrdlaw.com
mbalotta@rgrdlaw.com
jkelley@rgrdlaw.com
rbraby@rgrdlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GREEN DOT CORPORATION SECURITIES LITIGATION | ) ) ) ) | Case No. 2:19-cv-10701-FLA (Ex) <br><br> <u>CLASS ACTION</u> <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> DATE:     July 18, 2025 <br> TIME:     Taken Under Submission <br> JUDGE:   Fernando L. Aenlle-Rocha |

# [REDACTED]

4910-5929-6338.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     LEGAL STANDARD ..................................................................................... 4

III.    FACTUAL BACKGROUND ......................................................................... 5

    A.    By Early 2018, Defendants Knew that Green Dot's Prepaid Card Business Was in Trouble.................................................................. 5

    B.    Defendants Misled Investors About Green Dot's Prepaid Card Business ...................................................................................... 5

        1.    May 2018 Misstatements.................................................... 5

        2.    August 8, 2018 Misstatements ........................................... 6

        3.    November 7, 2018 Misstatements ...................................... 7

        4.    February 20, 2019 Misstatements....................................... 7

        5.    May 8, 2019 Misstatements................................................ 8

        6.    August 7, 2019 Misstatements ........................................... 8

    C.    Defendants' False Statements About the Company's New Products Hid Green Dot's Prepaid Card Declines.............................. 9

        1.    Defendants Misrepresented the Value of Green Dot's BaaS Products.................................................................. 9

        2.    Defendants Also Misrepresented the Value of Green Dot's Direct Deposit Accounts.................................... 10

        3.    Defendants Misrepresented Green Dot's True Product Mix.................................................................. 10

IV.     ARGUMENT ............................................................................................... 11

    A.    Defendants Made Numerous False and Misleading Statements During the Class Period ....................................................... 11

        1.    Defendants' Statements About Green Dot's Prepaid Card Growth Were Contradicted by Internal Data........................... 11

        2.    Despite Partially Disclosing Declines in Green Dot's Prepaid Card Growth, Defendants Continued to Mislead Investors.......................................................... 12

        3.    Defendants Misled Investors About the Value of BaaS and Direct Deposit Accounts and the Company's Product Mix Shift.......................................................... 13

- i -

**Page**

B.  Summary Judgment Should Be Denied Because Genuine
Disputes of Material Fact Exist ........................................................ 15

1.  Defendants Concealed Green Dot's Prepaid Card
Declines (Category 2) ............................................................ 15

a.  The Declines in Green Dot's Prepaid Card
Business Were Not "Obvious" to Investors .................. 16

b.  Green Dot's Active Accounts Metric Concealed
Rather than Disclosed Prepaid Card Declines ............... 17

2.  Defendants Concealed Green Dot's Worsening Fees or
Per-Unit Economics (Categories 3 and 4) ............................... 18

3.  Defendants Concealed Green Dot's Worsening Product
Mix (Category 1) ................................................................... 20

C.  Plaintiffs' Rule 36 Responses Are Not Evidence of Undisputed
Facts .......................................................................................... 21

V.  CONCLUSION ................................................................................. 22

4910-5929-6338.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ........................................................................... 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................................... 3

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014) ......................................................................... 3

*Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*,
660 F.3d 1170 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013) ................................ 4

*Fecht v. Price Co.*,
70 F.3d 1078 (9th Cir. 1995) ........................................................................... 4

*Fried v. Lehman Bros. Real Est. Assocs. III, L.P.*,
2011 WL 1345097 (S.D.N.Y. Mar. 29, 2011),
*aff'd*, 506 F. App'x 5 (2d Cir. 2012) ................................................................ 22

*Friends of Yosemite Valley v. Kempthorne*,
520 F.3d 1024 (9th Cir. 2008) ......................................................................... 20

*Grigsby v. BofI Holding, Inc.*,
979 F.3d 1198 (9th Cir. 2020) ......................................................................... 22

*In re Keyspan Corp. Sec. Litig.*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) .............................................................. 22

*In re LDK Solar Sec. Litig.*,
255 F.R.D. 519 (N.D. Cal. 2009) ..................................................................... 17

*In re Metro. Sec. Litig.*,
532 F. Supp. 2d 1260 (E.D. Wash. 2007) ......................................................... 22

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ........................................................ 11, 12, 13, 15

- iii -

4910-5929-6338.v1

**Page**

*Jones v. McGuire*,
　2012 WL 439429 (E.D. Cal. Feb. 9, 2012),
　*vacated on other grounds*,
　2012 WL 691626 (E.D. Cal. Mar. 2, 2012) ........................................................21

*Kaplan v. Rose*,
　49 F.3d 1363 (9th Cir. 1995),
　*overruled on other grounds by*,
　*City of Dearborn Heights Act 345*
　*Police & Fire Ret. Sys. v. Align Tech., Inc.*,
　856 F.3d 605 (9th Cir. 2017) ................................................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
　899 F.3d. 988 (9th Cir. 2018) ...................................................................3, 4, 16

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
　601 U.S. 257 (2024) ....................................................................................16, 19

*Nissan Fire & Marine Ins. Co., Ltd. v.*
　*Fritz Cos., Inc.*,
　210 F.3d 1099 (9th Cir. 2000) ........................................................................4, 16

*Nursing Home Pension Fund, Loc. 144 v.*
　*Oracle Corp.*,
　380 F.3d 1226 (9th Cir. 2004) ......................................................................11, 12

*Omnicare, Inc. v. Laborers Dist. Council*
　*Constr. Indus. Pension Fund*,
　575 U.S. 175 (2015) .............................................................................................19

*Provenz v. Miller*,
　102 F.3d 1478 (9th Cir. 1996) ..............................................................................3

*Robertson v. F. Martin*,
　2021 WL 545895 (C.D. Cal. 2021) .......................................................................1

*Robles v. Yum! Brands, Inc.*,
　2018 WL 566781 (C.D. Cal. Jan. 24, 2018).........................................................20

*Schueneman v. Arena Pharms., Inc.*,
　840 F.3d 698 (9th Cir. 2016) .........................................................................15, 16

4910-5929-6338.v1

**Page**

*Sec. Serv. Fed. Credit Union v. First Am. Title Co.*,
  2012 WL 13223151 (C.D. Cal. Apr. 30, 2012)....................................................21

*SEC v. Mozilo*,
  2010 WL 3656068 (C.D. Cal. Sept. 16, 2010)............................................. 17, 19

*SEC v. Phan*,
  500 F.3d 895 (9th Cir. 2007) ...............................................................................4

*SEC v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) ............................................................................11

*Shapiro v. Matrixx Initiatives, Inc.*,
  2011 WL 13047298 (D. Ariz. Sept. 26, 2011)....................................................21

*Steeped, Inc. v. Nuzee, Inc.*,
  2020 WL 6891832 (N.D. Cal. 2020).....................................................................1

*Universal Health Servs., Inc. v. United States*,
  579 U.S. 176 (2016) ............................................................................................19

Federal Rule of Civil Procedure
  Rule 10b-5(b)....................................................................................................... 16
  Rule 36.............................................................................................................21, 22
  Rule 56..............................................................................................................1, 19
  Rule 56(a) ...........................................................................................................1, 3
  Rule 56(g) ...............................................................................................................1

4910-5929-6338.v1

## TABLE OF ABBREVIATED TERMS

| Abbreviated Term | Definition |
|---|---|
| "Defendants" | Green Dot Corporation, former CEO Steven Streit ("Streit"), and former CFO Mark Shifke ("Shifke"). |
| "Motion" | Defendants' Motion for Partial Summary Judgment (ECF 180-ECF 180-1) |
| "Prepaid cards" | Green Dot's suite of prepaid debit cards, which the Company also referred to as "GPR," "legacy," "retail," "prepaid," and "one-and-done." |
| "Class Period" | May 9, 2018 through November 7, 2019, inclusive |
| "PGD" | Plaintiffs' Statement of Genuine Disputes of Material Facts and Statement of Undisputed Facts, filed herewith and numbered 1-50. |
| "PUF" | Refers to the PGD document but numbered 51-148. |
| "Kinnon Decl." | Declaration of Christopher R. Kinnon in Support of Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment |
| "¶__" or "¶¶__" | References the Complaint unless otherwise noted. |
| Exhibits ("Ex(s).") 1-67 | Refer to the Kinnon Decl. |
| Exhibits ("Ex(s).") A-DD | Refer to the three of volumes of the Declaration of Alexander K. Talarides in Support of Defendants' Motion for Partial Summary Judgment (ECF 181-183). |

- vi -

4910-5929-6338.v1

## I.   INTRODUCTION

Defendants mischaracterize this case as being premised upon their omissions in order to obtain partial summary judgment under Fed. R. Civ. P. 56.[1]  But the Court need look no further than the Complaint (ECF 83) to see that Defendants' liability in this case is based on their affirmative misstatements, which were knowingly false when made.

The Complaint alleges that Defendants repeatedly made materially false and misleading statements of historical and present facts about the growth of Green Dot's core product – prepaid cards, its new digital products and  product mix to conceal the scope and impact of  Green Dot's prepaid card decline.[2]  These affirmative misstatements drove Green Dot's stock price to its all-time high of $93.00 during the Class Period.  When Defendants' fraud was gradually revealed to the market through a series of partial disclosures, Green Dot's stock price dropped an astonishing 67%, and has never recovered.[3]

The evidence produced to date already shows that Defendants knew their statements touting prepaid card growth were false and misleading when they made them.  For example, the day before the Class Period began, Streit and Shifke both received an internal report showing that

---

[1]   Defendants' Motion oes not seek judgment on any "claim or defense" or any "part of [a] claim or defense," as required by Federal Rule of Civil Procedure 56(a), but "inappropriate" adjudication of allegedly undisputed facts under Rule 56(g). *Robertson v. F. Martin*, 2021 WL 545895, at *1 (C.D. Cal. 2021).  "Crucially, [Rule 56(g)] 'becomes relevant *only after* the court has applied the summary-judgment standard . . . to each claim, defense, or part of a claim or defense, identified by the motion.'" *Steeped, Inc. v. Nuzee, Inc.*, 2020 WL 6891832, at *2 (N.D. Cal. 2020).

[2]   Prepaid cards were also referred to as "GPR," "legacy," "retail," "prepaid," and "one-and-done."

[3]   PUF-56-58, ECF 174-3 at 88, 89, 91.

- 1 -

4910-5929-6338.v1

████████████████████████████████████████████

██████████████████████.[4]  PUF-51; Exs-40, 42.[5]

On the first day of the Class Period, ██████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████        PUF-68; Exs-3, 36 at -4169.  Then later that same day on Green Dot's 1Q 2018 earnings call, Defendants falsely told investors that the opposite was true – reassuring them that Green Dot's "Walmart MoneyCards and Green Dot classic Visa . . . *continue[] to do extremely well*," and that the Company's prepaid card business "*continues to gain traction* on nearly all fronts."  PUF-52, Ex-I at 5, 8-10. Defendants made similarly false and misleading statements about Green Dot's purported prepaid card growth for nearly a year, knowing prepaid card growth was declining.

Defendants also obscured Green Dot's prepaid card declines by falsely telling investors that Green Dot's new BaaS and direct deposit products were more valuable than the Company's prepaid cards, and touting an *improving* product mix on that basis.  In truth, Defendants knew that the "vast majority" of these new products were free, making Green Dot's product mix shift unfavorable.  PUF-53, 96, 109; Exs-15-16, 29, 34, 46.  Defendants also concealed the decline in Green Dot's prepaid card accounts by creating a single, combined metric called "active users" to collectively report Green Dot's prepaid card accounts and free BaaS and direct deposit accounts. PUF-95, Ex-K.  Because the free and low-fee BaaS and direct deposit accounts were growing, this commingled reporting helped conceal the declining growth in Green Dot's prepaid business.  Tellingly, Defendants ██████████████████████████

---

[4]    All "¶__" or "¶¶__" references are to the Complaint unless otherwise noted.

[5]    Walmart was approximately 40% of Green Dot's operating income at the beginning of the Class Period.  PUF-62, Ex-H.

- 2 -

4910-5929-6338.v1

██████████████████████████████████████████████. PUF-68; Exs-3, 36.

Defendants do not address **any** of this evidence. In fact, Defendants do not move for summary judgment on **any** of Plaintiffs' alleged misstatements. Instead, they improperly seek partial summary judgment on certain "categories of information" they contend were "disclosed" to the market. Motion at 4-5. Worse still, they ask the Court to usurp the fact-finding role of the jury and rule, as a matter of law, that the misstatements alleged were neither false nor material, and could not have caused investors' losses.

Defendants' Motion fails because : (1) the evidence to date establishes that Defendants knowingly made false statements of material fact about Green Dot's prepaid card growth, the value of its new products, and the Company's improving product mix, misleading investors; and (2) Defendants fail to meet their "heavy burden" of showing "no genuine dispute as to any material fact" concerning whether Defendants' purported disclosures effectively "counterbalance[d]" their alleged misstatements, let alone prove that "'***no rational jury*'" *could find their statements misleading*. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996). Defendants' Motion implores the Court to engage in the type of fact finding inquiry the Ninth Circuit has repeatedly held is reserved for the jury.

However, once the Court "view[s] the evidence in the light most favorable to the non-movant party and draw[s] all reasonable inferences in [their] favor," and properly leaves "'the weighing of the evidence, and the drawing of legitimate inferences from the facts'" to the jury, Defendants' Motion fails. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d. 988, 1014 (9th Cir. 2018).

- 3 -

4910-5929-6338.v1

## II.    LEGAL STANDARD

To prevail on their Motion, Defendants must carry both an initial burden of production and an ultimate burden of persuasion demonstrating that there are no genuine disputes as to any material fact supporting the relief they seek.  *See, e.g.*, *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03, 1106-07 (9th Cir. 2000).  Then, the evidence presented by Defendants, when viewed in context with the "'total mix of information . . . conveyed [to the market],'" must demonstrate that "no reasonable jury could find that the market was misled."  *See, e.g.*, *Kaplan v. Rose,* 49 F.3d 1363, 1376-78 (9th Cir. 1995) (reversing grant of summary judgment in Rule 10b-5 action), *overruled on other grounds by, City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).  As the Ninth Circuit explained in *Khoja*, "'[o]nly if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law'" on a motion for summary judgment.  899 F.3d at 1014.

Accordingly, "***whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact***," not as a matter of law.  *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995); *see also SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007) ("Materiality typically cannot be determined as a matter of summary judgment because it depends on determining a hypothetical investor's reaction to the alleged misstatement."); *Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011) ("[A]s the Supreme Court and Ninth Circuit have explained, the truth-on-the-market defense is a method of refuting an alleged misrepresentation's materiality."), *aff'd*, 568 U.S. 455 (2013).

- 4 -

4910-5929-6338.v1

## III.    FACTUAL BACKGROUND

### A.    By Early 2018, Defendants Knew that Green Dot's Prepaid Card Business Was in Trouble

Green Dot's core "bread and butter" business was selling high-fee, prepaid debit cards to low-income Americans without a personal bank account.  PUF-59, 60; Exs-60, H, K.  On Green Dot's February 21, 2018 earnings call, referring to its prepaid cards, Streit confirmed: "our bread and butter from the old days is still our bread and butter today."  PUF-61, Ex-G at 16.  Green Dot's 2017 Form 10-K reiterated that "most" of the Company's operating revenue was "derived from prepaid financial services sold at our four largest retail distributors," with 40% of Green Dot's operating income coming from sales of prepaid cards at Walmart.  PUF-62, Ex-H at 12.

On April 11, 2018, Shifke sent an email ███████████████████ ████████████████████████████████████████████████ ██████████████████████████  PUF-63; Ex-5 at -6281; *see also* PUF-64, Ex-6 at -3945 (April 9, 2018 internal email stating that ██████ ████████████████████████████████████████████████ ████████); PUF-65, Ex-1 at -0717 (May 3, 2018 ████████████ ████████████████████████████████).

### B.    Defendants Misled Investors About Green Dot's Prepaid Card Business

Instead of disclosing the declines in Green Dot's prepaid card business, Defendants concealed them, and told investors the opposite was true.

#### 1.    May 2018 Misstatements

On Green Dot's May 9, 2018 earnings call, Defendants stated "Walmart MoneyCards and Green Dot classic Visa cards . . . continue[d] to do extremely well," were experiencing "continued strong momentum," and that, "[o]n the branded side of our shop, Green Dot continue[d] to gain traction on nearly all fronts."  PUF-52, Ex-I

- 5 -

4910-5929-6338.v1

at 6.[6]  Just a few days later, at a May 16, 2018 JP Morgan Conference, Defendants assured investors that "every one of our products is hitting it and is either at or above plan."  PUF-69, Ex-M at 13.

However, on May 8, 2018, ████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████ contradicting that these cards were "doing extremely well."  PUF-51; Exs-40, 42; *see also infra* at II.A. Indeed, just hours before the May 9, 2018 earnings call, Shifke ████████ ███████████████████████████████████████████████████████ ███████████████████████████████████ PUF-68; Exs-3, 36 at -4169.

Analysts repeated Defendants' misstatements, reporting "momentum in the core business" and "growth in its core prepaid debit card business."  PUF-70, 71; Exs-47, 48.

### 2.    August 8, 2018 Misstatements

On the Company's August 8, 2018 earnings call, Defendants assured investors that Green Dot's "established product lines . . . are just really doing well . . . ***everything's growing in relative lockstep***" and that "***material growth [was] being driven for . . . our established product lines***."  PUF-72, Ex-O at 3, 8.  ███████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ PUF-74; Exs-24-25.

Market analysts again repeated Defendants' misstatements.  Ex-33.  In fact, Streit ████████████████████████████████████████████

---

[6]  Defendants told investors that Green Dot's revenue mostly came from prepaid cards and their fees.  2017 Form 10-K at 4, 35; ¶¶18-19.  Thus, Defendants statements that the prepaid card business was growing misled investors into believing that the prepaid card fees were growing as well.  *See, e.g.*, PUF-126-129, Ex-I; PUF-133, Ex-M; PUF-136-138, 140, Ex-O; PUF-143, Ex-Q; PUF-145, Ex-U.

[REDACTED] PUF-66, 67; Exs-32 at -3289, 33 at -3290.

### 3.   November 7, 2018 Misstatements

On Green Dot's November 7, 2018 earnings call, Defendants again stressed that Green Dot's prepaid card business was "doing very well and *continu[ing] to grow*." PUF-75, Ex-Q at 12. Defendants knew this statement was untrue, however, as [REDACTED] PUF-78, Ex-26.

Analysts again repeated Defendants' misstatements, commenting on Green Dot's "solid core business fundamentals" and reporting that "revenue growth will continue to be buoyed by its line of reloadable prepaid debit cards." PUF-76-77; Exs-53, 54 at 243.

### 4.   February 20, 2019 Misstatements

On Green Dot's February 20, 2019 FY 2018 earnings call, Defendants told investors that Green Dot's prepaid card business was still "*growing nicely*." PUF-79, Ex-U at 23. But by December 21, 2018, [REDACTED] PUF-82, Ex-19 at -6625. In early February 2019, Streit learned [REDACTED] PUF-83; Exs-9-10. And the day before the call, [REDACTED] PUF-84, Ex-21.

Analysts repeated Defendants' false statements, reporting that "GPR economics carry the day" and celebrating a "top line beat driven by core operating metrics." PUF-80, 81; Exs-55, 56.

- 7 -

4910-5929-6338.v1

## 5.    May 8, 2019 Misstatements

On Green Dot's May 8, 2019 earnings call, Defendants partially acknowledged the decline in Green Dot's prepaid card business by disclosing a loss of 300,000 prepaid card accounts. PUF-85, Ex-X. But Defendants misrepresented the scope and impact of this decline by falsely assuring investors that the decline was not "of itself a long-term strategic problem" and "didn't appear to impact results in a material way." PUF-55, Ex-X at 5.  That same day █████████████████████████ █████████████████████████████████████████████████████ flatly contradicting Defendants' statements. PUF-86, Ex-18.  Similarly, in a May 7, 2019 email, Streit acknowledged: ██████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████     PUF-87; Ex-11.

Analysts were surprised by the "legacy business erosion," noting that "Mgmt was previously dismissive of slowing active card growth." PUF-121-122; Exs-63-65. Nonetheless, the market accepted and repeated Defendants' misrepresentations that the decline was not a "serious problem."  PUF-122, Ex-65 (reporting that prepaid decline "shouldn't matter much").

## 6.    August 7, 2019 Misstatements

On Green Dot's August 7, 2019 earnings call, Defendants partially disclosed the scope of Green Dot's prepaid card business decline, acknowledging that the Company had lost 500,000 prepaid accounts year-over year.  PUF-123, Ex-46 at 3. Defendants also disclosed for the first time that "the vast majority of our customers are free," meaning these new products generated no fees. PUF-53, 109, Ex-46 at 14. However, Streit falsely claimed that these declines were merely "short to intermediate term in nature" and promised a "return to growth in Q4 based on what we're seeing today."  PUF-94, Ex-46 at 7, 15.

Streit's reassurances to investors are ████████████████████ ██████████████████████████████████████████████████████████

- 8 -

██████████████████████   PUF-124, Ex-45 at -8654.  Likewise, at this time Streit and

Shifke also knew ███████████████████████████████████████

███████████████████████.  PUF-88, 89; Exs-7, 8 at -0578, 14.

### C.   Defendants' False Statements About the Company's New Products Hid Green Dot's Prepaid Card Declines

Defendants further misled investors – and helped conceal the prepaid card declines – by misrepresenting the value of the Company's BaaS and direct-deposit accounts, and touting an improving product mix.[7]  PUF-90, 91, Ex-M.  While BaaS and direct deposit accounts were growing during the Class Period, Defendants waited to disclose for months that "the vast majority" of these products were free.  PUF-53, 109, Ex-46 at 14.   Defendants obscured the prepaid card growth declines by commingling BaaS, direct deposit, and prepaid cards together in a blended "active accounts" metric, a reporting change implemented at the start of the Class Period. PUF-95, Ex-K.

### 1.   Defendants Misrepresented the Value of Green Dot's BaaS Products

Defendants also falsely told investors that Green Dot's BaaS accounts had "better unit economics" and were "many times more profitable than retail customers" because they purportedly had "higher revenue customers" and a "higher lifetime value."  PUF-91-93; Exs-I at 5, M at 13.

However, by at least August 2018, Streit and Shifke ███████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████  PUF-96,

Ex-34 at -3868; *see also* PUF-108, Ex-31 (same).  In August 2018, Defendants also internally discussed ███████████████████████████████

_____

[7]   BaaS products were pay████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

- 9 -

4910-5929-6338.v1

████████████████████████████████████████████████ PUF-97, Ex-30 at -2731.

### 2.    Defendants Also Misrepresented the Value of Green Dot's Direct Deposit Accounts

Defendants also falsely told investors that Green Dot's direct deposit accounts were "higher revenue" than prepaid cards, "clearly better for profitability and growth," and "driving the engine to get the fees." PUF-79, 90, 92; Exs-I at 23, M, U at 5.

But by June 2018, ██████████████████████████████████ ████████████████████████████████ PUF-120, Ex-35 at -1511. ████████████████████████████████████████████████ ████████████████████████████████████ PUF-119, Ex-35 at -1508. ████████████████████████████████████████████████ ████████████████████ PUF-113, Ex-37 at -0915.

Analysts believed Defendants' falsehoods, reporting that "*[d]irect deposit drives higher usage = higher Fee revenue*" and that "[d]irect deposit customers are creating more robust, durable revenue streams." PUF-104, 105; Exs-57, 58.

### 3.    Defendants Misrepresented Green Dot's True Product Mix

Defendants also falsely told investors that Green Dot's product mix shift was improving because BaaS and direct deposit products purportedly had "better unit economics" (PUF-93, Ex-I at 9), and were "*clearly better for profitability and growth*." PUF-79, Ex-U at 5.[8]

When they made these statements, Defendants knew Green Dot's product mix was deteriorating, not improving. By at least August of 2018, ██████████████ ████████████████████████████████████████████████

---

[8] ███g., PUF-130, Ex-I; PUF-135, Ex-M; PUF-139, Ex-O; PUF-142, Ex-O; PUF-144, E   Q, PUF-146, Ex-U; PUF-147, Ex-U; PUF-132, Ex-I; PUF-134, Ex-M, PUF-136, Ex-O.

- 10 -

████████████████  PUF-119, Ex-35 at -1508; PUF-108, Ex-31 ████████

█████████████████████████████████████████████████████

████  It was not until August 2019 – a year later – that Defendants finally revealed the negative mix shift by disclosing the "vast majority" of Green Dot's new products were free.  PUF-53, 109; Ex-46 at 14.

Analysts parroted Defendants' misstatements, reporting that Green Dot had "an improving customer mix" and a "mix shift towards higher priced products."  PUF-106, 107; Exs-49, 50, W at 2.

## IV.  ARGUMENT

### A.  Defendants Made Numerous False and Misleading Statements During the Class Period

A statement is misleading if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  Critically, "'whether a public statement is misleading . . . is a mixed question to be decided by the trier of fact.'"  *SEC v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011).  Furthermore, the "most direct" evidence of the falsity is "contemporaneous reports or data, available to [Defendants], which contradict the[ir] statement[s]."  *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1149 (9th Cir. 2017).

#### 1.  Defendants' Statements About Green Dot's Prepaid Card Growth Were Contradicted by Internal Data

On the first day of the Class Period, and just hours before Green Dot's May 9, 2018 earnings call, ███████████████████████████████████████ ████████████████████████████████  PUF-68; Exs-3, 36 at -4169.  Then, for nearly a year, Defendants falsely represented that Green Dot's prepaid card business was growing and thriving.  But as Chart 1 depicts, internal documents show Green Dot's prepaid card growth was declining.  *See supra* at §III.B.

- 11 -

4910-5929-6338.v1

| Date | Public Statements | |
|---|---|---|
| May 9, 2018 Earnings Call (PUF-126-129. Ex-I) | GPR prepaid cards like "classic visa" are "*doing extremely well*" with "*continued strong momentum*." <br><br> "On the branded side of our shop, Green Dot *continues to gain traction*." | ████████ |
| May 16, 2018 JPMorgan Conf. (PUF-133, Ex-M) | "Every one of our products is hitting it and is either at or above plan." | ████████ |
| Aug 8, 2018 Earnings Call (PUF-136-138, Ex-O) | "everything's growing in relative lockstep" <br><br> "material growth being driven for . . . our established product lines" | ████████ |
| Nov 7, 2018 Earnings Call (PUF-143, Ex-O) | "[O]ur own legacy products and established business lines . . . . *continue to grow*." | ████████ |
| Feb 20, 2019 Earnings Call (PUF-145, Ex-U) | "[Cards business] has been growing nicely – very nicely, in fact." | ████████ |

Thus, Defendants repeatedly made specific, factual misstatements about the growth of Green Dot's core business they knew were contrary to Green Dot's own "contemporaneous reports or data," "'creat[ing] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed].'" *Oracle Corp.*, 380 F.3d at 1230; *Quality Sys.*, 865 F.3d at 1144. PUF-75, 78; Exs-26, Q.

**2.  Despite Partially Disclosing Declines in Green Dot's Prepaid Card Growth, Defendants Continued to Mislead Investors**

By May 8, 2019, Defendants could no longer conceal Green Dot's prepaid card declines, and disclosed to investors the loss of 300,000 prepaid card accounts year-

- 12 -

4910-5929-6338.v1

over-year.  PUF-85, Ex-X.  But this partial disclosure did not reveal the full truth about Green Dot's prepaid card declines.  Defendants falsely represented that the decline "***didn't appear to impact results in a material way***" and was not "a long-term strategic problem."  PUF-55, Ex-X at 5.  Internally, ███████████████████████████████████████████████████████████████████████████████████.  PUF-86, Ex-18 at -2499.  And Streit admitted internally – the day before the earnings call – that "***we*** █████████████████████████████████████████████████████████████████████████ PUF-87, Ex-11 at -5644.

When Defendants revealed the loss of 500,000 additional prepaid accounts year-over-year on August 7, 2019, they continued to mislead investors by insisting that the problem was "short to intermediate term" and assuring them of a "return to growth in Q4 based on what we're seeing today."  PUF-94, 123; Ex-46.  Streit and Shifke, however, ████████████████████████████████████████████████████ PUF-88, 89; Exs-7, 14.  Because these affirmative statements "'creat[ed] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed],'" they were misleading.  *Quality Sys.*, 865 F.3d at 1144.

### 3.  Defendants Misled Investors About the Value of BaaS and Direct Deposit Accounts and the Company's Product Mix Shift

Defendants also made materially false statements about the value of Green Dot's new BaaS and direct deposit products, using them as a smokescreen to conceal Green Dot's prepaid card declines. Defendants falsely told investors that Green Dot's direct deposit and BaaS products had "better unit economics" than prepaid cards, were "driving the engine to get the fees," were "better for profitability and growth," and were therefore creating an improving product mix and showing incremental growth. PUF-79, 90, 93; Exs-M at 10, U at 5.  But as shown below in Chart 2 ████████████ ████████████████████████████████████████████████████████████████████████████████

- 13 -

████████ *See also* §III.C.[9] Indeed, by August 2019, Defendants admitted that the "vast majority" of their new products were free. PUF-53, Ex-46 at 14.

| Date | Public Statements | |
|---|---|---|
| May 9, 2018 (PUF-131, Ex-I) | we attracted more highly engaged customers than ever before *with better unit economics* | ██████████ |
| May 9, 2018 (PUF-132, Ex-I) | digital platform . . . *many times more profitable* than retail | ██████████ |
| May 16, 2018 (PUF-135, Ex-M) | *direct deposit.* . . . [is] *driving the engine to get the fees* | ██████████ |
| August 8, 2018 (PUF-139, Ex-O) | The *continuing long-term portfolio mix shift towards higher lifetime value accounts* | ██████████ |
| August 8, 2018 (PUF-141, Ex-O) | "[T]he larger portfolio of actives also continues to demonstrate healthy growth metrics and a *more profitable* average account." | |
| August 8, 2018 (PUF-142, Ex-O) | *more revenue per active on the direct deposit customers* than you will on your one-and-dones | ██████████ |
| November 7, 2018 (PUF-144, Ex-Q) | direct deposit. . . . mean[s] *more revenue per active* | ██████████ |
| May 8, 2019 (PUF-148, Ex-X) | New products lead to "*higher revenue and a better profit margin*" | ██████████ |

[9]    *See also* Exs-M, (5/9/18 EC Tr.), (8/8/18 EC Tr.) , (5/8/19 EC Tr.), (11/7/18 EC Tr.), (2/20/19 EC Tr.).

- 14 -

4910-5929-6338.v1

Defendants' statements "creat[ed] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Quality Sys.*, 865 F.3d at 1144. Moreover, by "'choos[ing] to tout' positive information to the market" about the purported value of the BaaS and direct deposit accounts, and the Company's purportedly improving product mix, Defendants "were bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information" they possessed. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705-06 (9th Cir. 2016). Defendants failed to do so.

### B. Summary Judgment Should Be Denied Because Genuine Disputes of Material Fact Exist

Defendants' Motion contends that they disclosed the following four categories of information that Plaintiffs allege were actionable misrepresentations or omissions of fact: (1) the declining "growth rate of Green Dot's legacy, high margin prepaid card business;" (2) Green Dot's changing "product mix trend;" (3) that Green Dot's "direct- deposit accounts were not generating the high-margin card fees of legacy prepaid accounts;" and, (4) that "the per-unit economics of Green Dot's active accounts was part of a product-mix trend that was reversing card-revenue-and-fee-growth."). Motion at 17-18. Defendants fail to meet their heavy burden of showing that no genuine issues of material fact exist regarding whether their purported disclosures actually revealed to investors the alleged concealed information or counterbalanced their affirmative misstatements.

#### 1. Defendants Concealed Green Dot's Prepaid Card Declines (Category 2)

Defendants' Motion ignores their affirmatively false statements that Green Dot's prepaid card business was *growing*, and instead focuses on certain of Green Dot's "disclosures," which they contend informed investors that Green Dot's prepaid

- 15 -

4910-5929-6338.v1

card business was actually declining. (Motion at 18, citing §II.B). But none of the so-called disclosures or other evidence Defendants cite ***even mentions*** Green Dot's prepaid card declines, much less correct their misstatements about Green Dot's prepaid card growth. Motion at 10-11.[10] Accordingly, Defendants fail to meet their burden of showing that there are no disputes of material fact concerning their purported disclosures of Green Dot's pre-paid card declines. *See, e.g.*, *Nissan Fire*, 210 F.3d at 1102-03, 1106-07; *see also* PGD 49, 50. Defendants also fall short of their heavy burden of proving that "'the adequacy of the[ir] disclosure[s] . . . [was] so obvious that reasonable minds could not differ.'" *Khoja*, 899 F.3d. at 1014.

### a. The Declines in Green Dot's Prepaid Card Business Were Not "Obvious" to Investors

Defendants argue that, despite their repeated misrepresentations to investors that Green Dot's prepaid card business was growing, it was nonetheless "obvious" to investors that Green Dot's prepaid card business was actually declining. Motion at 11 n.11.[11]

However, once Defendants "'chose to tout' positive information to the market" about Green Dot's prepaid business, "they were bound to do so in a manner that wouldn't mislead investors, including [by] disclosing adverse information." *Schueneman*, 840 F.3d at 705-06 (citation modified); *see also Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 258 (2024) (Rule 10b-

---

[10]    *See* PGD 12, 27-29, 37, 41, 47, 49.

[11]    SUF 41 does not mention prepaid cards, and merely notes that any "active card" growth – which included BaaS, direct deposit, and prepaid cards ***collectively*** – was from "normal seasonality." PGD 41. Repeating Defendants statements on Green Dot's November 7, 2018 earnings call that Green Dot's prepaid card business was "continuing to grow," analysts contemporaneously noted "solid core business." Neither PUF-76, Ex-53, PUF-143, Ex-O, nor SUF 47 mentions prepaid cards either, although other contemporaneous analyst reports credited Defendants' statements on Green Dot's February 20, 2019 earnings call that prepaid was "growing nicely – very nicely, in fact," and reporting on Green Dot's "core GPR organic rev growth" and a "top-line beat driven by core." PGD 47; PUF-79-81; Exs-55, 56, U at 3-4, 19.

- 16 -

4910-5929-6338.v1

5(b) "requires disclosure of information necessary to ensure that statements already made are clear and complete").

Investors were not, as Defendants erroneously contend, required to ignore Defendants' misstatements about Green Dot's thriving prepaid card business, and instead, play detective by "poring through all prior transcripts of earnings calls . . . [to] 'connect the dots' in [Green Dot's] various SEC filings." *SEC v. Mozilo*, 2010 WL 3656068, at *9, *19   (C.D. Cal. Sept. 16, 2010) (holding that "incomplete [disclosures], interspersed with misleading statements, scattered among various SEC filings and earnings calls, and buried in thousands of pages of prospectus supplements" were insufficient to warrant summary judgment).

Moreover, Green Dot's stock price drop and market analysts' reactions to Defendants' revelations about the true state of Green Dot's prepaid card business demonstrate that this information was not previously known by the market. *See In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 529 (N.D. Cal. 2009) (stock-price decline following disclosure suggests materiality). PUF-56-58, 110; ECF 174-3 at 88, 89, 91; Exs-61, 63.

### b.    Green Dot's Active Accounts Metric Concealed Rather than Disclosed Prepaid Card Declines

Defendants assert that certain information Green Dot provided to the market about the Company's active accounts somehow disclosed the Company's prepaid card declines (Motion 10-11).[12]  But none of the evidence Defendants cite even mentions prepaid cards or declining prepaid growth.

Indeed, Green Dot's active users metric, created at the start of the Class Period, aggregately reported prepaid card, BaaS, and direct deposit accounts, concealing the decline in its prepaid card business.  In fact, ████████████████████████████

---

[12]    *See* PGD 12, 27-29, 37, 41, 47, 49 (none mentioning prepaid decline).

- 17 -

[REDACTED]

[REDACTED] PUF-125, Ex-27.

For example, in March 2019, [REDACTED]

[REDACTED] PUF-116, Ex-38.

[REDACTED]

[REDACTED] *Id.*; *see also* PUF-117, Ex-51 ("Management has not disclosed how much of its revenue is derived from retail."). Analysts were frustrated by Defendants' refusal to provide this product-level information, and complained about the "limited visibility in [Green Dot's business] model." PUF-114, Ex-J. As Northland Capital Markets remarked in its June 4, 2019 report on Green Dot, analysts "had long wondered about the economics of the new BaaS accounts vs. the Legacy" and "***had asked this question a couple of times but never got a straight answer***." PUF-112, Ex-65.

### 2.    Defendants Concealed Green Dot's Worsening Fees or Per-Unit Economics (Categories 3 and 4)

Ignoring their public statements to the contrary (*see* Chart 2), Defendants contend that they disclosed that "direct deposit were not generating the high-margin card fees of legacy prepaid" and that Green Dot's "per-unit economics" were losing fees. Motion at 18 (citing §§II.C, D at 12-14). But Defendants fail to show that no reasonable jury could find their misstatements misleading.

***Unit Economics/Fees***. The only evidence Defendants offer that they disclosed Green Dot's lower "per-unit economics" and fees from Green Dot's new BaaS and direct deposit products is a chart created by their counsel that does not mention lower per-unit economics. Motion, II.D. at 14 (citing SUF 50), 18.[13] Arguing that investors should have ignored Defendants' misleading statements about Green Dot's improving

---

[13]    Defendants cite exhibits W, Y, Z, AA, which do not state that Green Dot's new products had worse per-unit economics than prepaid cards, that its product mix was worsening, or otherwise counterbalance Defendants' statements in Chart 2.

- 18 -

4910-5929-6338.v1

unit economics, and were obligated to connect the dots about Green Dot's worsening per-unit economics, is not a proper basis for dismissal under Rule 56. *Mozilo*, 2010 WL 3656068, at *9. Yet even if the Court considers Defendants' chart, it merely shows that Green Dot did not report any reduced fees year-over-year until May 9, 2019 – ***after*** almost all of the misleading statements and contradictory evidence in Chart 2. Motion at 14. Indeed, Shifke told investors, during the Class Period, that "direct deposit. . . . [is] driving the engine to get the fees," despite ███████

██████████████████████████████████████████

██████ PUF-90, 113; Ex-M at 10, 37. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 192 (2015) ("An issuer must as well desist from misleading investors by saying one thing and holding back another.").

***Margins***. Defendants also contend that they disclosed that Green Dot's new BaaS and direct deposit products had materially lower profit margins than prepaid cards. Motion 12-13. At best, Defendants disclosed a misleading half-truth. *Moab Partners*, 601 U.S. at 258 (Section 10(b) "requires disclosure of information necessary to ensure that statements already made are clear and complete."); *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 188 & n.3 (2016) ("half-truths – representations that state the truth only so far as it goes, while omitting critical qualifying information – can be actionable misrepresentations.").

What Defendants actually told investors was that while BaaS margins were "***currently***" low due to start-up "cost[]s," they would "***get better over time***" and "***certainly could be . . . as rich as our legacy products***." PUF-98, Ex-I at 3, 9, 15, 21; Ex-K at 28. But ███████████████████████████████

██████████████████████████████████████████

█████████████ PUF-103; Exs-20, 39. In fact, Defendants did not reveal to investors until August 2019 that the "vast majority" of the new products Defendants added during the Class Period had ***zero*** margins because they were free. PUF-53, 113; Ex-37 at -0915; Ex-46 at 14. ███████████████

- 19 -

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████     PUF-102, Ex-4 at -4196.

Defendants' evidence does not disclose these facts.  *See* PGD 3, 18-19, 24-26, 30, 33, 37, 42-44.

### 3.   Defendants Concealed Green Dot's Worsening Product Mix (Category 1)

Defendants contend that they disclosed that Green Dot's product mix shift was changing and "moving away from legacy pre-paid cards toward newer digital banking accounts."  Motion at 17-18.  ***But those are not Plaintiffs' allegations***.

Rather, Plaintiffs allege that Defendants' misstatements touting an "improving" product mix were misleading because they knew that Green Dot's true product mix was "[a] shift to a new, less lucrative product mix."  ECF 102 at 10.[14]  The disclosures Defendants cite about Green Dot's changing product mix (Motion at 5-10) do not pertain to any actual allegation in the case and are therefore irrelevant.[15]  *See, e.g.*, *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, at *5 (C.D. Cal. Jan. 24, 2018) (denying summary judgment because defendants "mischaracterize[d] [p]laintiff's allegations").[16]

---

[14]   *E.g.*, ¶¶41(c) ("masked a less lucrative mix trend"), 43 ("a product mix trend that was reversing card-revenue-and-fee growth"); 60(c) ("this product-mix trend had yielded and would continue to yield lower revenue and worse profit margins").

[15]   None of the exhibits Defendants' SUFs rely on state Green Dot had a less lucrative product mix.  *See* PGD 1-2, 4-8, 11, 14-17, 20-23, 29, 32, 34-36, 38-40, 45-46, 48.  Defendants point to analyst reports that repeat Defendants' half-truths that "upfront expenses" temporarily lowered margins, but this does not prove they disclosed a worsening product mix (*see* III.B.2 "Margins").  In fact, analysts noted during the Class Period that Green Dot had "an improving customer mix" and a "mix shift towards higher priced products."  PUF-106, 107; Exs-49, 50, W at 2.

[16]   Failing to raise any arguments concerning Plaintiffs' actual allegations that they concealed a worsening product mix shift, Defendants waive them.  *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008) (arguments not raised by a party in its opening brief are deemed waived).

- 20 -

4910-5929-6338.v1

Defendants also contend that statements they made ***three years before the Class Period*** are disclosures that cure their Class Period misstatements. Motion 6-8. But even if these pre-Class Period statements were somehow relevant, the law is well-established that "past disclosures do not excuse subsequent misleading statements and omissions." *See, e.g.*, *Shapiro v. Matrixx Initiatives, Inc.*, 2011 WL 13047298, at *5 (D. Ariz. Sept. 26, 2011).

Finally, Defendants cite to Green Dot's statements about increased direct deposit and BaaS accounts as curative disclosures. Motion. 8-9. But Defendants ignore that they falsely told investors that these products had "better unit economics," "more revenue per card," and were "many times more profitable than retail customers" – knowing that the opposite was true.[17] *Infra* at Chart 2.

### C. Plaintiffs' Rule 36 Responses Are Not Evidence of Undisputed Facts

Defendants' argument that Plaintiffs' responses to Defendants' 163 Requests for Admission ("RFA Responses") prove Defendants' "disclosures" as a matter of law misrepresents both the law and Plaintiffs' RFA Responses. Motion at 1. First, RFAs may not "seek to establish facts in obvious dispute and may not demand the opposite party admit the truth of a legal conclusion." *Jones v. McGuire*, 2012 WL 439429, at *7 (E.D. Cal. Feb. 9, 2012) ("they are not effective concessions of any legal or factual issue in this case, and the court will not accept them as a basis for summary judgment"), *vacated on other grounds*, 2012 WL 691626 (E.D. Cal. Mar. 2, 2012); *Sec. Serv. Fed. Credit Union v. First Am. Title Co.*, 2012 WL 13223151, at *2 (C.D. Cal. Apr. 30, 2012) (same).

Second, each of Plaintiffs' RFA Responses state that Plaintiffs lacked sufficient information to answer or deny the substantive aspects of each Request, including that

---

[17] *E.g.*, PUF-130, Ex-I; PUF-135, Ex-M; PUF-139, Ex-O; PUF-142, Ex-O; PUF-144, Ex-Q, PUF-146, Ex-U; PUF-147, Ex-U; PUF-132, Ex-I; PUF-134, Ex-M, PUF-136, Ex-O.

- 21 -

4910-5929-6338.v1

these isolated statements were "disclosures," and merely admit that the words appeared on the page. *See* ECF 154-4. Plaintiffs further objected that: (1) whether any statement constitutes a "disclosure" is a contested legal conclusion, not a fact; and (2) Defendants "mischaracteriz[ed] and misquot[ed] the statement and/or document outside its context." *See, e.g.*, *id*. at 2-3, 5-6, 10, 12-13, 26, 29-30, 39, 72-74, 76-77, 96-98, 112-114, 134-136, 147-149, 160-161 ("legal conclusion"); *id*. at 1-16, 18-26, 29-30, 32-51, 54-85, 87-109, 111-144, 147-161 ("outside its context"). Indeed, as discussed in §§III.B, C, and IV.A, Defendants' "disclosures" are not only hotly contested, but are contradicted by their public statements and internal documents. *See, e.g.*, *infra* at 12-13, 15-16 (Chart 1 and Chart 2); *see generally* PGD and PUF. No "undisputed facts" have been "admitted" or "conceded" by Plaintiffs' RFA Responses.[18]

## V.    CONCLUSION

Accordingly, Defendants' Motion should be denied.

DATED:  July 3, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN
JESSICA T. SHINNEFIELD
CHRISTOPHER R. KINNON
MATTHEW J. BALOTTA
JOHN M. KELLEY
RACHEL C. BRABY

s/ Christopher R. Kinnon
CHRISTOPHER R. KINNON

---

[18] Defendants do not cite a single case supporting their misuse of denied Rule 36 requests for admission to prove the absence of a fact dispute. Instead, they rely on motion to dismiss opinions that are completely irrelevant or inapposite. *See Grigsby v. BofI Holding, Inc*., 979 F.3d 1198, 1205 (9th Cir. 2020) (loss causation); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1288 (E.D. Wash. 2007) (statute of limitations); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 374 (E.D.N.Y. 2003) (judicial notice); *Fried v. Lehman Bros. Real Est. Assocs. III, L.P.*, 2011 WL 1345097, at *10 (S.D.N.Y. Mar. 29, 2011) (out of circuit omissions case), *aff'd*, 506 F. App'x 5 (2d Cir. 2012).

- 22 -

4910-5929-6338.v1

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

PITTA LLP
VINCENT F. PITTA
120 Broadway, 28th Floor
New York, NY  10271
Telephone: 212/652-3890
212/652-3891 (fax)

Additional Counsel for Plaintiffs

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for plaintiffs New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund and Teamsters Local Union No. 727 Pension Fund, certifies that this brief contains 6,973 words, which complies with the word limit of L.R. 11-6.1.

DATED:  July 3, 2025

s/ Christopher R. Kinnon
CHRISTOPHER R. KINNON

- 23 -

4910-5929-6338.v1