ROBBINS GELLER RUDMAN
   & DOWD LLP
DEBRA J. WYMAN (190812)
JESSICA T. SHINNEFIELD (234432)
CHRISTOPHER R. KINNON (316850)
MATTHEW J. BALOTTA (310303)
JOHN M. KELLEY (339965)
RACHEL C. BRABY (356720)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
jshinnefield@rgrdlaw.com
ckinnon@rgrdlaw.com
mbalotta@rgrdlaw.com
jkelley@rgrdlaw.com
rbraby@rgrdlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GREEN DOT CORPORATION SECURITIES LITIGATION | Case No. 2:19-cv-10701-FLA (Ex) |
| | CLASS ACTION |
| | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND STATEMENT OF UNDISPUTED FACTS |
| | DATE:  July 18, 2025 |
| | TIME:  Taken Under Submission |
| | JUDGE:  Fernando L. Aenlle-Rocha |

**[REDACTED]**

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 1.  On Green Dot's November 5, 2015 Earnings Call for Q3 2015, Mr. Streit disclosed that Green Dot has "a number of new products and initiatives that [it] expect[ed] to generate positive results."<br><br>**Evidence**: Ex. A (11/5/15 EC Tr.) at 5. | 1.  Undisputed that the quoted language appears in Ex. A, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The cited statement refers to Green Dot's prepaid card business, not to direct deposit or any BaaS products (the "vast majority" of which during the relevant Class Period were "free," as Defendants disclosed on August 7, 2019).<br><br>**Evidence**:<br>• Ex. A (11/5/15 EC Tr.) at 5 ("In our branded business line . . . ."); and<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (admitting toward the end of the Class Period that "the vast majority" of Green Dot's new products were "free").<br><br>**Objections**: Incomplete under Fed. R. Evid. ("FRE") 106; calls for an improper legal conclusion under FRE 701; misstates the evidence under FRE 403; irrelevant under FRE 402 and 403 (the statement predates the Class Period by nearly three years and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (ECF 83)).  *See* Plaintiffs' |

- 1 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Objections to Evidence Proffered in Support of Defendants' Statement of Uncontroverted Facts in Support of Motion for Partial Summary Judgment, filed concurrently herewith ("PEO") 1. |
| 2.  On Green Dot's November 9, 2016 Earnings Call for Q3 2016, Mr. Streit disclosed that Green Dot was "seeing direct deposit growth as both a percentage of [total] active cards and growth in the absolute number of direct deposit accounts."<br><br>**Evidence**: Ex. B (11/9/16 EC Tr.) at 5. | 2.  Undisputed that the quoted language appears in Ex. B, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The cited statement misleadingly omits that Green Dot's relevant Class Period direct deposit growth came from free accounts associated with its BaaS products.<br><br>**Evidence**:<br><br>• ███████████████████ and<br><br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* Plaintiffs' Statement of Genuine Disputes of Material Facts and Statement of Undisputed Facts ("PGD") 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; misstates the evidence; irrelevant and misleading (the statement |

- 2 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | predates the Class Period by nearly two years and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 2. |
| 3.  On Green Dot's May 9, 2017 Earnings Call for Q1 2017, Mr. Streit disclosed Green Dot's "lower margin of the new revenue."<br><br>**Evidence**: Ex. C (5/9/17 EC Tr.) at 15. | 3.  Undisputed that the quoted language appears in Ex. C, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The cited statement also refers to new prepaid card revenue including the UniRush acquisition, not the "newer digital banking products" Defendants describe (Mot. at 12).<br><br>• The cited statement misleadingly omits that Green Dot's relevant Class Period BaaS margins were not just lower, but negative, were margin, free, and not sustainable.<br><br>**Evidence**:<br>• Defendants' SUF No. 6 says that Green Dot did not disclose its BaaS product line until six months after this call (citing Ex. E (11/7/17 SEC Form 8-K) at 4);<br>• Ex. 39 at -1009 █████████ |

- 3 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | • Ex. 28 at -6284 ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮<br>• Ex. 41 ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮); and<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by nearly a year and does not cure any Class Period misstatement or omission alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 3. |
| 4.  On Green Dot's May 9, 2017 Earnings Call for Q1 2017, Mr. Streit disclosed that Green Dot's "direct deposit penetration as a percentage of active accounts is up 44%, continuing the trend of increasing direct deposit penetration that we saw all throughout last year."<br><br>**Evidence**: Ex. C (5/9/17 EC Tr.) at 5. | 4.  Undisputed that the quoted language appears in Ex. C, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.<br><br>**Evidence**:<br>• Ex. 29 (*see* PGD 2);<br>• Ex. 16 (*see* PGD 2);<br>• Ex. 37 at -0915 (*see* PGD 2); and<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1). |

- 4 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by one year and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint).  *See* PEO 4. |
| 5.  On Green Dot's August 8, 2017 Earnings Call for Q2 2017, Mr. Streit disclosed that Green Dot's "direct deposit active base continues to soar, with record year- over-year consolidated growth of a whopping 83% in accounts receiving direct deposit, with 75% of all card loads coming from direct deposit in the quarter."  **Evidence**: Ex. D (8/8/17 EC Tr.) at 5. | 5.  Undisputed that the quoted language appears in Ex. D, but otherwise disputed.  Disputed because:  • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.  • Whether this is a "disclosure" of material facts is subject to expert testimony.  • The cited statement misleadingly omits that Green Dot's relevant Class Period direct deposit growth came from free accounts associated with its BaaS products.  **Evidence**: • Ex. 29 (*see* PGD 2); • Ex. 16 (*see* PGD 2); • Ex. 37 at -0915 (*see* PGD 2); and •  Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).  **Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by approximately nine months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint).  *See* PEO 5. |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 6. In Green Dot's Form 8-K filed November 7, 2017 and on Green Dot's February 21, 2018 Earnings Call for Q4 2017, Defendants disclosed its "Banking as a Service, or 'BaaS Platform,'" where Green Dot partners with other companies to develop their own digital banking services to distribute to their customers.<br><br>**Evidence**: Pl. Adm. No. 10 (citing Ex. E (11/7/17 SEC Form 8-K) at 4); Ex. G (2/21/18 EC Tr.) at 6. | 6. Undisputed that the quoted language appears in Exs. E and G, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• Defendants' words ("where Green Dot partners with other companies to develop their own digital banking services to distribute to their customers") are not supported by any facts and are not contained in the cited exhibits.<br><br>• ███████████████<br><br>**Evidence**:<br>• Ex. E (11/7/17 SEC Form 8-K) at 4;<br>• Ex. G (2/21/18 EC Tr.) at 6;<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3); and<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; fails the best evidence rule under FRE 1002; misstates the evidence; irrelevant (the statement predates the Class |

- 6 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Period by over six months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 6. |
| 7.  On Green Dot's November 7, 2017 Earnings Call for Q3 2017, Mr. Streit disclosed that "the percentage of active cards receiving direct deposit was up a spectacular 90% year-over-year."<br><br>**Evidence**: Ex. F (11/7/17 EC Tr.) at 4. | 7.  Undisputed that the quoted language appears in Ex. F, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• ████████████████████████████████████████████████.<br><br>**Evidence**:<br>• Ex. 29 (*see* PGD 2);<br>• Ex. 16 (*see* PGD 2);<br>• Ex. 37 at -0915  (*see* PGD 2); and<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by over six months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint).  *See* PEO 7. |

- 7 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 8. On Green Dot's November 7, 2017 Earnings Call for Q3 2017, Mr. Streit disclosed that Green Dot's "increasingly important and relevant Banking as a Service, or BaaS Platform, . . . with Intuit in a new partnership, where they're using [its] BaaS Platform," and "another of [its] Banking as a Service partnerships, Apple Pay Cash."<br><br>**Evidence**: Ex. F (11/7/17 EC Tr.) at 4-5. | 8. Undisputed that the quoted language appears in Ex. F, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• Defendants' so-called statement is not an undisputed fact; rather, it is an editorialized compilation that spans two pages and nine paragraphs.<br><br>• ███████████████████<br><br>• As Defendants' Ex. H shows, just before the Class Period, Green Dot told investors that prepaid cards were responsible for the majority of the Company's operating revenues.<br><br>**Evidence**:<br>• Ex. F (11/7/17 EC Tr.) at 4-5;<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3);<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); and<br>• Ex. H (2/27/18 SEC Form 10-K) at 12 ("Most of our operating revenues are derived from prepaid financial services |

- 8 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | sold at our four largest retail distributors. As a percentage of total operating revenues . . . Walmart was approximately 40% for the year ended December 31, 2017."). <br><br> **Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by over six months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 8. |
| 9.  On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that "[t]he average life of a prepaid card is a lot less than 2 years." <br><br> **Evidence**: Ex. G (2/21/18 EC Tr.) at 18- 19. | 9.  Undisputed that the quoted language appears in Ex. G, but otherwise disputed. <br><br> Disputed because: <br><br> • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br> • Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br> • The cited statement misleadingly omits Streit's words from that same call February 21, 2018 earnings call affirming the primary importance of prepaid cards: "[I]f you think about our established business lines or legacy business lines being prepaid cards and reloads, right, that would be the historic Green Dot, those 2 lines of business continue to be a good part of our revenue and certainly more than half of our revenue. . . . So the answer is our bread and butter from the old days is still our bread and butter today.  Just like coffee is still important to Starbucks. . . .  So you're never going |

- 9 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | to get to 100% [direct deposit], or if you did, it would be a bad thing because it meant that you lost all your legacy customers." |
| | • As Defendants' Ex. H shows, just before the Class Period, Green Dot told investors that prepaid cards were responsible for the majority of the Company's operating revenues.<br><br>**Evidence**:<br>• Ex. G (2/21/18 EC Tr.) at 16, 19; and<br>• Ex. H (2/27/18 SEC Form 10-K) at 12 (*see* PGD 8).<br><br>**Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 9. |
| 10. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that Green Dot typically refers to prepaid debit cards as its "legacy business" or "established business lines."<br><br>**Evidence**: Ex. G (2/21/18 EC Tr.) at 16. | 10. Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• On the February 21, 2018 earnings call, Defendants referred to prepaid debit cards as "prepaid cards," "cash reloads," "active accounts," "established business lines," "legacy account products," |

- 10 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | "active card[s]," "established products," "new products," "legacy business," "reloads," "bread and butter," "higher economic cards," and "Walmart." **Evidence**: • Ex. G (2/21/18 EC Tr.) at 5, 7, 9, 16, 18-19. **Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 10. |
| 11.  On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Shifke disclosed how Green Dot was "continu[ing] to successfully evolve from what used to be largely a monoline, single channel model of selling prepaid cards and cash reloads at retail stores, into a new kind of bank, a modern, pro-consumer, technology-forward branchless bank that offers many products and services directly to consumers and through enterprise-level partnerships via our Banking as a Service platform." **Evidence**: Pl. Adm. No. 8 (citing Ex. G (2/21/18 EC Tr.) at 9). | 11.  Undisputed that the quoted language appears in Ex. G, but otherwise disputed. Disputed because: • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. • Whether this is a "disclosure" of material facts is subject to expert testimony. • The cited statement misleadingly omits that Streit said on the February 21, 2018 earnings call for Q4 2017 that Green Dot's prepaid cards ("established business lines or legacy business lines") were "more than half of our revenue," and thus, "***still our bread and butter today***. Just like coffee is still important to Starbucks. . . . So you're never going to get to 100% [direct deposit], or if you did, it would be a bad thing because it |

- 11 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | meant that you lost all your legacy customers." <br><br> • Defendants' Ex. H shows, just before the Class Period, Green Dot told investors that prepaid cards were responsible for the majority of the Company's operating revenues. <br><br> **Evidence**: <br> • Ex. G (2/21/18 EC Tr.) at 16, 19; and <br> • Ex. H (2/27/18 SEC Form 10-K) at 12 (*see* PGD 8). <br><br> **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint).  *See* PEO 11. |
| 12.  On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Defendants disclosed Green Dot's total number of active accounts, and the growth in active accounts on a year-over-year basis. <br><br> **Evidence**: Pl. Adm. No. 5 (citing Ex. G (2/21/18 EC Tr.) at 5). | 12.  Undisputed that the quoted language appears in Ex. G, but otherwise disputed. <br><br> Disputed because: <br><br> • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br> • Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br> • ████████████████████████ |

- 12 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | (redacted)<br><br>• As Defendants' Ex. K shows, the "active accounts" metric replaced the legacy "active cards" metric at the start of the Class Period, which obscured the decline in prepaid accounts.<br><br>• Investors did not know the composition of active accounts during the Class Period, as Defendants' Exhibit G shows.<br><br>**Evidence:**<br><br>• (redacted)<br><br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3);<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1);<br>• Ex. K (5/10/18 SEC Form 10-Q) at 29 (introduction of "active accounts" metric); |

- 13 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | ██████████████<br>██████████████<br>██████████████<br>██████████████<br>██████████████<br>██████████████<br>██████████████<br>██████████████<br>██████████████<br>██████████████<br>██████████████<br>██████████████<br>██████████████<br>██████████ ");<br><br>• Ex. 66 (11/7/19 SunTrust Analyst Report) at 1 (seeking "better disclosure" concerning Green Dot's consumer products);<br>• Ex. 59 (3/7/19 Deutsche Bank Analyst Report) at 1 (noting the lack of transparency and "limited visibility in [Green Dot's business] model"); and<br>• Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 ("We had long wondered about the economics of the new BaaS accounts vs. the Legacy . . . . We had asked this question a couple of times but never got a straight answer . . . .").<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the |

- 14 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 12. |
| 13. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that "we track our established products versus new products internally, but we disclose just the segments." **Evidence**: Pl. Adm. No. 7 (citing Ex. G (2/21/18 EC Tr.) at 16). | 13. Undisputed that the quoted language appears in Ex. G, but otherwise disputed. Disputed because: <br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br>• Whether this is a "disclosure" of material facts is subject to expert testimony. <br>• ███████████████████ <br><br>**Evidence**: <br>• Ex. 30 at -2731 (*see* PGD 12); <br>• Ex. 31 (*see* PGD 12); <br>• Ex. 5 at -6280 (*see* PGD 12); <br>• Ex. 34 at -3868 (*see* PGD 12); <br>• Ex. 39 at -1009 (*see* PGD 3); <br>• Ex. 28 at -6284 (*see* PGD 3); <br>• Ex. 41 (*see* PGD 3); <br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); and |

- 15 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 (*see* PGD 12).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint).  *See* PEO 13. |
| 14.  On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that Green Dot's "active accounts receiving direct deposit, gr[ew] by 21% in the quarter" as part of a "continuing long-term portfolio mix shift towards higher lifetime value accounts."<br><br>**Evidence**: Pl. Adm. No. 5 (citing Ex. G (2/21/18 EC Tr.) at 5). | 14.  Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• ███████████████████████████<br><br>• Defendants knew that Green Dot's actual product mix shift was not moving toward higher value accounts, but rather, toward lower value accounts, as Streit had to admit in August 2019.<br><br>• ███████████████████████████ |

- 16 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Evidence**:<br>• Ex. 29 (*see* PGD 2);<br>• Ex. 16 (*see* PGD 2);<br>• Ex. 37 at -0915 (*see* PGD 2);<br>• Ex. 30 at -2731 (*see* PGD 12);<br>• Ex. 31 (*see* PGD 12);<br>• Ex. 5 at -6280 (*see* PGD 12);<br>• Ex. 34 at -3868 (*see* PGD 12);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 [GDSECLIT_01136284] at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3);<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); and<br>• ██████████████████<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 14. |
| 15.  On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that Green Dot "had multiple new Banking as a Service program wins."<br><br>**Evidence**: Ex. G (2/21/18 EC Tr.) at 4. | 15.  Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• ████████████████ |

- 17 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Evidence**:<br>• Ex. 30 at -2731 (*see* PGD 12);<br>• Ex. 31 (*see* PGD 12);<br>• Ex. 34 at -3868 (*see* PGD 12);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3); and<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 15. |
| 16. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that for FY 2018, "we intend to focus on attracting . . . consumer segments who are more likely to enroll in direct deposit."<br><br>**Evidence**: Pl. Adm. No. 6 (citing Ex. G (2/21/18 EC Tr.) at 6). | 16. Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The cited statement misleadingly omits that Streit said on the February 21, 2018 earnings call for Q4 2017 that Green Dot's prepaid cards ("established business lines or legacy business lines") were "more than half of our revenue," |

- 18 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | and thus, "**still our bread and butter today**. Just like coffee is still important to Starbucks. . . . So you're never going to get to 100% [direct deposit], or if you did, it would be a bad thing because it meant that you lost all your legacy customers." <br><br>• Defendants' Ex. H shows, just before the Class Period, Green Dot told investors that prepaid cards were responsible for the majority of its operating revenues. <br><br>• ████████████████████ <br><br>**Evidence**: <br>• Ex. G (2/21/18 EC Tr.) at 16, 19; <br>• Ex. H (2/27/18 SEC Form 10-K) at 12 (*see* PGD 8); <br>• Ex. 29 (*see* PGD 2); <br>• Ex. 16 (*see* PGD 2); <br>• Ex. 35 at -1511 (*see* PGD 14); <br>• Ex. 37 at -0915 (*see* PGD 2); and <br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1). <br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 16. |

- 19 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 17.  On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that Green Dot's newer products and services had become "more and more material."<br><br>**Evidence**: Pl. Adm. No. 7 (citing Ex. G (2/21/18 EC Tr.) at 16). | 17.  Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• Defendants' editorializing – "Green Dot's newer products and services had become" – is not a fact and does not appear in the quoted Exhibit.<br><br>• Defendants admitted in August 2019 that the "vast majority" of Green Dot's newer products during the Class Period were free.<br><br>• The cited statement misleadingly omits that Streit said on the February 21, 2018 earnings call for Q4 2017 that Green Dot's prepaid cards ("established business lines or legacy business lines") were "more than half of our revenue," and thus, "***still our bread and butter today***.  Just like coffee is still important to Starbucks. . . .  So you're never going to get to 100% [direct deposit], or if you did, it would be a bad thing because it meant that you lost all your legacy customers."<br><br>• Defendants' Ex. H shows, just before the Class Period, Green Dot told investors |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | that prepaid cards were responsible for the majority of its operating revenues.<br><br>**Evidence**:<br>• Ex. G (2/21/18 EC Tr.) at 16, 19;<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); and<br>• Ex. H (2/27/18 SEC Form 10-K) at 12 (*see* PGD 8).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint).  *See* PEO 17. |
| 18.  On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that "the margins on some of [Green Dot's] new BaaS programs are materially lower than those of [its] established and at scale legacy product lines."<br><br>**Evidence**: Pl. Adm. No. 14 (citing Ex. G (2/21/18 EC Tr.) at 7). | 18.  Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The cited statement misleadingly omits that during the Class Period Streit told investors that BaaS "margins on those programs [are] *expected to expand over future periods* as those programs scale"; that their BaaS margins were low due to "up front" costs but would "*get better over time*" with "margin expansion" and "certainly could be" "as rich as our legacy products." |

- 21 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | ● ▮▮▮▮▮▮<br><br>**Evidence**:<br>● Ex. I (5/9/18 EC Tr.) at 3, 7, 9, 11, 15, 21 23;<br>● Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>● ▮▮▮▮▮▮<br><br>● Ex. 39 at -1009 (*see* PGD 3);<br>● Ex. 28 at -6284 (*see* PGD 3);<br>● Ex. 41 (*see* PGD 3); and<br>● Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 18. |
| 19. In Green Dot's Form 10-K for the period ended December 31, 2017 (filed February 27, 2018), Green Dot disclosed that the "margins for new products and services may not be as | 19. Undisputed that the quoted language appears in Ex. H, but otherwise disputed.<br><br>Disputed because: |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| high as the margins we have experienced in the past." <br><br> **Evidence**: Pl. Adm. No. 2 (citing Ex. H (2/27/18 SEC Form 10-K) at 13). | • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br> • Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br> • The cited statement misleadingly omits that during the Class Period Streit told investors that BaaS "margins on those programs [are] *expected to expand over future periods* as those programs scale"; that their BaaS margins were low due to "up front" costs but would "*get better over time*" with "margin expansion" and "certainly could be" "as rich as our legacy products." <br><br> • The "vast majority" of Green Dot's BaaS programs were later admitted to be free. ████████████████████ <br><br> • The quoted language appears in a risk factor that reads in its entirety: "Moreover, new products and services may not be profitable, and even if they are profitable, operating margins for new products and services may not be as high as the margins we have experienced in the past." Read in its entirety, the statement is clearly meant as a disclosure |

- 23 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | of a potential risk and not as a description of present fact.<br><br>**Evidence**:<br>• Ex. I (5/9/18 EC Tr.) at 3, 7, 9, 11, 15, 21, 23;<br>• Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>• Ex. 2 at -0799  (*see* PGD 18);<br>• Ex. 4 at -4196 (*see* PGD 18);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3);<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); and<br>• Ex. H (2/27/18 SEC Form 10-K) at 33 ("improving mix in our active card portfolio").<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint).  *See* PEO 19. |
| 20.  On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that Green Dot had "increase[ed] the number of accounts receiving direct deposit by 930,000 on a year-over-year basis."<br><br>**Evidence**: Pl. Adm. No. 32 (citing Ex. I (5/9/18 EC Tr.) at 7). | 20.  Undisputed that the quoted language appears in Ex. I, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• ████████████ |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | ████████████████████████████████ ████████████████████████████. |
|  | • The cited statement misleadingly omits that Green Dot's actual product mix shift was not moving toward higher value accounts (as Defendants said repeatedly throughout the Class Period) but rather, toward lower value BaaS and free direct deposit accounts (Mot. at 8). |
|  | **Evidence**: <br> • Ex. 29 (*see* PGD 2); <br> • Ex. 16 (*see* PGD 2); <br> • Ex. 35 at -1511 (*see* PGD 14); <br> • Ex. 37 at -0915 (*see* PGD 2); <br> • Ex. H (2/27/18 SEC Form 10-K) at 33 (*see* PGD 19); <br> • ████████████████████████████ ████████████████████████████ |
|  | • Ex. 34 at -3868 (*see* PGD 12); <br> • Ex. 39 at -1009 (*see* PGD 3); <br> • Ex. 30 at -2731 (*see* PGD 12); <br> • Ex. 31 (*see* PGD 12); and <br> • Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1). |
|  | **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 20. |
| 21. On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that Green Dot was experiencing "ongoing momentum in [its] efforts to attract and retain direct | 21. Undisputed that the quoted language appears in Ex. I, but otherwise disputed. <br><br> Disputed because: |

- 25 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| deposit accounts." **Evidence**: Pl. Adm. No. 33 (citing Ex. I (5/9/18 EC Tr.) at 5). | • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• ██████████████████████<br><br>• The cited statement misleadingly omits that Green Dot's actual product mix shift was not moving toward higher value accounts (as Defendants said repeatedly throughout the Class Period) but rather toward lower value BaaS and free direct deposit accounts (Mot. at 8).<br><br>**Evidence**:<br>• Ex. 29 (*see* PGD 2);<br>• Ex. 16 (*see* PGD 2);<br>• Ex. 35 at -1511 (*see* PGD 14);<br>• Ex. 37 at -0915 (*see* PGD 2);<br>• Ex. H (2/27/18 SEC Form 10-K) at 33 (*see* PGD 20);<br>• Ex. I (5/9/18 EC Tr.) at 5 (*see* PGD 20);<br>• Ex. 34 at -3868 (*see* PGD 12);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 30 (*see* PGD 12);<br>• Ex. 31 (*see* PGD 12); and<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | evidence. *See* PEO 21. |
| 22.  On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that Green Dot was "continuing [its] long-term portfolio mix shift towards higher lifetime value accounts."  **Evidence**: Pl. Adm. No. 34 (citing Ex. I (5/9/18 EC Tr.) at 5). | 22.  Undisputed that the quoted language appears in Ex. I, but otherwise disputed.  Disputed because:  • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.  • Whether this is a "disclosure" of material facts is subject to expert testimony.  • The cited statement misleadingly omits that Green Dot's actual product mix shift was toward lower value BaaS and free direct deposit accounts.  **Evidence**:  • Ex. 30 at -2731 (*see* PGD 12);  • Ex. 31 (*see* PGD 12);  • Ex. 5 at -6280 (*see* PGD 12);  • Ex. 34 at -3868 (*see* PGD 12);  • Ex. 39 at -1009 (*see* PGD 3);  • Ex. 28 at -6284 (*see* PGD 3);  • Ex. 41 (*see* PGD 3);  • Ex. 29 (*see* PGD 2);  • Ex. 16 (*see* PGD 2);  • Ex. 37 at -0915 (*see* PGD 2); and  • Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).  **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence.  *See* PEO 22. |
| 23.  On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Shifke disclosed that "the mix of customers receiving direct deposit of funds grew substantially . . . such | 23.  Undisputed that the quoted language appears in Ex. I, but otherwise disputed.  Disputed because: |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| that now approximately 1/2 of all our active accounts received direct deposit in the quarter." **Evidence**: Pl. Adm. No. 35 (citing Ex. I (5/9/18 EC Tr.) at 9). | • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br> • Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br> • ██████████████████████████ <br><br> • The cited statement misleadingly omits that Green Dot's actual product mix shift was not moving toward higher value accounts (as Defendants said repeatedly throughout the Class Period), but rather toward lower value BaaS and free direct deposit accounts (Mot. at 8). <br><br> **Evidence**: <br> • Ex. 29 (*see* PGD 2); <br> • Ex. 16 (*see* PGD 2); <br> • Ex. 35 at -1511 (*see* PGD 14); <br> • Ex. 37 at -0915 (*see* PGD 2); <br> • Ex. 46 (8/7/19 EC Tr.)at 14 (*see* PGD 1); <br> • Ex. H (2/27/18 SEC Form 10-K) at 33 (*see* PGD 20); <br> • Ex. I (5/9/18 EC Tr.) at 5 (*see* PGD 20); <br> • Ex. 34 at -3868 (*see* PGD 12); <br> • Ex. 39 at -1009 (*see* PGD 3); <br> • Ex. 30 at -2731 (*see* PGD 12); and <br> • Ex. 31 (*see* PGD 12). <br><br> **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 23. |

- 28 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 24. On Green Dot's May 9, 2018 Earnings Call for 1Q 2018, Mr. Shifke disclosed that Green Dot has "lower-margin revenue from our new product lines." **Evidence**: Pl. Adm. No. 40 (citing Ex. I (5/9/18 EC. Tr.) at 10). | 24. Undisputed that the quoted language appears in Ex. I, but otherwise disputed. Disputed because: <br><br> • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br> • Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br> • The cited statement misleadingly omits that Streit told investors that BaaS "margins on those programs [are] *expected to expand over future periods* as those programs scale"; that their BaaS margins were low due to "up front" costs but would "*get better over time*" with "margin expansion" and "certainly could be" "as rich as our legacy products." <br><br> • The "vast majority" of Green Dot's new products were later admitted to be free, ████████████████ ████████████████ **Evidence**: <br> • Ex. I (5/9/18 EC Tr.) at 3, 7, 9, 11, 15, 21 23; <br> • Ex. K (5/10/18 SEC Form 10-Q) at 28; <br> • Ex. 2 at -0799 (*see* PGD 18); <br> • Ex. 4 at -4196 (*see* PGD 18); |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3); and<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 24. |
| 25.  On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that Green Dot's "newer branded product lines . . . have a much lower contribution margin than our established product lines."<br><br>**Evidence**: Pl. Adm. No. 38 (citing Ex. I (5/9/18 EC Tr.) at 4). | 25.  Undisputed that the quoted language appears in Ex. I, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The statement as quoted, and in particular the phrase "branded product lines," refers to Green Dot's prepaid cards – thus, it cannot support Defendants' argument that Defendants disclosed that Green Dot's newer digital banking products had materially lower margins than historically high-margin legacy prepaid cards (Mot. at 12). *See* Ex. M at 11 (referring specifically to "retail stores" and "debit cards").<br><br>• The cited statement misleadingly omits that Streit told investors that BaaS "margins on those programs [are] ***expected to expand over future periods*** as those programs scale"; that their BaaS margins were low due to "up front" costs |

- 30 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | but would "*get better over time*" with "margin expansion" and "*certainly could be*" "*as rich as our legacy products.*"<br><br>• The "majority" of Green Dot's BaaS programs were later admitted to be free.<br><br>████████████████████<br><br>**Evidence**:<br>• Ex. I (5/9/18 EC Tr.) at 3, 7, 9, 11, 15, 21, 23;<br>• Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>• Ex. 2 at -0799 (*see* PGD 18);<br>• Ex. 4 at -4196 (*see* PGD 18);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3); and<br>• Ex. 46 (8/7/19 EC Tr.)at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 25. |
| 26.  On May 9, 2018, market analyst Deutsche Bank reported that Green Dot's "EBITDA margins declined y-o-y in 1Q18 and came in below expectations and company guided to 2Q18 EBITDA significantly below street estimates potentially due to lower contribution margin for new programs."<br><br>**Evidence**: Pl. Adm. No. 43 (citing | 26.  Undisputed that the quoted language appears in Ex. J, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether truth was on the market is an ultimate fact for the jury.<br><br>• Whether truth was on the market is subject to expert testimony. |

- 31 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| Ex. J (5/9/18 Deutsche Bank Analyst Report) at 1). | • The cited statement misleadingly omits language from Ex. J (in the same sentence) contradicting the asserted fact: *"[T]he company expects 100bps of EBITDA margin expansion for FY18."* <br><br> • The cited statement misleadingly omits that Streit told investors that BaaS "margins on those programs [are] *expected to expand over future periods* as those programs scale"; that their BaaS margins were low due to "up front" costs but would *"get better over time"* with "margin expansion" and "certainly could be" "as rich as our legacy products." <br><br> • Defendants later disclosed that the "vast majority" of their new programs were free, ████████████████ <br><br> Ex. J (5/9/18 Deutsche Bank Analyst Report) at 1; <br> • Ex. I (5/9/18 EC Tr.) at 3, 7, 9, 11, 15, 21 23; <br> • Ex. K (5/10/18 SEC Form 10-Q) at 28; <br> • Ex. 2 at -0799 (*see* PGD 18); <br> • Ex. 4 at -4196 (*see* PGD 18); <br> • Ex. 39 at -1009 (*see* PGD 3); <br> • Ex. 28 at -6284 (*see* PGD 3); <br> • Ex. 41 (*see* PGD 3); and |

- 32 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 26. |
| 27. In Green Dot's Form 10-Qs for Q1 2018 filed May 10, 2018, and for Q1 2019 filed May 9, 2019, the Company disclosed the "[n]umber of [a]ctive [a]ccounts," a "key metric[]" reported in each of the company's quarterly and annual reports that includes "any bank account" within Green Dot.<br><br>**Evidence**: Ex. K (5/10/18 SEC Form 10-Q) at 29; Ex. Y (5/9/19 SEC Form 10-Q) at 27. | 27. Undisputed that the quoted language appears in Exs. K and Y, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The phrase "reported in each of the company's quarterly and annual reports that includes" does not appear in the cited documents, and is not a factual statement, but rather, Defendants' editorial characterization.<br><br>• The cited statement misleadingly omits Defendants' falsely positive statements about prepaid card business growth in Ex. I; the cited statement misleadingly omits declining prepaid accounts and the related worsening product mix shift of active accounts, which Defendants wrongly suggest they disclosed (Mot. at 10); and the cited statement misleadingly omits Defendants' statements that "[m]ost of our operating revenues are derived from prepaid financial services sold at our four largest retail distributors." |

- 33 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • As Defendants' Ex. K shows, the "active accounts" metric replaced the legacy "active cards" metric at the start of the Class Period, which obscured the decline in prepaid accounts.<br><br>• Investors did not know the composition of active accounts during the Class Period, as Defendants' Ex. G shows.<br><br>**Evidence**:<br>• Ex. K (5/10/18 SEC Form 10-Q) at 29, 41;<br>• Ex. Y (5/9/19 SEC Form 10-Q) at 27;<br>• ███████████████<br>• Ex. 30 at -2731 (*see* PGD 12);<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1);<br>• Ex. I (5/9/18 EC Tr.) at 4 ("branded product lines . . . contribute[d] [to] material revenue growth");<br>• *Id.* at 5 ("1/3 of that growth came from our own established branded programs");<br>• *Id.* at 12 ("the good old fashioned Walmart MoneyCards and Green Dot classic Visa cards and MasterCards and GoBank, which continue[] to do extremely well");<br>• *Id.* at 6 ("On the branded side of our shop, Green Dot continues to gain traction on nearly all fronts.");<br>• *Id.* at 12 ("1/3 of that growth is from our established programs, the legacy business"); |

- 34 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • Ex. K (5/10/18 SEC Form 10-Q) at 29 (*see* PGD 12);<br>• Ex. 22 at 2 (*see* PGD 12);<br>• Ex. 12 at -6971 (*see* PGD 12);<br>• Ex. G (2/21/18 EC Tr.) at 16 (*see* PGD 12);<br>• Ex. 27 at -9021 (*see* PGD 12);<br>• Ex. 38 at -1789 (*see* PGD 12);<br>• Ex. 66 (11/7/19 SunTrust Analyst Report) at 1 (*see* PGD 12);<br>• Ex. 59 (3/7/19 Deutsche Bank Analyst Report) at 1 (*see* PGD 12); and<br>• Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 (*see* PGD 12).<br><br>**Objections**: Incomplete; calls for a legal conclusion. *See* PEO 27. |
| 28.  In Green Dot's Form 10-Q for Q1 2018 filed May 10, 2018, Green Dot disclosed that "[t]he increase in the number of active accounts of 19% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs."<br><br>**Evidence**: Pl. Adm. No. 29 (citing Ex. K (5/10/18 SEC Form 10-Q) at 29). | 28.  Undisputed that the quoted language appears in Ex. K, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The cited statement misleadingly omits that Ex. K also states that "[m]ost of our operating revenues are derived from prepaid financial services sold at our four largest retail distributors," and also omits known contemporaneous declines in Green Dot's legacy prepaid business. |

- 35 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | • As Defendants' Ex. K shows, the "active accounts" metric replaced the legacy "active cards" metric at the start of the Class Period, which obscured the decline in prepaid accounts.<br><br>• Investors did not know the composition of active accounts during the Class Period, as Defendants' Ex. G shows.<br><br>• The cited statement misleadingly omits Defendants' falsely positive statements about prepaid card business growth on the May 9, 2019 earnings call.<br><br>**Evidence**:<br>• Ex. K (5/10/18 SEC Form 10-Q) at 29, 41;<br><br>• Ex. 36 at -4169 (*see* PGD 27); |

- 36 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | <br><br><br> • Ex. 30 at -2731 (*see* PGD 12);<br>• Ex. 31 (*see* PGD 12);<br>• Ex. 5 at -6280  (*see* PGD 12);<br>• Ex. 34 at -3868 (*see* PGD 12);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3);<br>• Ex. 46 (8/7/19 EC Tr.)at 14 (*see* PGD 1);<br>• Ex. K (5/10/18 SEC Form 10-Q) at 29 (*see* PGD 12);<br>• Ex. 22 at 2 (*see* PGD 12);<br>• Ex. 12 at -6971 (*see* PGD 12);<br>• Ex. G (2/21/18 EC Tr.) at 16 (*see* PGD 12);<br>• Ex. 27 at -9021 (*see* PGD 12);<br>• Ex. 38 at -1789 (*see* PGD 12);<br>• Ex. 66 (11/7/19 SunTrust Analyst Report) at 1 (*see* PGD 12);<br>• Ex. 59 (3/7/19 Deutsche Bank Analyst Report) at 1 (*see* PGD 12);<br>• Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 (*see* PGD 12); and<br>• Ex. I (5/9/18 EC Tr.) at 4, 6, 12 (*see* |

- 37 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | PGD 27).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 28. |
| 29. On May 10, 2018, market analyst Morgan Stanley reported that "GDOT's adjusted EBITDA margins compressed 240 bps YoY during the quarter due to mix shift towards newer branded product lines and BaaS program launches that come with upfront expenses."<br><br>**Evidence**: Pl. Adm. No. 55 (citing Ex. L (5/10/18 Morgan Stanley Analyst Report) at 2). | 29. Undisputed that the quoted language appears in Ex. L, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether truth was on the market is an ultimate fact for the jury.<br><br>• Whether truth was on the market is subject to expert testimony.<br><br>• This report, which touts "*[c]ore . . . [s]trength*" and "*margin expansion . . . as some of these programs start to scale*," fails to reflect that Defendants ̇ad conveyed to the market the extent of the permanently low BaaS margins, or ▓▓▓▓▓▓▓▓▓▓▓ In reality, Defendants' Ex. L shows only that the market incorrectly believed that BaaS margins were only "currently" low due to start-up "*upfront expenses*," but would "expand notably" – consistent with Defendants' statements BaaS margins would "get better over time" and "certainly could be" "as rich as our legacy products."<br><br>• The cited statement misleadingly that Defendants touted an improving product mix towards more valuable accounts during the Class Period, as Defendants' own exhibits show. |

- 38 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Evidence**:<br>• Ex. I (5/9/18 EC Tr.) at 7, 11, 23;<br>• Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>• Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2;<br>• Ex. 2 at -0799 (*see* PGD 18);<br>• Ex. 4 at -4196 (*see* PGD 18);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3);<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1);<br>• Ex. H (2/27/18 SEC Form 10-K) at 33 (*see* PGD 20); and<br>• Ex. I (5/9/18 EC Tr.) at 5 (*see* PGD 20).<br><br>**Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 29. |
| 30.  In Green Dot's Form 10-Q for Q1 2018 filed May 10, 2018, Green Dot disclosed "[o]ur new product lines currently have margins below our established product lines."<br><br>**Evidence**: Pl. Adm. No. 26 (citing Ex. K (5/10/18 SEC Form 10-Q) at 28). | 30.  Undisputed that the quoted language appears in Ex. K, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• This statement does not refer to the BaaS products at issue.  The reference to "new product lines" is vague, undefined, and includes prepaid products – rather than BaaS products specifically.<br><br>• Ex. K does not reveal the extent of █████████████████ |

- 39 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | and that the new products were free. Ex. K told investors "we expect the revenue growth from our established product lines, as well as the maturation of our new products will offset the unfavorable mix impact." Similarly, Defendants falsely told investors, and the market believed them, that BaaS margins were only "currently" low due to start-up and upfront expenses, but would "get better over time" and "certainly could be" "as rich as our legacy products."<br><br>• The cited statement misleadingly omits that Defendants touted an improving product mix towards more valuable accounts during the Class Period, as Defendants' own exhibits show.<br><br>**Evidence**:<br>• Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>• Ex. I (5/9/18 EC Tr.) at 7, 11, 23;<br>• Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2;<br>• Ex. 2 at -0799 (*see* PGD 18);<br>• Ex. 4 at -4196 (*see* PGD 18);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3);<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1);<br>• Ex. H (2/27/18 SEC Form 10-K) at 33 (*see* PGD 20); and<br>• Ex. I (5/9/18 EC Tr.) at 5 (*see* PGD 20).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 30. |

- 40 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 31. Omitted. | |
| 32. At the May 16, 2018 JP Morgan Conference, Mr. Shifke disclosed how Green Dot was "focusing on [its] direct deposit customer base," and that "[n]ow about 80% of [its] [volume] comes from direct deposit" and "[n]early 50% of our active customers are on direct deposit."<br><br>**Evidence**: Ex. M (5/16/18 JP Morgan Conf. Tr.) at 10. | 32. Undisputed that the quoted language appears in Ex. M, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The cited statement misleadingly omits that direct deposit was not "driving the engine to get the fees" like Defendants ██████████ also omits that Green Dot's "digital customers" did not "tend to be higher-revenue customers" like Defendants said, and its digital offerings were not "many times more profitable."<br><br>• In asserting what the Company's focus was, the cited statement misleadingly omits that Green Dot's prepaid growth was declining and also omits that the focus of the statements on the call (and on the May 9, 2018 call) included prepaid cards.<br><br>**Evidence**:<br>• Ex. M (5/16/18 JP Morgan Conf. Tr.) at 10, 13-14;<br>• Ex. 29 (*see* PGD 2);<br>• Ex. 16 (*see* PGD 2); |

- 41 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • Ex. 35 at -1511 (*see* PGD 14);<br>• Ex. 37 at -0915 (*see* PGD 2);<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); and<br>• Ex. I (5/9/18 EC Tr.) at 4, 6, 12 (*see* PGD 27).<br><br>**Objections**: Incomplete; calls for a legal conclusion. *See* PEO 32. |
| 33. On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that Green Dot's newer digital banking services had "materially lower margins" than traditional high-fee prepaid cards, that "expanded margins on [Green Dot's] established product lines [were] being offset by the materially lower margins generated on [its] large-scale new product lines," and that the company had no "expectation that margins" on the new business lines would "ever be as rich as [the Company's] legacy products."<br><br>**Evidence**: Pl. Adm. No. 40 (citing Ex. I (5/9/18 EC. Tr.) at 4, 7, 23). | 33. Undisputed that the quoted language appears in Ex. I, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• ███████████████████ margins were only "currently" low due to start-up and upfront expenses but would "get better over time" and said they "*certainly could be*" "*as rich as our legacy products.*"<br><br>• The cited statement misleadingly omits that Defendants touted an improving product mix towards more valuable accounts during the Class Period, as Defendants' own exhibits show. |

- 42 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • The cited statement misleadingly omits the 15 pages of text in between the first portion of Defendants' quoted language on page 4 and the last portion of quoted language on page 23.<br><br>**Evidence**:<br>• Ex. I (5/9/18 EC Tr.) at 7, 11, 23;<br>• Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>• Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2;<br>• Ex. 2 at -0799 (*see* PGD 18);<br>• Ex. 4 at -4196 (*see* PGD 18);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3);<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1);<br>• Ex. H (2/27/18 SEC Form 10-K) at 33 (*see* PGD 20); and<br>• Ex. I (5/9/18 EC Tr.) at 5 (*see* PGD 20).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; compound; misstates the evidence. *See* PEO No. 33. |
| 34. On July 10, 2018, market analyst Jefferies Group reported that Green Dot "is amid a fundamental shift in terms of its business model (*e.g.*, focus on BaaS)."<br><br>**Evidence**: Pl. Adm. No. 65 (citing Ex. N (7/10/18 Jefferies Group LLC Analyst Report) at 3). | 34. Undisputed that the quoted language appears in Ex. N, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether truth was on the market is an ultimate fact for the jury.<br><br>• Whether truth was on the market is subject to expert testimony.<br><br>• The cited statement misleadingly omits that the report states that the "[f]undamental . . . inflection" was |

- 43 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | because "GDOT is uniquely poised to benefit from scarcity value in the prepaid/underbanked space." |
| | • The cited statement misleadingly omits the report's statement that BaaS had "correspondingly high incremental margins" and "margin potential," when BaaS margins were permanently low, projected to be flat, degrading, and ultimately revealed to be not just low but free. |
| | **Evidence**: <br>• Ex. N (7/10/18 Jefferies Group LLC Analyst Report) at 1, 3; <br>• Ex. 2 at -0799 (*see* PGD 18); <br>• Ex. 4 at -4196 (*see* PGD 18); <br>• Ex. 39 at -1009 (*see* PGD 3); <br>• Ex. 28 at -6284 (*see* PGD 3); <br>• Ex. 41 (*see* PGD 3); and <br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1). |
| | **Objections**: Incomplete; best evidence; misstates the evidence.  *See* PEO 34. |
| 35.  On Green Dot's August 8, 2018 Earnings Call for Q2 2018, Mr. Streit disclosed that Green Dot gained "an additional 700,000 more active accounts, in which approximately 500,000 were new direct deposit accounts."<br><br>**Evidence**: Pl. Adm. No. 76 (citing Ex. O (8/8/18 EC Tr.) at 5). | 35.  Undisputed that the quoted language appears in Ex. O, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony. |

- 44 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | • The cited statement misleadingly omits that ███████████████████████████████████████████████████████ |
|  | • Investors did not know the composition of active accounts during the Class Period, as Defendants' Ex. G shows. |
|  | • The cited statement misleadingly omits that Ex. O emphasizes the purported growth of Green Dot's prepaid cards, which was actually declining. |
|  | **Evidence**: <br> • Ex. 30 at -2731 (*see* PGD 12); <br> • Ex. 31 (*see* PGD 12); <br> • Ex. 5 at -6280 (*see* PGD 12); <br> • Ex. 34 at -3868 (*see* PGD 12); <br> • Ex. 39 at -1009 (*see* PGD 3); <br> • Ex. 28 at -6284 (*see* PGD 3); <br> • Ex. 41 (*see* PGD 3); <br> • Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); <br> • Ex. H (2/27/18 SEC Form 10-K) at 34 (*see* PGD 12); <br> • Ex. 22 at 2 (*see* PGD 12); <br> • Ex. 12 at -6971 (*see* PGD 12); <br> • Ex. G (2/21/18 EC Tr.) at 16 (*see* PGD 12); <br> • Ex. 27 at -9021 (*see* PGD 12); |

- 45 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | <ul><li>Ex. 38 at -1789 (*see* PGD 12);</li><li>Ex. 66 (11/7/19 Sun Trust Analyst Report) (*see* PGD 12);</li><li>Ex. 59 (3/7/19 Deutsche Bank Analyst Report) at 1 (*see* PGD 12);</li><li>Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 (*see* PGD 12);</li><li>Ex. O (8/8/18 EC Tr.) at 4 ("material growth being driven for both our established product lines");</li><li>*Id.* at 5 ("On the product side of our shop, Green Dot continues to gain traction.  First, Green Dot's long-term retail distribution partners continue to increase their support for our products . . . .");</li><li>*Id.* at 11 ("[O]ur established product lines . . . are just really doing well.  So we're seeing growth from both. . . . [W]here did the revenue growth come from?  It's pretty much split along the middle, half from our established product lines . . . .  So everything's growing in relative lockstep."); and</li><li>████████████████████</li></ul>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence.  *See* PEO 35. |

- 46 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 36.  On Green Dot's August 8, 2018 Earnings Call for Q2 2018, Mr. Shifke disclosed that Green Dot's "portfolio mix [was] mov[ing] more towards direct deposit customers as a percentage of total and away from one-and-dones." <br><br>**Evidence**: Pl. Adm. No. 75 (citing Ex. O (8/8/18 EC Tr.) at 12). | 36.  Undisputed that the quoted language appears in Ex. O, but otherwise disputed. <br><br>Disputed because: <br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br>• The cited statement misleadingly omits that Ex. O emphasizes the purported growth of Green Dot's prepaid cards, which was actually declining. <br><br>• ████████████████████████ <br><br>• Green Dot's true portfolio mix was not moving toward higher-value accounts, but rather, toward lower-value BaaS and free direct deposit accounts. <br><br>**Evidence**: <br>• Ex. O (8/8/18 EC Tr.) at 4-5, 11 (*see* PGD 35); <br>• Ex. 24; Ex. 25 (*see* PGD 35); <br>• Ex. 29 (*see* PGD 2); <br>• Ex. 16 (*see* PGD 2); <br>• Ex. 37 at -0915 (*see* PGD 2); <br>• Ex. 35 at -1511 (*see* PGD 14); <br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); <br>• Ex. 30 at -2731 (*see* PGD 12); |

- 47 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • Ex. 31 (*see* PGD 12);<br>• Ex. 5 at -6280 (*see* PGD 12);<br>• Ex. 34 at -3868 (*see* PGD 12);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3); and<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 36. |
| 37. In Green Dot's Form 10-Q for Q2 2018 filed August 9, 2018, Green Dot disclosed that "[t]he increase in the number of active accounts of 14% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs." It further disclosed that "operating margins for new products and services may not be as high as the margins we have experienced in the past."<br><br>**Evidence**: Pl. Adm. No. 74 (citing Ex. P (8/9/18 SEC Form 10-Q) at 30); Ex. P (8/9/18 SEC Form 10-Q) at 44. | 37. Undisputed that the quoted language appears in Ex. P, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The cited language does not disclose the prepaid card declines or resulting worsening mix shift, but instead touts "growth from our existing account programs."<br><br>• ████████████████████ also omits that the "vast majority" of new BaaS and direct deposit accounts were free. |

- 48 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • The "new products" referenced are not identified as BaaS. The same paragraph describes the new products as prepaid card accounts, demand deposit or checking accounts, and credit card accounts.<br><br>• The second portion of quoted language appears in a risk factor that reads in its entirety: "Moreover, new products and services may not be profitable, and even if they are profitable, operating margins for new products and services may not be as high as the margins we have experienced in the past." Read in its entirety, the statement is clearly meant as a disclosure of potential risk, and not as a description of present fact.<br><br>**Evidence**:<br>• Ex. P (8/9/18 SEC Form 10-Q) at 30, 44;<br>• Ex. 30 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3);<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); and<br>• Ex. 24; Ex. 25 (*see* PGD 35).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 37. |
| 38. On Green Dot's November 7, 2018 Earnings Call for Q3 2018, Mr. Streit disclosed that Green Dot's "the number of active accounts receiving direct deposit grew by 13% year-over-year."<br><br>**Evidence**: Pl. Adm. No. 99 (citing | 38. Undisputed that the quoted language appears in Ex. Q, but otherwise disputed.<br><br>Disputed because: |

- 49 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| Ex. Q (11/7/18 EC Tr.) at 6). | • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that the "vast majority" of direct deposit accounts were free, and the exhibit cited instead touts "legacy products and established business lines," which it said "continue to grow" when they were declining.<br><br>**Evidence**:<br>• Ex. Q (11/7/18 EC Tr.) at 12;<br>• Ex. 24; Ex. 25 (*see* PGD 35);<br>• Ex. 29 (*see* PGD 2);<br>• Ex. 31 at -4474; Ex. 34 at -3868 (*see* PGD 12); and<br>• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 38. |
| 39. On Green Dot's November 7, 2018 Earnings Call for Q3 2018, Mr. Streit disclosed that Green Dot's "a 2-year growth rate of 33% in actives and 114% in direct deposit actives" year-over-year.<br><br>**Evidence**: Pl. Adm. No. 100 (citing Ex. Q (11/7/18 EC Tr.) at 6). | 39. Undisputed that the quoted language appears in Ex. Q, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material |

- 50 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | facts is subject to expert testimony. |

- The cited exhibit misleads by emphasizing growth in "legacy products and established business lines," which were actually in decline, and touting active account growth while concealing negative product mix.

**Evidence**:
- Ex. Q (11/7/18 EC Tr.) at 12;
- Ex. 24; Ex. 25 (*see* PGD 35);
- Ex. 29 (*see* PGD 2);
- Ex. 31 (*see* PGD 12);
- Ex. 34 at -3868 (*see* PGD 12);
- Ex. 39 at -1009 (*see* PGD 3);
- Ex. 41 (*see* PGD 3);
- Ex. 38 at -1789 (*see* PGD 12); and
- Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).

**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 39.

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 40. During Green Dot's November 7, 2018 Earnings Call for Q3 2018, Robert Napoli, representing market analyst William Blair & Co., stated that Green Dot's "business is changing so rapidly." **Evidence**: Pl. Adm. No. 102 (citing | 40. Undisputed that the quoted language appears in Ex. Q, but otherwise disputed. Disputed because: • Whether truth was on the market is an ultimate fact for the jury. |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| Ex. Q (11/7/18 EC Tr.) at 11). | • Whether truth was on the market is subject to expert testimony.<br><br>• The analyst's generic observation does not identify what aspect of the business was changing and cannot reasonably be construed as showing Green Dot disclosed its worsening product mix shift. In fact, this analyst believed incorrectly, as stated in his November 7, 2018 report, that "Green Dot continues to benefit from an ***improving*** customer mix" when it was worsening.<br><br>• On the same earnings call, Defendants emphasized growth in "legacy products and established business lines," which were in fact declining – undermining the notion that the worsening mix shift was disclosed.<br><br>• The market ultimately expressed shock, when Green Dot's true negative product mix shift was revealed.<br><br>**Evidence**:<br>• Ex. Q (11/7/18 EC Tr.) at 11-12;<br>• Ex. 24; Ex. 25 (*see* PGD 35);<br>• Ex. S (11/7/18 William Blair & Co. Analyst Report) at 1 ("Green Dot continues to benefit from an improving customer mix");<br>• Ex. 34 at -3868 (*see* PGD 12);<br>• Ex. 66 (11/7/19 Sun Trust Analyst Report) (*see* PGD 12);<br>• Ex. 59 (3/7/19 Deutsche Bank Analyst Report) at 1(*see* PGD 12);<br>• Ex. 63 (5/9/19 Northland Capital |

- 52 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | Markets Analyst Report) at 1 (describing the shift away from prepaid cards as a "surprising shift in the company's strategy" and noting that "the economics of new BaaS customers vs legacy . . . has not been clear for a while"); and<br><br>• Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 (*see* PGD 12).<br><br>**Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 40. |
| 41.  On November 7, 2018, market analyst Deutsche Bank reported that as Green Dot's "[c]ard attrition pick[ed] up[,] [a]ctive card growth moderated to 3% Y/Y in 3Q18, which the [C]ompany blamed on difficult comps in September and reiterated mid-single-digit growth for 4Q18 and going forward. However, we would highlight that net active cards declined 430K from 2Q to 3Q, which the [C]ompany attributed to normal seasonality and highlighted 250K direct deposit additions in the quarter."<br><br>**Evidence**: Pl. Adm. No. 109 (citing Ex. R (11/7/18 Deutsche Bank Analyst Report) at 1). | 41.  Undisputed that the quoted language appears in Ex. R, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether truth was on the market is an ultimate fact for the jury.<br><br>• Whether truth was on the market is subject to expert testimony.<br><br>• This statement does not concern prepaid cards.  The analyst's statement identifies declining active card growth attributed to "normal seasonality," not prepaid declines, as affirmed by William Blair, who reported that card declines were "***driven by seasonality in the tax business***."<br><br>• The report says active cards were growing 3%, when in truth, prepaid cards were then declining by 130,000 units.<br><br>• The Company said on the November 7, 2018 earnings call that "our own legacy products and established business lines . . |

- 53 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | . are doing very well and continue to grow," when in truth they were declining by 130, 000 units.  Hence, analyst Jefferies noted: "solid core business fundamentals" and "growth from the prepaid." **Evidence**: • Ex. R (11/7/18 Deutsche Bank Analyst Report) at 1; • Ex. 52 (11/7/18 William Blair & Co. Analyst Report) at 1; • Ex. 53 (11/8/18 Jefferies Analyst Report); • ■■■■■■■■ **Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 41. |
| 42.  On Green Dot's November 7, 2018 Earnings Call for Q3 2018, Mr. Streit disclosed that Green Dot's BaaS programs "contribute at a lower margin than [the Company's] established programs." **Evidence**: Ex. Q (11/7/18 EC Tr.) at 17. | 42.  Undisputed that the quoted language appears in Ex. Q, but otherwise disputed. Disputed because: • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. • Whether this is a "disclosure" of material facts is subject to expert testimony. • On the same earnings call, Defendants touted "improving margin flow-through |

- 54 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | on some of our new BaaS programs" and "margin expansion" from BaaS.<br><br>■ <br><br>It also omits that the "vast majority" of new BaaS and direct deposit accounts were free.<br><br>■ Defendants told the market (and the market believed) that BaaS margins were only "currently" low due to start-up and upfront expenses but would "get better over time," saying they "***certainly could be*" "*as rich as our legacy products***."<br><br>**Evidence**:<br>● Ex. I (5/9/18 EC Tr.) at 7, 11, 23;<br>● Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>● Ex. Q (11/7/18 EC Tr.) at 17;<br>● Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2;<br>● Ex. 2 at -0799 (*see* PGD 18);<br>● Ex. 4 at -4196 (*see* PGD 18);<br>● Ex. 39 at -1009 (*see* PGD 3);<br>● Ex. 28 at -6284 (*see* PGD 3);<br>● Ex. 41 (*see* PGD 3); and<br>● Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion. *See* PEO 42. |
| 43.  On November 7, 2018, market analyst William Blair & Co. reported to investors that Green Dot's | 43.  Undisputed that the quoted language appears in Ex. S, but otherwise disputed. |

- 55 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| "margins on the BaaS business are below the corporate average currently due to heavy investment" and that "[m]anagement's commentary suggests newer initiatives initially have lower margins but ramp up as customer usage grows."<br><br>**Evidence**: Pl. Adm. No. 103 (citing Ex. S (11/7/18 William Blair & Co. Analyst Report) at 1-2). | Disputed because:<br><br>• Whether truth was on the market is an ultimate fact for the jury.<br><br>• Whether truth was on the market is subject to expert testimony.<br><br>• On the November 7, 2018 earnings call, Defendants touted "improving margin flow-through on some of our new BaaS programs" and "margin expansion" from BaaS.<br><br>• The full statement states that BaaS was creating "incremental annual revenues" from BaaS that was creating an "improving customer mix," when BaaS was not incremental and was creating a worsening customer mix.<br><br>• Although the statement repeats Defendants' untrue statements that BaaS margins were only "currently" low due to start-up and upfront expenses but would "get better over time" – and "certainly could be" "as rich as our legacy products"  and that the "vast majority" of new BaaS and direct deposit accounts were free.<br><br>**Evidence**:<br>• Ex. S (11/7/18 William Blair & Co. Analyst Report) at 1; |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • Ex. I (5/9/18 EC Tr.) at 7, 11, 23;<br>• Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>• Ex. Q (11/7/18 EC Tr.) at 17;<br>• Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2;<br>• Ex. 34 at -3868 (*see* PGD 12);<br>• Ex. 2 at -0799 (*see* PGD 18);<br>• Ex. 4 at -4196 (*see* PGD 18);<br>• Ex. 39 at -1009 (*see* PGD 3);<br>• Ex. 28 at -6284 (*see* PGD 3);<br>• Ex. 41 (*see* PGD 3); and<br>• Ex. 46 (8/7/19 EC Tr.)at 14 (*see* PGD 1).<br><br>**Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 43. |
| 44. In Green Dot's Form 10-Q for Q3 2018 filed November 8, 2018, Green disclosed that their "operating margins for new products and services may not be as high as the margins [the Company] ha[d] experienced in the past."<br><br>**Evidence**: Ex. T (11/8/18 SEC Form 10- Q) at 46). | 44. Undisputed that the quoted language appears in Ex. T, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• The cited statement misleadingly omits that on the November 7, 2018 earnings call, Defendants touted "improving margin flow-through on some of our new BaaS programs" and "margin expansion" from BaaS.<br><br>• The statement says only that the margins for unspecified new products (not necessarily BaaS) "may not be as high" as prior margins. The cited statement misleadingly omits that BaaS margins |

- 57 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br><br> • Defendants told the market (and the market believed) that BaaS margins were only "currently" low due to start-up and upfront expenses but would "get better over time," saying they "***certainly could be as rich as our legacy products***" when they were structurally low due to revenue share programs. <br><br> • The quoted language appears in a risk factor that reads in its entirety: "Moreover, new products and services may not be profitable, and even if they are profitable, operating margins for new products and services may not be as high as the margins we have experienced in the past."  Read in its entirety, the statement is clearly meant as a disclosure of potential risk, and not as a description of present fact. <br><br> **Evidence**: <br> • Ex. I (5/9/18 EC Tr.) at 7, 11, 23; <br> • Ex. K (5/10/18 SEC Form 10-Q) at 28; <br> • Ex. Q (11/7/18 EC Tr.) at 17; <br> • Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2; <br> • Ex. T (11/8/18 SEC Form 10- Q) at 46; <br> • Ex. 2 at -0799 (*see* PGD 18); <br> • Ex. 4 at -4196 (*see* PGD 18); <br> • Ex. 39 at -1009 (*see* PGD 3); <br> • Ex. 28 at -6284 (*see* PGD 3); <br> • Ex. 41 (*see* PGD 3); and |

- 58 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1). **Objections**: Incomplete; calls for a legal conclusion. *See* PEO 44. |
| 45.  On Green Dot's February 20, 2019 Earnings Call for Q4 2018, Mr. Streit disclosed the "mix shift towards direct deposit." **Evidence**: Pl. Adm. No. 118 (citing Ex. U (2/20/19 EC Tr.) at 5). | 45.  Undisputed that the quoted language appears in Ex. U, but otherwise disputed. Disputed because: • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. • Whether this is a "disclosure" of material facts is subject to expert testimony. • Green Dot's actual mix shift was worsening and not "clearly better for profitability and growth," as Green Dot was losing its lucrative prepaid cards and replacing them with free BaaS and direct deposit accounts (not retail direct deposit but from BaaS cards like Uber). • Defendants told investors on the call that their prepaid cards business "has been growing nicely – very nicely, in fact," when it was declining. • Defendants said they were "improving margins flow through across the business . . . from our base of direct deposit active accounts," when the "vast majority" of these direct deposit accounts were later disclosed to be free, worsening margins. **Evidence**: • Ex. U (2/20/19 EC Tr.) at 5, 10, 23; • Ex. 34 at -3868 (*see* PGD 12); |

- 59 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | • Ex. 5 at -6280 (*see* PGD 12); <br> • [redacted] <br><br> • Ex. 29 (*see* PGD 2); <br> • Ex. 16 (*see* PGD 2); <br> • Ex. 35 at -1511 (*see* PGD 14); and <br> • Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1). <br><br> **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 45. |
| 46.  On Green Dot's February 20, 2019 Earnings Call for Q4 2018, Mr. Streit disclosed that "the number of active accounts receiving direct deposit grew by 10% year-over-year," despite total actives growing only "1% year-over- year." <br><br> **Evidence**: Ex. U (2/20/19 EC Tr.) at 5. | 46.  Undisputed that the quoted language appears in Ex. U, but otherwise disputed. <br><br> Disputed because: <br><br> • Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br> • Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br> • Defendants said they were "improving margins . . . from our base of direct deposit active accounts," when the "vast majority" of these direct deposit accounts were later disclosed to be free, worsening margins. |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • The mix shift to BaaS and direct deposit was worse not "clearly better for profitability and growth" (as Green Dot said) because it was losing its lucrative prepaid cards and replacing them with free BaaS and direct deposit accounts (███████████████████████████ █████████)

• Defendants also told investors on the earnings call that their prepaid cards business "has been growing nicely – very nicely, in fact," when it was declining.

**Evidence**:
• Ex. U (2/20/19 EC Tr.) at 10, 23;
• Ex. 34 at -3868 (*see* PGD 12);
• Ex. 5 at -6280 (*see* PGD 12);
• Ex. 19 at -6625 (*see* PGD 45);
• Ex. 29 (*see* PGD 2);
• Ex. 16 (*see* PGD 2);
• Ex. 35 at -1511 (*see* PGD 14);
• Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1);
• Ex. 10 (*see* PGD 45); and
• Ex. 21; Ex. 23 (*see* PGD 45).

**Objections**: Incomplete; calls for a legal conclusion. *See* PEO 46. |
| 47.  On February 20, 2019, market analyst Cowen & Co. reported to investors that Green Dot's "[a]ctive accounts growth was ~1%, a deceleration from 3Q18's ~3%, reflecting higher conversion of active accounts to direct deposit active accounts." | 47.  Undisputed that the quoted language appears in Ex. V, but otherwise disputed.

Disputed because:

• Whether truth was on the market is an ultimate fact for the jury. |

- 61 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| **Evidence**: Pl. Adm. No. 121 (citing Ex. V (2/20/19 Cowen & Co. Analyst Report) at 1). | • Whether truth was on the market is subject to expert testimony. <br><br> • The report says nothing about prepaid declines because Defendants also told investors on the February 20, 2019 earnings call that their prepaid cards business "has been growing nicely – very nicely, in fact," when it was declining. <br><br> • Defendants said on the February 20, 2019 earnings call that they were "*improving margins . . . from our base of direct deposit active accounts*," when the "vast majority" of these direct deposit accounts were later disclosed to be free, thus worsening margins. <br><br> • The mix shift to BaaS and direct deposit was worse not "clearly better for profitability and growth" (as Green Dot said on the February 20, 2019 earnings call) because it was losing its lucrative prepaid cards and replacing them with free BaaS and direct deposit accounts ██████████████ <br><br> **Evidence**: <br> • Ex. U (2/20/19 EC Tr.) at 10, 23; <br> • Ex. 34 at -3868 (*see* PGD 12); <br> • Ex. 5 at -6280 (*see* PGD 12); <br> • Ex. 19 at -6625 (*see* PGD 45); <br> • Ex. 29 (*see* PGD 2); <br> • Ex. 16 (*see* PGD 2); <br> • Ex. 35 at -1511 (*see* PGD 14); <br> • Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); |

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
| --- | --- |
| | • Ex. 10 (*see* PGD 45); and<br>• Ex. 21; Ex. 23 (*see* PGD 45).<br><br>**Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 47. |
| 48. On Green Dot's May 8, 2019 Earnings Call for Q1 2019, Mr. Streit disclosed that the "new product lines, primarily consisting of BaaS programs, contributed over 420,000 new active accounts" year-over-year.<br><br>**Evidence**: Pl. Adm. No. 137 (citing Ex. X (5/8/19 EC Tr.) at 5). | 48. Undisputed that the quoted language appears in Ex. X, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>• Defendants said they were "improving margins . . . from our base of direct deposit active accounts," when the "vast majority" of these direct deposit accounts were later disclosed to be free and were worsening margins.<br><br>• The mix shift to BaaS and direct deposit was worse not "clearly better for profitability and growth" (as Green Dot said) because it was losing its lucrative prepaid cards and replacing them with free BaaS and direct deposit accounts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>• Defendants also told investors on the earnings call that their prepaid cards business "has been growing nicely – very nicely, in fact," when it was declining.<br><br>**Evidence**: |

- 63 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | • Ex. U (2/20/19 EC Tr.) at 10, 23; <br> • Ex. 34 at -3868 (*see* PGD 12); <br> • Ex. 5 at -6280 (*see* PGD 12); <br> • Ex. 19 at -6625 (*see* PGD 45); <br> • Ex. 29 (*see* PGD 2); <br> • Ex. 16 (*see* PGD 2); <br> • Ex. 35 at -1511 (*see* PGD 14); <br> • Ex. 46 (8/7/19 EC Tr.) at 14 (*see* PGD 1); <br> • Ex. 10 (*see* PGD 45); and <br> • Ex. 21; Ex. 23 (*see* PGD 45). <br><br> **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 48. |
| 49. In Green Dot's Form 8-K filed November 7, 2019, Green Dot included a section entitled "Key Metrics" that included a chart containing the company's "key business metrics for each of the last seven calendar quarters." One of the key metrics was the "number of active accounts at quarter end." The chart shows that the number of active accounts declined in each of the seven quarters except one: <br><br> <table><tr><td>Quarter Ended</td><td>Active Accounts</td><td>% Change Y/Y</td></tr><tr><td>Q1 2018</td><td>6.01 M</td><td>+19%</td></tr><tr><td>Q2 2018</td><td>5.86 M</td><td>+14%</td></tr><tr><td>Q3 2018</td><td>5.43 M</td><td>+4%</td></tr><tr><td>Q4 2018</td><td>5.34 M</td><td>+1%</td></tr><tr><td>Q1 2019</td><td>6.05 M</td><td>+1%</td></tr><tr><td>Q2 2019</td><td>5.66 M</td><td>-1%</td></tr><tr><td>Q3 2019</td><td>5.18 M</td><td>-5%</td></tr></table> | 49. Undisputed that the first two columns of information (Quarter Ended and Active Accounts) appear in Ex. AA, but otherwise disputed. <br><br> • The "% Change Y/Y" column is found nowhere in the evidence cited. <br><br> **Objections**: Incomplete; misstates the evidence, best evidence; improper lay witness or expert opinion; irrelevant (the statements fall on the last day of the Class Period and do not cure any misstatement alleged in ¶¶38-61 of the Amended Complaint, except to operate as the final corrective disclosure in the Class Period). *See* PEO 49. |

- 64 -

4937-5205-3581.v2

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| **Evidence**: Ex. AA (11/7/19 SEC Form 8-K) at 6. | |
| 50. In every quarterly and annual report filed with the SEC during the relevant period, Green Dot disclosed a chart reflecting its "Consolidated Statement of Operations." The first line of that chart, under the heading "Operating Revenues," was "Card Revenues and Other Fees." The associated revenue numbers for each quarter are as follows: | 50. Undisputed that most of the first two columns of information (Quarter Ended and Card Revenue and Other Fees) appear in various locations in Exs. W, Y-Z, and AA, but otherwise disputed.<br><br>Disputed because:<br><br>• Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>• Whether this is a "disclosure" of material facts is subject to expert testimony. |

| Quarter Ended | Card Revenue and Other Fees | % Change Y/Y |
|---|---|---|
| Q1 2018 | 130.060 | +29% |
| Q2 2018 | 120.783 | +13% |
| Q3 2018 | 113.474 | +13% |
| Q4 2018 | 118.564 | +12% |
| Q1 2019 | 129.577 | -0.4%% |
| Q2 2019 | 121.613 | +0.7% |
| Q3 2019 | 102.231 | -10% |

| | |
|---|---|
| **Evidence**: Ex. W (2/26/19 SEC Form 10-K) at 31; Ex. Y (5/9/19 SEC Form 10-Q) at 2; Ex. Z (8/9/19 SEC Form 10-Q) at 2; Ex. AA (11/7/19 SEC Form 8-K) at 12. | • Defendants made numerous misleading Class Period statements either denying or minimizing the information contained herein, including misleading investors by calling margin compression temporary. The statement also misleadingly omits that Defendants touted an improving product mix towards more valuable accounts during the Class Period, as Defendants' own exhibits show.<br><br>• The "% Change Y/Y" column is found nowhere in the evidence cited. Further, the Q4 2018 card revenue number is found nowhere in the evidence cited.<br><br>**Evidence**:<br>• Ex. H (2/27/18 SEC Form 10-K) at 33 (*see* PGD 20); and<br>• Ex. I (5/9/18 EC Tr.) at 5 (*see* PGD 20).<br><br>**Objections**: Incomplete; calls for a legal |

- 65 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | conclusion; misstates the evidence; best evidence; improper lay witness or expert opinion; irrelevant (nearly half of the information contained in Defendants' alleged fact was released on the last day of the Class Period and cannot cure any misstatement alleged in ¶¶38-61 of the Amended Complaint, except to operate as the final corrective disclosure in the Class Period). *See* PEO 50. |

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| 51. On May 8, 2018, defendants Streit and Shifke received a report showing that Green Dot's prepaid cards at Walmart had zero growth (0%) year-over-year, and that the "Everyday Visa" card was down 10% year-over-year. | 51. Ex. 40 at -9784-85; Ex. 42. |
| 52. On May 9, 2018, Defendants told investors that the "Walmart MoneyCards and Green Dot classic Visa[,] . . . continue[] to do extremely well," were experiencing "continued strong momentum," and that "the branded side of our shop, [*i.e.*, prepaid] continues to gain traction on nearly all fronts." | 52. Ex. I (5/9/18 EC Tr.) at 5, 8-10. |
| 53. Defendants told investors on August 7, 2019 that "the vast majority of our customers are free today because you have fee waivers for direct deposits." | 53. Ex. 46 (8/7/19 EC Tr.) at 14. |
| 54. On May 9, 2019, defendants Shifke and Streit received an | 54. Ex. 41 at -4474. |

- 66 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| email stating that the Company's ▮▮▮▮▮▮ | |
| 55. On May 8, 2019, Defendants stated that the decline in "legacy nondirect deposit customers" and "nonreloading one-and-done customers that are within that segment" was not "of itself a long-term strategic problem" and "didn't appear to impact results in a material way." | 55. Ex. X (5/8/19 EC Tr.) at 5. |
| 56. On May 9, 2019, the price of Green Dot stock declined over $16. | 56. ECF 174-3 at 88. |
| 57. On August 8, 2019, the price of Green Dot stock declined over $19. | 57. *Id.* at 89. |
| 58. On November 8, 2019, the price of Green Dot stock declined over $5. | 58. *Id.* at 91. |
| 59. As of February 21, 2018, Green Dot's core business was selling high-fee prepaid debit cards to lower-income Americans without a personal bank account. | 59. Ex. 44 at -5832; Ex. H (2017 SEC Form 10-K) at 1. |
| 60. As of May 10, 2018, Green Dot's core business came from "prepaid financial services sold at our four largest retail distributors." | 60. Ex. K (5/10/18 SEC Form 10-Q) at 41. |
| 61. On a February 21, 2018, earnings call, Streit told investors, "our bread and butter from the old days is still our bread and butter today." | 61. Ex. G (2/21/18 EC Tr.) at 16. |
| 62. On February 27, 2018, Green Dot filed their 2017 Form 10-K with the SEC, which said "most" | 62. Ex. H (2017 SEC Form 10-K) at 12. |

- 67 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| of the Company's operating revenues "derived from prepaid financial services sold at our four largest retail distributors," including 40% of operating income from Walmart. | |
| 63. On April 11, 2018, defendant Shifke said that ███████████████████████████ | 63. Ex. 5 at -3280-81. |
| 64. On April 9, 2018, Green Dot executives ████████████████ | 64. Ex. 6 at -3945. |
| 65. Green Dot's Audit Committee noted on May 3, 2018 that the ████████████ | 65. Ex. 1 at -0717. |
| 66. Defendant Streit forwarded an ███████████████ | 66. Ex. 32 at -3289. |
| 67. An August 8, 2018 SunTrust report noted Green Dot's "[s]trong growth across legacy." | 67. Ex. 33 at 1. |
| 68. On May 9, 2018, defendant Shifke received a document ██████████████████ | 68. Ex. 3; Ex. 36 at -4169. |

- 68 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| 69. On May 16, 2018, Defendants told the market that "every one of our products is hitting it and is either at or above plan." | 69. Ex. M (5/16/18 JP Morgan Conference Tr.) at 11. |
| 70. On May 9, 2018, Jefferies issued a report noting "momentum in [Green Dot's] core business." | 70. Ex. 47 (5/9/18 Jefferies Report) at 1. |
| 71. On June 18, 2018, BTIG issued a report noting "growth in [Green Dot's] core prepaid debit card business." | 71. Ex. 48 (6/18/18 BTIG Report) at 1. |
| 72. On the Company's August 8, 2018 earnings call, defendant Streit stated that Green Dot's "established product lines . . . are just really doing well . . . everything's growing in relative lockstep," and that "material growth [was] being driven for both our established product lines." | 72. Ex. O (8/8/18 EC Tr.) at 3, 8. |
| 73. On the Company's August 8, 2018 earnings call, defendant Shifke stated that there was "more revenue per active on the direct deposit customers than . . . on your one-and-dones," and that "the larger portfolio of actives also continues to demonstrate healthy growth metrics and a more profitable average account." | 73. *Id.* at 5, 9. |
| 74. On August 8, 2018, defendants Streit and Shifke received a ███████████████ | 74. Ex. 24 at -9141; Ex. 25 at -7220. |

- 69 -

| PLAINTIFFS' UNDISPUTED | EVIDENCE |
|---|---|
| ███████████████ | |
| 75. On Green Dot's November 7, 2018 earnings call, defendant Streit told investors that Green Dot's prepaid business was "doing very well and continu[ing] to grow." | 75. Ex. Q (11/7/18 EC Tr.) at 10. |
| 76. On November 8, 2018, Jefferies issued a report attributing Green Dot's "beat over Street [estimates to] solid core business fundamentals as well as balanced contributions from the banking-as-a-service (BaaS) . . . products." | 76. Ex. 53 (11/8/18 Jefferies Report) at 1. |
| 77. On January 3, 2019, BITG issued a report stating that "[w]e believe [Green Dot's] organic revenue growth will continue to be buoyed by its line of reloadable prepaid debit cards." | 77. Ex. 54 (1/3/19 BTIG Report) at 1. |
| 78. On October 13, 2018, defendant Shifke received the ████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ | 78. Ex. 26. |
| 79. On Green Dot's February 20, 2019 earnings call, defendant Streit stated that Green Dot's prepaid card business was still "growing nicely – very nicely, in fact" and that "the mix shift towards direct deposit . . . [was] clearly better for profitability and growth." | 79. Ex. U (2/20/19 EC Tr.) at 3-4, 19. |

- 70 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
| --- | --- |
| 80. On February 20, 2019, SunTrust issued a report stating that "GPR economics carry the day," and noting "core GPR organic rev growth." | 80. Ex. U at 1. |
| 81. On February 20, 2019, Barclays issued a report stating that Green Dot's "top-line beat [was] driven by core operating metrics." | 81. Ex. 55 (2/20/19 Barclays Report) at 1. |
| 82. On December 21, 2018, defendant Shifke received an | 82. Ex. 19 at -6625. |
| 83. On February 7, 2019, defendant Streit received a report showing | 83. Ex. 9 at -3120; Ex. 10. |
| 84. On February 19, 2019, defendants Streit and Shifke received a sales report showing | 84. Ex. 21 at -3304. |
| 85. On May 8, 2019, Defendants acknowledged the decline in Green Dot's prepaid business by disclosing a loss of 300,000 prepaid card accounts year-over-year. | 85. Ex. X (5/8/19 EC Tr.) at 15. |

- 71 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| 86. Defendant Shifke stated in a May 8, 2019 email that ███████████ | 86. Ex. 18. |
| 87. In an email on May 8, 2019, defendant Streit said ███████████ | 87. Ex. 11 at -5644. |
| 88. On August 2, 2019, defendant Shifke sent defendant Streit a ███████████ | 88. Ex. 7; Ex. 8 at -0578. |
| 89. On August 8, 2019, defendant Shifke received an email noting ███████████ | 89. Ex. 14 at -5736. |
| 90. At the May 16, 2018 JP Morgan Conference, defendant Shifke said that Green Dot's direct deposit accounts were "driving the engine to get the fees." | 90. Ex. M (5/16/18 JP Morgan Conference Tr.) at 10. |
| 91. At the May 16, 2018 JP Morgan Conference, defendant Streit said "digital customers tend to be | 91. *Id.* at 13-14. |

- 72 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| higher-revenue customers," and that "[o]ur digital platform has really been taking off, and the customers who get it online through the app stores are many times more profitable than retail customers." | |
| 92. On May 9, 2018, defendant Streit stated that Green Dot's "legacy products . . . have higher revenue, and that "direct deposit customer[s] typically ha[ve] a meaningfully higher lifetime value." | 92. Ex. I (5/9/18 EC Tr.) at 3, 21. |
| 93. During the May 9, 2018 earnings call, defendant Shifke stated, "[a]ll told, in the quarter, we attracted more highly engaged customers than ever before with better unit economics, as evidenced by the record interchange and fee revenue," and that there was "incremental" growth in both prepaid "shelf facings" and in "mix shift." | 93. *Id.* at 5, 8, 12. |
| 94. On August 7, 2019, defendant Streit stated that the decline in prepaid cards was "short to intermediate term in nature," and defendant Shifke said there would be a "return to growth in Q4 based on what we're seeing today." | 94. Ex. 46 (8/7/19 EC Tr.) at 7, 15. |
| 95. Defendants mixed the BaaS, direct deposit, and prepaid cards together in the blended "active accounts" metric. | 95. Ex. K (5/10/18 SEC Form 10-Q) at 29 |
| 96. On August 9, 2018, defendants Shifke and Streit received an | 96. Ex. 34 at -3868. |

- 73 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| email saying that ███████████ ████████████████ ████████████████ ████████████████ ████████████████ ██████████ | |
| 97. On August 1, 2018, defendant Shifke received an email stating that ██████████████ ████████████ | 97. Ex. 30 at -2731. |
| 98. On May 9, 2018, defendant Streit said that "margins on those programs [are] expected to expand over future periods as those programs scale"; that their BaaS margins were low due to "up front" costs but would "get better over time" with "margin expansion" and "certainly could be" "as rich as our legacy products." | 98. Ex. I (5/9/18 EC Tr.) at 3, 9, 15, 21; Ex. K (5/10/18 SEC Form 10-Q) at 28. |
| 99. The Company's May 10, 2018 1Q 2018 SEC Form 10-Q stated that "[o]ur new product lines currently have margins below our established product lines." | 99. Ex. K (5/10/18 SEC Form 10-Q) at 28. |
| 100.    During the Class Period, BaaS margins experienced ██████████████ | 100.    Ex. 2 at -0799; Ex. 28. |
| 101.    On May 9, 2019, defendant ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ██████████ | 101.    Ex. 4 at -4472. |

- 74 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| 102.    In March 2018, defendant Shifke is included on email [REDACTED] | 102.    Ex. 4 at -4196; Ex. 43 at -7116. |
| 103.    On March 30, 2018, defendant Shifke drafted an email and attachment called [REDACTED] | 103.    Ex. 20; Ex. 39 at -1009. |
| 104.    On February 21, 2019, Craig-Hallum reported that "[d]irect deposit drives higher usage = higher Fee revenue." | 104.    Ex. 57 (2/21/19 Craig-Hallum Report) at 1. |
| 105.    On February 21, 2019, Guggenheim reported that Green Dot's "direct deposit customers are creating more robust, durable revenue streams." | 105.    Ex. 58 (2/21/19 Guggenheim Report) at 1. |
| 106.    On July 25, 2018, William Blair reported that Green Dot had an "improving customer mix." | 106.    Ex. 49 (7/25/18 William Blair Report) at 1; Ex. W at 2. |
| 107.    On August 8, 2018, Deutsche Bank noted Green Dot's "mix shift towards higher priced product." | 107.    Ex. 50 (8/8/18 Deutsche Bank Report) at 2. |
| 108.    An August 1, 2018 email [REDACTED] | 108.    Ex. 31. |

- 75 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED | EVIDENCE |
|---|---|
| ▮▮▮▮▮▮ | |
| 109. 90% of direct deposit growth during the Class Period came from BaaS accounts, the "vast majority" of which were free, as Defendants disclosed on August 7, 2019. | 109. Ex. 29; Ex. 15; Ex. 16; Ex. 46 (8/7/19 EC Tr.) at 14. |
| 110. On May 9, 2019, BTIG issued a report stating "[w]e are downgrading Green Dot Corporation (GDOT) to Neutral (from Buy) and removing our price target after the company yesterday following the market close released a 1Q19 report in which it slashed its FY19 earnings and adjusted EBITDA guidance. Management attributed the reductions in large part to $60mm in new marketing investments while offering 2Q19 revenue guidance well below the consensus estimate. GDOT shares plunged during extended trading, but given the abrupt and disconcerting shift in management's outlook, which created significant uncertainty, we would not be inclined to chase the stock even at the newly lower levels." | 110. Ex. 61 (5/9/19 BTIG Report) at 1. |
| 111. On May 9, 2019, Northland Capital issued a report stating "GDOT announced a surprising shift in the company's strategy for the BaaS market coinciding with the 1Q19 earnings announcement," and that "we | 111. Ex. 63 (5/9/19 Northland Capital Report) at 1. |

- 76 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| believe this change in course is inherently riskier and creating a lot of uncertainty." | |
| 112.  On June 4, 2019, Northland Capital Markets issued a report stating that analysts "had long wondered about the economics of the new BaaS accounts vs. the Legacy" and "had asked this question a couple of times but never got a straight answer." | 112.  Ex. 65 (6/4/19 Northland Capital Report) at 1. |
| 113.  On June 21-22, 2018, Green Dot senior executives discussed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 113.  Ex. 37 at -0915. |
| 114.  On March 7, 2019, Deutsche Bank issued a report noting "limited visibility in [Green Dot's] model." | 114.  Ex. 59 (3/7/19 Deutsche Bank Report) at 1. |
| 115.  Defendant Shifke was told on August 3, 2018 that ▓▓▓▓▓▓▓▓▓▓▓ | 115.  Ex. 30 at -2731. |
| 116.  In March 2019, an analyst asked Green Dot for a breakdown of "active accounts" – by "true legacy" (i.e., prepaid) versus BaaS, but defendant Shifke stated in a March 5, 2019 email that "[w]e don't disclose portfolio level info." | 116.  Ex. 38 at -1789. |

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| 117.    On September 10, 2018, SunTrust issued a report noting that "[m]anagement has not disclosed how much of its revenue is derived from retail." | 117.    Ex. 51 (9/10/18 SunTrust Report) at 2-3. |
| 118.    On January 30, 2018, defendant Streit received an ▆▆▆▆▆ | 118.    Ex. 28 at -6284. |
| 119.    An email on August 28, 2018 to defendant Shifke stated that ▆▆▆▆▆ | 119.    Ex. 35 at -1508. |
| 120.    An email from Paul Farina to defendant Shifke on June 27, ▆▆▆▆▆ | 120.    *Id.* at -1511. |
| 121.    On May 9, 2019, J.P. Morgan issued a report noting that "[m]gmt was previously dismissive of slowing active card growth." | 121.    Ex. 62 (5/9/19 J.P. Morgan Report) at 1. |
| 122.    On May 9, 2019, SunTrust issued a report noting Green Dot's "legacy business erosion," and that despite Green Dot's "[c]ore business weakening, . . . this shouldn't matter much." | 122.    Ex. 64 (5/9/19 SunTrust Report) at 1. |
| 123.    On August 7, 2019, Defendants told the market that prepaid cards declined by 500,000 cards. | 123.    Ex. 46 (8/7/19 EC Tr.) at 3. |
| 124.    On June 19, 2019, defendant Streit emailed defendant Shifke | 124.    Ex. 45 at -8654. |

- 78 -

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| and other Green Dot executives, ████████████ | |
| 125.   On February 21, 2018, both Streit and Shifke received an ████████ | 125.   Ex. 27 at -9022. |
| 126.   On an earnings call on May 9, 2018, Streit said: "On the branded side of our shop, Green Dot continues to gain traction on nearly all fronts." | 126.   Ex. I at 6. |
| 127.   On an earnings call on May 9, 2018, Streit said: "Additionally, Green Dot has earned more than 5,000 new incremental shelf facings for its products and services at Safeway Albertson stores and other locations where Green Dot now occupies space formerly occupied by the now defunct American Express prepaid product line." | 127.   Ex. I at 6. |
| 128.   On an earnings call on May 9, 2018, Streit said: "Walmart MoneyCards and Green Dot classic Visa cards and MasterCards and GoBank . . . continue[] to do extremely well" and "I think we still have a long way to go before we come anywhere near what you'd call maxed out." | 128.   Ex. I at 12. |
| 129.   On an earnings call on May 9, 2018, Streit said: "We don't intend to imply that we see a slowdown forthcoming. In fact, | 129.   Ex. I at 10. |

- 79 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| as both Steve and I mentioned in our remarks, we feel upbeat about the likelihood of continued strong momentum." | |
| 130.    On an earnings call on May 9, 2018, Streit said: "[A]ttracting and retaining the right kinds of customers is actually more important than the number of active customers in and of itself. Specifically, we have previously shared that a direct deposit customer typically has a meaningfully higher lifetime value than accounts that do not receive direct deposit." | 130.    Ex. I at 5. |
| 131.    On an earnings call on May 9, 2018, Streit said: "Step 1 was to continue to grow the number of active accounts year-over-year and to improve the unit economics of those accounts. . . . [W]e are well ahead on this goal, having added nearly 1 million new active accounts while increasing the number of accounts receiving direct deposit by 930,000." | 131.    Ex. I at 6-7. |
| 132.    On an earnings call on May 9, 2018, Shifke said: "[a]ll told, in the quarter, we attracted more highly engaged customers than ever before with better unit economics, as evidenced by the record interchange and fee revenue." | 132.    Ex. I at 9. |
| 133.    At the May 16, 2018 JPMorgan Conference, Streit said: "[E]very one of our | 133.    Ex. M at 13. |

- 80 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
| --- | --- |
| products is hitting it and is either at or above plan, which is not common." | |
| 134.    At the May 16, 2018 JPMorgan Conference, Streit said: "[O]ur digital platform has really been taking off, and the customers who get it online through the app stores are many times more profitable than retail customers as they tend to be – use the account in a more sustainable, higher-quality way. They're more likely to be on direct deposit." | 134.    Ex. M at 13. |
| 135.    At the May 16, 2018 JPMorgan Conference, Shifke said: "[W]e've concentrated on focusing on our direct deposit customer base. We've grown that very nicely. Now about 80% of our GDV comes from direct deposit. Nearly 50% of our active customers are on direct deposit. And with that, GDV is growing phenomenally, and that's driving the engine to get the fees, ATMs, purchase volume, interest income." | 135.    Ex. M at 10. |
| 136.    On an earnings call on August 8, 2018, Streit said: "The BaaS side of the business grew a lot of accounts, obviously, with programs like the TurboTax program and the Uber driver program, those are active cards. But our established product lines, Bob, are just really doing well. So we're seeing growth | 136.    Ex. O at 11. |

- 81 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| from both. . . . So everything's growing in relative lockstep." | |
| 137.  On an earnings call on August 8, 2018, Streit said: "I mean, we experienced growth with our – I hate to use the word legacy because the products aren't legacy, they've been redone many, many times. But that original part of the business, if you will, selling cards and retail and whatnot. That's really going well for us." | 137.  Ex. O at 13. |
| 138.  On an earnings call on August 8, 2018, Streit said: "Consolidated GAAP total operating revenue came in at $258.3 million, representing a year-over-year growth rate of just over 16%. We would note that this quarter's performance was entirely organic, with material growth being driven for both our established product lines and our new BaaS platform programs." | 138.  Ex. O at 4. |
| 139.  On an earnings call on August 8, 2018, Streit said: "The continuing long-term portfolio mix shift towards higher lifetime value accounts helped push the gross dollar volume, or GDV, flowing through our various products to more than $9.4 billion, representing organic year-over-year GDV growth of 25%." | 139.  Ex. O at 5. |
| 140.  On an earnings call on August 8, 2018, Streit said: | 140.  Ex. O at 5. |

- 82 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| "Every metric in the Account Services segment reflects the powerful dynamic of an increasing number of active account holders who are generating far more usage and engagement with our products. The result continues to be an ongoing tailwind to the profitability and value of our account active portfolio." | |
| 141.  On an earnings call on August 8, 2018, Shifke said: "[T]he larger portfolio of actives also continues to demonstrate healthy growth metrics and a more profitable average account." | 141.  Ex. O at 7. |
| 142.  On an earnings call on August 8, 2018, Shifke said: "As you see the portfolio mix move more towards direct deposit customers as a percentage of total and away from one-and-dones, by definition, you'll have more revenue per active on the direct deposit customers than you will on your one-and-dones." | 142.  Ex. O at 12. |
| 143.  On an earnings call on November 7, 2018, Streit said: "And then unrelated to BaaS, of course, we have our own legacy products and established business lines, which are no slouches. I mean, those are doing very well and continue to grow." | 143.  Ex. Q at 12. |
| 144.  On an earnings call on November 7, 2018, Streit said: | 144.  Ex. Q at 11. |

- 83 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| "The percentage of people who acquire our accounts now are far more likely to reload and when they reload, they're far more likely to do it through electronic means, meaning direct deposit. And that does mean more revenue per card. That is real, and is a trend we see continuing." | |
| 145.    On an earnings call on February 20, 2019, Streit said: "[Cards business] has been growing nicely – very nicely, in fact." | 145.    Ex. U at 23. |
| 146.    On an earnings call on February 20, 2019, Streit said: "While the mix shift towards direct deposit and more engaged customers is clearly better for profitability and growth, the lower churn also means fewer accounts issued to short-term customers, which weighs down on unit sales and therefore the quarterly active account metric." | 146.    Ex. U at 5. |
| 147.    On an earnings call on February 20, 2019, Streit said: "[S]trong year-over-year margin expansion of over 300 basis points was the net result of improving margins flow through across the business. And in particular, from our base of direct deposit active accounts where improving purchase volume and higher retention have a positive impact on profitability." | 147.    Ex. U at 10. |

- 84 -

4937-5205-3581.v2

| PLAINTIFFS' UNDISPUTED FACTS | EVIDENCE |
|---|---|
| 148.   On an earnings call on May 8, 2019, Streit said: "Higher purchase volume and attracting the more committed customer base should in turn lead to higher revenue and a better profit margin on those accounts. Step two is to continue that trend. As our Q1 active [account] KPIs indicate, we are very much on track with this step two. . . . So, so far so good on step two." | 148.   Ex. X at 8-9. |

DATED:  July 3, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN
JESSICA T. SHINNEFIELD
CHRISTOPHER R. KINNON
MATTHEW J. BALOTTA
JOHN M. KELLEY
RACHEL C. BRABY

s/ Christopher R. Kinnon
CHRISTOPHER R. KINNON

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

PITTA LLP
VINCENT F. PITTA
120 Broadway, 28th Floor
New York, NY  10271
Telephone: 212/652-3890
212/652-3891 (fax)

Additional Counsel for Plaintiffs

- 85 -

4937-5205-3581.v2