JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:   (415) 773-5700
Facsimile:    (415) 773-5759

RICHARD E. GOTTLIEB (SBN 289370)
rgottlieb@glaserweil.com
EMIL PETROSSIAN (SBN 264222)
epetrossian@glaserweil.com
PETER M. BRANSTEN (SBN 113352)
pbransten@glaserweil.com
AYAD MATHEWS (SBN 339785)
amathews@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IN RE GREEN DOT CORPORATION SECURITIES LITIGATION | Case No. 2:19-cv-10701-FLA-E <br><br> <u>CLASS ACTION</u> <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Judge: Hon. Fernando L. Aenlle-Rocha <br> Courtroom: 6B <br> [Taken under submission on 7/18/2025] |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.   ARGUMENT ........................................................................................... 2

    A.   Plaintiffs' Motion Seeks Proper Relief Under Rule 56 And Plaintiffs Misstate The Legal Standards For Granting That Relief. ...................................................................................... 2

    B.   There Is No Genuine Dispute That Defendants Disclosed The Allegedly Omitted Information .......................................................... 4

        1.   Plaintiffs Do Not Refute That Defendants Disclosed Green Dot's Shifting "Product Mix Trend." ............................ 4

        2.   Plaintiffs Do Not Refute That Defendants Disclosed Growth In The "Legacy" Pre-Paid Business Was Slowing. ...... 5

        3.   Plaintiffs Do Not Refute That Defendants Disclosed New Digital Banking Products Had Materially Lower Margins. ....... 7

        4.   Plaintiffs Do Not Refute That Defendants Disclosed Slowing Growth In "Card Revenue And Other Fees." .............. 8

    C.   Plaintiffs' Affirmative Misstatement Allegations Are Not In The Complaint And Thus Irrelevant To Adjudicating This Motion ........... 9

III.   CONCLUSION ....................................................................................... 12

i

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Amgen Inc. Sec. Litig.*,
   544 F. Supp. 2d 1009 (C.D. Cal. 2008)................................................................3

*Bibeault v. Advanced Health Corp.*,
   1999 WL 301691 (S.D.N.Y. May 12, 1999).........................................................4

*City of Los Angeles v. Bank of Am. Corp.*,
   2015 WL 4880511 (C.D. Cal. May 11, 2015),
   *aff'd*, 691 F. App'x 464 (9th Cir. 2017) ...............................................................9

*Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*,
   660 F.3d 1170 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013) ................................3

*Demarest v. Quick Loan Funding, Inc.*,
   2010 WL 11531081 (C.D. Cal. June 7, 2010),
   *aff'd,* 481 F. App'x 352 (9th Cir. 2012) ............................................................10

*Fecht v. Price*,
   70 F.3d 1078 (9th Cir. 1995)...............................................................................3

*Garcia v. J2 Global, Inc. et al.*,
   2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) (Aenlle-Rocha, J.).........................3

*James v. Dependency Legal Grp.*,
   253 F. Supp. 3d 1077 (S.D. Cal. 2015) ................................................................9

*Karas v. Marciano*,
   2018 WL 6113095 (C.D. Cal. Oct. 3, 2018) ......................................................10

*Kilroy v. Cnty. of Orange*,
   2022 WL 3574436 (C.D. Cal. July 15, 2022) .....................................................10

*Lahoti v. VeriCheck, Inc.*,
   586 F.3d 1190 (9th Cir. 2009)..............................................................................2

*Magic Link Garment Ltd. v. ThirdLove, Inc.*,
   445 F. Supp. 3d 346 (N.D. Cal. 2020)..................................................................2

*In re Metro. Sec. Litig.*,
   532 F. Supp. 2d 1260 (W.D. Wash. 2007)............................................................4

ii

# TABLE OF AUTHORITIES (CONTINUED)

**Cases** **Page(s)**

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
    2018 WL 7019481 (N.D. Cal. Oct. 16, 2018) ....................................................... 4

*Powell v. Cnty. of Orange*,
    2022 WL 3574282 (C.D. Cal. July 7, 2022) ....................................................... 10

*Robertson v. F. Martin*,
    2021 WL 545895 (C.D. Cal. Jan. 4, 2021) ........................................................... 2

*SEC v. Mozilo*,
    2010 WL 3656068 (C.D. Cal. Sept. 16, 2010) ....................................................... 4

*Skinner v. Northrop Grumman Pension Plan*,
    2008 WL 11336836 (C.D. Cal. Mar. 10, 2008) .................................................... 10

**Rules**

Fed. R. Civ. P.
    Rule 36 ........................................................................................................ *passim*
    Rule 56 ................................................................................................................. 2
    Rule 56(a) ........................................................................................................... 2
    Rule 56(g) ........................................................................................................... 2

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.    **<u>INTRODUCTION</u>**[1]

Plaintiffs' misdirection ploy does not refute Defendants' entitlement to partial summary judgment. Defendants' Motion for Partial Summary Judgment ("Motion") is straightforward: It merely asks the Court to determine that four categories of alleged omissions from the Amended Complaint ("AC" or "Complaint") were actually disclosed. Opening Brief ("OB") at 3:4-8; 5:1-15. The motion is also compelling: Green Dot's SEC filings and earnings call transcripts demonstrably disclose those four categories of information Plaintiffs allege was omitted (OB at 6-14), and Plaintiffs' Rule 36 admissions concede as much. Opp. at 22 ("admit[ting] that the words appeared on the page"). The Court may and should grant the Motion in full.

Faced with admissions to disclosures that disprove Plaintiffs' omission allegations on their face, Plaintiffs concoct a ***new*** theory of liability in the Opposition "based on [alleged] ***affirmative*** misstatements." Opp. at 1. But these arguments are procedurally improper because an opposition brief cannot amend the complaint. *Infra*, II.C. Even Plaintiffs (in opposing Defendants' motion to dismiss) admitted the Complaint is premised on alleged ***omissions*** that rendered ***otherwise truthful statements*** misleading. *See* ECF No. 90 at 14:16-17. Moreover, their ***only*** use of the term "affirmative" in that earlier filing was to assert they were ***not*** pursuing an affirmative misstatements case. *See id.* at 15:13-16. *See also, generally, id*. at 14:9-16:10.

While Plaintiffs seek to muddy the waters, the sole issue here is whether four allegedly omitted categories of information were disclosed and ***not*** whether to grant Defendants' judgment on other claims or defenses. On ***this*** Motion, the Court need

---

[1] Abbreviations are from Defendants' Memorandum of Points and Authorities in Support of the Motion (ECF No. 180-1) ("Opening Brief" or "OB"). Plaintiffs' Opposition to Defendants' Motion (ECF No. 204) is referred to as "Opposition" or "Opp." The "Rule 36 admissions" are Plaintiffs' responses to Green Dot's First Requests for Admissions (ECF No. 183-6). Unless otherwise stated, all emphasis in quotations is added.

not determine whether those disclosures were accurate, the speakers' mental states, or whether investors relied on anything. *See* OB at 3:4–8. Plaintiffs' belated, procedurally improper arguments do not bear on the issue and should be disregarded.

## II.   <u>ARGUMENT</u>

### A.   <u>Plaintiffs' Motion Seeks Proper Relief Under Rule 56 And Plaintiffs Misstate The Legal Standards For Granting That Relief.</u>

Defendants' Motion seeks partial summary judgment of the false omission allegations under Rules 56(a) and 56(g). OB at 15. Rule 56(a) requires Defendants to "identify[] each claim or defense—***or the part of each claim or defense***—on which summary judgment is sought," which Defendants have done here. Rule 56(g) grants the Court the power to "enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." *Magic Link Garment Ltd. v. ThirdLove, Inc.*, 445 F. Supp. 3d 346, 356 (N.D. Cal. 2020).

In response, Plaintiffs argue "Defendants' Motion does not seek judgment on any 'part of [a] claim or defense'" but rather "'inappropriate' adjudication of allegedly undisputed facts under Rule 56(g)." Opp. at 15 n.1. But Defendants plainly seek only ***partial*** summary judgment. *See* OB at 15. In contrast to Plaintiffs' cited authority, the Motion does ***not*** merely seek to "establish the truth of particular facts," *Robertson v. F. Martin*, 2021 WL 545895, at *1 (C.D. Cal. Jan. 4, 2021), but rather, as Plaintiffs previously acknowledged, a ruling that will "gut the majority of [their] allegations," ECF No. 162 at 17.

Thus, Plaintiffs' arguments fail. Rules 56(a) and (g) collectively authorize the Court to grant partial summary judgment regarding the omission allegations even if Plaintiffs' Section 10(b) claim partially survives. *See, e.g.*, *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 n. 9 (9th Cir. 2009) (to that effect). The Court may adjudicate the Motion solely based on the SEC filings, earnings call transcripts and Rule 36 admissions that are properly before it, *see* OB at 16. No other evidence bears or ***could*** bear on whether Defendants disclosed the information Plaintiffs claim was omitted.

2

Plaintiffs next argue the ***adequacy*** of disclosures is a jury question. *See* Opp. at 4 (citing *Fecht v. Price*, 70 F.3d 1078, 1081 (9th Cir. 1995). But *Fecht* was decided on the pleadings and even that court recognized that, where "the adequacy of the disclosure . . . is so obvious that reasonable minds [could] not differ," falsity allegations are "appropriately resolved as a matter of law." *Id.* at 1081.[2] This Court has similarly evaluated allegedly misleading statements based on judicially noticeable documents as a matter of law. *See, e.g., Garcia v. J2 Global, Inc. et al.*, 2021 WL 1558331, at *16–17 (C.D. Cal. Mar. 5, 2021) (Aenlle-Rocha, J.) (dismissing omissions allegations based on judicially-noticed SEC filings, finding facts were "not 'undisclosed'").

Plaintiffs' legal standards discussion further ignores their admission of the existence and contents of Defendants' disclosures (Opp. at 22: Plaintiffs "***admit*** that the words appeared on the page"), and that these disclosures are likewise subject to judicial notice. *See* OB at 1; *see also* ECF Nos. 180-2 (SUF), 180-3 (RJN). While Plaintiffs argue admissions cannot be used to "establish facts in obvious dispute" or "the truth of a legal conclusion," Opp. at 21 (citation omitted), Defendants' RFAs asked Plaintiffs to admit ***the fact of the disclosures***, and not whether they were truthful or whether investors relied upon them. As such, given the admissions, those facts are not in "obvious" dispute.

---

[2] Plaintiffs' other cited authorities are inapposite. *See* Opp. at 4 (citing *SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007) (addressing the standards for proving the ***materiality*** of an alleged misstatement); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008) (addressing "truth on the market defense" where defendants argue that allegedly omitted information was made "available to the market by ***other sources***"); *Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013) (same)). Tellingly, the Opposition ***nowhere*** asserts Defendants actually seek relief on that basis, and therefore their cited cases are irrelevant here. Instead, Plaintiffs' Motion merely asks the Court to find that Defendants actually disclosed the alleged omissions. *See, e.g.*, OB at 1–3.

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs' effort to avoid the dispositive effect of the SEC filings and earnings call transcripts are equally unpersuasive. Plaintiffs cite *SEC v. Mozilo*, 2010 WL 3656068, at *9, *19 (C.D. Cal. Sept. 16, 2010), to argue investors are not required to "play detective" and "por[e] through" Green Dot's "various" disclosures. Opp. at 17. But *Mozilo* concerned an SEC enforcement action and, therefore, has no applicability here. *See Mozilo*, 2010 WL 3656068, at *9 ("Because the SEC in an enforcement action is not required to prove reliance, the 'fraud on the market' presumption [applicable in civil litigation] is not relevant," and thus "investors are not generally required to look beyond a given document to discover what is true and what is not.") (citation and internal quotes omitted).

In contrast, private litigants are "***expect[ed]***" to "acquire materials that are a matter of public record," *Bibeault v. Advanced Health Corp.*, 1999 WL 301691, at *5 (S.D.N.Y. May 12, 1999), and are "***presumed*** to have information available in the public domain," *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1280 (W.D. Wash. 2007) (citation omitted). Regardless, Plaintiffs are not being asked to "pore through" anything—the disclosures that disprove Plaintiffs' core omission allegations are in the same documents Plaintiffs cite in their Complaint. *See In re Ocera Therapeutics, Inc. Sec. Litig.*, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018) (Plaintiffs "must account for the entirety of [the statements] on which they rely," not just "simply invoke selective quoting").

**B.      There Is No Genuine Dispute That Defendants Disclosed The Allegedly Omitted Information.**

        **1.      Plaintiffs Do Not Refute That Defendants Disclosed Green Dot's Shifting "Product Mix Trend."**

Plaintiffs' Opposition does not refute that Green Dot's SEC filings and earnings call transcripts prove, and Plaintiffs' Rule 36 admissions render uncontroverted, that Green Dot began promoting its efforts to change its business model in 2015, and gave repeated updates about the Company's changing business in the years and months preceding the Class Period and throughout the Class Period.

4

*See* OB at 5–10.[3] Defendants also repeatedly disclosed that newer digital banking products comprised an increasingly larger percentage of total active accounts, and thus made clear that Green Dot's product mix was in fact shifting toward newer digital accounts. *See id.* For example, in the quarter before the Class Period began, Green Dot disclosed "active accounts receiving direct deposit, gr[ew] by 21% in the quarter" as part of the Company's "***continuing long-term portfolio mix shift***." OB at 6 (citing SUF 14).

Although the Complaint alleges Defendants' statements were misleading ***by omission*** because they "masked an underlying (and undisclosed) product-mix trend," AC ¶ 51, Plaintiffs now concede Defendants disclosed Green Dot's changing business model (Opp. at 20). Plaintiffs accuse Defendants of mischaracterizing the Complaint by dressing up their allegations. *See id.* ("Defendants' [alleged] misstatements . . . were misleading because [Defendants] knew that Green Dot's true product mix was 'shift[ing] to a new, ***less lucrative*** product mix.'") ( citations omitted). But as the Opening Brief demonstrates, *see* OB at 12–13, and as further discussed below, Defendants disclosed that exact information as well, and repeatedly made plain that Green Dot's new digital banking services had materially lower profit margins than traditionally high-margin pre-paid cards marketed to the underbanked. *See*, *infra*, at Section II.B.3.

### 2. Plaintiffs Do Not Refute That Defendants Disclosed Growth In The "Legacy" Pre-Paid Business Was Slowing.

Plaintiffs' Opposition likewise fails to overcome, and Plaintiffs' Rule 36 admissions establish, that Green Dot's total number of "active accounts" was a "key

---

[3] Plaintiffs argue that "statements they made three years before the Class Period . . . do not excuse subsequent misleading . . . omissions," Opp. at 20 (citation omitted), but ignore that Green Dot disclosed its changing product mix in the months preceding the Class Period and throughout the Class Period. *See* OB at 5-9.

5

metric" for the Company, AC ¶ 89,[4] and the data was prominently disclosed in each of Green Dot's SEC filings. *See* OB at 10. As those disclosures show (and Plaintiffs have since admitted), total active accounts continued to grow year-over-year for the first four quarters of the Class Period, but the growth *rate* slowed in each quarter of the Class Period, from 19% Y/Y growth in Q1 2018, to 1% Y/Y growth in Q1 2019, before slowing to -1% in Q2 2019. *Id.*

Plaintiffs argue the use of a "single, combined metric called 'active users'" misled investors by concealing the product mix. Opp. at 2. But this argument fails for two reasons. First, Plaintiffs concede Green Dot's "primary business is selling high-fee, prepaid debit cards," AC ¶ 2, and thus a reasonable investor would understand slowing growth in total active accounts meant the growth rate of Green Dot's legacy, high-margin prepaid card business was also declining. *See* OB at 10:11–11:4. But if there were any doubt, Defendants repeatedly disclosed before and during the Class Period that Green Dot's new digital banking services comprised an increasingly larger percentage of the Company's total active accounts (and Plaintiffs' Rule 36 admissions concede the existence of those disclosures). *See*, *supra*, at Section II.B.1.[5] With total active account growth slowing, and newer digital services comprising an increasingly larger percentage of the product mix, reasonable investors were aware Green Dot's "legacy" business was experiencing declining growth.

Second, Defendants *did* disclose their product mix, and analysts *were* able to calculate the mix from those disclosures. For example, Plaintiffs rely on a June 4,

---

[4] In Plaintiffs' words, Green Dot's total "active users metric, created at the start of the Class Period, aggregately reported prepaid card, BaaS, and direct deposit accounts." Opp. at 17.

[5] Plaintiffs argue Green Dot did not disclose "portfolio level information," Opp. at 17, but the Company merely omitted the *exact* number of pre-paid accounts, BaaS accounts and direct deposit accounts that made up its total active account mix. Instead, Green Dot gave quarterly updates throughout the Class Period that showed (i) total active account growth was slowing, and (ii) digital banking accounts were an increasing part of the mix.

2019 Northland Capital Markets analyst report to argue Green Dot never provided a "straight answer" on the product mix (Opp. at 18, PUF-112, Ex. 65 (ECF No. 207-21)). But that same report then culls Defendants' same disclosures cited above, to calculate the split between legacy and digital accounts dating back to Q2 2017, including a detailed chart showing legacy accounts shrinking and digital accounts growing over time. *See* ECF No. 207-21 at 3. The report further states that "***legacy active accounts which generate multiples more revenue, margin and profit per active card*** (due to monthly fee and reload fees) ***are drastically shrinking***." *Id*. In short, Plaintiffs own evidence proves they missed the disclosures they now allege were omitted.

### 3. Plaintiffs Do Not Refute That Defendants Disclosed New Digital Banking Products Had Materially Lower Margins.

Plaintiffs likewise fail to refute that Defendants began disclosing the "lower margin[s] of the [Company's] new revenue," and the "materially lower" margins of its BaaS accounts, more than a year before the Class Period, and continued reiterating same fact ***throughout*** the Class Period, as the Rule 36 admissions establish. OB at 12–13.[6]

Plaintiffs further concede Defendants disclosed that digital banking "margins were [then] 'currently' low," but argue this was a "misleading half-truth" because Defendants knew margins would not "get better over time" or ever "be . . . as rich as [the] legacy products." Opp. at 19 (citations omitted). But, again, Plaintiffs' motion merely seeks a finding that Defendants disclosed its newer products had lower margins. This ***new*** allegation is nowhere in the Complaint, and is not at issue for this

---

[6] Plaintiffs wrongly assert the "only evidence Defendants offer" to show the lower "per-unit economics" of Green Dot's digital banking services is a "chart . . . that does not mention lower per-unit economics." Opp. at 18. The chart Plaintiffs reference is part of the argument addressing the ***fourth*** category of false omission allegations, and was included to show how Defendants gave quarterly disclosures of total "card revenues and other fees," OB at 14, as further discussed below.

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

narrower Motion.[7] Further, Plaintiffs allege Defendants' Class Period statements were misleading because they failed to disclose "direct-deposit accounts were not generating the high-margin card fees of legacy prepaid accounts," OB at 5:6–7,[8] but the Motion merely asks the Court to determine whether *that information* was in fact disclosed. Plaintiffs' new arguments as to why the challenged statements might be misleading for reasons not alleged in the Complaint[9] are irrelevant here.

### 4.   **Plaintiffs Do Not Refute That Defendants Disclosed Slowing Growth In "Card Revenue And Other Fees."**

Finally, Plaintiffs' do not refute Defendants' showing that Defendants' disclosed "a product-mix trend *that was reversing card-revenue-and-fee-growth*." OB at 5:8–10. As shown in the Opening Brief, "card revenues and other fees" were a "key component" of Green Dot's financial results, and were disclosed prominently in each of its quarterly and annual SEC filings. *Id.* at 14. Those disclosures plainly show slowing growth in card revenue and other fees throughout the Class Period, from 29% Y/Y growth in Q1 2018, to 12% Y/Y growth in Q4 2018, before slowing to -.04% in Q1 2019. *Id.*

Plaintiffs argue the chart shows "Green Dot did not report any reduced fees year-over-year until May 9, 2019," or well into the Class Period. Opp. at 19. But that

---

[7] Defendants again refer the Court to the annotated version of the Complaint provided at ECF No. 183-7, highlighting the false omission allegations in red and other relevant omission allegations in yellow, and demonstrating Plaintiffs' new allegations are nowhere to be found.

[8] *See also* AC ¶ 43 (regarding "per-unit economics of Green Dot's card portfolio"), ¶ 47 (regarding "[d]igital and direct-deposit account were not generating high-margin fees" of legacy cards), ¶ 49 (regarding "direct deposit accounts did not generate high-margin fees" of legacy cards), ¶ 53 (same), ¶ 54 (same), ¶ 57 (same), ¶ 60 (regarding "legacy prepaid customers generated the Company's highest fees" and "the vast majority of [digital banking] customers paid little to no fees").

[9] Plaintiffs newly argue that, even though Defendants disclosed the materially lower margins of Green Dot's digital banking services, those statements were misleading for failing to disclose the margins would "perpetually be 'lower than other account programs.'" Opp. at 20. That allegation is not in the AC, and is irrelevant to the question posed by this Motion.

8

argument fails because Plaintiffs nowhere allege Defendants failed to disclose "reduced fees"—rather, Plaintiffs allege Defendants failed to disclose slowing "card revenue and other fees *growth*," OB at 5:8–10. The chart shows (and Plaintiffs' Rule 36 admissions concede) this was apparent in the first quarter of the Class Period, with growth slowing from 29% Y/Y growth in Q1 2018 to 15% Y/Y growth in Q2 2018. *Id.* at 14. In short, there is no dispute Defendants disclosed what Plaintiffs claim was omitted.

### C. **Plaintiffs' Affirmative Misstatement Allegations Are Not In The Complaint And Thus Irrelevant To Adjudicating This Motion.**

As shown above, Plaintiffs long ago conceded their Complaint alleges *no* affirmative misstatements but rather asserts that otherwise truthful statements were misleading by omission. *See, supra*, at 1, citing *See* ECF No. 90 at 14:16-17, 15:13–16. Now, unable to dispute evidence that refutes four core false omission allegations, Plaintiffs demand the Motion be denied because supposed new evidence "counterbalance[s]" Defendants' purported "*affirmative misstatements*." Opp. at 15:23. But this new theory of liability is not alleged anywhere in the Complaint. Rather, Plaintiffs instead assert Defendants' Class Period statements were misleading *by omission*. ECF No. 90 at 14:9-15:10.

As discussed below, the Court should reject Plaintiffs' new falsity arguments on three separate grounds:

*First*, the Court should disregard Plaintiffs' new falsity arguments because "Ninth Circuit precedent is clear: neither new factual allegations nor new claims presented in opposition to summary judgment are properly considered." *James v. Dependency Legal Grp.*, 253 F. Supp. 3d 1077, 1091 (S.D. Cal. 2015). Plaintiffs cannot "assert theories for the first time in opposition to a summary judgment motion that are not alleged in the complaint," *City of Los Angeles v. Bank of Am. Corp.*, 2015 WL 4880511, at *5 (C.D. Cal. May 11, 2015), *aff'd*, 691 F. App'x 464 (9th Cir. 2017), and thus Plaintiffs' new falsity arguments are *"not relevant in deciding the*

9

***present motion***," *Demarest v. Quick Loan Funding, Inc.*, 2010 WL 11531081, at *5 (C.D. Cal. June 7, 2010), *aff'd,* 481 F. App'x 352 (9th Cir. 2012). *See also Kilroy v. Cnty. of Orange*, 2022 WL 3574436, at *3 (C.D. Cal. July 15, 2022) (allegations first asserted in plaintiff's opposition to summary judgment were "improper" because plaintiff "ha[d] not moved to amend his complaint"); *Powell v. Cnty. of Orange*, 2022 WL 3574282, at *3 (C.D. Cal. July 7, 2022) (finding plaintiff's new "theories of liability … improper as [plaintiff] asserted them for the first time in his brief opposing summary judgment."); *Karas v. Marciano*, 2018 WL 6113095, at *8 (C.D. Cal. Oct. 3, 2018), ("courts routinely hold that a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blindside the defendant."); *Skinner v. Northrop Grumman Pension Plan*, 2008 WL 11336836, at *12 (C.D. Cal. Mar. 10, 2008) (granting motion for summary judgment because, "[i]n addition to providing no legal or factual support for [plaintiffs'] claims, plaintiffs 'may not amend [the] complaint through argument in a brief opposing summary judgment.'").

***Second,*** even if considered, Plaintiffs' new falsity arguments have no bearing on the narrower question presented here, which, as Plaintiffs concede, simply "ask[s] the Court to find . . . no triable issue of material fact exists ***as to what [Green Dot] disclosed***." ECF No. 162 at 13. In fact, none of Section III refutes or even addresses whether Defendants made the four categories of disclosures. That is, Defendants' narrower Motion does not seek judgment whether Defendants: (1) knew its prepaid card business "was in trouble" (Opp. at 5); (2) misled investors about their prepaid business (*id.* at 5-9); or (3) concealed various specified prepaid card declines (*id.* at 9-11).

Further, Plaintiffs' new arguments demonstrate in any event that they were nowhere alleged in the Complaint and should therefore be disregarded:

- May 9 and 16, 2018 statements that everything is doing "extremely well" and "every one of our products is hitting it and is either at or above

10

plan," AC ¶ 45, newly characterized as affirmative "misstatements" because Defendants were told of allegedly declining growth in Walmart sales. *Compare* new argument at Opp. at 6, *with* AC ¶ 47, alleging new accounts were not generating high margins of legacy accounts;[10]

- August 8, 2018 statement that "established product lines . . . are just really doing well . . . everything's growing in relative lockstep" and "material growth [was] being driven for . . . our established product lines," AC ¶ 48, newly described as "misstatements" because Defendants because Defendants were told of allegedly declining growth in Walmart sales. *Compare* new argument at Opp. at 6, *with* AC ¶ 49 (describing statements as misleading due to other factors);[11]

- November 7, 2018 statement that Green Dot's prepaid card business was "doing very well and continu[ing] to grow," AC ¶ 53, newly characterized as a "misstatement" because Defendants knew "there was $300 million decrease in Green Dot's prepaid business from the prior quarter." *Compare* new argument at Opp. at 7, *with* AC ¶ 53 (claiming merely that statements omitted information);[12]

- February 20, 2019 statement that Green Dot's prepaid card business generally was still "growing nicely," AC ¶ 57, newly described as a "misstatement" because Defendants knew that "[n]o retailers reported

[10] If Plaintiffs amended, Defendants would seek dismissal because the challenged statement is a historical statement of fact about the prior quarter's results, most of the statement is inactionable puffery, and, in any event, the challenged statement is not inconsistent with certain Walmart products having slowing sales.

[11] If Plaintiffs amended, Defendants would seek dismissal because decreased Q/Q sales are not inconsistent with continued Y/Y growth (slowing growth is still growth), and Green Dot disclosed 4% Y/Y growth in active accounts for Q3 2018, the quarter addressed by the statement. *See* OB at 10.

[12] If Plaintiffs amended, Defendants would seek dismissal for the same reasons articulated in footnote 10.

11

growth in GPR [prepaid cards] vs prior year," prepaid sales had "declined in 2018 at five of the eight retail chains, and "Green Dot's retail prepaid card sales were down 25% year-over-year overall." *Compare* new argument at Opp. at 7, *with* AC ¶ 57 (claiming the comment ignored declining accounts);[13]

- May 8, 2019 statement that the disclosed decline in prepaid card business was not "a long-term strategic problem," AC ¶ 60(a),[14] now described as false because Defendants separately stated that this "didn't appear to impact results in a material way," which Plaintiffs claim is contradicted by internal documents that prepaid losses would "have a negative revenue impact of around $8 million in the quarter" and that the company's revenue growth appears to be coming to a halt." *Compare* new argument at Opp. at 8, *with* AC ¶ 60(a) (claiming merely that the statement omitted a product mix trend that would impact the bottom line).

In short, none of these alleged misstatements refute the four categories of disclosed facts, and none (in any event) were alleged in the Complaint to be affirmatively misleading.

## III.   CONCLUSION

For these reasons, the Motion should be granted.

---

[13] If Plaintiffs amended, Defendants would seek dismissal because indicia of slowing growth are not inconsistent with continued growth, and the statement is inactionable puffery.

[14] The AC does ***not*** allege the statement "didn't appear to impact results in a material way" was misleading, *see* AC ¶ 60, although Plaintiffs misrepresent it in any event. Defendants instead disclosed that a continued decline in legacy accounts could "pose a headwind . . . although as you can tell ***from our Q1 results***, this factor didn't appear to impact results in a material ***way up to that point***," Talarides Decl., Ex. X (ECF No. 183-1) at 5; *see also* Supplemental Declaration of Alexander K. Talarides, Ex. X-2 at 3–4.

12

Dated:  July 18, 2025

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
JAMES N. KRAMER
ALEXANDER K. TALARIDES
M. TODD SCOTT


*/s/ Alexander K. Talarides*
ALEXANDER K. TALARIDES
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: 415-773-5700
Facsimile: 415-773-5957

-   and   -

**GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP**
RICHARD E. GOTTLIEB
EMIL PETROSSIAN
PETER M. BRANSTEN
AYAD MATHEWS
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

*Attorneys for Defendants*

13

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief contains 4,046 words, which complies with the word limit of L.R. 11-6.1.


Dated: July 18, 2025              ORRICK, HERRINGTON & SUTCLIFFE LLP


                                  */s/ Alexander K. Talarides*
                                  ALEXANDER K. TALARIDES

                                  *Attorneys for Defendants*

14