JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

RICHARD E. GOTTLIEB (SBN 289370)
rgottlieb@glaserweil.com
EMIL PETROSSIAN (SBN 264222)
epetrossian@glaserweil.com
PETER BRANSTEN (SBN 113352)
pbransten@glaserweil.com
AYAD MATHEWS (SBN 339785)
amathews@glaserweil.com
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| IN RE GREEN DOT CORPORATION SECURITIES LITIGATION | Case No. 2:19-cv-10701-FLA-E <br><br> <u>CLASS ACTION</u> <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT** <br><br> Judge:  Hon. Fernando L. Aenlle-Rocha <br> Dept: 6B <br> [Taken Under Submission on 7/18/2025] |

## <u>REDACTED VERSION</u>

Defendants Green Dot Corporation ("Green Dot") and former Green Dot executives Steven W. Streit ("Streit") and Mark Shifke ("Shifke"), collectively "Defendants," submit this Response to Plaintiffs' Statement of Genuine Disputes of Material Fact and Statement of Undisputed Fact.

## DEFENDANTS' RESPONSES TO
## PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

To avoid unnecessary duplication of text, the following responses are applicable to each of Plaintiffs' Statements of Genuine Disputes of Material Fact (each a "PSGD") except as specifically indicated.

**Response No. 1 (fact is "undisputed")**.

Where Plaintiffs respond to an undisputed fact on the ground that it is "[u]ndisputed that the quoted language appears" in the referenced exhibit (see, e.g., PSGD No. 1), this concession is all that is needed to treat the fact as undisputed. The remainder of Plaintiffs' response is legal argument of the type expressly prohibited by this court's Standing Order, Section IV.D.1 ("[n]o legal argument should be set forth in this document"). If the court considers Plaintiffs' legal arguments, Defendants respond that neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted controvert Defendants' evidence demonstrating that the referenced disclosure was made. Similarly, Plaintiffs' assertion that the materiality of a particular disclosure is a question of fact and may be the subject of expert testimony is irrelevant and does not controvert such showing by Defendants. Further, where Plaintiffs concede that quoted language appears in the evidence cited by Defendants in support of an undisputed fact, Plaintiffs fail to dispute that fact simply by asserting it is misleading due to other statements made on the same date. This is not a proper objection on summary judgment. *See Sernoffsky v. Novak*, 773 F.Supp.3d 988, 1003 (S.D. Cal. 2025). Plaintiff is free to identify, separately, these statements but the fact of those separate statements does not contradict that the listed statement was made, and Plaintiff is not disputing that fact.

- 1 -

**<u>Response No. 2 (irrelevant "truth on the market" legal argument).</u>**

In several responses directed to market analyst report statements, Plaintiffs argue that the "truth on the market" defense is a question of fact for the jury to decide. This response fails for three reasons: (1) it is legal argument prohibited by the Court's Standing Order Section IV.D.1 ("[n]o legal argument should be set forth in this document"); (2) by their motion, Defendants are not even asserting a "truth on the market" defense; and (3) in any event, thus legal argument does not rebut that the market analysts actually reported these facts.

**<u>Response No. 3 (evidentiary objections not well founded).</u>**

Plaintiffs' listed evidentiary objections lack merit. "[A]t the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial." *Sernoffsky v. Novak*, 773 F.Supp.3d 988, 999 (S.D. Cal. 2025). "In other words, when evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence." *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (emphasis in original). "For these reasons, objections such as lack of foundation, speculation, hearsay, relevance, or that evidence is argumentative or constitutes an improper legal conclusion "are all duplicative of the summary judgment standard itself" . . . . *Sernoffsky*, 773 F.Supp.3d at 999, *quoting Burch*, 433 F. Supp. 2d at 1119. Notably, in a securities fraud class action, a relevance objection that evidence presented by defendant in support of its motion for summary judgment is outside the class period is inappropriate. *See Menon v. Maxeon Solar Techs., Ltd.*, No. 24-CV-03869-EMC, 2025 WL 1223559, at *1 (N.D. Cal. Apr. 28, 2025) (overruling relevance objection to evidence outside of class period on the grounds that "[e]ven if a document is dated outside of the class period, it can still provide context to the dispute between the parties, including what was the mix of information known to investors.").

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

Similarly, objections to the characterization, weight, or credibility of evidence, or that a statement is "vague and ambiguous" are not proper evidentiary objections to evidence put forth at summary judgment. *Id*. at 1000 *citing Salter v. Wash. Twp. Health Care Dist.,* 260 F. Supp. 2d 919, 923–24 (N.D. Cal 2003), *rev'd in part on other grounds*, 112 F. App'x 557 (9th Cir. 2004).

Plaintiffs' repeated objections that Defendants have supposedly "misstated" evidence or presented "incomplete" evidence rendering it inadmissible under Federal Rules of Evidence 403 and 106 are improper on summary judgment. Rule 403 allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues . . ." *Sernoffsky*, 773 F. Supp. 3d at 1003.

Under Federal Rule of Evidence 106, "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. "This rule has no apparent relevance to evidence offered at summary judgment and does not command that a statement be excluded." *Sernoffsky,* 773 F.Supp.3d at 1003.

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 1. On Green Dot's November 5, 2015 Earnings Call for Q3 2015, Mr. Streit disclosed that Green Dot has "a number of new products and initiatives that [it] expect[ed] to generate positive results." **Evidence**: Ex. A (11/5/15 EC Tr.) at | 1. Undisputed that the quoted language appears in Ex. A, but otherwise disputed. Disputed because: |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. |
| | Whether this is a "disclosure" of material facts is subject to expert testimony. |
| | The cited statement refers to Green Dot's prepaid card business, not to direct deposit or any BaaS products (the "vast majority" of which during the relevant Class Period were "free," as Defendants disclosed on August 7, 2019). |
| | **Evidence**: <br> Ex. A (11/5/15 EC Tr.) at 5 ("In our branded business line . . . ."); and <br><br> Ex. 46 (8/7/19 EC Tr.) at 14 (admitting toward the end of the Class Period that "the vast majority" of Green Dot's new products were "free"). |
| | **Objections**: Incomplete under Fed. R. Evid. ("FRE") 106; calls for an improper legal conclusion under FRE 701; misstates the evidence under FRE 403; irrelevant under FRE 402 and 403 (the statement predates the Class Period by nearly three years and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (ECF 83)). |

- 4 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | *See* Plaintiffs' Objections to Evidence Proffered in Support of Defendants' Statement of Uncontroverted Facts in Support of Motion for Partial Summary Judgment, filed concurrently herewith ("PEO") 1. |
| 1. Defendants' Response:<br><br>As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. ||
| 2. On Green Dot's November 9, 2016 Earnings Call for Q3 2016, Mr. Streit disclosed that Green Dot was "*See*ing direct deposit growth as both a percentage of [total] active cards and growth in the absolute number of direct deposit accounts."<br><br>**Evidence**: Ex. B (11/9/16 EC Tr.) at 5. | 2. Undisputed that the quoted language appears in Ex. B, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The cited statement misleadingly omits that Green Dot's relevant Class Period direct deposit growth came from free accounts associated with its BaaS products. |

- 5 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | **Evidence**: Ex. 29 (legacy direct deposit flat, and all direct deposit growth in free or almost free Uber and Intuit accounts); Ex. 16 (non BaaS direct deposit flat or down); Ex. 37 at -0915 ███████████ <br><br> • Ex. 46 (8/7/19 EC Tr.) at 14 (*See* Plaintiffs' Statement of Genuine Disputes of Material Facts and Statement of Undisputed Facts ("PGD") 1). <br><br> **Objections**: Incomplete; calls for a legal conclusion; misstates the evidence; irrelevant and misleading (the statement predates the Class Period by nearly two years and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 2. |

2. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' Evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 3. On Green Dot's May 9, 2017 Earnings Call for Q1 2017, Mr. Streit disclosed Green Dot's "lower margin of the new revenue." <br><br> **Evidence**: Ex. C (5/9/17 EC Tr.) at 15. | 3. Undisputed that the quoted language appears in Ex. C, but otherwise disputed. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Disputed because: |
| | Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. |
| | Whether this is a "disclosure" of material facts is subject to expert testimony. |
| | The cited statement also refers to new prepaid card revenue including the UniRush acquisition, not the "newer digital banking products" Defendants describe (Mot. at 12). |
| | The cited statement misleadingly omits that Green Dot's relevant Class Period BaaS margins were not just lower, but negative, were margin, free, and not sustainable. |
| | **Evidence**: Defendants' SUF No. 6 says that Green Dot did not disclose its BaaS product line until six months after this call (citing Ex. E (11/7/17 SEC Form 8-K) at 4); |
| | Ex. 39 at -1009 ███████ |
| | Ex. 28 at -6284 ███████ |

- 7 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. 41 ██████████████████ ████████████████ ██████████████ Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1). **Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by nearly a year and does not cure any Class Period misstatement or omission alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 3. |

3. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs, impermissibly, rely on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 4. On Green Dot's May 9, 2017 Earnings Call for Q1 2017, Mr. Streit disclosed that Green Dot's "direct deposit penetration as a percentage of active accounts is up 44%, continuing the trend of increasing direct deposit penetration that we saw all throughout last year." **Evidence**: Ex. C (5/9/17 EC Tr.) at 5. | 4. Undisputed that the quoted language appears in Ex. C, but otherwise disputed. Disputed because: Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. |

- 8 -

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | Whether this is a "disclosure" of material facts is subject to expert testimony. |

**Evidence**:
Ex. 29 (*See* PGD 2);
Ex. 16 (*See* PGD 2);
Ex. 37 at -0915 (*See* PGD 2); and
Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1).

**Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by one year and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 4.

4. Defendants' Response:

As set forth in Respons No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 5. On Green Dot's August 8, 2017 Earnings Call for Q2 2017, Mr. Streit disclosed that Green Dot's "direct deposit | 5. Undisputed that the quoted language appears in Ex. D, but otherwise disputed. |

- 9 -

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| active base continues to soar, with record year- over-year consolidated growth of a whopping 83% in accounts receiving direct deposit, with 75% of all card loads coming from direct deposit in the quarter.' **Evidence**: Ex. D (8/8/17 EC Tr.) at | Disputed because: Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. Whether this is a "disclosure" of material facts is subject to expert testimony. The cited statement misleadingly omits that Green Dot's relevant Class Period direct deposit growth came from free accounts associated with its BaaS products. **Evidence**: Ex. 29 (*See* PGD 2); Ex. 16 (*See* PGD 2); Ex. 37 at -0915 (*See* PGD 2); and Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1). **Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by approximately nine months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 5. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 5. Defendants' Response: <br><br> As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 6. In Green Dot's Form 8-K filed November 7, 2017 and on Green Dot's February 21, 2018 Earnings Call for Q4 2017, Defendants disclosed its "Banking as a Service, or 'BaaS Platform,'" where Green Dot partners with other companies to develop their own digital banking services to distribute to their customers. <br><br> **Evidence**: Pl. Adm. No. 10 (citing Ex. E (11/7/17 SEC Form 8-K) at 4); Ex. G (2/21/18 EC Tr.) at 6. | 6. Undisputed that the quoted language appears in Exs. E and G, but otherwise disputed. <br><br> Disputed because: <br><br> Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br> Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br> Defendants' words ("where Green Dot partners with other companies to develop their own digital banking services to distribute to their customers") are not supported by any facts and are not contained in the cited exhibits. <br><br>  |

- 11 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Evidence**: Ex. E (11/7/17 SEC Form 8-K) at 4; Ex. G (2/21/18 EC Tr.) at 6; Ex. 39 at -1009 (*See* PGD 3); Ex. 28 at -6284 (*See* PGD 3); Ex. 41 (*See* PGD 3); and Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1). **Objections**: Incomplete; calls for a legal conclusion; fails the best evidence rule under FRE 1002; misstates the evidence; irrelevant (the statement predates the Class Period by over six months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 6. |

6. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 7. On Green Dot's November 7, 2017 Earnings Call for Q3 2017, Mr. Streit disclosed that "the percentage of active cards receiving direct deposit was up a spectacular 90% year-over-year." | 7. Undisputed that the quoted language appears in Ex. F, but otherwise disputed. Disputed because: |

- 12 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| **Evidence**: Ex. F (11/7/17 EC Tr.) at 4. | Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>■■■■■■■■■■■■■<br><br>**Evidence**:<br>   Ex. 29 (*See* PGD 2);<br>   Ex. 16 (*See* PGD 2);<br>   Ex. 37 at -0915 (*See* PGD 2); and<br>   Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by over six months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 7. |

7. Defendants' Response:

   As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced

- 13 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 8. On Green Dot's November 7, 2017 Earnings Call for Q3 2017, Mr. Streit disclosed that Green Dot's "increasingly important and relevant Banking as a Service, or BaaS Platform, . . . with Intuit in a new partnership, where they're using [its] BaaS Platform," and "another of [its] Banking as a Service partnerships, Apple Pay Cash." **Evidence**: Ex. F (11/7/17 EC Tr.) at 4-5. | 8. Undisputed that the quoted language appears in Ex. F, but otherwise disputed. Disputed because: Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. Whether this is a "disclosure" of material facts is subject to expert testimony. Defendants' so-called statement is not an undisputed fact; rather, it is an editorialized compilation that spans two pages and nine paragraphs.  As Defendants' Ex. H shows, just before the Class Period, Green Dot told investors that prepaid cards were responsible for the majority of the Company's operating revenues. **Evidence**: Ex. F (11/7/17 EC Tr.) at 4-5; |

- 14 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | Ex. 39 at -1009 (*See* PGD 3); Ex. 28 at -6284 (*See* PGD 3); Ex. 41 (*See* PGD 3); Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); and Ex. H (2/27/18 SEC Form 10-K) at 12 ("Most of our operating revenues are derived from prepaid financial services sold at our four largest retail distributors. As a percentage of total operating revenues . . . Walmart was approximately 40% for the year ended December 31, 2017."). **Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by over six months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 8. |

8. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| 9. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that "[t]he average life of a prepaid card is a lot less than 2 years." | 9. Undisputed that the quoted language appears in Ex. G, but otherwise disputed. Disputed because: |

- 15 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| **Evidence**: Ex. G (2/21/18 EC Tr.) at 18-19. | Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The cited statement misleadingly omits Streit's words from that same call February 21, 2018 earnings call affirming the primary importance of prepaid cards: "[I]f you think about our established business lines or legacy business lines being prepaid cards and reloads, right, that would be the historic Green Dot, those 2 lines of business continue to be a good part of our revenue and certainly more than half of our revenue. . . . So the answer is our bread and butter from the old days is still our bread and butter today. Just like coffee is still important to Starbucks. . . . So you're never going to get to 100% [direct deposit], or if you did, it would be a bad thing because it meant that you lost all your legacy customers."<br><br>As Defendants' Ex. H shows, just before the Class Period, Green Dot told investors that prepaid cards were responsible for the majority of the Company's operating revenues.<br><br>**Evidence**:<br>  Ex. G (2/21/18 EC Tr.) at 16, 19; and |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. H (2/27/18 SEC Form 10-K) at 12 (*See* PGD 8).<br><br>**Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 9. |

9. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 10. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that Green Dot typically refers to prepaid debit cards as its "legacy business" or "established business lines."<br><br>**Evidence**: Ex. G (2/21/18 EC Tr.) at 16. | 10. Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>On the February 21, 2018 earnings call, Defendants referred to prepaid debit cards as "prepaid cards," "cash |

- 17 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | reloads," "active accounts," "established business lines," "legacy account products," "active card[s]," "established products," "new products," "legacy business," "reloads," "bread and butter," "higher economic cards," and "Walmart." **Evidence**: Ex. G (2/21/18 EC Tr.) at 5, 7, 9, 16, 18-19. **Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 10. |

10. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 11. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Shifke disclosed how Green Dot was "continu[ing] to successfully evolve from what used to be largely a | 11. Undisputed that the quoted language appears in Ex. G, but otherwise disputed. Disputed because: |

- 18 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| monoline, single channel model of selling prepaid cards and cash reloads at retail stores, into a new kind of bank, a modern, pro- consumer, technology-forward branchless bank that offers many products and services directly to consumers and through enterprise-level partnerships via our Banking as a Service platform."<br><br>**Evidence**: Pl. Adm. No. 8 (citing Ex. G (2/21/18 EC Tr.) at 9). | Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The cited statement misleadingly omits that Streit said on the February 21, 2018 earnings call for Q4 2017 that Green Dot's prepaid cards ("established business lines or legacy business lines") were "more than half of our revenue," and thus, "***still our bread and butter today***. Just like coffee is still important to Starbucks. . . . So you're never going to get to 100% [direct deposit], or if you did, it would be a bad thing because it meant that you lost all your legacy customers."<br><br>Defendants' Ex. H shows, just before the Class Period, Green Dot told investors that prepaid cards were responsible for the majority of the Company's operating revenues.<br><br>**Evidence**:<br>  Ex. G (2/21/18 EC Tr.) at 16, 19; and<br>  Ex. H (2/27/18 SEC Form 10-K) at 12 (*See* PGD 8).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the |

- 19 -

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 11. |

11. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 12. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Defendants disclosed Green Dot's total number of active accounts, and the growth in active accounts on a year-over-year basis. **Evidence**: Pl. Adm. No. 5 (citing Ex. G (2/21/18 EC Tr.) at 5). | 12. Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br> |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | [REDACTED] |
| | As Defendants' Ex. K shows, the "active accounts" metric replaced the legacy "active cards" metric at the start of the Class Period, which obscured the decline in prepaid accounts. |
| | Investors did not know the composition of active accounts during the Class Period, as Defendants' Exhibit G shows. |
| | **Evidence**: |
| | Ex. 30 at [REDACTED] |
| | Ex. 31 (77% of active account growth was from BaaS, which had $10 lower per active revenue than prepaid cards); Ex. 5 at -6280 (Shifke: "D[irect] D[eposit] actives coming from Uber and not retail"); Ex. 41 at -4474; [REDACTED] |
| | Ex. 39 at -1009 (*See* PGD 3); Ex. 28 at -6284 (*See* PGD 3); Ex. 41 (*See* PGD 3); |

- 21 -

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); Ex. K (5/10/18 SEC Form 10-Q) at 29 (introduction of "active accounts" metric); Ex. 22 at 2 (changing name from "Number of Active Cards" to "Number of Active Accounts"); Ex. 12 at -6971 (active accounts includes Uber, without which there has been "degradation in the Walmart and Green Dot Retail business"); Ex. G (2/21/18 EC Tr.) at 16 (Defendants disclosed only segments, not product-level data); Ex. 27 at -9022 (February 2018: "We don't break out individual programs unless required by the SEC (Walmart)."); Ex. 38 at ████████ ████████ Ex. 66 (11/7/19 SunTrust Analyst Report) at 1 (*See*king "better disclosure" concerning Green Dot's consumer products); Ex. 59 (3/7/19 Deutsche Bank Analyst Report) at 1 (noting the lack of transparency and "limited visibility in [Green Dot's business] model"); and Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 ("We |

- 22 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | had long wondered about the economics of the new BaaS accounts vs. the Legacy . . . . We had asked this question a couple of times but never got a straight answer . . . ."). <br><br> **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 12. |

12. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 13. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that "we track our established products versus new products internally, but we disclose just the segments." <br><br> **Evidence**: Pl. Adm. No. 7 (citing Ex. G (2/21/18 EC Tr.) at 16). | 13. Undisputed that the quoted language appears in Ex. G, but otherwise disputed. <br><br> Disputed because: |

- 23 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. |
| | Whether this is a "disclosure" of material facts is subject to expert testimony. |
| | **Evidence**: Ex. 30 at -2731 (*See* PGD 12); Ex. 31 (*See* PGD 12); Ex. 5 at -6280 (*See* PGD 12); Ex. 34 at -3868 (*See* PGD 12); Ex. 39 at -1009 (*See* PGD 3); Ex. 28 at -6284 (*See* PGD 3); Ex. 41 (*See* PGD 3); Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); and Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 (*See* PGD 12). |
| | **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the |

- 24 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 13. |

13. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 14. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that Green Dot's "active accounts receiving direct deposit, gr[ew] by 21% in the quarter" as part of a "continuing long-term portfolio mix shift towards higher lifetime value accounts."<br><br>**Evidence**: Pl. Adm. No. 5 (citing Ex. G (2/21/18 EC Tr.) at 5). | 14. Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br><br><br>Defendants knew that Green Dot's actual product mix shift was not |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | moving toward higher value accounts, but rather, toward lower value accounts, as Streit had to admit in August 2019. |

**Evidence:**
  Ex. 29 (*See* PGD 2);
  Ex. 16 (*See* PGD 2);
  Ex. 37 at -0915 (*See* PGD 2);
  Ex. 30 at -2731 (*See* PGD 12);
  Ex. 31 (*See* PGD 12);
  Ex. 5 at -6280 (*See* PGD 12);
  Ex. 34 at -3868 (*See* PGD 12);
  Ex. 39 at -1009 (*See* PGD 3);
  Ex. 28 [GDSECLIT_01136284] at -6284 (*See* PGD 3);
  Ex. 41 (*See* PGD 3);
  Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); and
  Ex. 35 at -1511

**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 14.

- 26 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 14. Defendants' Response: As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 15. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that Green Dot "had multiple new Banking as a Service program wins." **Evidence**: Ex. G (2/21/18 EC Tr.) at 4. | 15. Undisputed that the quoted language appears in Ex. G, but otherwise disputed. Disputed because: Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. Whether this is a "disclosure" of material facts is subject to expert testimony.  **Evidence**: Ex. 30 at -2731 (*See* PGD 12); Ex. 31 (*See* PGD 12); Ex. 34 at -3868 (*See* PGD 12); Ex. 39 at -1009 (*See* PGD 3); Ex. 28 at -6284 (*See* PGD 3); |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. 41 (*See* PGD 3); and Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1). **Objections**: Incomplete; calls for a legal conclusion; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 15. |
| 15. Defendants' Response: As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 16. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that for FY 2018, "we intend to focus on attracting . . . consumer segments who are more likely to enroll in direct deposit." **Evidence**: Pl. Adm. No. 6 (citing Ex. G (2/21/18 EC Tr.) at 6). | 16. Undisputed that the quoted language appears in Ex. G, but otherwise disputed. Disputed because: Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. Whether this is a "disclosure" of material facts is subject to expert testimony. |

- 28 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | The cited statement misleadingly omits that Streit said on the February 21, 2018 earnings call for Q4 2017 that Green Dot's prepaid cards ("established business lines or legacy business lines") were "more than half of our revenue," and thus, "***still our bread and butter today***. Just like coffee is still important to Starbucks. . . . So you're never going to get to 100% [direct deposit], or if you did, it would be a bad thing because it meant that you lost all your legacy customers."<br><br>Defendants' Ex. H shows, just before the Class Period, Green Dot told investors that prepaid cards were responsible for the majority of its operating revenues.<br><br>**Evidence**:<br>    Ex. G (2/21/18 EC Tr.) at 16, 19; Ex. H (2/27/18 SEC Form 10-K) at 12 (*See* PGD 8);<br>    Ex. 29 (*See* PGD 2);<br>    Ex. 16 (*See* PGD 2);<br>    Ex. 35 at -1511 (*See* PGD 14);<br>    Ex. 37 at -0915 (*See* PGD 2); and Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1). |

- 29 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 16. |

16. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 17. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that Green Dot's newer products and services had become "more and more material."<br><br>**Evidence**: Pl. Adm. No. 7 (citing Ex. G (2/21/18 EC Tr.) at 16). | 17. Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>Defendants' editorializing – "Green Dot's newer products and services had become" – is not a fact and does not appear in the quoted Exhibit. |

- 30 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Defendants admitted in August 2019 that the "vast majority" of Green Dot's newer products during the Class Period were free.<br><br>The cited statement misleadingly omits that Streit said on the February 21, 2018 earnings call for Q4 2017 that Green Dot's prepaid cards ("established business lines or legacy business lines") were "more than half of our revenue," and thus, "***still our bread and butter today***. Just like coffee is still important to Starbucks. . . . So you're never going to get to 100% [direct deposit], or if you did, it would be a bad thing because it meant that you lost all your legacy customers."<br><br>Defendants' Ex. H shows, just before the Class Period, Green Dot told investors that prepaid cards were responsible for the majority of its operating revenues.<br><br>**Evidence**:<br>　Ex. G (2/21/18 EC Tr.) at 16, 19;<br>　Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); and<br>　Ex. H (2/27/18 SEC Form 10-K) at 12 (*See* PGD 8).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure |

- 31 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 17. |
| 17. Defendants' Response:<br><br>As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. |  |
| 18. On Green Dot's February 21, 2018 Earnings Call for Q4 2017, Mr. Streit disclosed that "the margins on some of [Green Dot's] new BaaS programs are materially lower than those of [its] established and at scale legacy product lines."<br><br>**Evidence**: Pl. Adm. No. 14 (citing Ex. G (2/21/18 EC Tr.) at 7). | 18. Undisputed that the quoted language appears in Ex. G, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The cited statement misleadingly omits that during the Class Period Streit told investors that BaaS "margins on those programs [are] *expected to expand over future periods* as those programs scale"; that their BaaS margins were low due to "up front" costs but would "*get better over time*" with "margin expansion" |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | and "certainly could be" "as rich as our legacy products." |

**Evidence**:
Ex. I (5/9/18 EC Tr.) at 3, 7, 9, 11, 15, 21 23;
Ex. K (5/10/18 SEC Form 10-Q) at 28;
Ex. 2 at -0799

Ex. 4 at -4196 (Intuit margins low due to 50% revenue share, and even if they improve, "will be lower than other account programs");
Ex. 39 at -1009 (*See* PGD 3);
Ex. 28 at -6284 (*See* PGD 3);
Ex. 41 (*See* PGD 3); and
Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1).

**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 18.

- 33 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 18. Defendants' Response: <br><br> As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 19. In Green Dot's Form 10-K for the period ended December 31, 2017 (filed February 27, 2018), Green Dot disclosed that the "margins for new products and services may not be as high as the margins we have experienced in the past." <br><br> **Evidence**: Pl. Adm. No. 2 (citing Ex. H (2/27/18 SEC Form 10-K) at 13). | 19. Undisputed that the quoted language appears in Ex. H, but otherwise disputed. <br><br> Disputed because: <br><br> Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br> Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br> The cited statement misleadingly omits that during the Class Period Streit told investors that BaaS "margins on those programs [are] ***expected to expand over future periods*** as those programs scale"; that their BaaS margins were low due to "up front" costs but would "***get better over time***" with "margin expansion" and "certainly could be" "as rich as our legacy products." |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | The "vast majority" of Green Dot's BaaS programs were later admitted to be free, ████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ |
| | The quoted language appears in a risk factor that reads in its entirety: "Moreover, new products and services may not be profitable, and even if they are profitable, operating margins for new products and services may not be as high as the margins we have experienced in the past." Read in its entirety, the statement is clearly meant as a disclosure of a potential risk and not as a description of present fact. |
| | **Evidence**: Ex. I (5/9/18 EC Tr.) at 3, 7, 9, 11, 15, 21, 23; Ex. K (5/10/18 SEC Form 10-Q) at 28; Ex. 2 at -0799 (*See* PGD 18); Ex. 4 at -4196 (*See* PGD 18); Ex. 39 at -1009 (*See* PGD 3); Ex. 28 at -6284 (*See* PGD 3); Ex. 41 (*See* PGD 3); Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); and Ex. H (2/27/18 SEC Form 10-K) at 33 ("improving mix in our active card portfolio"). |

- 35 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence; irrelevant (the statement predates the Class Period by almost three months and does not cure or relate to any misstatement alleged in ¶¶38-61 of the Amended Complaint). *See* PEO 19. |
| 19. Defendants' Response: <br><br> As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 20. On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that Green Dot had "increase[ed] the number of accounts receiving direct deposit by 930,000 on a year-over-year basis." <br><br> **Evidence**: Pl. Adm. No. 32 (citing Ex. I (5/9/18 EC Tr.) at 7). | 20. Undisputed that the quoted language appears in Ex. I, but otherwise disputed. <br><br> Disputed because: <br><br> Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br> Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br> ████████████████████ |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | ████████████████<br><br>The cited statement misleadingly omits that Green Dot's actual product mix shift was not moving toward higher value accounts (as Defendants said repeatedly throughout the Class Period) but rather, toward lower value BaaS and free direct deposit accounts (Mot. at 8).<br><br>**Evidence**:<br>  Ex. 29 (*See* PGD 2);<br>  Ex. 16 (*See* PGD 2);<br>  Ex. 35 at -1511 (*See* PGD 14);<br>  Ex. 37 at -0915 (*See* PGD 2);<br>  Ex. H (2/27/18 SEC Form 10-K) at 33 (*See* PGD 19);<br>  Ex. I (5/9/18 EC Tr.) at 5 ("continuing long-term portfolio mix shift towards higher lifetime value accounts");<br>  Ex. 34 at -3868 (*See* PGD 12);<br>  Ex. 39 at -1009 (*See* PGD 3);<br>  Ex. 30 at -2731 (*See* PGD 12);<br>  Ex. 31 (*See* PGD 12); and<br>  Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 20. |

- 37 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 20. Defendants' Response:<br><br>As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 21. On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that Green Dot was experiencing "ongoing momentum in [its] efforts to attract and retain direct deposit accounts."<br><br>**Evidence**: Pl. Adm. No. 33 (citing Ex. I (5/9/18 EC Tr.) at 5). | 21. Undisputed that the quoted language appears in Ex. I, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br><br><br>The cited statement misleadingly omits that Green Dot's actual product mix shift was not moving toward higher value accounts (as Defendants said repeatedly throughout the Class Period) but rather toward lower value |

- 38 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | BaaS and free direct deposit accounts (Mot. at 8).<br><br>**Evidence**:<br>Ex. 29 (*See* PGD 2);<br>Ex. 16 (*See* PGD 2);<br>Ex. 35 at -1511 (*See* PGD 14);<br>Ex. 37 at -0915 (*See* PGD 2);<br>Ex. H (2/27/18 SEC Form 10-K) at 33 (*See* PGD 20);<br>Ex. I (5/9/18 EC Tr.) at 5 (*See* PGD 20);<br>Ex. 34 at -3868 (*See* PGD 12);<br>Ex. 39 at -1009 (*See* PGD 3);<br>Ex. 30 (*See* PGD 12);<br>Ex. 31 (*See* PGD 12); and<br>Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 21. |

21. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

- 39 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 22. On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that Green Dot was "continuing [its] long-term portfolio mix shift towards higher lifetime value accounts."<br><br>**Evidence**: Pl. Adm. No. 34 (citing Ex. I (5/9/18 EC Tr.) at 5). | 22. Undisputed that the quoted language appears in Ex. I, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The cited statement misleadingly omits that Green Dot's actual product mix shift was toward lower value BaaS and free direct deposit accounts.<br><br>**Evidence**:<br>Ex. 30 at -2731 (*See* PGD 12);<br>Ex. 31 (*See* PGD 12);<br>Ex. 5 at -6280 (*See* PGD 12);<br>Ex. 34 at -3868 (*See* PGD 12);<br>Ex. 39 at -1009 (*See* PGD 3);<br>Ex. 28 at -6284 (*See* PGD 3);<br>Ex. 41 (*See* PGD 3);<br>Ex. 29 (*See* PGD 2);<br>Ex. 16 (*See* PGD 2);<br>Ex. 37 at -0915 (*See* PGD 2); and<br>Ex. 46 (8/7/19 EC Tr.)at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 22. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 22. Defendants' Response:<br><br>As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 23. On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Shifke disclosed that "the mix of customers receiving direct deposit of funds grew substantially . . . such that now approximately 1/2 of all our active accounts received direct deposit in the quarter."<br><br>**Evidence**: Pl. Adm. No. 35 (citing Ex. I (5/9/18 EC Tr.) at 9). | 23. Undisputed that the quoted language appears in Ex. I, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br><br><br>The cited statement misleadingly omits that Green Dot's actual product mix shift was not moving toward higher value accounts (as Defendants said repeatedly throughout the Class |

- 41 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Period), but rather toward lower value BaaS and free direct deposit accounts (Mot. at 8).<br><br>**Evidence**:<br>Ex. 29 (*See* PGD 2);<br>Ex. 16 (*See* PGD 2);<br>Ex. 35 at -1511 (*See* PGD 14);<br>Ex. 37 at -0915 (*See* PGD 2);<br>Ex. 46 (8/7/19 EC Tr.)at 14 (*See* PGD 1);<br>Ex. H (2/27/18 SEC Form 10-K) at 33 (*See* PGD 20);<br>Ex. I (5/9/18 EC Tr.) at 5 (*See* PGD 20);<br>Ex. 34 at -3868 (*See* PGD 12);<br>Ex. 39 at -1009 (*See* PGD 3);<br>Ex. 30 at -2731 (*See* PGD 12); and<br>Ex. 31 (*See* PGD 12).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 23. |

23. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 24. On Green Dot's May 9, 2018 Earnings Call for 1Q 2018, Mr. Shifke disclosed that Green Dot has "lower-margin revenue from our new product lines."<br><br>**Evidence**: Pl. Adm. No. 40 (citing Ex. I (5/9/18 EC. Tr.) at 10). | 24. Undisputed that the quoted language appears in Ex. I, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The cited statement misleadingly omits that Streit told investors that BaaS "margins on those programs [are] *expected to expand over future periods* as those programs scale"; that their BaaS margins were low due to "up front" costs but would "*get better over time*" with "margin expansion" and "certainly could be" "as rich as our legacy products."<br><br>The "vast majority" of Green Dot's new products were later admitted to be free, ███████████ |

- 43 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Evidence**:<br>Ex. I (5/9/18 EC Tr.) at 3, 7, 9, 11, 15, 21 23;<br>Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>Ex. 2 at -0799 (*See* PGD 18);<br>Ex. 4 at -4196 (*See* PGD 18);<br>Ex. 39 at -1009 (*See* PGD 3);<br>Ex. 28 at -6284 (*See* PGD 3);<br>Ex. 41 (*See* PGD 3); and<br>Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 24. |

24. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 25. On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that Green Dot's "newer branded product lines . . . have a much lower contribution margin than our established product lines." <br>**Evidence**: Pl. Adm. No. 38 (citing Ex. I (5/9/18 EC Tr.) at 4). | 25. Undisputed that the quoted language appears in Ex. I, but otherwise disputed.<br><br>Disputed because: |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.

Whether this is a "disclosure" of material facts is subject to expert testimony.

The statement as quoted, and in particular the phrase "branded product lines," refers to Green Dot's prepaid cards – thus, it cannot support Defendants' argument that Defendants disclosed that Green Dot's newer digital banking products had materially lower margins than historically high-margin legacy prepaid cards (Mot. at 12). *See* Ex. M at 11 (referring specifically to "retail stores" and "debit cards").

The cited statement misleadingly omits that Streit told investors that BaaS "margins on those programs [are] *expected to expand over future periods* as those programs scale"; that their BaaS margins were low due to "up front" costs but would "*get better over time*" with "margin expansion" and "*certainly could be*" "as rich as our legacy products." 

The "majority" of Green Dot's BaaS programs were later admitted to be free, ██████████████████ |

- 45 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | ████████████ |
|  | **Evidence**:<br>  Ex. I (5/9/18 EC Tr.) at 3, 7, 9, 11, 15, 21 23;<br>  Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>  Ex. 2 at -0799 (*See* PGD 18);<br>  Ex. 4 at -4196 (*See* PGD 18);<br>  Ex. 39 at -1009 (*See* PGD 3);<br>  Ex. 28 at -6284 (*See* PGD 3);<br>  Ex. 41 (*See* PGD 3); and<br>  Ex. 46 (8/7/19 EC Tr.)at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 25. |
| 25. Defendants' Response:<br><br>     As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 26. On May 9, 2018, market analyst Deutsche Bank reported that Green Dot's "EBITDA margins declined y-o-y in 1Q18 and came in below expectations and company guided to 2Q18 EBITDA significantly below street estimates | 26. Undisputed that the quoted language appears in Ex. J, but otherwise disputed.<br><br>Disputed because: |

- 46 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| potentially due to lower contribution margin for new programs."<br><br>**Evidence**: Pl. Adm. No. 43 (citing Ex. J (5/9/18 Deutsche Bank Analyst Report) at 1). | Whether truth was on the market is an ultimate fact for the jury.<br><br>Whether truth was on the market is subject to expert testimony.<br><br>The cited statement misleadingly omits language from Ex. J (in the same sentence) contradicting the asserted fact: "*[T]he company expects 100bps of EBITDA margin expansion for FY18*."<br><br>The cited statement misleadingly omits that Streit told investors that BaaS "margins on those programs [are] *expected to expand over future periods* as those programs scale"; that their BaaS margins were low due to "up front" costs but would "*get better over time*" with "margin expansion" and "certainly could be" "as rich as our legacy products."<br><br>Defendants later disclosed that the "vast majority" of their new programs were free, ██████████<br>██████████████████<br>██████████████████<br>██████████████████<br>██████████████████<br>██████████████████<br><br>**Evidence**:<br>   Ex. J (5/9/18 Deutsche Bank Analyst Report) at 1; |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. I (5/9/18 EC Tr.) at 3, 7, 9, 11, 15, 21 23; Ex. K (5/10/18 SEC Form 10-Q) at 28; Ex. 2 at -0799 (*See* PGD 18); Ex. 4 at -4196 (*See* PGD 18); Ex. 39 at -1009 (*See* PGD 3); Ex. 28 at -6284 (*See* PGD 3); Ex. 41 (*See* PGD 3); and Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1). **Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 26. |

26. Defendants' Response:

As set forth in Response Nos 1 and 2 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 27. In Green Dot's Form 10-Qs for Q1 2018 filed May 10, 2018, and for Q1 2019 filed May 9, 2019, the Company disclosed the "[n]umber of [a]ctive [a]ccounts," a "key metric[]" reported in each of the company's quarterly and annual reports that includes "any bank account" within Green Dot. | 27. Undisputed that the quoted language appears in Exs. K and Y, but otherwise disputed. Disputed because: Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. |

- 48 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| **Evidence**: Ex. K (5/10/18 SEC Form 10-Q) at 29; Ex. Y (5/9/19 SEC Form 10-Q) at 27. | Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The phrase "reported in each of the company's quarterly and annual reports that includes" does not appear in the cited documents, and is not a factual statement, but rather, Defendants' editorial characterization.<br><br>The cited statement misleadingly omits Defendants' falsely positive statements about prepaid card business growth in Ex. I; the cited statement misleadingly omits declining prepaid accounts and the related worsening product mix shift of active accounts, which Defendants wrongly suggest they disclosed (Mot. at 10); and the cited statement misleadingly omits Defendants' statements that "[m]ost of our operating revenues are derived from prepaid financial services sold at our four largest retail distributors."<br><br>As Defendants' Ex. K shows, the "active accounts" metric replaced the legacy "active cards" metric at the start of the Class Period, which obscured the decline in prepaid accounts.<br><br>Investors did not know the composition of active accounts during the Class Period, as Defendants' Ex. G shows. |

- 49 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Evidence**: Ex. K (5/10/18 SEC Form 10-Q) at 29, 41; Ex. Y (5/9/19 SEC Form 10-Q) at 27; Ex. 36 at -4169 ███████ ████████████████████ ████████████████████ ████████████████████ Ex. 30 at -2731 (*See* PGD 12); Ex. 46 (8/7/19 EC Tr.)at 14 (*See* PGD 1); Ex. I (5/9/18 EC Tr.) at 4 ("branded product lines . . . contribute[d] [to] material revenue growth"); Id. at 5 ("1/3 of that growth came from our own established branded programs"); Id. at 12 ("the good old fashioned Walmart MoneyCards and Green Dot classic Visa cards and MasterCards and GoBank, which continue[] to do extremely well"); Id. at 6 ("On the branded side of our shop, Green Dot continues to gain traction on nearly all fronts."); Id. at 12 ("1/3 of that growth is from our established programs, the legacy business"); Ex. K (5/10/18 SEC Form 10-Q) at 29 (*See* PGD 12); Ex. 22 at 2 (*See* PGD 12); Ex. 12 at -6971 (*See* PGD 12); Ex. G (2/21/18 EC Tr.) at 16 (*See* PGD 12); Ex. 27 at -9021 (*See* PGD 12); |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. 38 at -1789 (*See* PGD 12); Ex. 66 (11/7/19 SunTrust Analyst Report) at 1 (*See* PGD 12); Ex. 59 (3/7/19 Deutsche Bank Analyst Report) at 1 (*See* PGD 12); and Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 (*See* PGD 12). **Objections**: Incomplete; calls for a legal conclusion. *See* PEO 27. |
| 27. Defendants' Response: As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 28. In Green Dot's Form 10-Q for Q1 2018 filed May 10, 2018, Green Dot disclosed that "[t]he increase in the number of active accounts of 19% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs." **Evidence**: Pl. Adm. No. 29 (citing Ex. K (5/10/18 SEC Form 10-Q) at 29). | 28. Undisputed that the quoted language appears in Ex. K, but otherwise disputed. Disputed because: Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. Whether this is a "disclosure" of material facts is subject to expert testimony. |

- 51 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | The cited statement misleadingly omits that Ex. K also states that "[m]ost of our operating revenues are derived from prepaid financial services sold at our four largest retail distributors," and also omits known contemporaneous declines in Green Dot's legacy prepaid business. |
| | ███████████████████ |
| | As Defendants' Ex. K shows, the "active accounts" metric replaced the legacy "active cards" metric at the start of the Class Period, which obscured the decline in prepaid accounts. |
| | Investors did not know the composition of active accounts during the Class Period, as Defendants' Ex. G shows. |
| | The cited statement misleadingly omits Defendants' falsely positive statements about prepaid card |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | business growth on the May 9, 2019 earnings call.<br><br>**Evidence**:<br>Ex. K (5/10/18 SEC Form 10-Q) at 29, 41;<br>Ex. 6 at -3945 (April 9, 2018: planning for a "1% miss on acquisition [i.e., sales] for the rest of the year" in the prepaid or "core business");<br>Ex. 1 at -0717 (Green Dot's Audit Committee notes from May 3, 2018: "the active accounts in our retail channel decline[d] YoY");<br>Ex. 36 at -4169 (*See* PGD 27);<br><br>Ex. 5 at -6281 (April 11, 2018: "GPR sales are down across the board in Q1," "GD retail [was] down 6%," and Green Dot's biggest selling Walmart card the "WMMC [was] YoY expected to be DOWN");<br>Ex. 40; Ex. 42 ███████████<br>████████████████████<br>████████████████████<br>████████████████████<br>████████████████████<br>Ex. 30 at -2731 (*See* PGD 12);<br>Ex. 31 (*See* PGD 12);<br>Ex. 5 at -6280 (*See* PGD 12);<br>Ex. 34 at -3868 (*See* PGD 12);<br>Ex. 39 at -1009 (*See* PGD 3);<br>Ex. 28 at -6284 (*See* PGD 3);<br>Ex. 41 (*See* PGD 3); |

- 53 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. 46 (8/7/19 EC Tr.)at 14 (*See* PGD 1); Ex. K (5/10/18 SEC Form 10-Q) at 29 (*See* PGD 12); Ex. 22 at 2 (*See* PGD 12); Ex. 12 at -6971 (*See* PGD 12); Ex. G (2/21/18 EC Tr.) at 16 (*See* PGD 12); Ex. 27 at -9021 (*See* PGD 12); Ex. 38 at -1789 (*See* PGD 12); Ex. 66 (11/7/19 SunTrust Analyst Report) at 1 (*See* PGD 12); Ex. 59 (3/7/19 Deutsche Bank Analyst Report) at 1 (*See* PGD 12); Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 (*See* PGD 12); and Ex. I (5/9/18 EC Tr.) at 4, 6, 12 (*See* PGD 27). **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 28. |

28. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 29. On May 10, 2018, market analyst Morgan Stanley reported that "GDOT's adjusted EBITDA margins compressed 240 bps YoY during the quarter due to mix shift towards newer branded product lines and BaaS program launches that come with upfront expenses." **Evidence**: Pl. Adm. No. 55 (citing Ex. L (5/10/18 Morgan Stanley Analyst Report) at 2). | 29. Undisputed that the quoted language appears in Ex. L, but otherwise disputed. Disputed because: Whether truth was on the market is an ultimate fact for the jury. Whether truth was on the market is subject to expert testimony. This report, which touts "*[c]ore . . . [s]trength*" and "*margin expansion . . . as some of these programs start to scale*," fails to reflect that Defendants had conveyed to the market the extent of the permanently low BaaS margins, ███████████ In reality, Defendants' Ex. L shows only that the market incorrectly believed that BaaS margins were only "currently" low due to start-up "*upfront expenses*," but would "expand notably" – consistent with Defendants' statements BaaS margins would "get better over time" and "certainly could be" "as rich as our legacy products." The cited statement misleadingly that Defendants touted an improving product mix towards more valuable accounts during the Class Period, as Defendants' own exhibits show. |

- 55 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Evidence:** Ex. I (5/9/18 EC Tr.) at 7, 11, 23; Ex. K (5/10/18 SEC Form 10-Q) at 28; Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2; Ex. 2 at -0799 (*See* PGD 18); Ex. 4 at -4196 (*See* PGD 18); Ex. 39 at -1009 (*See* PGD 3); Ex. 28 at -6284 (*See* PGD 3); Ex. 41 (*See* PGD 3); Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); Ex. H (2/27/18 SEC Form 10-K) at 33 (*See* PGD 20); and Ex. I (5/9/18 EC Tr.) at 5 (*See* PGD 20).<br><br>**Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 29. |

29. Defendants' Response:

As set forth in Response Nos. 1 and 2 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 30. In Green Dot's Form 10-Q for Q1 2018 filed May 10, 2018, Green Dot disclosed "[o]ur new product lines | 30. Undisputed that the quoted language appears in Ex. K, but otherwise disputed. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| currently have margins below our established product lines."<br><br>**Evidence**: Pl. Adm. No. 26 (citing Ex. K (5/10/18 SEC Form 10-Q) at 28). | Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>This statement does not refer to the BaaS products at issue. The reference to "new product lines" is vague, undefined, and includes prepaid products – rather than BaaS products specifically.<br><br>Ex. K does not ███████ ██████████████████████ ████████████████ ██████ Ex. K told investors "we expect the revenue growth from our established product lines, as well as the maturation of our new products will offset the unfavorable mix impact." Similarly, Defendants falsely told investors, and the market believed them, that BaaS margins were only "currently" low due to start-up and upfront expenses, but would "get better over time" and "certainly could be" "as rich as our legacy products."<br><br>The cited statement misleadingly omits that Defendants touted an improving product mix towards more valuable accounts during the Class |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | Period, as Defendants' own exhibits show. |
|  | **Evidence**: |
|  | Ex. K (5/10/18 SEC Form 10-Q) at 28; |
|  | Ex. I (5/9/18 EC Tr.) at 7, 11, 23; |
|  | Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2; |
|  | Ex. 2 at -0799 (*See* PGD 18); |
|  | Ex. 4 at -4196 (*See* PGD 18); |
|  | Ex. 39 at -1009 (*See* PGD 3); |
|  | Ex. 28 at -6284 (*See* PGD 3); |
|  | Ex. 41 (*See* PGD 3); |
|  | Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); |
|  | Ex. H (2/27/18 SEC Form 10-K) at 33 (*See* PGD 20); and |
|  | Ex. I (5/9/18 EC Tr.) at 5 (*See* PGD 20). |
|  | **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 30. |

30. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 31. Omitted. | |
| 32. At the May 16, 2018 JP Morgan Conference, Mr. Shifke disclosed how Green Dot was "focusing on [its] direct deposit customer base," and that "[n]ow about 80% of [its] [volume] comes from direct deposit" and "[n]early 50% of our active customers are on direct deposit."<br><br>**Evidence**: Ex. M (5/16/18 JP Morgan Conf. Tr.) at 10. | 32. Undisputed that the quoted language appears in Ex. M, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The cited statement misleadingly omits that direct deposit was not "driving the engine to get the fees" like Defendants ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ also omits that Green Dot's "digital customers" did not "tend to be higher-revenue customers" like Defendants said, and its digital offerings were not "many times more profitable."<br><br>In asserting what the Company's focus was, the cited statement misleadingly omits that Green Dot's prepaid growth was declining and also omits that the focus of the statements on the call (and on the May 9, 2018 call) included prepaid cards.<br><br>**Evidence**: |

- 59 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. M (5/16/18 JP Morgan Conf. Tr.) at 10, 13-14; Ex. 29 (*See* PGD 2); Ex. 16 (*See* PGD 2); Ex. 35 at -1511 (*See* PGD 14); Ex. 37 at -0915 (*See* PGD 2); Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); and Ex. I (5/9/18 EC Tr.) at 4, 6, 12 (*See* PGD 27).<br><br>**Objections**: Incomplete; calls for a legal conclusion. *See* PEO 32. |

32. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 33. On Green Dot's May 9, 2018 Earnings Call for Q1 2018, Mr. Streit disclosed that Green Dot's newer digital banking services had "materially lower margins" than traditional high-fee prepaid cards, that "expanded margins on [Green Dot's] established product lines [were] being offset by the materially lower margins generated on [its] large-scale new product lines," and that the company had no "expectation that margins" on the new business lines | 33. Undisputed that the quoted language appears in Ex. I, but otherwise disputed. Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| would "ever be as rich as [the Company's] legacy products."<br><br>**Evidence**: Pl. Adm. No. 40 (citing Ex. I (5/9/18 EC. Tr.) at 4, 7, 23). | ▮▮▮▮▮▮▮▮▮▮<br><br>The cited statement misleadingly omits that Defendants touted an improving product mix towards more valuable accounts during the Class Period, as Defendants' own exhibits show.<br><br>The cited statement misleadingly omits the 15 pages of text in between the first portion of Defendants' quoted language on page 4 and the last portion of quoted language on page 23.<br><br>**Evidence**:<br>    Ex. I (5/9/18 EC Tr.) at 7, 11, 23;<br>    Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>    Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2;<br>    Ex. 2 at -0799 (*See* PGD 18);<br>    Ex. 4 at -4196 (*See* PGD 18);<br>    Ex. 39 at -1009 (*See* PGD 3);<br>    Ex. 28 at -6284 (*See* PGD 3);<br>    Ex. 41 (*See* PGD 3);<br>    Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); |

- 61 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. H (2/27/18 SEC Form 10-K) at 33 (*See* PGD 20); and Ex. I (5/9/18 EC Tr.) at 5 (*See* PGD 20). |
| | **Objections**: Incomplete; calls for a legal conclusion; best evidence; compound; misstates the evidence. *See* PEO No. 33. |

33. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 34. On July 10, 2018, market analyst Jefferies Group reported that Green Dot "is amid a fundamental shift in terms of its business model (*e.g.*, focus on BaaS)." **Evidence**: Pl. Adm. No. 65 (citing Ex. N (7/10/18 Jefferies Group LLC Analyst Report) at 3). | 34. Undisputed that the quoted language appears in Ex. N, but otherwise disputed. Disputed because: Whether truth was on the market is an ultimate fact for the jury. Whether truth was on the market is subject to expert testimony. The cited statement misleadingly omits that the report states that the "[f]undamental . . . inflection" was because "GDOT is uniquely poised to |

- 62 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | benefit from scarcity value in the prepaid/underbanked space."<br><br>The cited statement misleadingly omits the report's statement that BaaS had "correspondingly high incremental margins" and "margin potential," when BaaS margins were permanently low, projected to be flat, degrading, and ultimately revealed to be not just low but free.<br><br>**Evidence**:<br>    Ex. N (7/10/18 Jefferies Group LLC Analyst Report) at 1, 3;<br>    Ex. 2 at -0799 (*See* PGD 18);<br>    Ex. 4 at -4196 (*See* PGD 18);<br>    Ex. 39 at -1009 (*See* PGD 3);<br>    Ex. 28 at -6284 (*See* PGD 3);<br>    Ex. 41 (*See* PGD 3); and<br>    Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 34. |

34. Defendants' Response:

As set forth in Response Nos. 1 and 2 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 35. On Green Dot's August 8, 2018 Earnings Call for Q2 2018, Mr. Streit disclosed that Green Dot gained "an additional 700,000 more active accounts, in which approximately 500,000 were new direct deposit accounts."<br><br>**Evidence**: Pl. Adm. No. 76 (citing Ex. O (8/8/18 EC Tr.) at 5). | 35. Undisputed that the quoted language appears in Ex. O, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The cited statement misleadingly omits that ███████████████████████████████████████████████████████████████████████████████████████████<br><br>Investors did not know the composition of active accounts during the Class Period, as Defendants' Ex. G shows.<br><br>The cited statement misleadingly omits that Ex. O emphasizes the purported growth of Green Dot's prepaid cards, which was actually declining. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Evidence**: Ex. 30 at -2731 (*See* PGD 12); Ex. 31 (*See* PGD 12); Ex. 5 at -6280 (*See* PGD 12); Ex. 34 at -3868 (*See* PGD 12); Ex. 39 at -1009 (*See* PGD 3); Ex. 28 at -6284 (*See* PGD 3); Ex. 41 (*See* PGD 3); Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); Ex. H (2/27/18 SEC Form 10-K) at 34 (*See* PGD 12); Ex. 22 at 2 (*See* PGD 12); Ex. 12 at -6971 (*See* PGD 12); Ex. G (2/21/18 EC Tr.) at 16 (*See* PGD 12); Ex. 27 at -9021 (*See* PGD 12); <br><br> Ex. 38 at -1789 (*See* PGD 12); Ex. 66 (11/7/19 Sun Trust Analyst Report) (*See* PGD 12); Ex. 59 (3/7/19 Deutsche Bank Analyst Report) at 1 (*See* PGD 12); Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 (*See* PGD 12); Ex. O (8/8/18 EC Tr.) at 4 ("material growth being driven for both our established product lines"); Id. at 5 ("On the product side of our shop, Green Dot continues to gain traction. First, Green Dot's long-term retail distribution partners continue to increase their support for our products . . . ."); Id. at 11 ("[O]ur established product lines . . . are just really doing well. So we're *See*ing growth from both. . |

- 65 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | . . [W]here did the revenue growth come from? It's pretty much split along the middle, half from our established product lines . . . . So everything's growing in relative lockstep."); and Ex. 24; Ex. 25 (Shifke and Streit's Walmart Channel Daily Sales Report showing that prepaid sales at the Company's most important retailer were down -3% year-to-date, with their second biggest card down a staggering -19%.). **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 35. |
| 35. Defendants' Response:<br><br>As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 36. On Green Dot's August 8, 2018 Earnings Call for Q2 2018, Mr. Shifke disclosed that Green Dot's "portfolio mix [was] mov[ing] more towards direct deposit customers as a percentage of total and away from one-and-dones." | 36. Undisputed that the quoted language appears in Ex. O, but otherwise disputed.<br><br>Disputed because: |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| **Evidence**: Pl. Adm. No. 75 (citing Ex. O (8/8/18 EC Tr.) at 12). | Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. |
| | Whether this is a "disclosure" of material facts is subject to expert testimony. |
| | The cited statement misleadingly omits that Ex. O emphasizes the purported growth of Green Dot's prepaid cards, which was actually declining. |
| | The cited statement misleadingly omits that ▮▮▮▮▮▮▮▮▮▮ |
| | Green Dot's true portfolio mix was not moving toward higher-value accounts, but rather, toward lower-value BaaS and free direct deposit accounts. |
| | **Evidence**:<br>Ex. O (8/8/18 EC Tr.) at 4-5, 11 (*See* PGD 35);<br>Ex. 24; Ex. 25 (*See* PGD 35);<br>Ex. 29 (*See* PGD 2);<br>Ex. 16 (*See* PGD 2);<br>Ex. 37 at -0915 (*See* PGD 2);<br>Ex. 35 at -1511 (*See* PGD 14);<br>Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1);<br>Ex. 30 at -2731 (*See* PGD 12);<br>Ex. 31 (*See* PGD 12);<br>Ex. 5 at -6280 (*See* PGD 12); |

- 67 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | Ex. 34 at -3868 (*See* PGD 12); Ex. 39 at -1009 (*See* PGD 3); Ex. 28 at -6284 (*See* PGD 3); Ex. 41 (*See* PGD 3); and Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1). **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 36. |

36. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 37. In Green Dot's Form 10-Q for Q2 2018 filed August 9, 2018, Green Dot disclosed that "[t]he increase in the number of active accounts of 14% was primarily driven by the launch of new products during the first quarter of 2018 and growth from our existing account programs." It further disclosed that "operating margins for new products and services may not be as high as the margins we have experienced in the past." | 37. Undisputed that the quoted language appears in Ex. P, but otherwise disputed. Disputed because: Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. |

- 68 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| **Evidence**: Pl. Adm. No. 74 (citing Ex. P (8/9/18 SEC Form 10-Q) at 30); Ex. P (8/9/18 SEC Form 10-Q) at 44. | Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The cited language does not disclose the prepaid card declines or resulting worsening mix shift, but instead touts "growth from our existing account programs."<br><br>█████████████ It also omits that the "vast majority" of new BaaS and direct deposit accounts were free.<br><br>The "new products" referenced are not identified as BaaS. The same paragraph describes the new products as prepaid card accounts, demand deposit or checking accounts, and credit card accounts.<br><br>The second portion of quoted language appears in a risk factor that reads in its entirety: "Moreover, new products and services may not be profitable, and even if they are profitable, operating margins for new products and services may not be as high as the margins we have experienced in the past." Read in its entirety, the statement is clearly meant as a disclosure of potential risk, and not as a description of present fact. |

- 69 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Evidence**: <br> Ex. P (8/9/18 SEC Form 10-Q) at 30, 44; <br> Ex. 30 at -1009 (*See* PGD 3); <br> Ex. 28 at -6284 (*See* PGD 3); <br> Ex. 41 (*See* PGD 3); <br> Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); and <br> Ex. 24; Ex. 25 (*See* PGD 35). <br><br> **Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 37. |

37. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 38. On Green Dot's November 7, 2018 Earnings Call for Q3 2018, Mr. Streit disclosed that Green Dot's "the number of active accounts receiving direct deposit grew by 13% year-over-year." <br><br> **Evidence**: Pl. Adm. No. 99 (citing Ex. Q (11/7/18 EC Tr.) at 6). | 38. Undisputed that the quoted language appears in Ex. Q, but otherwise disputed. <br><br> Disputed because: <br><br> Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. |

- 70 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The statement omits ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that the "vast majority" of direct deposit accounts were free, and the exhibit cited instead touts "legacy products and established business lines," which it said "continue to grow" when they were declining.<br><br>**Evidence**:<br>   Ex. Q (11/7/18 EC Tr.) at 12;<br>   Ex. 24; Ex. 25 (*See* PGD 35);<br>   Ex. 29 (*See* PGD 2);<br>   Ex. 31 at -4474; Ex. 34 at -3868 (*See* PGD 12); and<br>   Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 38. |

38. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

- 71 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 39. On Green Dot's November 7, 2018 Earnings Call for Q3 2018, Mr. Streit disclosed that Green Dot's "a 2-year growth rate of 33% in actives and 114% in direct deposit actives" year-over-year.<br><br>**Evidence**: Pl. Adm. No. 100 (citing Ex. Q (11/7/18 EC Tr.) at 6). | 39. Undisputed that the quoted language appears in Ex. Q, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>The statement omits ███████ ███████████████████ ███████████████████ ████████████████ and that Green Dot's undisclosed mix shift was worsening, not improving.<br><br>The cited exhibit misleads by emphasizing growth in "legacy products and established business lines," which were actually in decline, and touting active account growth while concealing negative product mix.<br><br>**Evidence**:<br>  Ex. Q (11/7/18 EC Tr.) at 12;<br>  Ex. 24; Ex. 25 (*See* PGD 35);<br>  Ex. 29 (*See* PGD 2);<br>  Ex. 31 (*See* PGD 12);<br>  Ex. 34 at -3868 (*See* PGD 12);<br>  Ex. 39 at -1009 (*See* PGD 3);<br>  Ex. 41 (*See* PGD 3);<br>  Ex. 38 at -1789 (*See* PGD 12); and |

- 72 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 39. |
| 39. Defendants' Response:<br><br>As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 40. During Green Dot's November 7, 2018 Earnings Call for Q3 2018, Robert Napoli, representing market analyst William Blair & Co., stated that Green Dot's "business is changing so rapidly."<br><br>**Evidence**: Pl. Adm. No. 102 (citing | 40. Undisputed that the quoted language appears in Ex. Q, but otherwise disputed.<br><br>Disputed because:<br><br>Whether truth was on the market is an ultimate fact for the jury.<br><br>Whether truth was on the market is subject to expert testimony.<br><br>The analyst's generic observation does not identify what aspect of the business was changing and cannot reasonably be construed as showing Green Dot disclosed its worsening product mix shift. In fact, this analyst believed incorrectly, as stated in his |

- 73 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | November 7, 2018 report, that "Green Dot continues to benefit from an *improving* customer mix" when it was worsening.

On the same earnings call, Defendants emphasized growth in "legacy products and established business lines," which were in fact declining – undermining the notion that the worsening mix shift was disclosed.

The market ultimately expressed shock, when Green Dot's true negative product mix shift was revealed.

**Evidence**:
   Ex. Q (11/7/18 EC Tr.) at 11-12; Ex. 24; Ex. 25 (*See* PGD 35); Ex. S (11/7/18 William Blair & Co. Analyst Report) at 1 ("Green Dot continues to benefit from an improving customer mix"); Ex. 34 at -3868 (*See* PGD 12); Ex. 66 (11/7/19 Sun Trust Analyst Report) (*See* PGD 12); Ex. 59 (3/7/19 Deutsche Bank Analyst Report) at 1(*See* PGD 12); Ex. 63 (5/9/19 Northland Capital Markets Analyst Report) at 1 (describing the shift away from prepaid cards as a "surprising shift in the company's strategy" and noting that "the economics of new BaaS customers vs legacy . . . has not been clear for a while"); and |

- 74 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. 65 (6/4/19 Northland Capital Markets Analyst Report) at 1 (*See* PGD 12).<br><br>**Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 40. |

40. Defendants' Response:

As set forth in Response Nos. 1 and 2 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 41. On November 7, 2018, market analyst Deutsche Bank reported that as Green Dot's "[c]ard attrition pick[ed] up[,] [a]ctive card growth moderated to 3% Y/Y in 3Q18, which the [C]ompany blamed on difficult comps in September and reiterated mid-single-digit growth for 4Q18 and going forward. However, we would highlight that net active cards declined 430K from 2Q to 3Q, which the [C]ompany attributed to normal seasonality and highlighted 250K direct deposit additions in the quarter." **Evidence**: Pl. Adm. No. 109 (citing Ex. R (11/7/18 Deutsche Bank Analyst Report) at 1). | 41. Undisputed that the quoted language appears in Ex. R, but otherwise disputed.<br><br>Disputed because:<br><br>Whether truth was on the market is an ultimate fact for the jury.<br><br>Whether truth was on the market is subject to expert testimony.<br><br>This statement does not concern prepaid cards. The analyst's statement identifies declining active card growth attributed to "normal seasonality," not prepaid declines, as affirmed by William Blair, who reported that card |

- 75 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | declines were "***driven by seasonality in the tax business***." |
| | The report says active cards were growing 3%, when in truth, prepaid cards were then declining by 130,000 units. |
| | The Company said on the November 7, 2018 earnings call that "our own legacy products and established business lines . . . are doing very well and continue to grow," when in truth they were declining by 130, 000 units. Hence, analyst Jefferies noted: "solid core business fundamentals" and "growth from the prepaid." |
| | **Evidence**: Ex. R (11/7/18 Deutsche Bank Analyst Report) at 1; Ex. 52 (11/7/18 William Blair & Co. Analyst Report) at 1; Ex. 53 (11/8/18 Jefferies Analyst Report); Ex. 26 (Shifke was told a month before the November 2019 earnings call about a $300M or 130,000 unit "Decrease [in] Legacy Products"); and Ex. 13; Ex. 17 (Streit told in October 2018 that Green Dot had negative retail growth every quarter since 1Q18). |
| | **Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 41. |

- 76 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 41. Defendants' Response:<br><br>As set forth in Response Nos. 1 and 2 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 42. On Green Dot's November 7, 2018 Earnings Call for Q3 2018, Mr. Streit disclosed that Green Dot's BaaS programs "contribute at a lower margin than [the Company's] established programs."<br><br>**Evidence**: Ex. Q (11/7/18 EC Tr.) at 17. | 42. Undisputed that the quoted language appears in Ex. Q, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>On the same earnings call, Defendants touted "improving margin flow-through on some of our new BaaS programs" and "margin expansion" from BaaS.<br><br>The statements omit that BaaS margins were permanently lower or negative, and that they were "not sustainable" and "very thin" margins on Green Dot's two biggest BaaS programs (Intuit and Uber). It also omits that the "vast majority" of new |

- 77 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | BaaS and direct deposit accounts were free. |
| | Defendants told the market (and the market believed) that BaaS margins were only "currently" low due to start-up and upfront expenses but would "get better over time," saying they "***certainly could be*" "*as rich as our legacy products***." |
| | **Evidence**: |
| | Ex. I (5/9/18 EC Tr.) at 7, 11, 23; |
| | Ex. K (5/10/18 SEC Form 10-Q) at 28; |
| | Ex. Q (11/7/18 EC Tr.) at 17; |
| | Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2; |
| | Ex. 2 at -0799 (*See* PGD 18); |
| | Ex. 4 at -4196 (*See* PGD 18); |
| | Ex. 39 at -1009 (*See* PGD 3); |
| | Ex. 28 at -6284 (*See* PGD 3); |
| | Ex. 41 (*See* PGD 3); and |
| | Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1). |
| | **Objections**: Incomplete; calls for a legal conclusion. *See* PEO 42. |

42. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 43. On November 7, 2018, market analyst William Blair & Co. reported to investors that Green Dot's "margins on the BaaS business are below the corporate average currently due to heavy investment" and that "[m]anagement's commentary suggests newer initiatives initially have lower margins but ramp up as customer usage grows." **Evidence**: Pl. Adm. No. 103 (citing Ex. S (11/7/18 William Blair & Co. Analyst Report) at 1-2). | 43. Undisputed that the quoted language appears in Ex. S, but otherwise disputed. Disputed because: Whether truth was on the market is an ultimate fact for the jury. Whether truth was on the market is subject to expert testimony. On the November 7, 2018 earnings call, Defendants touted "improving margin flow-through on some of our new BaaS programs" and "margin expansion" from BaaS. The full statement states that BaaS was creating "incremental annual revenues" from BaaS that was creating an "improving customer mix," when BaaS was not incremental and was creating a worsening customer mix. Although the statement repeats Defendants' untrue statements that BaaS margins were only "currently" low due to start-up and upfront expenses but would "get better over time" – and "certainly could be" "as rich as our legacy products" |

- 79 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | ████████████████ ████████████████ ████████████████ ████████████████ and that the "vast majority" of new BaaS and direct deposit accounts were free.<br><br>**Evidence**:<br>Ex. S (11/7/18 William Blair & Co. Analyst Report) at 1;<br>Ex. I (5/9/18 EC Tr.) at 7, 11, 23;<br>Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>Ex. Q (11/7/18 EC Tr.) at 17;<br>Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2;<br>Ex. 34 at -3868 (*See* PGD 12);<br>Ex. 2 at -0799 (*See* PGD 18);<br>Ex. 4 at -4196 (*See* PGD 18);<br>Ex. 39 at -1009 (*See* PGD 3);<br>Ex. 28 at -6284 (*See* PGD 3);<br>Ex. 41 (*See* PGD 3); and<br>Ex. 46 (8/7/19 EC Tr.)at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 43. |

43. Defendants' Response:

As set forth in Response Nos. 1 and 2 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 44. In Green Dot's Form 10-Q for Q3 2018 filed November 8, 2018, Green disclosed that their "operating margins for new products and services may not be as high as the margins [the Company] ha[d] experienced in the past." <br><br> **Evidence**: Ex. T (11/8/18 SEC Form 10-Q) at 46). | 44. Undisputed that the quoted language appears in Ex. T, but otherwise disputed. <br><br> Disputed because: <br><br> Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. <br><br> Whether this is a "disclosure" of material facts is subject to expert testimony. <br><br> The cited statement misleadingly omits that on the November 7, 2018 earnings call, Defendants touted "improving margin flow-through on some of our new BaaS programs" and "margin expansion" from BaaS. <br><br> The statement says only that the margins for unspecified new products (not necessarily BaaS) "may not be as high" as prior margins.  |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Defendants told the market (and the market believed) that BaaS margins were only "currently" low due to start-up and upfront expenses but would "get better over time," saying they "***certainly could be as rich as our legacy products***" when they were structurally low due to revenue share programs.<br><br>The quoted language appears in a risk factor that reads in its entirety: "Moreover, new products and services may not be profitable, and even if they are profitable, operating margins for new products and services may not be as high as the margins we have experienced in the past." Read in its entirety, the statement is clearly meant as a disclosure of potential risk, and not as a description of present fact.<br><br>**Evidence**:<br>Ex. I (5/9/18 EC Tr.) at 7, 11, 23;<br>Ex. K (5/10/18 SEC Form 10-Q) at 28;<br>Ex. Q (11/7/18 EC Tr.) at 17;<br>Ex. L (5/10/18 Morgan Stanley Analyst Report) at 1-2;<br>Ex. T (11/8/18 SEC Form 10- Q) at 46;<br>Ex. 2 at -0799 (*See* PGD 18);<br>Ex. 4 at -4196 (*See* PGD 18);<br>Ex. 39 at -1009 (*See* PGD 3);<br>Ex. 28 at -6284 (*See* PGD 3);<br>Ex. 41 (*See* PGD 3); and<br>Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1). |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | **Objections**: Incomplete; calls for a legal conclusion. *See* PEO 44. |
| 44. Defendants' Response: As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 45. On Green Dot's February 20, 2019 Earnings Call for Q4 2018, Mr. Streit disclosed the "mix shift towards direct deposit." **Evidence**: Pl. Adm. No. 118 (citing Ex. U (2/20/19 EC Tr.) at 5). | 45. Undisputed that the quoted language appears in Ex. U, but otherwise disputed. Disputed because: Whether this is a "disclosure" of material facts is ultimately a fact question for the jury. Whether this is a "disclosure" of material facts is subject to expert testimony. Green Dot's actual mix shift was worsening and not "clearly better for profitability and growth," as Green Dot was losing its lucrative prepaid cards and replacing them with free BaaS and direct deposit accounts (not retail direct deposit but from BaaS cards like Uber). |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Defendants told investors on the call that their prepaid cards business "has been growing nicely – very nicely, in fact," when it was declining.<br><br>Defendants said they were "improving margins flow through across the business . . . from our base of direct deposit active accounts," when the "vast majority" of these direct deposit accounts were later disclosed to be free, worsening margins.<br><br>**Evidence**:<br>Ex. U (2/20/19 EC Tr.) at 5, 10, 23; Ex. 34 at -3868 (*See* PGD 12); Ex. 5 at -6280 (*See* PGD 12); Ex. 19 at -6625 (Dec. 21, 2018: "[n]o retailers reported growth in GPR vs prior year"); Ex. 10 (Streit's January 2019 chart showing Green Dot's retail cards down over 25% year-over-year); Ex. 21; Ex. 23 (February Walmart Channel – Daily Sales Report showing overall Walmart sales down 5% year-over-year); Ex. 29 (*See* PGD 2); Ex. 16 (*See* PGD 2); Ex. 35 at -1511 (*See* PGD 14); and Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 45. |

- 84 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 45. Defendants' Response:<br><br>As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above. | |
| 46. On Green Dot's February 20, 2019 Earnings Call for Q4 2018, Mr. Streit disclosed that "the number of active accounts receiving direct deposit grew by 10% year-over-year," despite total actives growing only "1% year-over-year."<br><br>**Evidence**: Ex. U (2/20/19 EC Tr.) at 5. | 46. Undisputed that the quoted language appears in Ex. U, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>Defendants said they were "improving margins . . . from our base of direct deposit active accounts," when the "vast majority" of these direct deposit accounts were later disclosed to be free, worsening margins.<br><br>The mix shift to BaaS and direct deposit was worse not "clearly better for profitability and growth" (as Green Dot said) because it was losing its lucrative prepaid cards and replacing |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | them with free BaaS and direct deposit accounts ██████████ ██████████ |
|  | Defendants also told investors on the earnings call that their prepaid cards business "has been growing nicely – very nicely, in fact," when it was declining. |
|  | **Evidence**: Ex. U (2/20/19 EC Tr.) at 10, 23; Ex. 34 at -3868 (*See* PGD 12); Ex. 5 at -6280 (*See* PGD 12); Ex. 19 at -6625 (*See* PGD 45); Ex. 29 (*See* PGD 2); Ex. 16 (*See* PGD 2); Ex. 35 at -1511 (*See* PGD 14); Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); Ex. 10 (*See* PGD 45); and Ex. 21; Ex. 23 (*See* PGD 45). |
|  | **Objections**: Incomplete; calls for a legal conclusion. *See* PEO 46. |

46. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | |
| 47. On February 20, 2019, market analyst Cowen & Co. reported to investors that Green Dot's "[a]ctive accounts growth was ~1%, a deceleration from 3Q18's ~3%, reflecting higher conversion of active accounts to direct deposit active accounts." **Evidence**: Pl. Adm. No. 121 (citing Ex. V (2/20/19 Cowen & Co. Analyst Report) at 1). | 47. Undisputed that the quoted language appears in Ex. V, but otherwise disputed. Disputed because: Whether truth was on the market is an ultimate fact for the jury. Whether truth was on the market is subject to expert testimony. The report says nothing about prepaid declines because Defendants also told investors on the February 20, 2019 earnings call that their prepaid cards business "has been growing nicely – very nicely, in fact," when it was declining. Defendants said on the February 20, 2019 earnings call that they were "***improving margins . . . from our base of direct deposit active accounts***," when the "vast majority" of these direct deposit accounts were later disclosed to be free, thus worsening margins. The mix shift to BaaS and direct deposit was worse not "clearly better for profitability and growth" (as Green Dot said on the February 20, 2019 earnings call) because it was losing its lucrative prepaid cards and replacing them with free BaaS and direct deposit accounts ████████ |

- 87 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
|  | **Evidence**:<br>Ex. U (2/20/19 EC Tr.) at 10, 23;<br>Ex. 34 at -3868 (*See* PGD 12);<br>Ex. 5 at -6280 (*See* PGD 12);<br>Ex. 19 at -6625 (*See* PGD 45);<br>Ex. 29 (*See* PGD 2);<br>Ex. 16 (*See* PGD 2);<br>Ex. 35 at -1511 (*See* PGD 14);<br>Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1);<br>Ex. 10 (*See* PGD 45); and<br>Ex. 21; Ex. 23 (*See* PGD 45).<br><br>**Objections**: Incomplete; best evidence; misstates the evidence. *See* PEO 47. |

47. Defendants' Response:

   As set forth in Response Nos. 1 and 2 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| | |
|---|---|
| 48. On Green Dot's May 8, 2019 Earnings Call for Q1 2019, Mr. Streit disclosed that the "new product lines, | 48. Undisputed that the quoted language appears in Ex. X, but otherwise disputed. |

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| primarily consisting of BaaS programs, contributed over 420,000 new active accounts" year-over-year.<br><br>**Evidence**: Pl. Adm. No. 137 (citing Ex. X (5/8/19 EC Tr.) at 5). | Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>Defendants said they were "improving margins . . . from our base of direct deposit active accounts," when the "vast majority" of these direct deposit accounts were later disclosed to be free and were worsening margins.<br><br>The mix shift to BaaS and direct deposit was worse not "clearly better for profitability and growth" (as Green Dot said) because it was losing its lucrative prepaid cards and replacing them with free BaaS and direct deposit accounts (not retail direct deposit but from BaaS cards like Uber).<br><br>Defendants also told investors on the earnings call that their prepaid cards business "has been growing nicely – very nicely, in fact," when it was declining.<br><br>**Evidence:**<br>Ex. U (2/20/19 EC Tr.) at 10, 23; Ex. 34 at -3868 (*See* PGD 12); Ex. 5 at -6280 (*See* PGD 12); |

- 89 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| | Ex. 19 at -6625 (*See* PGD 45); Ex. 29 (*See* PGD 2); Ex. 16 (*See* PGD 2); Ex. 35 at -1511 (*See* PGD 14); Ex. 46 (8/7/19 EC Tr.) at 14 (*See* PGD 1); Ex. 10 (*See* PGD 45); and Ex. 21; Ex. 23 (*See* PGD 45).<br><br>**Objections**: Incomplete; calls for a legal conclusion; best evidence; misstates the evidence. *See* PEO 48. |

48. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 49. In Green Dot's Form 8-K filed November 7, 2019, Green Dot included a section entitled "Key Metrics" that included a chart containing the company's "key business metrics for each of the last seven calendar quarters." One of the key metrics was the "number of active accounts at quarter end." The chart shows that the number of active accounts declined in each of the seven quarters except one: | 49. Undisputed that the first two columns of information (Quarter Ended and Active Accounts) appear in Ex. AA, but otherwise disputed.<br><br>The "% Change Y/Y" column is found nowhere in the evidence cited.<br><br>**Objections**: Incomplete; misstates the evidence, best evidence; improper lay witness or expert opinion; irrelevant (the statements fall on the last day of the Class Period and do not cure any misstatement alleged in ¶¶38-61 of the Amended Complaint, |

- 90 -

| DEFENDANTS' UNCONTROVERTED FACTS | | | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|---|---|
| Quarter Ended | Active Accounts | % Change Y/Y | except to operate as the final corrective disclosure in the Class Period). *See* PEO 49. |
| Q1 2018 | 6.01 M | +19% | |
| Q2 2018 | 5.86 M | +14% | |
| Q3 2018 | 5.43 M | +4% | |
| Q4 2018 | 5.34 M | +1% | |
| Q1 2019 | 6.05 M | +1% | |
| Q2 2019 | 5.66 M | -1% | |
| Q3 2019 | 5.18 M | -5% | |

**Evidence**: Ex. AA (11/7/19 SEC Form 8-K) at 6.

49. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

With respect to the objection that "The "% Change Y/Y" column is found nowhere in the evidence," defendants derived the percentages by mathematical calculation. In addition, the calculations are set forth in various SEC filings issued by Defendants. *See*, *e.g*., Ex. K (May 10, 2018 10-Q) at 29; Ex. P (Aug. 9, 2018 10-Q) at 30; Ex. T (Nov. 8, 2018 10-Q) at 31.

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
|---|---|
| 50. In every quarterly and annual report filed with the SEC during the relevant period, Green Dot disclosed a chart reflecting its "Consolidated Statement of Operations." The first line of that chart, under the heading "Operating Revenues," was "Card Revenues and Other Fees." The associated revenue numbers for each quarter are as follows: | 50. Undisputed that most of the first two columns of information (Quarter Ended and Card Revenue and Other Fees) appear in various locations in Exs. W, Y-Z, and AA, but otherwise disputed.<br><br>Disputed because:<br><br>Whether this is a "disclosure" of material facts is ultimately a fact question for the jury.<br><br>Whether this is a "disclosure" of material facts is subject to expert testimony.<br><br>Defendants made numerous misleading Class Period statements either denying or minimizing the information contained herein, including misleading investors by calling margin compression temporary. The statement also misleadingly omits that Defendants touted an improving product mix towards more valuable accounts during the Class Period, as Defendants' own exhibits show.<br><br>The "% Change Y/Y" column is found nowhere in the evidence cited. Further, the Q4 2018 card revenue number is found nowhere in the evidence cited. |

| Quarter Ended | Card Revenue and Other Fees | % Change Y/Y |
|---|---|---|
| Q1 2018 | 130,060 | + 29% |
| Q2 2018 | 120,783 | + 13% |
| Q3 2018 | 113,474 | + 13% |
| Q4 2018 | 118,564 | + 13% |
| Q1 2019 | 129,577 | -0.4% |
| Q2 2019 | 121,613 | + 0.7% |
| Q3 2019 | 102,231 | -10% |

**Evidence**: Ex. W (2/26/19 SEC Form 10-K) at 31; Ex. Y (5/9/19 SEC Form 10-Q) at 2; Ex. Z (8/9/19 SEC Form 10-Q) at 2; Ex. AA (11/7/19 SEC Form 8-K) at 12.

- 92 -

| DEFENDANTS' UNCONTROVERTED FACTS | PLAINTIFFS' STATEMENT OF GENUINE DISPUTES |
| --- | --- |
| | **Evidence:**<br>Ex. H (2/27/18 SEC Form 10-K) at 33 (*See* PGD 20); and<br>Ex. I (5/9/18 EC Tr.) at 5 (*See* PGD 20).<br><br>**Objections**: Incomplete; calls for a legal conclusion; misstates the evidence; best evidence; improper lay witness or expert opinion; irrelevant (nearly half of the information contained in Defendants' alleged fact was released on the last day of the Class Period and cannot cure any misstatement alleged in ¶¶38-61 of the Amended Complaint, except to operate as the final corrective disclosure in the Class Period). *See* PEO 50. |

50. Defendants' Response:

As set forth in Response No. 1 above, Plaintiffs rely, impermissibly, on legal arguments to dispute this PSGD. Neither the evidence cited by Plaintiffs nor the information Plaintiffs contend was omitted rebuts that the referenced disclosure was made. Plaintiffs' objections to Defendants' evidence lack merit for the reasons set forth in Response No. 3 above.

With respect to the objection that "The "% Change Y/Y" column is found nowhere in the evidence," defendants derived the percentages by mathematical calculation. In addition, the calculations are set forth in various SEC filings issued by Defendants. *See*, *e.g.*, Ex. K (May 10, 2018 10-Q) at 29; Ex. P (Aug. 9, 2018 10-Q) at 30; Ex. T (Nov. 8, 2018 10-Q) at 35; Ex. Y (May 9, 2019 10-Q) at 30; Ex. Z (August 9, 2019 10-Q) at 33.

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

## DEFENDANTS RESPONSES TO
## PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 51. On May 8, 2018, defendants Streit and Shifke received a report showing that Green Dot's prepaid cards at Walmart had zero growth (0%) year-over-year, and that the "Everyday Visa" card was down 10% year-over-year.<br><br>**Evidence:**<br>Ex. 40 at -9784-85; Ex. 42. | 51. Undisputed that Exs. 40 and 42 state this information. |
| 52. On May 9, 2018, Defendants told investors that the "Walmart MoneyCards and Green Dot classic Visa[,] . . . continue[] to do extremely well," were experiencing "continued strong momentum," and that "the branded side of our shop, [*i.e.*, prepaid] continues to gain traction on nearly all fronts."<br><br>**Evidence:**<br>Ex. I (5/9/18 EC Tr.) at 5, 8-10. | 52. Undisputed that Ex. I includes the quoted language. Disputed that the reference to "continued strong momentum" refers to "Walmart MoneyCards and Green Dot classic Visa" as implied by this fact.<br><br>Evidence: Ex. I at 10. |
| 53. Defendants told investors on August 7, 2019 that "the vast majority of our customers are free today because you have fee waivers for direct deposits."<br><br>**Evidence:**<br>Ex. 46 (8/7/19 EC Tr.) at 14. | 53. Undisputed that Ex. 46 includes the quoted language. |
| 54. On May 9, 2019, defendants Shifke and Streit received an email stating █████ ███████ | 54. Undisputed that Ex. 41 includes the quoted language. |

- 94 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| **Evidence:** Ex. 41 at -4474. | |
| 55. On May 8, 2019, Defendants stated that the decline in "legacy nondirect deposit customers" and "nonreloading one-and-done customers that are within that segment" was not "of itself a long-term strategic problem" and "didn't appear to impact results in a material way." <br><br>**Evidence:** Ex. X (5/8/19 EC Tr.) at 5. | 55. Undisputed that Ex. X includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately, and completely summarizes the sentences in Ex. X from which the quoted language is taken. <br><br>Evidence: Ex. X at 5. |
| 56. On May 9, 2019, the price of Green Dot stock declined over $16. <br><br>**Evidence:** ECF 174-3 at 88. | 56. Undisputed. |
| 57. On August 8, 2019, the price of Green Dot stock declined over $19. <br><br>**Evidence:** *Id.* at 89. | 57. Undisputed. |
| 58. On November 8, 2019, the price of Green Dot stock declined over $5. <br><br>**Evidence:** *Id.* at 91. | 58. Undisputed. |

- 95 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 59. As of February 21, 2018, Green Dot's core business was selling high-fee prepaid debit cards to lower-income Americans without a personal bank account.<br><br>**Evidence:**<br>Ex. 44 at -5832; Ex. H (2017 SEC Form 10-K) at 1. | 59. Disputed. Through its six revenue divisions and its subsidiary bank, Green Dot Bank, was then a provider of prepaid cards, debit cards, checking accounts, secured credit cards, payroll debit cards, consumer cash processing services, wage disbursements and tax refund processing services.<br><br>Evidence: Ex. H at 1. |
| 60. As of May 10, 2018, Green Dot's core business came from "prepaid financial services sold at our four largest retail distributors."<br><br>**Evidence:**<br>Ex. K (5/10/18 SEC Form 10-Q) at 41. | 60. Disputed. Ex. K indicates that as of May 10, 2018, most of Green Dot's operating revenues were derived from prepaid financial services sold at our its largest retail distributors.<br><br>Evidence: Ex. K at 41 (first full paragraph). |
| 61. On a February 21, 2018, earnings call, Streit told investors, "our bread and butter from the old days is still our bread and butter today."<br><br>**Evidence:**<br>Ex. G (2/21/18 EC Tr.) at 16. | 61. Undisputed that Ex. G includes the quoted language. |

- 96 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 62. On February 27, 2018, Green Dot filed their 2017 Form 10-K with the SEC, which said "most" of the Company's operating revenues "derived from prepaid financial services sold at our four largest retail distributors," including 40% of operating income from Walmart.<br><br>**Evidence:**<br>Ex. H (2017 SEC Form 10-K) at 12. | 62. Undisputed that Ex. H includes the quoted language. Disputed that Ex. H refers to "operating revenues" derived from Green Dot's four largest retail distributors. Ex. H refers to Green Dot's "operating income" from its four largest retail distributors.<br><br>Evidence: Ex. H at 12. |
| 63. On April 11, 2018, defendant Shifke said that "GPR sales are down across the board in Q1," that "GD retail [was] down 6%," and that the "[Walmart Money Card was] YoY expected to be DOWN, and that "D[irect] D[eposit] actives [were] coming from Uber and not retail."<br><br>**Evidence:**<br>Ex. 5 at -3280-81. | 63. Undisputed that Ex. 5 includes the quoted language. |
| 64. On April 9, 2018, Green Dot executives "[a]ssum[ed] a 1% miss on acquisition [*i.e.*, sales] for the rest of the year" in the prepaid "core business."<br><br>**Evidence:**<br>Ex. 6 at -3945. | 64. Undisputed that Ex. 6 includes the quoted language. |
| 65. Green Dot's Audit Committee noted on May 3, 2018 that the "accounts in our retail channel decline[d] YoY."<br><br>**Evidence:**<br>Ex. 1 at -0717. | 65. Undisputed that Ex. 1 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately, and completely summarizes the sentences in Ex. X |

- 97 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| | from which the quoted language is taken.<br><br>Evidence: Ex. 1 at 0717. |
| 66. Defendant Streit forwarded an August 8, 2018 SunTrust report and said "tomorrow should be a very strong day in the market for us."<br><br>**Evidence:**<br>Ex. 32 at -3289. | 66. Undisputed that Ex. 32 includes the quoted language. |
| 67. An August 8, 2018 SunTrust report noted Green Dot's "[s]trong growth across legacy."<br><br>**Evidence:**<br>Ex. 33 at 1. | 67. Undisputed that Ex. 33 includes the quoted language. |
| 68. On May 9, 2018, defendant Shifke received a document stating that the "decline in active accounts from our retail channel will not be discretely disclosed in our publically filed documents or prepared remarks."<br><br>**Evidence:**<br>Ex. 3; Ex. 36 at -4169. | 68. Undisputed that Ex. 36 includes the quoted language and that Ex. 36 was emailed to an Shifke on May 9, 2018. |
| 69. On May 16, 2018, Defendants told the market that "every one of our products is hitting it and is either at or above plan."<br><br>**Evidence:** | 69. Disputed. The statements in Ex. M were made by defendant Shifke not "defendants" and were not made to "the market," but rather at a JP Morgan Conference. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| Ex. M (5/16/18 JP Morgan Conference Tr.) at 11. | |
| 70. On May 9, 2018, Jefferies issued a report noting "momentum in [Green Dot's] core business." **Evidence:** Ex. 47 (5/9/18 Jefferies Report) at 1. | 70. Undisputed that Ex. 47 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. 47 from which the quotes are taken. The pertinent sentence in Ex. 47 states: "GDOT raised full year guidance on the back of strong Q1 results and momentum in the core business." Evidence: Ex. 47 at 1. |
| 71. On June 18, 2018, BTIG issued a report noting "growth in [Green Dot's] core prepaid debit card business." **Evidence:** Ex. 48 (6/18/18 BTIG Report) at 1. | 71. Undisputed that Ex. 48 contains the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. 48 from which the quotes are taken. Ex. 48 states: "GDOT's recent record of strong operational performance, highlighted by a return to organic growth in its core prepaid debit card business and the launch of a variety of new programs and partnerships, has enabled its stock price to double in less than a year." Evidence: Ex. 48 at 1. |
| 72. On the Company's August 8, 2018 earnings call, defendant Streit stated that Green Dot's "established product lines . . . are just really doing well . . . everything's | 72. Undisputed that Ex. O includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth |

- 99 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| growing in relative lockstep," and that "material growth [was] being driven for both our established product lines." <br><br> **Evidence:** <br> Ex. O (8/8/18 EC Tr.) at 3, 8. | the information in portions of Ex. O from which the quotes are taken. The pertinent sentences in Ex. O state: "But our established product lines, Bob, are just really doing well" and "We would note that this quarter's performance was entirely organic, with material growth being driven for both our established product lines and our new BaaS platform programs." <br><br> Evidence: Ex. O at 1. |
| 73. On the Company's August 8, 2018 earnings call, defendant Shifke stated that there was "more revenue per active on the direct deposit customers than . . . on your one-and-dones," and that "the larger portfolio of actives also continues to demonstrate healthy growth metrics and a more profitable average account." <br><br> **Evidence:** <br> *Id.* at 5, 9. | 73. Undisputed that Ex. O includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. O from which the quotes are taken. The pertinent sentences in Ex. O state as follows: <br><br> "As you see the portfolio mix move more towards direct deposit customers as a percentage of total and away from one-and-dones, by definition, you'll have more revenue per active on the direct deposit customers than you will on your one-and-dones;" and <br><br> "As Steve alluded to in his remarks, the larger portfolio of actives also continues to demonstrate healthy growth |

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| | metrics and a more profitable average account." <br><br> Evidence: Ex. O at 7. |
| 74. On August 8, 2018, defendants Streit and Shifke received a "Walmart Channel Daily Sales Report" and "Executive Sales Report" showing that prepaid card sales at Walmart were down -3% year-to-date, with sales of their Everyday Visa card down -19%. <br><br> **Evidence:** <br> Ex. 24 at -9141; Ex. 25 at -7220. | 74. Disputed. Ex. 24 is an email to defendant Shifke, not to defendant Streit. Ex. 25 is an email to defendant Streit, not Shifke. Ex. 25 shows the percentage change in year over year sales for a combination of multiple different products (e.g., MoneyCard, Everday Visa, GoBank, MoneyCard Affinity, and Other Green Dot products) at multiple different times from January 2018 through August 2018. As of March, April, May June and July 2018 the total year over year percentage change for sales of these products was an increase of 2%, 1% , 2%, 5%, and 2% respectively. Ex. 25 does not show a year to date decline in prepaid card sales at Walmart of -3%. <br><br> Evidence: Ex. 24 at -9141; Ex. 25 at -7220. |
| 75. On Green Dot's November 7, 2018 earnings call, defendant Streit told investor that Green Dot's prepaid business was "doing very well and continu[ing] to grow." <br><br> **Evidence:** <br> Ex. Q (11/7/18 EC Tr.) at 10. | 75. Undisputed that Ex. Q includes the quoted language. |

- 101 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 76. On November 8, 2018, Jefferies issued a report attributing Green Dot's "beat over Street [estimates to] solid core business fundamentals as well as balanced contributions from the banking-as-a-service (BaaS) . . . products."<br><br>**Evidence:**<br>Ex. 53 (11/8/18 Jefferies Report) at 1. | 76. Undisputed that Ex. 53 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. 53 from which the quotes is taken. The pertinent sentence in Ex. 53 states: "GDOT reported a ~2.9/37% Q3 revs/EPS beat over Street ests. driven by solid core business fundamentals as well as balanced contributions from the banking as-a-service (BaaS) &: RapldPay products.<br><br>Evidence: Ex. 53 at1. |
| 77. On January 3, 2019, BITG issued a report stating that "[w]e believe [Green Dot's] organic revenue growth will continue to be buoyed by its line of reloadable prepaid debit cards."<br><br>**Evidence:**<br>Ex. 54 (1/3/19 BTIG Report) at 1. | 77. Undisputed that Ex. 54 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. 54 from which the quotes are taken. The pertinent sentence in Ex. 54 states: "We believe GDOT's organic revenue growth will continue to be buoyed by its line of reloadable prepaid debit cards which we believe should be able to generate double-digit growth in active accounts and spending volume over at least the medium-term."<br><br>Evidence: Ex. 54 at 1. |

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 78. On October 13, 2018, defendant Shifke received the "Q3 2018 Key Metric Executive Summary" reporting a $300 million decrease in Green Dot's prepaid business from the prior quarter and a loss of 130,000 cards.<br><br>**Evidence:**<br>Ex. 26. | 78. Undisputed. |
| 79. On Green Dot's February 20, 2019 earnings call, defendant Streit stated that Green Dot's prepaid card business was still "growing nicely – very nicely, in fact" and that "the mix shift towards direct deposit . . . [was] clearly better for profitability and growth."<br><br>**Evidence:**<br>Ex. U (2/20/19 EC Tr.) at 3-4, 19. | 79. Undisputed that Ex. U includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. U from which the quotes are taken. The pertinent sentences in Ex. U state:<br><br>"So I think we're trying to illustrate, number one, that we've a lot bigger opportunity than folks may think if you are just thinking about cards. Although, that certainly a great opportunity and has been growing nicely -- very nicely, in fact. But that we also have all these other new products, and other opportunities and other target audiences that we can raise to the gifts of our BaaS partners." |

- 103 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| | "While the mix shift towards direct deposit and more engaged customers is clearly better for profitability and growth, the lower churn also means fewer accounts issued to short-term customers, which weighs down on unit sales and therefore the quarterly active account metric."<br><br>Evidence: Ex. U at 5. |
| 80. On February 20, 2019, SunTrust issued a report stating that "GPR economics carry the day," and noting "core GPR organic rev growth."<br><br>**Evidence:**<br>Ex. U at 1. | 80. Disputed. Exhibit U is an Equity Research report from BTIG and does not contain the language Plaintiffs quote.<br><br>Evidence: Ex. U. |
| 81. On February 20, 2019, Barclays issued a report stating that Green Dot's "top-line beat [was] driven by core operating metrics."<br><br>**Evidence:**<br>Ex. 55 (2/20/19 Barclays Report) at 1. | 81. Undisputed that Ex. 55 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. 55 from which the quotes are taken. The pertinent paragraph heading in Ex. 55 states: "Q4 top-line beat driven by core operating metrics."<br><br>Evidence: Ex. 55 at 1. |
| 82. On December 21, 2018, defendant Shifke received an email stating that "[n]o retailers reported growth in GPR [prepaid cards] vs prior year," prepaid sales "declined in 2018 at five of the eight | 82. Undisputed that Ex. 19 includes the quoted language. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| retail chains," that "Walmart GPR category sales in 2018 [were] down 7.7% YOY," and that "Green Dot and GoBank at Walmart [were] down 13% and 14% YOY." **Evidence:** Ex. 19 at -6625. | |
| 83. On February 7, 2019, defendant Streit received a report showing that Green Dot's funded activations (retail prepaid cards) were down 25.8% year over year. **Evidence:** Ex. 9 at -3120; Ex. 10. | 83. Disputed. The "funded activations" referred to in Ex. 9 and Ex. 10 do not constitute all "retail prepaid cards" as plaintiffs' fact implies. **Evidence:** Ex. 9 at -3120; Ex. 10 at -3124. |
| 84. On February 19, 2019, defendants Streit and Shifke received a sales report showing that Green Dot's Walmart sales were down -5% year-over-year. **Evidence:** Ex. 21 at -3304. | 84. Disputed. Ex. 21 is an email sent only to defendant Streit, not defendant Shifke. Further, page -3304 of Ex. 21, the page cited by plaintiffs, does not show a sales decline of 5% specifically pertaining to Walmart. Evidence: Ex. 21 at -3304. |
| 85. On May 8, 2019, Defendants acknowledged the decline in Green Dot's prepaid business by disclosing a loss of | 85. Undisputed. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 300,000 prepaid card accounts year-over-year.<br><br>**Evidence:**<br>Ex. X (5/8/19 EC Tr.) at 15. | |
| 86. Defendant Shifke stated in a May 8, 2019 email that "we believe the lower number of Legacy non-direct deposit actives that Steve [Streit] spoke about will have a negative revenue impact of around $8 million in the quarter."<br><br>**Evidence:**<br>Ex. 18. | 86. Undisputed that Ex. 18 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely, sets forth the information in portions of Ex. 18 from which the quotes are taken. The pertinent sentences in Ex. 18 state: "Our original expectation for Q2 when we first guided the year was for revenue to be approx $10 million higher than our current expectation. The reason is that we believe the lower number of Legacy non-direct deposit actives that Steve spoke about will have a negative revenue impact of around $8 million in the quarter . . ."<br><br>Evidence: Ex. 18. |
| 87. In an email on May 8, 2019, defendant Streit said "[May 9, 2019] will be a rough day. I expect the stock to be down 20% or more . . . because of the slow growth. . . . [T]he company's revenue growth appears to be coming to a halt[,] . . . we have a pretty serious problem on our hands."<br><br>**Evidence:**<br>Ex. 11 at -5644. | 87. Undisputed that Ex. 11 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. 11 from which the quotes are taken. The pertinent sentence in Ex. 11 states: "While I think we have a good plan to roll out the new cards and advance baas development in 2nd half, the |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
|  | company's revenue growth appears to be coming to a halt."<br><br>Evidence: Ex. 11 at -5644. |
| 88. On August 2, 2019, defendant Shifke sent defendant Streit a document expressing that "[i]f our strategy is successful, by Q1 2020 we should see a return to growth in actives that have longer retention and are more likely to be on direct deposit, and full year 2020 should represent."<br><br>**Evidence:**<br>Ex. 7; Ex. 8 at -0578. | 88. Undisputed that Ex. 8 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. 8 from which the quotes are taken. The pertinent sentence in Ex. 8 states: "[i]f our strategy is successful, by Q1 2020 we should see a return to growth in actives that have longer retention and are more likely to be on direct deposit, and full year 2020 should represent a healthy return to reaccelerated organic revenue growth."<br><br>Evidence: Ex. 8 at -0578 |
| 89. On August 8, 2019, defendant Shifke received an email noting the "YoY decline" from "retail and direct channels."<br><br>**Evidence:**<br>Ex. 14 at -5736. | 89. Undisputed that Ex. 14 includes the quoted language. |
| 90. At the May 16, 2018 JP Morgan Conference, defendant Shifke said that Green Dot's direct deposit accounts were "driving the engine to get the fees." | 90. Undisputed that Ex. M includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely, sets forth |

- 107 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| **Evidence:**<br>Ex. M (5/16/18 JP Morgan Conference Tr.) at 10. | the information in portions of Ex. M from which the quotes are taken. The pertinent sentences state: "Now about 80% of our GDV comes from direct deposit. Nearly 50% of our active customers are on direct deposit. And with that, GDV is growing phenomenally, and that's driving the engine to get the fees, ATMs, purchase volume, interest income."<br><br>Evidence: Ex. M at 10. |
| 91. At the May 16, 2018 JP Morgan Conference, defendant Streit said "digital customers tend to be higher-revenue customers," and that "[o]ur digital platform has really been taking off, and the customers who get it online through the app stores are many times more profitable than retail customers."<br><br>**Evidence:**<br>*Id.* at 13-14. | 91. Undisputed that Ex. M includes the quoted language. |
| 92. On May 9, 2018, defendant Streit stated that Green Dot's "legacy products . . . have higher revenue, and that "direct deposit customer[s] typically ha[ve] a meaningfully higher lifetime value."<br><br>**Evidence:**<br>Ex. I (5/9/18 EC Tr.) at 3, 21. | 92. Undisputed that Ex. I includes the quoted language. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 93. During the May 9, 2018 earnings call, defendant Shifke stated, "[a]ll told, in the quarter, we attracted more highly engaged customers than ever before with better unit economics, as evidenced by the record interchange and fee revenue," and that there was "incremental" growth in both prepaid "shelf facings" and in "mix shift."<br><br>**Evidence:**<br>*Id.* at 5, 8, 12. | 93. Undisputed that Ex. I includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. I from which the quotes are taken. Regarding "mix shift," the pertinent sentence in Ex. I states: "The continuing long-term portfolio mix shift towards higher lifetime value accounts helped push the Account Services gross dollar volume or GDV flowing through our various Account Services products up by 57% year-over-year to more than $11.7 billion, setting another new record for our company." Regarding "shelf facings," the pertinent sentence in Ex. I states: "Additionally, Green Dot has earned more than 5,000 new incremental shelf facings for its products and services at Safeway Albertson stores and other locations where Green Dot now occupies space formerly occupied by the now defunct American Express prepaid product line."<br><br>Evidence Ex. I at 5. 6. |
| 94. On August 7, 2019, defendant Streit stated that the decline in prepaid cards was "short to intermediate term in nature," and defendant Shifke said there would be a "return to growth in Q4 based on what we're seeing today." | 94. Undisputed that Ex. 46 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. 46 from which the quotes are taken. The |

- 109 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| **Evidence:**<br>Ex. 46 (8/7/19 EC Tr.) at 7, 15. | pertinent sentence in Ex. I states: "[a]s I noted at the beginning of this call, while we openly recognize the damage the free neo-bank segment has done to our legacy product line at this point in time, we do believe that the challenges we are currently experiencing are short to intermediate term in nature and that our strategic roadmap, starting with Unlimited will put us back on a healthy growth trajectory in 2020." |
| 95. Defendants mixed the BaaS, direct deposit, and prepaid cards together in the blended "active accounts" metric.<br><br>**Evidence:**<br>Ex. K (5/10/18 SEC Form 10-Q) at 29 | 95. Undisputed. |
| 96. On August 9, 2018, defendants Shifke and Streit received an email saying that "revenue per active on the BaaS programs is much less than our established product line by approx. $10/active" and that "the mix dragged down revenue per active."<br><br>**Evidence:**<br>Ex. 34 at -3868. | 96. Undisputed that Ex. 32 includes the quoted language. |
| 97. On August 1, 2018, defendant Shifke received an email stating that "Intuit unit economics are much lower than the rest of the GDOT portfolio." | 97. Undisputed that Ex. 30 includes the quoted language. |

- 110 -

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| **Evidence:** Ex. 30 at -2731. | |
| 98. On May 9, 2018, defendant Streit said that "margins on those programs [are] expected to expand over future periods as those programs scale"; that their BaaS margins were low due to "up front" costs but would "get better over time" with "margin expansion" and "certainly could be" "as rich as our legacy products."<br><br>**Evidence:** Ex. I (5/9/18 EC Tr.) at 3, 9, 15, 21; Ex. K (5/10/18 SEC Form 10-Q) at 28. | 98. Undisputed that Ex. I includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. I from which the quotes are taken. The pertinent sentences in Ex. I state:<br><br>"As we shared in our last call, we expected that the newer branded product lines and the large-scale Banking-as-a-Service program launches that were expected to contribute material revenue growth in the quarter would have a much lower contribution margin than our established product lines and that is exactly what happened, causing consolidated margins to compress somewhat year-over-year, with margins on those programs expected to expand over future periods as those programs scale."<br><br>"All that is a cost that happens now and the revenue doesn't play out until those tax refunds hit the card, people start spending money and that kind of thing, and so it tends to get better over time."<br><br>And I don't know that we have an expectation that margins, because of that revenue, will ever be as rich as our |

- 111 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| | legacy products, but they're all additive and they all do a good job. And over time, to the extent there are heavy deposits and heavy usage, they certainly could be.<br><br>Evidence: Exhibit I at 4, 11, 23. |
| 99. The Company's May 10, 2018 1Q 2018 SEC Form 10-Q stated that "[o]ur new product lines currently have margins below our established product lines."<br><br>**Evidence:**<br>Ex. K (5/10/18 SEC Form 10-Q) at 28. | 99. Undisputed that Ex. I includes the quoted language. |
| 100. During the Class Period ███████ ████████████████████<br><br>**Evidence:**<br>Ex. 2 at -0799; Ex. 28. | 100. Disputed. Ex. 2 is an email chain which includes a May 23, 2018 email from Caleb Wilshusen to Samir Salvi and Shane Reekstin in which Wilshusen asks "Why the margin degradation?" |
| 101. On May 9, 2019, defendant Streit stated that "under any scenario, the mix shift towards BaaS will compress 'margins,'" and that "margins on the actual deals we're signing *See*m . . . to be very thin or not sustainable for either us or the partner."<br><br>**Evidence:**<br>Ex. 4 at -4472. | 101. Disputed. This fact is not reflected in Ex. 4. |
| 102. In March 2018, defendant Shifke is included on email ████████ ████████████████ | 102. Undisputed that Exs. 4 and 43 include the quoted language. Disputed that this fact, as stated by |

- 112 -

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| ████████████████████ <br><br> **Evidence:** <br> Ex. 4 at -4196; Ex. 43 at -7116. | plaintiffs, accurately and completely sets forth the information in the portions of Exs. 4 and 46 from which the quotes are taken. The pertinent sentence in Exs. 4 and 46 states: "The Intuit program has lower margins for two reasons: 1) we pay them a 50% revenue share and some additional incentives and 2) the program just launched." |
| 103. On March 30, 2018, defendant Shifke drafted an email and attachment called ███████████████ ███████████████ ███████ <br><br> **Evidence:** <br> Ex. 20; Ex. 39 at -1009. | 103. Undisputed that Ex. 39 includes the quoted language. |
| 104. On February 21, 2019, Craig-Hallum reported that "[d]irect deposit drives higher usage = higher Fee revenue." <br><br> **Evidence:** <br> Ex. 57 (2/21/19 Craig-Hallum Report) at 1. | 104. Undisputed that Ex. 57 includes the quoted language. |
| 105. On February 21, 2019, Guggenheim reported that Green Dot's "direct deposit customers are creating more robust, durable revenue streams." | 105. Undisputed that Ex. 58 includes the quoted language. |

- 113 -

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| **Evidence:**<br>Ex. 58 (2/21/19 Guggenheim Report) at 1. | |
| 106. On July 25, 2018, William Blair reported that Green Dot had an "improving customer mix."<br><br>**Evidence:**<br>Ex. 49 (7/25/18 William Blair Report) at 1; Ex. W at 2. | 106. Undisputed that Ex. 49 includes the quoted language. |
| 107. On August 8, 2018, Deutsche Bank noted Green Dot's "mix shift towards higher priced product."<br><br>**Evidence:**<br>Ex. 50 (8/8/18 Deutsche Bank Report) at 2. | 107. Undisputed that Ex. 50 includes the quoted language. |
| 108. An August 1, 2018 email from Carlos Ballesteros to Jess Unruh noted that "BaaS revenue per active is . . . approximately $10, or 27%, lower per active than our Non-BaaS programs," and that "77% [of active accounts] came from BaaS."<br><br>**Evidence:**<br>Ex. 31. | 108. Undisputed that Ex. 31 includes the quoted language. Disputed that this fact,  as stated by plaintiffs, accurately and completely sets forth the information in portions of  Ex. 31 from which the quotes are taken. Ex. 31 states: "[o]f the 701K increase in Active Accounts, 541K or 77% came from Baas.<br><br>Evidence: Ex. 31. |
| 109. 90% of direct deposit growth during the Class Period came from BaaS accounts, the "vast majority" of which were free, as Defendants disclosed on August 7, 2019. | 109. Disputed that 90% of direct deposit growth during the Class Period came from BaaS accounts. Exs. 15, 16 29, and 46 do not show |

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| **Evidence:**<br>Ex. 29; Ex. 15; Ex. 16; Ex. 46 (8/7/19 EC Tr.) at 14. | such growth specifically within the class period.<br><br>Evidence: Ex. 15, Ex. 16; Ex. 29, and Ex. 46. |
| 110. On May 9, 2019, BTIG issued a report stating "[w]e are downgrading Green Dot Corporation (GDOT) to Neutral (from Buy) and removing our price target after the company yesterday following the market close released a 1Q19 report in which it slashed its FY19 earnings and adjusted EBITDA guidance. Management attributed the reductions in large part to $60mm in new marketing investments while offering 2Q19 revenue guidance well below the consensus estimate. GDOT shares plunged during extended trading, but given the abrupt and disconcerting shift in management's outlook, which created significant uncertainty, we would not be inclined to chase the stock even at the newly lower levels."<br><br>**Evidence:**<br>Ex. 61 (5/9/19 BTIG Report) at 1. | 110. Undisputed that Ex. 61 includes the quoted language. |
| 111. On May 9, 2019, Northland Capital issued a report stating "GDOT announced a surprising shift in the company's strategy for the BaaS market coinciding with the 1Q19 earnings announcement," and that "we believe this change in course is inherently riskier and creating a lot of uncertainty." | 111. Undisputed that Ex. 63 includes the quoted language. |

- 115 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| **Evidence:**<br>Ex. 63 (5/9/19 Northland Capital Report) at 1. | |
| 112. On June 4, 2019, Northland Capital Markets issued a report stating that analysts "had long wondered about the economics of the new BaaS accounts vs. the Legacy" and "had asked this question a couple of times but never got a straight answer."<br><br>**Evidence:**<br>Ex. 65 (6/4/19 Northland Capital Report) at 1. | 112. Undisputed that Ex. 65 includes the quoted language. |
| 113. On June 21-22, 2018, Green Dot senior executives discussed ███████ ███████████████████████ ████████████████████████<br><br>**Evidence:**<br>Ex. 37 at -0915. | 113. Undisputed that Ex. 37 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in the portions of Ex. 37 from which the quotes are taken.<br><br>Evidence: Ex. 37 at – 0195. |
| 114. On March 7, 2019, Deutsche Bank issued a report noting "limited visibility in [Green Dot's] model."<br><br>**Evidence:**<br>Ex. 59 (3/7/19 Deutsche Bank Report) at 1. | 114. Undisputed that Ex. 59 includes the quoted language. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND STATEMENT OF UNDISPUTED FACT

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 115. Defendant Shifke was told on August 3, 2018 that "BaaS products made up a substantial majority of the increase in actives YoY but carry a much lower revenue per active . . . because of MMFs [monthly maintenance fees] or the lack thereof."<br><br>**Evidence:**<br>Ex. 30 at -2731. | 115. Undisputed that Ex. 59 includes the quoted language. |
| 116. In March 2019, an analyst asked Green Dot for a breakdown of "active accounts" – by "true legacy" (*i.e.*, prepaid) versus BaaS, but defendant Shifke stated in a March 5, 2019 email that "[w]e don't disclose portfolio level info."<br><br>**Evidence:**<br>Ex. 38 at -1789. | 116. Undisputed that Ex. 38 includes the quoted language. Disputed that an analyst asked specifically for a breakdown of prepaid cards versus BaaS.<br><br>Evidence: Ex. 38 at 1789. |
| 117. On September 10, 2018, SunTrust issued a report noting that "[m]anagement has not disclosed how much of its revenue is derived from retail."<br><br>**Evidence:**<br>Ex. 51 (9/10/18 SunTrust Report) at 2-3. | 117. Undisputed that Ex. 51 includes the quoted language. |
| 118. On January 30, 2018, defendant Streit received ███████████ ████████████████████ ██████ | 118. Undisputed. |

- 117 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| **Evidence:** Ex. 28 at -6284. | |
| 119. An email on August 28, 2018 to defendant Shifke stated ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ **Evidence:** Ex. 35 at -1508. | 119. Undisputed that Ex. 35 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in the portions of Ex. 35 from which the quotes are taken. Ex. 35 states: "As shown in the analysis the Funds-out mix of DD customers is not as revenue rich as a non-DD customer." Evidence: Ex. 35 at -1508. |
| 120. An email from Paul Farina to defendant Shifke on June 27, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ **Evidence:** *Id.* at -1511. | 120. Disputed that the quoted language is in the email from Paul Farina to defendant Shifke on June 27, 2018 included in Ex. 35. Evidence: Ex. 35 at -1511 - 1512. |
| 121. On May 9, 2019, J.P. Morgan issued a report noting that "[m]gmt was previously dismissive of slowing active card growth." **Evidence:** Ex. 62 (5/9/19 J.P. Morgan Report) at 1. | 121. Undisputed that Ex. 62 includes the quoted language. |
| 122. On May 9, 2019, SunTrust issued a report noting Green Dot's "legacy | 122. Undisputed that Ex. 64 includes the quoted language. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND STATEMENT OF UNDISPUTED FACT

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| business erosion," and that despite Green Dot's "[c]ore business weakening, . . . this shouldn't matter much."<br><br>**Evidence:**<br>Ex. 64 (5/9/19 SunTrust Report) at 1. | |
| 123. On August 7, 2019, Defendants told the market that prepaid cards declined by 500,000 cards.<br><br>**Evidence:**<br>Ex. 46 (8/7/19 EC Tr.) at 3. | 123. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the pertinent information in Ex. 46. Ex. 46 states: "In Q2 on a year-over-year basis, we were down by around 500,000 active prepaid accounts, primarily from the loss of nonreloading customers and cash reloading customers, offset by an increase of around 240,000 BaaS active accounts."<br><br>Evidence: Ex. 46 at 3. |
| 124. On June 19, 2019, defendant Streit emailed defendant Shifke and other Green Dot executives, ████████ ██████████████████████ ████████████████<br><br>**Evidence:**<br>Ex. 45 at -8654. | 124. Undisputed that Ex. 45 includes the quoted language. |
| 125. On February 21, 2018, both Streit and Shifke received an email stating "we don't break out individual programs." | 125. Undisputed that Ex. 27 includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in the portions of |

- 119 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| Evidence:<br>Ex. 27 at -9022. | Ex. 27 from which the quotes are taken. The pertinent portion of Exs. 27 states: "If asked about 'excluding Rush and Intuit organic growth seems to be slowing materially' we don't break out individual programs - it's a portfolio growth number."<br>Ex. 27 at -9022. |
| 126. On an earnings call on May 9, 2018, Streit said: "On the branded side of our shop, Green Dot continues to gain traction on nearly all fronts."<br><br>Evidence:<br>Ex. I at 6. | 126. Undisputed that Ex. I includes the quoted language. |
| 127. On an earnings call on May 9, 2018, Streit said: "Additionally, Green Dot has earned more than 5,000 new incremental shelf facings for its products and services at Safeway Albertson stores and other locations where Green Dot now occupies space formerly occupied by the now defunct American Express prepaid product line."<br><br>Evidence:<br>Ex. I at 6. | 127. Undisputed that Ex. I includes the quoted language. |
| 128. On an earnings call on May 9, 2018, Streit said: "Walmart MoneyCards and Green Dot classic Visa cards and MasterCards and GoBank . . . continue[] to do extremely well" and "I think we still have a long way to go before we | 128. Undisputed that Ex. I includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. I from which the quotes are taken. The pertinent sentences in Ex. I state: |

- 120 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| come anywhere near what you'd call maxed out."<br><br>**Evidence:**<br>Ex. I at 12. | "But from just the good old fashioned Walmart MoneyCards and Green Dot classic Visa cards and MasterCards and GoBank, which continues to do extremely well and all the other programs we've launched." . . .<br><br>"And so even though we're up tremendously year-over-year and frankly, several years in a row -- or a lot of quarters, I think GDV has grown every year for as long as we've tracked it. I think we still have a long way to go before we come anywhere near what you'd call maxed out."<br><br>Evidence: Ex. I at 12. |
| 129. On an earnings call on May 9, 2018, Streit said: "We don't intend to imply that we see a slowdown forthcoming. In fact, as both Steve and I mentioned in our remarks, we feel upbeat about the likelihood of continued strong momentum."<br><br>**Evidence:**<br>Ex. I at 10. | 129. Undisputed that Ex. I includes the quoted language. |
| 130. On an earnings call on May 9, 2018, Streit said: "[A]ttracting and retaining the right kinds of customers is actually more important than the number of active customers in and of itself. | 130. Undisputed that Ex. I includes the quoted language. |

- 121 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| Specifically, we have previously shared that a direct deposit customer typically has a meaningfully higher lifetime value than accounts that do not receive direct deposit." <br><br> **Evidence:** <br> Ex. I at 5. | |
| 131. On an earnings call on May 9, 2018, Streit said: "Step 1 was to continue to grow the number of active accounts year-over-year and to improve the unit economics of those accounts. . . . [W]e are well ahead on this goal, having added nearly 1 million new active accounts while increasing the number of accounts receiving direct deposit by 930,000." <br><br> **Evidence:** <br> Ex. I at 6-7. | 131. Undisputed that Ex. I includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. I from which the quote concerning the increase in the number of direct deposit accounts is taken. The pertinent sentence in Ex. I states: As you know from the record-breaking results in Q1, we are well ahead on this goal, having added nearly 1 million new active accounts while increasing the number of accounts receiving direct deposit by 930,000 on a year-over-year basis." <br><br> Evidence: Ex. I at 6-7. |
| 132. On an earnings call on May 9, 2018, Shifke said: "[a]ll told, in the quarter, we attracted more highly engaged customers than ever before with better unit economics, as evidenced by the record interchange and fee revenue." <br><br> **Evidence:** <br> Ex. I at 9. | 132. Undisputed that Ex. I includes the quoted language. |

- 122 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 133. At the May 16, 2018 JPMorgan Conference, Streit said: "[E]very one of our products is hitting it and is either at or above plan, which is not common."<br><br>**Evidence:**<br>Ex. M at 13. | 133. Undisputed that Ex. M includes the quoted language. |
| 134. At the May 16, 2018 JPMorgan Conference, Streit said: "[O]ur digital platform has really been taking off, and the customers who get it online through the app stores are many times more profitable than retail customers as they tend to be – use the account in a more sustainable, higher-quality way. They're more likely to be on direct deposit."<br><br>**Evidence:**<br>Ex. M at 13. | 134. Undisputed that Ex. M includes the quoted language. |
| 135. At the May 16, 2018 JPMorgan Conference, Shifke said: "[W]e've concentrated on focusing on our direct deposit customer base. We've grown that very nicely. Now about 80% of our GDV comes from direct deposit. Nearly 50% of our active customers are on direct deposit. And with that, GDV is growing phenomenally, and that's driving the engine to get the fees, ATMs, purchase volume, interest income."<br><br>**Evidence:**<br>Ex. M at 10. | 135. Undisputed that Ex. M includes the quoted language. |

- 123 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 136. On an earnings call on August 8, 2018, Streit said: "The BaaS side of the business grew a lot of accounts, obviously, with programs like the TurboTax program and the Uber driver program, those are active cards. But our established product lines, Bob, are just really doing well. So we're seeing growth from both. . . . So everything's growing in relative lockstep."<br><br>**Evidence:**<br>Ex. O at 11. | 136. Undisputed that Ex. O includes the quoted language. Disputed that this fact, as stated by plaintiffs, accurately and completely sets forth the information in portions of Ex. I from which the quote regarding growth in relative lockstep is taken. The pertinent sentences in Ex. O state: "In fact, if you size sort of the revenue growth, where did the revenue growth come from? It's pretty much split along the middle, half from our established product lines and half from our BaaS products. And if you look at the GDV growth, it's about half and half. So everything's growing in relative lockstep."<br><br>Evidence: Ex. O at 11. |
| 137. On an earnings call on August 8, 2018, Streit said: "I mean, we experienced growth with our – I hate to use the word legacy because the products aren't legacy, they've been redone many, many times. But that original part of the business, if you will, selling cards and retail and whatnot. That's really going well for us."<br><br>**Evidence:**<br>Ex. O at 13. | 137. Undisputed that Ex. O includes the quoted language. |

- 124 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 138. On an earnings call on August 8, 2018, Streit said: "Consolidated GAAP total operating revenue came in at $258.3 million, representing a year-over-year growth rate of just over 16%. We would note that this quarter's performance was entirely organic, with material growth being driven for both our established product lines and our new BaaS platform programs."<br><br>**Evidence:**<br>Ex. O at 4. | 138. Undisputed that Ex. O includes the quoted language. |
| 139. On an earnings call on August 8, 2018, Streit said: "The continuing long-term portfolio mix shift towards higher lifetime value accounts helped push the gross dollar volume, or GDV, flowing through our various products to more than $9.4 billion, representing organic year-over-year GDV growth of 25%."<br><br>**Evidence:**<br>Ex. O at 5. | 139. Undisputed that Ex. O includes the quoted language. |
| 140. On an earnings call on August 8, 2018, Streit said: "Every metric in the Account Services segment reflects the powerful dynamic of an increasing number of active account holders who are generating far more usage and engagement with our products. The result continues to be an ongoing tailwind to the profitability and value of our account active portfolio." | 140. Undisputed that Ex. O includes the quoted language. |

- 125 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| **Evidence:**<br>Ex. O at 5. | |
| 141. On an earnings call on August 8, 2018, Shifke said: "[T]he larger portfolio of actives also continues to demonstrate healthy growth metrics and a more profitable average account."<br><br>**Evidence:**<br>Ex. O at 7. | 141. Undisputed that Ex. O includes the quoted language. |
| 142. On an earnings call on August 8, 2018, Shifke said: "As you see the portfolio mix move more towards direct deposit customers as a percentage of total and away from one-and-dones, by definition, you'll have more revenue per active on the direct deposit customers than you will on your one-and-dones."<br><br>**Evidence:**<br>Ex. O at 12. | 142. Undisputed that Ex. O includes the quoted language. |
| 143. On an earnings call on November 7, 2018, Streit said: "And then unrelated to BaaS, of course, we have our own legacy products and established business lines, which are no slouches. I mean, those are doing very well and continue to grow."<br><br>**Evidence:**<br>Ex. Q at 12. | 143. Undisputed that Ex. Q includes the quoted language. |

- 126 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 144. On an earnings call on November 7, 2018, Streit said: "The percentage of people who acquire our accounts now are far more likely to reload and when they reload, they're far more likely to do it through electronic means, meaning direct deposit. And that does mean more revenue per card. That is real, and is a trend we see continuing."<br><br>**Evidence:**<br>Ex. Q at 11. | 144. Undisputed that Ex. Q includes the quoted language. |
| 145. On an earnings call on February 20, 2019, Streit said: "[Cards business] has been growing nicely – very nicely, in fact."<br><br>**Evidence:**<br>Ex. U at 23. | 145. Undisputed that Ex. U includes the quoted language. Disputed that this fact,  as stated by plaintiffs, accurately and completely sets forth the information in portions of  Ex. U from which the quote is taken. The pertinent sentences in Ex. U state: "So I think we're trying to illustrate, number one, that we've a lot bigger opportunity than folks may think if you are just thinking about cards. Although, that certainly a great opportunity and has been growing nicely -- very nicely, in fact. But that we also have all these other new products, and other opportunities and other target audiences that we can raise to the gifts of our BaaS partners." |
| 146. On an earnings call on February 20, 2019, Streit said: "While the mix shift | 146. Undisputed that Ex. U includes the quoted language. |

- 127 -

| PLAINTIFFS' UNDISPUTED FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| towards direct deposit and more engaged customers is clearly better for profitability and growth, the lower churn also means fewer accounts issued to short-term customers, which weighs down on unit sales and therefore the quarterly active account metric."<br><br>**Evidence:**<br>Ex. U at 5. | |
| 147. On an earnings call on February 20, 2019, Streit said: "[S]trong year-over-year margin expansion of over 300 basis points was the net result of improving margins flow through across the business. And in particular, from our base of direct deposit active accounts where improving purchase volume and higher retention have a positive impact on profitability."<br><br>**Evidence:**<br>Ex. U at 10. | 147. Undisputed that Ex. U includes the quoted language. |
| 148. On an earnings call on May 8, 2019, Streit said: "Higher purchase volume and attracting the more committed customer base should in turn lead to higher revenue and a better profit margin on those accounts. Step two is to continue that trend. As our Q1 active [account] KPIs indicate, we are very much on track with this step two. . . . So, so far so good on step two."<br><br>**Evidence:**<br>Ex. X at 8-9. | 148. Undisputed that Ex. U includes the quoted language. |

- 128 -

Dated:  July 18, 2025

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
JAMES N. KRAMER
ALEXANDER K. TALARIDES
M. TODD SCOTT


 */s/ Alexander K. Talarides*
ALEXANDER K. TALARIDES
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: 415-773-5700
Facsimile: 415-773-5957

-        and        -

**GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP**
RICHARD E. GOTTLIEB
EMIL PETROSSIAN
PETER M. BRANSTEN
AYAD MATHEWS
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

*Attorneys for Defendants*

- 129 -